Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
LEE & HAYES, P.C.
601 W. Riverside Ave. Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256
caleb.hatch@leehayes.com
Johanna.tomlinson@leehayes.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS, LLC, a Washington limited liability company, and EIGHT EIGHTEEN, LLC, an Idaho limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN CLAUSEN, an individual; CLAUSEN, INC., a Washington Corporation; AR-TT LLC, a Washington limited liability company; and LILAC CITY, LLC, a Washington limited liability company,<br><br>Defendants. | CASE NO. 2:24-cv-00413<br><br>**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## I.    INTRODUCTION

Plaintiffs Hammerless Tools, LLC and Eight Eighteen, LLC (collectively "Plaintiffs") move the Court for a temporary restraining order and preliminary injunction to maintain the status quo and stop Jonathan Clausen, Clausen, Inc., AR-

MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION – 1

LEE & HAYES, P.C.
601 W. Riverside Avenue, Suite 1400
Spokane, Washington 99201
(509) 324-9256 Fax: (509) 323-8979

1  TT LLC, and Lilac City, LLC's (collectively "Defendants"), breach of contract, infringing use of Plaintiffs' trademarks, or any other confusingly similar terms, in commerce, as well as cease infringement of Plaintiff Hammerless Tools' Design Patent No. D981199 (the "Motion").

This Motion is based upon and relies on the Declaration of James Goss and Exhibits thereto, other previously and concurrently filed documents in this action, the Court's files, the arguments of counsel, and any other matter that the Court may properly consider.

## II.    FACTUAL BACKGROUND

In 2016, James Goss ("Goss") formed Eight Eighteen, LLC ("Eight Eighteen") to conduct their consulting & manufacturing business. Declaration of James Goss ("Goss Decl."), at ¶ 3. In 2017, James Goss began manufacturing tools for others in his garage on nights and weekends when he was not working at his day job. *Id.* at ¶ 4. In 2018, through consulting work, Goss began to primarily design, manufacture, and sell spring driven hand tools used by painters, finish carpenters, and contractors. *Id.* at ¶¶ 5-7.

In February 2021, Goss formed Hammerless Tools, LLC ("Hammerless Tools") to create efficiencies in the manufacture, marketing, and sale of Eight Eighteen's spring driven tools. *Id.* at ¶ 8. Since its inception, and continuing to date, Hammerless Tools has continuously and consistently advertised, promoted, and sold

MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION – 2

LEE & HAYES, P.C.
601 W. Riverside Avenue, Suite 1400
Spokane, Washington 99201
(509) 324-9256 Fax: (509) 323-8979

its spring driven tools as HAMMERLESS IMPACT TECHNOLOGY-branded tools. *Id*. Plaintiffs use the following trademarks on their goods: HAMMERLESS IMPACT TECHNOLOGY, H.I.T., H.I.T. Tools, HIT Tool(s), and related logos (collectively "Plaintiffs' Marks"). *Id*. at ¶ 9.

In May 2021, Jonathan Clausen ("Clausen"), as a representative of Lilac City, LLC, came to bid on Goss' house for a painting job. *Id*. at ¶ 10. While at Goss' home, Clausen noticed Goss' spring driven tools. Eventually, Clausen discussed with Goss the idea of using Goss' spring driven tool design with ArmaLite Rifle ("AR") platform guns (the "AR-TT Tool"). *Id*. Plaintiffs began the design of the AR-TT Tool, cycling through designs and producing multiple prototypes, all paid for by Eight Eighteen. *Id*. During the process of Plaintiffs creating the AR-TT Tool, Clausen expressed an interest in reselling the other HAMMERLESS IMPACT TECHNOLOGY tools and was eventually permitted to do so. *Id*. at ¶.

