Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
LEE & HAYES, P.C.
601 W. Riverside Ave. Suite 1400
Spokane, Washington 99201
Telephone: (509) 324-9256
caleb.hatch@leehayes.com
Johanna.tomlinson@leehayes.com

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS, LLC, a Washington limited liability company, and EIGHT EIGHTEEN, LLC, an Idaho limited liability company,<br><br>                Plaintiffs,<br>v.<br><br>JONATHAN CLAUSEN, an individual; CLAUSEN, INC., a Washington Corporation; AR-TT LLC, a Washington limited liability company; and LILAC CITY, LLC, a Washington limited liability company,<br><br>                Defendants. | CASE NO. 2:24-CV-00413-SAB<br><br>**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION** |

## I.    BRIEF BACKGROUND

Plaintiffs renew their motion to Court for a preliminary injunction to stop Defendants, breach of contract, infringing use of Plaintiffs' trademarks, or any other confusingly similar terms, and cease infringement of Plaintiff Hammerless Tools'

1  Design Patent No. D981199 (the "Motion").

2  In the interests of judicial economy, this Renewed Motion incorporates the
3  factual allegations in the original motion [ECF No. 9 (dismissed for docketing
4  purposes only, pending the now dismissed bankruptcy)], and declarations, so as not
5  to repeat the same facts.

6  Since the settlement agreement (the "Agreement") in the prior litigation, and
7  the original motion for injunctive relief, Defendants not only failed to cease their
8  infringing acts, but created additional uses of Plaintiffs' Marks, and continue selling
9  the Accused Products which are infringing Plaintiffs' Design Patent No. D981199
10 (the 'D199 Patent"). Declaration of James Goss ("Goss Decl.") at ¶¶ 42, 44-45, 49-
11 74. Defendants continue to breach the settlement agreement and continue to infringe
12 Plaintiffs' trademarks and design patent. *Id.* at ¶¶ 78-103.

13 Including, in March of 2025, Defendants advertised they sold "over 30,000"
14 AR-Takedown Tools—significantly more than the 16,296 sold to them by Plaintiffs.
15 *Id.* at ¶ 53. One month later, Defendants advertised they now sold "over 40,000 AR-
16 Takedown Tools. *Id.* at ¶54. Defendants continue to advertise and promote they have
17 sold 40,000 AR-Takedown Tools. *Id.* at ¶¶ 54-57. Plaintiffs did not provide any
18 verbal or written authorization to Defendants to manufacture, advertise, and sell any
19 products utilizing Plaintiffs' design patent. *Id.* at ¶¶ 16-19, 24, 86, 88.

20 Similarly, Defendants continue to utilize the same identical and confusingly

similar variations of Plaintiffs' trademarks in advertising and promotional materials. *Id*. at ¶¶ 78-103. In a sworn declaration to this Court on January 15, 2025, Defendant Clausen declared that he spent time and effort removing all use of Plaintiffs' trademarks and there would never be any use of the marks by Defendants. ECF No. 47 at ¶¶ 27, 30, 35. However, Defendants have continued to use Plaintiffs' marks – also in breach of the Agreement – as detailed in the Declaration of James Goss. *Goss Decl.* at ¶¶ 66-101. On January 15, 2025, Defendant Clausen submitted a sworn declaration to this Court stating he "…removed all references to these brands on my LinkedIn and Facebook accounts." ECF No. 47 at ¶ 27. Contrary to Clausen's Declaration, Defendants continue to use Plaintiff's registered trademark on their LinkedIn and Facebook pages. *Goss Decl*. at ¶¶ 90-92. On January 15, 2025, Defendant Clausen declared: "There was a substantial delay in sales efforts because I was forced to repackage all products to comply with the Settlement Agreement." ECF No. 47 at ¶ 39. These statements by Defendant Clausen are false. *See Goss Decl*. at ¶¶ 99-103. In fact, Defendants did not remove Plaintiffs' trademarks from the AR-TT packaging, as required by the Settlement Agreement. *Id*. at ¶¶ 100-103. In early August 2025, Goss purchased two AR-Takedown Tools *Id*. Once received, Goss immediately realized that Defendants have done no more than add white-out to the product packaging over Plaintiff's registered trademark. *Id*. The whiteout was removed with the packaging when opened, clearly showing Plaintiff's registered

trademark. *Id*.

