ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

*Attorneys for Defendants Jonathan Clausen,*
*Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS, LLC and EIGHT EIGHTEEN, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN CLAUSEN, CLAUSEN, INC., AR-TT LLC, and LILAC CITY, LLC,<br><br>Defendants. | Case No.: 2:24-CV-00413-SAB<br><br>DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES |

# TABLE OF CONTENTS

Pages

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

   I.  ALL CLAIMS, MOTIONS, ORDERS, AND PROCEEDINGS AGAINST
       INDIVIDUAL DEFENDANT JONATHAN CLAUSEN SHOULD BE
       VACATED AND DISMISSED *NUNC PRO TUNC* AS VOID AND
       LEGALLY-INVALID ACTS DONE BY THE PLAINTIFFS AND
       THE COURT IN VIOLATION OF 11 U.S.C. SECTION 362(a)(1) . . . . . .     19

       A.  The Applicable Choice of Law Is That of the Ninth Circuit . . . . . . . . . .     20

       B.  The Ninth Circuit Embraces the Nationwide Overwhelming Majority
           Interpretation of 11 U.S.C. § 362(a)(1) That a Civil Commercial Action
           Filed Against an Individual Subsequent to the Individual's Filing of an
           Active Bankruptcy Is Void *ab Initio,* and That Any Acts Taken in the
           Commercial Action Against the Individual Are Legally Invalid . . . . . .     21

       C.  The Majority Rule Embraced by the Ninth Circuit Furthers the
           Automatic Stay's Purposes – to Give Breathing Room to
           Financially-Pressed Debtors and Facilitate Consolidation of
           All Creditors' Claims in the Bankruptcy Court. . . . . . . . . . . . . . . . . . .     24

       D.  PLAINTIFFS Should Never Have Commenced This Action
           Against CLAUSEN When They Did and Violated Their
           Obligation to Discontinue It When CLAUSEN's Then
           Counsel of Record Brought the Active Bankruptcy
           Proceeding to the Attention of PLAINTIFFS' Counsel. . . . . . . . . . . .     26

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

E. Because This Suit Against CLAUSEN Was Void *Ab Initio,* the Court Was Without Authority to Enter or Lift a Stay, Its Subsequent Rulings With Respect to CLAUSEN Are Legally Invalid and Should Be Vacated *Nunc Pro Tunc,* and PLAINTIFFS' Claims Against CLAUSEN Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

II. REDRESS IS WARRANTED FOR THE SUBSTANTIAL INJURY CAUSED TO A FINANCIALLY AND EMOTIONALLY DISTRESSED DEFENDANT CLAUSEN BY MORE THAN A YEAR OF PLAINTIFFS PURSUING THIS ACTION IN VIOLATION OF THE BANKRUPTCY CODE . . . . . . . . . . . . . . . . . . 32

   A. PLAINTIFFS and Their Counsel Willfully Violated Section 362(a)(1), Which Mandates an Award of Damages Against Them . . . . . . . . . . . . . . . . . . . . . . 35

     1. PLAINTIFFS and Their Counsel Knew of the Automatic Stay Provided by 11 U.S.C. Section 362(a) and the Active Bankruptcy Proceeding Filed on October 24, 2024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

     2. Even After PLAINTIFFS and Their Counsel Had Knowledge of the Active Bankruptcy and Section 362(a)(1), They Took Deliberate Actions Which Violate the Statute, and Failed on February 11, 2025 or at Any Time Thereafter to Discontinue Their Action Against CLAUSEN . . . . . . . . . . . . . . . . . . . . . . 36

   B. Section 362(k) Mandates Liability for Significant Actual Damages Incurred by CLAUSEN as a Result of PLAINTIFFS' and Their Counsel's Egregious Violations of Section 362(a)(1) . . . . . . . . . . . . . . . . . 39

   C. PLAINTIFFS and Their Counsel Egregiously and Maliciously Violated Section 362(a)(1), Which Warrants an Award of Punitive Damages Against Them . . . . . . . 40

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

1.  PLAINTIFFs Are Sophisticated and
Moneyed LLCs, Not a Mom-and-Pop Shop . . . . . . . . . .    41

2.  A Law Firm with Two Involved Lawyers as Officers
of the Court with Professional Responsibilities of
Competence Should Have Known Much Better Than
to Continue Their Action Against CLAUSEN
in Blatant Violation of Section 362(a)(1) . . . . . . . . . . .    41

3.  The Public Interest Would Be Served
by an Award of Punitive Damages . . . . . . . . . . . . . . .    44

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    46

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## TABLE OF AUTHORITIES20,

Pages

**Cases**

*Alifax Holding SpA v. Alcor Scientific LLC*, Nos.
2022-1641, 2022-1723, 2024 WL 2932910
(Fed. Cir.  June 11, 2024). . . . . . . . . . . . . . . . . . . . . . . . .    20

*Atlas IP, LLC v. Medtronic, Inc.,* 809 F.3d 599 (Fed. Cir. 2015) . . . . . . . . . . .    20

*Bell v. Niagara Mohawk Power Corp.*, 173 Misc.2d 1042,
662 N.Y.S.2d 682 (Sup. Ct. N.Y. Co. 1997). . . . . . . . . . . . . . . . . . . . . .    25

*BMW of North America, Inc. v. Gore,* 517 U.S. 559,
116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) . . . . . . . . . . . . . . . . . . . . . . .    45

*City of Los Angeles v. Santa Monica Baykeeper,*
254 F.3d 882 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Dam v. Waldron,* No. 2:24-CV-00417-SAB, Slip Op., 2025
WL 1069844 (E.D. Wash. April 9, 2025), *vacated
and remanded for a without-prejudice dismissal,*
Appeal No. 25-2459, Memorandum, 2026 WL
777414 (9th Cir. Mar. 19, 2026) (unpub.) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002) . . . . . . . . . .27, 28,
37, 38

*In re Achterberg,* 573 B.R. 819 (Bankr. E.D. Cal. 2017). . . . . . . . . . . . . . . . .*passim*

*In re Bloom,* 875 F.2d 224 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . .    35

*In re Braught*, 307 B.R. 399 (Bankr. S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . .    29

*In re Carr*, No. 18-80386, 2019 WL 7840665
(Bankr. M.D.N.C. Nov. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 38

*In re Copeland,* 441 B.R. 352 (Bankr. W.D. Wash. 2010). . . . . . . . . . . . . . .    40

*In re Dawson,* 390 F.3d 1139 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . .    40

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*In re Gugliuzza,* 852 F.3d 884 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . .   40

*In re HP Bennett, LLC*, No. 22-00106-ELG,
    2023 WL 8881858 (Bankr. D.C. Dec. 22, 2023) . . . . . . . . . . . . . . . . .   31

*In re Kaufman,* 315 B.R. 858 (Bankr. N.D. Cal. 2004) . . . . . . . . . . . . . . . . . 43, 44,
    44, 45

*In re LeGrand*, 638 B.R. 151 (Bankr. E.D. Cal. 2022) . . . . . . . . . . . . . . .   44

*In re 222 Liberty Assocs.,* 110 B.R. 196 (Bankr. E.D. Pa. 1990) . . . . . . . . .   30

*In re Moon Rushmore Loan Mgt. Servs., LLC*, No.
    2:22-cv-01126-APG, 2023 WL 1779643
    (D. Nev. Feb. 6, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46

*In re Pinkstaff*, 974 F.2d 113 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . .   35

*In re Schwartz,* 954 F.2d 569 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

*In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015) (*en banc*). . . . . . . . . .   39

*In re Sucre,* 226 B.R. 340 (Bankr. S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . .   29

*In re Sundquist,* 566 B.R. 563 (Bankr. E.D. Cal. 2017) . . . . . . . . . . . . . . . .   45

*In re Van Well Nursery Inc.*, No. 2025-131,
    2025 WL 2621840 (Fed. Cir. Sept. 11, 2025) . . . . . . . . . . . . . . . . . . .   31, 32

*Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343 (1940). . . . . . . . . . . . . . . . .   23, 24

*Little Texas, Inc. v. Buchen,* 319 Ill. App. 3d 78,
    744 N.E.2d 348 (Ill. App. 3 Dist. 2001) . . . . . . . . . . . . . . . . . . . . ..... .   22

*Lysyy v. Deutsche Bank Nat'l Trust Co.*,
    No. C24-0062JLR, 2025 WL 563349
    (W.D. Wash. Feb. 20, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39, 40

*Maritime Elec. Co. v. United Jersey Bank*,
    959 F.2d 1194 (3d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

*Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . .   32

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*Professional Seminar Consultants v. Sino American Tech. Exchange Council, Inc.,*
727 F.2d 1470, 1473 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Select Portfolio Servicing, Inc. v. Worobec,*
178 So.3d 971, 2015 WL 7781609
(D. Ct. App. Fla. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*State Farm Mut. Automobile Ins. Co. v. Campbell,* 538
U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) . . . . . . . . . . . . . . 45

## Statutes

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

11 U.S.C. § 362(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

11 U.S.C. § 362(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 36

11 U.S.C. § 362(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

11 U.S.C. § 362(k)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## Rules

F.R.C.P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# **PRELIMINARY STATEMENT**

The above-captioned action was brought by Plaintiffs Hammerless Tools, LLC, and Eight Eighteen, LLC (hereinafter collectively "PLAINTIFFS") against company Defendants Clausen, Inc., AT-TT LLC, and Lilac City, LLC (hereinafter collectively the "COMPANY DEFENDANTS"), and individual Defendant Jonathan Clausen ("CLAUSEN") (CLAUSEN hereinafter referred to collectively with the COMPANY DEFENDANTS as the "DEFENDANTS"). Alleged are claims that the DEFENDANTS infringed a design patent and trademarks, plus various state-law claims.

The action was commenced by filing of a Complaint on December 10, 2024, and the subsequent issuance of Summonses and their employment by PLAINTIFFS' counsel Caleb Hatch, Esq., and Johanna R. Tomlinson, Esq., of the law firm of Lee & Hayes, P.C. However, on December 10, 2024, there was active a Chapter 13 bankruptcy proceeding commenced by CLAUSEN and his wife Jodi Lynn Clausen (hereinafter collectively the "CLAUSENS") in the U.S. Bankruptcy Court for the Eastern District of Washington, Case No. 24-01739-FPC, Chapter 13, *In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors.* The CLAUSENS had voluntarily commenced that individual bankruptcy proceeding by their bankruptcy attorney filing a Chapter 13 bankruptcy petition on October 24, 2024.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Individual Defendant CLAUSEN, through his counsel,[1] respectfully moves this Honorable Court (by this motion in two branches) for an order:

(1) vacating and dismissing *nunc pro tunc* all claims, motions, orders, and proceedings against CLAUSEN in this action, on the grounds that they have all been void and legally-invalid acts taken in violation of the automatic stay provided as a matter of law by 11 U.S.C. § 362(a)(1); and

(2) establishing liability for an award of damages pursuant to 11 U.S.C. § 362(k) against the PLAINTIFFS and their counsel and in favor of CLAUSEN, who has been injured by their willful violation of the stay provided by Section 362(a)(1) (with the amounts of such damages to be determined later) – plus granting such other and further relief as the Court may determine is just and proper.

The COMPANY DEFENDANTS will be submitting a separate motion to reconsider and vacate the Court's entry of a permanent injunction, an award of damages, and the entry of sanctions against them, which was entered pursuant to their default in this action.  Said motion is being submitted separately by the COMPANY DEFENDANTS because the arguments in support of reconsideration

---

[1] CLAUSEN and the COMPANY DEFENDANTS are now represented by Douglas R. Dick and Stephen L. Sulzer (the latter appearing *pro hac vice*), newly-appearing after CLAUSEN has been proceeding *pro se.*

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

and vacation of the findings and relief entered against them do not involve the automatic stay violation on which the instant motion is based.

## PROCEDURAL BACKGROUND

The parties' dispute grew out of a failed business relationship between PLAINTIFFS and the DEFENDANTS pursuant to which Plaintiff Hammerless Impact Tools sold to CLAUSEN a tool (known as a takedown tool) used in the disassembly of AR-15 rifles and licensed DEFENDANTS to use PLAINTIFFS' marks to market and promote the sale of the tools.  The relationship failed when PLAINTIFFS sent DEFENDANTS a letter in May 2023 demanding that they cease utilizing PLAINTIFFS' brands, trademarks, images, and logos.

PLAINTIFFS filed suit in Superior Court for Spokane, Washington, Case No. 23-2-03519-32, on August 29, 2023, asserting claims for trademark infringement, false association, violations of Washington's Consumer Protection Act, breach of contract, and conversion.  DEFENDANTS denied all liability and counterclaimed for unjust enrichment/quantum meruit.

The parties thought they had settled their dispute on June 28, 2024 on terms set forth in a confidential Settlement Agreement.  PLAINTIFFS now claim in this action that the DEFENDANTS breached the Settlement Agreement and seek damages and injunctive relief for alleged design patent and trademark infringement, state law unfair competition, and breach of the Settlement Agreement.  Complaint

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

(ECF No. 1.)  DEFENDANTS filed their Answer on January 24, 2025 asserting multiple defenses and a counterclaim against PLAINTIFFS for breach of the parties' Settlement Agreement by failing to honor its buy-back provisions.  Answer to Complaint and Counterclaim, ECF No. 33 at 22-35 ¶¶ 1-50.

As described *supra,* this action was commenced by PLAINTIFFS filing their Complaint on December 10, 2024, and the subsequent issuance of Summonses and their employment by PLAINTIFFS' counsel Caleb A. Hatch, Esq., and Johanna R. Tomlinson, Esq., of the law firm of Lee & Hayes, P.C.  However, when PLAINTIFFS' Complaint was filed on December 10, 2024, there was active a Chapter 13 bankruptcy proceeding commenced by CLAUSEN and his wife Jodi Lynn Clausen (hereinafter collectively the "CLAUSENS") in the U.S. Bankruptcy Court for the Eastern District of Washington, Case No. 24-01739-FPC, Chapter 13, *In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors.*  The CLAUSENS had voluntarily commenced that individual bankruptcy proceeding by their bankruptcy attorney filing a Chapter 13 bankruptcy petition on October 24, 2024.

On the same day PLAINTIFFS filed their Complaint in this action, they submitted a motion for entry of a TRO and a preliminary injunction seeking cessation of DEFENDANTS' alleged infringing use of PLAINTIFFS' trademarks or any other confusingly similar terms, and alleged infringement of Plaintiff

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Hammerless Tools' U.S. Design Patent No. D981,199.  Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 9, 9-1.)

On December 18, 2024, the Court denied PLAINTIFFS' request for a TRO and set a hearing for January 27, 2025, on PLAINTIFFS' request for a preliminary injunction.  Order Denying Motion for Temporary Restraining Order.  (ECF No. 18.) That hearing date was extended by the Court to February 7, 2025.  (ECF Nos. 22, 23.)

On February 11, 2025, DEFENDANTS' then counsel provided PLAINTIFFS and the Court with written notice that on October 24, 2024, CLAUSEN had declared bankruptcy under Chapter 13 in the Bankruptcy Court for the Eastern District of Washington.  (ECF No. 40.)

Notwithstanding the legal principles requiring dismissal of the action against CLAUSEN *sua sponte* (discussed in detail in the ARGUMENT *infra*), the Court entered a stay on February 21, 2025.  (ECF No. 41.)

In derogation of the legal principles requiring that PLAINTIFFS *expeditiously discontinue* their action against CLAUSEN upon receiving notice of the active bankruptcy proceeding on February 11, 2025 (also discussed in detail in the ARGUMENT *infra*), on September 19, 2025, PLAINTIFFS moved the Court to lift its stay.  (ECF No. 50.)

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 12 of 56

Notwithstanding the controlling authorities holding that PLAINTIFFS' action against CLAUSEN was void *ab initio,* and that the Court was without power to lift the stay (discussed in detail in the ARGUMENT *infra*), the Court granted the PLAINTIFFS' motion and lifted the stay on September 22, 2025.  (ECF No. 52.)

By September 2025, the cost of defending against this action had exhausted DEFENDANTS' resources to the point where DEFENDANTS' counsel sought to terminate representation of the DEFENDANTS.  *See* Motion for Leave to Withdraw and Counsel of Record dated September 25, 2025.  (ECF No. 25.)  The Court permitted DEFENDANTS' counsel to withdraw on September 30, 2025 (Order Granting Motion for Leave to Withdraw, ECF No. 58), after which CLAUSEN attempted to defend himself *pro se.*

On September 23, 2025, the day after the Court lifted its improvidently entered stay, PLAINTIFFS and their counsel filed a renewed motion for entry of a preliminary injunction (Plaintiffs' Renewed Motion for Preliminary Injunction, ECF No. 53), acting again in blatant and total disregard for their duty to have discontinued the action against CLAUSEN.

On September 25, 2025, the Court set a scheduling conference to be held on October 23, 2025.  Notice Setting Scheduling Conference.  (ECF No. 55.)  That same day, DEFENDANTS' counsel filed their motion seeking to withdraw from representing the DEFENDANTS because of non-payment of fees.  Motion to

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Withdraw as Counsel of Record. (ECF No. 56.) On September 30, 2025, the Court entered an Order permitting DEFENDANTS' counsel to withdraw. (ECF No. 58.) In that Order, the Court informed CLAUSEN that the COMPANY DEFENDANTS could not appear unless represented by licensed counsel and directed CLAUSEN to obtain counsel no later than October 14, 2025. *Id.* at 2.

On October 6, 2025, CLAUSEN filed a motion informing the Court that he was commencing a search for new counsel and seeking an extension of time to respond to PLAINTIFFS' renewed motion for a preliminary injunction. (ECF No. 59.) PLAINTIFFS opposed the motion. (ECF No. 63.) At a status conference held on October 23, 2025, the Court again informed CLAUSEN that the COMPANY DEFENDANTS could not appear in this case unless represented by counsel and warned that the COMPANY DEFENDANTS were facing entry of a default against them. (*See* ECF No. 68 at 2.) The Court granted CLAUSEN's request for extension and set November 6, 2025 as the deadline for his response to PLAINTIFFS' renewed motion for a preliminary injunction. Order Granting Motion for Extension of Time dated October 15, 2025. (ECF No. 64.)

CLAUSEN was unable, notwithstanding diligent and persistent efforts, to obtain counsel to appear on DEFENDANTS' behalf and proceeded as best he could *pro se.* In an Order dated December 11, 2025, the Court accepted the representations made by PLAINTIFFS in support of their renewed motion for a preliminary

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

injunction, granted their renewed motion, and enjoined DEFENDANTS from using PLAINTIFFS' marks and from selling tools with designs that infringe PLAINTIFFS' U.S. Design Patent No. D981,199.  Order Granting Renewed Motion for Preliminary Injunction.  (ECF No. 68.)

On December 30, 2025, acting again in blatant and total disregard for their duty to have discontinued the action against CLAUSEN, PLAINTIFFS filed a motion to compel compliance with the Court's December 11, 2025, preliminary injunction and for sanctions.  Plaintiffs' Motion to Compel Compliance With Court Order and for Sanctions.  (ECF No. 69.)  In a lawsuit that, as will be shown *infra,* was void *ab initio,* PLAINTIFFS sought issuance of an order of contempt, an imposition of monetary sanctions of $500 per day, and an order requiring DEFENDANTS to fully comply with the preliminary injunction within seven days.  (*Id.* at 2, 6.)

Also on December 30, 2025, PLAINTIFFS filed a motion for entry of a default against the COMPANY DEFENDANTS.  Plaintiffs' Motion for Entry of Default Against Defendants Clausen, Inc., AR-TT LLC, and Lilac City, LLC.  (ECF No. 70.)  The Clerk of Court entered the requested default on January 5, 2026. Clerk's Order of Default. (ECF No. 71.) On January 13, 2026, PLAINTIFFS moved for entry of a default judgment, a permanent injunction against the COMPANY DEFENDANTS, and an award of attorneys' fees.  Plaintiffs' Motion for Default

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Judgment and Permanent Injunction Against Defendants Clausen, Inc., AR-TT LLC, and Lilac City, LLC.  (ECF No. 72.)

On January 28, 2026, the Court entered an Order granting PLAINTIFFS' motion to compel compliance with the Court's injunction and for sanctions.  The Court found the COMPANY DEFENDANTS were in contempt of the Court's December 11, 2025 Order granting PLAINTIFFS' motion for a preliminary injunction (ECF No. 68) and ordered the COMPANY DEFENDANTS to submit a declaration of all efforts to comply with the Court's order.  The Court also ordered the COMPANY DEFENDANTS, after a seven-day grace period, to pay a daily fee of $500 until they are in full compliance with the Court's December 11, 2025 Order. In addition, the Court awarded PLAINTIFFS their costs and fees incurred in obtaining the finding of contempt.  Order Granting Motion to Compel Compliance With Court Orders and for Sanctions at 3-4.  (ECF No. 73.)[2]

Because CLAUSEN was still unable to obtain counsel to represent him or the COMPANY DEFENDANTS despite his persistent efforts, on January 30, 2026, he filed a motion as an individual defendant to stay the sanctions imposed in the Court's January 28, 2026 Order.  Motion to Stay Sanctions Pending Confirmation of

---

[2]  PLAINTIFFS requested a total of $4,518 in attorneys' fees incurred in obtaining the finding of contempt and preparing their request for fees.  (ECF No. 74.)

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

Page 16 of 56

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Compliance and Retention of Counsel. (ECF No. 76.) He also filed a motion in his individual capacity for an extension of time to retain counsel for the COMPANY DEFENDANTS. Motion for Extension of Time to Retain Counsel. (ECF No. 77.)

On February 5, 2026, the Court issued an Order denying CLAUSEN'S motions for stay and extension as "too little too late." Order Denying Motion to Stay Sanctions; Motion for Extension of Time to Retain Counsel at 2. (ECF No. 82.)

On February 13, 2026, the Court issued an Order granting PLAINTIFFS' motion for a default judgment and a permanent injunction against the COMPANY DEFENDANTS. Order Granting Plaintiffs' Motion for Default Judgment and Permanent Injunction Against Defendants Clausen, Inc., AR-TT LLC, and Lilac City, LLC. (ECF No. 83.) The Court awarded damages to PLAINTIFFS in the amount of $781,944, which the Court described as being based on "Defendant's profits." *Id.* at 4, 11. In addition, the Court awarded attorneys' fees in the amount of $42,485.50 and costs in the amount of $484.80. *Id.* at 11. Also on February 13, 2026, the Clerk entered a Judgment in a Civil Action against the COMPANY DEFENDANTS for those amounts, with an interest rate on the judgment of 12 percent per annum. (ECF No. 84.)

In what will be shown *infra* to be PLAINTIFFS' and their counsel's ultimate willful and egregious violation of Section 362(a)(1), they filed a motion on February 14, 2026 for an order holding Defendant CLAUSEN (not the COMPANY DE-

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

FENDANTS) in contempt and imposing sanctions on him.   Plaintiffs' Motion for Contempt and for Sanctions.  (ECF No. 85.)  Specifically, PLAINTIFFS requested that the Court issue an order of contempt, order CLAUSEN to pay escalated monetary sanctions of $1,000 per day, and issue a bench warrant for CLAUSEN'S arrest until he comes into compliance with the Court's Orders.  *Id.* at 2, 7-8.

DEFENDANTS' current counsel made their appearances in the case as of March 9, 2026 (ECF Nos. 92, 93), and are preparing, as expeditiously as is humanly possible, a motion to reconsider and vacate on behalf of the COMPANY DEFENDANTS.[3]

## ARGUMENT

The action against individual Defendant CLAUSEN should not have been filed or continued after it was filed on December 10, 2024, when on that date was active his Chapter 13 bankruptcy, a proceeding which had been previously commenced by its filing on October 24, 2024.

---

[3] As noted in the Preliminary Statement *supra,* the COMPANY DEFENDANTS will be submitting a separate motion to reconsider and vacate the Court's entry of a permanent injunction, award of damages, and entry of sanctions against them.  Said motion is being submitted separately by the COMPANY DEFENDANTS because the arguments in support of reconsideration and vacation of the Court's findings and relief entered against them do not involve the Section 362(a)(1) violation on which the instant motion is based.  Said motion is in preparation and will be submitted as quickly as possible.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 18 of 56

This very Court has recognized the operative legal principle in a recent case which is reflective of the applicable law of this Circuit (and the overwhelming majority rule of federal and state courts throughout the nation):  A post-petition "[c]omplaint constitutes a violation of the automatic stay in the Bankruptcy Case and is therefore void."  *Dam v. Waldron*, No. 2:24-CV-00417-SAB, Slip Op., 2025 WL 1069844 at * 2-3 (E.D. Wash. April 9, 2025) (Stanley A. Bastian, Ch. D.J.) ("ORDER DISMISSING CASE," copy appended as Exhibit A), *vacated and remanded for a without-prejudice dismissal,* Appeal No. 25-2459, Memorandum, 2026 WL 777414 (9th Cir. March 19, 2025) (unpub.), copy appended as Exhibit B. As the Ninth Circuit observed in *Dam,* "the complaint was 'of no effect'" as "'violations of the automatic stay are void, not voidable.'"  2026 WL 777414 at *2, quoting *In re Schwartz,* 954 F.2d 569, 572 (9th Cir. 1992).  With the instant Complaint being void *ab initio*, all subsequent actions taken against CLAUSEN by the Plaintiffs and the Court, regardless of their knowledge *vel non* of the automatic stay, have been legally invalid.

As Clausen has been injured by the PLAINTIFFS' willful violation of the automatic stay, liability for his actual damages is mandated by 11 U.S.C. Section 362(k) [formerly (h)], and punitive damages are appropriate under the circumstances, for the violation by the PLAINTIFFS and their counsel, having now caused more than a year of injuries to CLAUSEN.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## I. ALL CLAIMS, MOTIONS, ORDERS, AND PROCEEDINGS AGAINST INDIVIDUAL DEFENDANT JONATHAN CLAUSEN SHOULD BE VACATED AND DISMISSED *NUNC PRO TUNC* AS VOID AND LEGALLY-INVALID ACTS DONE BY THE COURT

All claims motions, orders, and proceedings against individual Defendant Jonathan Clausen should be vacated and dismissed *nunc pro tunc* as void and legally-invalid acts done by the PLAINTIFFS and the Court in violation of Section 362(a)(1) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1). Section 362(a)(1) of the Bankruptcy Code is described in legal parlance as providing for an "automatic stay" when a bankruptcy proceeding is filed. But as shown in Part I.B. *infra,* the legal effect of the statute's wording and its interpretation by the majority of courts nationwide, including the Ninth Circuit and this Court in *Dam,* go much farther than just imposing a "stay" of other proceedings in a colloquial sense.

### A. The Applicable Choice of Law Is That of the Ninth Circuit

In a case like this one involving a design patent, trademark, and state law claims, the Federal Circuit applies regional circuit law to issues unrelated to patent law, and that includes attorney's fees issues not arising from patent law. *E.g., Alifax Holding SpA v. Alcor Scientific LLC*, Nos. 2022-1641, 2022-1723, 2024 WL 2932910 at *4 (Fed. Cir. June 11, 2024) (copy appended as Exhibit C); *Atlas IP, LLC v. Medtronic, Inc.,* 809 F.3d 599, 604 (Fed. Cir. 2015). Thus, in a case such as this one, this Court should apply the law of the Circuit in which the District Court is

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 20 of 56

located with respect to interpretation or application of the Bankruptcy Code's automatic stay, as these are not matters within the Federal Circuit's special competence.

