STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,*
*Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS, LLC and EIGHT EIGHTEEN, LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>JONATHAN CLAUSEN, CLAUSEN, INC., AR-TT LLC, and LILAC CITY, LLC,<br><br>       Defendants. | Case No.: 2:24-CV-00413-SAB<br><br>DEFENDANT JONATHAN CLAUSEN'S MOTION TO VACATE |

# TABLE OF CONTENTS

Pages

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

   I. ALL CLAIMS, MOTIONS, ORDERS, AND PROCEEDINGS AGAINST
      INDIVIDUAL DEFENDANT JONATHAN CLAUSEN SHOULD BE
      VACATED AND DISMISSED *NUNC PRO TUNC* AS VOID AND
      LEGALLY-INVALID ACTS DONE BY THE PLAINTIFFS AND
      THE COURT IN VIOLATION OF 11 U.S.C. SECTION 362(a)(1) . . . . . .    9

     A. The Ninth Circuit Embraces the Nationwide Overwhelming Majority
        Interpretation of 11 U.S.C. § 362(a)(1) That a Civil Commercial Action
        Filed Against an Individual Subsequent to the Individual's Filing of an
        Active Bankruptcy Is Void *ab Initio,* and That Any Acts Taken in the
        Commercial Action Against the Individual Are Legally Invalid . . . . . .    9

     B. The Majority Rule Embraced by the Ninth Circuit Furthers the
        Automatic Stay's Purposes – to Give Breathing Room to
        Financially-Pressed Debtors and Facilitate Consolidation of
        All Creditors' Claims in the Bankruptcy Court. . . . . . . . . . . . . . . . . .    12

     C. PLAINTIFFS Should Never Have Commenced This Action
        Against CLAUSEN When They Did and Violated Their
        Obligation to Discontinue It When CLAUSEN's Then
        Counsel of Record Brought the Active Bankruptcy
        Proceeding to the Attention of PLAINTIFFS' Counsel. . . . . . . . . . . .    15

     D. Because This Suit Against CLAUSEN Was Void *Ab Initio,*
        the Court Was Without Authority to Enter or Lift a Stay, Its
        Subsequent Rulings With Respect to CLAUSEN Are Legally

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Invalid and Should Be Vacated *Nunc Pro Tunc,* and PLAINTIFFS'
Action Against CLAUSEN Should Be Dismissed . . . . . . . . . . . . . .    18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 3 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# TABLE OF AUTHORITIES

Pages

## Cases

*Alifax Holding SpA v. Alcor Scientific LLC*, Nos. 2022-1641, 2022-1723, 2024 WL 2932910 (Fed. Cir.  June 11, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Atlas IP, LLC v. Medtronic, Inc.,* 809 F.3d 599 (Fed. Cir. 2015) . . . . . . . . . . .    9

*Bell v. Niagara Mohawk Power Corp.*, 173 Misc.2d 1042, 662 N.Y.S.2d 682 (Sup. Ct. N.Y. Co. 1997). . . . . . . . . . . . . . . . . . . . . . 13, 14

*City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

*Dam v. Waldron,* No. 2:24-CV-00417-SAB, Slip Op., 2025 WL 1069844 (E.D. Wash. April 9, 2025), *vacated and remanded for a without-prejudice dismissal,* Appeal No. 25-2459, Memorandum, 2026 WL 777414 (9th Cir. Mar. 19, 2026) (unpub.) . . . . . . . . . . . . . . . . . . . . . . .*passim*

*Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002) . . . . . . . . . . .15, 16, 17

*In re Achterberg,* 573 B.R. 819 (Bankr. E.D. Cal. 2017). . . . . . . . . . . . . . . .    17

*In re Braught*, 307 B.R. 399 (Bankr. S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . .    17

*In re Carr*, No. 18-80386, 2019 WL 7840665 (Bankr. M.D.N.C. Nov. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

*In re HP Bennett, LLC*, No. 22-00106-ELG, 2023 WL 8881858 (Bankr. D.C. Dec. 22, 2023) . . . . . . . . . . . . . . . . . .    19

*In re 222 Liberty Assocs.,* 110 B.R. 196 (Bankr. E.D. Pa. 1990) . . . . . . . . .    19

*In re Schwartz,* 954 F.2d 569 (9th Cir. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Sucre,* 226 B.R. 340 (Bankr. S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . .    17

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 4 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*In re Van Well Nursery Inc.*, No. 2025-131,
2025 WL 2621840 (Fed. Cir. Sept. 11, 2025) . . . . . . . . . . . . . . . . .    20

*Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343 (1940). . . . . . . . . . . . . . .    12

*Little Texas, Inc. v. Buchen,* 319 Ill. App. 3d 78,
744 N.E.2d 348 (Ill. App. 3 Dist. 2001) . . . . . . . . . . . . . . . . . .. . . . .    10, 11

*Maritime Elec. Co. v. United Jersey Bank*,
959 F.2d 1194 (3d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20, 21

*Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . .    20

*Select Portfolio Servicing, Inc. v. Worobec*,
178 So.3d 971, 2015 WL 7781609
(D. Ct. App. Fla. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

**Statutes**

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

11 U.S.C. § 362(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    *passim*

11 U.S.C. § 362(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

**Rules**

F.R.C.P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 5 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## **PRELIMINARY STATEMENT**

The above-captioned action was brought by Plaintiffs Hammerless Tools, LLC, and Eight Eighteen, LLC (hereinafter collectively "PLAINTIFFS") against company Defendants Clausen, Inc., AT-TT LLC, and Lilac City, LLC (hereinafter collectively the "COMPANY DEFENDANTS"), and individual Defendant Jonathan Clausen ("CLAUSEN") (CLAUSEN hereinafter referred to collectively with the COMPANY DEFENDANTS as the "DEFENDANTS").[1]

The action was commenced by filing of a Complaint on December 10, 2024, and the subsequent issuance of Summonses and their employment by PLAINTIFFS' counsel Caleb Hatch, Esq., and Johanna R. Tomlinson, Esq., of the law firm of Lee & Hayes, P.C.  However, on December 10, 2024, there was active a Chapter 13 bankruptcy proceeding commenced by CLAUSEN and his wife Jodi Lynn Clausen (hereinafter collectively the "CLAUSENS") in the U.S. Bankruptcy Court for the Eastern District of Washington, Case No. 24-01739-FPC, Chapter 13, *In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors.*  The CLAUSENS had voluntarily commenced that proceeding by their bankruptcy attorney filing a Chapter 13 bankruptcy petition on October 24, 2024.

---

[1] Alleged are claims that the DEFENDANTS infringed a design patent and trademarks, plus various state-law claims.

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 6 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Individual Defendant CLAUSEN, through his counsel, moves the Court for an order vacating and dismissing *nunc pro tunc* all claims, motions, orders, and proceedings against him in this action, on the grounds that they have all been void and legally-invalid acts taken in violation of the automatic stay provided as a matter of law by 11 U.S.C. § 362(a)(1). The grounds for this motion are set forth below.[2]

## ARGUMENT

As described above, this action was commenced by PLAINTIFFS filing their Complaint on December 10, 2024, and the subsequent issuance of Summonses and their employment by PLAINTIFFS' counsel (Hatch and Tomlinson). However, when PLAINTIFFS' Complaint was filed on December 10, 2024, there was active a Chapter 13 bankruptcy proceeding which had been commenced on October 24, 2024 by the CLAUSENS in the U.S. Bankruptcy Court for the Eastern District of Washington, Case No. 24-01739-FPC, Chapter 13, *In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors.*

---

[2] The COMPANY DEFENDANTS will be submitting a separate motion to reconsider and vacate the Court's entry of a permanent injunction, an award of damages, and entry of sanctions against them, which was entered pursuant to their default. It is being submitted separately by the COMPANY DEFENDANTS because it does not involve the automatic stay violation on which the instant motion is based.

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 7 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

The action against individual Defendant CLAUSEN should not have been filed or continued after it was filed on December 10, 2024, when on that date was active his Chapter 13 bankruptcy, a proceeding which had been previously commenced by its filing on October 24, 2024.

This very Court has recognized the operative legal principle in a recent case which is reflective of the applicable law of this Circuit (and the overwhelming majority rule of federal and state courts throughout the nation):  A post-petition "[c]omplaint constitutes a violation of the automatic stay in the Bankruptcy Case and is therefore void."  *Dam v. Waldron*, No. 2:24-CV-00417-SAB, Slip Op., 2025 WL 1069844 at * 2-3 (E.D. Wash. April 9, 2025) (Stanley A. Bastian, Ch. D.J.) ("ORDER DISMISSING CASE," copy appended as Exhibit A), *vacated and remanded for dismissal without-prejudice,* Appeal No. 25-2459, Memorandum, 2026 WL 777414 (9th Cir. March 19, 2025) (unpub.), copy appended as Exhibit B. As the Ninth Circuit observed in *Dam,* "the complaint was 'of no effect'" as "'violations of the automatic stay are void, not voidable.'"  2026 WL 777414 at *2, quoting *In re Schwartz,* 954 F.2d 569, 572 (9th Cir. 1992).  With the instant suit against CLAUSEN being void *ab initio*, all subsequent actions taken against CLAUSEN by PLAINTIFSS and the Court, regardless of their knowledge *vel non* of the automatic stay, have been legally invalid.

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 8 of 23

## I. ALL CLAIMS, MOTIONS, ORDERS, AND PROCEEDINGS AGAINST INDIVIDUAL DEFENDANT JONATHAN CLAUSEN SHOULD BE VACATED AND DISMISSED *NUNC PRO TUNC* AS VOID AND LEGALLY-INVALID ACTS DONE BY THE COURT

All claims motions, orders, and proceedings against individual Defendant Jonathan Clausen should be vacated and dismissed *nunc pro tunc* as void and legally-invalid acts done by the PLAINTIFFS and the Court in violation of Section 362(a)(1) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1). Section 362(a)(1) of the Bankruptcy Code is described in legal parlance as providing for an "automatic stay" when a bankruptcy proceeding is filed. But as shown in Part I.A. *infra,* the legal effect of the statute's wording and its interpretation by the majority of courts nationwide, including the Ninth Circuit and this Court in *Dam,* go much farther than just imposing a "stay" of other proceedings in a colloquial sense.

**A. The Ninth Circuit Embraces the Nationwide Overwhelming Majority Interpretation of 11 U.S.C. § 362(a)(1), That a Civil Commercial Action Filed Against an Individual Subsequent to the Individual's Filing of an Active Bankruptcy Proceeding Is Void *ab Initio*, and That Any Acts Taken in the Commercial Action Against the Individual Are Legally Invalid**

In a case like this one involving a design patent, trademark, and state law claims, the Federal Circuit applies regional circuit law to issues unrelated to patent law. *E.g., Alifax Holding SpA v. Alcor Scientific LLC*, Nos. 2022-1641, 2022-1723, 2024 WL 2932910 at *4 (Fed. Cir. June 11, 2024) (copy appended as Exhibit C); *Atlas IP, LLC v. Medtronic, Inc.,* 809 F.3d 599, 604 (Fed. Cir. 2015). Thus, this Court

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 9 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

should apply the law of the Circuit in which the District Court is located with respect to interpretation, application, and violation of the Bankruptcy Code's automatic stay, as these are not matters within the Federal Circuit's special competence.

*In re Schwartz*, 954 F.2d 569 (9th Cir. 1992), is the leading Ninth Circuit precedent regarding the effect of Section 362(a)(1) and "clarifie[d] this area of the law by making clear that violations of the automatic stay are void, not voidable." 954 F.2d at 571. The panel specifically held that legal process (a tax assessment by the IRS, apparently unaware of a bankruptcy filing) that was issued post-petition was void, and that even later it could not come back to life. *Id.* at 570-71.

As pointed out in *Schwartz,* "The majority of courts have long stated that violations of the automatic stay are void and of no effect." *Id.* at 572, citing cases. From the west coast to the east, the majority rule is that a when a "complaint was filed in contravention of the automatic stay arising from . . . earlier filing of a petition for bankruptcy," such a complaint is "'void and without effect' even when there is no actual notice of the stay." *Select Portfolio Servicing, Inc. v. Worobec*, 178 So.3d 971, 2015 WL 7781609 (D. Ct. App. Fla. 2015) (dismissing the action).

That includes state courts. Even more recently than the survey of courts reported in *Schwartz*, decisions have come down like *Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78, 744 N.E.2d 349 (Ill. App. 3 Dist. 2001). There the Illinois Appellate Court cited *Schwartz* and ruled on facts – like CLAUSEN's here – that

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 10 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

where defendant "Buchen filed his bankruptcy petition," and the plaintiff "Little Texas filed its complaint against Buchen for damages two months later," [t]he fact that Buchen's bankruptcy petition was later dismissed is of no consequence[,]" as "the automatic stay provision voided Little Texas' complaint at its filing." 744 N.E.2d at 351.

The Appellate Court in *Buchen* made the right call that "[a]s the stay is 'automatic,' no further action on Buchen's part was required," and "[t]he stay applied to Little Texas whether or not it had notice of the [bankruptcy] filing." *Id.* It correctly decreed that the lower court's order of default awarding Little Texas $45,000 in damages and $3,500 in attorney's fees, and any subsequent orders by the court, were vacated. Additionally, it held that any moneys paid by Buchen to Little Texas as a result of the trial court's order of default were to be returned to Buchen. *Id.*

CLAUSEN should be afforded no worse a decree here.

