STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,
Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

HAMMERLESS TOOLS, LLC and
EIGHT EIGHTEEN, LLC,

     Plaintiffs,

     v.

JONATHAN CLAUSEN, CLAUSEN,
INC., AR-TT LLC, and LILAC CITY,
LLC,

     Defendants.

Case No.: 2:24-CV-00413-SAB

DEFENDANT JONATHAN
CLAUSEN'S MOTION TO
ESTABLISH LIABILITY FOR
DAMAGES

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 1 of 17

# TABLE OF CONTENTS

Pages

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

  I.   REDRESS IS WARRANTED FOR THE SUBSTANTIAL INJURY CAUSED BY PLAINTIFFS PURSUING THIS ACTION FOR MORE THAN A YEAR IN VIOLATION OF THE BANKRUPTCY CODE  . .    7

      A.  PLAINTIFFS and Their Counsel Willfully Violated 11 U.S.C. § 362(a)(1), Which Mandates an Award of Damages Against Them . . . . . . . . . . . . . . . . . . . . . . .    8

         1.  PLAINTIFFS and Their Counsel Knew of the Automatic Stay Provided by 11 U.S.C. Section 362(a)(1) and the Active Bankruptcy Proceeding Filed on October 24, 2024 . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

         2.  Even After PLAINTIFFS and Their Counsel Knew of the Active Bankruptcy and Section 362(a)(1), They Took Deliberate Steps Which Violate the Statute, and Failed to Discontinue Their Action Against CLAUSEN . . . . . . . . . . . . .    9

      B.  Section 362(k) Mandates Liability for Significant Actual Damages Incurred by CLAUSEN as a Result of PLAINTIFFS' and Their Counsel's Egregious Violations of Section 362(a)(1) . . . . . . . . . . . . . . . . .    11

      C.  PLAINTIFFS and Their Counsel Egregiously and and Maliciously Violated Section 362(a)(1), Warranting an Award of Punitive Damages  . . . . . . . . . . . . . . .    12

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

      1.  PLAINTIFFs Are Sophisticated and Moneyed LLCs . . .    12

    2.  As Officers of the Court with Professional
       Responsibilities of Competence, Plaintiffs'
       Counsel Should Have Known Better Than to
       Continue Their Action Against CLAUSEN
       in Blatant Violation of Section 362(a)(1) . . . . . . . . . . . .    12

     3.  The Public Interest Would Be Served
        by an Award of Punitives . . . . . . . . . . . . . . . . . . . . . . .    14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 3 of 17

## TABLE OF AUTHORITIES,

Pages

**Cases**

*BMW of North America, Inc. v. Gore,* 517 U.S. 559,
116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) . . . . . . . . . . . . . . . . . . . . . . .    14

*Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002) . . . . . . . . . . .    10

*In re Achterberg,* 573 B.R. 819 (Bankr. E.D. Cal. 2017). . . . . . . . . . . . . . . .    10

*In re Bloom,* 875 F.2d 224 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . .    8

*In re Carr*, No. 18-80386, 2019 WL 7840665
(Bankr. M.D.N.C. Nov. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

*In re Copeland,* 441 B.R. 352 (Bankr. W.D. Wash. 2010). . . . . . . . . . . . . . . .    11, 12

*In re Dawson,* 390 F.3d 1139 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . .    11, 12

*In re Gugliuzza,* 852 F.3d 884 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . .    12

*In re Kaufman,* 315 B.R. 858 (Bankr. N.D. Cal. 2004) . . . . . . . . . . . . . . . . .    14

*In re Moon Rushmore Loan Mgt. Servs., LLC*, No.
2:22-cv-01126-APG, 2023 WL 1779643
(D. Nev. Feb. 6, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

*In re Pinkstaff*, 974 F.2d 113 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . .    8

*In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015) (*en banc*). . . . . . . . . .    11

*In re Sundquist,* 566 B.R. 563 (Bankr. E.D. Cal. 2017). . . . . . . . . . . . . . . . .    15

*Lysyy v. Deutsche Bank Nat'l Trust Co.*,
No. C24-0062JLR, 2025 WL 563349
(W.D. Wash. Feb. 20, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11, 12

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 4 of 17

*Professional Seminar Consultants v. Sino*
    *American Tech. Exchange Council, Inc.,*
    727 F.2d 1470, 1473 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . .   14

*State Farm Mut. Automobile Ins. Co. v. Campbell,* 538
    U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) . . . . . . . . . . . . . .   14

**<u>Statutes</u>**

11 U.S.C. § 362(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

11 U.S.C. § 362(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

11 U.S.C. § 362(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

11 U.S.C. § 362(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

11 U.S.C. § 362(k)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## PRELIMINARY STATEMENT

The above-captioned action was brought by Plaintiffs Hammerless Tools, LLC, and Eight Eighteen, LLC (hereinafter collectively "PLAINTIFFS") against company Defendants Clausen, Inc., AT-TT LLC, and Lilac City, LLC (hereinafter collectively the "COMPANY DEFENDANTS"), and individual Defendant Jonathan Clausen ("CLAUSEN") (CLAUSEN hereinafter referred to collectively with the COMPANY DEFENDANTS as the "DEFENDANTS"). As shown in CLAUSEN's Motion to Vacate filed herewith (incorporated herein by reference), PLAINTIFFS and their counsel (Caleb A. Hatch, Esq. and Johanna R. Tomlinson, Esq. of Lee & Hayes, P.C.), by their actions described below (and in the accompanying motion), have willfully violated 11 U.S.C. § 362(a)(1). CLAUSEN has been injured by their unlawful conduct and moves the Court for an order establishing liability for an award of damages against all of them pursuant to 11 U.S.C. § 362(k).

## ARGUMENT

As shown in CLAUSEN's accompanying motion to vacate, this action against him should not have been filed or continued after it was filed on December 10, 2024, when on that date was active his Chapter 13 bankruptcy, a proceeding which had been previously commenced by its filing on October 24, 2024. Particularly after PLAINTIFFS and their counsel received notice on February 11, 2025 of CLAU-SEN'S active bankruptcy proceeding, their relentless pursuit of this action against

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 6 of 17

CLAUSEN blatantly and willfully violated 11 U.S.C. § 362(a)(1)'s automatic stay provision. As CLAUSEN has been injured by their willful violation of Section 362(a)(1), liability for his actual damages is mandated by 11 U.S.C. Section 362(k), and punitive damages are appropriate under the circumstances, as will be shown *infra*. CLAUSEN seeks entry of an Order establishing PLAINTIFFS' and their counsel's liability for damages, the amount of those damages to be determined later.

## I. REDRESS IS WARRANTED FOR THE SUBSTANTIAL INJURY CAUSED BY PLAINTIFFS PURSUING THIS ACTION FOR MORE THAN A YEAR IN VIOLATION OF THE BANKRUPTCY CODE

CLAUSEN seeks an order from the Court pursuant to 11 U.S.C. § 362(k)(1) holding PLAINTIFFS and their counsel liable for violating Section 362(a)(1) and awarding actual damages, costs, and attorneys' fees (including attorneys' fees and disbursements incurred in prosecuting his claim for damages), as well as punitive damages, all of those amounts to be proven later upon completion of CLAUSEN's efforts to vindicate his right to Section 362(a)(1)'s full protection.

Section 362(k)(1) is relatively short and has unquestionably been violated by PLAINTIFFS and their counsel:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1) (emphasis added).

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 7 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Use of the word "shall" here signifies that an award of damages for an injurious violation of Section 362(a)(1) is mandatory rather than precatory (as that is the way the word "shall" is usually construed). And the burden of showing the predicate of willfulness is easily met in this case. CLAUSEN has been force-marched by PLAINTIFFS' invalid action against him, repeatedly having to respond to motions that never should have been filed at all. As shown below, their liability is apparent and inescapable.

## A. PLAINTIFFS and Their Counsel Willfully Violated Section 362(a)(1), Which Mandates an Award of Damages Against Them

PLAINTIFFS and their counsel willfully violated Section 362(a)(1) when they (1) knew that its automatic stay was in effect and (2) intentionally took actions that constitute stay violations. They need not have had the specific intent to violate Section 362(a)(1); they need only have deliberately taken actions against CLAUSEN that violated the statute:

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that . . . actions which violated the stay were intentional. Whether the party believed in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*E.g., In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992), quoting *In re Bloom,* 875 F.2d 224, 227 (9th Cir. 1989).

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 8 of 17

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

**1.    PLAINTIFFS and Their Counsel Knew of the Automatic Stay Provided by 11 U.S.C. Section 362(a)(1) and the Active Bankruptcy Proceeding Filed on October 24, 2024**

PLAINTIFFS and their counsel cannot claim that they were unaware of Section 362(a)(1) or the active bankruptcy proceeding filed on October 24, 2024. ECF No. 40 is the key notice.  Even if they were unaware of the active bankruptcy proceeding when they filed their action against CLAUSEN on December 10, 2024, they had notice of it as of February 11, 2025 when they received ECF No. 40.

**2.    Even After PLAINTIFFS and Their Counsel Knew of the Active Bankruptcy and Section 362(a)(1), They Took Deliberate Steps Which Violate the Statute, and Failed to Discontinue Their Action Against CLAUSEN**

Even after PLAINTIFFS and their counsel obtained knowledge on February 11, 2025, of CLAUSEN's active bankruptcy proceeding, they failed to discontinue their action against CLAUSEN, even moving seven months later, on September 19, 2025, to lift the Court's improvidently-entered stay.  (ECF No. 50.)  The PLAINTIFFS failed to comply with Section 362(a)(1) by affirmatively seeking to unstay/restart a case against CLAUSEN that should have been dismissed by them (and the Court).  And because this action against CLAUSEN was void *ab initio,* PLAINTIFFS' violation of Section 362(a)(1) continued with every deliberate step they took after the stay was erroneously lifted, relentlessly filing motions in pursuit of their claims against CLAUSEN.  (*See* ECF Nos. 53-85.)

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 9 of 17

It is a violation of Section 362(a)(1) for a creditor who is aware of an antecedent, active bankruptcy proceeding not to take expeditious affirmative steps to discontinue a post-petition litigation against the debtor. Regardless of what the debtor does, the burden is on the creditor.

*See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1212, 1215-16 (9th Cir. 2002), affirming damages under 11 U.S.C. Section 362(h) (now (k)) against a creditor and its counsel jointly and severally for waiting 23 days after their awareness of the automatic stay to effect a discontinuance of post-petition litigation, and *In re Achterberg,* 573 B.R. 819, 830-31(Bankr. E.D. Cal. 2017), holding that "'the automatic stay requires a creditor . . . to remediate acts taken in ignorance of the stay,'" and "[t]he automatic stay imposes an affirmative duty to discontinue actions in violation of the stay." *In re Carr,* No. 18-80386, 2019 WL 7840665 (Bankr. M.D.N.C. Nov. 18, 2019), copy appended as Exhibit A, also makes clear that PLAINTIFFS and their counsel here were obliged to take expeditious action to dismiss their suit against CLAUSEN. 2019 WL 7840665 at *2 (creditor Jordan "is directed to take all action necessary to promptly dismiss the state court action . . . .").

PLAINTIFFS and their counsel have failed to ever do what was required to discontinue their action against CLAUSEN. Instead, they blithely moved the Court in September 2025 to unstay claims that they knew or should have known were void from the moment the Complaint was filed on December 10, 2024. (ECF No. 1.)

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 10 of 17

Instead of dismissing their action against CLAUSEN, they poured on the gas, culminating with their latest motion to try to throw him in jail (ECF No. 85).

### B. Section 362(k) Mandates Liability for Significant Actual Damages Incurred by CLAUSEN as a Result of PLAINTIFFS' and Their Counsel's Egregious Violations of Section 362(a)(1)

Section 362(k) provides for mandated recovery of "actual damages, including costs and attorney's fees." Unlike many fee-shifting statutes, attorney's fees are included within the definition of "actual damages." And in the Ninth Circuit, the attorney's fees provision includes additionally the fees expended to claim the damages. *In re Schwartz-Tallard*, 803 F.3d 1095, 1097-1101 (9th Cir. 2015) (*en banc*).

Substantial attorneys' fees are now being incurred to vacate what the PLAINTIFFS have unlawfully wrought in this Court in violation of Section 362(a)(1). Those fees and the resulting economic damage to CLAUSEN will continue to grow until PLAINTIFFS' ongoing violation of Section 362(a)(1) is discontinued.

