STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,*
*Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS, LLC and EIGHT EIGHTEEN, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN CLAUSEN, CLAUSEN, INC., AR-TT LLC, and LILAC CITY, LLC,<br><br>Defendants. | Case No.: 2:24-CV-00413-SAB<br><br>COMPANY DEFENDANTS' MOTION TO RECONSIDER AND VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT |

Company Defendants' Motion to Reconsider and Vacate Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 1 of 17

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# **TABLE OF CONTENTS**

Pages

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    BY FAILING TO RESPOND TO DEFENDANTS'
COUNTERCLAIM, PLAINTIFFS HAVE ADMITTED
THAT THEIR CLAIM FOR BREACH OF CONTRACT
IS FATALLY DEFECTIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. The Court Should Take Note of DEFENDANTS' Counterclaim . . . 8

B. The Federal Rules of Civil Procedure Deem PLAINTIFFS'
Failure to Serve an Answer to DEFENDANTS' Counterclaim
as an Admission of the Allegations Set Forth in the Counterclaim . . 8

C. PLAINTIFFS' Admission of the Counterclaim's Allegations Is Fatal
to Their Breach of Contract Claim Under Washington State Law . . . 9

II.   PLAINTIFFS' CLAIMS FOR PATENT AND
TRADEMARK INFRINGEMENT AND UNFAIR
COMPETITION ARE MERITLESS . . . . . . . . . . . . . . . . . . . . . . . . 10

A. Patent Exhaustion Renders the Design Patent Unenforceable . . . 10

B. The Trademark and Unfair Competition Claims Are Meritless . . 13

1. The First Sale Doctrine Defeats These Claims. . . . . . . . . . . 13

2. License Defeats the Trademark
and Unfair Competition Claims . . . . . . . . . . . . . . . . . . . . . . . 13

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 2 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

III.    ALL OF THE ORDERS AT ISSUE HERE ARE INTERLOCUTORY AND SHOULD BE VACATED . . . . . . . . . . .    14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 3 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# TABLE OF AUTHORITIES,

Pages

**Cases**

*Automotive Body Parts Ass'n v. Ford Global Techs., LLC,* 930 F.3d 1314 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . 11

*City of L.A. v. Santa Monica Baykeeper,* 254 F.3d 882 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Frank Briscoe Co. v. Morrison-Knudsen Co.,* 776 F.2d 1414 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Freecyclesunnyvale v. Freecycle Network,* 626 F.3d 509, 516 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garret v. Materia Group LLC,* No. 2:19-cv-1129, 2021 WL 735227, Order Denying Plaintiffs' Motion for Partial Summary Judgment (W.D. Wash. February 25, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gwyn v. Wal-Mart Stores, Inc.,* 955 F. Supp. 44 (M.D.N.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Impression Prods., Inc. v. Lexmark Int'l, Inc.,* 581 U.S. 360, 137 S. Ct. 1523 (2007) . . . . . . . . . . . . . . . . . . . . . . . 10

*Jacks v. Blazer,* 39 Wn.2d 277, 235 P.2d 187 (1951) . . . . . . . . . . . . . . . . . 9, 10

*Jazz Photo Corp. v. U.S. Int'l Trade Comm'n,* 264 F.3d 1094 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lorraine v. Markel Amer. Ins. Co.,* 241 F.R.D. 534 (D.Md. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Multifab, Inc. v. Arlanagreen.com,* 122 F.Supp.3d 1055 (E.D. Wash. 2015). . . . . . . . . . . . . . . . . . . . . 14

*Scott & Fetzer Co. v. Dile,* 643 F.2d 670 (9th Cir. 1981) . . . . . . . . . . . . . . . 15

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 4 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,*
    53 F.3d 1073 (9th Cir. 1994) (*per curiam*) . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Clark Cty. Sch. Dist.,* 727 F.3d 950 (9th Cir. 2013). . . . . . . . . . . . . . 15

**Rules**

Fed. R. Civ. P. 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 7(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 8(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 12(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,14,15

Fed. R. Evid. 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Evid. 901. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Other Authorities**

6A Wash. Prac., Wash. Pattern Jury
    Instr. Div. WPI 302.03 (7th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## PRELIMINARY STATEMENT

The above-captioned action was brought by Plaintiffs Hammerless Tools, LLC, and Eight Eighteen, LLC (collectively "PLAINTIFFS") against company Defendants Clausen, Inc., AT-TT LLC, and Lilac City, LLC (collectively the "COMPANY DEFENDANTS"), and individual Defendant Jonathan Clausen ("CLAUSEN") (CLAUSEN referred to collectively with the COMPANY DEFEN-DANTS as the "DEFENDANTS"). On February 13, 2026, the Court entered a default judgment against the COMPANY DEFENDANTS in the amount of $781,944 and awarded $42,845.50 in attorneys' fees and $484.80 in costs. The Court also entered a permanent injunction ordering the COMPANY DEFENDANTS to cease selling infringing tools and using PLAINTIFFS' marks. (ECF No. 83 at 10-11.) The Clerk entered Judgment against the COMPANY DEFENDANTS that same day. (ECF No. 84)

As set forth more fully *infra,* the interlocutory orders against the COMPANY DEFENDANTS, *e.g.,* the February 13, 2026 default judgment (ECF No. 83), the Clerk's Judgment (ECF No. 84), the Court's preliminary injunction (ECF No. 68), and the Order sanctioning the COMPANY DEFENDANTS (ECF No. 73), depend on the merits of PLAINTIFFS' unverified Complaint, and that Complaint has no merit whatsoever. In addition, the PLAINTIFFS are in default on, and liable for, the Counterclaim in DEFENDANTS' Answer and Counterclaim (ECF No. 33 at 34-35

Company Defendants' Motion to Reconsider and Vacate Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 6 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

¶¶ 51-56.)  For these reasons, the COMPANY DEFENDANTS (1) move the Court for an Order vacating the Court's February 13, 2026 default judgment, the Clerk's Judgment, the preliminary injunction, and the sanctions order; and (2) will seek entry of a default for PLAINTIFFS' failure to reply to DEFENDANTS' Counterclaim.