In September 2021, Clausen began publicly holding himself out as the owner, inventor, CEO and President of H.I.T. (Hammerless Impact Technology) and creating HAMMERLESS IMPACT TECHNOLOGY-branded marketing materials without authorization or approval from Hammerless Tools or Eight Eighteen. *Id*. at ¶¶ 12-18. Clausen was told he could not claim to be the owner, CEO, or president of H.I.T. Tool or the company responsible for the HAMMERLESS IMPACT TECHNOLOGY brand and instructed Clausen to change the description on his

1  LinkedIn account, as well as all other websites and social media. *Id*. at ¶¶ 14-15.

2  Upon later investigation, Goss discovered Clausen established multiple
3  websites, social media accounts, and advertisements – without authorization –
4  claiming he owned and invented the HAMMERLESS IMPACT TECHNOLOGY-
5  branded tool. *Id*. at ¶ 15. On May 5, 2023, without Plaintiffs' knowledge or
6  authorization, Clausen registered the trade name with the Washington Department
7  of Revenue for THE HIT TOOL. *Id*. at ¶¶ 12-18.

8  In May 2023, Hammerless Tools and Eight Eighteen, through counsel, sent
9  Clausen a letter demanding Clausen and his entities cease and desist from utilizing
10  Hammerless Tools' and Eight Eighteen's name, images, trademarks, and goodwill.
11  Clausen refused. *Id*. at ¶ 19. On August 29, 2023, Hammerless Tools and Eight
12  Eighteen filed a Complaint against the Defendants in the Superior Court of the State
13  of Washington in Spokane (Case Number 23-2-03519-32) for trademark
14  infringement, false association, violations of the Washington Consumer Protection
15  Act, and breach of contract. *Id*.

16  In June 2024, the Parties executed a settlement agreement (the "Agreement")
17  with the intention of preventing further litigation. *Id*. at ¶¶ 20-21. ███████████
18  ████████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████████████████

1  █████████████████████████████████

2  █████████████████████████████████

3  █████████████████████████████████

4  █████████████████████████████████

5  ████████████████████

6      In the Agreement, Defendants also agreed ██████████

7  █████████████████████████████████

8  █████████████████████████████████

9  █████████████████████████████████

10  ███████████████████

11      In the Agreement, Defendants also agreed ██████████

12  █████████████████████████████████

13  █████████████████████████████████

14  █████████████████████████████████

15  ████████

16  ██████████████████████

17  ████████████████████ Defendants' unauthorized use of Plaintiffs'

18  Marks has already resulted in actual confusion. *Id*. at ¶ 28.

19  ██████████████████████

20  █████████████████████████████████

MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – 5

LEE & HAYES, P.C.
601 W. Riverside Avenue, Suite 1400
Spokane, Washington 99201
(509) 324-9256 Fax: (509) 323-8979

1  [redacted]

2  [redacted]

3  [redacted]

4      Plaintiffs also became aware of new infringement of Plaintiffs' Marks by Defendants on their social media platforms, marketing emails, and product websites. *Id*. at ¶¶ 55-58. Plaintiffs also discovered that Defendants began manufacturing, offering, and selling nearly identical tools (the "Accused Products") that infringed on Plaintiffs' Design Patent No. D981199 (the 'D199 Patent"). *Id*. at ¶¶ 32-40; 59. The 'D199 Patent was legally issued by the United States Patent and Trademark Office on March 21, 2023 to Hammerless Tools. *Id*. at ¶ 33.

    While Plaintiffs had previously manufactured white-label tools, covered by the 'D199 Patent, for Defendants to purchase and re-sell, the last sale to Defendants was in January 2023. *Id*. at ¶ 36. Following the execution of the Agreement, Defendants began using their own manufacturer and offering for sale tools that are directly infringing on Plaintiffs' design patent. *Id*. at ¶¶ 37-39, 60.

    Plaintiffs have not provided authorization, permission, or consent to Defendants to copy, imitate, or use in any manner the design claimed by the 'D199 Patent. *Id*. at ¶¶ 36, 40.

    Defendants have breached the Agreement, infringed on Plaintiffs' trademarks, infringed Hammerless Tools' design patent, and have failed to cure their unlawful

1  use following the Agreement and repeated demands by Plaintiffs. Defendants' acts
2  have caused, and will continue to cause, damage to Plaintiffs.