In June 2025, Plaintiff Hammerless Tools was granted U.S. Trademark Reg. No. 7,830,946 for the mark HAMMERLESS IMPACT TECHNOLOGY. *Id*. at ¶ 10, Exhibit A.

## II.    ARGUMENT
### A.    Standard of Review.

The party seeking a preliminary injunction must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent preliminary relief, (3) the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). The Ninth Circuit uses a "slide scale" approach under which these factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiffs establish all four elements to allow this Court to grant the requested preliminary relief against Defendants.

### B.    Plaintiffs are Likely to Succeed on the Merits of their Claims.
#### 1. Breach of Contract

Plaintiffs must show that there was a contract that imposed a duty, the duty was breached, and the breach proximately caused damage to the claimant. *P.E.L. v. Premera Blue Cross*, 2 Wn.3d 460, 481 (Wash 2023). There is no dispute the Parties mutually entered into a valid settlement agreement. Goss Decl. at ¶¶ 26-27. The

1  Agreement, among other things, requires Defendants to immediately terminate all
2  use of Plaintiffs' Marks. *Id.* at ¶¶ 26-28. Defendants are also required by the
3  Agreement to destroy and provide proof of destruction for all damaged and
4  unsaleable goods not purchased back by Plaintiffs. *Id.* at ¶¶ 26-29.

5  Defendants breached the Agreement by failing to perform their obligation
6  under the contract. Defendants not only failed to remove the previously infringing
7  content from their social media platforms and retail websites, but have created
8  numerous new advertisements and promotional content displaying Plaintiffs' Marks.
9  *Id.* ¶¶ 42, 44, 49-74, 78-103. Defendants also agreed to destroy and provide proof of
10 destruction for all damaged and unsaleable goods not purchased back by Plaintiffs;
11 but Defendants have again failed to comply and have not shared proof of the
12 destruction of any goods. *Id.* at ¶¶ 29-30.

13 Lastly, Plaintiffs have been damaged and are likely to be injured further as a
14 result of Defendants' breaches of the Agreement. Defendants' failure to comply with
15 their duties under the Agreement proximately and actually caused actual confusion
16 among consumers. *Id.* at ¶¶ 38-40. Plaintiffs will also continue to lose more sales
17 and suffer further damage to their business as a result of Defendants' breaches of the
18 Agreement. *Id.* at ¶¶ 39-40.

19 **2. Trademark Infringement**

20 A trademark infringement claim requires plaintiffs show they have a

1  protectable ownership interest in the mark(s), and that the defendants' use of the

2  mark is likely to cause consumer confusion. *Rearden LLC v. Rearden Com., Inc.*,

3  683 F.3d 1190, 1202 (9th Cir. 2012); *Mintz v. Subaru of Am., Inc.*, 716 F. App'x

4  618, 622 (9th Cir. 2017).

5  Here, Plaintiffs own U.S. Reg. No. 7830946 for the mark HAMMERLESS

6  IMPACT TECHNOLOGY. Goss Decl. at ¶ 10. Plaintiffs' registration and

7  ownership of the marks constitutes prima facie evidence of the marks' validity and

8  GMP's exclusive right to use the marks in commerce. *See* 15 U.S.C. § 1115(a);

9  *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Plaintiffs

10 also possess common law trademark rights in and to the marks HAMMERLESS

11 IMPACT TECHNOLOGY; H.I.T.; HIT TOOL(s), and H.I.T. TOOL(s) by using the

12 marks in commerce in connection with their goods and services since 2021. Goss

13 Decl. at ¶ 9. Defendants' use of the terms HAMMERLESS IMPACT

14 TECHNOLOGY; H.I.T.; HIT TOOL(s), and H.I.T. TOOL(s) are identical in sight,

15 sound, and meaning to Plaintiffs' Marks. *Id*. at ¶¶ 13-19; 42, 44, 49-74. Defendants

16 are using Plaintiffs' exact Marks and logos on nearly identical products.