Accordingly, Ninth Circuit law applies to the first and second branches of CLAUSEN's motion.

**B. The Ninth Circuit Embraces the Nationwide Overwhelming Majority Interpretation of 11 U.S.C. § 362(a)(1), That a Civil Commercial Action Filed Against an Individual Subsequent to the Individual's Filing of an Active Bankruptcy Proceeding Is Void *ab Initio*, and That Any Acts Taken in the Commercial Action Against the Individual Are Legally Invalid**

*In re Schwartz*, 954 F.2d 569 (9th Cir. 1992), is the leading Ninth Circuit precedent regarding the effect of Section 362(a)(1). *Schwartz*, decided some 34 years ago, "clarifie[d] this area of the law by making clear that violations of the automatic stay are void, not voidable." 954 F.2d at 571. The *Schwartz* panel specifically held that legal process (a tax assessment by the IRS, apparently unaware of a filing of bankruptcy) that was issued post-petition was void, and that even later it could not come back to life. *Id.* at 570-71.

As the Ninth Circuit pointed out in *Schwartz,* "The majority of courts have long stated that violations of the automatic are void and of no effect." 954 F.2d at 572, citing cases. Indeed, from the west coast to the east, the majority rule is that a when a "complaint was filed in contravention of the automatic stay arising from . . .

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 21 of 56

earlier filing of a petition for bankruptcy," such a complaint is "'void and without effect' even when there is no actual notice of the stay." *Select Portfolio Servicing, Inc. v. Worobec*, 178 So.3d 971, 2015 WL 7781609 (D. Ct. App. Fla. 2015) (dismissing the action).

That includes state courts. Even more recently than the survey of courts reported in *Schwartz*, decisions have come down like *Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78, 744 N.E.2d 349 (Ill. App. 3 Dist. 2001). There the Illinois Appellate Court cited *Schwartz* and ruled on facts – like CLAUSEN's here – that where defendant "Buchen filed his bankruptcy petition," and the plaintiff "Little Texas filed its complaint against Buchen for damages two months later," [t]he fact that Buchen's bankruptcy petition was later dismissed is of no consequence[,]" as "the automatic stay provision voided Little Texas' complaint at its filing." 744 N.E.2d at 351.

The Appellate Court in *Buchen* made the right call that "[a]s the stay is 'automatic,' no further action on Buchen's part was required," and "[t]he stay applied to Little Texas whether or not it had notice of the [bankruptcy] filing." *Id.* It correctly decreed that the lower court's order of default awarding Little Texas $45,000 in damages and $3,500 in attorney's fees, and any subsequent orders by the court, were vacated. Additionally, it held that any moneys paid by Buchen to Little Texas as a result of the trial court's order of default were to be returned to Buchen. *Id.*

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 22 of 56

CLAUSEN should be afforded no worse a decree here.

To the same effect is this Court's decision in *Dam,* which rests on solid footing, inasmuch as it relies upon the Ninth Circuit's controlling decision in *Schwartz. Dam,* 2025 WL 1069844 at *2. And last week's affirmance of *Dam* by the Ninth Circuit, while non-precedential, expressed the same view: "[T]he complaint was 'of no effect'" as "[v]iolations of the automatic stay are void, not voidable[,]" quoting *Schwartz.*

The same legal analysis should be followed here. PLAINTIFFS' commercial action against CLAUSEN was filed on December 24, 2024, when CLAUSEN's Chapter 13 bankruptcy proceeding was active, having commenced some two months earlier on October 24, 2024. PLAINTIFFS' commercial action could have been filed prior to commencement of the bankruptcy proceeding, but that was not done. Under these circumstances, section 362(a)(1) and *Schwartz's* stake in the heart of the PLAINTIFFS' December 2024 lawsuit legally killed that vampire, once and for all, and neither the PLAINTIFFS nor this Court could or should have tried to resuscitate it. Instead, it's time for a proper funeral.

The U.S. Supreme Court indicated as much, construing the statutory predecessor to Section 362(a)(1)'s automatic stay, in *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 346 (1940): "[T]he action  of the . . . court was not merely

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

erroneous but was beyond its power, void, and subject to collateral attack." That collateral attack is now mounted, by the first branch of this motion.

### C. The Majority Rule Embraced by the Ninth Circuit Furthers the Automatic Stay's Purposes – to Give Breathing Room to Financially-Pressed Debtors and Facilitate Consolidation of All Creditors' Claims in the Bankruptcy Court

Courts such as the Ninth Circuit have interpreted the automatic stay provision of section 362(a)(1) consistent with its plain wording, which stops the commencement or continuation of a suit such as this one, in part by precluding the issuance or employment of court process. The courts have done this in a way that is consistent with and furthers the statute's purposes to give breathing room to financially-pressed debtors and to facilitate consolidation of all creditors' claims in the bankruptcy court.

Although Section 362 is lengthy, Sections 362(a)(1) and (6) are especially relevant:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of —

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 24 of 56

***

**(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1), (6).

A logical construction of the automatic stay appears in *Bell v. Niagara Mohawk Power Corp.*, 173 Misc.2d 1042, 662 N.Y.S.2d 682 (Sup. Ct. N.Y. Co. 1997), hewing to the accepted canon of construction that all words in a statute matter:

> [T]he plain meaning of 11 USC § 362 is that the commencement of an action during the pendency of a bankruptcy proceeding is invalid. If the action is dormant until the lifting of the stay, the language in the statute stating that the commencement of an action is stayed would be superfluous and meaningless. Moreover, the purpose of the statute is to provide fundamental protection to the debtor from not only the continuation of actions already commenced but the commencement of new actions as well. (*See, In re Schwartz*, 954 F2d 569 [9th Cir 1992], *supra*.)

173 Misc.2d at 1044, 662 N.Y.S.2d at 683-84.

The New York court thereby gave proper effect to the wording in Section 362(a)(1) which expressly blocks the issuance or employment of process and thereby renders null and void the process served on CLAUSEN in this action and invalidates all actions taken with respect to CLAUSEN by PLAINTIFFS and the Court invalid.

In voiding the commercial action filed against the debtor in *Bell,* the New York court took the same approach as the Ninth Circuit took in *Schwartz.* As the Ninth Circuit explained in *Schwartz:*

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

Page 25 of 56

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

> If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. . . . Nothing in the Code or the legislative history suggests that Congress intended to burden a bankruptcy debtor with an obligation to fight off unlawful claims.

954 F.2d at 571-72.

The Ninth Circuit concluded and held in *Schwartz:*

> If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization.
>
> Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable.

*Id.* at 571.

In short, the majority rule that suits brought in violation of the automatic stay are void *ab initio* is consistent with Section 362(a)(1)'s wording and Congress's purposes to give breathing room to financially-pressed debtors and facilitate consolidation of all creditors' claims in the bankruptcy court.

**D.  PLAINTIFFS Should Never Have Commenced This Action Against CLAUSEN When They Did and Violated Their Obligation to Discontinue It When CLAUSEN's Then Counsel of Record Brought the Active Bankruptcy Proceeding to the Attention of PLAINTIFFS' Counsel**

CLAUSEN's Notice of Pending Bankruptcy and Automatic Stay (ECF No. 40) proves that notice of CLAUSEN's active bankruptcy proceeding was conveyed by CLAUSEN's then counsel to PLAINTIFFS' counsel on February 11, 2025 –

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 26 of 56

including specifically the salient fact that the "Bankruptcy Case was filed on October 24, 2024." Even a copy of Official Form 309L, the Notice of Chapter 13 Bankruptcy Case, was exhibited. As this action was not filed until December 10, 2024, and it could have been filed prior to commencement of the bankruptcy proceeding, it unquestionably violates the provisions of Section 362(a)(1).

At the very least, upon such notice, PLAINTIFFS and their counsel had an immediate affirmative duty to discontinue this action, rather than waiting for this Court to stay it, as was erroneously done ten days later by the Court on February 21, 2025. (ECF No. 41.) As held by the Ninth Circuit in *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002), "[c]onsistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, . . . § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions."

But PLAINTIFFS did no such thing, waited for the Court merely to stay the action, and when the Court erroneously did that, acquiesced in that pausing of the case. Then, on September 19, 2025, PLAINTIFFS filed a motion to lift the stay. (ECF No. 50.) In response to that motion, on September 22, 2025, the Court erroneously lifted its stay (ECF No. 52), whereupon PLAINTIFFS (by their counsel) immediately launched into heavy motion practice against CLAUSEN, beginning on September 23, 2025 (ECF Nos. 53 *et seq.*), and continuing in repeated and relentless

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

fashion to the present day.[4]  This was patently violative of Section 362(a)(1) and *Schwartz* by PLAINTIFFS and their counsel, beginning on February 11, 2025, and subsequently.

While PLAINTIFFS may argue that their response to notice of the active status of the bankruptcy proceeding was consonant with the Court's erroneous imposition of a stay, that is not what *Leetien* required.  *Leetien* required the PLAINTIFFS to take expeditious steps to discontinue their action against CLAUSEN in this non-bankruptcy forum.  Indeed, the Ninth Circuit in *Leetien* actually blessed damages against the creditor and the creditor's law firm for not acting quickly enough when they took 23 days to discontinue their suit in a non-bankruptcy forum against the debtor.  309 F.3d at 1212, 1215-16.

In *In re Achterberg,* 573 B.R. 819 (Bankr. E.D. Cal. 2017), in the section of its decision labeled, "The Person Violating the Automatic Stay Has the Burden of Avoiding the Violation, and When a Violation Occurs, to Remedy Such Violation," the Bankruptcy Court instructed:

> The automatic stay is just that, automatic, with no obligation on a debtor to affirmatively enforce the stay for it to be effective.  When a creditor has notice of a bankruptcy case, it is the creditor's burden to

---

[4]  With the case re-started and CLAUSEN financially unable to pay his counsel, he was beset almost immediately on September 25, 2025, with a motion for counsel's withdrawal (ECF Nos. 56 *et seq.*), which was granted by the Court, leading CLAUSEN to need to proceed *pro se,* but ineffectively, for his defense.

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

determine the extent of the automatic stay and seek such relief as is appropriate.

The automatic stay imposes an affirmative duty of compliance by the creditor. . . .  The automatic stay imposes an affirmative duty to discontinue actions in violation of the stay.

573 B.R. at 830 (omitting case citations in footnotes).

Stated more succinctly, "[u]pon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to a status quo position as of the time of the filing of the petition."  *In re Braught*, 307 B.R. 399, 403 (Bankr. S.D.N.Y. 2004), citing *In re Sucre,* 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998).

Here PLAINTIFFS and their counsel failed to discontinue their action in this Court against CLAUSEN upon clear notice of his active bankruptcy proceeding – which had been commenced almost two months before they even filed the action *sub judice* – compounding their ongoing violation of Section 362(a)(1).

**E.  Because This Suit Against CLAUSEN Was Void *Ab Initio,* the Court Was Without Authority to Enter or Lift a Stay, Its Subsequent Rulings With Respect to CLAUSEN Are Legally Invalid and Should Be Vacated *Nunc Pro Tunc,* and PLAINTIFFS' Claims Against CLAUSEN Should Be Dismissed**

Under Section 362(a)(1) and *Schwartz,* when CLAUSEN's then counsel of record brought the pending Bankruptcy Proceeding to the Court's attention, the Court was without authority to stay the action and was without authority to lift its stay and entertain and grant motions against CLAUSEN.  And because the action

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

against CLAUSEN was void *ab initio,* the Court's rulings with respect to CLAUSEN have been legally invalid and should be vacated *nunc pro tunc.* Further, PLAINTIFFS' claims against CLAUSEN should have been dismissed outright.

CLAUSEN acknowledges that in the Notice of Pending Bankruptcy, CLAUSEN's then-counsel (erroneously) asked this Court to stay, rather than dismiss, the proceedings in this action. (ECF No. 40 at 2.) Then-counsel's request that the Court enter a stay, rather than an outright dismissal, does not alter the Court's legal duty under Section 362(a)(1) and *Schwartz* to have dismissed this action outright upon receiving the Notice of Pending Bankruptcy. Because the action against CLAUSEN was ***void ab initio, not voidable,*** (*Schwartz,* 954 F.2d at 571), nothing said by CLAUSEN's then-counsel requesting entry of a stay should have been of any effect, nor could it give PLAINTIFFS an argument here of invited error.

The bankruptcy courts have indicated that the courts have the power and are obliged to act *sua sponte* to dismiss actions brought in violation of Section 362(a)(1) even where the debtor did not request that relief. *See In re 222 Liberty Assocs.,* 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990); *In re Carr*, No. 18-80386, 2019 WL 7840665 at *1-2 (Bankr. M.D.N.C. Nov. 18, 2019), copy appended as Exhibit D.

Under *Schwartz* and the Court's power to act *sua sponte* upon learning of the prior-filed bankruptcy proceeding, the Court should have immediately dismissed the action, should not have entered a stay, and should not have re-started proceedings or

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 30 of 56

permitted further motion practice against CLAUSEN.  The Court erroneously failed to do that, but because all its rulings against CLAUSEN have been interlocutory, it is not too late for the Court to course-correct by vacating and dismissing *nunc pro tunc* all claims, motions, orders, and proceedings against CLAUSEN.

To do anything else and continue to make adverse rulings against CLAUSEN would itself constitute judicial acts without validity.  *See In re HP Bennett, LLC*, No. 22-00106-ELG, 2023 WL 8881858 at *4 (Bankr. D.C. Dec. 22, 2023), copy appended as Exhibit E) ("[a]ny subsequent actions dependent upon an act that violates the automatic stay themselves also violate the automatic stay and are void."

The right path is still beckoning here:  *Vacatur* and dismissal *nunc pro tunc* of all proceedings of every kind taken against CLAUSEN in this action which has been void from the moment it was filed.  The Court's own words in *Dam* light the way: where a "Complaint constitutes a violation of the automatic stay . . . [it] is void," and the "Complaint is dismissed."

The Court's actions against CLAUSEN so far have deviated from those words. But the Federal Circuit Court of Appeals has made clear in a patent case before your Honor that the Court always may reconsider its own interlocutory orders provided it has not been divested of jurisdiction over the orders.  *In re Van Well Nursery Inc.*, No. 2025-131, 2025 WL 2621840 at *1 (Fed. Cir. Sept. 11, 2025), copy appended as Exhibit F, citing *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 888-

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 31 of 56

89 (9th Cir. 2001) (noting that law of the case doctrine is wholly inapposite to a district court's power to reconsider its own interlocutory order provided that the district court still has jurisdiction over the order).

The only portion of this lawsuit concerning CLAUSEN which should survive upon proper judicial revisiting of the matter (pursuant to F.R.C.P. 54(b) and the Court's inherent authority) is CLAUSEN's Counterclaim against Plaintiffs for their breach of a settlement agreement to buy back unsold product.  (*See* Answer to Complaint and Counterclaim at 25-35 ¶¶ 1-50.  (ECF No. 33.)  As the Ninth Circuit held in *Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995):

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis.  Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case.  Within a single case, some actions may be stayed, others not.  Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

68 F.3d at 1137, quoting and adopting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1992).  Notably here the Counterclaim asserted is not *against* the debtor, but rather *for* the debtor, and under *Parker* it should survive.

## II. REDRESS IS WARRANTED FOR THE SUBSTANTIAL INJURY CAUSED TO A FINANCIALLY AND EMOTIONALLY DISTRESSED DEFENDANT CLAUSEN BY MORE THAN A

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## YEAR OF PLAINTIFFS PURSUING THIS ACTION IN VIOLATION OF THE BANKRUPTCY CODE

Defendant CLAUSEN seeks an order from the Court pursuant to 11 U.S.C. § 362(k) (formerly Section 362(h)) holding PLAINTIFFS and their counsel liable for violating Section 262(a)(1) and awarding actual damages, costs, and attorneys' fees (including attorneys' fees and disbursements incurred in prosecuting his claim for damages), as well as punitive damages, all of those amounts to be proven later upon completion of CLAUSEN's efforts to vindicate his right to Section 362(a)(1)'s full protection.

Section 362(k)(1) is relatively short and has unquestionably been violated by PLAINTIFFS and their counsel:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1) (emphasis added).

Use of the word "shall" here signifies that an award of damages for an injurious violation of Section 362(a)(1) is mandatory rather than precatory (as that is the way the word "shall" is usually construed). And the burden of showing the predicate of willfulness is easily met in this case.

CLAUSEN has been force-marched by PLAINTIFFS' invalid action in this Court, repeatedly having to respond to motions that never should have been filed at

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 33 of 56

all, and now unlawfully sought to be arrested and imprisoned. The parties who are responsible for this stick-up, masquerading as legitimate IP litigation, figuratively stand at the bar: PLAINTIFFS' counsel backed by their clients with their invalid claims.

While the actual merits of PLAINTIFFS' claims are immaterial to this motion, their complete lack of merit (which will be discussed in detail in the COMPANY DEFENDANTS' motion) will be shared briefly here:

- PLAINTIFFS' claim for design patent infringement is toothless under the Federal Circuit's well-settled exhaustion doctrine, because the only tools sold by CLAUSEN and the COMPANY DEFENDANTS were purchased from Plaintiff HAMMERLESS TOOLS, and those sales to CLAUSEN, made without conditions, exhausted the patent grant. PLAINTIFFS' only evidence that DEFENDANTS sold more tools than they bought from PLAINTIFFS is mere puffery on a website, and is denied under oath by CLAUSEN.

- PLAINTIFFS' claims for trademark infringement and unfair competition are equally toothless under the equitable estoppel doctrine, because HAMMERLESS TOOLS requested that the DEFENDANTS use its marks on the DEFENDANTS' packages and advertising to assist the PLAINTIFFS in growing the PLAINTIFFS' business.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 34 of 56

- PLAINTIFFS' claim for breach of the settlement agreement entered into by the parties in June 2024 is without basis, inasmuch as it was PLAINTIFFS who breached the agreement first by refusing to buy back unsold product.

All of that being said, we are not here to establish the lack of merit in PLAINTIFFS' claims against the DEFENDANTS, but to obtain an order establishing that PLAINTIFFS and their counsel are liable for their willful violation of Section 362(a)(1). As shown below, their liability is apparent and inescapable.

### A. PLAINTIFFS and Their Counsel Willfully Violated Section 362(a)(1), Which Mandates an Award of Damages Against Them

PLAINTIFFS and their counsel "willfully" violated Section 362(a)(1) when they (1) knew that its automatic stay was in effect and (2) intentionally took actions that constitute stay violations. They need not have had the specific intent to violate Section 362(a)(1); they need only have deliberately taken actions against CLAUSEN that violated the statute:

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believed in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*E.g., In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992), quoting *In re Bloom,* 875 F.2d 224, 227 (9th Cir. 1989).

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

**1.  PLAINTIFFS and Their Counsel Knew of the Automatic Stay Provided by 11 U.S.C. Section 362(a) and the Active Bankruptcy Proceeding Filed on October 24, 2024**

PLAINTIFFS and their counsel cannot claim that they were unaware of Section 362(a)(1) or the active bankruptcy proceeding filed on October 24, 2024. ECF No. 40 is the key notice. It in writing represented that Clausen's "Bankruptcy Case was filed on October 24, 2024." It proceeded to quote significant portions of 11 U.S.C. §§ 362(a)(1) and (6). Exhibited was the Official Form 309L "Notice of Chapter 13 Bankruptcy Case." Even if PLAINTIFFS and their counsel were unaware of the active bankruptcy proceeding when they filed their action against CLAUSEN on December 10, 2024, they indisputably became aware of it as of February 11, 2025 when they received ECF No. 40.

Later the PLAINTIFFS, by their same attorney in this action again against CLAUSEN, *i.e.,* Caleb A. Hatch, Esq., of Lee & Hayes, P.C., filed a Notice of Appearance in the bankruptcy proceeding for the Plaintiffs as parties interested in Clausen's bankruptcy and requested all "petitions." (ECF No. 75 in *In re Clausen*, No. 24-01739-FPC13 (Bankr. E.D. Wash.).

**2.  Even After PLAINTIFFS and Their Counsel Had Knowledge of the Active Bankruptcy and Section 362(a)(1), They Took Deliberate Actions Which Violate the Statute, and Failed on February 11,**

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 36 of 56

### 2025 or at Any Time Thereafter to Discontinue Their Action Against CLAUSEN

Even after PLAINTIFFS and their counsel obtained knowledge on February 11, 2025, of CLAUSEN's active bankruptcy proceeding, they failed to discontinue their action against CLAUSEN, even moving seven months later, on September 19, 2025, to lift the Court's improvidently-entered stay. (ECF No. 50.) The PLAINTIFFS failed to comply with Section 362(a)(1) by affirmatively seeking to unstay/re-start a case against CLAUSEN that should have been dismissed by them (and the Court). And because their action against CLAUSEN was void *ab initio,* their violation of Section 362(a)(1) continued with every deliberate step that PLAINTIFFS took after the stay was erroneously lifted, relentlessly filing motions, briefs, and affidavits in pursuit of their claims against CLAUSEN. (*See* Procedural Background *supra* and ECF Nos. 53-85.)

As discussed *supra*, it is a violation of Section 362(a)(1) for a creditor who is aware of an antecedent, active bankruptcy proceeding not to take expeditious affirmative steps to discontinue a post-petition litigation against the debtor. That is true regardless of what the debtor does, as the burden is not on the debtor or the Court, but rather on the creditor.

In *Leetien*, 309 F.3d 1210, the Ninth Circuit affirmed damages under 11 U.S.C. Section 362(h) (now (k)) against a creditor and its counsel jointly and

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 37 of 56

severally for waiting 23 days after their awareness of the automatic stay to effect a discontinuance of litigation in a non-bankruptcy forum which they had commenced against the debtor post-petition.

Similarly, *Achterberg* holds that "'the automatic stay requires a creditor . . . to remediate acts taken in ignorance of the stay,'" and "[t]he automatic stay imposes an affirmative duty to discontinue actions in violation of the stay." 573 B.R. at 830-31.

*Carr* also makes clear that PLAINTIFFS and their counsel here were obliged to take expeditious action to dismiss their suit against CLAUSEN. 2019 WL 7840665 at *2 (creditor Jordan "is directed to take all action necessary to promptly dismiss the state court action . . . .").

PLAINTIFFS and their counsel in the case at bar have failed to ever do what was required to discontinue their action against CLAUSEN. Rather than dismissing their action against CLAUSEN, they blithely moved the Court in September 2025 to unstay claims that they knew or should have known were void from the moment PLAINTIFFS' Complaint was filed on December 10, 2024. (ECF No. 1.) Instead of dismissing their claims against CLAUSEN and restoring him to the *status quo ante* as required by the cases cited hereinabove, they poured on the gas at the first opportunity they apparently thought was available to them to make his life a litigation hell – including their latest motion to throw him in jail.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 38 of 56

**B.  Section 362(k) Mandates Liability for Significant Actual Damages Incurred by CLAUSEN as a Result of PLAINTIFFS' and Their Counsel's Egregious Violations of Section 362(a)(1)**

Section 362(k) provides for mandated recovery of "actual damages, including costs and attorney's fees." Unlike many fee-shifting statutes, attorney's fees are included within the definition of "actual damages." And in the Ninth Circuit, the attorney's fees provision includes additionally the fees expended to claim the damages. *In re Schwartz-Tallard*, 803 F.3d 1095, 1097-1101 (9th Cir. 2015) (*en banc*).

Now that CLAUSEN is represented by counsel, substantial attorneys' fees and expenses are being incurred to vacate what the PLAINTIFFS have unlawfully wrought in this Court in violation of Section 362(a)(1). Those fees and the resulting economic damage to CLAUSEN will continue to grow until PLAINTIFFS' ongoing violation of Section 362(a)(1) is discontinued and the Court returns CLAUSEN to the *status quo ante.*

In addition, CLAUSEN's actual damages include not only his economic damages, but also emotional damages. The latter can be established not only by medical evidence, but also by common-sense evidence of egregious conduct or simply circumstances making it obvious that a reasonable person would suffer significant emotional harm. *Lysyy v. Deutsche Bank Nat'l Trust Co.*, No. C24-0062JLR 2025 WL 563349 at *5-6 (W.D. Wash. Feb. 20, 2025), copy appended as

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 39 of 56

Exhibit G, citing *In re Dawson,* 390 F.3d 1139, 1149-50 (9th Cir. 2004),[5] and *In re Copeland,* 441 B.R. 352, 367 (Bankr. W.D. Wash. Aug. 16, 2010).

CLAUSEN has suffered considerable emotional distress by having to face the significant damages exposure claimed in PLAINTIFFS' action against him. Notwithstanding diligent and extensive efforts to obtain legal representation after his attorneys were permitted to withdraw on September 30, 2025 (ECF No. 58), CLAUSEN was unable until recently to obtain counsel.  From October 1, 2025 until March 9, 2026 (*see* ECF Nos. 92, 93), CLAUSEN has had to try to defend himself *pro se* against PLAINTIFFS' aggressive motion practice in pursuit of their meritless, but sizable claims.  It has been an unsuccessful, highly stressful, and emotionally daunting experience, to say the least, culminating in PLAINTIFFS and their counsel seeking an order to have CLAUSEN arrested.  (ECF No. 85.)  Fear is a powerful, emotionally harmful emotion, and fear of being thrown in jail was real for CLAUSEN as. until recently, he had no available alternative to proceeding *pro se*.

### C.  PLAINTIFFS and Their Counsel Egregiously and Maliciously Violated Section 362(a)(1), Which Warrants an Award of Punitive Damages Against Them

Section 362(k) provides that "punitive damages" are included in a mandated recovery "in appropriate circumstances."  Those circumstances are present here, a

---

[5] *Dawson* was abrogated on other grounds in *In re Gugliuzza,* 852 F.3d 884 (9th Cir. 2017).

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE AND TO ESTABLISH LIABILITY FOR DAMAGES CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 40 of 56

case in which PLAINTIFFS and their counsel have displayed a reckless or callous disregard for the law and have egregiously violated Section 362(a)(1).

### 1. PLAINTIFFs Are Sophisticated and Moneyed LLCs, Not a Mom-and-Pop Shop

Ability to pay and PLAINTIFFS' sophistication are clearly relevant as to punitive damages. Here there are not one, but two business entities in manufacturing operation for years (one a decade) and structured as in-state and out-of-state LLCs. Against CLAUSEN alone in recent years they have spent a fortune in legal fees, suing him twice, with claims of possession of significant intellectual property. Yet the PLAINTIFFS are small enough that decisions which they made in violation of Section 362(a)(1) were presumably not made by some rogue employee, but rather by their principal deponent, James Goss.