To the same effect is this Court's decision in *Dam,* which rests on solid footing, inasmuch as it relies upon the Ninth Circuit's controlling decision in *Schwartz. Dam,* 2025 WL 1069844 at *2. And last week's affirmance of *Dam* by the Ninth Circuit, while non-precedential, expressed the same view: "[T]he complaint was 'of no effect'" as "[v]iolations of the automatic stay are void, not voidable[,]" quoting *Schwartz.*

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 11 of 23

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

The same legal analysis should be followed here. PLAINTIFFS' commercial action against CLAUSEN was filed on December 24, 2024, when CLAUSEN's Chapter 13 bankruptcy proceeding was active, having commenced some two months earlier on October 24, 2024. PLAINTIFFS' commercial action could have been filed prior to commencement of the bankruptcy proceeding, but that was not done. Under these circumstances, Section 362(a)(1) and *Schwartz's* stake in the heart of the PLAINTIFFS' December 2024 lawsuit against CLAUSEN killed that vampire, and neither the PLAINTIFFS nor this Court could or should have tried to resuscitate it. Instead, it's time for a proper funeral.

The U.S. Supreme Court indicated as much, construing the statutory predecessor to Section 362(a)(1)'s automatic stay, in *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 346 (1940): "[T]he action of the . . . court was not merely erroneous but was beyond its power, void, and subject to collateral attack." That collateral attack is now mounted by this motion.

**B. The Majority Rule Embraced by the Ninth Circuit Furthers the Automatic Stay's Purposes – to Give Breathing Room to Financially-Pressed Debtors and Facilitate Consolidation of All Creditors' Claims in the Bankruptcy Court**

Courts such as the Ninth Circuit have interpreted the automatic stay provision of section 362(a)(1) consistent with its plain wording, which stops the commencement or continuation of a suit such as this one, in part by precluding the

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 12 of 23

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

issuance or employment of court process. The courts have done this in a way that is consistent with and furthers the statute's purposes to give breathing room to financially-pressed debtors and to facilitate consolidation of all creditors' claims in the bankruptcy court.

Although Section 362 is lengthy, Sections 362(a)(1) and (6) are especially relevant:

> **(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of —
>
> **(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> ***
>
> **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1), (6).

A logical construction of the automatic stay appears in *Bell v. Niagara Mohawk Power Corp.*, 173 Misc.2d 1042, 662 N.Y.S.2d 682 (Sup. Ct. N.Y. Co. 1997), hewing to the accepted canon of construction that all words in a statute matter:

> [T]he plain meaning of 11 USC § 362 is that the commencement of an action during the pendency of a bankruptcy proceeding is invalid. If the action is dormant until the lifting of the stay, the language in the

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 13 of 23

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

statute stating that the commencement of an action is stayed would be superfluous and meaningless. Moreover, the purpose of the statute is to provide fundamental protection to the debtor from not only the continuation of actions already commenced but the commencement of new actions as well. (*See, In re Schwartz*, 954 F2d 569 [9th Cir 1992], *supra*.)

173 Misc.2d at 1044, 662 N.Y.S.2d at 683-84.

The New York court thereby gave proper effect to the words in Section 362(a)(1) which expressly block the issuance or employment of process and thereby render null and void the process served on CLAUSEN in this action and invalidate all actions taken with respect to CLAUSEN by PLAINTIFFS and the Court.

In voiding the commercial action filed against the debtor in *Bell,* the New York court took the same approach as the Ninth Circuit took in *Schwartz.* As the Ninth Circuit explained in *Schwartz:*

> If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. . . . Nothing in the Code or the legislative history suggests that Congress intended to burden a bankruptcy debtor with an obligation to fight off unlawful claims.

954 F.2d at 571-72. The Ninth Circuit concluded and held in *Schwartz:*

> If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization.
>
> Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable.

*Id.* at 571.

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 14 of 23

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

In short, the majority rule that suits brought in violation of the automatic stay are void *ab initio* is consistent with Section 362(a)(1)'s wording and Congress's purposes to give breathing room to financially-pressed debtors and facilitate consolidation of all creditors' claims in the bankruptcy court.

### C. PLAINTIFFS Should Never Have Commenced This Action Against CLAUSEN When They Did and Violated Their Obligation to Discontinue It When CLAUSEN's Then Counsel of Record Brought the Active Bankruptcy Proceeding to the Attention of PLAINTIFFS' Counsel

CLAUSEN's Notice of Pending Bankruptcy and Automatic Stay (ECF No. 40) proves that notice of CLAUSEN's active bankruptcy proceeding was conveyed by CLAUSEN's then counsel to PLAINTIFFS' counsel on February 11, 2025 – including specifically the salient fact that the "Bankruptcy Case was filed on October 24, 2024." Even a copy of Official Form 309L, the Notice of Chapter 13 Bankruptcy Case, was exhibited. As this action was not filed until December 10, 2024, and it could have been filed prior to commencement of the bankruptcy proceeding, it unquestionably violates the provisions of Section 362(a)(1).

At the very least, upon such notice, PLAINTIFFS and their counsel had an immediate affirmative duty to discontinue this action, rather than waiting for this Court to stay it, as was erroneously done ten days later by the Court on February 21, 2025. (ECF No. 41.) As held by the Ninth Circuit in *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002), "[c]onsistent with the plain and

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 15 of 23

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

unambiguous meaning of the statute, and consonant with Congressional intent, . . . § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions."

But PLAINTIFFS did no such thing, waited for the Court merely to stay the action, and when the Court erroneously did that, acquiesced in that pausing of the case.  Then, on September 19, 2025, PLAINTIFFS filed a motion to lift the stay. (ECF No. 50.)  In response to that motion, on September 22, 2025, the Court erroneously lifted its stay (ECF No. 52), whereupon PLAINTIFFS (by their counsel) immediately launched into heavy motion practice against CLAUSEN, beginning on September 23, 2025 (ECF Nos. 53 *et seq.*), and continuing in repeated fashion to the present day.[3]  This was patently violative of Section 362(a)(1) and *Schwartz* by PLAINTIFFS and their counsel, beginning on February 11, 2025, and subsequently.

While PLAINTIFFS may argue that their actions have been consonant with the Court's imposition of a stay, that is not what *Leetien* requires.  *Leetien* requires

---

[3]  With the case re-started and CLAUSEN financially unable to pay his counsel, he was beset almost immediately on September 25, 2025, with a motion for counsel's withdrawal (ECF Nos. 56 *et seq.*), which was granted by the Court, leading CLAUSEN to need to proceed *pro se,* but ineffectively, for his defense.

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 16 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

the PLAINTIFFS to take expeditious steps to discontinue their action against CLAUSEN in this non-bankruptcy forum.  309 F.3d at 1212, 1215-16.

In *In re Achterberg,* 573 B.R. 819 (Bankr. E.D. Cal. 2017), under the heading "The Person Violating the Automatic Stay Has the Burden of Avoiding the Violation, and When a Violation Occurs, to Remedy Such Violation", the court instructed:

> The automatic stay is just that, automatic, with no obligation on a debtor to affirmatively enforce the stay for it to be effective.  When a creditor has notice . . . , it is the creditor's burden to determine the extent of the automatic stay and seek such relief as is appropriate.
>
> The automatic stay imposes an affirmative duty of compliance by the creditor. . . .  The automatic stay imposes an affirmative duty to discontinue actions in violation of the stay.

573 B.R. at 830 (omitting case citations in footnotes).

Stated more succinctly, "[u]pon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to a status quo position as of the time of the filing of the petition."  *In re Braught*, 307 B.R. 399, 403 (Bankr. S.D.N.Y. 2004), citing *In re Sucre,* 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998).

Here PLAINTIFFS and their counsel have failed to discontinue their action in this Court against CLAUSEN for more than a year after receiving clear notice of his active bankruptcy proceeding (which had been commenced almost two months before they filed the action *sub judice*) and stubbornly maintained and compounded their ongoing violation of Section 362(a)(1).

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 17 of 23

**D. Because This Suit Against CLAUSEN Was Void *Ab Initio,* the Court Was Without Authority to Enter or Lift a Stay, Its Subsequent Rulings With Respect to CLAUSEN Are Legally Invalid and Should Be Vacated *Nunc Pro Tunc,* and PLAINTIFFS' Action Against CLAUSEN Should Be Dismissed**

Under Section 362(a)(1) and *Schwartz,* when CLAUSEN's then counsel of record brought the pending Bankruptcy Proceeding to the Court's attention, the Court was without authority to stay the action and was without authority to lift its stay and entertain and grant motions against CLAUSEN. And because the action against CLAUSEN was void *ab initio,* the Court's rulings with respect to CLAUSEN have been legally invalid and should be vacated *nunc pro tunc.* Further, PLAINTIFFS' claims against CLAUSEN should have been dismissed outright.

CLAUSEN acknowledges that in the Notice of Pending Bankruptcy, CLAUSEN's then-counsel (erroneously) asked this Court to stay, rather than dismiss, the proceedings in this action. (ECF No. 40 at 2.) Then-counsel's request for a stay, rather than an outright dismissal, does not alter the Court's legal duty under Section 362(a)(1) and *Schwartz* to have dismissed this action outright upon receiving the Notice of Pending Bankruptcy. Because the action against CLAUSEN was ***void ab initio, not voidable,*** (*Schwartz,* 954 F.2d at 571), nothing said by CLAUSEN's then-counsel requesting entry of a stay should have been of any effect, nor could it give PLAINTIFFS an argument here of invited error.

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 18 of 23

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

The bankruptcy courts have indicated that the courts have the power and are obliged to act *sua sponte* to dismiss actions brought in violation of Section 362(a)(1) even where the debtor did not request that relief. *See In re 222 Liberty Assocs.,* 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990); *In re Carr*, No. 18-80386, 2019 WL 7840665 at *1-2 (Bankr. M.D.N.C. Nov. 18, 2019), copy appended as Exhibit D.

Under *Schwartz* and the Court's power to act *sua sponte* upon learning of the prior-filed bankruptcy proceeding, the Court should have immediately dismissed the action, should not have entered a stay, and should not have re-started proceedings or permitted further motion practice against CLAUSEN. The Court erroneously failed to do that, but because all its rulings against CLAUSEN have been interlocutory, it is not too late for the Court to course-correct by vacating and dismissing *nunc pro tunc* all claims, motions, orders, and proceedings against CLAUSEN.

To do anything else and continue to make adverse rulings against CLAUSEN would itself constitute judicial acts without validity. *See In re HP Bennett, LLC*, No. 22-00106-ELG, 2023 WL 8881858 at *4 (Bankr. D.C. Dec. 22, 2023), copy appended as Exhibit E) ("[a]ny subsequent actions dependent upon an act that violates the automatic stay themselves also violate the automatic stay and are void."

The right path is still beckoning here: *Vacatur* and dismissal *nunc pro tunc* of all proceedings of every kind taken against CLAUSEN in this action which has been void from the moment it was filed. The Court's own words in *Dam* light the way:

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 19 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

where a "Complaint constitutes a violation of the automatic stay . . . [it] is void," and the "Complaint is dismissed."

The Court's actions against CLAUSEN so far have deviated from those words. But the Federal Circuit Court of Appeals has made clear that the Court always may reconsider its own interlocutory orders provided it has not been divested of jurisdiction over the orders. *In re Van Well Nursery Inc.*, No. 2025-131, 2025 WL 2621840 at *1 (Fed. Cir. Sept. 11, 2025) (copy appended as Exhibit F) (law of the case doctrine is inapposite to a district court's power to reconsider its own interlocutory order provided that the court still has jurisdiction over the order), citing *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 888-89 (9th Cir. 2001).

The only portion of this lawsuit concerning CLAUSEN which should survive upon proper judicial revisiting of the matter (pursuant to F.R.C.P. 54(b) and the Court's inherent authority) is CLAUSEN's Counterclaim against Plaintiffs for their breach of a settlement agreement to buy back unsold product.  (*See* Answer to Complaint and Counterclaim at 25-35 ¶¶ 1-50.  (ECF No. 33.)  As the Ninth Circuit held in *Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995):

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis.  Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case.  Within a single case, some actions may be stayed, others not.  Multiple claim and multiple party litigation must be disaggregated so that particular claims, counter-claims, cross claims and third-party claims are treated independently

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 20 of 23

when determining which of their respective proceedings are subject to the bankruptcy stay.

68 F.3d at 1137, quoting and adopting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1992). Notably here the Counterclaim asserted is not *against* the debtor, but rather *for* the debtor, and under *Parker* it should survive.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant CLAUSEN'S motion should be granted and an order entered vacating and dismissing *nunc pro tunc,* without prejudice, all claims, motions, orders, and proceedings in this action against CLAUSEN.

Dated: March 30, 2026                Respectfully submitted,

By:  /s/ *Stephen L. Sulzer*
Stephen L. Sulzer (*pro hac vice*)
**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

Douglas R. Dick
ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 21 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*Attorneys for Defendants Jonathan Clausen, Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of March, 2026, I caused to be served a true and correct copy of the foregoing *Defendant Jonathan Clausen's Motion to Vacate* to be electronically filed with the Clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. This was also served as noted below:

Caleb Hatch
Johanna R. Tomlinson
LEE & HAYES, P.C.
601 W. Riverside Ave, Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com

☐ VIA HAND DELIVERY
☐ VIA U.S. MAIL
☐ VIA OVERNIGHT MAIL
☐ VIA FACSIMILE
☒ VIA ECF

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 30th day of March 2026.

_____
**Brendan Petro,** Legal Assistant
WHC Attorneys, PLLC

Defendant Jonathan Clausen's Motion to Vacate
Case No. 2:24-CV-00413-SAB

Page 23 of 23

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# *EXHIBIT A*

KeyCite Blue-Striped Flag

Appeal Filed by Dam v. Waldron, et al., 9th Cir., April 16, 2025

2025 WL 1069844

Only the Westlaw citation is currently available.

United States District Court, E.D. Washington.

Jun DAM, Plaintiff,

v.