CLAUSEN's actual damages include not only his economic damages, but also emotional damages. The latter can be established not only by medical evidence, but also by common-sense evidence of egregious conduct or simply circumstances making it obvious that a reasonable person would suffer significant emotional harm. *Lysyy v. Deutsche Bank Nat'l Trust Co.*, No. C24-0062JLR 2025 WL 563349 at *5-6 (W.D. Wash. Feb. 20, 2025), copy appended as Exhibit B, citing *In re Dawson, 390 F.3d 1139, 1149-50 (9th Cir. 2004), abrogated on other grounds* in *In re*

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 11 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*Gugliuzza,* 852 F.3d 884 (9th Cir. 2017); *In re Copeland,* 441 B.R. 352, 367 (Bankr. W.D. Wash. Aug. 16, 2010).  CLAUSEN has suffered severe emotional distress by having to face significant damages exposure, as well as the threat of being jailed.

### C.  PLAINTIFFS and Their Counsel Egregiously and Maliciously Violated Section 362(a)(1), Warranting an Award of Punitive Damages

Section 362(k) provides that "punitive damages" are included in a mandated recovery "in appropriate circumstances."  Those circumstances are present here, a case in which PLAINTIFFS and their counsel have displayed a reckless or callous disregard for the law and have egregiously violated Section 362(a)(1).

### 1.    PLAINTIFFs Are Sophisticated and Moneyed LLCs

Ability to pay and PLAINTIFFS' sophistication are clearly relevant as to punitive damages.  Here there are two business entities in manufacturing operation for years (one a decade) and structured as in-state and out-of-state LLCs.  Against CLAUSEN alone they have spent a fortune in legal fees, suing him twice.

### 2.  As Officers of the Court with Professional Responsibilities of Competence, Plaintiffs' Counsel Should Have Known Better Than to Continue Their Action Against CLAUSEN in Blatant Violation of Section 362(a)(1)

As Court officers, PLAINTIFFS' counsel had a responsibility of competence. Even if they were to get a "pass" for recklessly not doing a PACER search prior to filing the Complaint against CLAUSEN and failing to find CLAUSEN's pending bankruptcy – which they should not be given – they unquestionably should have

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

known better than to continue their action against CLAUSEN after receiving actual notice on February 11, 2025 of CLAUSEN's active bankruptcy proceeding.

Instead of dismissing the action against CLAUSEN, they continued litigating against him with devastating effects.  (*See* Declaration of Stephen L. Sulzer filed herewith at ¶ 29.)  PLAINTIFFS' and their counsel's approach checks all the boxes for recklessness, callousness, egregiousness, maliciousness, and reprehensibility. (*See id.* at ¶ 30.)  Their conduct is quite sufficient to warrant an award of punitive damages, jointly and severally, against all of them.

Even if PLAINTIFFS and their counsel did not learn of CLAUSEN's pending bankruptcy proceeding until February 11, 2025, they callously failed to expeditiously discontinue the suit against CLAUSEN as required by law.

Reliance upon CLAUSEN's counsel as to what to do or even upon the Court as to what was needed was, at a minimum, rank incompetence on the part of PLAINTIFFS' attorneys.  Worse, it seems that PLAINTIFFS and their counsel were using the cost of defending against their motions as a bludgeon to force CLAUSEN to default.

The duty of determining what to do to remediate a self-created violation of Section 362(a)(1) is not upon anyone other than the PLAINTIFFS and their counsel. What they were required to do was simple:  Discontinue expeditiously their suit against CLAUSEN.

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 13 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

### 3. The Public Interest Would Be Served by an Award of Punitives

Section 362(k)'s provision allowing an award of punitive damages in appropriate circumstances does not specify the circumstances that are appropriate, but general case law regarding punitive damages instructs that factors to be considered are: (i) the nature of the acts; (ii) the amount of compensatory damages awarded; and (iii) the malefactor's wealth/resources. *Professional Seminar Consultants v. Sino American Tech. Exchange Council, Inc.,* 727 F.2d 1470, 1473 (9th Cir. 1984); *In re Kaufman,* 315 B.R. 858, 869 (Bankr. N.D. Cal. 2004). In *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809 (1996), the Supreme Court indicated that most important is the degree of reprehensibility of the malefactor's conduct.

The Supreme Court has made clear that the purposes of punitive damages in civil cases are to punish the miscreants and deter similar egregious misconduct by others. *BMW of North America,* 517 U.S. at 575, 116 S.Ct. at 1599; *State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S.Ct. 1513, 1519-20, 155 L.Ed.2d 585 (2003).

In the case at bar, accomplishing those objectives will involve deterring similar violations of Section 362(a)(1), to protect the especially vulnerable class of persons such as CLAUSEN who seek relief in the bankruptcy courts. *See, e.g., Achterberg*, 573 B.R. at 852 (even a small lender should pay punitive damages in

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Page 14 of 17

the modest amount of $15,000.00, "necessary to deter . . . from continuing to engage in such conduct, ignoring its obligations under the automatic stay, and make it clear that there is no economic incentive to violate the stay and not correct a continuing violation of the automatic stay."); *In re Moon Rushmore Loan Mgt. Servs., LLC*, No. 2:22-cv-01126-APG, 2023 WL 1779643 at *10-13 (D. Nev. Feb. 6, 2023) (copy appended as Exhibit C) (where (as here) a debtor was financially vulnerable and the misconduct was repeated, that was enough for the District Court to award punitive damages in excess of $128,000), copy appended as Exhibit H; *In re Sundquist,* 566 B.R. 563, 610 (Bankr. E.D. Cal. 2017) (observing "[i]t is settled that, in addition to extra recompense . . . , punitive damages serve legitimate governmental and societal interests in punishing unlawful conduct and deterring its repetition" and awarding $45 million in punitives against giant bank).

## CONCLUSION

For the foregoing reasons, Defendant CLAUSEN'S motion should be granted and an order entered establishing the liability of PLAINTIFFS and their counsel for actual and punitive damages to CLAUSEN pursuant to 11 U.S.C. § 362(k), with the amount of such damages to be determined subsequently.

Dated: March 30, 2026              Respectfully submitted,

By:    /s/ *Stephen L. Sulzer*
Stephen L. Sulzer
(appearing *pro hac vice*)

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 15 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

Douglas R. Dick
ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,
Clausen, Inc., AR-TT LLC, and Lilac City,
LLC*

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 16 of 17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of March, 2026, I caused to be served a true and correct copy of the foregoing *Defendant Jonathan Clausen's Motion to Establish Liability for Damages* to be electronically filed with the Clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. This was also served as noted below:

Caleb Hatch
Johanna R. Tomlinson
LEE & HAYES, P.C.
601 W. Riverside Ave, Suite 1400
Spokane, WA 99201
Email:  caleb.hatch@leehayes.com

| | |
|---|---|
| ☐ | VIA HAND DELIVERY |
| ☐ | VIA U.S. MAIL |
| ☐ | VIA OVERNIGHT MAIL |
| ☐ | VIA FACSIMILE |
| ☒ | VIA ECF |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 30th day of March 2026.

_____
**Brendan Petro,** Legal Assistant
WHC Attorneys, PLLC

Defendant Jonathan Clausen's Motion to
Establish Liability for Damages
Case No. 2:24-CV-00413-SAB

Page 17 of 17

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# EXHIBIT A

2019 WL 7840665
Only the Westlaw citation is currently available.
United States Bankruptcy Court, M.D. North Carolina,
Durham Division.

## IN RE: Lent C. CARR, II and Deltarina V. Carr, Debtors.

Case No.


**18**
-
**80386**

Signed November 18, 2019

### Attorneys and Law Firms

Joseph A. Bledsoe, III, Raleigh, NC, Erich M. Fabricius, Fabricius & Fabricius, PLLC, Knightdale, NC, for Debtors.

### ORDER

### Granting Debtors' Motion To Enforce Automatic Stay

LENA MANSORI JAMES, UNITED STATES BANKRUPTCY JUDGE

\*1 THIS MATTER came before the Court on Lent and Deltarina **Carr's** (collectively, the "Debtors") motion to enforce the automatic stay (Docket No. 91, the "Motion"), filed on October 14, 2019. The Court scheduled the Debtors' Motion for hearing on October 29, 2019, at which Erich Fabricius, Esq., appeared on behalf of the Debtors, and Benjamin Lovell, Esq., appeared on behalf of the Chapter 13 Trustee. The Creditor did not file a response to the Debtors' Motion and did not appear at the scheduled hearing.

In the Motion, the Debtors report that Jannetta Jordan (the "Creditor") filed a state-court complaint on April 4, 2018,

which was 15 days after the Debtors filed this chapter 13 case on March 20, 2018. *See Jannetta Jordan v. Lent Carr*, No. 18 CVS 239 (N.C. Super. Apr. 4, 2018). The Creditor's state-court complaint alleges the Debtors misrepresented themselves and unlawfully obtained title to certain real property. Also on April 4, 2018, in connection with the complaint, the Creditor filed a notice of lis pendens, giving potential purchasers of those properties notice of the pending suit. The Debtors argue the Creditor took these **actions** in direct violation of the automatic stay and request the Court enter an order either declaring the lis pendens void *ab initio* or requiring the Creditor to cancel the lis pendens.

At the hearing, the Debtors provided time-stamped copies of the state-court complaint (Ex. 1), and the notice of lis pendens (Ex. 2), both of which reflect a filing date of April 4, 2018. Debtor Lent **Carr** testified regarding the Creditor's filing of the state-court complaint and the shadow the existing lis pendens presently casts over potential sales of estate property (audio available at Docket No. 95). **Carr** indicated that the sale approved by the Court on July 5, 2019 (Docket No. 77) had fallen through, in part, because of the Creditor's alleged communications and "threats" to the potential buyer.

The Debtors request only that the Court declare the lis pendens void *ab initio* or, in the alternative, issue an order requiring the Creditor to cancel the lis pendens by a date certain (Docket No. 91). Although the Debtors did not specifically request a finding that the Creditor's filing of the complaint was violation of the stay, the Court has the power to raise the issue sua sponte without a motion from a party in interest. *In re Jorge*, 568 B.R. 25, 37 (Bankr. N.D. Ohio 2017); *see also Walker v. Got'cha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679, 692–93 (Bankr. M.D. Ga. 2016); *222 Liberty Assoc. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assoc.)*, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990) (collecting cases).

The Motion and exhibits demonstrate clearly that the Creditor filed her complaint and the accompanying lis pendens after the Debtors filed for bankruptcy relief, and the Creditor does not contest that fact. As such, the Court finds the Creditor's state-court filings to be violations of the automatic stay provided in 11 U.S.C. § 362(a)(1).' The "automatic stay represents 'one of the fundamental debtor protections provided by the bankruptcy laws.' " *United States v. Gold (In re Avis)*, 178 F.3d 718, 721 (4th Cir. 1999) (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). While the Fourth Circuit has not directly answered the question of whether **actions** in violation of an automatic stay are void or

merely voidable, *see Winters v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996) (noting the circuit split on the question but declining to address it), the leading bankruptcy treatise, 3 Collier on Bankruptcy ¶ 362.12 (16th ed. 2019) (noting that "[m]ost courts have held that **actions** taken in violation of the stay are void and without effect"), as well as a majority of the bankruptcy courts within this Circuit to have considered the question, have concluded that **actions** in violation of the automatic stay are void, rather than voidable.[2]

*2 While the Court does not, as part of this Order, address the alleged communications between the Creditor and the potential purchaser of the Debtors' property, the Creditor is hereby on notice that any future attempts to interfere with prospective sales, or further violations of the automatic stay more broadly, are likely to warrant sanctions.[3]

For the reasons stated herein, IT IS HEREBY ORDERED

that Creditor Jannetta Jordan's state-court complaint is void *ab initio* as a violation of 11 U.S.C. § 362(a) and Ms. Jordan is directed to take all **action** necessary to promptly dismiss the state-court **action** pending in the Superior Court for Hoke County, North Carolina. *Jannetta Jordan v. Lent Carr*, No. 18 CVS 239 (N.C. Super. Apr. 4, 2018).

IT IS FURTHER ORDERED that the notice of lis pendens filed by Jannetta Jordan against the Debtors' property is void and of no effect.

**SO ORDERED.**

**All Citations**

Not Reported in B.R. Rptr., 2019 WL 7840665

Footnotes

1    While the Fourth Circuit has previously held a creditor's amendment to an existing lis pendens filed *before* a debtor's bankruptcy, is not a violation of the automatic stay, *see In re Knightsbridge Dev. Co.*, 884 F.2d 145, 148 (4th Cir. 1989), the Creditor here filed both her complaint and the lis pendens *after* the Debtors' chapter 13 bankruptcy filing. As such, this case more closely aligns with *In re Byrd*, in which the bankruptcy court held the creditors violated the automatic stay through their post-petition filing of a state-court complaint and request to impose a constructive trust, which the court analogized to a notice of lis pendens. *In re Byrd*, No. 04-35620, 2007 WL 1485441 (Bankr. D. Md. May 18, 2007), *aff'd sub nom Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008), *aff'd* 331 Fed. Appx. 212 (4th Cir. 2009).