## ARGUMENT

PLAINTIFFS' breach of contract claims in this action are defeated as a matter of law by PLAINTIFFS' deemed admissions as described in Part I. *infra.*  In addition, as will be shown in Part II. *infra,* PLAINTIFFS' design patent, trademark, and unfair competition claims are not supported by admissible evidence and are contradicted by factual evidence.  Finally, as shown in Part III. *infra,* the Court's February 13, 2025 default judgment, the Clerk's Judgment, the preliminary injunction, and the sanctions order are interlocutory orders which are open to reconsideration and revision under the Court's inherent power and Rule 54(b) of the Federal Rules of Civil Procedure.

**I.    BY FAILING TO RESPOND TO DEFENDANTS' COUNTERCLAIM, PLAINTIFFS HAVE ADMITTED THAT THEIR CLAIM FOR BREACH OF CONTRACT IS FATALLY DEFECTIVE**

PLAINTIFFS' claim for breach of contract (a settlement agreement to stop selling product) is defeated by PLAINTIFFS' failure to have answered the well-pleaded counterclaim set forth in DEFENDANTS' Answer and Counterclaim (ECF No. 33 at 34-35 ¶¶ 51-56).  That Counterclaim sets forth an affirmative defense (and

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 7 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

claim) that the PLAINTIFFS materially breached the bilateral contract by not buying back from the DEFENDANTS unsold product.

There is no good cause to excuse PLAINTIFFS' failure to plead in response to the Counterclaim under the circumstances of this case, where an answer was due well over a year ago, the PLAINTIFFS have at all times been represented by counsel, and are themselves sophisticated businesses. Thus, under Rule 8(b)(6) of the Federal Rules of Civil Procedure, the PLAINTIFFS have admitted an affirmative defense that is fatal to their claim that the DEFENDANTS breached the contract.

**A. The Court Should Take Note of DEFENDANTS' Counterclaim**

The Court is directed to ECF No. 33, pages 34-35, paragraphs 51-56 for the DEFENDANTS' well-pleaded counterclaim that the PLAINTIFFS breached the parties' contract by failing to buy back unsold tools. The Court appears to have overlooked DEFENDANTS' Counterclaim as well as PLAINTIFFS' failure for more than a year to have answered it. The Court should recognize that the PLAINTIFFS have thereby scuttled their own claim for breach of contract.

**B. The Federal Rules of Civil Procedure Deem PLAINTIFFS' Failure to Serve an Answer to DEFENDANTS' Counterclaim as an Admission of the Allegations Set Forth in the Counterclaim**

Rules 7, 8, and 12 of the Federal Rule of Civil Procedure make clear that PLAINTIFFS' failure to answer DEFENDANTS' Counterclaim constitutes an admission of the allegations set forth in the Counterclaim.

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 8 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

First, Rule 7(a)(3) provides that "pleadings . . . allowed [include] . . . an answer to a counterclaim designated as a counterclaim . . . ." Fed. R. Civ. P. 7(a)(3).

Second, Rule 12(a)(1)(B) states in pertinent part that "[a] party must serve an answer to a counterclaim . . . within 21 days after being served . . . ." Fed. R. Civ. P. 12(a)(1)(B). As shown by its Certificate of Service, DEFENDANTS' Answer and Counterclaim was served on PLAINTIFFS' counsel on January 24, 2025. (ECF No. 33.) There is no answer at all to DEFENDANTS' Counterclaim.

Third, Rule 8(b)(6) states: ***"An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . ."*** Fed. R. Civ. P. 8(b)(6) (emphasis added). Per Rule 8(b)(6), the allegations in the Counterclaim were admitted, as a responsive pleading to the Counterclaim designated as a counterclaim was required, but the PLAINTIFFS never made a responsive pleading denying the Counterclaim's allegations.

### C. PLAINTIFFS' Admission of the Counterclaim's Allegations Is Fatal to Their Breach of Contract Claim Under Washington State Law

Under applicable Washington state law, the PLAINTIFFS' failure to have performed their own material contractual obligations is legally fatal to their claim that the DEFENDANTS breached the same contract. "'A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty.'"

*Jacks v. Blazer,* 39 Wn.2d 277, 285, 235 P.2d 187, 191 (1951). *Accord, e.g., Garret v. Materia Group LLC,* No. 2:19-cv-1129, 2021 WL 735227, *3, Order Denying Plaintiffs' Motion for Partial Summary Judgment (W.D. Wash. February 25, 2021) (quoting *Jacks*), copy appended as **Exhibit A**; 6A Wash. Prac., Wash. Pattern Jury Instr. Div. WPI 302.03 (7th ed.) (citing authorities), copy appended as **Exhibit B**. PLAINTIFFS' material breach (for failing to buy back product) has been admitted as described in Part I. above. PLAINTIFFS thereby completely scuttled their claim for breach of contract.