### III.    ARGUMENT

#### A.    Standard of Review.

"A [temporary restraining order] is not a preliminary adjudication on the merits: it is an equitable device for preserving the status quo and preventing loss of rights before judgment." *Textile Unlimited v. Abmhand Co.*, 240 F.3d 781, 786 (9th Cir. 2001). A motion for a temporary restraining order applies the same standard as a motion for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co. Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). The party seeking a temporary restraining order or prelimiary injunction must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent preliminary relief, (3) the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). The Ninth Circuit uses a "slide scale" approach under which these factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

If a Court cannot adequately compensate a party's injury with money damages, "a court may use its broad equitable powers to compel a party to

1  specifically perform its promise." *Crafts v. Pitts*, 161 Wash. 2d 16, 23-24, 162 P.3d

2  382 (2007) (internal citation omitted).

3      Here, Plaintiffs establish all four elements to allow this Court to grant the

4  requested preliminary relief against Defendants.

5      **B.    Plaintiffs are Likely to Succeed on the Merits of their Claims.**

6      **1.  Breach of Contract**

7      In order to succeed on this claim, Plaintiffs must prove that there was a

8  contract that imposed a duty, the duty was breached, and the breach proximately

9  caused damage to the claimant. *P.E.L. v. Premera Blue Cross*, 2 Wn.3d 460, 481

10  (Wash 2023).

11      There is no dispute the Parties mutually entered into a valid settlement

12  agreement. Goss Decl. at ¶¶ 20-21. The Agreement, among other things, ▮

13  ▮

14  ▮

15  ▮

16  ▮

17  ▮

18  ▮

19  ▮

20  ▮

MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION – 8

1
2      Defendants breached the Agreement by █████████████
3      ████████████████████████████████████████████████
4      ████████████████████████████████████████████████
5      ████████████████████████████████████████████████
6      ████████████████████████████████████████████████
7      ████████████████████████████████████████████████
8      ████████████████████████████████████████████████
9      ████████████████████████████████████████████████
10     ██

11     Lastly, Plaintiffs have been damaged and are likely to be injured further as a
12     result of Defendants' breaches of the Agreement. Defendants' failure to comply with
13     their duties under the Agreement proximately and actually caused actual confusion
14     among consumers. *Id*. at ¶ 28. On August 15, 2024, Plaintiffs received a new contact
15     submission through their website from a confused customer looking for the AR-TT
16     tool on Plaintiff's website but could not find it. *Id*. The customer believed
17     HAMMERLESS IMPACT TECHNOLOGY and AR Takedown Tool to be the same
18     company due to Defendants infringing use of Plaintiffs' trademarks. *Id*. Plaintiffs
19     will also continue to lose more sales and suffer further damage to their business as a
20     result of Defendants' breaches of the Agreement. Thus, Plaintiffs satisfy the

elements and are likely to prevail on the merits of their breach of contract claim.

### 2. Trademark Infringement

A trademark infringement claim requires plaintiffs to show they have a protectable ownership interest in the mark(s), and that the defendants' use of the mark is likely to cause consumer confusion. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012); *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017) (stating "the elements needed to establish federal unfair competition under 15 U.S.C. § 1125(a) are identical to the elements needed to establish trademark infringement under 15 U.S.C. § 1114.").

Here, Plaintiffs have shown they possess common law trademark rights in and to the marks HAMMERLESS IMPACT TECHNOLOGY; H.I.T.; HIT TOOL(s), and H.I.T. TOOL(s) by using the marks in commerce in connection with their goods and services since 2021. Goss Decl. at ¶ 9. Defendants' use of the terms HAMMERLESS IMPACT TECHNOLOGY; H.I.T.; HIT TOOL(s), and H.I.T. TOOL(s) are identical in sight, sound, and meaning to Plaintiffs' Marks. *Id*. at ¶¶ 30-31, 41-58. There is no dispute that Defendants are using Plaintiffs' exact Marks and logos on nearly identical products.

Further, Defendants' use of Plaintiffs' Marks does more than pose a risk of the likelihood of confusion because there have already been instances of actual confusion as a result of their infringing use. *Id*. at ¶ 28. Plaintiffs received a new

1  contact submission through their website from a confused customer looking for the
2  AR-TT tool on Plaintiff's website but was unable to find it. The customer believed
3  HAMMERLESS IMPACT TECHNOLOGY and AR Takedown Tool to be the same
4  company due to Defendants continued infringing use of Plaintiffs' trademarks. *Id*.