17 Further, Defendants' use of Plaintiffs' Marks does more than pose a risk of

18 the likelihood of confusion because there have already been instances of actual

19 confusion as a result of their infringing use and additional harm. *Id*. at ¶ 38-40. Also,

20 owners of a registered mark are also entitled to a presumption of irreparable harm.

1  *AK Futures LLC v. Boyd St. Distro*, LLC, 35 F.4th 682, 694 (9th Cir. 2022).

2  When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979). Here, Defendants continued infringing use of Plaintiffs' Marks even after a prior lawsuit for trademark infringement, a settlement agreement, and the original motion in this matter for injunctive relief. Goss Decl. at ¶¶ 26-29, 42, 44, 49-74, 78-103. Defendants falsely declared to this Court that they ceased all use of the marks, knowing they did not. ECF No. 47 at ¶¶ 27, 30, 35, 39; *Goss Decl.* at ¶¶ 66-103.

### 3. Design Patent Infringement

Fora a design patent infringement claim, Plaintiffs must show two elements: "(1) 'the identity of appearance, or sameness of effect as a whole upon the eye of an ordinary purchaser must be such as to deceive him, inducing him to purchase one, supposing it to be the other's and (2) 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 675 (Fed. Cir. 2008).

Plaintiff Hammerless Tools, LLC owns the entire right, title, and interest in Design Patent No. D981199 for the design of the unique ridges on its "HIT Tools." Goss Decl. at ¶ 45. Defendants have directly infringed on the 'D199 Patent by manufacturing, selling, and offering for sale nearly identical tools. *Id*. at ¶¶ 42, 44,

49-74. The appearance of the Accused Product is substantially similar, if not identical, to the design claimed in the 'D199 Patent such that an ordinary observer would purchase an Accused Product believing it to be Plaintiff's patented design.

Defendants obtained their own manufacturer to help them produce nearly identical tools that infringe on the 'D199 Patent. *Id.* at ¶¶ 44, 49-61. These tools share the same unique ornamental appearance protected by the 'D199 Patent and are offered for sale, and sold, on Defendants' website. *Id.* Defendants admit, under oath to this Court, that Defendants only purchased 16,296 tools in total from Plaintiffs. ECF No. 47 at ¶¶ 53-56. Yet, Defendants now state that Defendants have sold over 40,000 tools – which is at least 23,704 more than Defendants purchased from Plaintiffs; and Defendants' websites show they are using the same patented design. *Goss Decl.* at ¶ 52-57. Defendants also state on their website that the AR-TT tools are "built by American veterans and machinists, and not outsourced to overseas factories." *Id.* at ¶ 58. Plaintiffs are not veterans and have never purported to be veterans. *Id.* at ¶ 59. Defendants' own website states that it sold out of tools, but are ready to ship in a matter of weeks upon the completion of new pouches. *Id.* at ¶ 61.

Plaintiffs satisfy the elements and are likely to prevail on the merits of their design patent infringement claim.

### C. Plaintiffs Suffered and Will Continue to Suffer Irreparable Harm from Defendants' Conduct.

Plaintiffs have presented proof of irreparable injury to their reputation

1  through Defendants' breach of the Parties' settlement agreement, and evidence of

2  consumers contacting Plaintiffs with the belief that they are the source of

3  Defendants' goods. Defendants' refusal to comply with the Agreement and cease

4  infringing actions are likely to cause further irreparable injury to Plaintiffs'

5  reputations in addition to the harm that has already been caused.