### 2. A Law Firm with Two Involved Lawyers, as Officers of the Court with Professional Responsibilities of Competence, Should Have Known Better Than to Continue Their Action Against CLAUSEN in Blatant Violation of Section 362(a)(1)

PLAINTIFFS' counsel, Caleb A. Hatch and Johanna R. Tomlinson of Lee & Hayes, P.C., as officers of the Court, had a professional responsibility of competence. Even if they were to get a "pass" for recklessly not doing a PACER search prior to filing the Complaint against CLAUSEN and failing to find CLAUSEN's pending bankruptcy – which, of course, they should not be given – they unquestionably

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 41 of 56

should have known better than to continue their action against CLAUSEN after receiving actual notice on February 11, 2025 of CLAUSEN's active bankruptcy proceeding.

Instead, they engaged in a pattern of relentless and aggressive litigation tactics against CLAUSEN with devastating effects:  (i) impoverishing him to the point where he lost his then litigation counsel and had to proceed *pro se;* (ii) contributing to his inability to make all monthly payments under bankruptcy plans; (iii) fining him $500 daily; and (iv) moving for an increase of his fine to $1,000 daily and for him to be arrested.  All of this was done by PLAINTIFFS and their counsel in a federal suit against CLAUSEN that was a complete nullity from the time it was filed on December 10, 2024.

This checks all the boxes for recklessness, callousness, egregiousness, maliciousness, and reprehensibility and is quite sufficient to warrant an award of punitive damages, jointly and severally, against PLAINTIFFS and their counsel.

PLAINTIFFS' counsel's aggressive litigation tactics are borne out in the Court docket.  *See* ECF No. 50 (moving to lift the stay of an action they were obliged to have dismissed months earlier), No. 53 (renewing their motion for entry of a preliminary injunction), No. 69 (moving for entry of an order of contempt, imposition of monetary sanctions of $500 per day), and No. 85 (moving for an Order increasing CLAUSEN's fine to $1,000 daily and threatening CLAUSEN'S arrest).

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 42 of 56

The evidence of repeated harms to CLAUSEN appears in numerous ECF documents in this case, including, without limitation, No. 56 (Motion for leave to withdraw as CLAUSEN's counsel for non-payment), No. 51 (Bankruptcy Order dismissing case for non-payment), and No. 73 (Order fining CLAUSEN $500 daily).

Reprehensible and interconnected misbehavior warrants punitive damages. *In re Kaufman,* 315 B.R. 858, 869-71 (Bankr. N.D. Cal. 2004) (creditor's cruel series of interconnected events designed to denude an individual debtor for economic advantage).

Moreover, in the case at bar, PLAINTIFFS' attorneys recklessly filed suit without first doing a simple PACER search for CLAUSEN's name. Doing so would have revealed his active bankruptcy proceeding filed on October 24, 2024, in the Bankruptcy Court for the Eastern District of Washington, before they filed suit in this Court on December 10, 2024.

Even if PLAINTIFFS and their counsel did not learn of CLAUSEN's pending bankruptcy proceeding until February 11, 2025, when advised of it by CLAUSEN's then counsel, they callously failed to discontinue it expeditiously against CLAUSEN as required by law. Reliance upon CLAUSEN's counsel as to what to do or even upon the Court as to what was needed (even if those others seemed to think a mere stay pending the bankruptcy case would be sufficient) was, at a minimum, rank incompetence on the part of PLAINTIFFS' attorneys.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 43 of 56

Worse, the approach taken by PLAINTIFFS' counsel may have been driven by PLAINTIFFS (and/or counsel) trying to use the cost of defending against PLAINTIFFS' claims as a bludgeon to force CLAUSEN to default.

The duty of determining what to do in order to remediate a self-created violation of Section 362(a)(1) is not upon anyone other than the PLAINTIFFS and their counsel, and what they were required to do was quite simple:  They were obliged to discontinue expeditiously their suit against Clausen.[6]  PLAINTIFFS and their counsel must now face the music of liability for damages arising from circumstances of their own continuing creation.

### 3.  The Public Interest Would Be Served by an Award of Punitive Damages

Section 362(k)'s provision allowing an award of punitive damages in appropriate circumstances does not specify the circumstances that are appropriate, but general case law regarding punitive damages instructs that factors to be considered are:  (i) the nature of the acts; (ii) the amount of compensatory damages awarded; and (iii) the malefactor's wealth/resources.  *Professional Seminar*

---

[6]  PLAINTIFFS cannot hide behind their grossly incompetent counsel.  As the court observed in *In re LeGrand*, 638 B.R. 151 (Bankr. E.D. Cal. 2022), business parties "can protect themselves against local counsel who run roughshod over the bankruptcy automatic stay" by creating "an appropriate prophylactic system to assure compliance with basic bankruptcy protections of debtors" and "actually enforc[ing] its system."  638 B.R. at 153, 162.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 44 of 56

*Consultants v. Sino American Tech. Exchange Council, Inc.,* 727 F.2d 1470, 1473 (9th Cir. 1984); *Kaufman,* 315 B.R. at 869.

In *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809 (1996), the Supreme Court indicated that the most important of these factors is the degree of reprehensibility of the malefactor's conduct.

In addition, the Supreme Court has made clear that the purposes of punitive damages in civil cases are to punish the miscreants and deter similar egregious misconduct by others. *BMW of North America,* 517 U.S. at 575, 116 S.Ct. at 1599; *State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S.Ct. 1513, 1519-20, 155 L.Ed.2d 585 (2003). "It is settled that, in addition to extra recompense . . . , punitive damages serve legitimate governmental and societal interests in punishing unlawful conduct and deterring its repetition." *In re Sundquist,* 566 B.R. 563, 610 (Bankr. E.D. Cal. 2017) (awarding $45 million in punitives against giant bank).

In the case at bar, accomplishing those objectives will involve deterring similar violations of Section 362(a)(1), so as to protect the especially vulnerable class of persons such as CLAUSEN who seek relief in the bankruptcy courts. *See, e.g., Achterberg*, 573 B.R. at 852 (even a small lender should pay punitive damages in the modest amount of $15,000.00, "necessary to deter . . . from continuing to engage in such conduct, ignoring its obligations under the automatic stay, and make

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

it clear that there is no economic incentive to violate the stay and not correct a continuing violation of the automatic stay."); *In re Moon Rushmore Loan Mgt. Servs., LLC*, No. 2:22-cv-01126-APG, 2023 WL 1779643 at *10-13 (D. Nev. Feb. 6, 2023) (where (as here) a debtor was financially vulnerable and the misconduct was repeated, that was enough for the District Court to award punitive damages in excess of $128,000), copy appended as Exhibit H.

## CONCLUSION

For the foregoing reasons, Defendant CLAUSEN'S motion should be granted in its entirety and an order should be entered:  (1) vacating and dismissing *nunc pro tunc* all claims, motions, orders, and proceedings in this action against CLAUSEN; and (2) establishing the liability of the PLAINTIFFS and their counsel for actual and punitive damages to CLAUSEN pursuant to 11 U.S.C. § 362(k), with the amount of such damages to be determined subsequently.

In addition, the Order should grant to Defendant CLAUSEN such other and further relief as the Court may determine is just and proper.

A proposed form of Order is being filed herewith.

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 46 of 56

Dated: March 25, 2026          Respectfully submitted,


                               /s/ *Stephen L. Sulzer*
                               Stephen L. Sulzer
                               (appearing *pro hac vice*)



                               Douglas R. Dick
                               ROBERT T. WRIGHT, WSBA #54075
                               DOUGLAS R. DICK, WSBA #46519
                               *Attorney for Defendants Jonathan Clausen,*
                               *Clausen, Inc., AR-TT LLC, and  Lilac City,*
                               *LLC*

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 47 of 56

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 25th day of March, 2026, I caused to be served a true and correct copy of the foregoing *Defendant Jonathan Clausen's Motion to Vacate and to Establish Liability for Damages* to be electronically filed with the Clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. This was also served as noted below:

Caleb Hatch
Johanna R. Tomlinson
LEE & HAYES, P.C.
601 W. Riverside Ave, Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com

☐ VIA HAND DELIVERY
☐ VIA U.S. MAIL
☐ VIA OVERNIGHT MAIL
☐ VIA FACSIMILE
☒ VIA ECF

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 25th day of March 2026.

_____
**Brendan Petro,** Legal Assistant
WHC Attorneys, PLLC

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 48 of 56

# EXHIBIT A

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 49 of 56

KeyCite Blue-Striped Flag

Appeal Filed by Dam v. Waldron, et al., 9th Cir., April 16, 2025

2025 WL 1069844

Only the Westlaw citation is currently available.

United States District Court, E.D. Washington.

Jun DAM, Plaintiff,

v.

Mark D. WALDRON, Chapter 7 Panel Trustee; Pamela M. Egan, Attorney to Chapter 7 Trustee; Potomac Law Group PLLC; and Giga Watt Bankruptcy Estate, Defendants.

No. 2:24-CV-00417-SAB

|

Signed April 9, 2025

## Attorneys and Law Firms

Jun Dam, San Francisco, CA, Pro Se.

Pamela M. Egan, Potomac Law Group, Seattle, WA, for Defendants Mark D. Waldron, Potomac Law Group PLLC.

Pamela M. Egan, Seattle, WA, Pro Se.

## ORDER DISMISSING CASE

Stanley A. Bastian, Chief United States District Judge

*1 Before the Court is Defendants' Motion to Dismiss Complaint, ECF No. 15, and related Motion for Judicial Notice, ECF No. 18. Plaintiff is pro se. Defendant is represented by Pamela Egan. The motion was heard without oral argument.[1]

## BACKGROUND

The Giga Watt Project was formed to build and run a large-scale cryptocurrency mining operation. As part of the project, Giga Watt sold so-called "WTT Tokens" that entitled a token purchaser to use electricity generated by the Giga Watt facility to mine and generate cryptocurrency. The sales proceeds from the WTT Tokens totaled more than $22 million, which was held by Perkins Coie LLP ("Perkins") in an escrow account. After the initial sale of tokens was complete, Perkins provided refunds to some purchasers, paying them from the escrow fund. Perkins subsequently transferred $21.6 million to Giga Watt entities, and by February 22, 2018, the escrow account was depleted.

Giga Watt filed for Chapter 11 bankruptcy on November 19, 2018, in the Eastern District of Washington ("the Bankruptcy Case"). Defendant Mark D. Waldron ("Trustee Waldron") was appointed as the Chapter 11 Trustee on January 24, 2019. On November 30, 2020, Trustee Waldron commenced an adversary proceeding (the "Adversary Proceeding") against Perkins alleging that Perkins's disbursement of the escrow funds violated a fiduciary duty that resulted in Giga Watt's collapse. On December 15, 2020, the Bankruptcy Court entered an order approving the employment of Defendant Potomac Law Group ("PLG") as special litigation counsel in the Adversary Proceeding. Pursuant to this employment, PLG was entitled to a 30% contingency fee of any recoveries obtained up to $10 million and a 25% contingency fee of any recoveries obtained that were greater than $10 million, subject to Bankruptcy Court approval.

On December 16, 2020, Plaintiff Jun Dam ("Dam") filed a class action lawsuit in this Court (the "Class Action Suit"). The class members consisted of individuals who had purchased WTT Tokens, and the class was represented by two law firms: Blood, Hurst & O'Reardon, LLP and the Western Washington Law Group, PLLP. ("Class Counsel").

PLG proceeded to work on the Adversary Proceeding for approximately three and a half years without objection—over one year of which was spent negotiating with Perkins and Class Counsel. They ultimately reached an agreement to settle both the Adversary Proceeding and the Class Action Suit (the "Settlement Agreement"), wherein Perkins agreed to pay $3 million to the bankruptcy estate and $4.5 million to the class members.

On October 4, 2023, the Bankruptcy Court approved the Settlement Agreement. On February 2, 2024, this Court entered a preliminary approval of the Settlement Agreement. The class members were allowed to object or

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

opt-out, but none did, and this Court then entered final approval of the Settlement Agreement on May 23, 2024.

The Settlement Agreement defines a "Released Claim" as "any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature against the Released Parties ...." It further defines "Released Parties" as the bankruptcy estate, Trustee Waldron, and "agents and attorneys" of the bankruptcy estate. Finally, it defines a "Releasing Party" as "Plaintiff and each and every Class Member." Under the Settlement Agreement's release clause, each Releasing Party was deemed to have waived any Released Claim against any Released Party.

*2 On July 26, 2024, PLG filed its final fee application, seeking $900,000 (*i.e.*, 30% of the $3 million adversary proceeding settlement), plus $1,648.15 in expenses. However, on August 22, 2024, Dam filed an objection, asking the Bankruptcy Court not to disburse any funds from the bankruptcy estate to PLG. On September 17, 2024, the Bankruptcy Court granted PLG's application over Dam's objection, noting that counsel for PLG indicated that she spent 2,536.8 hours working on the Adversary Proceeding and that her typical rate is $600. Thus, PLG estimated its services were valued at $1,522,080 and the Bankruptcy Court found that the requested $900,000 was reasonable. The fees were paid to PLG on September 19, 2024.

On December 13, 2024, Dam filed a civil Complaint in this matter (the "Civil Suit"), alleging that Trustee Waldron and PLG engaged in fraudulent conduct, which led to the Bankruptcy Court awarding the fees in error. On January 30, 2025, Defendants filed a motion, asking this Court to dismiss the Civil Suit because, among other issues, Dam's claims were void as a violation of the Bankruptcy Court's automatic stay. The same day, Defendants filed a motion asking the Court to take judicial notice of several docket entries in support of their motion to dismiss.

## I. DEFENDANTS' MOTION FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), a court may take judicial notice of filings on its own dockets, as well as dockets of other courts. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Defendants ask the Court to take judicial notice of filings in the Bankruptcy Case, associated appeals before this Court, and the Adversary Proceeding. The request is appropriate, and the motion for judicial notice is **granted**.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants ask the Court to dismiss this action without prejudice because (1) Plaintiff's attempt to impose a constructive trust on the Perkins $3 million settlement proceedings and to otherwise recover those proceeds are void as an attempt to recover property of the estate and from the estate; (2) the Court lacks subject matter jurisdiction to grant relief from the stay; (3) the Court lacks subject matter jurisdiction over the claims against Trustee Waldron and PLG because Plaintiff failed to obtain the Bankruptcy Court's permission to sue Trustee Waldron and PLG; (4) Plaintiff fails to state a claim because Trustee Waldron and PLG are immune and the claims are released; and (5) the Complaint fails to establish personal jurisdiction over and fails to state a claim against the "Giga Watt Bankruptcy Estate" because the Giga Watt Bankruptcy Estate lacks the capacity to be sued.

Defendants assert amending the Complaint would be futile because Plaintiff cannot remedy the lack of subject matter jurisdiction, Trustee Waldron or PLG's immunity, the release, or the estate's lack of capacity to be sued.

The Court agrees.

### Motion Standard

Under Fed. R. Civ. P. 12(b)(1), a movant can challenge the Court's subject matter jurisdiction to hear an action by asserting the allegations contained in the Complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a bankruptcy petition is filed, an "estate" is created, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Dam v. Waldron, Slip Copy (2025)

11 U.S.C. § 541(a)(1); *In re FitzSimmons*, 725 F.2d 1208, 1210 (9th Cir. 1984). The broad category of the estate includes causes of action in district court. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). Furthermore, when a bankruptcy petition is filed, injunctive relief referred to as the "automatic stay" is triggered, which prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362 (a)(3); *Gruntz v. Cnty. of Los Angeles*, 202 F.3d 1074, 1081 (9th Cir. 2000). Filing a motion in another court seeking to recover estate property violates the automatic stay. *See In re Pace*, 67 F.3d 187, 191–92 (9th Cir. 1995). A violation of the automatic stay is void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).

*3 Here, the Complaint constitutes a violation of the automatic stay in the Bankruptcy Case and is therefore void. Moreover, the Court does not have subject matter jurisdiction over the claims against Trustee Waldron and PLG. Finally, Plaintiff has failed to state a claim upon which relief may be granted.

The Court finds that granting leave to amend would be futile because additional allegations will not remedy the lack of subject matter jurisdiction or will state claims

Footnotes

1    Pursuant to LCivR 7(i)(3)(B)(iii), oral argument is not necessary.

against defendants who are not subject to suit. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Judicial Notice, ECF No. 18, is **GRANTED**

2. Defendants' Motion to Dismiss Complaint, ECF No. 15, is **GRANTED**. Plaintiff's Complaint is dismissed with prejudice.

3. The remaining motions are **denied as moot**.

4. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2025 WL 1069844

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 50 of 56

2026 WL 777414
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States Court of Appeals, Ninth Circuit.

JUN **DAM**, Plaintiff - Appellant,

v.

MARK D. **WALDRON**, Chapter 7 Trustee; Ms. PAMELA MARIE EGAN Esquire, Bankruptcy Counsel; POTOMAC LAW GROUP, PLLC; GIGA WATT BANKRUPTCY ESTATE, Defendants - Appellees.

No. 25-2459
|
Filed March 19, 2026
|
Submitted March 19, 2026"

D.C. No. 2:24-cv-00417-SAB

Appeal from the United States District Court for the Eastern District of Washington Stanley Allen Bastian, District Judge, Presiding

Before: CLIFTON, FRIEDLAND, and BENNETT, Circuit Judges.

MEMORANDUM*

*1 Plaintiff-Appellant Jun **Dam** appeals the district court's order dismissing with prejudice his claims against Defendants-Appellees. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review de novo a dismissal for lack of subject-matter jurisdiction." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 (9th Cir. 2019). We also review de novo "[a] district court's interpretation of federal law." *Id.* Because at this stage Defendants-Appellees do not contest the truth of **Dam's** factual allegations bearing on jurisdiction, in resolving this appeal, we accept **Dam's** allegations as true and draw all reasonable inferences in his favor. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). We construe pro se pleadings liberally.

*Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).
1. Though **Dam** sought to assert claims on behalf of third parties, he lacks prudential standing to do so. *See Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) ("It is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties."); *see also Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself." (citation modified)). Under the prudential standing doctrine, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).[1] Third-party standing is permitted only when three requirements are met: "(1) injury-in-fact; (2) close relationship to the third party; and (3) hindrance to the third party['s]" ability to protect his or her own interests. *Coal. of Clergy*, 310 F.3d at 1163. **Dam** fails to plausibly allege a close relationship to the third parties or hindrance.

2. The district court lacked jurisdiction over **Dam's** personal claims against Defendants-Appellees Mark **Waldron**, Pamela Egan, and Potomac Law Group, PLLC (collectively, the "Trustee Defendants"). Under the *Barton*[2] doctrine, "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005). Without leave of the bankruptcy court, "the other forum lack[s] subject matter jurisdiction over the suit." *Id.* at 971. The attorney for a trustee, who represents the estate under the direction of the trustee, is the functional equivalent of a trustee and thus is also protected by the *Barton* doctrine.[3]

*2 **Dam** did not obtain leave of the bankruptcy court before filing this action. And his claims against the Trustee Defendants challenge "acts done in [their] official capacity[ies] and within [their] authority as [ ]officer[s] of the Court." *See id.*, 421 F.3d at 974 (quoting *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967)). Even assuming the availability of the *ultra vires* exception when the plaintiff alleges that the trustee acted with an improper motive, *see Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 415–16 (6th Cir. 2013), **Dam** failed to allege plausibly that the Trustee Defendants acted *ultra vires*. Thus, the district court

lacked subject matter jurisdiction over **Dam's** claims against the Trustee Defendants. *See In re Crown Vantage*, 421 F.3d at 971.

3. A bankruptcy triggers a "self-executing" and "automatic stay of actions by all entities to collect or recover on claims." *Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017) (citations omitted). The stay "applies to 'almost any type of formal or informal action against the debtor or property of the estate.' " *Id.* at 746–47 (quoting *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 552 n.4 (9th Cir. 1988)). "[V]iolations of the automatic stay are void, not voidable." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992).

**Dam** violated the automatic stay by bringing claims against the estate. *See Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081–82 (9th Cir. 2000) (en banc). Accordingly, to the extent that **Dam's** complaint alleged claims against the Giga Watt Bankruptcy Estate, the complaint was "of no effect." *In re Schwartz*, 954 F.2d at 572.

4. **Dam's** contrary arguments lack merit. His reliance on *Stern v. Marshall*, 564 U.S. 462 (2011), is misplaced because "*Stern* doesn't preclude bankruptcy courts from adjudicating *Barton* claims." *Blixseth v. Brown (In re Yellowstone Mountain Club, LLC)*, 841 F.3d 1090, 1097 (9th Cir. 2016). His argument that a district court must conduct a threshold determination under 11 U.S.C. § 541 before enforcing the automatic stay is not supported by the one authority he cites in support of this contention. *See Harris v. Viegelahn*, 575 U.S. 510, 518 (2015) (holding that, following a conversion from Chapter 13 to Chapter 7 bankruptcy, "postpetition wages must be

returned to the debtor"). And though **Dam** asked the district court to lift the automatic stay, 11 U.S.C. § 362(d) "gives the bankruptcy court the power to grant creditors relief from the stay." *In re Schwartz*, 954 F.2d at 572. **Dam's** request to lift the automatic stay should thus have been directed to the bankruptcy court, not the district court.

5. One error in the district court's order of dismissal, however, requires us to vacate and remand. The district court dismissed **Dam's** claims with prejudice even though it held, correctly, that it lacked subject matter jurisdiction. The district court generally must determine its subject matter jurisdiction at the threshold. *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008), *repudiated in other part by, Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (criticizing the use of the term "statutory standing" to describe the zone-of-interests analysis). And the district court ordinarily should dismiss any claims over which it lacks subject matter jurisdiction without prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (per curiam). We accordingly vacate the district court's order of dismissal and remand with instructions to dismiss **Dam's** claims without prejudice for lack of subject matter jurisdiction.

**\*3 VACATED AND REMANDED WITH INSTRUCTIONS.**[4]

**All Citations**

Not Reported in Fed. Rptr., 2026 WL 777414

---

Footnotes

**   The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1   Unlike with Article III standing, forfeiture and waiver doctrines can apply to issues of prudential standing. *See City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). But here, Defendants-Appellees argue that **Dam** lacked standing to bring any third-party claims. Though they mistakenly argue that **Dam** lacks Article III standing, we may "exercise our discretion to rule on [**Dam's**] prudential standing to bring this suit," *see id.* at 846, and we do so here.

2   *Barton v. Barbour*, 104 U.S. 126 (1881).

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                                                2

3    Though we have not so held in a precedential opinion, our sister circuits have agreed on this principle. *Lankford v. Wagner*, 853 F.3d 1119, 1122 (10th Cir. 2017); *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012); *Lawrence v. Goldberg*, 573 F.3d 1265, 1269–70 (11th Cir. 2009); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006). Because **Dam** does not specifically contest this point, we apply the principle here.

4    **Dam's** motion for judicial notice (Dkt. No. 24) and Defendants-Appellees' motion for judicial notice (Dkt. No. 18) are denied as moot. We allocate costs against **Dam**.

**End of Document**          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 51 of 56

2024 WL 2932910
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

ALIFAX HOLDING SPA,
Plaintiff-Appellant
Sire Analytical Systems SRL, Plaintiff
v.
ALCOR SCIENTIFIC LLC, Francesco A.
Frappa, Defendants-Cross-Appellants

2022-1641, 2022-1723
|
Decided: June 11, 2024

Appeals from the United States District Court for the District of Rhode Island in No. 1:14-cv-00440-WES-LDA, Chief Judge William E. Smith.

**Attorneys and Law Firms**

Todd Roberts Tucker, Calfee, Halter & Griswold LLP, Cleveland, OH, argued for plaintiff-appellant. Also represented by Joshua Friedman; Christopher Baxter, Pierce Atwood LLP, Portsmouth, NH; Robert H. Stier, JR., Stier IP Law LLC, Cape Elizabeth, ME.

Craig M. Scott, Hinckley, Allen & Snyder, LLP, Providence, RI, argued for defendants-cross-appellants. Also represented by Christine K. Bush; Laurel M. Rogowski, Boston, MA.

Before Moore, Chief Judge, Lourie and Cunningham, Circuit Judges.

**Opinion**

Cunningham, Circuit Judge.

*1 This appeal is the culmination of the parties' multi-year litigation at the District Court of Rhode Island concerning automated clinical instruments that measure certain characteristics of human blood samples. Alifax Holding SpA and Sire Analytical Systems SRL (collectively, "Alifax") sued Alcor Scientific LLC ("Alcor") and Mr. Francesco A. Frappa (collectively, the "Cross-Appellants" or "Defendants"),[1] alleging misappropriation of trade secrets, patent infringement,

and copyright infringement. For the reasons discussed below, we *affirm-in-part* and *reverse-in-part* the district court's decisions, and *remand* for further proceedings.

**I. Background**

Alifax makes automated clinical instruments used to determine the erythrocyte sedimentation rate ("ESR") of human blood samples. *Alifax Holding Spa v. Alcor Sci. Inc.*, 404 F. Supp. 3d 552, 557 (D.R.I. 2019) ("*New Trial Order*"). An employee of an Alifax subsidiary, Mr. Francesco A. Frappa, left the company and began working for Alcor. *Id.* Within a year, Alcor offered a new ESR instrument of its own, the iSED, with analytical capabilities comparable to the Alifax devices. *Id.*

On October 7, 2014, Alifax[2] sued Defendants for trade secret misappropriation under the Rhode Island Uniform Trade Secrets Act ("RIUTSA"). Alifax also sued only Alcor for infringement of U.S. Patent Nos. 6,632,679 and 7,005,107. J.A. 136, 140 ¶¶ 20–21, 146 ¶¶ 53–58, 147–48 ¶¶ 59–68; *see New Trial Order* at 557. On March 20, 2017, Alifax amended its complaint to assert a claim of copyright infringement solely against Alcor. J.A. 2106–07 ¶¶ 77–85. Alcor answered and counterclaimed seeking, among other things, declaratory judgment of patent invalidity. *See, e.g.*, J.A. 2235 ¶¶ 41–42; *see New Trial Order* at 557–58.

Before trial, the parties moved for summary judgment. Relevant to this appeal, Defendants moved for summary judgment on Alifax's claims for copyright infringement, patent infringement, and trade secret misappropriation, as well as Alcor's patent invalidity counterclaims. *See Alifax Holding SPA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES, 2019 WL 13091790, at *1, *4–11, *13 (D.R.I. Mar. 26, 2019) ("*Summary Judgment Order*"). On March 26, 2019, the court denied Defendants' motion for summary judgment. *Id.* at *13.

Shortly before trial, the court and the parties continued to narrow the case. Three days before trial, the court excluded the opinion of Alifax's expert, Mr. Christopher J. Bokhart, on copyright infringement damages. *Alifax Holding SPA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES, 2019 WL 1579503, at *1–2 (D.R.I. Apr. 12, 2019) ("*Daubert Decision on Copyright*"). As a result, the parties agreed that Alifax's copyright claim was "out of the case." *New Trial Order* at 558; J.A. 13829.