Mark D. WALDRON, Chapter 7 Panel Trustee; Pamela M. Egan, Attorney to Chapter 7 Trustee; Potomac Law Group PLLC; and Giga Watt Bankruptcy Estate, Defendants.

No. 2:24-CV-00417-SAB

|

Signed April 9, 2025

### Attorneys and Law Firms

Jun Dam, San Francisco, CA, Pro Se.

Pamela M. Egan, Potomac Law Group, Seattle, WA, for Defendants Mark D. Waldron, Potomac Law Group PLLC.

Pamela M. Egan, Seattle, WA, Pro Se.

## ORDER DISMISSING CASE

Stanley A. Bastian, Chief United States District Judge

*1 Before the Court is Defendants' Motion to Dismiss Complaint, ECF No. 15, and related Motion for Judicial Notice, ECF No. 18. Plaintiff is pro se. Defendant is represented by Pamela Egan. The motion was heard without oral argument.[1]

## BACKGROUND

The Giga Watt Project was formed to build and run a large-scale cryptocurrency mining operation. As part of the project, Giga Watt sold so-called "WTT Tokens" that entitled a token purchaser to use electricity generated by the Giga Watt facility to mine and generate cryptocurrency. The sales proceeds from the WTT Tokens totaled more than $22 million, which was held by Perkins Coie LLP ("Perkins") in an escrow account. After the initial sale of tokens was complete, Perkins provided refunds to some purchasers, paying them from the escrow fund. Perkins subsequently transferred $21.6 million to Giga Watt entities, and by February 22, 2018, the escrow account was depleted.

Giga Watt filed for Chapter 11 bankruptcy on November 19, 2018, in the Eastern District of Washington ("the Bankruptcy Case"). Defendant Mark D. Waldron ("Trustee Waldron") was appointed as the Chapter 11 Trustee on January 24, 2019. On November 30, 2020, Trustee Waldron commenced an adversary proceeding (the "Adversary Proceeding") against Perkins alleging that Perkins's disbursement of the escrow funds violated a fiduciary duty that resulted in Giga Watt's collapse. On December 15, 2020, the Bankruptcy Court entered an order approving the employment of Defendant Potomac Law Group ("PLG") as special litigation counsel in the Adversary Proceeding. Pursuant to this employment, PLG was entitled to a 30% contingency fee of any recoveries obtained up to $10 million and a 25% contingency fee of any recoveries obtained that were greater than $10 million, subject to Bankruptcy Court approval.

On December 16, 2020, Plaintiff Jun Dam ("Dam") filed a class action lawsuit in this Court (the "Class Action Suit"). The class members consisted of individuals who had purchased WTT Tokens, and the class was represented by two law firms: Blood, Hurst & O'Reardon, LLP and the Western Washington Law Group, PLLP. ("Class Counsel").

PLG proceeded to work on the Adversary Proceeding for approximately three and a half years without objection—over one year of which was spent negotiating with Perkins and Class Counsel. They ultimately reached an agreement to settle both the Adversary Proceeding and the Class Action Suit (the "Settlement Agreement"), wherein Perkins agreed to pay $3 million to the bankruptcy estate and $4.5 million to the class members.

On October 4, 2023, the Bankruptcy Court approved the Settlement Agreement. On February 2, 2024, this Court entered a preliminary approval of the Settlement Agreement. The class members were allowed to object or

Dam v. Waldron, Slip Copy (2025)

opt-out, but none did, and this Court then entered final approval of the Settlement Agreement on May 23, 2024.

The Settlement Agreement defines a "Released Claim" as "any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature against the Released Parties ...." It further defines "Released Parties" as the bankruptcy estate, Trustee Waldron, and "agents and attorneys" of the bankruptcy estate. Finally, it defines a "Releasing Party" as "Plaintiff and each and every Class Member." Under the Settlement Agreement's release clause, each Releasing Party was deemed to have waived any Released Claim against any Released Party.

*2 On July 26, 2024, PLG filed its final fee application, seeking $900,000 (i.e., 30% of the $3 million adversary proceeding settlement), plus $1,648.15 in expenses. However, on August 22, 2024, Dam filed an objection, asking the Bankruptcy Court not to disburse any funds from the bankruptcy estate to PLG. On September 17, 2024, the Bankruptcy Court granted PLG's application over Dam's objection, noting that counsel for PLG indicated that she spent 2,536.8 hours working on the Adversary Proceeding and that her typical rate is $600. Thus, PLG estimated its services were valued at $1,522,080 and the Bankruptcy Court found that the requested $900,000 was reasonable. The fees were paid to PLG on September 19, 2024.

On December 13, 2024, Dam filed a civil Complaint in this matter (the "Civil Suit"), alleging that Trustee Waldron and PLG engaged in fraudulent conduct, which led to the Bankruptcy Court awarding the fees in error. On January 30, 2025, Defendants filed a motion, asking this Court to dismiss the Civil Suit because, among other issues, Dam's claims were void as a violation of the Bankruptcy Court's automatic stay. The same day, Defendants filed a motion asking the Court to take judicial notice of several docket entries in support of their motion to dismiss.

## I.   DEFENDANTS' MOTION FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), a court may take judicial notice of filings on its own dockets, as well as dockets of other courts. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Defendants ask the Court to take judicial notice of filings in the Bankruptcy Case, associated appeals before this Court, and the Adversary Proceeding. The request is appropriate, and the motion for judicial notice is **granted**.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants ask the Court to dismiss this action without prejudice because (1) Plaintiff's attempt to impose a constructive trust on the Perkins $3 million settlement proceedings and to otherwise recover those proceeds are void as an attempt to recover property of the estate and from the estate; (2) the Court lacks subject matter jurisdiction to grant relief from the stay; (3) the Court lacks subject matter jurisdiction over the claims against Trustee Waldron and PLG because Plaintiff failed to obtain the Bankruptcy Court's permission to sue Trustee Waldron and PLG; (4) Plaintiff fails to state a claim because Trustee Waldron and PLG are immune and the claims are released; and (5) the Complaint fails to establish personal jurisdiction over and fails to state a claim against the "Giga Watt Bankruptcy Estate" because the Giga Watt Bankruptcy Estate lacks the capacity to be sued.

Defendants assert amending the Complaint would be futile because Plaintiff cannot remedy the lack of subject matter jurisdiction, Trustee Waldron or PLG's immunity, the release, or the estate's lack of capacity to be sued.

The Court agrees.

### Motion Standard

Under Fed. R. Civ. P. 12(b)(1), a movant can challenge the Court's subject matter jurisdiction to hear an action by asserting the allegations contained in the Complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a bankruptcy petition is filed, an "estate" is created, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Dam v. Waldron, Slip Copy (2025)

11 U.S.C. § 541(a)(1); *In re FitzSimmons*, 725 F.2d 1208, 1210 (9th Cir. 1984). The broad category of the estate includes causes of action in district court. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). Furthermore, when a bankruptcy petition is filed, injunctive relief referred to as the "automatic stay" is triggered, which prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362 (a)(3); *Gruntz v. Cnty. of Los Angeles*, 202 F.3d 1074, 1081 (9th Cir. 2000). Filing a motion in another court seeking to recover estate property violates the automatic stay. *See In re Pace*, 67 F.3d 187, 191–92 (9th Cir. 1995). A violation of the automatic stay is void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).

*3 Here, the Complaint constitutes a violation of the automatic stay in the Bankruptcy Case and is therefore void. Moreover, the Court does not have subject matter jurisdiction over the claims against Trustee Waldron and PLG. Finally, Plaintiff has failed to state a claim upon which relief may be granted.

The Court finds that granting leave to amend would be futile because additional allegations will not remedy the lack of subject matter jurisdiction or will state claims

against defendants who are not subject to suit. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Judicial Notice, ECF No. 18, is **GRANTED**

2. Defendants' Motion to Dismiss Complaint, ECF No. 15, is **GRANTED**. Plaintiff's Complaint is dismissed with prejudice.

3. The remaining motions are **denied as moot**.

4. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2025 WL 1069844

Footnotes

1    Pursuant to LCivR 7(i)(3)(B)(iii), oral argument is not necessary.

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT B*

2026 WL 777414
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States Court of Appeals, Ninth Circuit.

JUN **DAM**, Plaintiff - Appellant,

v.

MARK D. **WALDRON**, Chapter 7 Trustee; Ms. PAMELA MARIE EGAN Esquire, Bankruptcy Counsel; POTOMAC LAW GROUP, PLLC; GIGA WATT BANKRUPTCY ESTATE, Defendants - Appellees.

No. 25-2459
|
Filed March 19, 2026
|
Submitted March 19, 2026"

D.C. No. 2:24-cv-00417-SAB

Appeal from the United States District Court for the Eastern District of Washington Stanley Allen Bastian, District Judge, Presiding

Before: CLIFTON, FRIEDLAND, and BENNETT, Circuit Judges.

MEMORANDUM*

**\*1** Plaintiff-Appellant Jun **Dam** appeals the district court's order dismissing with prejudice his claims against Defendants-Appellees. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review de novo a dismissal for lack of subject-matter jurisdiction." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 (9th Cir. 2019). We also review de novo "[a] district court's interpretation of federal law." *Id.* Because at this stage Defendants-Appellees do not contest the truth of **Dam's** factual allegations bearing on jurisdiction, in resolving this appeal, we accept **Dam's** allegations as true and draw all reasonable inferences in his favor. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). We construe pro se pleadings liberally.

*Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).
1. Though **Dam** sought to assert claims on behalf of third parties, he lacks prudential standing to do so. *See Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) ("It is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties."); *see also Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself." (citation modified)). Under the prudential standing doctrine, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).[1] Third-party standing is permitted only when three requirements are met: "(1) injury-in-fact; (2) close relationship to the third party; and (3) hindrance to the third party['s]" ability to protect his or her own interests. *Coal. of Clergy*, 310 F.3d at 1163. **Dam** fails to plausibly allege a close relationship to the third parties or hindrance.

2. The district court lacked jurisdiction over **Dam's** personal claims against Defendants-Appellees Mark **Waldron**, Pamela Egan, and Potomac Law Group, PLLC (collectively, the "Trustee Defendants"). Under the *Barton*[2] doctrine, "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005). Without leave of the bankruptcy court, "the other forum lack[s] subject matter jurisdiction over the suit." *Id.* at 971. The attorney for a trustee, who represents the estate under the direction of the trustee, is the functional equivalent of a trustee and thus is also protected by the *Barton* doctrine.[3]

**\*2 Dam** did not obtain leave of the bankruptcy court before filing this action. And his claims against the Trustee Defendants challenge "acts done in [their] official capacity[ies] and within [their] authority as [ ]officer[s] of the Court." *See id.*, 421 F.3d at 974 (quoting *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967)). Even assuming the availability of the *ultra vires* exception when the plaintiff alleges that the trustee acted with an improper motive, *see Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 415–16 (6th Cir. 2013), **Dam** failed to allege plausibly that the Trustee Defendants acted *ultra vires*. Thus, the district court

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.  1

lacked subject matter jurisdiction over **Dam's** claims against the Trustee Defendants. *See In re Crown Vantage*, 421 F.3d at 971.

3. A bankruptcy triggers a "self-executing" and "automatic stay of actions by all entities to collect or recover on claims." *Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017) (citations omitted). The stay "applies to 'almost any type of formal or informal action against the debtor or property of the estate.' " *Id.* at 746–47 (quoting *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 552 n.4 (9th Cir. 1988)). "[V]iolations of the automatic stay are void, not voidable." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992).

**Dam** violated the automatic stay by bringing claims against the estate. *See Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081–82 (9th Cir. 2000) (en banc). Accordingly, to the extent that **Dam's** complaint alleged claims against the Giga Watt Bankruptcy Estate, the complaint was "of no effect." *In re Schwartz*, 954 F.2d at 572.

4. **Dam's** contrary arguments lack merit. His reliance on *Stern v. Marshall*, 564 U.S. 462 (2011), is misplaced because "*Stern* doesn't preclude bankruptcy courts from adjudicating *Barton* claims." *Blixseth v. Brown (In re Yellowstone Mountain Club, LLC)*, 841 F.3d 1090, 1097 (9th Cir. 2016). His argument that a district court must conduct a threshold determination under 11 U.S.C. § 541 before enforcing the automatic stay is not supported by the one authority he cites in support of this contention. *See Harris v. Viegelahn*, 575 U.S. 510, 518 (2015) (holding that, following a conversion from Chapter 13 to Chapter 7 bankruptcy, "postpetition wages must be

returned to the debtor"). And though **Dam** asked the district court to lift the automatic stay, 11 U.S.C. § 362(d) "gives the bankruptcy court the power to grant creditors relief from the stay." *In re Schwartz*, 954 F.2d at 572. **Dam's** request to lift the automatic stay should thus have been directed to the bankruptcy court, not the district court.

5. One error in the district court's order of dismissal, however, requires us to vacate and remand. The district court dismissed **Dam's** claims with prejudice even though it held, correctly, that it lacked subject matter jurisdiction. The district court generally must determine its subject matter jurisdiction at the threshold. *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008), *repudiated in other part by*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (criticizing the use of the term "statutory standing" to describe the zone-of-interests analysis). And the district court ordinarily should dismiss any claims over which it lacks subject matter jurisdiction without prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (per curiam). We accordingly vacate the district court's order of dismissal and remand with instructions to dismiss **Dam's** claims without prejudice for lack of subject matter jurisdiction.

*3 **VACATED AND REMANDED WITH INSTRUCTIONS.**[4]

**All Citations**

Not Reported in Fed. Rptr., 2026 WL 777414

---

Footnotes

\*\*    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1    Unlike with Article III standing, forfeiture and waiver doctrines can apply to issues of prudential standing. *See City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). But here, Defendants-Appellees argue that **Dam** lacked standing to bring any third-party claims. Though they mistakenly argue that **Dam** lacks Article III standing, we may "exercise our discretion to rule on [**Dam's**] prudential standing to bring this suit," *see id.* at 846, and we do so here.