2    *See, e.g., Valenti v. JP Morgan Chase Bank, N.A. (In re Valenti)*, No. 13-01350, 2014 WL 4980039, at *3 (Bankr. E.D.N.C. Oct. 6, 2014) (finding "overwhelming precedent" that an **act** taken in violation of the automatic stay is void, rather than voidable); *In re NCVAMD, Inc.*, No. 10-03098-8, 2013 WL 6860816, at *3 (Bankr. E.D.N.C. Dec. 31, 2013) (finding government agency's commencement of a condemnation **action** void ab initio); *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 283 (Bankr. D.S.C. 2009) (noting that, while the Fourth Circuit has not ruled on the issue, courts in the district "have consistently held that **actions** taken in violation of the automatic stay are void ab initio and thus not legally effective."); *Lykins v. Bottalico (In re Lykins)*, No. 92-14689-RGM, 2006 Bankr. LEXIS 2817, at **6–8 (Bankr. E.D. Va. Jan. 30, 2006) (declining to resolve the question, but proceeding to retroactively annul the automatic stay to address a state-court complaint that had been rendered void *ab initio*); *McGuffin v. Barman (In re BHB Enters., LLC)*, No. 97-80201, 1997 WL 33344249, at *4 (Bankr. D.S.C. Aug. 27, 1997) (holding the filing of a state court complaint and entry of a state-court order "were done in violation of the automatic stay and are therefore void and without effect."); *but see Khozai v. Resolution Trust Corp.*, 177 B.R. 524, 526–27 (E.D. Va. 1995) (finding persuasive those cases concluding **acts** taken in violation of the stay are voidable).

3    To date, the Debtors have adopted an inexplicably laissez-faire approach to the Creditor's **actions**, declining to request compensation for damages or sanctions.

**In re Carr, Not Reported in B.R. Rptr. (2019)**

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

*EXHIBIT B*

2025 WL 563349
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Tatyana **LYSYY**, et al., Plaintiffs,
v.
**DEUTSCHE BANK** NATIONAL **TRUST** COMPANY, et al., Defendants.

CASE NO. **C24**
-
**0062JLR**
|
Signed February 20, 2025

**Attorneys and Law Firms**

Richard Lamar Pope, Jr., Lake Hills Legal Services PC, Bellevue, WA, for Plaintiffs.

Midori R. Sagara, Buchalter PC, Seattle, WA, for Defendants **Deutsche Bank** National **Trust** Company, Impac Secured Assets Corp 2005-62, Mortgage Passthrough Certificates Series 2007-1, Select Portfolio Servicing Inc, Safeguard Properties LLC, Residential Real Estate Review Inc.

Robert William McDonald, Quality Loan Service Corp., Seattle, WA, for Defendant Quality Loan Service of Washington.

ORDER

JAMES L. ROBART, United States District Judge

**I. INTRODUCTION**

*1 Before the court is the second motion for summary judgment filed by Defendants **Deutsche Bank** National **Trust** Company, as Trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 (the "**Trust**"); Select Portfolio Servicing, Inc. ("SPS"); Safeguard Properties, LLC ("Safeguard"); and Residential RealEstate Review, Inc. ("RRR") (together, "Defendants"). (MSJ (Dkt. # 88); Reply (Dkt. # 98).) Plaintiffs Tatyana **Lysyy** and Vasiliy **Lysyy** ("Plaintiffs") oppose the motion. (Resp. (Dkt. # 97).[1]) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[2] the court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

**II. BACKGROUND**

The court set forth the factual and procedural background of this case in detail in its April 3, 2024 order denying Plaintiffs' motion to remand and granting in part Defendants' first motion for summary judgment. (See 4/3/24 Order (Dkt. # 54) at 3-10.) The court assumes that the reader is familiar with that order and focuses here on the background relevant to the motion now before the court.

**A. Factual Background**

Plaintiffs purchased the home in Auburn, Washington, that is at the center of this case (the "Property") in fall 2004. (See 11/26/24 Sagara Decl. (Dkt. # 89) ¶ 3, Ex. A ("T. **Lysyy** Dep.") at 16:11-13.) On November 9, 2006, Ms. **Lysyy** executed a promissory note that obligated her to make monthly payments on a $249,500 loan starting on January 1, 2007, and ending on December 1, 2036 (the "Loan"). (Pittman Decl. (Dkt. # 18) ¶ 7, Ex. A.) The note was secured by a deed of **trust** that encumbered the Property. (Id. ¶ 8, Ex. B.) Plaintiffs have made no payments on the Loan since April 1, 2010. (Id. ¶ 10.)

On September 15, 2010, Bank of America, then the servicer of the Loan, notified Ms. **Lysyy** of its intent to accelerate the Loan. (Resp. at 13; 1st T. **Lysyy** Decl. (Dkt. # 43) ¶ 4, Ex. 1 ("Notice of Intent to Accelerate").) The Notice of Intent to Accelerate warned Ms. **Lysyy** that if she did not cure her default "on or before October 15, 2010, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full[.]" (Notice of Intent to Accelerate at 1

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1

(emphasis in original).) Plaintiffs did not make any payments on the Loan after receiving the notice. (*See* 1st T. Lysyy Decl. ¶ 4.)

The deed of trust encumbering the Property was assigned to the Trust on September 14, 2011. (Pittman Decl. ¶ 9, Ex. C.) In 2012 or 2013, Plaintiffs moved from the Property to a home in Fife, Washington, where they still reside. (T. Lysyy Dep. at 10:16-23, 18:3-6.) The Property has remained vacant since Plaintiffs moved to Fife. (*See id.* at 18:8-10, 21:2-10.)

*2 On August 7, 2015, Bank of America issued a notice of default, and on September 25, 2015, the foreclosure trustee recorded the first Notice of Trustee's Sale on the Property. (1st T. Lysyy Decl. ¶ 5, Ex. 2.) On November 16, 2016, servicing of the loan was transferred from Bank of America to SPS. (*Id.* ¶ 6, Ex. 3.)

On Friday, October 11, 2019, the Trust purchased the Property in a trustee's sale. (Pittman Decl. ¶ 12.) Approximately one hour before the trustee's sale, however, Ms. Lysyy filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Washington, which triggered an automatic stay of the foreclosure proceedings. (*Id.*; *see* 11/26/24 Sagara Decl. ¶ 9, Ex. E (bankruptcy case docket)); 11 U.S.C. § 362(a). According to Defendants, neither the trustee nor SPS received notice of the bankruptcy filing before the trustee's sale took place. (Pittman Decl. ¶ 12.) After the sale, SPS referred the Property to its Real Estate Owned ("REO") Department for further handling. (*Id.*)

On Saturday, October 12, 2019, the Bankruptcy Noticing Center sent notice of Ms. Lysyy's filing to SPS via the email address jennifer.chacon@spservicing.com. (12/29/23 Pope Decl. (Dkt. # 2-2) ¶ 11, Ex. 7.) SPS asserts, however, that its Bankruptcy Department did not receive this notice because Ms. Chacon worked in SPS's HR Training Department and "had no responsibilities for handling bankruptcy notices." (Pittman Decl. ¶ 13.)

On Monday, October 14, 2019, the trustee sent notice of Ms. Lysyy's bankruptcy filing to SPS's Foreclosure Department. (Pittman Decl. ¶ 14.) Then, on October 15, 2019, SPS's Bankruptcy Department received notice from one of its vendors that Ms. Lysyy had filed for bankruptcy. (*Id.* ¶ 15.) SPS "immediately" asked its local bankruptcy counsel, McCarthy Holthus, LLP ("McCarthy Holthus"), to "determine what impact, if any, [Ms. Lysyy's bankruptcy filing] had on the Trustee's Sale." (*Id.*)

Meanwhile, SPS's REO vendor, RRR, automatically sent a request to Safeguard, a provider of property preservation services, "to inspect the Property to determine whether the Property was occupied or vacant." (*Id.* ¶ 16; *see also* Meyer Decl. (Dkt. # 19) ¶¶ 3, 6.) On October 17, 2019, Safeguard "confirmed that the Property was vacant and secured the Property ... in order to avoid waste or damage to the Property." (Pittman Decl. ¶ 16; Meyer Decl. ¶ 6; 1st V. Lysyy Decl. (Dkt. # 44) ¶ 6, Ex. 1 (photos Mr. Lysyy took in October 2019, showing a lockbox on the front door and a "No Trespassing" sign in the window).) That same day, SPS notified Plaintiffs that it had initiated eviction proceedings on the Property. (1st T. Lysyy Decl. ¶ 8³, Ex. 5.)

On November 1, 2019, McCarthy Holthus confirmed that the October 11, 2019 trustee's sale was void due to Ms. Lysyy's bankruptcy filing. (Pittman Decl. ¶ 17.) SPS "immediately put a hold on all REO activity and removed the Property out of REO status." (*Id.*) No additional action was necessary to rescind the trustee's sale. (*Id.* ¶ 18.) Since November 1, 2019, according to SPS, "no further REO activity has occurred" at the Property; "SPS and its vendors have not maintained possession or control over the Property"; and SPS has not "taken any action or instructed its vendors to take action in which it knowingly violated the automatic bankruptcy stay." (*Id.* ¶ 19; *see also* Meyer Decl. ¶ 8 ("By the end of October 2019, Safeguard did not receive any work order requests from RRR to complete any interior work at the Property.").) Plaintiffs assert, however, that correspondence from McCarthy Holthus and photographs taken by their attorney demonstrate that Defendants maintained possession or control over the Property from October 17, 2019, until at least May 2, 2022, if not later. (*See* 12/29/23 Pope Decl. ¶ 13, Ex. 8 at 68⁴ (May 2, 2022 email from McCarthy Holthus providing the code to a lockbox at the Property); 2/26/24 Pope Decl. (Dkt. # 35) ¶ 4⁵, Ex. 1 (photos Plaintiffs' attorney took on December 31, 2023).)

*3 On February 18, 2020, the bankruptcy court dismissed Ms. Lysyy's Chapter 13 petition. (*See* 11/26/24 Sagara Decl. ¶ 9, Ex. E.)

**B. Procedural Background**

Plaintiffs filed this action *pro se* in King County Superior Court on July 20, 2022, (*See* Compl. (Dkt. # 1-2).) They amended the complaint on July 29, 2022. (*See* Am. Compl. (Dkt. # 1-3).) Counsel appeared on behalf of Plaintiffs in March 2023. (*See* 2/26/24 Pope Decl. ¶ 5.)

Defendants removed the action to this court on January 12, 2024. (Not. of Removal (Dkt. # 1).)

On April 3, 2024, the court granted in part Defendants' motion for summary judgment and dismissed with prejudice Plaintiffs' claims for civil conspiracy, trespass, theft, conversion, wrongful foreclosure, outrage, and violations of the Washington Deed of Trust Act, the Washington Consumer Protection Act ("CPA"), the Washington Foreclosure Fairness Act, and the federal Fair Debt Collection Practices Act. (4/3/24 Order at 18-30.) The court also ordered Plaintiffs to show cause why the court should not dismiss their due process claim for failure to name a state actor and their claim for violation of the automatic bankruptcy stay for failure to "produce admissible evidence that they suffered damage due to ... Defendants' actions." (Id. at 30-32.) Shortly thereafter, Plaintiffs moved the court to reconsider its decision to grant summary judgment in Defendants' favor on the trespass and CPA claims. (See MFR (Dkt. # 31).)

On May 28, 2024, the court denied Plaintiffs' motion for reconsideration, dismissed Plaintiffs' due process claim, and allowed Plaintiffs' claim for violation of the automatic bankruptcy stay to proceed. (See generally 5/28/24 Order (Dkt. # 67).) In relevant part, the court "agree[d] with Plaintiffs that they may rely on Mr. Lysyy's testimony as evidence of injury and damages" and observed that there was "ample opportunity for Plaintiffs to continue to develop evidence to support their claim" because the parties had agreed to keep discovery open on the remaining claims until at least November 4, 2024. (Id. at 14 (citing JSR (Dkt. # 66) at 2-3).) The parties have not, however, presented any evidence that Plaintiffs conducted additional discovery regarding damages since the court issued that order.

On July 18, 2024, Plaintiffs' attorney moved to withdraw as counsel. (Mot. to Withdraw (Dkt. # 70).) The court granted the motion on August 6, 2024, and advised Plaintiffs that they would be proceeding pro se from that point forward. (8/6/24 Order (Dkt. # 72).)