## II. PLAINTIFFS' CLAIMS FOR PATENT AND TRADEMARK IN-FRINGEMENT AND UNFAIR COMPETITION ARE MERITLESS

### A. Patent Exhaustion Renders the Design Patent Unenforceable

DEFENDANTS' Answer pleaded patent exhaustion as an affirmative defense. (ECF No. 33 at 23, ¶ 13.) It is well-settled that the unrestricted sale of a patented article "'exhausts' the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold." *Jazz Photo Corp. v. U.S. Int'l Trade Comm'n,* 264 F.3d 1094, 1105, 1110 (Fed. Cir. 2001) (patents, including design patents, held exhausted on first sale). *See also, e.g., Impression Prods., Inc. v. Lexmark Int'l, Inc.,* 581 U.S. 360, 366, 372-77, 137 S.Ct. 1523 (2007) (exhaustion is automatic upon any authorized sale, even one accompanied by express after-sale restrictions). There is no difference between design and utility patents for purposes

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 10 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

of the exhaustion doctrine. *E.g., Automotive Body Parts Ass'n v. Ford Global Techs., LLC,* 930 F.3d 1314, 1323 (Fed. Cir. 2019).

In the case at bar, the Court appears to have been consistently under the mistaken impression that the DEFENDANTS have sold more product than they bought from the PLAINTIFFS.   For example, the Order granting PLAINTIFFS' motion for a default judgement and permanent injunction against the COMPANY DEFENDANTS (ECF No. 83) accepts at page 9 that "Defendants have stated that they have sold over 40,000 tools, which is at least 23,704 more than Defendants purchased from Plaintiffs."  However, any such round sales figure was mere puffery on a website, and insufficient to contradict sworn evidence filed early in the case.

As the Declaration of Jonathan Clausen in Opposition to Plaintiffs' Motion for Preliminary Injunction, dated January 15, 2025, stated in pertinent part:

> Since the Settlement Agreement was signed [on June 28, 2024], I have not manufactured or purchased any tools.  Instead, I am continuing to sell the AR-TT Tools which I purchased from Plaintiffs as late as January of 2023.  There was a substantial delay in sales efforts . . . . I am still working to sell my original inventory.  With that said, I am currently looking for a new manufacturer to create tools which do not infringe on Plaintiffs' [design] patent.

(ECF No. 47 at ¶ 39.)

As explained in Defendants' Opposition memorandum:

> Plaintiffs support their patent infringement claims on baseless assertions that Defendants have obtained a new manufacturer to sell tools which infringe on their patent.  This is false.  Defendants have not

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 11 of 17

manufactured any tools or purchased any tools from any new manufacturer, which has been confirmed by Defendants' supplier. Clausen Decl., at ¶ 39, McDonald Decl., at ¶¶ 4-7. . . . Pursuant to the patent exhaustion doctrine, Plaintiffs' authorized sale of their patented tools to Defendants terminated Plaintiffs' patent rights in those tools. Accordingly, this claim must fail.

(ECF No. 46 at 15-16.)

It should be noted that any round figures of 30,000 or 40,000 tools sold which PLAINTIFFS apparently extracted from DEFENDANTS' Internet website were not only mere puffery, but are inadmissible as unauthenticated, ***multi-level*** hearsay. PLAINTIFFS have not established any exception to the hearsay rule that would admit such evidence. And without a witness to authenticate the data source and testify as to its accuracy, the evidence is inadmissible. Fed R. Evid. 801 (hearsay), 901 (authentication); *Lorraine v. Markel Amer. Ins. Co.,* 241 F.R.D. 534, 537-56, 562-76 (D.Md. 2007). The Court should have disregarded those figures entirely.

Even if admissible, such figures constitute classic puffery. Large, round-number sales figures are vague, unreliable marketing boasts upon which no reasonable factfinder should have relied. *See Gwyn v. Wal-Mart Stores, Inc.,* 95 F. Supp. 44, 46 (M.D.N.C. 1997) (puffing is insufficient proof of an amount). Even if the evidence on which the Court apparently relied were admissible, it should have been given little or no weight, particularly when contradicted, as it was here, by competent sworn testimony, leaving PLAINTIFFS with no real evidence of infringing sales.

Company Defendants' Motion to Reconsider and Vacate Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 12 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## B. The Trademark and Unfair Competition Claims Are Meritless

PLAINTIFFS' trademark infringement and unfair competition claims are meritless for, *inter alia,* these reasons*:* (1) the first sale doctrine, (2) PLAINTIFFS granted DEFENDANTS a license, and (3) the failure of proof that DEFENDANTS sold tools not purchased from PLAINTIFFS. We focus below on the first two reasons.

### 1. The First Sale Doctrine Defeats These Claims

DEFENDANTS' Answer asserts that PLAINTIFFS' claims are barred by the first sale doctrine. (ECF No. 33 at 23, ¶ 14.) In *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1076 (9th Cir. 1994) (*per curiam*), the Ninth Circuit articulated the first sale doctrine:

> It is of the essence of the "first sale" doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act.

That principle is dispositive here of the trademark and unfair competition claims.