5  When the alleged infringer knowingly adopts a mark similar to another's,
6  reviewing courts presume that the defendant can accomplish his purpose: that is, that
7  the public will be deceived." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th
8  Cir. 1979). Here, Plaintiffs filed a prior trademark infringement lawsuit against
9  Defendants which was settled according to the terms of the Agreement; ▇
10 ▇ Goss Decl. at ¶¶ 21-22.
11 ▇
12 ▇ Thus, Defendants knowingly adopted and use Plaintiffs'
13 Marks despite knowing their use of the marks would be highly likely to confusion
14 consumers.

15 Defendants, despite the terms outlined in the Agreement between the parties,
16 ▇
17 ▇
18 ▇
19 ▇
20 ▇ Thus,

Plaintiffs' have demonstrated their likelihood of success on the merits of their trademark infringement claims.

### 3. Design Patent Infringement

In order to succeed on a design patent infringement claim, Plaintiffs must prove two elements: "(1) 'the identity of appearance, or sameness of effect as a whole upon the eye of an ordinary purchaser must be such as to deceive him, inducing him to purchase one, supposing it to be the other's and (2) 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 675 (Fed. Cir. 2008).

Here, Plaintiff Hammerless Tools, LLC owns the entire right, title, and interest in Design Patent No. D981199 for the design of the unique ridges on its "HIT Tools." Goss Decl. at ¶¶ 33-35. Further, Defendants' have directly infringed on the 'D199 Patent by manufacturing, selling, and offering for sale nearly identical tools. *Id*. at ¶¶ 37-40, 60. The ornamental appearance of the Accused Product is substantially similar, if not identical, to the design claimed in the 'D199 Patent such that an ordinary observer would purchase an Accused Product believing it to be Plaintiff's patented design. *Id*. at ¶¶ 35. 39.

Following the execution of the Agreement, Defendants obtained their own manufacturer to help them produce nearly identical tools that infringe on the 'D199

Patent. *Id*. at ¶¶ 37-40, 60. These tools share the same unique ornamental appearance protected by the 'D199 Patent and are offered for sale, and sold, on Defendants' website. *Id*. at ¶¶ 35. 39. Therefore, Plaintiffs satisfy the required elements and are likely to prevail on the merits of their design patent infringement claim.

    **C.    Plaintiffs Suffered and Will Continue to Suffer Irreparable Harm from Defendants' Conduct.**

Plaintiffs have presented compelling proof of irreparable injury to its reputation through evidence of Defendants' breach of the Parties' settlement agreement, and evidence of consumers' contacting Plaintiffs with the belief that they are the source of Defendants' goods. Despite Plaintiffs' efforts to notify Defendants multiple times of their ongoing infringing conduct, ▮▮▮▮▮▮▮▮▮▮ are likely to cause further irreparable injury to Plaintiffs' reputations in addition to the harm that has already been caused.

Additionally, The Lanham Act adds a statutory layer to the irreparable harm analysis for trademark infringement. The Act benefits trademark holders by creating a presumption of irreparable harm when a permanent injunction is sought to remedy an established trademark violation. *AK Futures LLC v. Boyd St. Distro*, LLC, 35 F.4th 682, 694 (9th Cir. 2022). In addition to the rebuttable presumption of irreparable harm, Plaintiffs' evidence establishes loss of control over its business reputation and damage to its goodwill as a result of Defendants' use of Plaintiffs'

1    Marks. Because Plaintiffs have shown likelihood of success on the merits, they are
2    entitled to a presumption of irreparable harm, "in the case of a motion for a
3    preliminary injunction or temporary restraining order." 15 U.S.C. § 1116.
4    Defendants' sale of products with the inclusion of the patent design will further lead
5    to confusion and reputational harm as Plaintiffs lose control over its business
6    reputation and issues with the public associating infringing products with Plaintiffs'
7    legitimate products.