6  Additionally, The Lanham Act benefits trademark holders by creating a

7  presumption of irreparable harm when a permanent injunction is sought to remedy

8  an established trademark violation. *AK Futures LLC v. Boyd St. Distro*, LLC, 35

9  F.4th 682, 694 (9th Cir. 2022).

10  Plaintiffs' evidence also establishes loss of control over its business reputation

11  and damage to its goodwill as a result of Defendants' use of Plaintiffs' Marks.

12  Because Plaintiffs have shown likelihood of success on the merits, they are entitled

13  to a presumption of irreparable harm, "in the case of a motion for a preliminary

14  injunction or temporary restraining order." 15 U.S.C. § 1116. The ongoing harm and

15  the presumption of irreparable injury lead to a finding of irreparable harm.

16  **D.    The Balance of Hardships Favors Plaintiffs.**

17  The balance of the equities unequivocally tips in favor of Plaintiffs because

18  their longstanding use of their Marks has accumulated significant consumer

19  recognition and goodwill in association with its Hammerless Impact Technology

20  tools and marks. *See* Goss Decl. at ¶¶ 5-9. Plaintiffs are not asking this Court to order

1 Defendants to cease selling firearm disassembly products altogether. Plaintiffs are

2 simply asking that Defendants abide by the Agreement and law and cease use of

3 Plaintiffs' Marks and patented design. *See, Sream, Inc. v. Sahebzada*, No. 18-cv-

4 05673-DMR, 2019 U.S. Dist. LEXIS 86785, at \*26 (N.D. Cal. Mar. 7, 2019).

5 Defendants will be able to continue manufacturing tools that utilize their own unique

6 design and do not directly infringe on Plaintiffs' 'D199 Patent, nor trade off of

7 Plaintiffs' preexisting goodwill.

8       **E.    The Public Interest Will Be Advanced by Injunctive Relief.**

9       In Lanham Act cases, courts consider the public's right "not to be deceived or

10 confused." *See Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271,

11 1282 (C.D. Cal. 2008) (citations omitted). Defendants' use of Plaintiffs' Marks, has

12 caused, and is highly likely to continue to cause consumer confusion, which is within

13 the "usual public interest concern in trademark cases." *See Internet Specialties West,*

14 *Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 993 (9th Cir. 2009). Thus, the public

15 interest favors a preliminary injunction.

16       Defendants' use of Plaintiffs' Marks on social media, packaging, and online

17 retail websites as well as nearly identical products infringing on the 'D199 Patent

18 are not only depriving consumers of their ability to distinguish between the goods

19 offered by Plaintiffs and goods offered by Defendants but has also caused actual

20 confusion. Because the public has a right not to be deceived or confused, the public

1  interest is best served by enjoining Defendants.

2      **F.    No Bond Should be Required.**

3  District courts have discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). Plaintiffs are small, local, businesses. Plaintiffs have limited resources and are unable to post a substantial bond. Goss Decl. at ¶ 104. Furthermore, as provided above, the likelihood of success on the merits tips in favor of a minimal bond or no bond at all. Plaintiffs respectfully request that this Court not require a bond.

### III.    CONCLUSION

Plaintiffs respectfully request this Court grant its motion to enjoin Defendants' use of Plainitffs' Marks, breaches of the Agreement, and cease Defendants' selling and offering for sale of products infringing on the 'D199 Patent.

Respectfully submitted this 23rd day of September 2025.

    s/ Caleb Hatch
    Caleb Hatch, WSBA #51292
    LEE & HAYES, P.C.
    601 W. Riverside Ave. Suite 1400
    Spokane, Washington 99201
    Telephone: (509) 324-9256
    caleb.hatch@leehayes.com
    *Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

s/ Caleb Hatch
Caleb Hatch, WSBA #51292

RENEWED MOTION FOR PRELIMINARY INJUNCTION – 12

LEE & HAYES, P.C.
601 W. Riverside Avenue, Suite 1400
Spokane, Washington 99201
(509) 324-9256 Fax: (509) 323-8979