*2 The court bifurcated the trial into liability and damages

phases. J.A. 126; *see* J.A. 13853–54. Five days into the liability phase of the trial, Alifax decided that it no longer wished to proceed on its patent infringement claims. J.A. 14385. To effectuate removal of patent infringement from the case, the court granted summary judgment for Alcor on that claim, and the parties executed a covenant not to sue, addressing all patents. *New Trial Order* at 558; *see* J.A. 14458–59. Accordingly, the only remaining claims for jury deliberations relevant to this appeal were the trade secret misappropriation claims. *See New Trial Order* at 558.

Alifax presented multiple theories of trade secret misappropriation to the jury. There are two trade secrets relevant to this appeal:[3] the conversion algorithm trade secret, which comprises "[p]ortions of computer program source code concerning the conversion of photometric measurements, including source code containing four specific conversion constants," J.A. 15193, *see* J.A. 13849; and the alleged signal acquisition trade secret, which involves "the process by which Alifax's devices gathered ESR-related raw data through signal acquisition." *Order on New Trial Scope and Patent Fees* at *2; *see also Summary Judgment Order* at *7.

At the charge conference, the court struck the alleged signal acquisition trade secret from the jury verdict form. J.A. 14943–48. Specifically, the court decided to exclude "acquisition" from its description of the software and firmware trade secrets, effectively removing the alleged signal acquisition trade secret. *Id.*; *see* J.A. 15193–99 (Jury Verdict Form). Alifax objected, arguing that it had identified the alleged signal acquisition trade secret as "[t]he manner in which the software used in Alifax's ESR analyzers initiates an ESR measurement from a blood sample loaded in the ESR analyzer, handles a blood sample to introduce it into the capillary container, instructs the ESR analyzer to obtain photometric data, and handles and converts the photometric data to calculate the ESR of the blood sample." J.A. 14944 (citing J.A. 2000 ¶ 5); *see also* Oral Arg. at 11:53–12:30, 18:00–19, https://oralarguments.cafc. uscourts.gov/default.aspx?fl=22-1641_07102023.mp3. Alifax also contended that it introduced evidence and testimony related to the alleged signal acquisition trade secret at trial. J.A. 14944–45.

The court rejected this argument regarding the alleged signal acquisition trade secret, finding there to be "no ... record evidence of trade secrets involved in any of the steps that are discussed ... [regarding] how the apparatus would be programmed to operate, other than with respect to the conversion algorithm ...." J.A. 14947–48. The jury returned a verdict finding Alifax proved that the conversion algorithm was a trade secret and that Defendants misappropriated that trade secret.[4] J.A. 15193–98.

*3 Before the start of the damages phase of the trial, the court excluded in their entirety Alifax's expert opinions by Mr. Bokhart concerning trade secret misappropriation damages. *Alifax Holding SpA v. Alcor Sci. Inc.*, 387 F. Supp. 3d 170, 171–72 (D.R.I. 2019) ("*Daubert Decision on Trade Secrets*"). However, over Defendants' objection, the district court allowed Alifax to call Mr. Bokhart as a summary fact witness pursuant to Federal Rule of Evidence 1006 to testify as to the iSED-related revenues and costs based on Alcor's financial spreadsheets. J.A. 15309–11; Trial Tr. Vol. 11 at 33–34, *Alifax Holding SpA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES (D.R.I. May 1, 2019), Dkt. 347; *see also New Trial Order* at 580. The jury awarded $6.5 million in damages to Alifax for Alcor's misappropriation of the conversion algorithm trade secret. J.A. 15490.[5]

After the trial concluded, the district court granted Defendants a new trial on both liability and damages for the conversion algorithm trade secret. *New Trial Order* at 577–82.[6] Regarding liability, the court found that the verdict was against the clear weight of the evidence. *Id.* at 577. The court reasoned that because there was little evidence that Alifax's algorithm could produce highly accurate results in a non-Alifax device, Defendants could not have used Alifax's algorithm for any purpose. *See id.* at 577, 579–80. As to damages, the court found that Mr. Bokhart's testimony exceeded the scope permitted for a summary fact witness and unfairly prejudiced Alcor. *See id.* at 581–82. The district court also denied Alcor's motion as to attorney's and expert fees and costs related to the copyright claim. *Alifax Holding SpA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES, 2019 WL 4247737, at *4 (D.R.I. Sept. 5, 2019) ("*Order on Copyright Fees*").

On July 16, 2021, the court (1) held that no new evidence or witness would be permitted at the new trial, *Order on New Trial Scope and Patent Fees* at *2; (2) excluded the theory based on an alleged signal acquisition trade secret from the new trial, *id.* at *3; and (3) denied Alcor's motion for attorney's fees related to the patent infringement claims. *Id.* at *5. Following additional briefing by the parties, the court also precluded Alifax from seeking compensatory damages at the new trial. *Alifax Holding Spa v. Alcor Sci. Inc.*, C.A. No. WES 14-440, 2021 WL 3911258, at *1 (D.R.I. Sept. 1, 2021) ("*Order Precluding Damages*"). The parties agreed not to go to trial on nominal damages, and on February 18, 2022, the district court dismissed with prejudice the trade secret claim. J.A. 91, 98 (Order Dismissing Trade Secret

Alifax Holding SpA v. Alcor Scientific LLC, Not Reported in Fed. Rptr. (2024)

Claim). On March 25, 2022, the district court entered final judgment on all remaining claims, including entering judgment in favor of Defendants on patent infringement, trade secret misappropriation, and copyright infringement. J.A. 101–02 (Final Judgment).

Alifax timely appealed. The Cross-Appellants filed a timely cross appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. Discussion

On appeal, Alifax argues that the district court erred by (1) excluding the alleged signal acquisition trade secret from jury consideration, Appellant's Br. 42–47; (2) granting a new trial on liability relating to the conversion algorithm trade secret, *id.* at 51–55; (3) granting a new trial on damages, *id.* at 55–56, *see also id.* at 57–64; (4) excluding the alleged signal acquisition trade secret from the new trial, *id.* at 47–50; and (5) precluding Alifax from presenting evidence and witnesses for compensatory damages at the new trial. *Id.* at 37–40. Alcor argues that the district court abused its discretion in denying attorney's fees relating to the patent and copyright claims. Cross-Appellants' Principal & Resp. Br. 57, 66; *see also id.* 58–65, 67–71.

## A

*4 We apply our own law to issues unique to patent law and regional circuit law—here, First Circuit law—to issues unrelated to patent law. *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604 (Fed. Cir. 2015) (citation omitted). We review the district court's jury instructions, new trial orders, and evidentiary rulings under the law of the regional circuit. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) (jury instructions); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1331 (Fed. Cir. 2010) (new trial orders and evidentiary rulings). In the First Circuit, the court's rulings on jury instructions are reviewed de novo. *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 8 (1st Cir. 2001) (citation omitted). The grant of a motion for a new trial is reviewed for abuse of discretion. *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). A court's decision regarding new evidence at a new trial "[i]s one for the informed discretion of the trial judge," and the First Circuit reviews for an abuse of discretion. *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 267 (1st Cir. 1993).

We apply the law of the regional circuit in reviewing decisions on attorney's fees relating to copyright claims and the law of this circuit in reviewing decisions on attorney's fees relating to patent claims. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582–83 (Fed. Cir. 1992) (applying regional circuit law to attorney's fees relating to copyright claims); *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321 (Fed. Cir. 2006) (applying Federal Circuit law to attorney's fees relating to patent infringement claims). Under First Circuit law, the review of a district court's decision on a fee award relating to copyright claims is "extremely deferential," and the First Circuit "will disturb a ruling ... only if the record persuades us that the trial court indulged in a serious lapse in judgment." *Airframe Sys. Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 109–10 (1st Cir. 2011) (quoting *Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers (ASCAP)*, 642 F.3d 87, 91 (1st Cir. 2011)). This court reviews a district court's denial of attorney's fees in a patent case for abuse of discretion. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1376 (Fed. Cir. 2020) (citations omitted).

## B

Alifax first argues that the district court erred by excluding the alleged signal acquisition trade secret from jury consideration at the liability phase of the trial. Appellant's Br. 42–47; *see* J.A. 14943–48 (charge conference transcript). Alifax argues that the "jury was entitled to infer that [Mr.] Frappa's detailed plan for acquiring a signal from a blood sample was derived from his eleven years at Alifax, particularly in view of the other evidence at trial." Appellant's Br. 44, *see also id.* 45–47. We are not persuaded that the district court erred by excluding the alleged signal acquisition trade secret from jury consideration.

Alifax failed to meet its burden of proof to establish the existence and scope of the alleged signal acquisition trade secret. *See generally* R.I. Gen. Laws § 6-41-1(4) (defining trade secret); *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 52 (1st Cir. 2020) ("[T]he trade secret owner has the burden of proof to establish the existence and scope of the alleged trade secret in the litigation.") (applying Puerto Rico law based on Uniform Trade Secrets Act);[7] *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–4 (7th Cir. 2002) ("[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

of items meeting the statutory definition.") (applying Wisconsin law following UTSA). To meet this burden, the trade secret owner must "describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (applying Maryland law following UTSA and collecting cases); *see also TLS*, 966 F.3d at 54.

*5 Here, Alifax not only failed to describe the alleged signal acquisition trade secret with sufficient detail but also failed to identify its proper scope. At oral argument, Alifax alleged that the signal acquisition trade secret is "how to acquire photometric signals from a blood sample." Oral Arg. at 20:45–21:32; *see also* J.A. 10534 (Alifax's proposed jury instruction). But this definition only provides a high-level summary of the purpose of the alleged trade secret without describing it in detail. Alifax also cites its identification of misappropriated trade secrets, which defines the alleged signal acquisition trade secret as "the manner in which the software used in [Alifax's] ESR analyzers initiates an ESR measurement from a blood sample loaded in the ESR analyzer, handles a blood sample to introduce it into the capillary container, [and] instructs the ESR analyzer to obtain photometric data." J.A. 2000 ¶ 5; *see also* Oral Arg. at 11:54–12:30, 18:00–19, 22:50–23:00. This paragraph also fails to clarify "the existence and scope of the alleged trade secret," *TLS*, 966 F.3d at 52, making it impossible to ascertain whether certain elements of the alleged trade secret have been established, such as "[d]eriv[ing] independent economic value ... from not being generally known" and "not being readily ascertainable by proper means." R.I. Gen. Laws § 6-41-1(4). Therefore, neither definition offered by Alifax satisfies its burden to describe the alleged trade secret in sufficient detail to establish each element of a trade secret. *See Trandes*, 996 F.2d at 661.

Alifax's trial evidence and testimony similarly fail to meet its burden to identify the alleged signal acquisition trade secret. First, Alifax argues that a document labeled "iSED Software Procedures description" would entitle a jury to infer that Cross-Appellants misappropriated Alifax's alleged signal acquisition trade secret. Appellant's Br. 43–44; *see* J.A. 15716–19 (Trial Exhibit 64). But as Alifax's counsel admitted at oral argument, Trial Exhibit 64 is an *Alcor* document. Oral Arg. at 13:48–55. Alifax also points out that the document was drafted by Mr. Frappa after signing a royalty agreement in which he agreed to provide Alcor with technical documentation related to how an ESR analyzer performed its functions. *See* Appellant's Br. 43–44; J.A. 15714. But nothing in the record indicates that the contents of the

document were *Alifax's* alleged signal acquisition trade secret. In fact, because neither Alifax nor Trial Exhibit 64 identifies the scope of the alleged trade secret, a jury would not be able to distinguish "[w]hich aspects are known to the trade" from those "which are not." *See IDX Sys.*, 285 F.3d at 584 (holding that a 43-page document describing a software package was not sufficiently specific); *Trandes*, 996 F.2d at 661–62 (claiming possession of secret "formulas" but failing to provide evidence of what the formulas were did not provide sufficient detail to "sustain even a prima facie case of misappropriation"). We are also unpersuaded by Alifax's argument that *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 18–19 (1st Cir. 2009), supports an inference that Trial Exhibit 64 must have included Alifax's trade secret information simply because Alcor hired Mr. Frappa. *See* Appellant's Br. 43, 46–47. In *Astro-Med*, the First Circuit upheld an inference that a trade secret was *misappropriated*, after parties had clearly articulated what the trade secret constituted—which "includ[ed] confidential marketing, pricing, and customer information." 591 F.3d at 7–8, 18. *Astro-Med* is thus distinguishable because Alifax has failed to articulate the contents of the alleged trade secret.

Alifax also argues that Mr. Giovanni Batista Duic's trial testimony established the existence and scope of the alleged signal acquisition trade secret. Appellant's Br. 45 (citing J.A. 13936–37, 13924–25). We also find this argument unpersuasive. The cited portion of Mr. Duic's testimony simply describes how Alifax's ESR instruments work at a high level. *See* J.A. 13936–37, 13924–25. At most, this testimony would have allowed the jury to make an inference that there are a few discrete points of similarity between Alcor's software procedure and how Alifax's device works. *Compare* J.A. 13936–38 *with* J.A. 15716–19. Taking this testimony into consideration, the evidence adduced at trial is still not enough to allow the jury to identify the alleged trade secret with sufficient detail.

*6 For the foregoing reasons, we find no error in the district court's decision to remove the alleged signal acquisition trade secret from jury consideration.

## C

Next, Alifax argues that the district court abused its discretion in granting a new trial on liability as to the conversion algorithm trade secret because it required "Alifax's algorithm [to be] capable of producing highly accurate results in a non-Alifax device," when RIUTSA

Alifax Holding SpA v. Alcor Scientific LLC, Not Reported in Fed. Rptr. (2024)

does not require evidence of "use" to show misappropriation. Appellant's Br. 52 (citing *New Trial Order* at 577). Cross-Appellants respond that the district court did not abuse its discretion because the court properly found that the conversion algorithm trade secret had no independent economic value derived from its alleged secrecy. Cross-Appellants' Principal & Resp. Br. 41–44. We agree with Alifax.

"A trial court may grant a new trial on the basis that the verdict is against the weight of the evidence. Further, the district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice." *Jennings*, 587 F.3d at 436 (citations and internal quotation marks omitted).

Here, the district court abused its discretion in finding that the jury verdict was against the clear weight of the evidence, *New Trial Order* at 577, because it did not consider whether the evidence could establish that the trade secret was acquired through improper means, which alone is sufficient to satisfy the definition of misappropriation under RIUTSA. *See* R.I. Gen. Laws § 6-41-1 (" 'Misappropriation' means: (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; *or* (ii) Disclosure or use of a trade secret of another. ...") (emphasis added). The district court's decision focused on what it saw as the "critical assumption" underpinning the verdict—that "Alifax's algorithm was capable of producing highly accurate results in a non-Alifax device"—which it found to be necessary for the Defendants to *use* the conversion algorithm. *New Trial Order* at 577–79. But the new trial order did not discuss whether Alifax's algorithm would meet the alternative acquisition prong of misappropriation. *Id.* at 577–80. Therefore, because a "material factor deserving significant weight"—whether Alifax presented sufficient evidence on improper acquisition—was not addressed, we find that the district court abused its discretion in finding the jury verdict to be against the clear weight of the evidence. *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 27 (1st Cir. 2019).

Cross-Appellants further contend that Alifax failed to show that it undertook reasonable efforts to maintain the secrecy of the conversion algorithm or that the conversion algorithm had independent economic value from not being generally known. Cross-Appellants' Br. 41–43, 48–49. Both arguments are directed to the sufficiency of evidence to establish the conversion algorithm as a trade secret. *See* R.I. Gen. Laws § 6-41-1 (4). Because the district court focused its analysis on the jury's finding on

misappropriation and did not sufficiently address whether the conversion algorithm qualifies as a trade secret, *New Trial Order* at 577–80, we decline to address this argument in the first instance. *See Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996) (determining that proper review of a district court's new trial ruling for clear abuse of discretion includes "isolat[ing] the factual basis for the trial court's ruling" and not "assessing the credibility of witnesses and weighing testimony").

*7 Because we conclude that the district court abused its discretion in finding that the jury verdict regarding liability on the conversion algorithm trade secret was against the clear weight of the evidence, we find that the district court erred in granting a new trial on liability related to the conversion algorithm trade secret. Therefore, we direct the district court to enter judgment for Alifax on this issue according to the jury verdict. *See de Perez v. Hosp. del Maestro*, 910 F.2d 1004, 1008–09 (1st Cir. 1990) (reversing new trial order when "the evidence simply was mixed and contradictory").

### D

Alifax next argues that the district court abused its discretion by granting a new trial on damages because of Mr. Bokhart's testimony. Appellant's Br. 55. Alifax contends that the court erred in finding that the testimony "exceeded the scope permitted by Rule 1006 [Summaries to Prove Content]" when it would have been admissible under Federal Rules of Evidence 611(a) (Mode and Order of Examining Witnesses and Presenting Evidence) and 703 (Bases of an Expert's Opinion Testimony). *Id.* at 56. Alifax also argues that the district court abused its discretion by finding that Mr. Bokhart's testimony unfairly prejudiced Cross-Appellants. *Id.* at 61. We do not agree.

We hold that the district court correctly found that Mr. Bokhart exceeded the scope permitted by Federal Rule of Evidence 1006 as a summary witness by improperly including expert testimony that was previously excluded. *New Trial Order* at 580–82. After previously excluding Mr. Bokhart's opinions concerning trade secret misappropriation damages, *Daubert Decision on Trade Secrets* at 171–72, the district court allowed Mr. Bokhart to present financial information relevant to damages as a summary *fact* witness under Rule 1006. J.A. 15309–11; *New Trial Order* at 580. Rule 1006 allows a party use summary writing or summary witness testimony "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in

court." *Id.* at 580–81; *see* Fed. R. Evid. 1006. But evidence cannot be offered under Rule 1006 if it contains expert opinion that goes beyond summarizing voluminous materials or making a calculation based on data contained in such materials. *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8043 (3d ed. 2022); *see also Eichorn v. AT & T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007). As the district court found, Mr. Bokhart's testimony "necessarily reflected the application of his financial and accounting expertise," *i.e.*, included expert testimony. *New Trial Order* at 581. Regarding convoyed sales, such as test cards and diagnostic devices, Mr. Bokhart testified that the revenue these items generated were iSED-related and therefore should be considered when calculating damages. *Id.* at 581–82; *see also* J.A. 15351–52 (explaining how Alcor's iSED-related revenue stream included revenues from the sale of test cards used to make iSED operational). But no evidence or any other witness had established the relationship between convoyed sales and the conversion algorithm trade secret. *New Trial Order* at 582; J.A. 15379–80 (trial testimony admitting no documentation showed that test cards, controls, and diagnostic devices were iSED-related). Therefore, Mr. Bokhart's testimony must have relied on his accounting expertise.

Because Mr. Bokhart's testimony exceeded the scope of Rule 1006 and he was the only damages witness Alifax presented, the district court did not abuse its discretion by finding that unfair prejudice to Defendants warranted a new trial on damages. *New Trial Order* at 580, 582; *see Turcotte v. Ford Motor Co.*, 494 F.2d 173, 183–85, 187 (1st Cir. 1974) (remanding for new trial on damages when witness improperly applied state law); *see also In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 267, 269 (5th Cir. 2022) (finding lay witness improperly offered expert opinion and remanding for a new trial).

*8 Alifax's argument that Mr. Bokhart's testimony was admissible under Federal Rules of Evidence 611(a) and 703 is also without merit. *See* Appellant's Br. 56. Rule 611(a) (Mode and Order of Examining Witnesses and Presenting Evidence) requires that the testimony must be supported by evidence already admitted. *See United States v. Milkiewicz*, 470 F.3d 390, 395–98 (1st Cir. 2006) (noting that "summary chart [under Rule 611(a)] ... must be linked to evidence previously admitted and usually is not itself admitted into evidence"). Furthermore, Rule 703 (Bases of An Expert's Opinion Testimony) is only available to expert witnesses.[8] *See* Fed. R. Evid. 703; *see also United States v. DeSimone*, 488 F.3d 561, 576–77 (1st Cir. 2007) (holding no abuse of discretion in admitting an expert's summary chart under Rule 703). Because Mr. Bokhart's testimony was not based on

evidence in the record and he testified as a fact witness, his testimony was not admissible under these rules either.

Alifax's cited cases are also distinguishable. For example, two of these cases are inapposite because they involve a district court's finding under Rule 403. Appellant's Br. 62–63; *see Espeaignnette v. Gene Tierney Co.*, 43 F.3d 1, 5–8 (1st Cir. 1994); *United States v. Frabizio*, 459 F.3d 80, 90–91 (1st Cir. 2006). Here, the district court did not exclude Mr. Bokhart's testimony under Rule 403; rather, it found that "[p]ermitting the jury's damages award to stand would constitute a miscarriage of justice" in light of Bokhart's testimony. *New Trial Order* at 582; *see Jennings*, 587 F.3d at 436 ("[T]he district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice.").

In sum, we conclude that the district court did not abuse its discretion in granting a new trial on damages.

E

Next, Alifax challenges the district court's decision to exclude the alleged signal acquisition trade secret from the new trial. Appellant's Br. 47–50; *see Order on New Trial Scope and Patent Fees* at *2–3. Alifax argues that even if the district court was correct to exclude the alleged signal acquisition trade secret from the jury after close of the original trial, that does not justify excluding the alleged signal acquisition trade secret entirely from the new trial because the questions at the end of the original trial and at summary judgment before trial are different. Appellant's Br. 47. Moreover, Alifax asserts the district court's exclusion of the alleged signal acquisition trade secret was an improper application of partial retrial law. *Id.* at 48. We disagree.

The district court did not misapply partial retrial case law. *Order on New Trial Scope and Patent Fees* at *2–3. After explaining that it had already ruled that the evidence at the original trial could not support a finding that the alleged signal acquisition trade secret was misappropriated, it concluded that this issue "ha[d] been properly and conclusively resolved." *Id.* at *2–3 (cleaned up) (citing *Drumgold v. Callahan*, 707 F.3d 28, 46 (1st Cir. 2013)). The court further found the remaining issue of the conversion algorithm is "so distinct and separable from the signal acquisition claim," the trial on that issue alone would not result in injustice. *Id.* (cleaned up) (citing *Drumgold*, 707 F.3d at 46). Because we find that the district court did not err in precluding jury consideration

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

of the alleged signal acquisition trade secret, *see supra* Section II.B, we agree with the district court's analysis here.

*9 Neither of Alifax's cited cases support Alifax's argument that an issue must be retried even if it was properly removed from the jury in the first trial. *See* Appellant's 48–49 (citing *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931); *Drumgold*, 707 F.3d at 46–47). Alifax's cited case law does not support its argument that excluding the alleged signal acquisition trade secret from consideration by the jury—a decision subject to the same standard as judgment as a matter of law, *see Wilson v. Maritime Overseas Corp.*, 150 F.3d 1, 10 (Fed. Cir. 1998)—was not a proper and conclusive way of resolving this claim.° Alifax also presents no evidence that the alleged signal acquisition trade secret is not "so distinct and separable" from the conversion algorithm trade secret that a trial on that issue alone would lead to injustice, so as to require a retrial. *Drumgold*, 707 F.3d at 46. Because we find that the district court did not misapply partial retrial law, we find no error in its decision precluding Alifax from presenting the alleged signal acquisition trade secret at the new trial. *Order on New Trial Scope and Patent Fees* at *2–3.

**F**

Lastly, Alifax challenges the district court's decision precluding Alifax from seeking compensatory damages at the new trial. Appellant's Br. 37–40; *see Order Precluding Damages* at *1–3. Alifax argues that the district court abused its discretion because it mistakenly assumed that Mr. Bokhart's testimony was essential to the case when it had presented other available avenues for introducing evidence. Appellant's Br. 38. Cross-Appellants respond that Mr. Bokhart was Alifax's sole damages witness and that the district court properly precluded Alifax from offering new damages witnesses, testimony, or theories on retrial. Cross-Appellants' Principal & Resp. Br. 28. We agree with Alifax.

At the outset, Alifax clarified at oral argument that it does not intend for Mr. Bokhart to serve as its damages witness in the new trial, unless the alleged signal acquisition trade secret would be included in the new trial. Oral Arg. at 08:46–10:11. Rather, it seeks to introduce Alcor's sales record of iSED devices and accessories through other fact witnesses already disclosed in the pretrial memoranda or to introduce Alcor's financial statements already identified on the trial exhibit list. *See* Appellant's Br. 38–39. Thus, the crux of the issue on appeal is whether

the district court abused its discretion in finding that "the only damages witness disclosed by Alifax was [Mr.] Bokhart," thereby precluding the damages theory altogether. *Order Precluding Damages* at *2–3.

The finding that Mr. Bokhart was the sole damages witness is not supported by the record. At least some of the fact witnesses that Alifax proposes to call at the new trial for damages are listed in the pretrial memorandum. *Compare* J.A. 18481 (Alifax's brief at the district court identifying Ms. Rossetto, Dr. Galiano, Mr. Duic, Mr. Frappa, Mr. Ruggeri, Mr. Sacchetti and/or Ms. Ruggeri as potential witnesses) *with* J.A. 10477 (Alifax's pretrial memorandum identifying Mr. Duic, Mr. Frappa, Dr. Galiano, Ms. Rossetto, Mr. Ruggeri, and Mr. Sacchetti as potential witnesses). Likewise, at least some documents Alifax seeks to present for damages were also listed in Alifax's pretrial exhibit list attached to its pretrial memorandum. *Compare* J.A. 18480 (identifying Trial Exhibit 173, J.A. 15957–64) *with* Exhibit A to Alifax's Pretrial Memorandum at 6, *Alifax Holding SPA v. Alcor Sci. Inc.*, No. 1:14-cv-00440-WES-LDA (D.R.I. Mar. 15, 2019), Dkt. 226-1. To the extent that the district court's finding was based on an understanding that Alifax's fact witness were disclosed for the liability phase only, this reasoning is not supported because there was no requirement for the parties to distinguish between possible damages and liability witnesses in the pretrial memoranda. *See* Oral Arg. at 42:15–33 (Cross-Appellants conceding that parties were not required to designate witnesses as damages or liability witnesses).

*10 We further find the district court's conclusion to be contradicted by Alifax's initial disclosures. *Order Precluding Damages* at *2–3. Alifax's initial disclosures list at least some of the individuals it may seek to call as damages witnesses at the new trial. *See* J.A. 15071–72 (identifying Mr. Duic, Dr. Galiano, Mr. Frappa, Mr. Ruggeri, and Mr. Sacchetti). Furthermore, after Mr. Bokhart's expert testimony on damages was excluded mid-trial, the district court itself suggested that Alifax could call on other fact witnesses, such as Ms. Ruggeri, to present Alcor's financial spreadsheet as evidence of damages. J.A. 15312; *see* Oral Arg. 42:03–14 (Cross-Appellants admitting the same).