2    *Barton v. Barbour*, 104 U.S. 126 (1881).

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    2

3    Though we have not so held in a precedential opinion, our sister circuits have agreed on this principle. *Lankford v. Wagner*, 853 F.3d 1119, 1122 (10th Cir. 2017); *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012); *Lawrence v. Goldberg*, 573 F.3d 1265, 1269–70 (11th Cir. 2009); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006). Because **Dam** does not specifically contest this point, we apply the principle here.

4    **Dam's** motion for judicial notice (Dkt. No. 24) and Defendants-Appellees' motion for judicial notice (Dkt. No. 18) are denied as moot. We allocate costs against **Dam**.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT C*

2024 WL 2932910
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

ALIFAX HOLDING SPA,
Plaintiff-Appellant
Sire Analytical Systems SRL, Plaintiff
v.
ALCOR SCIENTIFIC LLC, Francesco A.
Frappa, Defendants-Cross-Appellants

2022-1641, 2022-1723
|
Decided: June 11, 2024

Appeals from the United States District Court for the District of Rhode Island in No. 1:14-cv-00440-WES-LDA, Chief Judge William E. Smith.

**Attorneys and Law Firms**

Todd Roberts Tucker, Calfee, Halter & Griswold LLP, Cleveland, OH, argued for plaintiff-appellant. Also represented by Joshua Friedman; Christopher Baxter, Pierce Atwood LLP, Portsmouth, NH; Robert H. Stier, JR., Stier IP Law LLC, Cape Elizabeth, ME.

Craig M. Scott, Hinckley, Allen & Snyder, LLP, Providence, RI, argued for defendants-cross-appellants. Also represented by Christine K. Bush; Laurel M. Rogowski, Boston, MA.

Before Moore, Chief Judge, Lourie and Cunningham, Circuit Judges.

**Opinion**

Cunningham, Circuit Judge.

**\*1** This appeal is the culmination of the parties' multi-year litigation at the District Court of Rhode Island concerning automated clinical instruments that measure certain characteristics of human blood samples. Alifax Holding SpA and Sire Analytical Systems SRL (collectively, "Alifax") sued Alcor Scientific LLC ("Alcor") and Mr. Francesco A. Frappa (collectively, the "Cross-Appellants" or "Defendants"),[1] alleging misappropriation of trade secrets, patent infringement,

and copyright infringement. For the reasons discussed below, we *affirm-in-part* and *reverse-in-part* the district court's decisions, and *remand* for further proceedings.

**I. Background**

Alifax makes automated clinical instruments used to determine the erythrocyte sedimentation rate ("ESR") of human blood samples. *Alifax Holding Spa v. Alcor Sci. Inc.*, 404 F. Supp. 3d 552, 557 (D.R.I. 2019) ("*New Trial Order*"). An employee of an Alifax subsidiary, Mr. Francesco A. Frappa, left the company and began working for Alcor. *Id.* Within a year, Alcor offered a new ESR instrument of its own, the iSED, with analytical capabilities comparable to the Alifax devices. *Id.*

On October 7, 2014, Alifax[2] sued Defendants for trade secret misappropriation under the Rhode Island Uniform Trade Secrets Act ("RIUTSA"). Alifax also sued only Alcor for infringement of U.S. Patent Nos. 6,632,679 and 7,005,107. J.A. 136, 140 ¶¶ 20–21, 146 ¶¶ 53–58, 147–48 ¶¶ 59–68; *see New Trial Order* at 557. On March 20, 2017, Alifax amended its complaint to assert a claim of copyright infringement solely against Alcor. J.A. 2106–07 ¶¶ 77–85. Alcor answered and counterclaimed seeking, among other things, declaratory judgment of patent invalidity. *See, e.g.*, J.A. 2235 ¶¶ 41–42; *see New Trial Order* at 557–58.

Before trial, the parties moved for summary judgment. Relevant to this appeal, Defendants moved for summary judgment on Alifax's claims for copyright infringement, patent infringement, and trade secret misappropriation, as well as Alcor's patent invalidity counterclaims. *See Alifax Holding SPA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES, 2019 WL 13091790, at \*1, \*4–11, \*13 (D.R.I. Mar. 26, 2019) ("*Summary Judgment Order*"). On March 26, 2019, the court denied Defendants' motion for summary judgment. *Id.* at \*13.

Shortly before trial, the court and the parties continued to narrow the case. Three days before trial, the court excluded the opinion of Alifax's expert, Mr. Christopher J. Bokhart, on copyright infringement damages. *Alifax Holding SPA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES, 2019 WL 1579503, at \*1–2 (D.R.I. Apr. 12, 2019) ("*Daubert Decision on Copyright*"). As a result, the parties agreed that Alifax's copyright claim was "out of the case." *New Trial Order* at 558; J.A. 13829.

**\*2** The court bifurcated the trial into liability and damages

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

phases. J.A. 126; *see* J.A. 13853–54. Five days into the liability phase of the trial, Alifax decided that it no longer wished to proceed on its patent infringement claims. J.A. 14385. To effectuate removal of patent infringement from the case, the court granted summary judgment for Alcor on that claim, and the parties executed a covenant not to sue, addressing all patents. *New Trial Order* at 558; *see* J.A. 14458–59. Accordingly, the only remaining claims for jury deliberations relevant to this appeal were the trade secret misappropriation claims. *See New Trial Order* at 558.

Alifax presented multiple theories of trade secret misappropriation to the jury. There are two trade secrets relevant to this appeal:[3] the conversion algorithm trade secret, which comprises "[p]ortions of computer program source code concerning the conversion of photometric measurements, including source code containing four specific conversion constants," J.A. 15193, *see* J.A. 13849; and the alleged signal acquisition trade secret, which involves "the process by which Alifax's devices gathered ESR-related raw data through signal acquisition." *Order on New Trial Scope and Patent Fees* at *2; *see also Summary Judgment Order* at *7.

At the charge conference, the court struck the alleged signal acquisition trade secret from the jury verdict form. J.A. 14943–48. Specifically, the court decided to exclude "acquisition" from its description of the software and firmware trade secrets, effectively removing the alleged signal acquisition trade secret. *Id.*; *see* J.A. 15193–99 (Jury Verdict Form). Alifax objected, arguing that it had identified the alleged signal acquisition trade secret as "[t]he manner in which the software used in Alifax's ESR analyzers initiates an ESR measurement from a blood sample loaded in the ESR analyzer, handles a blood sample to introduce it into the capillary container, instructs the ESR analyzer to obtain photometric data, and handles and converts the photometric data to calculate the ESR of the blood sample." J.A. 14944 (citing J.A. 2000 ¶ 5); *see also* Oral Arg. at 11:53–12:30, 18:00–19, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1641_07102023.mp3. Alifax also contended that it introduced evidence and testimony related to the alleged signal acquisition trade secret at trial. J.A. 14944–45.

The court rejected this argument regarding the alleged signal acquisition trade secret, finding there to be "no ... record evidence of trade secrets involved in any of the steps that are discussed ... [regarding] how the apparatus would be programmed to operate, other than with respect to the conversion algorithm ...." J.A. 14947–48. The jury returned a verdict finding Alifax proved that the

conversion algorithm was a trade secret and that Defendants misappropriated that trade secret.[4] J.A. 15193–98.

*3 Before the start of the damages phase of the trial, the court excluded in their entirety Alifax's expert opinions by Mr. Bokhart concerning trade secret misappropriation damages. *Alifax Holding SpA v. Alcor Sci. Inc.*, 387 F. Supp. 3d 170, 171–72 (D.R.I. 2019) ("*Daubert Decision on Trade Secrets*"). However, over Defendants' objection, the district court allowed Alifax to call Mr. Bokhart as a summary fact witness pursuant to Federal Rule of Evidence 1006 to testify as to the iSED-related revenues and costs based on Alcor's financial spreadsheets. J.A. 15309–11; Trial Tr. Vol. 11 at 33–34, *Alifax Holding SpA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES (D.R.I. May 1, 2019), Dkt. 347; *see also New Trial Order* at 580. The jury awarded $6.5 million in damages to Alifax for Alcor's misappropriation of the conversion algorithm trade secret. J.A. 15490.[5]

After the trial concluded, the district court granted Defendants a new trial on both liability and damages for the conversion algorithm trade secret. *New Trial Order* at 577–82.[6] Regarding liability, the court found that the verdict was against the clear weight of the evidence. *Id.* at 577. The court reasoned that because there was little evidence that Alifax's algorithm could produce highly accurate results in a non-Alifax device, Defendants could not have used Alifax's algorithm for any purpose. *See id.* at 577, 579–80. As to damages, the court found that Mr. Bokhart's testimony exceeded the scope permitted for a summary fact witness and unfairly prejudiced Alcor. *See id.* at 581–82. The district court also denied Alcor's motion as to attorney's and expert fees and costs related to the copyright claim. *Alifax Holding SpA v. Alcor Sci. Inc.*, C.A. No. 14-440 WES, 2019 WL 4247737, at *4 (D.R.I. Sept. 5, 2019) ("*Order on Copyright Fees*").

On July 16, 2021, the court (1) held that no new evidence or witness would be permitted at the new trial, *Order on New Trial Scope and Patent Fees* at *2; (2) excluded the theory based on an alleged signal acquisition trade secret from the new trial, *id.* at *3; and (3) denied Alcor's motion for attorney's fees related to the patent infringement claims. *Id.* at *5. Following additional briefing by the parties, the court also precluded Alifax from seeking compensatory damages at the new trial. *Alifax Holding Spa v. Alcor Sci. Inc.*, C.A. No. WES 14-440, 2021 WL 3911258, at *1 (D.R.I. Sept. 1, 2021) ("*Order Precluding Damages*"). The parties agreed not to go to trial on nominal damages, and on February 18, 2022, the district court dismissed with prejudice the trade secret claim. J.A. 91, 98 (Order Dismissing Trade Secret

Claim). On March 25, 2022, the district court entered final judgment on all remaining claims, including entering judgment in favor of Defendants on patent infringement, trade secret misappropriation, and copyright infringement. J.A. 101–02 (Final Judgment).

Alifax timely appealed. The Cross-Appellants filed a timely cross appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. Discussion

On appeal, Alifax argues that the district court erred by (1) excluding the alleged signal acquisition trade secret from jury consideration, Appellant's Br. 42–47; (2) granting a new trial on liability relating to the conversion algorithm trade secret, id. at 51–55; (3) granting a new trial on damages, id. at 55–56, see also id. at 57–64; (4) excluding the alleged signal acquisition trade secret from the new trial, id. at 47–50; and (5) precluding Alifax from presenting evidence and witnesses for compensatory damages at the new trial. Id. at 37–40. Alcor argues that the district court abused its discretion in denying attorney's fees relating to the patent and copyright claims. Cross-Appellants' Principal & Resp. Br. 57, 66; see also id. 58–65, 67–71.

## A

*4 We apply our own law to issues unique to patent law and regional circuit law—here, First Circuit law—to issues unrelated to patent law. Atlas IP, LLC v. Medtronic, Inc., 809 F.3d 599, 604 (Fed. Cir. 2015) (citation omitted). We review the district court's jury instructions, new trial orders, and evidentiary rulings under the law of the regional circuit. See Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1359 (Fed. Cir. 2004) (jury instructions); Verizon Servs. Corp. v. Cox Fibernet Va., Inc., 602 F.3d 1325, 1331 (Fed. Cir. 2010) (new trial orders and evidentiary rulings). In the First Circuit, the court's rulings on jury instructions are reviewed de novo. Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 8 (1st Cir. 2001) (citation omitted). The grant of a motion for a new trial is reviewed for abuse of discretion. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). A court's decision regarding new evidence at a new trial "[i]s one for the informed discretion of the trial judge," and the First Circuit reviews for an abuse of discretion. Fusco v. Gen. Motors Corp., 11 F.3d 259, 267 (1st Cir. 1993).

We apply the law of the regional circuit in reviewing decisions on attorney's fees relating to copyright claims and the law of this circuit in reviewing decisions on attorney's fees relating to patent claims. See Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1582–83 (Fed. Cir. 1992) (applying regional circuit law to attorney's fees relating to copyright claims); Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp., 459 F.3d 1311, 1321 (Fed. Cir. 2006) (applying Federal Circuit law to attorney's fees relating to patent infringement claims). Under First Circuit law, the review of a district court's decision on a fee award relating to copyright claims is "extremely deferential," and the First Circuit "will disturb a ruling ... only if the record persuades us that the trial court indulged in a serious lapse in judgment." Airframe Sys. Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 109–10 (1st Cir. 2011) (quoting Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers (ASCAP), 642 F.3d 87, 91 (1st Cir. 2011)). This court reviews a district court's denial of attorney's fees in a patent case for abuse of discretion. Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC, 963 F.3d 1371, 1376 (Fed. Cir. 2020) (citations omitted).

## B

Alifax first argues that the district court erred by excluding the alleged signal acquisition trade secret from jury consideration at the liability phase of the trial. Appellant's Br. 42–47; see J.A. 14943–48 (charge conference transcript). Alifax argues that the "jury was entitled to infer that [Mr.] Frappa's detailed plan for acquiring a signal from a blood sample was derived from his eleven years at Alifax, particularly in view of the other evidence at trial." Appellant's Br. 44, see also id. 45–47. We are not persuaded that the district court erred by excluding the alleged signal acquisition trade secret from jury consideration.