On August 16, 2024, Defendants moved to compel Plaintiffs to appear for their depositions and sought sanctions because Plaintiffs failed to attend their depositions on July 18, 2024—the date Plaintiffs' attorney moved to withdraw. (MTC (Dkt. # 73); see 8/16/24 Order (Dkt. # 75) (ordering Plaintiffs to show cause why the court should not grant Defendants' motion).) On September 25, 2024, the court granted the motion to compel and awarded Defendants $4,500 in attorneys' fees and costs they incurred as a result of the cancelled deposition. (9/25/24 Order (Dkt. # 83).) Defendants took

Plaintiffs' depositions on October 11, 2024. (See 11/26/24 Sagara Decl. ¶¶ 3-4.⁶)

*4 Defendants filed their second motion for summary judgment on November 26, 2024. (MSJ.) They ask the court to dismiss Plaintiffs' remaining claims for violation of the automatic bankruptcy stay, invasion of private affairs, quiet title, declaratory relief, and injunction. (See generally id.) Plaintiffs' former counsel reappeared in the case and filed a response on behalf of Plaintiffs. (NOA (Dkt. # 96); Resp.) Defendants filed a timely reply. (Reply.) The motion is now ripe for decision.

## III. ANALYSIS

Below, the court sets forth the standard of review, then considers the motion.

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Jones v. Williams, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000)). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 250. "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The party opposing the motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A "party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also* Local Rules W.D. Wash. LCR 10(e)(6) ("Citations to documents already in the record ... must include a citation to the docket number and the page number[.]").

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott*, 550 U.S. at 378 (internal quotations omitted). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 587).

## B. Violation of Automatic Bankruptcy Stay

When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on actions against the debtor to collect pre-petition debts. 11 U.S.C. § 362(a). If a debtor is injured by a creditor's willful violation of the stay, 11 U.S.C. § 362(k) "makes an award of actual damages and attorney's fees mandatory, and grants ... courts the discretion to impose punitive damages in appropriate cases." *In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir. 2015); 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."). The debtor must prove a causal relationship between the stay violation and the injury. *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004), *abrogation on other grounds recognized in In re Gugliuzza*, 852 F.3d 884, 896-97 (9th Cir. 2017).

*5 Defendants contend that the court must dismiss Plaintiffs' § 362(k) claim because Plaintiffs' deposition testimony precludes them from showing that they suffered actual damages caused by Defendants' entry onto the Property after the October 11, 2019 trustee's sale. Plaintiffs counter that they can prove actual damages caused by the bankruptcy stay and that they are also entitled to punitive damages. Below, the court considers whether Plaintiffs have established a genuine dispute of material fact as to emotional distress damages, costs and attorneys' fees, other actual damages, and punitive damages.

### 1. Emotional Distress Damages

To recover damages for emotional distress under § 362(k), the debtor must "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *In re Dawson*, 390 F.3d at 1149.

Defendants assert that Plaintiffs cannot show that they suffered emotional distress damages caused by any violation of the bankruptcy stay. (MSJ at 11.) The court disagrees. First, Defendants argue that the court should disregard Plaintiffs' second declarations because they contradict Plaintiffs' deposition testimony and are thus "sham" affidavits. (Reply at 5-6.) In general, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This rule, however, pertains only to "sham" testimony "that flatly contradicts earlier testimony in an attempt to create an issue of fact and avoid summary judgment." *Id.* at 267 (cleaned up). "[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). Here, the court finds no "clear and unambiguous" inconsistency between Plaintiffs' deposition testimony and their declarations. Plaintiffs testified in their depositions that they did not *seek treatment* for anxiety or depression since 2019. (T. Lysyy Dep. at 42:12-20; V. Lysyy Dep. at 68:18-24, 70:1-3.) Then, in their second declarations, Plaintiffs state that they have "suffered emotional distress and mental anguish due to Defendants taking over [the Property][.]" (2d T. Lysyy Decl. (Dkt. # 94) ¶ 2; 2d V. Lysyy Decl. (Dkt. # 95) ¶ 2.) Plaintiffs do not state in their declarations that they in fact sought treatment for emotional distress or mental anguish; and Defendants do not identify any deposition testimony in which Plaintiffs denied having suffered emotional distress altogether. (*See generally* 2d T. Lysyy Decl.; 2d V. Lysyy Decl.; Reply.) Because Plaintiffs' second declarations do not "flatly contradict[ ]" their prior deposition testimony, *Kennedy*, 952 F.2d at 267, the court disagrees that they are "sham affidavits" that must be disregarded at summary judgment.

Second, Defendants argue that Plaintiffs cannot establish emotional distress damages because they have produced no medical evidence, sought no medical treatment, and described no "physical manifestations of mental

anguish[.]" (Reply at 7.) The Ninth Circuit is clear, however, that emotional distress damages may be "clearly establish[ed]" through (1) corroborating medical evidence; (2) testimony of family members, friends, or co-workers regarding "manifestations of mental anguish[;]" or (3) common-sense evidence of egregious conduct. *In re Dawson*, 390 F.3d at 1149-50. Thus, a lack of medical evidence or evidence of physical manifestations of distress does not foreclose Plaintiffs' claim for emotional distress damages.

*6 Finally, Defendants contend that Plaintiffs cannot establish that the alleged stay violation proximately caused their emotional distress. (Reply at 6-7.) A reasonable factfinder could conclude, however, that Defendants' actions of proceeding with the trustee's sale, threatening Plaintiffs with eviction nearly a week after the bankruptcy stay went into effect, and padlocking the Property constituted "circumstances that make it obvious that a reasonable person would suffer significant emotional harm" as required to support an award of emotional distress damages. *In re Copeland*, 441 B.R. 352, 367 (Bankr. W.D. Wash. Aug. 16, 2010). Thus, the court denies Defendants' motion for summary judgment regarding emotional distress damages.

### 2. Costs and Attorneys' Fees

"Actual damages" recoverable for a violation of the automatic bankruptcy stay include reasonable costs and attorneys' fees. 18 U.S.C. § 362(k). Defendants argue that Plaintiffs cannot show that they incurred attorneys' fees caused by Defendants' alleged violation of the bankruptcy stay because "[a]ttorney fees incurred in an attempt to collect damages once the stay violation has ended are not recoverable." (Mot. at 10 (citing *In re Snowden*, 769 F.3d 651, 658 (9th Cir. 2014)).) In 2015, however, the Ninth Circuit overruled earlier cases that had limited attorneys' fees under § 362(k) to those incurred "to end the stay violation itself" and held that the debtor may also recover as "actual damages" the attorneys' fees reasonably incurred in prosecuting an action for damages caused by the stay violation. *In re Schwartz-Tallard*, 803 F.3d 1095, 1097 (9th Cir. 2015) (en banc). Because Defendants raise no other challenge to Plaintiffs' entitlement to costs and attorneys' fees under § 362(k) (*see generally* Mot.; Reply), the court denies their motion for summary judgment on Plaintiffs' claim for costs and attorneys' fees incurred as a result of the bankruptcy stay violation.

### 3. Other Actual Damages

Defendants assert that Plaintiffs cannot prove that they suffered any other actual damages caused by any violation of the automatic bankruptcy stay. The court considers each type of damages below.

#### a. Lost Ability to Use, Rent, or Sell the Property

First, Defendants contend that Plaintiffs cannot prove that any violation of the bankruptcy stay prevented them from using, renting out, or selling the Property. The court agrees with Defendants. Plaintiffs testified that they have never tried to rent out or sell the Property, even though it has been vacant since Plaintiffs moved away in 2012 or 2013. (Mot. at 10 (citing T. Lysyy Dep. at 10:16-11:3, 18:8-20, 21:3-11-167; V. Lysyy Dep. at 13:7-16, 26:3-5, 35:12-15, 37:2-3, 41:24-42.2).) In addition, Mr. Lysyy testified that Plaintiffs could not rent or sell the Property because they were in debt and the Property was in foreclosure; he did not attribute their inability to rent or sell the Property to Defendants' violation of the bankruptcy stay. (Mot. at 6-7; *see* V. Lysyy Dep. at 35:3-15; 36:6-24; *see also id.* at 65:14-24 (stating he cannot do anything with the Property "[b]ecause there is a huge debt on me"), 66:4-68:10 (discussing Defendants' failure to modify the loan or forgive the debt on the Property).) Ms. Lysyy, for her part, could not identify any injury or damages that resulted from Defendants padlocking the Property in 2019. (*See* Mot. at 6 (citing T. Lysyy Dep. at 38:9-12, 39:7-24, 42:4-11).)

Plaintiffs' arguments in response are unavailing. First, Plaintiffs assert, relying on Washington trespass law, that they are entitled to damages for loss of use of the Property, regardless of whether they suffered actual harm. (Resp. at 6-7; *see also id.* at 9 ("Plaintiffs are still entitled to maintain trespass claims for nominal damages and punitive damages without proof of ANY actual damages").) By its terms, however, § 362(k) requires proof of "actual damages." 11 U.S.C. § 362(k). Second, Plaintiffs protest that the court should not "assume" that they would have been unable to repair the Property because they lacked the financial means to do so. (Resp. at 10.) The court has done no such thing. Rather, the court is holding Plaintiffs to their legal burden to identify evidence of damages caused by Defendants' alleged violation of the bankruptcy stay. *See Celotex*, 477 U.S. at 324 (placing the burden on the nonmovant to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor). Finally, Plaintiffs argue that the debt they owe has "increased by accrued interest, property taxes, insurance premiums and other escrow charges" since October 2019. (Resp. at 10

Lysyy v. Deutsche Bank National Trust Company, Slip Copy (2025)

(quoting 1st V. Lysyy Decl. ¶ 14).) Again, however, Plaintiffs point to no evidence that they incurred that additional debt *because of* the bankruptcy stay violation. (*See generally id.*) Instead, the only competent evidence in the record shows that those expenses have continued to accrue because Plaintiffs have made no payments on the Loan since 2010. (*See, e.g.,* 1st T. Lysyy Decl. ¶ 4.) Accordingly, the court grants Defendants' motion for summary judgment on Plaintiffs' claims for actual damages arising from their alleged inability to rent out or sell the Property.[7]

### b. Personal Property

*7 Next, Defendants argue that Plaintiffs cannot show that they suffered damage or loss to their personal property resulting from any bankruptcy stay violation. (Mot. at 5, 9.) Defendants point to Plaintiffs' deposition testimony, in which they were unable to identify any personal property that they left behind when they moved away from the Property in 2012 or 2013. (Mot. at 9 (citing T. Lysyy Dep. at 39:7-42, 24:1-10; V. Lysyy Dep. at 47:21-48:25, 65:14-68:3, 50:7-12).) Defendants also note that Plaintiffs have not produced any documents substantiating the loss of or damage to any personal property. (*See* 11/26/24 Sagara Decl. ¶ 5 (stating that Plaintiffs have not responded to Defendants' interrogatories or produced documents regarding personal property losses).) Plaintiffs do not respond to this argument, let alone direct the court to evidence of personal property that was stolen, lost, or damaged as a result of Defendants' conduct. (*See generally* Resp.) Therefore, the court grants summary judgment in Defendants' favor on Plaintiffs' claim for actual damages arising from loss or damage to their personal property.

### c. Locksmith Expenses

Defendants do not respond to Plaintiffs' argument that they will incur actual damages to pay a locksmith to remove the lockbox Defendants placed on the Property after the trustee's sale in October 2019 and to re-key their door locks. (Resp. at 8, 11 (citing 2d V. Lysyy Decl. ¶ 4).) Plaintiffs may, therefore, pursue a claim for locksmith expenses as "actual damages" under § 362(k).

### 4. Punitive Damages

Finally, Defendants argue that Plaintiffs cannot recover punitive damages because they cannot show that they suffered actual damages. (Mot. at 11) (citing *In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995) ("[N]o punitive damages should be awarded in the absence of actual damages[.]").) The court denies Defendants' motion for summary judgment on Plaintiffs' claim for punitive damages because, as discussed above, Plaintiffs have shown a genuine dispute of material fact as to whether they suffered emotional distress or incurred attorneys' fees as a result of the stay violation.

In sum, the court concludes that Plaintiffs have demonstrated a genuine issue of material fact as to whether they suffered emotional distress damages and incurred recoverable attorneys' fees under § 362(k). Therefore, the court denies Defendants' motion for summary judgment on Plaintiffs' claim for violation of the automatic bankruptcy stay.