### 2. License Defeats the Trademark and Unfair Competition Claims

DEFENDANTS' Answer asserts that PLAINTIFFS' Complaint is barred because PLAINTIFFS provided a license to perform the acts of which they now complain. (ECF No. 33 at 23, ¶ 11.) Key evidence of license in this case was overlooked by the Court – *i.e.,* a text message from Goss to Clausen on August 27, 2021, stating in pertinent part: "Hopefully she can play with the HIT Tool logo and

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 13 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

make an AR-TT logo that you like and works . . . The only thing I ask is that you keep the vertical HAMMERLESS IMPACT TECHNOLOGY somewhere in there . . ."  Clausen Decl., Exhibit A (ECF No. 47.)  This evidence is entirely consistent with the sworn assertions in Clausen's Declaration at paragraph 9, and a naked license like the one granted here abandons the trademarks.  *FreecycleSunnyvale v. Freecycle Network,* 626 F.3d 509, 516, 520 (9th Cir. 2010).

Washington state common law trademark claims as well as claims for unfair competition are complementary to claims under the Lanham Act.  Such claims generally are dismissed when Lanham Act claims fail.  *Multifab, Inc. v. ArlanaGreen.com,* 122 F.Supp.3d 1055, 1067 (E.D. Wash. 2015) (dismissing all).  Thus, PLAINTIFFS' Washington state law claims should suffer the same fate as their federal counterparts.

### III.    ALL OF THE ORDERS AT ISSUE HERE ARE INTERLOCUTORY AND SHOULD BE VACATED

All of the orders at issue here, the default, and the default judgment should not stand.  They are all interlocutory because they deal only with the COMPANY DEFENDANTS (and not CLAUSEN) and none of them address DEFENDANTS' Counterclaim denominated as such.  The Court made no express determination that there is no just reason for delay, as would be required by Rule 54(b) for direction of a final judgment adjudicating less than all claims against all parties.  Fed. R. Civ. P.

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 14 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

54(b). Accordingly, the denominated default judgment was not a final judgment. *Frank Briscoe Co. v. Morrison-Knudsen Co.,* 776 F.2d 1414, 1416 (9th Cir. 1985).

Rule 54(b) instructs that in such a situation "any order or other decision, however designated . . . does not end the action as to any of the claims or parties . . . **and may be revised at any time before the entry of a judgment adjudicating all the claims."** Fed. R. Civ. P. 54(b) (emphasis added). The Court's orders are subject to flexible judicial revision pursuant to Rule 54(b) and the Court's inherent authority. *City of L.A. v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir. 2001).

It has been shown *supra* that the Court's orders against the COMPANY DEFENDANTS should be reconsidered and vacated to correct clear error and avoid manifest injustice against them. *Smith v. Clark Cty.. Sch. Dist.,* 727 F.3d 950, 955 (9th Cir. 2013). And if the Court determines that the underlying injunction against the COMPANY DEFENDANTS is invalid, the successor civil contempt should be vacated as well. *E.g., Scott & Fetzer Co. v. Dile,* 643 F.2d 670, 675 (9th Cir. 1981).

## CONCLUSION

For the foregoing reasons, this motion should be granted, and an order entered: (1) vacating the Court's interlocutory orders, including ECF Nos. 83, 84, 68, 71, and 73; and (2) granting such other and further relief to the COMPANY DEFENDANTS as is just and proper.

Dated: April 7, 2026                    Respectfully submitted,

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 15 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

By:  /s/ *Stephen L. Sulzer*
Stephen L. Sulzer
(appearing *pro hac vice*)
**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

/s/ *Douglas R. Dick*
Douglas R. Dick
ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen, Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 16 of 17

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system, including the following

> Caleb Hatch, WSBA #51292
> Johanna R. Tomlinson, WSBA #57582
> Lee & Hayes, P.C.
> 601 W. Riverside Ave., Suite 1400
> Spokane, WA 99201
> Email: caleb.hatch@leehayes.com
> Email: johanna.tomlinson@leehayes.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 7th day of April 2026.

_____

**Julie Sutter,** Legal Assistant

Company Defendants' Motion to Reconsider and Vacate
Because Plaintiffs' Claims Are Devoid of Merit
Case No. 2:24-CV-00413-SAB
Page 17 of 17

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*EXHIBIT A*

2021 WL 735227
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington, at Seattle.

## David GARRET and TLJ, LLC, Plaintiffs, v. MATERIA GROUP LLC, Materia Group, Inc., Derek Muller, Anthony Bergin, William Powell, John Motta and Joseph Motta, Defendants.

NO. 2:19-cv-1129
|
Signed 02/25/2021

**Attorneys and Law Firms**

Joseph Curtis Edmondson, Law Office of J. Curtis Edmondson, Hillsboro, OR, for Plaintiffs.

Michael T. Callan, Peterson Russell Kelly PLLC, Bellevue, WA, Todd W. Wyatt, Wyatt Debenedetti PLLC, Issaquah, WA, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Barbara Jacobs Rothstein, U.S. District Court Judge

## I. INTRODUCTION

**\*1** This matter comes before the Court on a Motion for Partial Summary Judgment, filed by Plaintiffs David Garret and TLJ, LLC ("Plaintiffs"). The motion seeks a judgment against Defendant Anthony Bergin ("Defendant") only, on three counts in the Complaint, for (1) breach of contract; (2) breach of fiduciary duty; and (3) breach of duty of trust and loyalty. The motion does not address other counts in the Complaint (copyright infringement, fraud, and trespass, among others), or seek judgment against any of the other defendants in this case.