8        The evidence convincingly shows that Defendants' conduct has caused actual
9    consumer confusion regarding the source of the Parties' goods, damaging Plaintiffs'
10   reputations. The substantive evidence of ongoing harm and the presumption of
11   irreparable injury should lead to a finding of irreparable harm.

12       **D.    The Balance of Hardships Favors Plaintiffs.**

13       Here, the balance of the equities unequivocally tips in favor of Plaintiffs
14   because their longstanding use of Plaintiffs' Marks has accumulated significant
15   consumer recognition and goodwill in association with its Hammerless Impact
16   Technology tools and marks. *See* Goss Decl. at ¶¶ 5-9. Plaintiffs have suffered, and
17   continue to suffer, injury from consumer confusion due to Defendants' ongoing
18   infringing use of Plaintiffs' Marks and 'D199 Patent on their own products as well
19   as on their own advertisements and product packaging.

20       Plaintiffs are not asking this Court to order Defendants to cease selling firearm

disassembly products altogether. Rather, Plaintiffs are simply asking that Defendants abide by the Agreement and cease use of Plaintiffs' Marks and patented design. Defendants must remove all infringing advertising, packaging, and promotional material using Plaintiffs' Marks from its social media platforms and online retail websites, and to abstain from the sale of products that blatantly infringe on Plaintiffs' 'D199 Patent. Defendants could instead manufacture, market, and sell firearm tools that do not infringe Plaintiffs' Marks and patented design.

To the extent Defendants have sold their infringing products in the United States, the equities still favor Plaintiffs where, as here, "the only hardship that the defendant[s] will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Sream, Inc. v. Sahebzada*, No. 18-cv-05673-DMR, 2019 U.S. Dist. LEXIS 86785, at *26 (N.D. Cal. Mar. 7, 2019). Defendants will be able to continue manufacturing tools that utilize their own unique design and do not directly infringe on Plaintiffs' 'D199 Patent, nor trade off of Plaintiffs' preexisting goodwill.

E. **The Public Interest Will Be Advanced by Injunctive Relief.**

The Court must consider whether an injunction is in the public interest. *Winter*, 555 U.S. at 20. In Lanham Act cases, courts consider the public's right "not to be deceived or confused." *See Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) (citations omitted). Defendants' use of

Plaintiffs' Marks, has caused, and is highly likely to continue to cause consumer confusion, which is within the "usual public interest concern in trademark cases." *See Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 993 (9th Cir. 2009). Thus, the public interest favors a preliminary injunction.

Defendants' use of Plaintiffs' Marks on its social media platforms, packaging, and online retail websites as well as their nearly identical products infringing on the 'D199 Patent are not only depriving consumers of their ability to distinguish between the goods offered by Plaintiffs and goods offered by Defendants but has also caused actual confusion by consumers of the Parties' goods to occur. Because the public has a right not to be deceived or confused, the public interest is best served by enjoining Defendants.

### F. No Bond Should be Required.

District courts have discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (recognizing "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation").

Here, Plaintiffs are small, local, businesses. Plaintiffs have limited resources and are unable to post a substantial bond. Goss Decl. at ¶ 59. Furthermore, as provided above, the likelihood of success on the merits tips in favor of a minimal

1 bond or no bond at all.

2 Moreover, Defendants announced it is manufacturing and offering infringing
3 products – but has not yet shipped the products. *Id*. at ¶ 60. In other words,
4 Defendants simply will not suffer harm from a preliminary injunction because the
5 lack of shipment and Defendants ability to sell non-infringing products. Security is
6 not necessary. Plaintiffs respectfully request that this Court not require a bond.

### IV. CONCLUSION

Plaintiffs respectfully request this Court grant its motion for a temprorary restraining order and preliminary injunction against Defendants to enjoin Defendants' infringing use of Plainitffs' Marks, breaches of the Agreement, and cease Defendants' selling and offering for sale of products infringing on the 'D199 Patent.

Respectfully submitted this 10th day of December 2024.

s/ Caleb Hatch
Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
LEE & HAYES, P.C.
601 W. Riverside Ave. Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256
caleb.hatch@leehayes.com
*Attorney for Plaintiffs*