Because the court erred in finding that Mr. Bokhart was the only damages witness that Alifax disclosed, we hold that it abused its discretion in precluding Alifax from presenting any compensatory damages testimony or evidence at the new trial from previously disclosed witnesses who could address the damages issues. *Order Precluding Damages* at *2–3; *see AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1358 (Fed. Cir. 2017) ("A

district court abuses its discretion when its ruling rests on ... a clearly erroneous assessment of the evidence.") (citations omitted).[10]

## G

On cross-appeal, Alcor first challenges the district court's denial of its motion for attorney's fees under 35 U.S.C. § 285. Cross-Appellants' Principal & Resp. Br. 57–58; see also id. at 59–65. Alcor argues that Alifax knew prior to suit that Alcor's iSED device did not fall within the scope of the patent claims and that Alifax failed to obtain a claim construction that would support its infringement theory, yet still proceeded to trial with no viable infringement theory. Id. at 59. Alcor further contends that these facts show that Alifax did not have good faith in pursuing its patent infringement claims and misrepresented its infringement theory as a literal infringement theory. Id. at 60–63. Alcor also argues that the district court abused its discretion in relying on Medtronic Nav., Inc. v. Brain LAB Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed Cir. 2010) to arrive at its conclusion without discussing the Octane factors. Id. 64–65. We disagree.

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorney's fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014). Under a similar provision of the Copyright Act, among the nonexclusive factors that courts have considered relevant to this determination are "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554 n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, n.19 (1994)).

The district court did not abuse its discretion because it correctly found that Alifax's patent claims "were not exceptional" and properly considered arguments raised by Alcor. Order on New Trial Scope and Patent Fees at *4–5. The district court rejected Alcor's argument that "Alifax pulled a bait and switch regarding its theory of patent infringement," id. at *4, and instead found that "the evidence shifted between summary judgment and trial." Id. at *5. For example, it explained that its claim construction order was not inconsistent with Alifax's infringement position and that it rejected Alcor's similar

argument on summary judgment. Id. at *4; see Summary Judgment Order, at *4 (noting Alcor's argument depends "upon reading limitations into the claims that do not exist"). The court further correctly explained that Alifax's infringement position was supported by its expert testimony, but the expert testified inconsistently at trial. Order on New Trial Scope and Patent Fees, at *5; see J.A. 14227–28 (relevant expert testimony). The court thus did not err in concluding that Alcor had not shown that Alifax misrepresented its evidence to the court. See Order on New Trial Scope and Patent Fees at *4–5. On appeal, Alcor simply asks this court to reweigh the evidence based on the same arguments it presented at the district court. See Cross-Appellants' Principal & Resp. Br. 60–63. Because "[w]e do not and should not reweigh evidence or make factual findings anew on appeal," we reject Alcor's argument. Impax Lab'ys Inc. v. Lannett Holdings Inc., 893 F.3d 1372, 1382 (Fed. Cir. 2018) (citation omitted); see Bayer CropScience AG v. Dow AgroSciences LLC, 851 F.3d 1302, 1307 (Fed. Cir. 2017) (declining to "reweigh evidence in a manner inconsistent with ... abuse of discretion" standard).

*11 Additionally, we are not persuaded that the district court improperly relied on Medtronic. Cross-Appellants' Principal & Resp. Br. 64. In Medtronic, we held that the denial of summary judgment can be "an indication that the party's claims were objectively reasonable and suitable for resolution at trial," unless there was a misrepresentation to the court. 603 F.3d at 954. The district court correctly found that the denial of Alcor's summary judgment motion on patent infringement indicates that Alifax's patent claims were "suitable for resolution at trial." Order on New Trial Scope and Patent Fees, at *5. Because the court also properly found Alifax did not misrepresent its patent infringement theory, Medtronic squarely applies and the district court's reliance on this case was proper.

We further are not persuaded by Alcor's argument that the court did not engage in any Octane factors analysis. Cross-Appellants' Principal & Resp. Br. 65. The court discussed the substantive strength of Alifax's position and whether the manner in which it was litigated was unreasonable. See Order on New Trial Scope and Patent Fees at *4–5. This discussion closely follows the analysis in Octane. 572 U.S. at 554 & n.6. Therefore, the district court did not abuse its discretion in finding that this case was not exceptional.

## H

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Lastly, Alcor argues that the district court abused its discretion in denying its motion for attorney's fees as to Alifax's copyright infringement claim under 17 U.S.C. § 505. Cross-Appellants' Principal & Resp. Br. 66–67. Alcor argues that the court abused its discretion in finding that Alifax's copyright infringement claim was not objectively weak because Alifax never identified the content of the copyrighted work or presented a cognizable damages theory for its copyright claim. *Id.* at 67–68. Alcor also contends that the district court erred by failing to consider certain *Fogerty* factors, including deterrence. *Id.* at 70–71. We disagree.

For a court to award attorney's fees under 17 U.S.C. § 505, "the prevailing party need only show that its opponent's copyright claims or defenses were objectively weak." *Latin Am. Music*, 642 F.3d at 91 (citation and internal quotation marks omitted). A finding of objective weakness may turn on "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19. The "district court has discretion to decline to award attorney's fees even when the plaintiff's copyright infringement case is quite weak." *Airframe Sys.*, 658 F.3d at 109.

First, the court correctly held that Alifax's purported failure to present the entirety of the copyrighted source code had little bearing on the overall strength of its claim. *Order on Copyright Fees* at *3; *see Airframe*, 658 F.3d at 109 (affirming denial of attorney's fees despite plaintiff not establishing the content of copyrighted source code). Moreover, as the district court explained, one of the reasons that Alifax was unable to succeed on its copyright claim was because Alifax's expert "failed to revise his opinion as the factual circumstances became more refined." *Order on Copyright Fees* at *4; *see Daubert Decision on Copyright* at *1–2; *Daubert Decision on Trade Secret* at 171–72 ("The copyright claim fell away with the exclusion of Mr. Bokhart's damages testimony."). Failure of an expert to revise his damages opinion as the case progresses has little to do with the overall strength of Alifax's case on the merits. We therefore reject the argument that Alifax's failure to disclose copyrighted source code or to provide evidence of damages at trial should have compelled the district court to find Alifax's claim to be objectively weak.

*12 Second, we are not persuaded that the district court abused its discretion by failing to properly consider the *Fogerty* factors. Cross-Appellants' Principal & Resp. Br. 70–71. Regarding frivolousness and motivation, the court

explicitly rejected the argument that "the claim was frivolous or unreasonable," and found that "nothing in the record indicat[es] that Alifax brought this claim with an improper motivation." *Order on Copyright Fees* at *4. The court's finding is supported by the record: Alifax consistently argued throughout the litigation that Defendants took Alifax's source code without permission. Based on its argument, the court denied Alcor's summary judgment motion on copyright infringement. *See id.* at *3; *Summary Judgment Order* at *9–11. Additionally, the district court's finding that Alifax's copyright claim "fell away" due to the damages expert's failure to revise its opinion supports the court's conclusion that there was no improper motivation. *Daubert Decision on Trade Secret* at 171–72; *see Daubert Decision on Copyright* at *1–2; *New Trial Order* at 558. Because the district court correctly rejected the argument as to motivation, it was not an abuse of discretion to find there to be "no need to compensate Alcor nor to deter Alifax." *Order on Copyright Fees* at *4.

Therefore, we hold that it was not an abuse of discretion for the district court to deny attorney's fees as to Alifax's copyright infringement claim.

### III. Conclusion

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the district court's exclusion of the alleged signal acquisition trade secret from jury consideration at the original trial and the new trial; *reverse* the district court's grant of a new trial as to the liability of the conversion algorithm trade secret and direct the district court to reinstate the jury verdict on this issue; *affirm* the district court's grant of a new trial on damages for misappropriation of the conversion algorithm trade secret; *reverse* the district court's decision to preclude Alifax from presenting evidence and witnesses on compensatory damages at the new trial; and *remand* for a new trial on damages consistent with this opinion. We also *affirm* the denials of Alcor's motions for attorney's fees relating to its patent and copyright infringement claims.

**AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED**

Costs

No costs.

**Alifax Holding SpA v. Alcor Scientific LLC, Not Reported in Fed. Rptr. (2024)**

---

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 2932910

Footnotes

1        Because some issues on appeal only apply to one of the two Cross-Appellants, we distinguish between Cross-Appellants, Alcor, and Mr. Frappa in this opinion.

2        Alifax Holding SpA was the only plaintiff in the initial Complaint filed on October 7, 2014. J.A. 136. Sire Analytical Systems SRL was added as a plaintiff in the Amended Complaint filed on March 17, 2015. J.A. 106. During litigation, Sire merged into Alifax. *New Trial Order* at 557 n.6.

3        In some places, the district court characterized the conversion algorithm and the alleged signal acquisition trade secrets as a single trade secret. *See Summary Judgment Order* at *6 (referring to "software and firmware concerning the acquisition and conversion of photometric measurements to an ESR value"). Elsewhere, it described them as separate trade secrets. *Alifax Holding Spa v. Alcor Sci. Inc.*, C.A. No. WES 14-440, 2021 WL 3022697, at *2 (D.R.I. July 16, 2021) ("*Order on New Trial Scope and Patent Fees*") (referring to "two software trade secrets"). We treat the alleged signal acquisition and conversion algorithm as two separate trade secrets.

4        The jury also found the Defendants misappropriated other trade secrets and had acted willfully and maliciously. J.A. 15194–98.

5        The court ruled that the jury would not be permitted to award damages against Mr. Frappa. *New Trial Order* at 558 n.7; J.A. 15330–31. This ruling is not subject to this appeal.

6        The court considered the motion for a new trial as a joint request from both Defendants. *New Trial Order*, 404 F. Supp. 3d at 556 n.3.

7        Because Alifax brought its trade secret claims under RIUTSA, we apply Rhode Island law. *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1356 (Fed. Cir. 2011). Nonetheless, we look to courts' interpretation of the Uniform Trade Secrets Act (UTSA) enacted by other states for guidance, because RIUTSA is "construed to ... make uniform the law with respect to the subject of this chapter among states enacting it." R.I. Gen. Laws § 6-41-8; *see Read & Lundy, Inc. v. Wash. Tr. Co. of Westerly*, No. PC99-2859, 2002 WL 31867868, at *8 (R.I. Super. Ct. Dec. 13, 2002) (citing cases from other jurisdictions adopting the UTSA to interpret provisions of RIUTSA), *aff'd*, 840 A.2d 1099 (R.I. 2004).

8        We do not address Alifax's challenge to the district court's *Daubert* decision excluding Mr. Bokhart's expert testimony because Alifax only raised this issue in a footnote in its opening brief. Appellant's Br. 41–42 n.9. *See Aquinnah/Gay Head Cmty. Assoc., Inc. v. Wampanoag Tribe of Gay Head (Aquinnah)*, 989 F.3d 72, 80 (1st Cir. 2021) (finding argument addressed in a single footnote in opening brief forfeited).

9        Instead, "the court, by granting only a partial new trial, cannot exclude from the jury an issue on which it has not yet passed" unless "the circumstances would justify a judgment as a matter of law on an issue." 11 Charles A. Wright & Arthur R. Miller,

---

© 2026 Thomson Reuters. No claim to original U.S. Government Works.                                                      10

**Alifax Holding SpA v. Alcor Scientific LLC, Not Reported in Fed. Rptr. (2024)**

*Federal Practice and Procedure* § 2814 (3d ed. 2022).

10    Alifax additionally argues that the district court erred in requiring it to present expert testimony on damages. Appellant's Br. 37; *see Order Precluding Damages* at *3 & n.4. Because we do not agree with this reading of the district court's opinion, we do not separately address this argument.

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

2019 WL 7840665
Only the Westlaw citation is currently available.
United States Bankruptcy Court, M.D. North Carolina,
Durham Division.

IN RE: Lent C. **CARR**, II and Deltarina V. **Carr**, Debtors.

Case No.



18
-
80386

Signed November 18, 2019

**Attorneys and Law Firms**

Joseph A. Bledsoe, III, Raleigh, NC, Erich M. Fabricius, Fabricius & Fabricius, PLLC, Knightdale, NC, for Debtors.

**ORDER**

**Granting Debtors' Motion To Enforce Automatic Stay**

LENA MANSORI JAMES, UNITED STATES BANKRUPTCY JUDGE

*1 THIS MATTER came before the Court on Lent and Deltarina **Carr's** (collectively, the "Debtors") motion to enforce the automatic stay (Docket No. 91, the "Motion"), filed on October 14, 2019. The Court scheduled the Debtors' Motion for hearing on October 29, 2019, at which Erich Fabricius, Esq., appeared on behalf of the Debtors, and Benjamin Lovell, Esq., appeared on behalf of the Chapter 13 Trustee. The Creditor did not file a response to the Debtors' Motion and did not appear at the scheduled hearing.

In the Motion, the Debtors report that Jannetta Jordan (the "Creditor") filed a state-court complaint on April 4, 2018,

which was 15 days after the Debtors filed this chapter 13 case on March 20, 2018. See *Jannetta Jordan v. Lent Carr*, No. 18 CVS 239 (N.C. Super. Apr. 4, 2018). The Creditor's state-court complaint alleges the Debtors misrepresented themselves and unlawfully obtained title to certain real property. Also on April 4, 2018, in connection with the complaint, the Creditor filed a notice of lis pendens, giving potential purchasers of those properties notice of the pending suit. The Debtors argue the Creditor took these **actions** in direct violation of the automatic stay and request the Court enter an order either declaring the lis pendens void *ab initio* or requiring the Creditor to cancel the lis pendens.

At the hearing, the Debtors provided time-stamped copies of the state-court complaint (Ex. 1), and the notice of lis pendens (Ex. 2), both of which reflect a filing date of April 4, 2018. Debtor Lent **Carr** testified regarding the Creditor's filing of the state-court complaint and the shadow the existing lis pendens presently casts over potential sales of estate property (audio available at Docket No. 95). **Carr** indicated that the sale approved by the Court on July 5, 2019 (Docket No. 77) had fallen through, in part, because of the Creditor's alleged communications and "threats" to the potential buyer.

The Debtors request only that the Court declare the lis pendens void *ab initio* or, in the alternative, issue an order requiring the Creditor to cancel the lis pendens by a date certain (Docket No. 91). Although the Debtors did not specifically request a finding that the Creditor's filing of the complaint was violation of the stay, the Court has the power to raise the issue sua sponte without a motion from a party in interest. *In re Jorge*, 568 B.R. 25, 37 (Bankr. N.D. Ohio 2017); see also *Walker v. Got'cha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679, 692–93 (Bankr. M.D. Ga. 2016); *222 Liberty Assoc. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assoc.)*, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990) (collecting cases).

The Motion and exhibits demonstrate clearly that the Creditor filed her complaint and the accompanying lis pendens after the Debtors filed for bankruptcy relief, and the Creditor does not contest that fact. As such, the Court finds the Creditor's state-court filings to be violations of the automatic stay provided in 11 U.S.C. § 362(a)(1).¹ The "automatic stay represents 'one of the fundamental debtor protections provided by the bankruptcy laws.' " *United States v. Gold (In re Avis)*, 178 F.3d 718, 721 (4th Cir. 1999) (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). While the Fourth Circuit has not directly answered the question of whether **actions** in violation of an automatic stay are void or

In re Carr, Not Reported in B.R. Rptr. (2019)

merely voidable, *see Winters v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996) (noting the circuit split on the question but declining to address it), the leading bankruptcy treatise, 3 Collier on Bankruptcy ¶ 362.12 (16th ed. 2019) (noting that "[m]ost courts have held that actions taken in violation of the stay are void and without effect"), as well as a majority of the bankruptcy courts within this Circuit to have considered the question, have concluded that actions in violation of the automatic stay are void, rather than voidable.[2]

*2 While the Court does not, as part of this Order, address the alleged communications between the Creditor and the potential purchaser of the Debtors' property, the Creditor is hereby on notice that any future attempts to interfere with prospective sales, or further violations of the automatic stay more broadly, are likely to warrant sanctions.[3]

For the reasons stated herein, IT IS HEREBY ORDERED

that Creditor Jannetta Jordan's state-court complaint is void *ab initio* as a violation of 11 U.S.C. § 362(a) and Ms. Jordan is directed to take all action necessary to promptly dismiss the state-court action pending in the Superior Court for Hoke County, North Carolina. *Jannetta Jordan v. Lent Carr*, No. 18 CVS 239 (N.C. Super. Apr. 4, 2018).

IT IS FURTHER ORDERED that the notice of lis pendens filed by Jannetta Jordan against the Debtors' property is void and of no effect.

**SO ORDERED.**

**All Citations**

Not Reported in B.R. Rptr., 2019 WL 7840665

**Footnotes**

1    While the Fourth Circuit has previously held a creditor's amendment to an existing lis pendens filed *before* a debtor's bankruptcy, is not a violation of the automatic stay, *see In re Knightsbridge Dev. Co.*, 884 F.2d 145, 148 (4th Cir. 1989), the Creditor here filed both her complaint and the lis pendens *after* the Debtors' chapter 13 bankruptcy filing. As such, this case more closely aligns with *In re Byrd*, in which the bankruptcy court held the creditors violated the automatic stay through their post-petition filing of a state-court complaint and request to impose a constructive trust, which the court analogized to a notice of lis pendens. *In re Byrd*, No. 04-35620, 2007 WL 1485441 (Bankr. D. Md. May 18, 2007), *aff'd sub nom Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008), *aff'd* 331 Fed. Appx. 212 (4th Cir. 2009).

2    *See, e.g.*, *Valenti v. JP Morgan Chase Bank, N.A. (In re Valenti)*, No. 13-01350, 2014 WL 4980039, at *3 (Bankr. E.D.N.C. Oct. 6, 2014) (finding "overwhelming precedent" that an act taken in violation of the automatic stay is void, rather than voidable); *In re NCVAMD, Inc.*, No. 10-03098-8, 2013 WL 6860816, at *3 (Bankr. E.D.N.C. Dec. 31, 2013) (finding government agency's commencement of a condemnation action void ab initio); *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 283 (Bankr. D.S.C. 2009) (noting that, while the Fourth Circuit has not ruled on the issue, courts in the district "have consistently held that actions taken in violation of the automatic stay are void ab initio and thus not legally effective."); *Lykins v. Bottalico (In re Lykins)*, No. 92-14689-RGM, 2006 Bankr. LEXIS 2817, at **6–8 (Bankr. E.D. Va. Jan. 30, 2006) (declining to resolve the question, but proceeding to retroactively annul the automatic stay to address a state-court complaint that had been rendered void *ab initio*); *McGuffin v. Barman (In re BHB Enters., LLC)*, No. 97-80201, 1997 WL 33344249, at *4 (Bankr. D.S.C. Aug. 27, 1997) (holding the filing of a state court complaint and entry of a state-court order "were done in violation of the automatic stay and are therefore void and without effect."); *but see Khozai v. Resolution Trust Corp.*, 177 B.R. 524, 526–27 (E.D. Va. 1995) (finding persuasive those cases concluding acts taken in violation of the stay are voidable).

3    To date, the Debtors have adopted an inexplicably laissez-faire approach to the Creditor's actions, declining to request compensation for damages or sanctions.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    2

**In re Carr, Not Reported in B.R. Rptr. (2019)**

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT E

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 53 of 56

2023 WL 8881858
Only the Westlaw citation is currently available.
United States Bankruptcy Court, District of
Columbia.

IN RE: **HP BENNETT**, **LLC**, Debtor.
In re: Baltimore Harlem Park
Investment, **LLC**, Debtor.

Case No.

**22**
-
**00106**
-
**ELG**
, Case No. 21-00249-ELG
|
Signed December 22, 2023

**Attorneys and Law Firms**

Patricia B. Jefferson, Baltimore, MD, Pro Se.

Lawrence Allen Katz, Tysons, VA, Pro Se.

Mahlon Mowrer, Maurice Belmont VerStandig, The VerStandig Law Firm, **LLC**, Henderson, NV, for Debtor Baltimore Harlem Park Investment **LLC** in No. 21-00249.

**MEMORANDUM OPINION**

Elizabeth L. Gunn, United States Bankruptcy Judge

*1 The Court has before it two motions for relief from stay (each individually a "Motion for Relief," together, the "Motions for Relief") filed by Hutchinson Holdings, **LLC** ("Hutchinson") regarding 906 **Bennett** Place, Baltimore, MD 21223 (the "Property"). Am. Mot. for Relief from Stay, *In re* **HP Bennett, LLC**, Case No. **22-00106-ELG** (Bankr. D.D.C. July 11, 2022), ECF No. 53; Mot. for Relief from Stay, *In re Baltimore Harlem Park Invs., LLC*, Case No. 21-00249-ELG (Bankr. D.D.C. June 26, 2023), ECF No. 89. Hutchinson is the

assignee of a tax certificate from the Mayor and City Council of Baltimore (the "Tax Certificate") dated May 13, 2019 for unpaid property taxes owed by **HP Bennett, LLC** (the "Debtor," and together with Baltimore Harlem Park Investment, **LLC**, the "Debtors") for the Property. Hutchinson seeks relief from the automatic stay in each of the above-captioned cases to exercise and enforce its state law rights against the Property to collect on the Tax Certificate. Hutchinson has not filed a proof of claim in either of the cases. The Debtors timely objected to each of the Motions for Relief.

On October 18, 2023, the Court held a hearing (the "Hearing") on the Motions for Relief and the *Motion to Determine Value of Property of Hutchinson Holdings* (the "Motion to Determine Value"). Mot. to Determine Value of Property of Hutchinson Holdings, *In re* **HP Bennett, LLC**, Case No. **22-00106-ELG** (Bankr. D.D.C. July 18, 2023), ECF No. 56. At the conclusion of the Hearing the Court issued an oral ruling denying the Motions for Relief. This Memorandum Opinion memorializes that ruling, to the extent there is any inconsistency, this Memorandum shall control.

**I. Background**

This matter involves the chapter 7 case of **HP Bennett, LLC** ("**HP Bennett**") and the jointly administered, post-confirmation chapter 11 cases of Baltimore Harlem Park Investment, **LLC** ("BHPI") and Ruby Jude City **LLC** ("Ruby Jude"). The three debtors are interrelated—BHPI is the sole member of Ruby Jude, which was the petitioning creditor of **HP Bennett's** case. At issue is the Tax Certificate in the amount of $26,254.88 on the Property. As stated on its face, under Maryland law, the Tax Certificate would be void unless a proceeding to foreclose the right of redemption was filed within two (2) years of the date of the certificate.

On April 16, 2021, Hutchinson timely filed a Petition to Foreclose Rights of Redemption (the "Foreclosure Action") against Ruby Jude in the Circuit Court of Baltimore City, case number 24-C-21-0001630, against multiple defendants including **HP Bennett** (the title owner) and Ruby Jude (the holder of the secured debt). BHPI and Ruby Jude filed voluntary petitions for relief in this Court on October 17, 2021, effectively staying the Foreclosure Action. An involuntary petition was filed by Ruby Jude against **HP Bennett** on June 23, 2022, and the Order for Relief (the "Order for Relief") was entered on July 20, 2022. Order For Relief in an Invol. Case, *In re*

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re HP Bennett, LLC, Not Reported in B.R. Rptr. (2023)

HP Bennett, LLC, Case No. 22-00106-ELG (Bankr. D.D.C. July 20, 2022), ECF No. 6. Hutchinson was listed as a creditor in HP Bennett's case.

**\*2** On July 11, 2022, Hutchinson filed the Motion for Relief in Ruby Jude's case as to the Property, seeking to exercise its right to foreclose its lien on the Property owned by HP Bennett. ECF No. 87.[1] Despite the pending motion for relief in Ruby Jude's case that was continued multiple times after its filing in July 2022, it was not until June 26, 2023, that Hutchinson filed a Motion for Relief from stay as to the Property in HP Bennett's case. ECF No. 53. The Motions for Relief each raise the same question—whether Hutchinson should be granted relief from the automatic stay in each case to proceed with the Foreclosure Action against the Property. Relatedly is Ruby Jude's Motion to Determine Value, which alleges Hutchinson no longer has a valid secured claim against the Property.

Hutchinson's secured claim to an interest in the Property is based upon the Tax Certificate and the Foreclosure Action. While the Foreclosure Action was timely filed, on July 19, 2022 (the day prior to the entry of the order for relief in HP Bennett's case), the Foreclosure Action was dismissed by order (the "Dismissal Order") entered by the City of Baltimore Circuit Court (the "State Court"). On November 4, 2022, almost a year after the petition date for Ruby Jude and four months after the entry of the Order for Relief against HP Bennett, Hutchinson filed a motion in the State Court seeking to reopen and defer dismissal of the Foreclosure Action "nunc pro tunc" (the "Motion to Reopen"). The chapter 7 trustee of Debtor HP Bennett, LLC filed an opposition to the Motion to Reopen to which Hutchinson responded. On April 5, 2023, the State Court issued an order vacating the Dismissal Order, reinstating the Foreclosure Action, and deferring the dismissal "nunc pro tunc" due to suggestion of bankruptcy (the "Order Vacating Dismissal").

At the Hearing, the Court heard the testimony of the CEO of Hutchinson and admitted all proposed exhibits as follows: a docket report from the Foreclosure Action; a copy of the Tax Certificate; a Suggestion of Bankruptcy dated October 21, 2021 in the Foreclosure Action without any docketing information; and a letter from Hutchinson's counsel Andrew W. Gray setting forth a summary of amounts due on the Property dated August 4, 2023 (the "Exhibits"). Neither party introduced any other pleadings from the Foreclosure Action into evidence. Despite this, during closing, counsel for Hutchinson attempted to read into the record language from the Dismissal Order and the Order Vacating Dismissal. As such documents were not properly introduced into evidence, the Court cannot rely upon the language in consideration of the Motions for Relief.[2]

All parties acknowledge that Hutchinson's original complaint on the Foreclosure Action was timely filed, and the Dismissal Order dismissed the case. The question is whether the Order Vacating Dismissal, and thus reinstating the Foreclosure Action, which in turn retained Hutchinson's interest in the Property, is a valid order. If the Order Vacating Dismissal is valid, then Hutchinson retains a secured claim in the Property as set out in the Foreclosure Action. However, if the postpetition Motion to Reopen was a violation of the automatic stay, then anything resulting therefrom would be void. For the reasons stated herein, the Court finds that the Motion to Reopen violated the automatic stay, thus the Order Vacating Dismissal is void *ab initio*, and therefore the dismissal of the Foreclosure Action remains the last, controlling order. As a result, Hutchinson has failed to meet its burden to show a colorable claim to the Property and has failed to establish cause for relief from stay. Because Hutchinson may seek alternative relief, including but not limited to a motion to annul the automatic stay, the Court continues the hearing on the Motion to Determine Value.[3]

## II. Jurisdiction

**\*3** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

## III. Analysis

### i. The Filing of the Motion to Reopen Violated § 362(a)(1) Stay

The filing of a bankruptcy petition " 'operates as a stay, applicable to all entities,' of efforts to collect from the debtor outside of the bankruptcy forum." *City of Chicago v. Fulton*, 592 U.S. 154, 156, 141 S.Ct. 585, 208 L.Ed.2d 384 (2021) (citing 11 U.S.C. § 362(a)). "The 'primary purpose' of an automatic stay is to 'effectively stop all

creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [their] creditors' so as to 'appropriately resolve competing economic interests in an orderly and effective way.' " *In re Toppin*, 645 B.R. 773, 780 (Bankr. E.D. Pa. 2022) (citing *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999)). As relevant in this matter, the automatic stay prohibits the commencement or continuation of a judicial proceeding against the debtor that was commenced before the petition date. 11 U.S.C. § 362(a)(1). This stay extends to tax sale certificates. *See, e.g., In re LaMont*, 487 B.R. 488, 497 (N.D. Ill. 2012) (the automatic stay bars a tax certificate purchaser's attempt to enforce its lien); *In re Faitalia*, 561 B.R. 767, 774 (B.A.P. 9th Cir. 2016) (dicta stating that foreclosure of a lien after commencement of a case would violate §§ 362(a)(1), (4), and (6)).