Alifax failed to meet its burden of proof to establish the existence and scope of the alleged signal acquisition trade secret. See generally R.I. Gen. Laws § 6-41-1(4) (defining trade secret); TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo, 966 F.3d 46, 52 (1st Cir. 2020) ("[T]he trade secret owner has the burden of proof to establish the existence and scope of the alleged trade secret in the litigation.") (applying Puerto Rico law based on Uniform Trade Secrets Act);[7] see also IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583–4 (7th Cir. 2002) ("[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

of items meeting the statutory definition.") (applying Wisconsin law following UTSA). To meet this burden, the trade secret owner must "describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (applying Maryland law following UTSA and collecting cases); *see also TLS*, 966 F.3d at 54.

*5 Here, Alifax not only failed to describe the alleged signal acquisition trade secret with sufficient detail but also failed to identify its proper scope. At oral argument, Alifax alleged that the signal acquisition trade secret is "how to acquire photometric signals from a blood sample." Oral Arg. at 20:45–21:32; *see also* J.A. 10534 (Alifax's proposed jury instruction). But this definition only provides a high-level summary of the purpose of the alleged trade secret without describing it in detail. Alifax also cites its identification of misappropriated trade secrets, which defines the alleged signal acquisition trade secret as "the manner in which the software used in [Alifax's] ESR analyzers initiates an ESR measurement from a blood sample loaded in the ESR analyzer, handles a blood sample to introduce it into the capillary container, [and] instructs the ESR analyzer to obtain photometric data." J.A. 2000 ¶ 5; *see also* Oral Arg. at 11:54–12:30, 18:00–19, 22:50–23:00. This paragraph also fails to clarify "the existence and scope of the alleged trade secret," *TLS*, 966 F.3d at 52, making it impossible to ascertain whether certain elements of the alleged trade secret have been established, such as "[d]eriv[ing] independent economic value ... from not being generally known" and "not being readily ascertainable by proper means." R.I. Gen. Laws § 6-41-1(4). Therefore, neither definition offered by Alifax satisfies its burden to describe the alleged trade secret in sufficient detail to establish each element of a trade secret. *See Trandes*, 996 F.2d at 661.

Alifax's trial evidence and testimony similarly fail to meet its burden to identify the alleged signal acquisition trade secret. First, Alifax argues that a document labeled "iSED Software Procedures description" would entitle a jury to infer that Cross-Appellants misappropriated Alifax's alleged signal acquisition trade secret. Appellant's Br. 43–44; *see* J.A. 15716–19 (Trial Exhibit 64). But as Alifax's counsel admitted at oral argument, Trial Exhibit 64 is an *Alcor* document. Oral Arg. at 13:48–55. Alifax also points out that the document was drafted by Mr. Frappa after signing a royalty agreement in which he agreed to provide Alcor with technical documentation related to how an ESR analyzer performed its functions. *See* Appellant's Br. 43–44; J.A. 15714. But nothing in the record indicates that the contents of the

document were *Alifax's* alleged signal acquisition trade secret. In fact, because neither Alifax nor Trial Exhibit 64 identifies the scope of the alleged trade secret, a jury would not be able to distinguish "[w]hich aspects are known to the trade" from those "which are not." *See IDX Sys.*, 285 F.3d at 584 (holding that a 43-page document describing a software package was not sufficiently specific); *Trandes*, 996 F.2d at 661–62 (claiming possession of secret "formulas" but failing to provide evidence of what the formulas were did not provide sufficient detail to "sustain even a prima facie case of misappropriation"). We are also unpersuaded by Alifax's argument that *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 18–19 (1st Cir. 2009), supports an inference that Trial Exhibit 64 must have included Alifax's trade secret information simply because Alcor hired Mr. Frappa. *See* Appellant's Br. 43, 46–47. In *Astro-Med*, the First Circuit upheld an inference that a trade secret was *misappropriated*, after parties had clearly articulated what the trade secret constituted—which "includ[ed] confidential marketing, pricing, and customer information." 591 F.3d at 7–8, 18. *Astro-Med* is thus distinguishable because Alifax has failed to articulate the contents of the alleged trade secret.

Alifax also argues that Mr. Giovanni Batista Duic's trial testimony established the existence and scope of the alleged signal acquisition trade secret. Appellant's Br. 45 (citing J.A. 13936–37, 13924–25). We also find this argument unpersuasive. The cited portion of Mr. Duic's testimony simply describes how Alifax's ESR instruments work at a high level. *See* J.A. 13936–37, 13924–25. At most, this testimony would have allowed the jury to make an inference that there are a few discrete points of similarity between Alcor's software procedure and how Alifax's device works. *Compare* J.A. 13936–38 *with* J.A. 15716–19. Taking this testimony into consideration, the evidence adduced at trial is still not enough to allow the jury to identify the alleged trade secret with sufficient detail.

*6 For the foregoing reasons, we find no error in the district court's decision to remove the alleged signal acquisition trade secret from jury consideration.

C

Next, Alifax argues that the district court abused its discretion in granting a new trial on liability as to the conversion algorithm trade secret because it required "Alifax's algorithm [to be] capable of producing highly accurate results in a non-Alifax device," when RIUTSA

does not require evidence of "use" to show misappropriation. Appellant's Br. 52 (citing *New Trial Order* at 577). Cross-Appellants respond that the district court did not abuse its discretion because the court properly found that the conversion algorithm trade secret had no independent economic value derived from its alleged secrecy. Cross-Appellants' Principal & Resp. Br. 41–44. We agree with Alifax.

"A trial court may grant a new trial on the basis that the verdict is against the weight of the evidence. Further, the district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice." *Jennings*, 587 F.3d at 436 (citations and internal quotation marks omitted).

Here, the district court abused its discretion in finding that the jury verdict was against the clear weight of the evidence, *New Trial Order* at 577, because it did not consider whether the evidence could establish that the trade secret was acquired through improper means, which alone is sufficient to satisfy the definition of misappropriation under RIUTSA. *See* R.I. Gen. Laws § 6-41-1 (" 'Misappropriation' means: (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; *or* (ii) Disclosure or use of a trade secret of another. ...") (emphasis added). The district court's decision focused on what it saw as the "critical assumption" underpinning the verdict—that "Alifax's algorithm was capable of producing highly accurate results in a non-Alifax device"—which it found to be necessary for the Defendants to *use* the conversion algorithm. *New Trial Order* at 577–79. But the new trial order did not discuss whether Alifax's algorithm would meet the alternative acquisition prong of misappropriation. *Id.* at 577–80. Therefore, because a "material factor deserving significant weight"—whether Alifax presented sufficient evidence on improper acquisition—was not addressed, we find that the district court abused its discretion in finding the jury verdict to be against the clear weight of the evidence. *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 27 (1st Cir. 2019).

Cross-Appellants further contend that Alifax failed to show that it undertook reasonable efforts to maintain the secrecy of the conversion algorithm or that the conversion algorithm had independent economic value from not being generally known. Cross-Appellants' Br. 41–43, 48–49. Both arguments are directed to the sufficiency of evidence to establish the conversion algorithm as a trade secret. *See* R.I. Gen. Laws § 6-41-1 (4). Because the district court focused its analysis on the jury's finding on

misappropriation and did not sufficiently address whether the conversion algorithm qualifies as a trade secret, *New Trial Order* at 577–80, we decline to address this argument in the first instance. *See Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996) (determining that proper review of a district court's new trial ruling for clear abuse of discretion includes "isolat[ing] the factual basis for the trial court's ruling" and not "assessing the credibility of witnesses and weighing testimony").

*7 Because we conclude that the district court abused its discretion in finding that the jury verdict regarding liability on the conversion algorithm trade secret was against the clear weight of the evidence, we find that the district court erred in granting a new trial on liability related to the conversion algorithm trade secret. Therefore, we direct the district court to enter judgment for Alifax on this issue according to the jury verdict. *See de Perez v. Hosp. del Maestro*, 910 F.2d 1004, 1008–09 (1st Cir. 1990) (reversing new trial order when "the evidence simply was mixed and contradictory").

D

Alifax next argues that the district court abused its discretion by granting a new trial on damages because of Mr. Bokhart's testimony. Appellant's Br. 55. Alifax contends that the court erred in finding that the testimony "exceeded the scope permitted by Rule 1006 [Summaries to Prove Content]" when it would have been admissible under Federal Rules of Evidence 611(a) (Mode and Order of Examining Witnesses and Presenting Evidence) and 703 (Bases of an Expert's Opinion Testimony). *Id.* at 56. Alifax also argues that the district court abused its discretion by finding that Mr. Bokhart's testimony unfairly prejudiced Cross-Appellants. *Id.* at 61. We do not agree.

We hold that the district court correctly found that Mr. Bokhart exceeded the scope permitted by Federal Rule of Evidence 1006 as a summary witness by improperly including expert testimony that was previously excluded. *New Trial Order* at 580–82. After previously excluding Mr. Bokhart's opinions concerning trade secret misappropriation damages, *Daubert Decision on Trade Secrets* at 171–72, the district court allowed Mr. Bokhart to present financial information relevant to damages as a summary *fact* witness under Rule 1006. J.A. 15309–11; *New Trial Order* at 580. Rule 1006 allows a party use summary writing or summary witness testimony "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in

court." *Id.* at 580–81; *see* Fed. R. Evid. 1006. But evidence cannot be offered under Rule 1006 if it contains expert opinion that goes beyond summarizing voluminous materials or making a calculation based on data contained in such materials. *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8043 (3d ed. 2022); *see also Eichorn v. AT & T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007). As the district court found, Mr. Bokhart's testimony "necessarily reflected the application of his financial and accounting expertise," *i.e.*, included expert testimony. *New Trial Order* at 581. Regarding convoyed sales, such as test cards and diagnostic devices, Mr. Bokhart testified that the revenue these items generated were iSED-related and therefore should be considered when calculating damages. *Id.* at 581–82; *see also* J.A. 15351–52 (explaining how Alcor's iSED-related revenue stream included revenues from the sale of test cards used to make iSED operational). But no evidence or any other witness had established the relationship between convoyed sales and the conversion algorithm trade secret. *New Trial Order* at 582; J.A. 15379–80 (trial testimony admitting no documentation showed that test cards, controls, and diagnostic devices were iSED-related). Therefore, Mr. Bokhart's testimony must have relied on his accounting expertise.

Because Mr. Bokhart's testimony exceeded the scope of Rule 1006 and he was the only damages witness Alifax presented, the district court did not abuse its discretion by finding that unfair prejudice to Defendants warranted a new trial on damages. *New Trial Order* at 580, 582; *see Turcotte v. Ford Motor Co.*, 494 F.2d 173, 183–85, 187 (1st Cir. 1974) (remanding for new trial on damages when witness improperly applied state law); *see also In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 267, 269 (5th Cir. 2022) (finding lay witness improperly offered expert opinion and remanding for a new trial).

*8 Alifax's argument that Mr. Bokhart's testimony was admissible under Federal Rules of Evidence 611(a) and 703 is also without merit. *See* Appellant's Br. 56. Rule 611(a) (Mode and Order of Examining Witnesses and Presenting Evidence) requires that the testimony must be supported by evidence already admitted. *See United States v. Milkiewicz*, 470 F.3d 390, 395–98 (1st Cir. 2006) (noting that "summary chart [under Rule 611(a)] ... must be linked to evidence previously admitted and usually is not itself admitted into evidence"). Furthermore, Rule 703 (Bases of An Expert's Opinion Testimony) is only available to expert witnesses.[8] *See* Fed. R. Evid. 703; *see also United States v. DeSimone*, 488 F.3d 561, 576–77 (1st Cir. 2007) (holding no abuse of discretion in admitting an expert's summary chart under Rule 703). Because Mr. Bokhart's testimony was not based on

evidence in the record and he testified as a fact witness, his testimony was not admissible under these rules either.

Alifax's cited cases are also distinguishable. For example, two of these cases are inapposite because they involve a district court's finding under Rule 403. Appellant's Br. 62–63; *see Espeaignnette v. Gene Tierney Co.*, 43 F.3d 1, 5–8 (1st Cir. 1994); *United States v. Frabizio*, 459 F.3d 80, 90–91 (1st Cir. 2006). Here, the district court did not exclude Mr. Bokhart's testimony under Rule 403; rather, it found that "[p]ermitting the jury's damages award to stand would constitute a miscarriage of justice" in light of Bokhart's testimony. *New Trial Order* at 582; *see Jennings*, 587 F.3d at 436 ("[T]he district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice.").

In sum, we conclude that the district court did not abuse its discretion in granting a new trial on damages.

E

Next, Alifax challenges the district court's decision to exclude the alleged signal acquisition trade secret from the new trial. Appellant's Br. 47–50; *see Order on New Trial Scope and Patent Fees* at *2–3. Alifax argues that even if the district court was correct to exclude the alleged signal acquisition trade secret from the jury after close of the original trial, that does not justify excluding the alleged signal acquisition trade secret entirely from the new trial because the questions at the end of the original trial and at summary judgment before trial are different. Appellant's Br. 47. Moreover, Alifax asserts the district court's exclusion of the alleged signal acquisition trade secret was an improper application of partial retrial law. *Id.* at 48. We disagree.

The district court did not misapply partial retrial case law. *Order on New Trial Scope and Patent Fees* at *2–3. After explaining that it had already ruled that the evidence at the original trial could not support a finding that the alleged signal acquisition trade secret was misappropriated, it concluded that this issue "ha[d] been properly and conclusively resolved." *Id.* at *2–3 (cleaned up) (citing *Drumgold v. Callahan*, 707 F.3d 28, 46 (1st Cir. 2013)). The court further found the remaining issue of the conversion algorithm is "so distinct and separable from the signal acquisition claim," the trial on that issue alone would not result in injustice. *Id.* (cleaned up) (citing *Drumgold*, 707 F.3d at 46). Because we find that the district court did not err in precluding jury consideration

of the alleged signal acquisition trade secret, *see supra* Section II.B, we agree with the district court's analysis here.