### C. Failure to Modify or Forgive

Defendants assert that Mr. Lysyy's deposition testimony suggests that he believes Plaintiffs' damages resulted from Defendants' failure to modify their loan or forgive their debt. (Mot. at 12 (citing V. Lysyy Dep. at 65:14-68:3).) They ask the court not to entertain unpleaded claims for failure to modify the loan or forgive the debt. (*Id.* at 13.) Plaintiffs agree that they are not pursuing such claims in this case. (Resp. at 11-12.) Therefore, the court grants Defendants' request and does not consider any claims for failure to modify the loan or forgive the debt.

### D. Invasion of Private Affairs

Defendants argue that Plaintiffs' claim for "invasion of private affairs and residence" must be dismissed because the Washington State Constitution's prohibition against invasion of private affairs applies only to intrusion by the government and none of the Defendants are governmental entities. (Mot. at 14; Wash. Const. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."); *Robinson v. City of Seattle*, 10 P.3d 452, 459 (Wash. Ct. App. 2000) ("Only governmental intrusion into individual privacy falls within this prohibition."). Plaintiffs respond that there are "several ways of committing the invasion of privacy tort, all of which can be brought against private individuals or

entities[,]" including intrusion into seclusion; appropriation of name, personality, or likeness; public disclosure of private facts; and placing another in a false light. (Resp. at 12 (citations omitted).) Plaintiffs do not, however, specify which of these claims, if any, they are pursuing in this action. (*Id.*)

*8 In their sixth cause of action, titled "Invasion of Private Affairs and Residence," Plaintiffs allege that (1) "Defendants ... entered Plaintiffs['] property and home and disposed of Plaintiff's personal belongings without permission or authorization[;]" (2) Plaintiffs "had a legitimate and reasonable expectation of privacy in their home and with regard to their personal belongings which were located therein[;]" (3) "Defendants engaged in an unlawful invasion of [Plaintiffs'] private affairs and their home by taking exclusive possession of the real property and the home's contents[;]" and (4) Plaintiffs "were harmed by the above acts of intrusion into their private affairs[.]" (Am. Compl. ¶¶ 6.2-6.6.) The court agrees with Defendants that this language is consistent with a claim that Defendants violated the Washington State Constitution's prohibition against invasion into a citizen's private affairs and is inconsistent with the privacy-related torts Plaintiffs listed in their response. Furthermore, at this point in the proceedings—two and a half years after Plaintiffs filed this action—Plaintiffs should be able to identify the claims they intend to pursue at trial. Therefore, the court grants Defendants' motion for summary judgment on Plaintiffs' "invasion of private affairs and residence" claim.

**E. Declaratory Relief Regarding Laches and Statute of Limitations**
Defendants argue that the court must dismiss Plaintiffs' purported claims for declaratory judgments that Defendants failed to initiate foreclosure within the six-year statute of limitations and that the doctrine of laches bars foreclosure because (1) a claim for declaratory relief must have an underlying claim and (2) the statute of limitations and laches are affirmative defenses that the borrower may assert in a foreclosure action, rather than standalone causes of action. (Mot. at 14-15; *see* Am. Compl. ¶¶ 13.1-13.4 (statute of limitations), 16.1-16.5 (laches).) According to Defendants, there is no ground for Plaintiffs to assert defenses to foreclosure when there is no foreclosure proceeding pending. (Mot. at 14-15.)

Plaintiffs do not address Defendants' arguments regarding dismissal of their declaratory relief claims. (*See generally* Resp.) A party waives an argument at the summary

judgment stage if it provides no argument in support of its position or does not adequately develop the argument. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16, 2016) (collecting cases). Therefore, the court grants Defendants' motion for summary judgment on Plaintiffs' purported claims for declaratory relief.

**E. Quiet Title**
Defendants move for summary judgment on Plaintiffs' quiet title claim. (Mot. at 15-16.) They argue that Plaintiffs cannot pursue this claim because they cannot show that they have satisfied their obligations under the deed of trust securing the Loan and none of the Defendants claims a current right to title on the Property. (*Id.*) In response, Plaintiffs assert that they may maintain a quiet title action under RCW 7.28.300 because foreclosure on the Property is barred by the statute of limitations. (Resp. at 12-14.)

Under RCW 7.28.300, a property owner may maintain a quiet title action "where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations[.]" RCW 7.28.300. The parties agree that a six-year statute of limitations applies to actions arising out of promissory notes and deeds of trust. (Resp. at 15; Reply at 9); *see* RCW 4.16.040(1); *Westar Funding, Inc. v. Sorrels*, 239 P.3d 1109, 1113 (Wash. Ct. App. 2010). For an installment note like the one here, "the statute of limitations runs against each installment from the time it becomes due[.]" *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 6 (Wash. Ct. App. 2016) ("*Gibbon*") (citations omitted). If the installment note is accelerated, however, "the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously become due." *Id.* (citations omitted). Acceleration of an installment note must be made "in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." *Id.* (quoting *Glassmaker v. Ricard*, 593 P.2d 179, 181 (Wash. Ct. App. 1979)).

*9 Here, Plaintiffs argue that the six-year statute of limitations for foreclosing on the Loan was triggered on September 15, 2010, when Bank of America notified Ms. Lysyy of its intent to accelerate the Loan. (Resp. at 13.) As noted above, the Notice of Intent to Accelerate warned Ms. Lysyy that if she did not cure her default "on or before October 15, 2010, the mortgage payments will be

Lysyy v. Deutsche Bank National Trust Company, Slip Copy (2025)

**accelerated** with the full amount remaining accelerated and becoming due and payable in full" (Notice of Intent to Accelerate at 1 (emphasis in original)), and Plaintiffs made no further payments on the Loan (1st T. Lysyy Decl. ¶ 4). As a result, according to Plaintiffs, the Loan was accelerated, the statute of limitations was triggered, and the statute of limitations for filing a foreclosure action expired years before Plaintiffs filed this case. (*See* Resp. at 13.)

Defendants do not mention the Notice of Intent to Accelerate in their reply. (*See* Reply at 8-9.) Instead, they assert only that Plaintiffs "have not established any date of acceleration." (*Id.* at 9.) Thus, according to Defendants, the statute of limitations has not yet expired on all of the installment payments due on the Loan. (*Id.*) Defendants also argue that the statute of limitations was tolled when they recorded twelve notices of trustees' sale and when Ms. Lysyy filed for bankruptcy. (*Id.*) Defendants do not, however, explain how the notices tolled the statute of limitations in full during the 12 years between the issuance of the Notice of Intent to Accelerate and the filing of this action. (*Id.* (citing 12/24/24 Sagara Decl. (Dkt. # 99) ¶ 3, Ex. A ("Stenman Draft Decl.") ¶¶ 12, Exs. 10A-10L).)

The court concludes, based on the September 10, 2010 Notice of Intent to Accelerate and Defendants' failure to address it, that there is a genuine dispute of material fact regarding whether and when the underlying Loan was accelerated. In addition, Defendants have not demonstrated that subsequent notices of trustee's sale and bankruptcy filings fully tolled the statute of limitations. As a result, Defendants have not met their burden to show, as a matter of law, that Plaintiffs are barred from pursuing a quiet title action under RCW 7.28.300. Therefore, the court denies Defendants' motion for summary judgment on Plaintiffs' quiet title claim.

**F. Injunction**

Defendants argue that Plaintiffs' claim for an injunction is improper because there is no trustee's sale currently pending that could be enjoined. (Mot. at 16.) Plaintiffs agree that they have no need for an injunction because there is no trustee's sale pending. (Resp. at 14.) Therefore, to the extent Plaintiffs have asserted a claim for an injunction, the court grants summary judgment in

Defendants' favor.

**G. Sanctions**

Finally, the court denies Defendants' motion to dismiss this case as a further sanction for Plaintiffs' failure to pay the $4,500 in attorneys' fees and costs incurred when Plaintiffs failed to attend their depositions in July 2024. (*See* MSJ at 18-19.) Defendants filed their motion before the court ruled that it will not require Plaintiffs to pay the sanction before final judgment. (*See* 12/11/24 Order (Dkt. # 92).) Therefore, the court denies Defendants' motion to dismiss as moot.

**IV. CONCLUSION**

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' second motion for summary judgment (Dkt. # 88).

1. The court GRANTS Defendants' motion for summary judgment on Plaintiffs' claims for invasion of private affairs, declaratory relief regarding laches and the statute of limitations, and for an injunction and DISMISSES these claims with prejudice.

2. The court DENIES Defendants' motion for summary judgment on Plaintiffs' claims for violation of the automatic bankruptcy stay and for quiet title. With respect to the stay violation claim, however, the court GRANTS summary judgment in Defendants' favor on Plaintiffs' claims for actual damages arising from (a) loss or damage to personal property and (b) loss of ability to use, rent out, or sell the Property.

*10 3. The court DENIES as moot Defendants' motion to dismiss this case as a sanction for Plaintiffs' failure to pay the monetary sanction the court imposed in September 2024.

**All Citations**

Slip Copy, 2025 WL 563349

**Footnotes**

Lysyy v. Deutsche Bank National Trust Company, Slip Copy (2025)

1     Plaintiffs represented themselves in this action between August 6, 2024, when the court granted attorney Richard Lamar Pope, Jr.'s motion to withdraw, and December 17, 2024, when Mr. Pope reappeared in this action and filed Plaintiffs' response to the motion. (8/6/24 Order (Dkt. # 72); NOA (Dkt. # 96); Resp.)

2     Plaintiffs request oral argument; Defendants do not. The court finds that oral argument would not aid in its resolution of the motion and therefore denies Plaintiffs' request. *See* Local Rules W.D. Wash. LCR 7(b)(4).

3     This citation refers to the first of two paragraphs labeled "8" in Ms. Lysyy's declaration.

4     The court cites to the page numbers in the CM/ECF header when referring to exhibits to Mr. Pope's December 29, 2023 declaration.

5     This citation refers to the first of two paragraphs labeled "4" in Mr. Pope's declaration.

6     Plaintiffs appeared *pro se* with Ukrainian interpreters. (*See id.* ¶ 4, Ex. B ("V. Lysyy Dep.") at 2, 4; T. Lysyy Dep. at 2, 4.)

7     Plaintiffs assert that the court should deny Defendants' current motion for summary judgment on their § 362(k) claim "for the exact same reasons" it denied Defendants' first motion. (Resp. at 2 (citing 5/28/24 Order).) It is true that the court held that Mr. Lysyy's testimony could provide evidence of the value of the Property. That testimony only matters, however, if Plaintiffs meet their burden to produce evidence that Defendants' violation of the bankruptcy stay caused a loss of value.

---

**End of Document**            © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT C*

2023 WL 1779643
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

IN RE MOON

Rushmore Loan Management Services,
LLC, Appellant
v.
Willie N. Moon and Adnette M.
Gunnels-Moon, Appellants
and Related Cross Appeal

Case No. 2:22-cv-01126-APG
|
Signed February 6, 2023

**Attorneys and Law Firms**

James A. Kohl, Cami Perkins, Howard & Howard, Las
Vegas, NV, Jacob A. Johnson, Pro Hac Vice, Alston &
Bird LLP, Atlanta, GA, Leib M. Lerner, Pro Hac Vice,
Alston & Bird LLP, Los Angeles, CA, Ariel E. Stern,
Natalie L Winslow, Akerman LLP, Las Vegas, NV, for
Appellant.

**Opinion**

ANDREW P. GORDON, UNITED STATES DISTRICT
JUDGE

*1 This case is a prime example of how small errors can
multiply into expensive and time-consuming litigation.
This dispute could have been avoided entirely if either the
debtors (through their counsel) had sent bankruptcy
notices to the lender's correct address or the lender had,
upon receiving actual notice of the bankruptcy, responded
appropriately. Instead, this dispute has generated a
two-day evidentiary hearing, multiple rulings by the
bankruptcy court, several appeals and cross-appeals to the
Bankruptcy Appellate Panel (BAP), a remand to the
bankruptcy court for another ruling, and now an appeal
and cross-appeal before me. And I am likely just a speed
bump on the parties' way to the Ninth Circuit.

The parties are familiar with this case's factual

background and complicated procedural history, so I give
only a summary here.¹ Adnette Gunnels-Moon was the
borrower on a second mortgage on her home, but her
husband, Willie Moon, was not. Rushmore Loan
Management Services, LLC serviced the loan from
January 1, 2012 through October 15, 2018. In March
2013, the Moons filed a joint Chapter 13 bankruptcy
petition. Although they identified Rushmore as a creditor,
they listed the wrong address, and Rushmore did not
receive notice of the bankruptcy case when it was filed.