Bergin opposes the motion, arguing that on certain claims, questions of fact preclude summary judgment against him, and that on other claims, summary judgment should be entered in *his* favor. Having reviewed the briefs, declarations, and exhibits filed in support of and opposition to the motion, and the remainder of the record, the Court finds and rules as follows.

## II. FACTUAL BACKGROUND

Garret and Bergin met in 2014 or 2015. *See* Decl. of Anthony Bergin, ¶ 4. They began discussing plans to start a clothing brand together, and in April 2015, they entered into an "Operating Agreement" to form a business entity they called "TLJ CORP, LLC" ("TLJ"). *See* "Partnership Agreement," Decl. of David Garret, Ex. 1.[1] Garret, a clothing designer, and Bergin, who has a business background, planned to sell lumberjack-styled clothing and accessories—based on the "Pacific Northwest" style of "plaids, outdoor gear, etc."—under the brand "LumberUnion." Bergin Opp. Br. at 2; *see also* Bergin Decl., ¶ 3; Mot. at 1; Garret Decl., ¶¶ 3, 4. The company used a logo Garret claims to have designed, featuring a silhouette of a bearded man, crossed axes, and a heart shape. Bergin Decl. ¶ 5.[2]

In September 2015, Garret's father, Ronald Butler, loaned TLJ $43,000. Garret Decl., ¶ 6; Decl. of Ronald Butler, ¶ 4; Ex. 1. In November 2015, Defendant Joseph Motta (alternately referred to as Bergin's "contact" or "roommate") loaned TLJ $15,000, to be repaid in full by November 22, 2016. Garret Decl., Ex. 4. Joseph's father, Defendant John Motta, loaned the company $5,000, to be repaid in full by January 22, 2016. Garret Decl., Ex. 3. Both of the Mottas' loans were secured by the "trademarks, designs, and intellectual property" owned by TLJ, including the lumberjack logo and control of the domain name "LumberUnion.com," and TLJ agreed to transfer ownership of that IP to the note holders in the event of default. Garret Decl., Exs. 3 & 4. Garret claims Bergin did not share "details of the loans" with him, and that he had "no knowledge" the loans were secured by TLJ's intellectual property. Garret Decl. ¶ 9. Bergin disputes this, declaring that Garret "knew of and approved both loans.... He knew the loans were secured." Bergin Decl. ¶ 19.

**\*2** Despite these loans, by the end of 2015 the company was running out of funds, and the business relationship

between Bergin and Garret had begun to deteriorate. Garret Decl. ¶ 13. Garret claims that "[f]rom January 2016 to June 2016, Bergin took control of TLJ's limited operations without keeping me apprised of the day-to-day details, as he had assured me he would do." Garret Decl., ¶ 11. Bergin claims Garret had grown "reclusive" and "hard to reach," and says he made "multiple efforts to try to engage with Garret, but he again failed to respond or participate in any meaningful way." Bergin alleges that "[o]ur efforts to get the products in front of buyers were constantly hampered by Garret's inability to show up for meetings, present himself in a professional manner, and generally push the company forward." Bergin Decl., ¶¶ 13, 17, 22.

In mid-July 2016, Bergin approached Garret offering to buy Garret's share of the company. Garret characterizes Bergin's offer as extortionate, claiming Bergin said that Garret's father would never be repaid unless Garret agreed to "split up TLJ's debt and close up operations, or sign over the company to Bergin." Mot. at 4; citing Garret Decl. ¶13, Ex. 7. Bergin claims that by that time, "TLJ was again out of cash, had only created a limited inventory, and was not doing any business to speak of. With Garret no longer participating, [he] did not want to sink any further of [his] time or money into the business." Bergin Decl. ¶ 24.

Around this time, Bergin claims he identified dealing with the elder Motta's loan as a priority, believing TLJ's other creditors, Joseph Motta (Bergin's friend) and Ronald Butler (Garret's father), were unlikely to "initiate legal proceedings." Bergin Decl. ¶ 22. According to Bergin, "John [Motta] expressed a willingness to accept the IP and some limited inventory in exchange for forgiveness of the loan," and Bergin "accepted this offer on behalf of TLJ." *Id.*, ¶ 25. Bergin claims Garret "knew about this." *Id.* Garret denies that at the time he was told about this assignment, and alleges the transaction was a "sham" by which Bergin had schemed to steal TLJ assets by transferring the IP to a "strawman." Mot. at 13.

Bergin claims that at some unspecified point after assignment of the IP, he resigned from TLJ. Bergin Decl. ¶ 26. Then, allegedly after resigning from TLJ, on or about July 26, 2016, Bergin created what Garret characterizes as a "competing" company, Defendant Materia Group LLC, which later became Defendant Materia Group, Inc. ("Materia"). Bergin hired a former LumberUnion brand designer, Defendant Derek Muller, among others, to help Materia's startup efforts. Bergin claims John Motta, then the owner of TLJ's former IP, offered to sell that IP, which Materia agreed to buy. Bergin Decl., ¶ 27. Bergin claims that apart from $1,000

worth of hats, "[n]one of the inventory or IP Materia Group received from John Motta was used or sold." Bergin Decl., ¶ 28.