Although the case law is limited on the question, courts appear to uniformly agree that the automatic stay does not prevent a state court from dismissing a case on its docket in a manner not inconsistent with the automatic stay. *See Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 966 F.2d 457, 458 (9th Cir. 1992); *Martin v. Hearst Corp.*, No. 3:12cv1023 (MPS), 2013 U.S. Dist. LEXIS 138060 at *24, 2013 WL 5310165 (D. Conn. Aug. 5, 2013). In conducting the analysis, two primary purposes for the automatic stay of § 362(a) have been identified: 1) to provide the debtor a breathing spell from its creditors and 2) to provide creditors protection in avoiding a rush to the courthouse. *See Pan Am. World Airways*, 966 F.2d at 459. The State Court's sua sponte dismissal of the Foreclosure Action is consistent with both purposes—it provided the Debtors relief from their creditor and resulted in the Property being brought back into the bankruptcy estate for the benefit of all creditors. Accordingly, the State Court's entry of the Dismissal Order did not violate the automatic stay. Thus, the inquiry turns to whether the Motion to Reopen violated the automatic stay.

Notwithstanding the effect of the automatic stay's prohibition of continuation of judicial proceedings, routine, ministerial acts in pending matters are not considered violations of the automatic stay. *See Soares v. Brockton Credit Union (In re Soares)*, 107 F. 3d 969, 974 (1st Cir. 1997). A ministerial act is one that is essentially clerical in nature and does not involve judicial function, such as actions taken by court officials fulfilling their duties without discretion. *See id.* Actions in litigation taken outside this limited exception and "in the course of carrying out the core judicial function" violate the automatic stay. *Id.* In general, the ministerial acts exception contemplates actions taken by a public official, not a private entity such as Hutchinson. *See In re Siegel*,

2014 Bankr. LEXIS 2942, *7, 2014 WL 3360573 (Bankr. S.D.N.Y. July 9, 2014). The filing of the Motion to Reopen was both an action requiring an overt judicial act and was filed by a third party. Clearly, the filing and prosecution of the Motion to Reopen does not fall within the scope of the ministerial acts exception. As such, the filing and prosecution of the Motion to Reopen violated the automatic stay.

*ii. Actions in Violation of the Automatic Stay are Void*

**\*4** The circuits are split on whether actions taken in violation of the automatic stay are voidable or void. *See Soares*, 107 F. 3d at 976 (collecting cases). This Court agrees with the majority that acts taken in violation of the automatic stay are void. *See Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *see also In re Sklar*, 626 B.R. 750, 762–63 (Bankr. S.D.N.Y. 2021). As a result, any action taken in violation of the stay is void, unless the automatic stay is annulled. Any subsequent actions dependent upon an act that violates the automatic stay themselves also violate the automatic stay and are void. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *In re Vela*, 2009 Bankr. LEXIS 2179, *6-7 (Bankr. E.D.N.Y. 2009); *see also Rothenberg v. Ralph D. Kaiser Co. (In re Rothenberg)*, 173 B.R. 4, 13 (Bankr. D.D.C. 1994). Therefore, not only is Motion to Reopen void because it violated the automatic stay, but all resulting actions are also void, including but not limited to the Order Vacating Dismissal—resulting in the Dismissal Order being the operative order in the State Court.

Notwithstanding the above, the Court notes that the Motions for Relief from stay sought only stay relief, and no alternative form of relief such as annulment. Thus, while the Court finds that the Motion to Reopen and all subsequent acts in the State Court are void, the Court does not reach the question as to whether the stay should be annulled to rehabilitate the stay violation.

**IV. Conclusion**

Therefore, for the reasons set forth herein, the Motions for Relief are DENIED without prejudice. The Motion to Determine Value shall be heard on January 10, 2024 at 10:00 a.m. Eastern. The hearing will be held both in Courtroom 1, United States Courthouse, 333 Constitution Ave NW, Washington, DC 20001 and by Zoom for

In re HP Bennett, LLC, Not Reported in B.R. Rptr. (2023)

Government. Parties should contact Aimee Mathewes for the Zoom information and should familiarize themselves with General Order 2023-01, Order Establishing Hearing Protocols Before Judge Gunn.

**All Citations**

Not Reported in B.R. Rptr., 2023 WL 8881858

Footnotes

1    The Motion for Relief was redocketed later that day as "Amended" to correct certain technical deficiencies. The substantive portion of the motion was not modified.

2    *See* 2 Bankr. Litig. § 8:33, Westlaw (database update Oct. 2023) ("[t]he universe of evidence that a court will consider when deciding an issue will center upon that which is introduced by the parties.... A party should ensure that substantial evidence is set forth in its papers or presented at the trial or hearing to ensure that the judge will be satisfied. The failure to do so may result in an adverse ruling ... While some bankruptcy judges allow a degree of informality in hearings, all the rulings must be supported by competent evidence.... Assertions by counsel are not probative evidence. Legal arguments made to the court are not judicial admissions. Arguments of counsel are not evidence."); *see also In re Kearney*, 609 B.R. 383, 390 (Bankr. D.N.M. 2019) ("Arguments of counsel are no substitute for evidence.")

3    The Motion to Determine Value was subsequently continued to January 10, 2024 along with certain other pleadings filed by or on behalf of Hutchinson not germane to this Opinion.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT F

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 54 of 56

2025 WL 2621840
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

IN RE VAN WELL NURSERY INC.,
Monson Fruit Co. Inc., Gordon Goodwin,
Sally Goodwin, Petitioners



September 11, 2025

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Washington in No. 2:20-cv-00181-SAB, Judge Stanley Allen Bastian.

**Attorneys and Law Firms**

William Milliken, Ralph Wilson Powers III, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, Stephen A. Merrill, Mark P. Walters, Lowe Graham Jones PLLC, Seattle, WA, for Petitioners.

John R. O'Donnell, Jones Day, Los Angeles, CA, for Her Majesty the Queen in Right of Canada.

Before Reyna, Hughes, and Stoll, Circuit Judges.

**ON PETITION**

**ORDER**

Stoll, Circuit Judge.

*1 Petitioners Van Well Nursery, Inc., Monson Fruit Co. Inc., and Gordon and Sally Goodwin seek a writ of mandamus directing the district court to reinstate its prior order granting Petitioners summary judgment of invalidity. Her Majesty the Queen in Right of Canada, as

Represented by the Minister of Agriculture and Agri Food ("AAFC") opposes the petition. Petitioners reply.

AAFC sued Petitioners alleging their Glory cherry variety infringed AAFC's plant patent covering a cherry variety called Staccato. AAFC also asserted non-patent claims. In November 2022, the district court granted summary judgment of invalidity of AAFC's patent claims based on a spreadsheet that purportedly showed the Staccato cherries on sale before the critical date. The parties later agreed to a bench trial on whether Glory was the same variety as Staccato and on the asserted non-patent claims.

But, in March 2025, before the trial, the court granted AAFC's motion to reconsider the summary judgment order. In doing so, it found Petitioners had falsely represented that the spreadsheet was accurate when the submitted document excluded the first ten rows demonstrating the sales were of a different variety of cherries. Having concluded that there were genuine issues of material fact regarding whether Staccato was sold before the critical date, the court vacated its prior ruling. Petitioners then filed this petition seeking to reinstate that decision.

Mandamus is "reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988) (citation omitted). Under the well-established standard for such relief, a petitioner must: (1) show that he has a clear and indisputable right to relief; (2) show he does not have any other adequate method of obtaining relief; and (3) convince the court that the "writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citation omitted). Petitioners have not met that demanding standard.

As to their primary challenge, Petitioners have not shown that the law of the case doctrine clearly and indisputably precluded the district court from reconsidering its summary judgment order. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (noting that doctrine is "wholly inapposite" to a "district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order"). Nor can we say that Petitioners lack adequate alternative means to raise any specific challenge to the district court's findings or to raise its invalidity challenge such as in an ordinary appeal following final judgment.

Accordingly,

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    1

**In re Van Well Nursery Inc., Not Reported in Fed. Rptr. (2025)**

It Is Ordered That:

The petition is denied.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 2621840

**End of Document**                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT G

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 55 of 56

2025 WL 563349
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Tatyana **LYSYY**, et al., Plaintiffs,
v.
**DEUTSCHE BANK** NATIONAL
**TRUST** COMPANY, et al., Defendants.

CASE NO.

**C24**
-
**0062JLR**

|

Signed February 20, 2025

**Attorneys and Law Firms**

Richard Lamar Pope, Jr., Lake Hills Legal Services PC, Bellevue, WA, for Plaintiffs.

Midori R. Sagara, Buchalter PC, Seattle, WA, for Defendants **Deutsche Bank** National **Trust** Company, Impac Secured Assets Corp 2005-62, Mortgage Passthrough Certificates Series 2007-1, Select Portfolio Servicing Inc, Safeguard Properties LLC, Residential Real Estate Review Inc.

Robert William McDonald, Quality Loan Service Corp., Seattle, WA, for Defendant Quality Loan Service of Washington.

ORDER

JAMES L. ROBART, United States District Judge

**I. INTRODUCTION**

*1 Before the court is the second motion for summary judgment filed by Defendants **Deutsche Bank** National

**Trust** Company, as Trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 (the "**Trust**"); Select Portfolio Servicing, Inc. ("SPS"); Safeguard Properties, LLC ("Safeguard"); and Residential RealEstate Review, Inc. ("RRR") (together, "Defendants"). (MSJ (Dkt. # 88); Reply (Dkt. # 98).) Plaintiffs Tatyana **Lysyy** and Vasiliy **Lysyy** ("Plaintiffs") oppose the motion. (Resp. (Dkt. # 97).[1]) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[2] the court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

**II. BACKGROUND**

The court set forth the factual and procedural background of this case in detail in its April 3, 2024 order denying Plaintiffs' motion to remand and granting in part Defendants' first motion for summary judgment. (*See* 4/3/24 Order (Dkt. # 54) at 3-10.) The court assumes that the reader is familiar with that order and focuses here on the background relevant to the motion now before the court.

**A. Factual Background**
Plaintiffs purchased the home in Auburn, Washington, that is at the center of this case (the "Property") in fall 2004. (*See* 11/26/24 Sagara Decl. (Dkt. # 89) ¶ 3, Ex. A ("T. **Lysyy** Dep.") at 16:11-13.) On November 9, 2006, Ms. **Lysyy** executed a promissory note that obligated her to make monthly payments on a $249,500 loan starting on January 1, 2007, and ending on December 1, 2036 (the "Loan"). (Pittman Decl. (Dkt. # 18) ¶ 7, Ex. A.) The note was secured by a deed of **trust** that encumbered the Property. (*Id.* ¶ 8, Ex. B.) Plaintiffs have made no payments on the Loan since April 1, 2010. (*Id.* ¶ 10.)

On September 15, 2010, Bank of America, then the servicer of the Loan, notified Ms. **Lysyy** of its intent to accelerate the Loan. (Resp. at 13; 1st T. **Lysyy** Decl. (Dkt. # 43) ¶ 4, Ex. 1 ("Notice of Intent to Accelerate").) The Notice of Intent to Accelerate warned Ms. **Lysyy** that if she did not cure her default "on or before October 15, 2010, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full[.]" (Notice of Intent to Accelerate at 1

(emphasis in original).) Plaintiffs did not make any payments on the Loan after receiving the notice. (*See* 1st T. Lysyy Decl. ¶ 4.)

The deed of trust encumbering the Property was assigned to the Trust on September 14, 2011. (Pittman Decl. ¶ 9, Ex. C.) In 2012 or 2013, Plaintiffs moved from the Property to a home in Fife, Washington, where they still reside. (T. Lysyy Dep. at 10:16-23, 18:3-6.) The Property has remained vacant since Plaintiffs moved to Fife. (*See id.* at 18:8-10, 21:2-10.)

**\*2** On August 7, 2015, Bank of America issued a notice of default, and on September 25, 2015, the foreclosure trustee recorded the first Notice of Trustee's Sale on the Property. (1st T. Lysyy Decl. ¶ 5, Ex. 2.) On November 16, 2016, servicing of the loan was transferred from Bank of America to SPS. (*Id.* ¶ 6, Ex. 3.)

On Friday, October 11, 2019, the Trust purchased the Property in a trustee's sale. (Pittman Decl. ¶ 12.) Approximately one hour before the trustee's sale, however, Ms. Lysyy filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Washington, which triggered an automatic stay of the foreclosure proceedings. (*Id.*; *see* 11/26/24 Sagara Decl. ¶ 9, Ex. E (bankruptcy case docket)); 11 U.S.C. § 362(a). According to Defendants, neither the trustee nor SPS received notice of the bankruptcy filing before the trustee's sale took place. (Pittman Decl. ¶ 12.) After the sale, SPS referred the Property to its Real Estate Owned ("REO") Department for further handling. (*Id.*)

On Saturday, October 12, 2019, the Bankruptcy Noticing Center sent notice of Ms. Lysyy's filing to SPS via the email address jennifer.chacon@spservicing.com. (12/29/23 Pope Decl. (Dkt. # 2-2) ¶ 11, Ex. 7.) SPS asserts, however, that its Bankruptcy Department did not receive this notice because Ms. Chacon worked in SPS's HR Training Department and "had no responsibilities for handling bankruptcy notices." (Pittman Decl. ¶ 13.)

On Monday, October 14, 2019, the trustee sent notice of Ms. Lysyy's bankruptcy filing to SPS's Foreclosure Department. (Pittman Decl. ¶ 14.) Then, on October 15, 2019, SPS's Bankruptcy Department received notice from one of its vendors that Ms. Lysyy had filed for bankruptcy. (*Id.* ¶ 15.) SPS "immediately" asked its local bankruptcy counsel, McCarthy Holthus, LLP ("McCarthy Holthus"), to "determine what impact, if any, [Ms. Lysyy's bankruptcy filing] had on the Trustee's Sale." (*Id.*)

Meanwhile, SPS's REO vendor, RRR, automatically sent a request to Safeguard, a provider of property preservation services, "to inspect the Property to determine whether the Property was occupied or vacant." (*Id.* ¶ 16; *see also* Meyer Decl. (Dkt. # 19) ¶¶ 3, 6.) On October 17, 2019, Safeguard "confirmed that the Property was vacant and secured the Property ... in order to avoid waste or damage to the Property." (Pittman Decl. ¶ 16; Meyer Decl. ¶ 6; 1st V. Lysyy Decl. (Dkt. # 44) ¶ 6, Ex. 1 (photos Mr. Lysyy took in October 2019, showing a lockbox on the front door and a "No Trespassing" sign in the window).) That same day, SPS notified Plaintiffs that it had initiated eviction proceedings on the Property. (1st T. Lysyy Decl. ¶ 8[3], Ex. 5.)

On November 1, 2019, McCarthy Holthus confirmed that the October 11, 2019 trustee's sale was void due to Ms. Lysyy's bankruptcy filing. (Pittman Decl. ¶ 17.) SPS "immediately put a hold on all REO activity and removed the Property out of REO status." (*Id.*) No additional action was necessary to rescind the trustee's sale. (*Id.* ¶ 18.) Since November 1, 2019, according to SPS, "no further REO activity has occurred" at the Property; "SPS and its vendors have not maintained possession or control over the Property"; and SPS has not "taken any action or instructed its vendors to take action in which it knowingly violated the automatic bankruptcy stay." (*Id.* ¶ 19; *see also* Meyer Decl. ¶ 8 ("By the end of October 2019, Safeguard did not receive any work order requests from RRR to complete any interior work at the Property.").) Plaintiffs assert, however, that correspondence from McCarthy Holthus and photographs taken by their attorney demonstrate that Defendants maintained possession or control over the Property from October 17, 2019, until at least May 2, 2022, if not later. (*See* 12/29/23 Pope Decl. ¶ 13, Ex. 8 at 68[4] (May 2, 2022 email from McCarthy Holthus providing the code to a lockbox at the Property); 2/26/24 Pope Decl. (Dkt. # 35) ¶ 4[5], Ex. 1 (photos Plaintiffs' attorney took on December 31, 2023).)

**\*3** On February 18, 2020, the bankruptcy court dismissed Ms. Lysyy's Chapter 13 petition. (*See* 11/26/24 Sagara Decl. ¶ 9, Ex. E.)

**B. Procedural Background**
Plaintiffs filed this action *pro se* in King County Superior Court on July 20, 2022, (*See* Compl. (Dkt. # 1-2).) They amended the complaint on July 29, 2022. (*See* Am. Compl. (Dkt. # 1-3).) Counsel appeared on behalf of Plaintiffs in March 2023. (*See* 2/26/24 Pope Decl. ¶ 5.)

Defendants removed the action to this court on January 12, 2024. (Not. of Removal (Dkt. # 1).)

On April 3, 2024, the court granted in part Defendants' motion for summary judgment and dismissed with prejudice Plaintiffs' claims for civil conspiracy, trespass, theft, conversion, wrongful foreclosure, outrage, and violations of the Washington Deed of Trust Act, the Washington Consumer Protection Act ("CPA"), the Washington Foreclosure Fairness Act, and the federal Fair Debt Collection Practices Act. (4/3/24 Order at 18-30.) The court also ordered Plaintiffs to show cause why the court should not dismiss their due process claim for failure to name a state actor and their claim for violation of the automatic bankruptcy stay for failure to "produce admissible evidence that they suffered damage due to ... Defendants' actions." (*Id.* at 30-32.) Shortly thereafter, Plaintiffs moved the court to reconsider its decision to grant summary judgment in Defendants' favor on the trespass and CPA claims. (*See* MFR (Dkt. # 31).)

On May 28, 2024, the court denied Plaintiffs' motion for reconsideration, dismissed Plaintiffs' due process claim, and allowed Plaintiffs' claim for violation of the automatic bankruptcy stay to proceed. (*See generally* 5/28/24 Order (Dkt. # 67).) In relevant part, the court "agree[d] with Plaintiffs that they may rely on Mr. Lysyy's testimony as evidence of injury and damages" and observed that there was "ample opportunity for Plaintiffs to continue to develop evidence to support their claim" because the parties had agreed to keep discovery open on the remaining claims until at least November 4, 2024. (*Id.* at 14 (citing JSR (Dkt. # 66) at 2-3).) The parties have not, however, presented any evidence that Plaintiffs conducted additional discovery regarding damages since the court issued that order.

On July 18, 2024, Plaintiffs' attorney moved to withdraw as counsel. (Mot. to Withdraw (Dkt. # 70).) The court granted the motion on August 6, 2024, and advised Plaintiffs that they would be proceeding *pro se* from that point forward. (8/6/24 Order (Dkt. # 72).)

On August 16, 2024, Defendants moved to compel Plaintiffs to appear for their depositions and sought sanctions because Plaintiffs failed to attend their depositions on July 18, 2024—the date Plaintiffs' attorney moved to withdraw. (MTC (Dkt. # 73); *see* 8/16/24 Order (Dkt. # 75) (ordering Plaintiffs to show cause why the court should not grant Defendants' motion).) On September 25, 2024, the court granted the motion to compel and awarded Defendants $4,500 in attorneys' fees and costs they incurred as a result of the cancelled deposition. (9/25/24 Order (Dkt. # 83).) Defendants took

Plaintiffs' depositions on October 11, 2024. (*See* 11/26/24 Sagara Decl. ¶¶ 3-4.[6])

*4 Defendants filed their second motion for summary judgment on November 26, 2024. (MSJ.) They ask the court to dismiss Plaintiffs' remaining claims for violation of the automatic bankruptcy stay, invasion of private affairs, quiet title, declaratory relief, and injunction. (*See generally id.*) Plaintiffs' former counsel reappeared in the case and filed a response on behalf of Plaintiffs. (NOA (Dkt. # 96); Resp.) Defendants filed a timely reply. (Reply.) The motion is now ripe for decision.

## III. ANALYSIS

Below, the court sets forth the standard of review, then considers the motion.

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party opposing the motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A "party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also* Local Rules W.D. Wash. LCR 10(e)(6) ("Citations to documents already in the record ... must include a citation to the docket number and the page number[.]").

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott*, 550 U.S. at 378 (internal quotations omitted). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 587).

### B. Violation of Automatic Bankruptcy Stay

When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on actions against the debtor to collect pre-petition debts. 11 U.S.C. § 362(a). If a debtor is injured by a creditor's willful violation of the stay, 11 U.S.C. § 362(k) "makes an award of actual damages and attorney's fees mandatory, and grants ... courts the discretion to impose punitive damages in appropriate cases." *In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir. 2015); 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."). The debtor must prove a causal relationship between the stay violation and the injury. *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004), *abrogation on other grounds recognized in In re Gugliuzza*, 852 F.3d 884, 896-97 (9th Cir. 2017).

*5 Defendants contend that the court must dismiss Plaintiffs' § 362(k) claim because Plaintiffs' deposition testimony precludes them from showing that they suffered actual damages caused by Defendants' entry onto the Property after the October 11, 2019 trustee's sale. Plaintiffs counter that they can prove actual damages caused by the bankruptcy stay and that they are also entitled to punitive damages. Below, the court considers whether Plaintiffs have established a genuine dispute of material fact as to emotional distress damages, costs and attorneys' fees, other actual damages, and punitive damages.

#### 1. Emotional Distress Damages

To recover damages for emotional distress under § 362(k), the debtor must "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *In re Dawson*, 390 F.3d at 1149.

Defendants assert that Plaintiffs cannot show that they suffered emotional distress damages caused by any violation of the bankruptcy stay. (MSJ at 11.) The court disagrees. First, Defendants argue that the court should disregard Plaintiffs' second declarations because they contradict Plaintiffs' deposition testimony and are thus "sham" affidavits. (Reply at 5-6.) In general, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This rule, however, pertains only to "sham" testimony "that flatly contradicts earlier testimony in an attempt to create an issue of fact and avoid summary judgment." *Id.* at 267 (cleaned up). "[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). Here, the court finds no "clear and unambiguous" inconsistency between Plaintiffs' deposition testimony and their declarations. Plaintiffs testified in their depositions that they did not *seek treatment* for anxiety or depression since 2019. (T. Lysyy Dep. at 42:12-20; V. Lysyy Dep. at 68:18-24, 70:1-3.) Then, in their second declarations, Plaintiffs state that they have "suffered emotional distress and mental anguish due to Defendants taking over [the Property][.]" (2d T. Lysyy Decl. (Dkt. # 94) ¶ 2; 2d V. Lysyy Decl. (Dkt. # 95) ¶ 2.) Plaintiffs do not state in their declarations that they in fact sought treatment for emotional distress or mental anguish; and Defendants do not identify any deposition testimony in which Plaintiffs denied having suffered emotional distress altogether. (*See generally* 2d T. Lysyy Decl.; 2d V. Lysyy Decl.; Reply.) Because Plaintiffs' second declarations do not "flatly contradict[ ]" their prior deposition testimony, *Kennedy*, 952 F.2d at 267, the court disagrees that they are "sham affidavits" that must be disregarded at summary judgment.

Second, Defendants argue that Plaintiffs cannot establish emotional distress damages because they have produced no medical evidence, sought no medical treatment, and described no "physical manifestations of mental

anguish[.]" (Reply at 7.) The Ninth Circuit is clear, however, that emotional distress damages may be "clearly establish[ed]" through (1) corroborating medical evidence; (2) testimony of family members, friends, or co-workers regarding "manifestations of mental anguish[;]" or (3) common-sense evidence of egregious conduct. *In re Dawson*, 390 F.3d at 1149-50. Thus, a lack of medical evidence or evidence of physical manifestations of distress does not foreclose Plaintiffs' claim for emotional distress damages.

*6 Finally, Defendants contend that Plaintiffs cannot establish that the alleged stay violation proximately caused their emotional distress. (Reply at 6-7.) A reasonable factfinder could conclude, however, that Defendants' actions of proceeding with the trustee's sale, threatening Plaintiffs with eviction nearly a week after the bankruptcy stay went into effect, and padlocking the Property constituted "circumstances that make it obvious that a reasonable person would suffer significant emotional harm" as required to support an award of emotional distress damages. *In re Copeland*, 441 B.R. 352, 367 (Bankr. W.D. Wash. Aug. 16, 2010). Thus, the court denies Defendants' motion for summary judgment regarding emotional distress damages.

### 2. Costs and Attorneys' Fees

"Actual damages" recoverable for a violation of the automatic bankruptcy stay include reasonable costs and attorneys' fees. 18 U.S.C. § 362(k). Defendants argue that Plaintiffs cannot show that they incurred attorneys' fees caused by Defendants' alleged violation of the bankruptcy stay because "[a]ttorney fees incurred in an attempt to collect damages once the stay violation has ended are not recoverable." (Mot. at 10 (citing *In re Snowden*, 769 F.3d 651, 658 (9th Cir. 2014)).) In 2015, however, the Ninth Circuit overruled earlier cases that had limited attorneys' fees under § 362(k) to those incurred "to end the stay violation itself' and held that the debtor may also recover as "actual damages" the attorneys' fees reasonably incurred in prosecuting an action for damages caused by the stay violation. *In re Schwartz-Tallard*, 803 F.3d 1095, 1097 (9th Cir. 2015) (en banc). Because Defendants raise no other challenge to Plaintiffs' entitlement to costs and attorneys' fees under § 362(k) (*see generally* Mot.; Reply), the court denies their motion for summary judgment on Plaintiffs' claim for costs and attorneys' fees incurred as a result of the bankruptcy stay violation.

### 3. Other Actual Damages

Defendants assert that Plaintiffs cannot prove that they suffered any other actual damages caused by any violation of the automatic bankruptcy stay. The court considers each type of damages below.

#### a. Lost Ability to Use, Rent, or Sell the Property

First, Defendants contend that Plaintiffs cannot prove that any violation of the bankruptcy stay prevented them from using, renting out, or selling the Property. The court agrees with Defendants. Plaintiffs testified that they have never tried to rent out or sell the Property, even though it has been vacant since Plaintiffs moved away in 2012 or 2013. (Mot. at 10 (citing T. Lysyy Dep. at 10:16-11:3, 18:8-20, 21:3-11-167; V. Lysyy Dep. at 13:7-16, 26:3-5, 35:12-15, 37:2-3, 41:24-42.2).) In addition, Mr. Lysyy testified that Plaintiffs could not rent or sell the Property because they were in debt and the Property was in foreclosure; he did not attribute their inability to rent or sell the Property to Defendants' violation of the bankruptcy stay. (Mot. at 6-7; *see* V. Lysyy Dep. at 35:3-15; 36:6-24; *see also id.* at 65:14-24 (stating he cannot do anything with the Property "[b]ecause there is a huge debt on me"), 66:4-68:10 (discussing Defendants' failure to modify the loan or forgive the debt on the Property).) Ms. Lysyy, for her part, could not identify any injury or damages that resulted from Defendants padlocking the Property in 2019. (*See* Mot. at 6 (citing T. Lysyy Dep. at 38:9-12, 39:7-24, 42:4-11).)