**\*9** Neither of Alifax's cited cases support Alifax's argument that an issue must be retried even if it was properly removed from the jury in the first trial. *See* Appellant's 48–49 (citing *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931); *Drumgold*, 707 F.3d at 46–47). Alifax's cited case law does not support its argument that excluding the alleged signal acquisition trade secret from consideration by the jury—a decision subject to the same standard as judgment as a matter of law, *see Wilson v. Maritime Overseas Corp.*, 150 F.3d 1, 10 (Fed. Cir. 1998)—was not a proper and conclusive way of resolving this claim.⁹ Alifax also presents no evidence that the alleged signal acquisition trade secret is not "so distinct and separable" from the conversion algorithm trade secret that a trial on that issue alone would lead to injustice, so as to require a retrial. *Drumgold*, 707 F.3d at 46. Because we find that the district court did not misapply partial retrial law, we find no error in its decision precluding Alifax from presenting the alleged signal acquisition trade secret at the new trial. *Order on New Trial Scope and Patent Fees* at \*2–3.

## F

Lastly, Alifax challenges the district court's decision precluding Alifax from seeking compensatory damages at the new trial. Appellant's Br. 37–40; *see Order Precluding Damages* at \*1–3. Alifax argues that the district court abused its discretion because it mistakenly assumed that Mr. Bokhart's testimony was essential to the case when it had presented other available avenues for introducing evidence. Appellant's Br. 38. Cross-Appellants respond that Mr. Bokhart was Alifax's sole damages witness and that the district court properly precluded Alifax from offering new damages witnesses, testimony, or theories on retrial. Cross-Appellants' Principal & Resp. Br. 28. We agree with Alifax.

At the outset, Alifax clarified at oral argument that it does not intend for Mr. Bokhart to serve as its damages witness in the new trial, unless the alleged signal acquisition trade secret would be included in the new trial. Oral Arg. at 08:46–10:11. Rather, it seeks to introduce Alcor's sales record of iSED devices and accessories through other fact witnesses already disclosed in the pretrial memoranda or to introduce Alcor's financial statements already identified on the trial exhibit list. *See* Appellant's Br. 38–39. Thus, the crux of the issue on appeal is whether

the district court abused its discretion in finding that "the only damages witness disclosed by Alifax was [Mr.] Bokhart," thereby precluding the damages theory altogether. *Order Precluding Damages* at \*2–3.

The finding that Mr. Bokhart was the sole damages witness is not supported by the record. At least some of the fact witnesses that Alifax proposes to call at the new trial for damages are listed in the pretrial memorandum. *Compare* J.A. 18481 (Alifax's brief at the district court identifying Ms. Rossetto, Dr. Galiano, Mr. Duic, Mr. Frappa, Mr. Ruggeri, Mr. Sacchetti and/or Ms. Ruggeri as potential witnesses) *with* J.A. 10477 (Alifax's pretrial memorandum identifying Mr. Duic, Mr. Frappa, Dr. Galiano, Ms. Rossetto, Mr. Ruggeri, and Mr. Sacchetti as potential witnesses). Likewise, at least some documents Alifax seeks to present for damages were also listed in Alifax's pretrial exhibit list attached to its pretrial memorandum. *Compare* J.A. 18480 (identifying Trial Exhibit 173, J.A. 15957–64) *with* Exhibit A to Alifax's Pretrial Memorandum at 6, *Alifax Holding SPA v. Alcor Sci. Inc.*, No. 1:14-cv-00440-WES-LDA (D.R.I. Mar. 15, 2019), Dkt. 226-1. To the extent that the district court's finding was based on an understanding that Alifax's fact witness were disclosed for the liability phase only, this reasoning is not supported because there was no requirement for the parties to distinguish between possible damages and liability witnesses in the pretrial memoranda. *See* Oral Arg. at 42:15–33 (Cross-Appellants conceding that parties were not required to designate witnesses as damages or liability witnesses).

**\*10** We further find the district court's conclusion to be contradicted by Alifax's initial disclosures. *Order Precluding Damages* at \*2–3. Alifax's initial disclosures list at least some of the individuals it may seek to call as damages witnesses at the new trial. *See* J.A. 15071–72 (identifying Mr. Duic, Dr. Galiano, Mr. Frappa, Mr. Ruggeri, and Mr. Sacchetti). Furthermore, after Mr. Bokhart's expert testimony on damages was excluded mid-trial, the district court itself suggested that Alifax could call on other fact witnesses, such as Ms. Ruggeri, to present Alcor's financial spreadsheet as evidence of damages. J.A. 15312; *see* Oral Arg. 42:03–14 (Cross-Appellants admitting the same).

Because the court erred in finding that Mr. Bokhart was the only damages witness that Alifax disclosed, we hold that it abused its discretion in precluding Alifax from presenting any compensatory damages testimony or evidence at the new trial from previously disclosed witnesses who could address the damages issues. *Order Precluding Damages* at \*2–3; *see AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1358 (Fed. Cir. 2017) ("A

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

district court abuses its discretion when its ruling rests on ... a clearly erroneous assessment of the evidence.") (citations omitted).[10]

G

On cross-appeal, Alcor first challenges the district court's denial of its motion for attorney's fees under 35 U.S.C. § 285. Cross-Appellants' Principal & Resp. Br. 57–58; *see also id.* at 59–65. Alcor argues that Alifax knew prior to suit that Alcor's iSED device did not fall within the scope of the patent claims and that Alifax failed to obtain a claim construction that would support its infringement theory, yet still proceeded to trial with no viable infringement theory. *Id.* at 59. Alcor further contends that these facts show that Alifax did not have good faith in pursuing its patent infringement claims and misrepresented its infringement theory as a literal infringement theory. *Id.* at 60–63. Alcor also argues that the district court abused its discretion in relying on *Medtronic Nav., Inc. v. Brain LAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed Cir. 2010) to arrive at its conclusion without discussing the *Octane* factors. *Id.* 64–65. We disagree.

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorney's fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Under a similar provision of the Copyright Act, among the nonexclusive factors that courts have considered relevant to this determination are "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994)).

The district court did not abuse its discretion because it correctly found that Alifax's patent claims "were not exceptional" and properly considered arguments raised by Alcor. *Order on New Trial Scope and Patent Fees* at *4–5. The district court rejected Alcor's argument that "Alifax pulled a bait and switch regarding its theory of patent infringement," *id.* at *4, and instead found that "the evidence shifted between summary judgment and trial." *Id.* at *5. For example, it explained that its claim construction order was not inconsistent with Alifax's infringement position and that it rejected Alcor's similar

argument on summary judgment. *Id.* at *4; *see Summary Judgment Order*, at *4 (noting Alcor's argument depends "upon reading limitations into the claims that do not exist"). The court further correctly explained that Alifax's infringement position was supported by its expert testimony, but the expert testified inconsistently at trial. *Order on New Trial Scope and Patent Fees*, at *5; *see* J.A. 14227–28 (relevant expert testimony). The court thus did not err in concluding that Alcor had not shown that Alifax misrepresented its evidence to the court. *See Order on New Trial Scope and Patent Fees* at *4–5. On appeal, Alcor simply asks this court to reweigh the evidence based on the same arguments it presented at the district court. *See* Cross-Appellants' Principal & Resp. Br. 60–63. Because "[w]e do not and should not reweigh evidence or make factual findings anew on appeal," we reject Alcor's argument. *Impax Lab'ys Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1382 (Fed. Cir. 2018) (citation omitted); *see Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) (declining to "reweigh evidence in a manner inconsistent with ... abuse of discretion" standard).

*11 Additionally, we are not persuaded that the district court improperly relied on *Medtronic*. Cross-Appellants' Principal & Resp. Br. 64. In *Medtronic*, we held that the denial of summary judgment can be "an indication that the party's claims were objectively reasonable and suitable for resolution at trial," unless there was a misrepresentation to the court. 603 F.3d at 954. The district court correctly found that the denial of Alcor's summary judgment motion on patent infringement indicates that Alifax's patent claims were "suitable for resolution at trial." *Order on New Trial Scope and Patent Fees*, at *5. Because the court also properly found Alifax did not misrepresent its patent infringement theory, *Medtronic* squarely applies and the district court's reliance on this case was proper.

We further are not persuaded by Alcor's argument that the court did not engage in any *Octane* factors analysis. Cross-Appellants' Principal & Resp. Br. 65. The court discussed the substantive strength of Alifax's position and whether the manner in which it was litigated was unreasonable. *See Order on New Trial Scope and Patent Fees* at *4–5. This discussion closely follows the analysis in *Octane*. 572 U.S. at 554 & n.6. Therefore, the district court did not abuse its discretion in finding that this case was not exceptional.

H

Lastly, Alcor argues that the district court abused its discretion in denying its motion for attorney's fees as to Alifax's copyright infringement claim under 17 U.S.C. § 505. Cross-Appellants' Principal & Resp. Br. 66–67. Alcor argues that the court abused its discretion in finding that Alifax's copyright infringement claim was not objectively weak because Alifax never identified the content of the copyrighted work or presented a cognizable damages theory for its copyright claim. *Id.* at 67–68. Alcor also contends that the district court erred by failing to consider certain *Fogerty* factors, including deterrence. *Id.* at 70–71. We disagree.

For a court to award attorney's fees under 17 U.S.C. § 505, "the prevailing party need only show that its opponent's copyright claims or defenses were objectively weak." *Latin Am. Music*, 642 F.3d at 91 (citation and internal quotation marks omitted). A finding of objective weakness may turn on "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19. The "district court has discretion to decline to award attorney's fees even when the plaintiff's copyright infringement case is quite weak." *Airframe Sys.*, 658 F.3d at 109.

First, the court correctly held that Alifax's purported failure to present the entirety of the copyrighted source code had little bearing on the overall strength of its claim. *Order on Copyright Fees* at *3; *see Airframe*, 658 F.3d at 109 (affirming denial of attorney's fees despite plaintiff not establishing the content of copyrighted source code). Moreover, as the district court explained, one of the reasons that Alifax was unable to succeed on its copyright claim was because Alifax's expert "failed to revise his opinion as the factual circumstances became more refined." *Order on Copyright Fees* at *4; *see Daubert Decision on Copyright* at *1–2; *Daubert Decision on Trade Secret* at 171–72 ("The copyright claim fell away with the exclusion of Mr. Bokhart's damages testimony."). Failure of an expert to revise his damages opinion as the case progresses has little to do with the overall strength of Alifax's case on the merits. We therefore reject the argument that Alifax's failure to disclose copyrighted source code or to provide evidence of damages at trial should have compelled the district court to find Alifax's claim to be objectively weak.

*\*12* Second, we are not persuaded that the district court abused its discretion by failing to properly consider the *Fogerty* factors. Cross-Appellants' Principal & Resp. Br. 70–71. Regarding frivolousness and motivation, the court

explicitly rejected the argument that "the claim was frivolous or unreasonable," and found that "nothing in the record indicat[es] that Alifax brought this claim with an improper motivation." *Order on Copyright Fees* at *4. The court's finding is supported by the record: Alifax consistently argued throughout the litigation that Defendants took Alifax's source code without permission. Based on its argument, the court denied Alcor's summary judgment motion on copyright infringement. *See id.* at *3; *Summary Judgment Order* at *9–11. Additionally, the district court's finding that Alifax's copyright claim "fell away" due to the damages expert's failure to revise its opinion supports the court's conclusion that there was no improper motivation. *Daubert Decision on Trade Secret* at 171–72; *see Daubert Decision on Copyright* at *1–2; *New Trial Order* at 558. Because the district court correctly rejected the argument as to motivation, it was not an abuse of discretion to find there to be "no need to compensate Alcor nor to deter Alifax." *Order on Copyright Fees* at *4.

Therefore, we hold that it was not an abuse of discretion for the district court to deny attorney's fees as to Alifax's copyright infringement claim.

III. Conclusion

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the district court's exclusion of the alleged signal acquisition trade secret from jury consideration at the original trial and the new trial; *reverse* the district court's grant of a new trial as to the liability of the conversion algorithm trade secret and direct the district court to reinstate the jury verdict on this issue; *affirm* the district court's grant of a new trial on damages for misappropriation of the conversion algorithm trade secret; *reverse* the district court's decision to preclude Alifax from presenting evidence and witnesses on compensatory damages at the new trial; and *remand* for a new trial on damages consistent with this opinion. We also *affirm* the denials of Alcor's motions for attorney's fees relating to its patent and copyright infringement claims.

**AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED**

Costs

No costs.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Alifax Holding SpA v. Alcor Scientific LLC, Not Reported in Fed. Rptr. (2024)

---

**All Citations**                                             Not Reported in Fed. Rptr., 2024 WL 2932910

Footnotes

1        Because some issues on appeal only apply to one of the two Cross-Appellants, we distinguish between Cross-Appellants, Alcor, and Mr. Frappa in this opinion.

2        Alifax Holding SpA was the only plaintiff in the initial Complaint filed on October 7, 2014. J.A. 136. Sire Analytical Systems SRL was added as a plaintiff in the Amended Complaint filed on March 17, 2015. J.A. 106. During litigation, Sire merged into Alifax. *New Trial Order* at 557 n.6.

3        In some places, the district court characterized the conversion algorithm and the alleged signal acquisition trade secrets as a single trade secret. *See Summary Judgment Order* at *6 (referring to "software and firmware concerning the acquisition and conversion of photometric measurements to an ESR value"). Elsewhere, it described them as separate trade secrets. *Alifax Holding Spa v. Alcor Sci. Inc.*, C.A. No. WES 14-440, 2021 WL 3022697, at *2 (D.R.I. July 16, 2021) ("*Order on New Trial Scope and Patent Fees*") (referring to "two software trade secrets"). We treat the alleged signal acquisition and conversion algorithm as two separate trade secrets.