Having no notice of the bankruptcy, Rushmore continued
to attempt to collect on the loan, including by calling the
Moons' residence numerous times while the automatic
bankruptcy stay was in place. During one such call in
December 2014, Willie told the Rushmore representative
that they had filed bankruptcy. The Rushmore
representative made a note about the comment, but
Rushmore thereafter did nothing to investigate whether
the Moons were in bankruptcy and instead continued to
contact the Moons, including after the bankruptcy
discharge was entered in the fall of 2016. Rushmore's
inaction was based on its unwritten and undisclosed
policy not to accept a bankruptcy notification from a third
party that the borrower had not authorized to discuss the
loan.

In January 2019, the Moons moved to reopen their
bankruptcy case to seek contempt sanctions against
Rushmore for violating the automatic stay² and the
discharge injunction.³ Following a two-day evidentiary
hearing, the bankruptcy court found in favor of the Moons
on the automatic stay violation and awarded damages in
the amount of $742.10 for fees Adnette incurred in
reopening the proceeding, $100,000 in emotional distress
damages to Willie, and $200,000 in punitive damages.
The bankruptcy court also found that Rushmore engaged
in conduct that would violate the discharge injunction but
there was insufficient evidence as to what date Rushmore
learned of the discharge, so it awarded no damages for a
discharge injunction violation. By separate order, the
bankruptcy court awarded $56,150 in attorney's fees and
$10,857.94 in costs but denied the Moons' request for a
fee enhancement. The bankruptcy court subsequently
awarded an additional $3,500 in supplemental fees that
the Moons incurred in filing a reply to the first fee
motion. Finally, the bankruptcy court denied the Moons'
request for attorney's fees and costs incurred in
responding to an adversary proceeding brought by
Rushmore.

*2 Both parties filed a series of appeals and cross-appeals
to the BAP of the original contempt ruling as well as the

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

subsequent rulings on the Moons' attorney's fee requests. No one appealed the bankruptcy court's ruling that Rushmore willfully violated the automatic stay and that Adnette was entitled to damages of $742.10 as a result. Rushmore appealed the emotional distress and punitive damage awards, as well as the orders granting fees and supplemental fees.[4] The Moons appealed the decision not to award damages for Rushmore's violation of the discharge injunction and the decision not to award fees and costs for defending against the adversary proceeding.

The BAP entered a series of decisions resolving the various appeals. In its decision addressing the bankruptcy court's contempt rulings, the BAP reversed the $100,000 award in Willie's favor because it concluded that Rushmore's conduct did not violate Willie's automatic stay. The BAP affirmed the bankruptcy court's finding that Rushmore's conduct warranted a punitive damage award. But it vacated and remanded the $200,000 punitive damage award because it had reversed Willie's $100,000 damage award. In doing so, the BAP stated that on remand, the bankruptcy court could consider attorney's fees and costs in determining an appropriate punitive damage award for Adnette. Finally, it affirmed the bankruptcy court's denial of damages for the Moons' claim for a discharge injunction violation, and it rejected the Moons' related argument that the discharge injunction violation could be considered a continuing automatic stay violation.

The BAP addressed the attorney's fees in separate decisions. With respect to the fees and costs related to the contempt motion, the BAP affirmed the bankruptcy court's decision to award fees and to not apply an enhancement.[5] But it reversed and remanded for the bankruptcy court to explain why it awarded fees for time spent on the discharge injunction violation. Additionally, the BAP concluded that because it had reversed and remanded Willie's damages award, the bankruptcy court should reconsider the fee award and whether a fee enhancement was appropriate. The BAP also vacated and remanded the supplemental fee award for reconsideration by the bankruptcy court because it was closely related to the first fee order. And the BAP remanded for the bankruptcy court to award reasonable attorney's fees and costs to the extent that Rushmore's adversary complaint sought to challenge Adnette's contempt proceeding for Rushmore's automatic stay violation. Finally, the BAP ordered the bankruptcy court to determine appellate fees for the various appeals.[6]

On remand, the bankruptcy court identified its tasks as:

1. To determine the amount of punitive damages for Rushmore's willful violation of the automatic stay given the reduction in compensatory damages and given the BAP's direction that the bankruptcy court could consider attorney's fees and costs in determining the amount of the punitive damage award.

2. To explain the attorney's fee award to the extent it contains time spent on the discharge injunction violation and to reconsider a fee enhancement.

3. To award reasonable fees and costs incurred in responding to Rushmore's adversary complaint to the extent those are part of Adnette's automatic stay violation damages.

*3 4. To determine the amount of appellate fees Adnette Moon is entitled to as part of her automatic stay violation damages.

The bankruptcy court began with the attorney's fees on the first and supplemental fee awards because its decisions on those would impact the punitive damage award. The bankruptcy court declined to reconsider its decision to not apply a fee enhancement,[7] and it again awarded the full amount of the first and supplemental fee requests, explaining that the automatic stay and discharge injunction violations were inextricably linked and litigated together before the bankruptcy court. The bankruptcy court thus awarded $67,007.94 for the first fee award and supplemental fees in the amount of $3,500, for a total fee award to Adnette Moon of $70,507.94.

Based on this fee award and the $742.10 compensatory damage award to Adnette that no one appealed, the bankruptcy court then determined a punitive damage award. The bankruptcy court awarded $500,000 in punitive damages.

The bankruptcy court then determined the amount of fees to award for Adnette having to respond to Rushmore's adversary complaint. The bankruptcy court awarded the entirety of the fees incurred in defending against the adversary complaint for a total of $14,827.

Finally, the bankruptcy court awarded Adnette $70,415.95 in appellate fees because she prevailed on her appeals related to the first fee decision, the supplemental fee decision, and the second fee decision related to the adversary proceeding. The bankruptcy court also awarded fees related to the appeal of the contempt decision but reduced them by twenty percent because at least some of those fees were incurred in addressing the discharge injunction violation. It thus awarded $45,235.82 in appellate fees for the contempt decision appeal, for a total

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

appellate fee award of $115,651.77.[8]

Rushmore and the Moons appealed the bankruptcy court's order, and the Moons elected to have the appeals decided by this court rather than the BAP. Rushmore appeals the fee awards and the punitive damages award on a variety of grounds and requests that I withdraw the reference if I reverse the bankruptcy court. In their cross-appeal, the Moons argue that Willie has standing to recover for the automatic stay violation, that Rushmore's discharge violation should be considered a continuing stay violation, and that Rushmore should be charged with knowledge of the discharge order either through willful blindness or constructive notice, and thus there was a basis for awarding damages for a discharge injunction violation.

For the reasons discussed below, I decline to consider issues that are raised for the first time on appeal or that were already decided by the BAP. I affirm in part and reverse in part the bankruptcy court's award of attorney's fees, costs, and punitive damages. In the interest of efficient resolution of this matter, I withdraw the reference as to those issues on which I reverse the bankruptcy court's decision, and I enter final judgment.

## I. ISSUES NOT RAISED BELOW OR ALREADY DECIDED

*4 I decline to consider any issue that was never raised before the bankruptcy court or the BAP. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014). Consequently, I do not address Rushmore's newly raised argument that, as a matter of law, Adnette cannot recover any attorney's fees as damages because she suffered no pre-litigation injury from Rushmore's automatic stay violation. Although Rushmore argues I should consider the question as one of pure law for which no further factual development is needed, the Ninth Circuit has this same discretion when the parties inevitably appeal my order. *See id.* This case is already procedurally complicated, and the most judicially efficient resolution is for me to confine my decision to a review of the bankruptcy court's order on remand without considering a new issue raised for the first time before me.

For similar reasons, I decline to reconsider any issues already resolved by the BAP. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir.

2012). This doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson*, 486 U.S. at 816 (quotation omitted). The Ninth Circuit will review the bankruptcy court's and BAP's rulings under the same standards that I would if I declined to follow the law of the case here. *See, e.g., In re Albert*, 998 F.3d 1088, 1091 (9th Cir. 2021). Judicial efficiency counsels against me weighing in on issues the BAP has already decided and on which the bankruptcy court based its order on remand. That does not preclude the Ninth Circuit from reviewing on appeal all issues properly preserved. *See In re Woods*, 173 F.3d 770, 776 (10th Cir. 1999) ("So long as a matter is properly preserved in a lower court, the fact that the lower court can properly refuse reconsideration as a matter of law of the case of course does not prevent subsequent review on appeal." (simplified)). Consequently, I do not address any of the issues raised in the Moons' cross-appeal because the BAP already decided that Willie cannot recover automatic stay damages, that there was no continuing violation of the automatic stay, and that the bankruptcy court did not abuse its discretion by not awarding damages for a violation of the discharge injunction.

## II. WITHDRAWING THE REFERENCE

I "may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] on [my] own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In determining whether good cause exists to withdraw the reference, I consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002) (quotation omitted).

To the extent I determine that the bankruptcy court has erred, I withdraw the reference and enter a final ruling rather than remand to the bankruptcy court. The efficient use of judicial resources weighs against another remand and round of appeals in this already protracted litigation. Another remand would further delay final disposition of this case, as neither party could appeal my interlocutory decision to the Ninth Circuit. Instead, the parties undoubtedly would again appeal the bankruptcy court's order, resulting in yet another round of appeals before either me or the BAP. The uniformity of bankruptcy administration will not be disrupted because the Moons' bankruptcy case is closed except for the resolution of the stay violation and related damages issues. The Moons

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

contend that Rushmore is forum shopping to avoid a return to the bankruptcy court, but the Moons arguably also forum-shopped by electing to have this appeal decided by me rather than returning to the BAP. In sum, the last vestige of efficiency is preserved by me withdrawing the reference and entering a final decision so the parties can appeal to the Ninth Circuit as expeditiously as possible.

### III. RUSHMORE'S APPEAL

*5 Rushmore appeals the bankruptcy court's order (on remand) on both the attorney's fees and punitive damages awards. I "review the bankruptcy court's legal conclusions de novo [and] its factual findings for clear error." *In re Albert*, 998 F.3d at 1091. Like the bankruptcy court, I begin with the attorney's fees issues because resolution of those issues may impact the punitive damages award.

#### A. Attorney's Fees

I "review de novo the bankruptcy court's compliance with the mandate of an appellate court." *In re Blaskey*, No. 8:11-AP-01462-ES, 2016 WL 4191775, at *5 (B.A.P. 9th Cir. Aug. 8, 2016). I review the bankruptcy court's award of attorney's fees for an abuse of discretion. *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004). A bankruptcy court abuses its discretion if it applies the wrong legal standard or if its factual findings are clearly erroneous. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012); *see also In re Bennett*, 298 F.3d 1059, 1063 (9th Cir. 2002) ("The bankruptcy court's attorneys' fee determination will only be reversed if the court abused its discretion or erroneously applied the law."). If the bankruptcy court "identified the correct legal rule to apply to the relief requested," then I "must determine whether [its] application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Perry v. Brown*, 667 F.3d 1078, 1084 (9th Cir. 2012) (quotation omitted). "If it was, then [I am] able to have a definite and firm conviction that the [bankruptcy] court reached a conclusion that was a mistake or was not among its permissible options, and thus that it abused its discretion." *Id.* (quotation omitted).

Bankruptcy Code section 362(k) provides that "an individual injured by any willful violation of a stay

provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." This includes an award of attorney's fees incurred in pursuing damages for a stay violation, fees incurred in establishing the claim for fees, and appellate fees for successfully defending a claim on appeal. *See Easley v. Collection Serv. of Nev.*, 910 F.3d 1286, 1291-93 (9th Cir. 2018); *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015). "Section 362(k) thus seeks to make debtors whole, as if the violation never happened, to the degree possible." *Easley*, 910 F.3d at 1292-93.

A fee award is mandatory if the bankruptcy court finds a stay violation was willful, although the court "retain[s] the discretion to eliminate unnecessary or plainly excessive fees." *In re Schwartz-Tallard*, 803 F.3d at 1101. Additionally, there must be "a nexus between the claimed damages and the violation of the stay" because the individual must be "injured by the violation to be eligible to claim actual damages." *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004) (quotation omitted). Consequently, fees should be awarded as actual damages only if they are causally linked to the stay violation.

#### 1. Fees for the Contempt Proceeding and Supplemental Fees

On remand, the bankruptcy court reentered its award of $67,007.94 in attorney's fees and costs that Adnette incurred in prosecuting the automatic stay violation and $3,500 for fees incurred defending the original fee award. In response to the BAP's direction to explain why it awarded fees for work done on the discharge injunction claim, the bankruptcy court stated that the automatic stay and discharge injunction violations were inextricably linked and litigated together, so all fees were incurred litigating the automatic stay violation.

*6 Rushmore contends the bankruptcy court erred by not separating out fees incurred on the discharge claim and on Willie's automatic stay claim. Rushmore contends that the two types of claims were not inextricably linked because they involve different acts during different time periods under different law. And Rushmore contends that the bankruptcy court erred by not parsing out time allocated to Willie's claims. Finally, Rushmore argues that the bankruptcy court ignored the BAP's instruction to consider whether the remand of the punitive damages award warranted a reduction in attorney's fees.