Plaintiffs' motion seeks summary judgment in their favor against Defendant Bergin only, on three of the nine counts in the Complaint: (1) Breach of Fiduciary Duty (Count II); (2) Breach of Trust/Loyalty (Count III); and (3) Breach of Contract (Count IV). *See* Compl. ¶¶ 46-61. Bergin opposes the motion, asserting that disputes of fact preclude summary judgment or, in the alternative, that he is entitled to judgment on certain issues. Plaintiffs' motion also seeks adjudication of the damages amount, which Plaintiffs assert is $3 million.

## III. DISCUSSION

### A. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Fed.R.Civ.P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

**\*3** Where, as with Plaintiffs' motion here, the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Otherwise, the motion should be denied.

### B. Breach of Contract Claim

Plaintiffs seek adjudication of their breach of contract claims against Defendant Bergin, based on the parties' Operating Agreement. More specifically, Plaintiffs claim that Bergin breached the Agreement in the following ways: (1) by starting an allegedly competing company, Materia Group, LLC, and transferring TLJ assets to that company, through "strawman" John Motta, in violation of the Operating Agreement's non-compete clause; (2) by borrowing an amount in excess of $5,000 from Joseph

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    2

Motta without Garret's written consent, as apparently required by ¶ 3 of the Operating Agreement; (3) by "demand[ing] that Garret either agree to split up TLJ's debt and close up operations, or sign over the company to Bergin, which was not a contractual provision available under the Operating Agreement," Mot. at 9; and (4) by failing to give 60 days' notice of his intent to withdraw from the company, as required under ¶ 8 of the Operating Agreement. Bergin opposes summary judgment in Plaintiffs' favor on any of these claims, as discussed below.

### 1. TLJ's Breach of Contract Claim Is Dismissed

Bergin argues that Plaintiff TLJ was not a party to the Operating Agreement, and therefore cannot maintain an action to enforce it. Plaintiffs make no attempt to oppose this argument or to clarify under what theory or authority TLJ has standing to enforce the contract to which it is not a party, and its breach of contract claim is therefore dismissed.

### 2. Bergin Has Demonstrated That There Is a Genuine Issue of Material Fact Whether Garret Was in Material Breach of Agreement

Bergin next argues that Garret cannot sue to enforce terms of the Operating Agreement because he, Garret, is himself in material breach of that agreement. *See DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wash. App. 205, 220 (2014) (citing *Jacks v. Blazer*, 39 Wash.2d 277, 285–86, 235 P.2d 187 (1951))("[A] breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."). Bergin claims that Garret "was not working full time as required by the agreement" and "effectively abandoned the business in early 2016." Bergin's Opp. Br. at 10, citing Bergin Decl., ¶¶ 13-22; Garret Decl., Ex. 1 ("The partners shall provide their full-time services and best efforts on behalf of the partnership."). Bergin adds that Garrett "was more often than not unresponsive and nonfunctional (often on drugs) when he was awake. He was suffering from mental illness and substance abuse." Bergin Decl., ¶ 21.

Garret does not deny Bergin's allegations. Instead, he objects to the nature of the evidence Bergin submits in support of allegations about Garret's material breach,

arguing the allegations are among other things "hearsay" and lacking foundation, and should be stricken.[3] However, many of the allegations in Bergin's declaration, while vague, conform to the rules of evidence. The allegations are sworn under penalty of perjury in a form expressly authorized by Fed. R. Civ. P. 56(e), and generally may be construed as reflecting Bergin's first-hand knowledge. *See, e.g.,* Bergin Decl., ¶ 13 ("As 2015 wore on, however, Garret started to disengage. He became more recluse, hard to reach, would not help with tasks, and generally appeared over his head on participating."); ¶ 21 ("On business trips I discovered him blacked out drunk and unable to attend meetings. He was no longer responding to communications or helping with the work."); ¶ 22 ("I did make multiple efforts to try to engage with Garret, but he again failed to respond or participate in any meaningful way."). Construing Bergin's testimony in a light most favorable to him, the non-moving party, the Court concludes that Bergin has raised an issue of fact as to whether Garret was in material breach of the Operating Agreement, which would be a defense to any breach of contract claim.

### 3. Plaintiffs' Motion Fails to Demonstrate Absence of Factual Disputes

**\*4** Disputes of fact also preclude summary judgment on specific elements of Garret's breach of contract claim as well. Garret claims that Bergin started Materia Group, a "competing" company, presumably in violation of the Operating Agreement's non-compete clause. That clause prohibits a party from "engag[ing] in a business which is or which would be competitive with the existing or then anticipated business of [TLJ] for a period of 30 DAYS" after retiring from TLJ. Garret Decl., Ex. 2, ¶ 9. Bergin argues that TLJ was not engaged in *any* "existing" or "anticipated" business by mid-July, when he started Materia Group, but was by then essentially a "dead entity." Bergin Decl., ¶¶ 24-25. And he claims that Materia did not engage in "any business" for the first five months of its existence, well after the 30-day limitation had expired. Covenants not to compete must be construed narrowly, and Bergin has easily raised issues of fact as to whether starting the Materia company constituted a breach of the Operating Agreement's non-compete clause. *See Perry v. Moran*, 109 Wn. 2d 691, 706 (1989).