Plaintiffs' arguments in response are unavailing. First, Plaintiffs assert, relying on Washington trespass law, that they are entitled to damages for loss of use of the Property, regardless of whether they suffered actual harm. (Resp. at 6-7; *see also id.* at 9 ("Plaintiffs are still entitled to maintain trespass claims for nominal damages and punitive damages without proof of ANY actual damages").) By its terms, however, § 362(k) requires proof of "actual damages." 11 U.S.C. § 362(k). Second, Plaintiffs protest that the court should not "assume" that they would have been unable to repair the Property because they lacked the financial means to do so. (Resp. at 10.) The court has done no such thing. Rather, the court is holding Plaintiffs to their legal burden to identify evidence of damages caused by Defendants' alleged violation of the bankruptcy stay. *See Celotex*, 477 U.S. at 324 (placing the burden on the nonmovant to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor). Finally, Plaintiffs argue that the debt they owe has "increased by accrued interest, property taxes, insurance premiums and other escrow charges" since October 2019. (Resp. at 10

(quoting 1st V. Lysyy Decl. ¶ 14).) Again, however, Plaintiffs point to no evidence that they incurred that additional debt *because of* the bankruptcy stay violation. (*See generally id.*) Instead, the only competent evidence in the record shows that those expenses have continued to accrue because Plaintiffs have made no payments on the Loan since 2010. (*See, e.g.,* 1st T. Lysyy Decl. ¶ 4.) Accordingly, the court grants Defendants' motion for summary judgment on Plaintiffs' claims for actual damages arising from their alleged inability to rent out or sell the Property.[7]

### b. Personal Property

*7 Next, Defendants argue that Plaintiffs cannot show that they suffered damage or loss to their personal property resulting from any bankruptcy stay violation. (Mot. at 5, 9.) Defendants point to Plaintiffs' deposition testimony, in which they were unable to identify any personal property that they left behind when they moved away from the Property in 2012 or 2013. (Mot. at 9 (citing T. Lysyy Dep. at 39:7-42, 24:1-10; V. Lysyy Dep. at 47:21-48:25, 65:14-68:3, 50:7-12).) Defendants also note that Plaintiffs have not produced any documents substantiating the loss of or damage to any personal property. (*See* 11/26/24 Sagara Decl. ¶ 5 (stating that Plaintiffs have not responded to Defendants' interrogatories or produced documents regarding personal property losses).) Plaintiffs do not respond to this argument, let alone direct the court to evidence of personal property that was stolen, lost, or damaged as a result of Defendants' conduct. (*See generally* Resp.) Therefore, the court grants summary judgment in Defendants' favor on Plaintiffs' claim for actual damages arising from loss or damage to their personal property.

### c. Locksmith Expenses

Defendants do not respond to Plaintiffs' argument that they will incur actual damages to pay a locksmith to remove the lockbox Defendants placed on the Property after the trustee's sale in October 2019 and to re-key their door locks. (Resp. at 8, 11 (citing 2d V. Lysyy Decl. ¶ 4).) Plaintiffs may, therefore, pursue a claim for locksmith expenses as "actual damages" under § 362(k).

### 4. Punitive Damages

Finally, Defendants argue that Plaintiffs cannot recover punitive damages because they cannot show that they suffered actual damages. (Mot. at 11) (citing *In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995) ("[N]o punitive damages should be awarded in the absence of actual damages[.]").) The court denies Defendants' motion for summary judgment on Plaintiffs' claim for punitive damages because, as discussed above, Plaintiffs have shown a genuine dispute of material fact as to whether they suffered emotional distress or incurred attorneys' fees as a result of the stay violation.

In sum, the court concludes that Plaintiffs have demonstrated a genuine issue of material fact as to whether they suffered emotional distress damages and incurred recoverable attorneys' fees under § 362(k). Therefore, the court denies Defendants' motion for summary judgment on Plaintiffs' claim for violation of the automatic bankruptcy stay.

### C. Failure to Modify or Forgive

Defendants assert that Mr. Lysyy's deposition testimony suggests that he believes Plaintiffs' damages resulted from Defendants' failure to modify their loan or forgive their debt. (Mot. at 12 (citing V. Lysyy Dep. at 65:14-68:3).) They ask the court not to entertain unpleaded claims for failure to modify the loan or forgive the debt. (*Id.* at 13.) Plaintiffs agree that they are not pursuing such claims in this case. (Resp. at 11-12.) Therefore, the court grants Defendants' request and does not consider any claims for failure to modify the loan or forgive the debt.

### D. Invasion of Private Affairs

Defendants argue that Plaintiffs' claim for "invasion of private affairs and residence" must be dismissed because the Washington State Constitution's prohibition against invasion of private affairs applies only to intrusion by the government and none of the Defendants are governmental entities. (Mot. at 14); Wash. Const. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."); *Robinson v. City of Seattle*, 10 P.3d 452, 459 (Wash. Ct. App. 2000) ("Only governmental intrusion into individual privacy falls within this prohibition."). Plaintiffs respond that there are "several ways of committing the invasion of privacy tort, all of which can be brought against private individuals or

Lysyy v. Deutsche Bank National Trust Company, Slip Copy (2025)

entities[,]" including intrusion into seclusion; appropriation of name, personality, or likeness; public disclosure of private facts; and placing another in a false light. (Resp. at 12 (citations omitted).) Plaintiffs do not, however, specify which of these claims, if any, they are pursuing in this action. (*Id.*)

*8 In their sixth cause of action, titled "Invasion of Private Affairs and Residence," Plaintiffs allege that (1) "Defendants ... entered Plaintiffs['] property and home and disposed of Plaintiff's personal belongings without permission or authorization[;]" (2) Plaintiffs "had a legitimate and reasonable expectation of privacy in their home and with regard to their personal belongings which were located therein[;]" (3) "Defendants engaged in an unlawful invasion of [Plaintiffs'] private affairs and their home by taking exclusive possession of the real property and the home's contents[;]" and (4) Plaintiffs "were harmed by the above acts of intrusion into their private affairs[.]" (Am. Compl. ¶¶ 6.2-6.6.) The court agrees with Defendants that this language is consistent with a claim that Defendants violated the Washington State Constitution's prohibition against invasion into a citizen's private affairs and is inconsistent with the privacy-related torts Plaintiffs listed in their response. Furthermore, at this point in the proceedings—two and a half years after Plaintiffs filed this action—Plaintiffs should be able to identify the claims they intend to pursue at trial. Therefore, the court grants Defendants' motion for summary judgment on Plaintiffs' "invasion of private affairs and residence" claim.

### E. Declaratory Relief Regarding Laches and Statute of Limitations

Defendants argue that the court must dismiss Plaintiffs' purported claims for declaratory judgments that Defendants failed to initiate foreclosure within the six-year statute of limitations and that the doctrine of laches bars foreclosure because (1) a claim for declaratory relief must have an underlying claim and (2) the statute of limitations and laches are affirmative defenses that the borrower may assert in a foreclosure action, rather than standalone causes of action. (Mot. at 14-15; *see* Am. Compl. ¶¶ 13.1-13.4 (statute of limitations), 16.1-16.5 (laches).) According to Defendants, there is no ground for Plaintiffs to assert defenses to foreclosure when there is no foreclosure proceeding pending. (Mot. at 14-15.)

Plaintiffs do not address Defendants' arguments regarding dismissal of their declaratory relief claims. (*See generally* Resp.) A party waives an argument at the summary

judgment stage if it provides no argument in support of its position or does not adequately develop the argument. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16, 2016) (collecting cases). Therefore, the court grants Defendants' motion for summary judgment on Plaintiffs' purported claims for declaratory relief.

### E. Quiet Title

Defendants move for summary judgment on Plaintiffs' quiet title claim. (Mot. at 15-16.) They argue that Plaintiffs cannot pursue this claim because they cannot show that they have satisfied their obligations under the deed of **trust** securing the Loan and none of the Defendants claims a current right to title on the Property. (*Id.*) In response, Plaintiffs assert that they may maintain a quiet title action under RCW 7.28.300 because foreclosure on the Property is barred by the statute of limitations. (Resp. at 12-14.)

Under RCW 7.28.300, a property owner may maintain a quiet title action "where an action to foreclose such mortgage or deed of **trust** would be barred by the statute of limitations[.]" RCW 7.28.300. The parties agree that a six-year statute of limitations applies to actions arising out of promissory notes and deeds of **trust**. (Resp. at 15; Reply at 9); *see* RCW 4.16.040(1); *Westar Funding, Inc. v. Sorrels*, 239 P.3d 1109, 1113 (Wash. Ct. App. 2010). For an installment note like the one here, "the statute of limitations runs against each installment from the time it becomes due[.]" *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 6 (Wash. Ct. App. 2016) ("*Gibbon*") (citations omitted). If the installment note is accelerated, however, "the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously become due." *Id.* (citations omitted). Acceleration of an installment note must be made "in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." *Id.* (quoting *Glassmaker v. Ricard*, 593 P.2d 179, 181 (Wash. Ct. App. 1979)).

*9 Here, Plaintiffs argue that the six-year statute of limitations for foreclosing on the Loan was triggered on September 15, 2010, when Bank of America notified Ms. **Lysyy** of its intent to accelerate the Loan. (Resp. at 13.) As noted above, the Notice of Intent to Accelerate warned Ms. **Lysyy** that if she did not cure her default "on or before October 15, 2010, the mortgage payments **will be**

accelerated with the full amount remaining accelerated and becoming due and payable in full" (Notice of Intent to Accelerate at 1 (emphasis in original)), and Plaintiffs made no further payments on the Loan (1st T. Lysyy Decl. ¶ 4). As a result, according to Plaintiffs, the Loan was accelerated, the statute of limitations was triggered, and the statute of limitations for filing a foreclosure action expired years before Plaintiffs filed this case. (*See* Resp. at 13.)

Defendants do not mention the Notice of Intent to Accelerate in their reply. (*See* Reply at 8-9.) Instead, they assert only that Plaintiffs "have not established any date of acceleration." (*Id.* at 9.) Thus, according to Defendants, the statute of limitations has not yet expired on all of the installment payments due on the Loan. (*Id.*) Defendants also argue that the statute of limitations was tolled when they recorded twelve notices of trustees' sale and when Ms. Lysyy filed for bankruptcy. (*Id.*) Defendants do not, however, explain how the notices tolled the statute of limitations in full during the 12 years between the issuance of the Notice of Intent to Accelerate and the filing of this action. (*Id.* (citing 12/24/24 Sagara Decl. (Dkt. # 99) ¶ 3, Ex. A ("Stenman Draft Decl.") ¶¶ 12, Exs. 10A-10L).)

The court concludes, based on the September 10, 2010 Notice of Intent to Accelerate and Defendants' failure to address it, that there is a genuine dispute of material fact regarding whether and when the underlying Loan was accelerated. In addition, Defendants have not demonstrated that subsequent notices of trustee's sale and bankruptcy filings fully tolled the statute of limitations. As a result, Defendants have not met their burden to show, as a matter of law, that Plaintiffs are barred from pursuing a quiet title action under RCW 7.28.300. Therefore, the court denies Defendants' motion for summary judgment on Plaintiffs' quiet title claim.

**F. Injunction**

Defendants argue that Plaintiffs' claim for an injunction is improper because there is no trustee's sale currently pending that could be enjoined. (Mot. at 16.) Plaintiffs agree that they have no need for an injunction because there is no trustee's sale pending. (Resp. at 14.) Therefore, to the extent Plaintiffs have asserted a claim for an injunction, the court grants summary judgment in

Defendants' favor.

**G. Sanctions**

Finally, the court denies Defendants' motion to dismiss this case as a further sanction for Plaintiffs' failure to pay the $4,500 in attorneys' fees and costs incurred when Plaintiffs failed to attend their depositions in July 2024. (*See* MSJ at 18-19.) Defendants filed their motion before the court ruled that it will not require Plaintiffs to pay the sanction before final judgment. (*See* 12/11/24 Order (Dkt. # 92).) Therefore, the court denies Defendants' motion to dismiss as moot.

**IV. CONCLUSION**

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' second motion for summary judgment (Dkt. # 88).

1. The court GRANTS Defendants' motion for summary judgment on Plaintiffs' claims for invasion of private affairs, declaratory relief regarding laches and the statute of limitations, and for an injunction and DISMISSES these claims with prejudice.

2. The court DENIES Defendants' motion for summary judgment on Plaintiffs' claims for violation of the automatic bankruptcy stay and for quiet title. With respect to the stay violation claim, however, the court GRANTS summary judgment in Defendants' favor on Plaintiffs' claims for actual damages arising from (a) loss or damage to personal property and (b) loss of ability to use, rent out, or sell the Property.

*10 3. The court DENIES as moot Defendants' motion to dismiss this case as a sanction for Plaintiffs' failure to pay the monetary sanction the court imposed in September 2024.

**All Citations**

Slip Copy, 2025 WL 563349

Footnotes

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Lysyy v. Deutsche Bank National Trust Company, Slip Copy (2025)

1    Plaintiffs represented themselves in this action between August 6, 2024, when the court granted attorney Richard Lamar Pope, Jr.'s motion to withdraw, and December 17, 2024, when Mr. Pope reappeared in this action and filed Plaintiffs' response to the motion. (8/6/24 Order (Dkt. # 72); NOA (Dkt. # 96); Resp.)

2    Plaintiffs request oral argument; Defendants do not. The court finds that oral argument would not aid in its resolution of the motion and therefore denies Plaintiffs' request. *See* Local Rules W.D. Wash. LCR 7(b)(4).

3    This citation refers to the first of two paragraphs labeled "8" in Ms. Lysyy's declaration.

4    The court cites to the page numbers in the CM/ECF header when referring to exhibits to Mr. Pope's December 29, 2023 declaration.

5    This citation refers to the first of two paragraphs labeled "4" in Mr. Pope's declaration.

6    Plaintiffs appeared *pro se* with Ukrainian interpreters. (*See id.* ¶ 4, Ex. B ("V. Lysyy Dep.") at 2, 4; T. Lysyy Dep. at 2, 4.)

7    Plaintiffs assert that the court should deny Defendants' current motion for summary judgment on their § 362(k) claim "for the exact same reasons" it denied Defendants' first motion. (Resp. at 2 (citing 5/28/24 Order).) It is true that the court held that Mr. Lysyy's testimony could provide evidence of the value of the Property. That testimony only matters, however, if Plaintiffs meet their burden to produce evidence that Defendants' violation of the bankruptcy stay caused a loss of value.

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT H

DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE
AND TO ESTABLISH LIABILITY FOR DAMAGES
CASE NO.: 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 56 of 56

2023 WL 1779643
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

IN RE MOON

Rushmore Loan Management Services,
LLC, Appellant
v.
Willie N. Moon and Adnette M.
Gunnels-Moon, Appellants
and Related Cross Appeal

Case No. 2:22-cv-01126-APG
|
Signed February 6, 2023

## Attorneys and Law Firms

James A. Kohl, Cami Perkins, Howard & Howard, Las Vegas, NV, Jacob A. Johnson, Pro Hac Vice, Alston & Bird LLP, Atlanta, GA, Leib M. Lerner, Pro Hac Vice, Alston & Bird LLP, Los Angeles, CA, Ariel E. Stern, Natalie L Winslow, Akerman LLP, Las Vegas, NV, for Appellant.

## Opinion

ANDREW P. GORDON, UNITED STATES DISTRICT JUDGE

*1 This case is a prime example of how small errors can multiply into expensive and time-consuming litigation. This dispute could have been avoided entirely if either the debtors (through their counsel) had sent bankruptcy notices to the lender's correct address or the lender had, upon receiving actual notice of the bankruptcy, responded appropriately. Instead, this dispute has generated a two-day evidentiary hearing, multiple rulings by the bankruptcy court, several appeals and cross-appeals to the Bankruptcy Appellate Panel (BAP), a remand to the bankruptcy court for another ruling, and now an appeal and cross-appeal before me. And I am likely just a speed bump on the parties' way to the Ninth Circuit.

The parties are familiar with this case's factual background and complicated procedural history, so I give only a summary here.[1] Adnette Gunnels-Moon was the borrower on a second mortgage on her home, but her husband, Willie Moon, was not. Rushmore Loan Management Services, LLC serviced the loan from January 1, 2012 through October 15, 2018. In March 2013, the Moons filed a joint Chapter 13 bankruptcy petition. Although they identified Rushmore as a creditor, they listed the wrong address, and Rushmore did not receive notice of the bankruptcy case when it was filed.

Having no notice of the bankruptcy, Rushmore continued to attempt to collect on the loan, including by calling the Moons' residence numerous times while the automatic bankruptcy stay was in place. During one such call in December 2014, Willie told the Rushmore representative that they had filed bankruptcy. The Rushmore representative made a note about the comment, but Rushmore thereafter did nothing to investigate whether the Moons were in bankruptcy and instead continued to contact the Moons, including after the bankruptcy discharge was entered in the fall of 2016. Rushmore's inaction was based on its unwritten and undisclosed policy not to accept a bankruptcy notification from a third party that the borrower had not authorized to discuss the loan.

In January 2019, the Moons moved to reopen their bankruptcy case to seek contempt sanctions against Rushmore for violating the automatic stay[2] and the discharge injunction.[3] Following a two-day evidentiary hearing, the bankruptcy court found in favor of the Moons on the automatic stay violation and awarded damages in the amount of $742.10 for fees Adnette incurred in reopening the proceeding, $100,000 in emotional distress damages to Willie, and $200,000 in punitive damages. The bankruptcy court also found that Rushmore engaged in conduct that would violate the discharge injunction but there was insufficient evidence as to what date Rushmore learned of the discharge, so it awarded no damages for a discharge injunction violation. By separate order, the bankruptcy court awarded $56,150 in attorney's fees and $10,857.94 in costs but denied the Moons' request for a fee enhancement. The bankruptcy court subsequently awarded an additional $3,500 in supplemental fees that the Moons incurred in filing a reply to the first fee motion. Finally, the bankruptcy court denied the Moons' request for attorney's fees and costs incurred in responding to an adversary proceeding brought by Rushmore.

*2 Both parties filed a series of appeals and cross-appeals to the BAP of the original contempt ruling as well as the

In re Moon, Not Reported in Fed. Supp. (2023)

subsequent rulings on the Moons' attorney's fee requests. No one appealed the bankruptcy court's ruling that Rushmore willfully violated the automatic stay and that Adnette was entitled to damages of $742.10 as a result. Rushmore appealed the emotional distress and punitive damage awards, as well as the orders granting fees and supplemental fees.[4] The Moons appealed the decision not to award damages for Rushmore's violation of the discharge injunction and the decision not to award fees and costs for defending against the adversary proceeding.

The BAP entered a series of decisions resolving the various appeals. In its decision addressing the bankruptcy court's contempt rulings, the BAP reversed the $100,000 award in Willie's favor because it concluded that Rushmore's conduct did not violate Willie's automatic stay. The BAP affirmed the bankruptcy court's finding that Rushmore's conduct warranted a punitive damage award. But it vacated and remanded the $200,000 punitive damage award because it had reversed Willie's $100,000 damage award. In doing so, the BAP stated that on remand, the bankruptcy court could consider attorney's fees and costs in determining an appropriate punitive damage award for Adnette. Finally, it affirmed the bankruptcy court's denial of damages for the Moons' claim for a discharge injunction violation, and it rejected the Moons' related argument that the discharge injunction violation could be considered a continuing automatic stay violation.

The BAP addressed the attorney's fees in separate decisions. With respect to the fees and costs related to the contempt motion, the BAP affirmed the bankruptcy court's decision to award fees and to not apply an enhancement.[5] But it reversed and remanded for the bankruptcy court to explain why it awarded fees for time spent on the discharge injunction violation. Additionally, the BAP concluded that because it had reversed and remanded Willie's damages award, the bankruptcy court should reconsider the fee award and whether a fee enhancement was appropriate. The BAP also vacated and remanded the supplemental fee award for reconsideration by the bankruptcy court because it was closely related to the first fee order. And the BAP remanded for the bankruptcy court to award reasonable attorney's fees and costs to the extent that Rushmore's adversary complaint sought to challenge Adnette's contempt proceeding for Rushmore's automatic stay violation. Finally, the BAP ordered the bankruptcy court to determine appellate fees for the various appeals.[6]

On remand, the bankruptcy court identified its tasks as:

1. To determine the amount of punitive damages for Rushmore's willful violation of the automatic stay given the reduction in compensatory damages and given the BAP's direction that the bankruptcy court could consider attorney's fees and costs in determining the amount of the punitive damage award.

2. To explain the attorney's fee award to the extent it contains time spent on the discharge injunction violation and to reconsider a fee enhancement.

3. To award reasonable fees and costs incurred in responding to Rushmore's adversary complaint to the extent those are part of Adnette's automatic stay violation damages.

*3 4. To determine the amount of appellate fees Adnette Moon is entitled to as part of her automatic stay violation damages.

The bankruptcy court began with the attorney's fees on the first and supplemental fee awards because its decisions on those would impact the punitive damage award. The bankruptcy court declined to reconsider its decision to not apply a fee enhancement,[7] and it again awarded the full amount of the first and supplemental fee requests, explaining that the automatic stay and discharge injunction violations were inextricably linked and litigated together before the bankruptcy court. The bankruptcy court thus awarded $67,007.94 for the first fee award and supplemental fees in the amount of $3,500, for a total fee award to Adnette Moon of $70,507.94.

Based on this fee award and the $742.10 compensatory damage award to Adnette that no one appealed, the bankruptcy court then determined a punitive damage award. The bankruptcy court awarded $500,000 in punitive damages.

The bankruptcy court then determined the amount of fees to award for Adnette having to respond to Rushmore's adversary complaint. The bankruptcy court awarded the entirety of the fees incurred in defending against the adversary complaint for a total of $14,827.

Finally, the bankruptcy court awarded Adnette $70,415.95 in appellate fees because she prevailed on her appeals related to the first fee decision, the supplemental fee decision, and the second fee decision related to the adversary proceeding. The bankruptcy court also awarded fees related to the appeal of the contempt decision but reduced them by twenty percent because at least some of those fees were incurred in addressing the discharge injunction violation. It thus awarded $45,235.82 in appellate fees for the contempt decision appeal, for a total

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

appellate fee award of $115,651.77.*

Rushmore and the Moons appealed the bankruptcy court's order, and the Moons elected to have the appeals decided by this court rather than the BAP. Rushmore appeals the fee awards and the punitive damages award on a variety of grounds and requests that I withdraw the reference if I reverse the bankruptcy court. In their cross-appeal, the Moons argue that Willie has standing to recover for the automatic stay violation, that Rushmore's discharge violation should be considered a continuing stay violation, and that Rushmore should be charged with knowledge of the discharge order either through willful blindness or constructive notice, and thus there was a basis for awarding damages for a discharge injunction violation.

For the reasons discussed below, I decline to consider issues that are raised for the first time on appeal or that were already decided by the BAP. I affirm in part and reverse in part the bankruptcy court's award of attorney's fees, costs, and punitive damages. In the interest of efficient resolution of this matter, I withdraw the reference as to those issues on which I reverse the bankruptcy court's decision, and I enter final judgment.

## I. ISSUES NOT RAISED BELOW OR ALREADY DECIDED

*4 I decline to consider any issue that was never raised before the bankruptcy court or the BAP. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014). Consequently, I do not address Rushmore's newly raised argument that, as a matter of law, Adnette cannot recover any attorney's fees as damages because she suffered no pre-litigation injury from Rushmore's automatic stay violation. Although Rushmore argues I should consider the question as one of pure law for which no further factual development is needed, the Ninth Circuit has this same discretion when the parties inevitably appeal my order. *See id.* This case is already procedurally complicated, and the most judicially efficient resolution is for me to confine my decision to a review of the bankruptcy court's order on remand without considering a new issue raised for the first time before me.

For similar reasons, I decline to reconsider any issues already resolved by the BAP. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir.

2012). This doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson*, 486 U.S. at 816 (quotation omitted). The Ninth Circuit will review the bankruptcy court's and BAP's rulings under the same standards that I would if I declined to follow the law of the case here. *See, e.g., In re Albert*, 998 F.3d 1088, 1091 (9th Cir. 2021). Judicial efficiency counsels against me weighing in on issues the BAP has already decided and on which the bankruptcy court based its order on remand. That does not preclude the Ninth Circuit from reviewing on appeal all issues properly preserved. *See In re Woods*, 173 F.3d 770, 776 (10th Cir. 1999) ("So long as a matter is properly preserved in a lower court, the fact that the lower court can properly refuse reconsideration as a matter of law of the case of course does not prevent subsequent review on appeal." (simplified)). Consequently, I do not address any of the issues raised in the Moons' cross-appeal because the BAP already decided that Willie cannot recover automatic stay damages, that there was no continuing violation of the automatic stay, and that the bankruptcy court did not abuse its discretion by not awarding damages for a violation of the discharge injunction.

## II. WITHDRAWING THE REFERENCE

I "may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] on [my] own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In determining whether good cause exists to withdraw the reference, I consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002) (quotation omitted).

To the extent I determine that the bankruptcy court has erred, I withdraw the reference and enter a final ruling rather than remand to the bankruptcy court. The efficient use of judicial resources weighs against another remand and round of appeals in this already protracted litigation. Another remand would further delay final disposition of this case, as neither party could appeal my interlocutory decision to the Ninth Circuit. Instead, the parties undoubtedly would again appeal the bankruptcy court's order, resulting in yet another round of appeals before either me or the BAP. The uniformity of bankruptcy administration will not be disrupted because the Moons' bankruptcy case is closed except for the resolution of the stay violation and related damages issues. The Moons

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

contend that Rushmore is forum shopping to avoid a return to the bankruptcy court, but the Moons arguably also forum-shopped by electing to have this appeal decided by me rather than returning to the BAP. In sum, the last vestige of efficiency is preserved by me withdrawing the reference and entering a final decision so the parties can appeal to the Ninth Circuit as expeditiously as possible.

## III. RUSHMORE'S APPEAL

*5 Rushmore appeals the bankruptcy court's order (on remand) on both the attorney's fees and punitive damages awards. I "review the bankruptcy court's legal conclusions de novo [and] its factual findings for clear error." *In re Albert*, 998 F.3d at 1091. Like the bankruptcy court, I begin with the attorney's fees issues because resolution of those issues may impact the punitive damages award.

### A. Attorney's Fees

I "review de novo the bankruptcy court's compliance with the mandate of an appellate court." *In re Blaskey*, No. 8:11-AP-01462-ES, 2016 WL 4191775, at *5 (B.A.P. 9th Cir. Aug. 8, 2016). I review the bankruptcy court's award of attorney's fees for an abuse of discretion. *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004). A bankruptcy court abuses its discretion if it applies the wrong legal standard or if its factual findings are clearly erroneous. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012); *see also In re Bennett*, 298 F.3d 1059, 1063 (9th Cir. 2002) ("The bankruptcy court's attorneys' fee determination will only be reversed if the court abused its discretion or erroneously applied the law."). If the bankruptcy court "identified the correct legal rule to apply to the relief requested," then I "must determine whether [its] application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Perry v. Brown*, 667 F.3d 1078, 1084 (9th Cir. 2012) (quotation omitted). "If it was, then [I am] able to have a definite and firm conviction that the [bankruptcy] court reached a conclusion that was a mistake or was not among its permissible options, and thus that it abused its discretion." *Id.* (quotation omitted).