4        The jury also found the Defendants misappropriated other trade secrets and had acted willfully and maliciously. J.A. 15194–98.

5        The court ruled that the jury would not be permitted to award damages against Mr. Frappa. *New Trial Order* at 558 n.7; J.A. 15330–31. This ruling is not subject to this appeal.

6        The court considered the motion for a new trial as a joint request from both Defendants. *New Trial Order*, 404 F. Supp. 3d at 556 n.3.

7        Because Alifax brought its trade secret claims under RIUTSA, we apply Rhode Island law. *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1356 (Fed. Cir. 2011). Nonetheless, we look to courts' interpretation of the Uniform Trade Secrets Act (UTSA) enacted by other states for guidance, because RIUTSA is "construed to ... make uniform the law with respect to the subject of this chapter among states enacting it." R.I. Gen. Laws § 6-41-8; *see Read & Lundy, Inc. v. Wash. Tr. Co. of Westerly*, No. PC99-2859, 2002 WL 31867868, at *8 (R.I. Super. Ct. Dec. 13, 2002) (citing cases from other jurisdictions adopting the UTSA to interpret provisions of RIUTSA), *aff'd*, 840 A.2d 1099 (R.I. 2004).

8        We do not address Alifax's challenge to the district court's *Daubert* decision excluding Mr. Bokhart's expert testimony because Alifax only raised this issue in a footnote in its opening brief. Appellant's Br. 41–42 n.9. *See Aquinnah/Gay Head Cmty. Assoc., Inc. v. Wampanoag Tribe of Gay Head (Aquinnah)*, 989 F.3d 72, 80 (1st Cir. 2021) (finding argument addressed in a single footnote in opening brief forfeited).

9        Instead, "the court, by granting only a partial new trial, cannot exclude from the jury an issue on which it has not yet passed" unless "the circumstances would justify a judgment as a matter of law on an issue." 11 Charles A. Wright & Arthur R. Miller,

---

© 2026 Thomson Reuters. No claim to original U.S. Government Works.                                         10

**Alifax Holding SpA v. Alcor Scientific LLC, Not Reported in Fed. Rptr. (2024)**

*Federal Practice and Procedure* § 2814 (3d ed. 2022).

10    Alifax additionally argues that the district court erred in requiring it to present expert testimony on damages. Appellant's Br. 37; *see Order Precluding Damages* at *3 & n.4. Because we do not agree with this reading of the district court's opinion, we do not separately address this argument.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT D*

2019 WL 7840665
Only the Westlaw citation is currently available.
United States Bankruptcy Court, M.D. North Carolina,
Durham Division.

IN RE: Lent C. **CARR**, II and Deltarina V. **Carr**, Debtors.

Case No.



Signed November 18, 2019

**Attorneys and Law Firms**

Joseph A. Bledsoe, III, Raleigh, NC, Erich M. Fabricius, Fabricius & Fabricius, PLLC, Knightdale, NC, for Debtors.

## ORDER

### Granting Debtors' Motion To Enforce Automatic Stay

LENA MANSORI JAMES, UNITED STATES BANKRUPTCY JUDGE

*1 THIS MATTER came before the Court on Lent and Deltarina **Carr's** (collectively, the "Debtors") motion to enforce the automatic stay (Docket No. 91, the "Motion"), filed on October 14, 2019. The Court scheduled the Debtors' Motion for hearing on October 29, 2019, at which Erich Fabricius, Esq., appeared on behalf of the Debtors, and Benjamin Lovell, Esq., appeared on behalf of the Chapter 13 Trustee. The Creditor did not file a response to the Debtors' Motion and did not appear at the scheduled hearing.

In the Motion, the Debtors report that Jannetta Jordan (the "Creditor") filed a state-court complaint on April 4, 2018,

which was 15 days after the Debtors filed this chapter 13 case on March 20, 2018. *See Jannetta Jordan v. Lent Carr*, No. 18 CVS 239 (N.C. Super. Apr. 4, 2018). The Creditor's state-court complaint alleges the Debtors misrepresented themselves and unlawfully obtained title to certain real property. Also on April 4, 2018, in connection with the complaint, the Creditor filed a notice of lis pendens, giving potential purchasers of those properties notice of the pending suit. The Debtors argue the Creditor took these **actions** in direct violation of the automatic stay and request the Court enter an order either declaring the lis pendens void *ab initio* or requiring the Creditor to cancel the lis pendens.

At the hearing, the Debtors provided time-stamped copies of the state-court complaint (Ex. 1), and the notice of lis pendens (Ex. 2), both of which reflect a filing date of April 4, 2018. Debtor Lent **Carr** testified regarding the Creditor's filing of the state-court complaint and the shadow the existing lis pendens presently casts over potential sales of estate property (audio available at Docket No. 95). **Carr** indicated that the sale approved by the Court on July 5, 2019 (Docket No. 77) had fallen through, in part, because of the Creditor's alleged communications and "threats" to the potential buyer.

The Debtors request only that the Court declare the lis pendens void *ab initio* or, in the alternative, issue an order requiring the Creditor to cancel the lis pendens by a date certain (Docket No. 91). Although the Debtors did not specifically request a finding that the Creditor's filing of the complaint was violation of the stay, the Court has the power to raise the issue sua sponte without a motion from a party in interest. *In re Jorge*, 568 B.R. 25, 37 (Bankr. N.D. Ohio 2017); *see also Walker v. Got'cha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679, 692–93 (Bankr. M.D. Ga. 2016); *222 Liberty Assoc. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assoc.)*, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990) (collecting cases).

The Motion and exhibits demonstrate clearly that the Creditor filed her complaint and the accompanying lis pendens after the Debtors filed for bankruptcy relief, and the Creditor does not contest that fact. As such, the Court finds the Creditor's state-court filings to be violations of the automatic stay provided in 11 U.S.C. § 362(a)(1).¹ The "automatic stay represents 'one of the fundamental debtor protections provided by the bankruptcy laws.'" *United States v. Gold (In re Avis)*, 178 F.3d 718, 721 (4th Cir. 1999) (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). While the Fourth Circuit has not directly answered the question of whether **actions** in violation of an automatic stay are void or

In re Carr, Not Reported in B.R. Rptr. (2019)

merely voidable, *see Winters v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996) (noting the circuit split on the question but declining to address it), the leading bankruptcy treatise, 3 Collier on Bankruptcy ¶ 362.12 (16th ed. 2019) (noting that "[m]ost courts have held that **actions** taken in violation of the stay are void and without effect"), as well as a majority of the bankruptcy courts within this Circuit to have considered the question, have concluded that **actions** in violation of the automatic stay are void, rather than voidable.[2]

**\*2** While the Court does not, as part of this Order, address the alleged communications between the Creditor and the potential purchaser of the Debtors' property, the Creditor is hereby on notice that any future attempts to interfere with prospective sales, or further violations of the automatic stay more broadly, are likely to warrant sanctions.[3]

For the reasons stated herein, IT IS HEREBY ORDERED

that Creditor Jannetta Jordan's state-court complaint is void *ab initio* as a violation of 11 U.S.C. § 362(a) and Ms. Jordan is directed to take all **action** necessary to promptly dismiss the state-court **action** pending in the Superior Court for Hoke County, North Carolina. *Jannetta Jordan v. Lent Carr*, No. 18 CVS 239 (N.C. Super. Apr. 4, 2018).

IT IS FURTHER ORDERED that the notice of lis pendens filed by Jannetta Jordan against the Debtors' property is void and of no effect.

**SO ORDERED.**

**All Citations**

Not Reported in B.R. Rptr., 2019 WL 7840665

Footnotes

1    While the Fourth Circuit has previously held a creditor's amendment to an existing lis pendens filed *before* a debtor's bankruptcy, is not a violation of the automatic stay, *see In re Knightsbridge Dev. Co.*, 884 F.2d 145, 148 (4th Cir. 1989), the Creditor here filed both her complaint and the lis pendens *after* the Debtors' chapter 13 bankruptcy filing. As such, this case more closely aligns with *In re Byrd*, in which the bankruptcy court held the creditors violated the automatic stay through their post-petition filing of a state-court complaint and request to impose a constructive trust, which the court analogized to a notice of lis pendens. *In re Byrd*, No. 04-35620, 2007 WL 1485441 (Bankr. D. Md. May 18, 2007), *aff'd sub nom Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008), *aff'd* 331 Fed. Appx. 212 (4th Cir. 2009).

2    *See, e.g., Valenti v. JP Morgan Chase Bank, N.A. (In re Valenti)*, No. 13-01350, 2014 WL 4980039, at \*3 (Bankr. E.D.N.C. Oct. 6, 2014) (finding "overwhelming precedent" that an **act** taken in violation of the automatic stay is void, rather than voidable); *In re NCVAMD, Inc.*, No. 10-03098-8, 2013 WL 6860816, at \*3 (Bankr. E.D.N.C. Dec. 31, 2013) (finding government agency's commencement of a condemnation **action** void ab initio); *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 283 (Bankr. D.S.C. 2009) (noting that, while the Fourth Circuit has not ruled on the issue, courts in the district "have consistently held that **actions** taken in violation of the automatic stay are void ab initio and thus not legally effective."); *Lykins v. Bottalico (In re Lykins)*, No. 92-14689-RGM, 2006 Bankr. LEXIS 2817, at \*\*6–8 (Bankr. E.D. Va. Jan. 30, 2006) (declining to resolve the question, but proceeding to retroactively annul the automatic stay to address a state-court complaint that had been rendered void *ab initio*); *McGuffin v. Barman (In re BHB Enters., LLC)*, No. 97-80201, 1997 WL 33344249, at \*4 (Bankr. D.S.C. Aug. 27, 1997) (holding the filing of a state court complaint and entry of a state-court order "were done in violation of the automatic stay and are therefore void and without effect."); *but see Khozai v. Resolution Trust Corp.*, 177 B.R. 524, 526–27 (E.D. Va. 1995) (finding persuasive those cases concluding **acts** taken in violation of the stay are voidable).

3    To date, the Debtors have adopted an inexplicably laissez-faire approach to the Creditor's **actions**, declining to request compensation for damages or sanctions.

**In re Carr, Not Reported in B.R. Rptr. (2019)**

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

*EXHIBIT E*

In re HP Bennett, LLC, Not Reported in B.R. Rptr. (2023)

2023 WL 8881858
Only the Westlaw citation is currently available.
United States Bankruptcy Court, District of Columbia.

IN RE: HP BENNETT, LLC, Debtor.
In re: Baltimore Harlem Park
Investment, LLC, Debtor.

Case No.



22

00106

ELG

, Case No. 21-00249-ELG
|
Signed December 22, 2023

**Attorneys and Law Firms**

Patricia B. Jefferson, Baltimore, MD, Pro Se.

Lawrence Allen Katz, Tysons, VA, Pro Se.

Mahlon Mowrer, Maurice Belmont VerStandig, The VerStandig Law Firm, LLC, Henderson, NV, for Debtor Baltimore Harlem Park Investment LLC in No. 21-00249.

**MEMORANDUM OPINION**

Elizabeth L. Gunn, United States Bankruptcy Judge

*1 The Court has before it two motions for relief from stay (each individually a "Motion for Relief," together, the "Motions for Relief") filed by Hutchinson Holdings, LLC ("Hutchinson") regarding 906 Bennett Place, Baltimore, MD 21223 (the "Property"). Am. Mot. for Relief from Stay, *In re HP Bennett, LLC*, Case No. 22-00106-ELG (Bankr. D.D.C. July 11, 2022), ECF No. 53; Mot. for Relief from Stay, *In re Baltimore Harlem Park Invs., LLC*, Case No. 21-00249-ELG (Bankr. D.D.C. June 26, 2023), ECF No. 89. Hutchinson is the

assignee of a tax certificate from the Mayor and City Council of Baltimore (the "Tax Certificate") dated May 13, 2019 for unpaid property taxes owed by HP Bennett, LLC (the "Debtor," and together with Baltimore Harlem Park Investment, LLC, the "Debtors") for the Property. Hutchinson seeks relief from the automatic stay in each of the above-captioned cases to exercise and enforce its state law rights against the Property to collect on the Tax Certificate. Hutchinson has not filed a proof of claim in either of the cases. The Debtors timely objected to each of the Motions for Relief.

On October 18, 2023, the Court held a hearing (the "Hearing") on the Motions for Relief and the *Motion to Determine Value of Property of Hutchinson Holdings* (the "Motion to Determine Value"). Mot. to Determine Value of Property of Hutchinson Holdings, *In re HP Bennett, LLC*, Case No. 22-00106-ELG (Bankr. D.D.C. July 18, 2023), ECF No. 56. At the conclusion of the Hearing the Court issued an oral ruling denying the Motions for Relief. This Memorandum Opinion memorializes that ruling, to the extent there is any inconsistency, this Memorandum shall control.

**I. Background**

This matter involves the chapter 7 case of HP Bennett, LLC ("HP Bennett") and the jointly administered, post-confirmation chapter 11 cases of Baltimore Harlem Park Investment, LLC ("BHPI") and Ruby Jude City LLC ("Ruby Jude"). The three debtors are interrelated—BHPI is the sole member of Ruby Jude, which was the petitioning creditor of HP Bennett's case. At issue is the Tax Certificate in the amount of $26,254.88 on the Property. As stated on its face, under Maryland law, the Tax Certificate would be void unless a proceeding to foreclose the right of redemption was filed within two (2) years of the date of the certificate.