The Moons respond that Adnette was the prevailing party

and is entitled to fees. They contend that the bankruptcy court did not err in refusing to apportion fees where their claims were related and where attorney work on one claim was inextricably intertwined with the other.

The BAP directed the bankruptcy court to explain why it did not parse out fees between those incurred in prosecuting the automatic stay violation and those incurred in relation to the discharge injunction. The BAP did not hold that the bankruptcy court could not award fees related to the discharge injunction, only that it must explain why it is doing so to enable appellate review of that decision.

The bankruptcy court explained its decision, and it did not abuse its discretion in awarding the entire amount of fees and costs for the contempt proceedings. "[D]espite the general rule of apportionment, in a specific case apportionment might not be required if it is impossible to differentiate between work done on claims" because those claims are "so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000). As the bankruptcy court explained, the automatic stay and discharge injunction violations were litigated jointly with little distinction either in the briefs or at the evidentiary hearing. At the evidentiary hearing, Rushmore's representative's testimony regarding Rushmore's policies was relevant to both violations, as was the Moons' expert's testimony, because both violations arose out of the same unwritten Rushmore policy and the same course of conduct of Rushmore continuing to contact the Moons despite Willie telling Rushmore about the bankruptcy. *Cf. Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174 (9th Cir. 2019) (stating claims are related if they "arose out of the same course of conduct" (quotation omitted)); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (stating a plaintiff can recover reasonable fees for prosecuting claims that are related to the successful claims if they "involve a common core of facts or are based on related legal theories" (quotation omitted)). The bankruptcy court therefore did not ignore the mandate or abuse its discretion by not apportioning fees incurred in litigating the discharge injunction.

The bankruptcy court also did not abuse its discretion by declining to make a reduction for Willie's failed claims because Willie's testimony was relevant to Adnette's successful stay violation claim. Willie was the one who took Rushmore's calls, so he would have testified even if he did not pursue his own claim. And harm to third parties such as Willie can be considered in evaluating the degree of reprehensibility in determining an appropriate punitive damage award for Adnette. *See Philip Morris USA v.*

*Williams*, 549 U.S. 346, 355 (2007). Consequently, Adnette would have incurred the same fees related to the contempt proceedings even if Willie had never brought claims in his own right.

*7 Even if the bankruptcy court could have made some minor adjustments to address apportionment, the bankruptcy court did not abuse its discretion in declining to do so. In determining what fees are causally linked to the stay violation, courts "need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is)." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-11 (2017) (quotation omitted). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.* (quotation omitted). The bankruptcy court thus can (and did) "take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (simplified). The bankruptcy court's judgments, "in light of [its] superior understanding of the litigation, are entitled to substantial deference on appeal." *Id.* (quotation omitted). The bankruptcy court therefore did not abuse its discretion in awarding all fees and costs related to the original contempt proceedings, including the supplemental fees.

Finally, Rushmore contends the bankruptcy court disregarded the BAP's instruction to consider whether the remand of the punitive damages award warranted a reduction in attorney's fees. But the BAP did not indicate it was remanding for a reduction in attorney's fees. Rather, it stated that because it "reversed the award of damages to Willie and remanded the punitive damages award for the bankruptcy court to review in light of our decision, it is appropriate to allow the court to reconsider the amount of the attorney's fee award and whether a fee enhancement is appropriate." ECF No. 25-6 at 17. The bankruptcy court did as the BAP directed by reconsidering the fee award amount and whether an enhancement was appropriate, so it did not disregard the mandate or abuse its discretion. I therefore affirm the bankruptcy court's award of $67,007.94 in attorney's fees to Adnette for prosecution of the original contempt proceedings and $3,500 in supplemental fees, for a total fee award to Adnette in the amount of $70,507.94 for the original contempt proceeding.

### 2. Fees for the Adversary Proceeding

The bankruptcy court originally did not award fees incurred in defending against Rushmore's adversary proceeding. The BAP remanded for the bankruptcy court

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

to consider whether at least some of those fees should be awarded given that Rushmore sought to strike the motion for contempt as part of its adversary complaint. On remand, the bankruptcy court concluded that because Rushmore's adversary sought to preclude Adnette from obtaining any relief from the automatic stay violation, all the fees and costs she incurred in defending against it were "necessarily part of her stay violation damages claim." ECF No. 21-7 at 24. Rushmore argues the bankruptcy court erred by awarding all the fees for time spent defending against the adversary proceeding without discerning which fees were incurred in defending against Rushmore's arguments in defense of its stay violation.

The bankruptcy court did not abuse its discretion in awarding all fees incurred in defending against the adversary. Rushmore's adversary complaint requested that the court strike the motion for contempt sanctions. *See Rushmore Loan Mgmt. Servs., LLC v. Moon*, Bankr. D. Nev. No. 19-01090-mkn, ECF No. 1 at 6 (requesting the bankruptcy court to "strike the motion for contempt, as it is the direct result of a constitutional deprivation of notice to Rushmore," and to "strike the motion for contempt, as it is the direct result of the unclean hands of the debtors in not providing any notice to Rushmore"). Rushmore raised, and continues to raise, similar arguments in opposition to the automatic stay violation and resulting damages that it raised in the adversary. Thus, the bankruptcy court's factual finding that all fees were incurred in defense of the automatic stay violation is not clearly erroneous. And for the same reasons discussed above, the bankruptcy court did not err in declining to apportion fees as between Adnette and Willie. There is nothing in the adversary litigation that was specific to only Willie. *See Rushmore Loan Mgmt. Servs., LLC v. Moon*, Bankr. D. Nev. No. 19-01090-mkn, ECF Nos. 1; 14; 19; 22. Consequently, Adnette would have incurred the same fees even if Willie did not bring a claim on his own behalf. I therefore affirm the bankruptcy court's award of $14,827 in attorney's fees and costs related to the adversary proceeding.

### 3. Appellate Fees

*8 The BAP directed the bankruptcy court to determine what amount, if any, to award for appellate attorney's fees in relation to all the BAP appeals. The bankruptcy court awarded $70,415.95 for fees incurred in the appeals of the fee decision, the supplemental fee decision, and the adversary fee decision because it determined that Adnette prevailed on each of those appeals. It awarded an additional $45,232.82 for fees Adnette incurred in relation

to the contempt appeal. The bankruptcy court reasoned that in relation to the contempt appeal, both sides prevailed to some extent and the defense of the automatic stay violation was severable from other issues on appeal on which Adnette did not prevail, so it reduced Adnette's fees by 20%.

Rushmore contends the bankruptcy court erred by not requiring Adnette's counsel to specify how much time was spent on tasks that Adnette prevailed on and did not reduce fees at all for time spent unsuccessfully appealing Willie's claims. The Moons argue that the bankruptcy court did not err because Adnette generally prevailed on appeal and the fees were not severable.

### a. Fees for Appeals Regarding Original, Supplemental, and Adversary Fees

The bankruptcy court did not abuse its discretion by awarding Adnette full fees for the appeals related to the original fee award, the supplemental fee award, and the adversary. The BAP held that Adnette was entitled to fees as part of her compensatory damages and that those fees could be included in a punitive damage calculation. It also reversed the bankruptcy court's denial of fees related to the adversary and directed the bankruptcy court to determine the proper amount of fees to award in relation to the adversary. Although the BAP remanded for the bankruptcy court to determine total fees and to explain why it awarded fees related to the discharge injunction, the BAP did not reverse any of the bankruptcy court's rulings related to the original or supplemental fee awards. And its reversal on the fees in relation to the adversary is a ruling in Adnette's favor that permitted the bankruptcy court to determine whether those fees were actual damages caused by the automatic stay violation. The bankruptcy court therefore did not err in awarding as actual damages the appellate fees Adnette incurred on the fee appeals.

The bankruptcy court did not apportion any amount for arguments made in support of fees for the discharge violation or for Willie's claims. But the Moons defended their fees for both the automatic stay and discharge injunction violations on the same grounds on appeal as adopted by the bankruptcy court on remand: that they were related because they were based on the same course of conduct. Additionally, a review of the briefs shows little time was devoted specifically to the discharge injunction, so a reduction would be the type of minute accounting not required of the bankruptcy court. The decision not to apportion does not rise to the level of an

abuse of discretion. *See, e.g., In re Moon*, 9th Cir. BAP Appeal No. 20-1144, ECF Nos. 17, 20;*see also In re Moon*, 9th Cir. BAP Appeal No. 20-1155; *In re Moon*, 9th Cir. BAP Appeal No. 20-1195. Finally, the fee appeals did not distinguish between Adnette and Willie, so no reduction is warranted for time spent on issues specific only to Willie because there were none. I therefore affirm the bankruptcy court's decision to award full fees on the three appeals related to the recovery of fees, supplemental fees, and adversary fees in the amount of $70,415.95.

### b. Fees for the Contempt Appeal

On remand, the bankruptcy court disallowed 20% of the time Adnette's counsel spent on issues related to the discharge violation, determining that in the contempt appeal that time was severable from time spent on the automatic stay arguments. ECF No. 21-7 at 29. The bankruptcy court did not indicate that it was reducing the fees for time spent on issues specific to Willie. Rushmore contends this was error and that it, not Adnette, largely prevailed on this appeal.

**\*9** The bankruptcy court abused its discretion in failing to apportion fees for time spent on Willie's unsuccessful appeal. Those fees were not incurred as actual damages arising from Rushmore's violation of Adnette's automatic stay. A substantial portion of the Moons' briefs on the contempt appeal addressed Willie's standing and the propriety of Willie's emotional distress damage award, in addition to the discharge violation. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF Nos. 22, 28, 56; *In re Moon*, 9th Cir. BAP Appeal No. 20-1070, ECF Nos. 10, 15. Indeed, some of the Moons' briefs addressed little else. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF Nos. 28, 56; *In re Moon*, 9th Cir. BAP Appeal No. 20-1070, ECF Nos. 15, 39. Those fees are severable and do not count as damages incurred in defending Adnette's stay violation claim on appeal. Where it is possible to apportion, the court should do so. *See Gracie*, 217 F.3d at 1070 (stating, in relation to a Lanham Act claim, that "apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless"). The bankruptcy court's failure to do so in this instance thus constitutes an abuse of discretion.

The Moons' billing records on appeal do not distinguish between work performed on the various issues. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF No. 62. Like the bankruptcy court, I therefore estimate the time spent on issues for which Adnette cannot recover fees.

When considering the time spent on the discharge injunction and Willie's unsuccessful appeal, I reduce the fees and costs by 80%. Consequently, I reverse this portion of the bankruptcy court's remand order and award reduced appellate fees for Adnette in the amount of $11,308.96. ($56,544.78 in fees and costs × .20).

### 4. Proportionality and Mitigation

Rushmore argues that the bankruptcy court abused its discretion by awarding Adnette substantial attorney's fees to prosecute a stay violation that had already ceased by the time the Moons moved for contempt sanctions and for which Adnette had suffered only $742.10 in compensatory damages. Rushmore argues that awarding thousands of dollars in attorney's fees (which are then used as the basis for a substantial punitive damage award) is unreasonable in relation to Adnette's minimal compensatory damages and lack of pre-litigation injury.[9] The Moons respond that Rushmore is attempting to shift the blame for its willful stay violation to the debtor, that attorney's fees are actual damages under § 362(k), and that Rushmore harassed the Moons for years such that a full attorney's fee award is appropriate.

In providing for the recovery of attorney's fees as actual damages under § 362(k), "Congress sought to encourage injured debtors to bring suit to vindicate their statutory right to the automatic stay's protection, one of the most important rights afforded to debtors by the Bankruptcy Code." *In re Schwartz-Tallard*, 803 F.3d at 1100. "By providing robust remedies for debtors who prevail, the statute acts to deter creditors from violating the automatic stay in the first instance." *Id.* "[B]y definition," debtors "will typically not have the resources to hire private counsel," and "in many cases the actual damages suffered by the injured debtor will be too small to justify the expense of litigation." *Id.* Consequently, § 362(k)'s deterrent effect is fulfilled in part by allowing the recovery of attorney's fees incurred in prosecuting a stay violation, thereby "making it possible for persons without means to bring suit to vindicate their rights." *Id.* (quotation omitted).