### 4. Garret's Motion Fails to Satisfy Elements of Breach of Contract Claim

Finally, the Court declines to grant summary judgment on Garret's various other breach of contract theories, as he has simply failed to lay out the four essential elements of such a claim—duty, breach, causation, and damages—and to explain in what way Bergin's actions support those elements. For example, Garret claims as his primary injury the assignment of TLJ's IP to John Motta, but fails to specify what provision of the Operating Agreement this action breached. *See* Mot. at 10 (stating only that "[t]hese actions were taken in violation of the Operating Agreement.").

As another example, even assuming that in approving the loan from Joseph Motta Bergin breached the provision in the Operating Agreement requiring Garret's signature for any loan over $5,000, it is not clear that the $15,000 loan caused any injury. The loan resulted in an infusion of $15,000 into the company, and it does not appear that the younger Motta has initiated (or plans to initiate) any legal proceedings for repayment. *See* Dep. of Joseph Motta at 162, Decl. of Curtis Edmondson, Ex. 3, Dkt. No. 44-6. And, while the assignment of TLJ's IP might arguably qualify as an injury, it was made in connection with the $5,000 loan from *John* Motta, Joseph's father, which was under the $5,000 threshold in the Operating Agreement clause requiring Bergin to obtain Garret's written permission.

Similarly, it is not clear what injuries might have resulted from any breach of the provision requiring Bergin to give 60 days' written notice for retirement or withdrawal from the company, even assuming that Bergin failed to provide it. And Plaintiffs' motion fails entirely to discuss causation as to any of the breach of contract claims. Having failed to establish all of the necessary elements, Garret is not entitled to summary judgment on his breach of contract claim.

### C. Claims for Breach of Fiduciary Duty and Breach of Trust/Loyalty

Plaintiffs also seek summary judgment on Counts II and III: "Breach of Fiduciary Duty," and "Breach of Trust/Loyalty," respectively. In Washington, the "only fiduciary duties that a member ... has to the limited liability company and its members are the duties of loyalty and care" as follows:

(1) account[ing] to the limited liability company and hold[ing] as trustee for it any property, profit, or benefit ...

(2) refrain[ing] from dealing with the limited liability company as or on behalf of a party having an interest adverse to the limited liability company; ...

(3) refrain[ing] from competing with the limited liability company ...

(4) refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.[4]

RCW 25.15.038(1)-(3).

**\*5** Plaintiffs argue that Bergin breached these duties to them in the following ways: (1) "by entering into a note with John Motta in November 2015, with the ineffective intent to try and transfer assets from TLJ for use by competitor Materia via a 'strawman,' " Mot. at 12-13; (2) by entering into a loan with Joseph Motta, in excess of the $5,000 limit requiring written permission of both members of TLJ; and (3) by assigning ownership of TLJ's intellectual property to John Motta without Garret's knowledge. The sum of Plaintiff's argument on these claimed breaches is that "[t]hese acts were clearly a breach of loyalty and duty of care." Mot. at 13.[5]

On a motion for summary judgment, the moving party "bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On their claims for breach of fiduciary duty and duty of loyalty, the Plaintiffs have failed to meet this threshold burden in their motion. First, Plaintiffs fail to tie any of their factual allegations to any of the specifically enumerated duties articulated in the statute. Furthermore, as to their first theory, Plaintiffs have submitted no evidence whatsoever that Bergin entered into the loan obligation with John Motta with anything other than an intent to benefit TLJ; the characterizations of Motta as a "strawman" and the transaction as a "sham," at this stage at least, are pure speculation.

Plaintiffs' second theory regarding Counts II and III suffers from the same deficiency as the one outlined above, § III.B.4.; Plaintiffs have failed to allege any damages that may have resulted from the $15,000 loan from Joseph Motta. Because Motta has indicated he has no intention of demanding repayment on the loan, if anything, the evidence suggests that it represents a $15,000 windfall to TLJ. Moreover, for breach of fiduciary duty claims based on either of the Motta loans, both made in November 2015, it appears (although neither party has addressed the question) that the statute of limitations may have run before Plaintiffs filed their

Complaint on July 20, 2019. RCW 4.16.080.

As to their third theory, Plaintiffs argue that Bergin breached his fiduciary duty and duty of loyalty and trust by "assigning the rights to the creative assets owned by TLJ, without any knowledge of the majority stakeholder in the business [Garret] and without any pressure that the $5,000 Note was going to be foreclosed upon." Mot. at 13. Bergin has claimed, however, that assignment of TLJ's IP to John Motta was in satisfaction of the $5,000 debt. Consistent with this claim, the evidence demonstrates that the loan was past due, and TLJ had no other assets with which to pay it. Garret does not allege that the IP was worth some amount disproportionate to the debt it satisfied. There is simply no evidence presented that this transaction was the result of "fraud, dishonesty, or incompetence," and under the business judgment rule, "corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." *Nelson v. Pryor*, 3 Wash. App. 2d 1007 (2018), citing *Scott v. Trans–Sys., Inc.*, 148 Wn.2d 701, 709 (2003). None of the allegations made in Plaintiffs' motion indicate Bergin's actions were anything other than an appropriate exercise of his business judgment.

### D. Damages
**\*6** In the absence of a ruling on liability, the Court declines to reach Plaintiffs' motion as it relates to Plaintiffs' $3 million damages claim.