Bankruptcy Code section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." This includes an award of attorney's fees incurred in pursuing damages for a stay violation, fees incurred in establishing the claim for fees, and appellate fees for successfully defending a claim on appeal. *See Easley v. Collection Serv. of Nev.*, 910 F.3d 1286, 1291-93 (9th Cir. 2018); *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015). "Section 362(k) thus seeks to make debtors whole, as if the violation never happened, to the degree possible." *Easley*, 910 F.3d at 1292-93.

A fee award is mandatory if the bankruptcy court finds a stay violation was willful, although the court "retain[s] the discretion to eliminate unnecessary or plainly excessive fees." *In re Schwartz-Tallard*, 803 F.3d at 1101. Additionally, there must be "a nexus between the claimed damages and the violation of the stay" because the individual must be "injured by the violation to be eligible to claim actual damages." *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004) (quotation omitted). Consequently, fees should be awarded as actual damages only if they are causally linked to the stay violation.

#### 1. Fees for the Contempt Proceeding and Supplemental Fees

On remand, the bankruptcy court reentered its award of $67,007.94 in attorney's fees and costs that Adnette incurred in prosecuting the automatic stay violation and $3,500 for fees incurred defending the original fee award. In response to the BAP's direction to explain why it awarded fees for work done on the discharge injunction claim, the bankruptcy court stated that the automatic stay and discharge injunction violations were inextricably linked and litigated together, so all fees were incurred litigating the automatic stay violation.

*6 Rushmore contends the bankruptcy court erred by not separating out fees incurred on the discharge claim and on Willie's automatic stay claim. Rushmore contends that the two types of claims were not inextricably linked because they involve different acts during different time periods under different law. And Rushmore contends that the bankruptcy court erred by not parsing out time allocated to Willie's claims. Finally, Rushmore argues that the bankruptcy court ignored the BAP's instruction to consider whether the remand of the punitive damages award warranted a reduction in attorney's fees.

The Moons respond that Adnette was the prevailing party

In re Moon, Not Reported in Fed. Supp. (2023)

and is entitled to fees. They contend that the bankruptcy court did not err in refusing to apportion fees where their claims were related and where attorney work on one claim was inextricably intertwined with the other.

The BAP directed the bankruptcy court to explain why it did not parse out fees between those incurred in prosecuting the automatic stay violation and those incurred in relation to the discharge injunction. The BAP did not hold that the bankruptcy court could not award fees related to the discharge injunction, only that it must explain why it is doing so to enable appellate review of that decision.

The bankruptcy court explained its decision, and it did not abuse its discretion in awarding the entire amount of fees and costs for the contempt proceedings. "[D]espite the general rule of apportionment, in a specific case apportionment might not be required if it is impossible to differentiate between work done on claims" because those claims are "so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000). As the bankruptcy court explained, the automatic stay and discharge injunction violations were litigated jointly with little distinction either in the briefs or at the evidentiary hearing. At the evidentiary hearing, Rushmore's representative's testimony regarding Rushmore's policies was relevant to both violations, as was the Moons' expert's testimony, because both violations arose out of the same unwritten Rushmore policy and the same course of conduct of Rushmore continuing to contact the Moons despite Willie telling Rushmore about the bankruptcy. *Cf. Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174 (9th Cir. 2019) (stating claims are related if they "arose out of the same course of conduct" (quotation omitted)); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (stating a plaintiff can recover reasonable fees for prosecuting claims that are related to the successful claims if they "involve a common core of facts or are based on related legal theories" (quotation omitted)). The bankruptcy court therefore did not ignore the mandate or abuse its discretion by not apportioning fees incurred in litigating the discharge injunction.

The bankruptcy court also did not abuse its discretion by declining to make a reduction for Willie's failed claims because Willie's testimony was relevant to Adnette's successful stay violation claim. Willie was the one who took Rushmore's calls, so he would have testified even if he did not pursue his own claim. And harm to third parties such as Willie can be considered in evaluating the degree of reprehensibility in determining an appropriate punitive damage award for Adnette. *See Philip Morris USA v.*

*Williams*, 549 U.S. 346, 355 (2007). Consequently, Adnette would have incurred the same fees related to the contempt proceedings even if Willie had never brought claims in his own right.

*7 Even if the bankruptcy court could have made some minor adjustments to address apportionment, the bankruptcy court did not abuse its discretion in declining to do so. In determining what fees are causally linked to the stay violation, courts "need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is)." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-11 (2017) (quotation omitted). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.* (quotation omitted). The bankruptcy court thus can (and did) "take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (simplified). The bankruptcy court's judgments, "in light of [its] superior understanding of the litigation, are entitled to substantial deference on appeal." *Id.* (quotation omitted). The bankruptcy court therefore did not abuse its discretion in awarding all fees and costs related to the original contempt proceedings, including the supplemental fees.

Finally, Rushmore contends the bankruptcy court disregarded the BAP's instruction to consider whether the remand of the punitive damages award warranted a reduction in attorney's fees. But the BAP did not indicate it was remanding for a reduction in attorney's fees. Rather, it stated that because it "reversed the award of damages to Willie and remanded the punitive damages award for the bankruptcy court to review in light of our decision, it is appropriate to allow the court to reconsider the amount of the attorney's fee award and whether a fee enhancement is appropriate." ECF No. 25-6 at 17. The bankruptcy court did as the BAP directed by reconsidering the fee award amount and whether an enhancement was appropriate, so it did not disregard the mandate or abuse its discretion. I therefore affirm the bankruptcy court's award of $67,007.94 in attorney's fees to Adnette for prosecution of the original contempt proceedings and $3,500 in supplemental fees, for a total fee award to Adnette in the amount of $70,507.94 for the original contempt proceeding.

2. Fees for the Adversary Proceeding

The bankruptcy court originally did not award fees incurred in defending against Rushmore's adversary proceeding. The BAP remanded for the bankruptcy court

to consider whether at least some of those fees should be awarded given that Rushmore sought to strike the motion for contempt as part of its adversary complaint. On remand, the bankruptcy court concluded that because Rushmore's adversary sought to preclude Adnette from obtaining any relief from the automatic stay violation, all the fees and costs she incurred in defending against it were "necessarily part of her stay violation damages claim." ECF No. 21-7 at 24. Rushmore argues the bankruptcy court erred by awarding all the fees for time spent defending against the adversary proceeding without discerning which fees were incurred in defending against Rushmore's arguments in defense of its stay violation.

The bankruptcy court did not abuse its discretion in awarding all fees incurred in defending against the adversary. Rushmore's adversary complaint requested that the court strike the motion for contempt sanctions. *See Rushmore Loan Mgmt. Servs., LLC v. Moon*, Bankr. D. Nev. No. 19-01090-mkn, ECF No. 1 at 6 (requesting the bankruptcy court to "strike the motion for contempt, as it is the direct result of a constitutional deprivation of notice to Rushmore," and to "strike the motion for contempt, as it is the direct result of the unclean hands of the debtors in not providing any notice to Rushmore"). Rushmore raised, and continues to raise, similar arguments in opposition to the automatic stay violation and resulting damages that it raised in the adversary. Thus, the bankruptcy court's factual finding that all fees were incurred in defense of the automatic stay violation is not clearly erroneous. And for the same reasons discussed above, the bankruptcy court did not err in declining to apportion fees as between Adnette and Willie. There is nothing in the adversary litigation that was specific to only Willie. *See Rushmore Loan Mgmt. Servs., LLC v. Moon*, Bankr. D. Nev. No. 19-01090-mkn, ECF Nos. 1; 14; 19; 22. Consequently, Adnette would have incurred the same fees even if Willie did not bring a claim on his own behalf. I therefore affirm the bankruptcy court's award of $14,827 in attorney's fees and costs related to the adversary proceeding.

### 3. Appellate Fees

*8 The BAP directed the bankruptcy court to determine what amount, if any, to award for appellate attorney's fees in relation to all the BAP appeals. The bankruptcy court awarded $70,415.95 for fees incurred in the appeals of the fee decision, the supplemental fee decision, and the adversary fee decision because it determined that Adnette prevailed on each of those appeals. It awarded an additional $45,232.82 for fees Adnette incurred in relation

to the contempt appeal. The bankruptcy court reasoned that in relation to the contempt appeal, both sides prevailed to some extent and the defense of the automatic stay violation was severable from other issues on appeal on which Adnette did not prevail, so it reduced Adnette's fees by 20%.

Rushmore contends the bankruptcy court erred by not requiring Adnette's counsel to specify how much time was spent on tasks that Adnette prevailed on and did not reduce fees at all for time spent unsuccessfully appealing Willie's claims. The Moons argue that the bankruptcy court did not err because Adnette generally prevailed on appeal and the fees were not severable.

### a. Fees for Appeals Regarding Original, Supplemental, and Adversary Fees

The bankruptcy court did not abuse its discretion by awarding Adnette full fees for the appeals related to the original fee award, the supplemental fee award, and the adversary. The BAP held that Adnette was entitled to fees as part of her compensatory damages and that those fees could be included in a punitive damage calculation. It also reversed the bankruptcy court's denial of fees related to the adversary and directed the bankruptcy court to determine the proper amount of fees to award in relation to the adversary. Although the BAP remanded for the bankruptcy court to determine total fees and to explain why it awarded fees related to the discharge injunction, the BAP did not reverse any of the bankruptcy court's rulings related to the original or supplemental fee awards. And its reversal on the fees in relation to the adversary is a ruling in Adnette's favor that permitted the bankruptcy court to determine whether those fees were actual damages caused by the automatic stay violation. The bankruptcy court therefore did not err in awarding as actual damages the appellate fees Adnette incurred on the fee appeals.

The bankruptcy court did not apportion any amount for arguments made in support of fees for the discharge violation or for Willie's claims. But the Moons defended their fees for both the automatic stay and discharge injunction violations on the same grounds on appeal as adopted by the bankruptcy court on remand: that they were related because they were based on the same course of conduct. Additionally, a review of the briefs shows little time was devoted specifically to the discharge injunction, so a reduction would be the type of minute accounting not required of the bankruptcy court. The decision not to apportion does not rise to the level of an

abuse of discretion. *See, e.g., In re Moon*, 9th Cir. BAP Appeal No. 20-1144, ECF Nos. 17, 20;*see also In re Moon*, 9th Cir. BAP Appeal No. 20-1155; *In re Moon*, 9th Cir. BAP Appeal No. 20-1195. Finally, the fee appeals did not distinguish between Adnette and Willie, so no reduction is warranted for time spent on issues specific only to Willie because there were none. I therefore affirm the bankruptcy court's decision to award full fees on the three appeals related to the recovery of fees, supplemental fees, and adversary fees in the amount of $70,415.95.

#### b. Fees for the Contempt Appeal

On remand, the bankruptcy court disallowed 20% of the time Adnette's counsel spent on issues related to the discharge violation, determining that in the contempt appeal that time was severable from time spent on the automatic stay arguments. ECF No. 21-7 at 29. The bankruptcy court did not indicate that it was reducing the fees for time spent on issues specific to Willie. Rushmore contends this was error and that it, not Adnette, largely prevailed on this appeal.

**\*9** The bankruptcy court abused its discretion in failing to apportion fees for time spent on Willie's unsuccessful appeal. Those fees were not incurred as actual damages arising from Rushmore's violation of Adnette's automatic stay. A substantial portion of the Moons' briefs on the contempt appeal addressed Willie's standing and the propriety of Willie's emotional distress damage award, in addition to the discharge violation. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF Nos. 22, 28, 56; *In re Moon*, 9th Cir. BAP Appeal No. 20-1070, ECF Nos. 10, 15. Indeed, some of the Moons' briefs addressed little else. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF Nos. 28, 56; *In re Moon*, 9th Cir. BAP Appeal No. 20-1070, ECF Nos. 15, 39. Those fees are severable and do not count as damages incurred in defending Adnette's stay violation claim on appeal. Where it is possible to apportion, the court should do so. *See Gracie*, 217 F.3d at 1070 (stating, in relation to a Lanham Act claim, that "apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless"). The bankruptcy court's failure to do so in this instance thus constitutes an abuse of discretion.

The Moons' billing records on appeal do not distinguish between work performed on the various issues. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF No. 62. Like the bankruptcy court, I therefore estimate the time spent on issues for which Adnette cannot recover fees.

When considering the time spent on the discharge injunction and Willie's unsuccessful appeal, I reduce the fees and costs by 80%. Consequently, I reverse this portion of the bankruptcy court's remand order and award reduced appellate fees for Adnette in the amount of $11,308.96. ($56,544.78 in fees and costs × .20).

#### 4. Proportionality and Mitigation

Rushmore argues that the bankruptcy court abused its discretion by awarding Adnette substantial attorney's fees to prosecute a stay violation that had already ceased by the time the Moons moved for contempt sanctions and for which Adnette had suffered only $742.10 in compensatory damages. Rushmore argues that awarding thousands of dollars in attorney's fees (which are then used as the basis for a substantial punitive damage award) is unreasonable in relation to Adnette's minimal compensatory damages and lack of pre-litigation injury.[9] The Moons respond that Rushmore is attempting to shift the blame for its willful stay violation to the debtor, that attorney's fees are actual damages under § 362(k), and that Rushmore harassed the Moons for years such that a full attorney's fee award is appropriate.

In providing for the recovery of attorney's fees as actual damages under § 362(k), "Congress sought to encourage injured debtors to bring suit to vindicate their statutory right to the automatic stay's protection, one of the most important rights afforded to debtors by the Bankruptcy Code." *In re Schwartz-Tallard*, 803 F.3d at 1100. "By providing robust remedies for debtors who prevail, the statute acts to deter creditors from violating the automatic stay in the first instance." *Id.* "[B]y definition," debtors "will typically not have the resources to hire private counsel," and "in many cases the actual damages suffered by the injured debtor will be too small to justify the expense of litigation." *Id.* Consequently, § 362(k)'s deterrent effect is fulfilled in part by allowing the recovery of attorney's fees incurred in prosecuting a stay violation, thereby "making it possible for persons without means to bring suit to vindicate their rights." *Id.* (quotation omitted).

**\*10** However, courts have expressed the concern that debtors could use § 362(k) "as a sword rather than a shield." *In re Roman*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002). To curb this deleterious effect, courts have discretion to "eliminate unnecessary or plainly excessive fees" to "check ... any abuses that might otherwise arise." *In re Schwartz-Tallard*, 803 F.3d at 1101. Thus, a court may make a reduction where fees "would not have been

incurred but for the bringing of the [contempt] motion." *In re McHenry*, 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995). But even in this situation, a debtor may be "justified in bringing the motion and in incurring additional attorney's fees" if "an award of punitive damages [was] warranted." *Id.*

The bankruptcy court did not abuse its discretion in declining to make an adjustment. The court acknowledged Rushmore's argument but rejected it based on its view that once Rushmore learned of the bankruptcy, any errors by the Moons regarding Rushmore's incorrect address no longer mattered because Rushmore had actual notice of the bankruptcy, yet it did nothing to investigate the matter and continued to repeatedly contact the Moons. Additionally, the bankruptcy court noted that Rushmore's unwritten policy, and its failure to advise the Moons of its policy, meant that Adnette had no way to know that Rushmore was ignoring Willie's report of the bankruptcy or that it would continue to contact the Moons until Adnette called them. There is nothing clearly erroneous about these findings. Nor did the bankruptcy court exceed its permissible options by declining to reduce fees given Rushmore's willful, repeated violations of Adnette's automatic stay rights. Even if another judge might have reached a different conclusion, it is not illogical or factually unsupported for the bankruptcy court to conclude there was a need to vindicate Adnette's rights and to deter Rushmore's conduct through a fee award. I therefore affirm the bankruptcy court's decision not to reduce fees on proportionality or mitigation grounds.

5. Total Fees

In sum, the total amount of attorney's fees and costs for the original contempt proceeding (including supplemental fees), the adversary proceeding, and the various appeals is $167,059.85. I note that the bankruptcy court included in its punitive damages analysis only $70,507.94 for the original contempt proceeding (plus supplemental fees) and $742.10 in Adnette's out-of-pocket expenses. ECF No. 21-7 at 13.

**B. Punitive Damages**

On remand, the bankruptcy court increased the punitive damage award from $200,000 to $500,000. The bankruptcy court concluded that a higher multiplier was needed given the BAP's conclusion that Willie was not protected by the automatic stay. In the bankruptcy court's view, this made Rushmore's conduct "far worse" because it was able to contact Willie, who also was a debtor, "without repercussion." ECF No. 21-7 at 17. The bankruptcy court concluded that Rushmore's conduct was even more reprehensible because its failure to investigate Adnette's bankruptcy status after Willie advised Rushmore of it, combined with Willie's inability to sue for damages to himself, allowed Rushmore to "continue dunning the non-borrower debtor." *Id.* at 19. The bankruptcy court noted that Rushmore's unwritten policy posed a risk to all similarly situated borrowers. And it considered that Adnette and others like her are financial vulnerable given they are in bankruptcy.

The bankruptcy court also concluded that in addition to a greater degree of reprehensibility, further deterrence was needed because, in light of the BAP's ruling, Rushmore could contact others in the same situation as Willie without violating the automatic stay. *Id.* at 20. The bankruptcy court concluded that Rushmore is not "self-policing" because its own employees testified to Rushmore's unwritten policy. *Id.* The bankruptcy court thus increased the punitive damages multiplier from 2:1 to 7:1. *Id.* at 21. The bankruptcy court noted that if it included in the punitive damage analysis all fees it awarded, then the multiplier would be approximately 2.48:1. *Id.* at 30.

**\*11** Rushmore contends that the bankruptcy court's punitive damage award on remand violates its due process rights because the bankruptcy court punished Rushmore (1) for Willie's injuries, (2) for Rushmore's success on appeal and for pressing good faith defenses, and (3) for calling the discharge violation claim unsuccessful. Rushmore also asserts that the bankruptcy court erred by justifying the award as deterrence because Rushmore's contact with Willie violated Adnette's stay, so there is no lack of repercussions, and because there is no evidence that Rushmore engaged in similar conduct before, during, or after the situation with the Moons. Finally, Rushmore argues that in a de novo review of the relevant factors, Adnette is entitled to no or minimal punitive damages.

The Moons respond that the bankruptcy court's award on remand is constitutional because the bankruptcy court properly determined that Rushmore's conduct was reprehensible. They further argue that a 7:1 multiplier is not unconstitutional, particularly because Adnette did not recover substantial actual damages. Finally, the Moons argue that courts in other cases have awarded a higher ratio of punitive to compensatory damages where compensatory damages are low but the need to punish and deter is high.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

I review for clear error the bankruptcy court's factual findings in conducting the inquiry of whether a punitive damage award is unconstitutionally excessive. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 435 (2001). But I review de novo the constitutionality of a punitive damage award. *Id.* In doing so, I consider three guideposts: "the degree of the defendant's reprehensibility or culpability, the relationship between the penalty and the harm to the victim caused by the defendant's actions, and the sanctions imposed in other cases for comparable misconduct." *Id.* (simplified).

The reprehensibility of Rushmore's conduct is the most important guidepost. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). To determine reprehensibility, courts consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1036 (9th Cir. 2020), *rev'd and remanded on other grounds*, 141 S. Ct. 2190 (2021). The bankruptcy court could consider "evidence of actual harm to nonparties" as part of the reprehensibility determination, but it cannot directly punish Rushmore for injuring nonparties because that violates due process. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353-55 (2007).

"There is no bright-line rule about the maximum ratio due process permits between the harm suffered by the plaintiff (i.e., the compensatory damages) and the punitive damages." *Ramirez*, 951 F.3d at 1036-37. But "awards exceeding a single-digit ratio will rarely satisfy due process, and punitive awards exceeding four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* (simplified). However, a "ratio higher than 4 to 1 may be upheld where a particularly egregious act has resulted in only a small amount of economic damages." *Id.* (quotation omitted). In contrast, "when compensatory damages are substantial, a ratio lower than 4 to 1 may be the limit." *Id.* (quotation omitted).

Finally, the purpose of looking to civil or criminal penalties that could be imposed for comparable misconduct "is to accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *In re Exxon Valdez*, 270 F.3d 1215, 1245 (9th Cir. 2001) (quotation omitted).

*12 I begin with reprehensibility because it is the most important guidepost. In its original contempt order, the bankruptcy court found Rushmore's conduct reprehensible because it "adopted express procedures to narrow the sources of bankruptcy information that it is willing to acknowledge and does not even tell its borrowers what those sources are," thereby allowing Rushmore to "maintain a veil of ignorance" about Adnette's and other borrowers' bankruptcies. ECF No. 22-2 at 58-59. But the bankruptcy court decided not to apply a "large multiplier because, unlike other cases, Rushmore did not formally initiate or complete foreclosure proceedings on the Residence." *Id.* at 59. On remand, the bankruptcy court concluded that Rushmore's conduct was even more egregious because Willie and those like him were no longer protected by the automatic stay given the BAP's ruling, so Rushmore could contact them without repercussion. The bankruptcy court therefore increased the multiplier from 2:1 to 7:1.

The bankruptcy court's punitive damage award on remand violates due process both because it punishes Rushmore directly for harm caused to third parties and because the ratio of 7:1 is excessive in these circumstances. Although the bankruptcy court properly could consider the harm to third parties in determining reprehensibility, it could not directly punish Rushmore for harm to third parties. But it is apparent that the bankruptcy court's substantial increase of both the multiplier and the overall monetary amount on remand was based on the harm caused to Willie and the potential harm caused to others similarly situated to Willie, and involved little analysis of the harm to Adnette. Additionally, a 7:1 ratio is rarely constitutionally appropriate, and it is not appropriate here, particularly given the bankruptcy court's initial decision to not apply a large multiplier. Despite what the Moons argue, tens of thousands of dollars in attorney's fees is a substantial actual damages award, so this is not a case where an insubstantial fee award might support a high punitive damage award ratio. *See Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 776 (9th Cir. 2005) (stating that $50,000 in "economic damages were substantial").

When a punitive damage award is unconstitutional, I may "decide on a case-by-case basis whether to remand for a new trial or simply to order a remittitur." *Ramirez*, 951 F.3d at 1037. The parties have been litigating this case for years and the evidentiary record before the bankruptcy court is closed. Consequently, there is no benefit to a remand that will only delay a final resolution and consume more resources in an already costly case. The

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

parties and the courts are served by bringing this litigation to a close as quickly and efficiently as is possible at this point.

On de novo review, I begin with the question of what actual damages to base a punitive damage award upon. The bankruptcy court included only the original contempt and supplemental fees, totaling $70,507.94. I add to that the fees of $14,827 that Adnette incurred in defending against the adversary because those were actual damages Adnette incurred in defending her automatic stay violation claim before the bankruptcy court. I do not include appellate fees because I do not find Rushmore's appeals worthy of punishment and I am generally disinclined to deter a party from exercising its appellate rights. There is no basis to conclude that Rushmore's appeals were frivolous or brought in bad faith. Consequently, the amount of compensatory damages that I consider in evaluating a proper punitive damage award is $85,334.94.

I conclude a 1.5 multiplier appropriately serves the twin goals of punishment and deterrence. Rushmore's conduct caused Willie (but not Adnette) emotional distress, but it caused no physical harm and did not evince an indifference to or a reckless disregard of the health or safety of others. Adnette, as a debtor, was financially vulnerable and Rushmore's conduct was repeated as to her and her husband. But there is no evidence that Rushmore engaged in similar conduct toward any other borrower. And there is no evidence that Rushmore engaged in intentional malice, trickery, or deceit. As the bankruptcy court noted, Rushmore's conduct led it to repeatedly contact a debtor and her spouse at their residence despite having actual notice of the bankruptcy, thus depriving Adnette of the breathing space the automatic stay is meant to provide. Punitive damages thus are warranted to both punish this conduct and deter similar conduct in the future.

*13 A 1.5 ratio between compensatory and punitive damages is well within constitutional parameters. And although this will result in an award that is substantially

higher than the comparable awards that the bankruptcy court noted in its original contempt order, I agree with the bankruptcy court that a higher award is warranted because Rushmore's stay violation was "not a situation involving a rogue employee, but the acts of representatives that Rushmore touts as properly trained." ECF No. 22-2 at 60. Consequently, I award Adnette $128,002.41 in punitive damages.

**C. Final Award**
As detailed in this order, I award Adnette Moon the following:

1. $742.10 in pecuniary damages;

2. $167,059.85 in attorney's fees and costs; and

3. $128,002.41 in punitive damages.

**TOTAL: $295,804.36**

**IV. CONCLUSION**
I THEREFORE ORDER that the bankruptcy court's order on remand is affirmed in part and reversed in part as set forth in this order. I direct the clerk of court to enter judgment in favor of Adnette Gunnels-Moon (but not Willie Moon) and against Rushmore Loan Management Services, LLC in the amount of **$295,804.36**. The clerk of court is instructed to close this case.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 1779643

Footnotes

1    The bankruptcy court set out the factual background in its original order. ECF No. 22-2. It detailed the procedural history in its order on remand. ECF No. 21-7.

2    Title 11 U.S.C. § 362(a) provides for an automatic stay of collection activity against the debtor upon the filing of a bankruptcy petition. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

3    Under 11 U.S.C. § 524, a bankruptcy discharge operates as an injunction that bars creditors from collecting debts that have been discharged. A violation of the discharge injunction may be remedied through a civil contempt motion in the bankruptcy case. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

4    Rushmore also appealed the bankruptcy court's decision to allow the Moons' expert to testify at the evidentiary hearing. That is not at issue in the appeals before me, so I do not mention it further.

5    The BAP decision addressed other arguments the parties raised before that court that do not impact the issues before me, so I do not discuss them.

6    The parties made several attempts to appeal the BAP's decisions, but the Ninth Circuit dismissed those appeals for lack of jurisdiction.

7    The Moons do not appeal this decision.

8    The bankruptcy court did not include in its punitive damages calculation the fees it awarded for responding to Rushmore's adversary complaint or the appellate fees, except to state that if these fees were included, the ratio between compensatory and punitive damages is closer to 2.48:1 rather than 7:1 if those fees are excluded from the punitive damages analysis.

9    This is related to, but different than, Rushmore's argument raised for the first time on appeal before me that the bankruptcy court could not award Adnette attorney's fees as a matter of law because she suffered no pre-litigation injury. As stated above, I decline to address this issue because Rushmore did not raise it before the bankruptcy court or the BAP. But I will address Rushmore's argument that the bankruptcy court abused its discretion by not reducing or eliminating fees based on proportionality or failure to mitigate. Rushmore raised that issue on remand before the bankruptcy court. *See* ECF No. 21-1 at 16-19; 21-3 at 8-9, 10 n.8, 13; 21-5 at 7 n.6, 10-11.

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.