On April 16, 2021, Hutchinson timely filed a Petition to Foreclose Rights of Redemption (the "Foreclosure Action") against Ruby Jude in the Circuit Court of Baltimore City, case number 24-C-21-0001630, against multiple defendants including HP Bennett (the title owner) and Ruby Jude (the holder of the secured debt). BHPI and Ruby Jude filed voluntary petitions for relief in this Court on October 17, 2021, effectively staying the Foreclosure Action. An involuntary petition was filed by Ruby Jude against HP Bennett on June 23, 2022, and the Order for Relief (the "Order for Relief") was entered on July 20, 2022. Order For Relief in an Invol. Case, *In re*

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.    1

In re HP Bennett, LLC, Not Reported in B.R. Rptr. (2023)

HP Bennett, LLC, Case No. 22-00106-ELG (Bankr. D.D.C. July 20, 2022), ECF No. 6. Hutchinson was listed as a creditor in HP Bennett's case.

**\*2** On July 11, 2022, Hutchinson filed the Motion for Relief in Ruby Jude's case as to the Property, seeking to exercise its right to foreclose its lien on the Property owned by HP Bennett. ECF No. 87.[1] Despite the pending motion for relief in Ruby Jude's case that was continued multiple times after its filing in July 2022, it was not until June 26, 2023, that Hutchinson filed a Motion for Relief from stay as to the Property in HP Bennett's case. ECF No. 53. The Motions for Relief each raise the same question—whether Hutchinson should be granted relief from the automatic stay in each case to proceed with the Foreclosure Action against the Property. Relatedly is Ruby Jude's Motion to Determine Value, which alleges Hutchinson no longer has a valid secured claim against the Property.

Hutchinson's secured claim to an interest in the Property is based upon the Tax Certificate and the Foreclosure Action. While the Foreclosure Action was timely filed, on July 19, 2022 (the day prior to the entry of the order for relief in HP Bennett's case), the Foreclosure Action was dismissed by order (the "Dismissal Order") entered by the City of Baltimore Circuit Court (the "State Court"). On November 4, 2022, almost a year after the petition date for Ruby Jude and four months after the entry of the Order for Relief against HP Bennett, Hutchinson filed a motion in the State Court seeking to reopen and defer dismissal of the Foreclosure Action "nunc pro tunc" (the "Motion to Reopen"). The chapter 7 trustee of Debtor HP Bennett, LLC filed an opposition to the Motion to Reopen to which Hutchinson responded. On April 5, 2023, the State Court issued an order vacating the Dismissal Order, reinstating the Foreclosure Action, and deferring the dismissal "nunc pro tunc" due to suggestion of bankruptcy (the "Order Vacating Dismissal").

At the Hearing, the Court heard the testimony of the CEO of Hutchinson and admitted all proposed exhibits as follows: a docket report from the Foreclosure Action; a copy of the Tax Certificate; a Suggestion of Bankruptcy dated October 21, 2021 in the Foreclosure Action without any docketing information; and a letter from Hutchinson's counsel Andrew W. Gray setting forth a summary of amounts due on the Property dated August 4, 2023 (the "Exhibits"). Neither party introduced any other pleadings from the Foreclosure Action into evidence. Despite this, during closing, counsel for Hutchinson attempted to read into the record language from the Dismissal Order and the Order Vacating Dismissal. As such documents were not properly introduced into evidence, the Court cannot rely

upon the language in consideration of the Motions for Relief.[2]

All parties acknowledge that Hutchinson's original complaint on the Foreclosure Action was timely filed, and the Dismissal Order dismissed the case. The question is whether the Order Vacating Dismissal, and thus reinstating the Foreclosure Action, which in turn retained Hutchinson's interest in the Property, is a valid order. If the Order Vacating Dismissal is valid, then Hutchinson retains a secured claim in the Property as set out in the Foreclosure Action. However, if the postpetition Motion to Reopen was a violation of the automatic stay, then anything resulting therefrom would be void. For the reasons stated herein, the Court finds that the Motion to Reopen violated the automatic stay, thus the Order Vacating Dismissal is void *ab initio*, and therefore the dismissal of the Foreclosure Action remains the last, controlling order. As a result, Hutchinson has failed to meet its burden to show a colorable claim to the Property and has failed to establish cause for relief from stay. Because Hutchinson may seek alternative relief, including but not limited to a motion to annul the automatic stay, the Court continues the hearing on the Motion to Determine Value.[3]

## II. Jurisdiction

**\*3** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

## III. Analysis

*i. The Filing of the Motion to Reopen Violated § 362(a)(1) Stay*

The filing of a bankruptcy petition " 'operates as a stay, applicable to all entities,' of efforts to collect from the debtor outside of the bankruptcy forum." *City of Chicago v. Fulton*, 592 U.S. 154, 156, 141 S.Ct. 585, 208 L.Ed.2d 384 (2021) (citing 11 U.S.C. § 362(a)). "The 'primary purpose' of an automatic stay is to 'effectively stop all

creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [their] creditors' so as to 'appropriately resolve competing economic interests in an orderly and effective way.' " *In re Toppin*, 645 B.R. 773, 780 (Bankr. E.D. Pa. 2022) (citing *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999)). As relevant in this matter, the automatic stay prohibits the commencement or continuation of a judicial proceeding against the debtor that was commenced before the petition date. 11 U.S.C. § 362(a)(1). This stay extends to tax sale certificates. *See, e.g., In re LaMont*, 487 B.R. 488, 497 (N.D. Ill. 2012) (the automatic stay bars a tax certificate purchaser's attempt to enforce its lien); *In re Faitalia*, 561 B.R. 767, 774 (B.A.P. 9th Cir. 2016) (dicta stating that foreclosure of a lien after commencement of a case would violate §§ 362(a)(1), (4), and (6)).

Although the case law is limited on the question, courts appear to uniformly agree that the automatic stay does not prevent a state court from dismissing a case on its docket in a manner not inconsistent with the automatic stay. *See Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 966 F.2d 457, 458 (9th Cir. 1992); *Martin v. Hearst Corp.*, No. 3:12cv1023 (MPS), 2013 U.S. Dist. LEXIS 138060 at *24, 2013 WL 5310165 (D. Conn. Aug. 5, 2013). In conducting the analysis, two primary purposes for the automatic stay of § 362(a) have been identified: 1) to provide the debtor a breathing spell from its creditors and 2) to provide creditors protection in avoiding a rush to the courthouse. *See Pan Am. World Airways*, 966 F.2d at 459. The State Court's sua sponte dismissal of the Foreclosure Action is consistent with both purposes—it provided the Debtors relief from their creditor and resulted in the Property being brought back into the bankruptcy estate for the benefit of all creditors. Accordingly, the State Court's entry of the Dismissal Order did not violate the automatic stay. Thus, the inquiry turns to whether the Motion to Reopen violated the automatic stay.

Notwithstanding the effect of the automatic stay's prohibition of continuation of judicial proceedings, routine, ministerial acts in pending matters are not considered violations of the automatic stay. *See Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 974 (1st Cir. 1997). A ministerial act is one that is essentially clerical in nature and does not involve judicial function, such as actions taken by court officials fulfilling their duties without discretion. *See id.* Actions in litigation taken outside this limited exception and "in the course of carrying out the core judicial function" violate the automatic stay. *Id.* In general, the ministerial acts exception contemplates actions taken by a public official, not a private entity such as Hutchinson. *See In re Siegel,*

2014 Bankr. LEXIS 2942, *7, 2014 WL 3360573 (Bankr. S.D.N.Y. July 9, 2014). The filing of the Motion to Reopen was both an action requiring an overt judicial act and was filed by a third party. Clearly, the filing and prosecution of the Motion to Reopen does not fall within the scope of the ministerial acts exception. As such, the filing and prosecution of the Motion to Reopen violated the automatic stay.

*ii. Actions in Violation of the Automatic Stay are Void*

**\*4** The circuits are split on whether actions taken in violation of the automatic stay are voidable or void. *See Soares*, 107 F.3d at 976 (collecting cases). This Court agrees with the majority that acts taken in violation of the automatic stay are void. *See Stancil v. Bradley Invs., **LLC** (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *see also In re Sklar*, 626 B.R. 750, 762–63 (Bankr. S.D.N.Y. 2021). As a result, any action taken in violation of the stay is void, unless the automatic stay is annulled. Any subsequent actions dependent upon an act that violates the automatic stay themselves also violate the automatic stay and are void. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *In re Vela*, 2009 Bankr. LEXIS 2179, *6-7 (Bankr. E.D.N.Y. 2009); *see also Rothenberg v. Ralph D. Kaiser Co. (In re Rothenberg)*, 173 B.R. 4, 13 (Bankr. D.D.C. 1994). Therefore, not only is Motion to Reopen void because it violated the automatic stay, but all resulting actions are also void, including but not limited to the Order Vacating Dismissal—resulting in the Dismissal Order being the operative order in the State Court.

Notwithstanding the above, the Court notes that the Motions for Relief from stay sought only stay relief, and no alternative form of relief such as annulment. Thus, while the Court finds that the Motion to Reopen and all subsequent acts in the State Court are void, the Court does not reach the question as to whether the stay should be annulled to rehabilitate the stay violation.

**IV. Conclusion**

Therefore, for the reasons set forth herein, the Motions for Relief are DENIED without prejudice. The Motion to Determine Value shall be heard on January 10, 2024 at 10:00 a.m. Eastern. The hearing will be held both in Courtroom 1, United States Courthouse, 333 Constitution Ave NW, Washington, DC 20001 and by Zoom for

**In re HP Bennett, LLC, Not Reported in B.R. Rptr. (2023)**

Government. Parties should contact Aimee Mathewes for the Zoom information and should familiarize themselves with General Order 2023-01, Order Establishing Hearing Protocols Before Judge Gunn.

**All Citations**

Not Reported in B.R. Rptr., 2023 WL 8881858

### Footnotes

1    The Motion for Relief was redocketed later that day as "Amended" to correct certain technical deficiencies. The substantive portion of the motion was not modified.

2    *See* 2 Bankr. Litig. § 8:33, Westlaw (database update Oct. 2023) ("[t]he universe of evidence that a court will consider when deciding an issue will center upon that which is introduced by the parties.... A party should ensure that substantial evidence is set forth in its papers or presented at the trial or hearing to ensure that the judge will be satisfied. The failure to do so may result in an adverse ruling ... While some bankruptcy judges allow a degree of informality in hearings, all the rulings must be supported by competent evidence.... Assertions by counsel are not probative evidence. Legal arguments made to the court are not judicial admissions. Arguments of counsel are not evidence."); *see also In re Kearney,* 609 B.R. 383, 390 (Bankr. D.N.M. 2019) ("Arguments of counsel are no substitute for evidence.")

3    The Motion to Determine Value was subsequently continued to January 10, 2024 along with certain other pleadings filed by or on behalf of Hutchinson not germane to this Opinion.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT F*

2025 WL 2621840
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

IN RE VAN WELL NURSERY INC.,
Monson Fruit Co. Inc., Gordon Goodwin,
Sally Goodwin, Petitioners



2025

-

131

|

September 11, 2025

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Washington in No. 2:20-cv-00181-SAB, Judge Stanley Allen Bastian.

**Attorneys and Law Firms**

William Milliken, Ralph Wilson Powers III, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, Stephen A. Merrill, Mark P. Walters, Lowe Graham Jones PLLC, Seattle, WA, for Petitioners.

John R. O'Donnell, Jones Day, Los Angeles, CA, for Her Majesty the Queen in Right of Canada.

Before Reyna, Hughes, and Stoll, Circuit Judges.

**ON PETITION**

**ORDER**

Stoll, Circuit Judge.

*1 Petitioners Van Well Nursery, Inc., Monson Fruit Co. Inc., and Gordon and Sally Goodwin seek a writ of mandamus directing the district court to reinstate its prior order granting Petitioners summary judgment of invalidity. Her Majesty the Queen in Right of Canada, as Represented by the Minister of Agriculture and Agri Food ("AAFC") opposes the petition. Petitioners reply.

AAFC sued Petitioners alleging their Glory cherry variety infringed AAFC's plant patent covering a cherry variety called Staccato. AAFC also asserted non-patent claims. In November 2022, the district court granted summary judgment of invalidity of AAFC's patent claims based on a spreadsheet that purportedly showed the Staccato cherries on sale before the critical date. The parties later agreed to a bench trial on whether Glory was the same variety as Staccato and on the asserted non-patent claims.

But, in March 2025, before the trial, the court granted AAFC's motion to reconsider the summary judgment order. In doing so, it found Petitioners had falsely represented that the spreadsheet was accurate when the submitted document excluded the first ten rows demonstrating the sales were of a different variety of cherries. Having concluded that there were genuine issues of material fact regarding whether Staccato was sold before the critical date, the court vacated its prior ruling. Petitioners then filed this petition seeking to reinstate that decision.

Mandamus is "reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988) (citation omitted). Under the well-established standard for such relief, a petitioner must: (1) show that he has a clear and indisputable right to relief; (2) show he does not have any other adequate method of obtaining relief; and (3) convince the court that the "writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citation omitted). Petitioners have not met that demanding standard.

As to their primary challenge, Petitioners have not shown that the law of the case doctrine clearly and indisputably precluded the district court from reconsidering its summary judgment order. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (noting that doctrine is "wholly inapposite" to a "district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order"). Nor can we say that Petitioners lack adequate alternative means to raise any specific challenge to the district court's findings or to raise its invalidity challenge such as in an ordinary appeal following final judgment.

Accordingly,

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.    1

In re Van Well Nursery Inc., Not Reported in Fed. Rptr. (2025)

It Is Ordered That:

The petition is denied.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 2621840

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.