**\*10** However, courts have expressed the concern that debtors could use § 362(k) "as a sword rather than a shield." *In re Roman*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002). To curb this deleterious effect, courts have discretion to "eliminate unnecessary or plainly excessive fees" to "check ... any abuses that might otherwise arise." *In re Schwartz-Tallard*, 803 F.3d at 1101. Thus, a court may make a reduction where fees "would not have been

incurred but for the bringing of the [contempt] motion." *In re McHenry*, 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995). But even in this situation, a debtor may be "justified in bringing the motion and in incurring additional attorney's fees" if "an award of punitive damages [was] warranted." *Id.*

The bankruptcy court did not abuse its discretion in declining to make an adjustment. The court acknowledged Rushmore's argument but rejected it based on its view that once Rushmore learned of the bankruptcy, any errors by the Moons regarding Rushmore's incorrect address no longer mattered because Rushmore had actual notice of the bankruptcy, yet it did nothing to investigate the matter and continued to repeatedly contact the Moons. Additionally, the bankruptcy court noted that Rushmore's unwritten policy, and its failure to advise the Moons of its policy, meant that Adnette had no way to know that Rushmore was ignoring Willie's report of the bankruptcy or that it would continue to contact the Moons until Adnette called them. There is nothing clearly erroneous about these findings. Nor did the bankruptcy court exceed its permissible options by declining to reduce fees given Rushmore's willful, repeated violations of Adnette's automatic stay rights. Even if another judge might have reached a different conclusion, it is not illogical or factually unsupported for the bankruptcy court to conclude there was a need to vindicate Adnette's rights and to deter Rushmore's conduct through a fee award. I therefore affirm the bankruptcy court's decision not to reduce fees on proportionality or mitigation grounds.

5. Total Fees

In sum, the total amount of attorney's fees and costs for the original contempt proceeding (including supplemental fees), the adversary proceeding, and the various appeals is $167,059.85. I note that the bankruptcy court included in its punitive damages analysis only $70,507.94 for the original contempt proceeding (plus supplemental fees) and $742.10 in Adnette's out-of-pocket expenses. ECF No. 21-7 at 13.

**B. Punitive Damages**

On remand, the bankruptcy court increased the punitive damage award from $200,000 to $500,000. The bankruptcy court concluded that a higher multiplier was needed given the BAP's conclusion that Willie was not protected by the automatic stay. In the bankruptcy court's view, this made Rushmore's conduct "far worse" because it was able to contact Willie, who also was a debtor, "without repercussion." ECF No. 21-7 at 17. The bankruptcy court concluded that Rushmore's conduct was even more reprehensible because its failure to investigate Adnette's bankruptcy status after Willie advised Rushmore of it, combined with Willie's inability to sue for damages to himself, allowed Rushmore to "continue dunning the non-borrower debtor." *Id.* at 19. The bankruptcy court noted that Rushmore's unwritten policy posed a risk to all similarly situated borrowers. And it considered that Adnette and others like her are financial vulnerable given they are in bankruptcy.

The bankruptcy court also concluded that in addition to a greater degree of reprehensibility, further deterrence was needed because, in light of the BAP's ruling, Rushmore could contact others in the same situation as Willie without violating the automatic stay. *Id.* at 20. The bankruptcy court concluded that Rushmore is not "self-policing" because its own employees testified to Rushmore's unwritten policy. *Id.* The bankruptcy court thus increased the punitive damages multiplier from 2:1 to 7:1. *Id.* at 21. The bankruptcy court noted that if it included in the punitive damage analysis all fees it awarded, then the multiplier would be approximately 2.48:1. *Id.* at 30.

*11 Rushmore contends that the bankruptcy court's punitive damage award on remand violates its due process rights because the bankruptcy court punished Rushmore (1) for Willie's injuries, (2) for Rushmore's success on appeal and for pressing good faith defenses, and (3) for calling the discharge violation claim unsuccessful. Rushmore also asserts that the bankruptcy court erred by justifying the award as deterrence because Rushmore's contact with Willie violated Adnette's stay, so there is no lack of repercussions, and because there is no evidence that Rushmore engaged in similar conduct before, during, or after the situation with the Moons. Finally, Rushmore argues that in a de novo review of the relevant factors, Adnette is entitled to no or minimal punitive damages.

The Moons respond that the bankruptcy court's award on remand is constitutional because the bankruptcy court properly determined that Rushmore's conduct was reprehensible. They further argue that a 7:1 multiplier is not unconstitutional, particularly because Adnette did not recover substantial actual damages. Finally, the Moons argue that courts in other cases have awarded a higher ratio of punitive to compensatory damages where compensatory damages are low but the need to punish and deter is high.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

---

I review for clear error the bankruptcy court's factual findings in conducting the inquiry of whether a punitive damage award is unconstitutionally excessive. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 435 (2001). But I review de novo the constitutionality of a punitive damage award. *Id.* In doing so, I consider three guideposts: "the degree of the defendant's reprehensibility or culpability, the relationship between the penalty and the harm to the victim caused by the defendant's actions, and the sanctions imposed in other cases for comparable misconduct." *Id.* (simplified).

The reprehensibility of Rushmore's conduct is the most important guidepost. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). To determine reprehensibility, courts consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1036 (9th Cir. 2020), *rev'd and remanded on other grounds*, 141 S. Ct. 2190 (2021). The bankruptcy court could consider "evidence of actual harm to nonparties" as part of the reprehensibility determination, but it cannot directly punish Rushmore for injuring nonparties because that violates due process. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353-55 (2007).

"There is no bright-line rule about the maximum ratio due process permits between the harm suffered by the plaintiff (i.e., the compensatory damages) and the punitive damages." *Ramirez*, 951 F.3d at 1036-37. But "awards exceeding a single-digit ratio will rarely satisfy due process, and punitive awards exceeding four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* (simplified). However, a "ratio higher than 4 to 1 may be upheld where a particularly egregious act has resulted in only a small amount of economic damages." *Id.* (quotation omitted). In contrast, "when compensatory damages are substantial, a ratio lower than 4 to 1 may be the limit." *Id.* (quotation omitted).

Finally, the purpose of looking to civil or criminal penalties that could be imposed for comparable misconduct "is to accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *In re Exxon Valdez*, 270 F.3d 1215, 1245 (9th Cir. 2001) (quotation omitted).

*12 I begin with reprehensibility because it is the most important guidepost. In its original contempt order, the bankruptcy court found Rushmore's conduct reprehensible because it "adopted express procedures to narrow the sources of bankruptcy information that it is willing to acknowledge and does not even tell its borrowers what those sources are," thereby allowing Rushmore to "maintain a veil of ignorance" about Adnette's and other borrowers' bankruptcies. ECF No. 22-2 at 58-59. But the bankruptcy court decided not to apply a "large multiplier because, unlike other cases, Rushmore did not formally initiate or complete foreclosure proceedings on the Residence." *Id.* at 59. On remand, the bankruptcy court concluded that Rushmore's conduct was even more egregious because Willie and those like him were no longer protected by the automatic stay given the BAP's ruling, so Rushmore could contact them without repercussion. The bankruptcy court therefore increased the multiplier from 2:1 to 7:1.

The bankruptcy court's punitive damage award on remand violates due process both because it punishes Rushmore directly for harm caused to third parties and because the ratio of 7:1 is excessive in these circumstances. Although the bankruptcy court properly could consider the harm to third parties in determining reprehensibility, it could not directly punish Rushmore for harm to third parties. But it is apparent that the bankruptcy court's substantial increase of both the multiplier and the overall monetary amount on remand was based on the harm caused to Willie and the potential harm caused to others similarly situated to Willie, and involved little analysis of the harm to Adnette. Additionally, a 7:1 ratio is rarely constitutionally appropriate, and it is not appropriate here, particularly given the bankruptcy court's initial decision to not apply a large multiplier. Despite what the Moons argue, tens of thousands of dollars in attorney's fees is a substantial actual damages award, so this is not a case where an insubstantial fee award might support a high punitive damage award ratio. *See Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 776 (9th Cir. 2005) (stating that $50,000 in "economic damages were substantial").

When a punitive damage award is unconstitutional, I may "decide on a case-by-case basis whether to remand for a new trial or simply to order a remittitur." *Ramirez*, 951 F.3d at 1037. The parties have been litigating this case for years and the evidentiary record before the bankruptcy court is closed. Consequently, there is no benefit to a remand that will only delay a final resolution and consume more resources in an already costly case. The

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

parties and the courts are served by bringing this litigation to a close as quickly and efficiently as is possible at this point.

On de novo review, I begin with the question of what actual damages to base a punitive damage award upon. The bankruptcy court included only the original contempt and supplemental fees, totaling $70,507.94. I add to that the fees of $14,827 that Adnette incurred in defending against the adversary because those were actual damages Adnette incurred in defending her automatic stay violation claim before the bankruptcy court. I do not include appellate fees because I do not find Rushmore's appeals worthy of punishment and I am generally disinclined to deter a party from exercising its appellate rights. There is no basis to conclude that Rushmore's appeals were frivolous or brought in bad faith. Consequently, the amount of compensatory damages that I consider in evaluating a proper punitive damage award is $85,334.94.

I conclude a 1.5 multiplier appropriately serves the twin goals of punishment and deterrence. Rushmore's conduct caused Willie (but not Adnette) emotional distress, but it caused no physical harm and did not evince an indifference to or a reckless disregard of the health or safety of others. Adnette, as a debtor, was financially vulnerable and Rushmore's conduct was repeated as to her and her husband. But there is no evidence that Rushmore engaged in similar conduct toward any other borrower. And there is no evidence that Rushmore engaged in intentional malice, trickery, or deceit. As the bankruptcy court noted, Rushmore's conduct led it to repeatedly contact a debtor and her spouse at their residence despite having actual notice of the bankruptcy, thus depriving Adnette of the breathing space the automatic stay is meant to provide. Punitive damages thus are warranted to both punish this conduct and deter similar conduct in the future.

*13 A 1.5 ratio between compensatory and punitive damages is well within constitutional parameters. And although this will result in an award that is substantially higher than the comparable awards that the bankruptcy court noted in its original contempt order, I agree with the bankruptcy court that a higher award is warranted because Rushmore's stay violation was "not a situation involving a rogue employee, but the acts of representatives that Rushmore touts as properly trained." ECF No. 22-2 at 60. Consequently, I award Adnette $128,002.41 in punitive damages.

### C. Final Award

As detailed in this order, I award Adnette Moon the following:

1. $742.10 in pecuniary damages;

2. $167,059.85 in attorney's fees and costs; and

3. $128,002.41 in punitive damages.

**TOTAL: $295,804.36**

### IV. CONCLUSION

I THEREFORE ORDER that the bankruptcy court's order on remand is affirmed in part and reversed in part as set forth in this order. I direct the clerk of court to enter judgment in favor of Adnette Gunnels-Moon (but not Willie Moon) and against Rushmore Loan Management Services, LLC in the amount of **$295,804.36**. The clerk of court is instructed to close this case.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 1779643

**Footnotes**

1    The bankruptcy court set out the factual background in its original order. ECF No. 22-2. It detailed the procedural history in its order on remand. ECF No. 21-7.

2    Title 11 U.S.C. § 362(a) provides for an automatic stay of collection activity against the debtor upon the filing of a bankruptcy petition. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

In re Moon, Not Reported in Fed. Supp. (2023)

3    Under 11 U.S.C. § 524, a bankruptcy discharge operates as an injunction that bars creditors from collecting debts that have been discharged. A violation of the discharge injunction may be remedied through a civil contempt motion in the bankruptcy case. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

4    Rushmore also appealed the bankruptcy court's decision to allow the Moons' expert to testify at the evidentiary hearing. That is not at issue in the appeals before me, so I do not mention it further.

5    The BAP decision addressed other arguments the parties raised before that court that do not impact the issues before me, so I do not discuss them.

6    The parties made several attempts to appeal the BAP's decisions, but the Ninth Circuit dismissed those appeals for lack of jurisdiction.

7    The Moons do not appeal this decision.

8    The bankruptcy court did not include in its punitive damages calculation the fees it awarded for responding to Rushmore's adversary complaint or the appellate fees, except to state that if these fees were included, the ratio between compensatory and punitive damages is closer to 2.48:1 rather than 7:1 if those fees are excluded from the punitive damages analysis.

9    This is related to, but different than, Rushmore's argument raised for the first time on appeal before me that the bankruptcy court could not award Adnette attorney's fees as a matter of law because she suffered no pre-litigation injury. As stated above, I decline to address this issue because Rushmore did not raise it before the bankruptcy court or the BAP. But I will address Rushmore's argument that the bankruptcy court abused its discretion by not reducing or eliminating fees based on proportionality or failure to mitigate. Rushmore raised that issue on remand before the bankruptcy court. *See* ECF No. 21-1 at 16-19; 21-3 at 8-9, 10 n.8, 13; 21-5 at 7 n.6, 10-11.

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.