### E. Defendant Bergin's Cross-Motion for Summary Judgment
Finally, in his opposition to Plaintiffs' motion, Bergin submits a cross-motion seeking dismissal of the breach of contract, breach of fiduciary duty, and breach of loyalty and trust claims. While his arguments may indeed have merit, Bergin presents only the sparest factual allegations and minimal legal argument that he is entitled to judgment as a matter of law, and thus, like Plaintiffs, has also failed to meet his initial burden of production for summary judgment. Therefore, other than as stated above regarding dismissal of TLJ's breach of contract claim, the Court denies Bergin's motion for cross summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment; and GRANTS in part Defendant Bergin's Cross-Motion for Summary Judgment, dismissing Plaintiff TLJ's breach of contract claim.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 735227

### Footnotes

1    The document, which the parties obtained off the internet, is labeled "Partnership Agreement." Both parties refer to it as an "Operating Agreement," and the parties agree that their intent was to create a limited liability company. *See* Garret Decl., Ex. 1; Bergin Decl. ¶ 11.

2    Bergin claims he later learned that Garret did not create the design himself, but stole the artwork from a media website. Bergin Decl., ¶¶ 6-10.

3    In what appears to be an attempt to circumvent page limitations (which Garret's Reply already exceeds), the bulk of Garret's evidentiary objections are submitted in the "Supplemental Declaration" of Garret's attorney, Curtis Edmondson. Dkt. No. 53-1. Declarations, according to Fed. R. Civ. P. 56(c), are to "set out facts that would be admissible in evidence," not evidentiary objections or legal argument. The Court considers (and as stated above, rejects) Garret's evidentiary objections, but will not

**Garret v. Materia Group LLC, Not Reported in Fed. Supp. (2021)**

address each of them line by line as they are set out in this improper declaration.

4    By the plain language of the statute, these duties are not limited, as Bergin argues, to the winding up of the LLC, but apply to the member's activities "in the conduct **and** winding up of the limited liability company's activities." RCW 25.15.038 (emphasis added).

5    Plaintiffs do not expressly argue that Bergin's involvement with Materia constituted a breach of fiduciary duty or duty of loyalty/trust. As noted above at § III.B.3, however, even if they had, there remains a dispute of fact as to whether Bergin started a company that would compete with TLJ, or whether TLJ was effectively defunct, and/or whether Bergin had resigned from TLJ at any time Materia may have been construed as competing.

---

**End of Document**                                     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT B*

6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 302.03 (7th ed.)

**Washington Practice Series TM** | April 2022 Update

**Washington Pattern Jury Instructions--Civil**
Washington State Supreme Court Committee on Jury Instructions

**Part XIII. Contracts**

**Chapter 302. Contracts—Performance and Breach**

## WPI 302.03 Material Breach—Definition

**A "material breach" is a breach that is serious enough to justify the other party in abandoning the contract. A "material breach" is one that substantially defeats the purpose of the contract, or relates to an essential element of the contract, and deprives the injured party of a benefit that he or she reasonably expected.**

**NOTE ON USE**

Use this instruction when one party seeks to avoid enforcement of a contract on the basis of a material breach by the other party and it is appropriate for the jury to determine whether a breach is material. Depending upon the circumstances of the case, it may be appropriate to add language from the provisions of the Restatement (Second) of Contracts section 241, set forth in the Comment below.

**COMMENT**

The instruction is cited as authoritative in Park Avenue Condominium Owners Association v. Buchan Developments, L.L.C., 117 Wn.App. 369, 71 P.3d 692 (2003).

"A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." Jacks v. Blazer, 39 Wn.2d 277, 285, 235 P.2d 187 (1951); see also 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn.App. 700, 281 P.3d 693 (2012).

A material breach sufficient to allow rescission of a contract is one that "substantially defeats the purpose of the contract." Mitchell v. Straith, 40 Wn.App. 405, 410, 698 P.2d 609 (1985); see also Top Line Builders, Inc. v. Bovenkamp, 179 Wn.App. 794, 808, 320 P.3d 130 (2014).

The materiality of a breach is a question of fact. Bailie Commc'ns, Ltd. v. Trend Bus. Sys., 53 Wn.App. 77, 82, 765 P.2d 339 (1988). The question of materiality depends on the circumstances of each particular case. Vacova Co. v. Farrell, 62 Wn.App. 386, 403, 814 P.2d 255 (1991).

Breach of a substantial part of an entire contract gives the injured party an election to abandon the contract, or to perform and recover damages. Colorado Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 167 P.3d 1125 (2007) (general contractor brought action against surety to recover on subcontractor's performance bond); Campbell v. Hauser Lumber Co., 147 Wash. 140, 145, 265 P. 468 (1928). In determining whether a breach of some, but not all, of the contract terms is substantial, rather than trivial or inconsequential, the jury may properly consider whether the injured party would have been less willing to enter the contract without those terms. Campbell, 147 Wash. at 148.

According to the Restatement (Second) of Contracts § 241 (1981):

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
> 
> (a) the extent to which the injured party will be deprived of a benefit which he reasonably expected;
> 
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> 
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeitures;
> 
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failures, taking account of all the circumstances including any reasonable assurances;
> 
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

See Bailie Commc'ns, 53 Wn.App. 77 (citing and applying the Restatement (Second) of Contracts (1981) criteria); see also DC Farms, LLC v. Conagra Foods Lamb Weston, Inc., 179 Wn.App, 205, 221, 317 P.3d 543 (2014); DeWolf, Allen, & Caruso, 25 Washington Practice, Contract Law and Practice § 10:1 (3d ed.).

*[Current as of April 2021.]*

Westlaw. © 2022 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.