STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,*
*Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

HAMMERLESS TOOLS, LLC and
EIGHT EIGHTEEN, LLC,

        Plaintiffs,

    v.

JONATHAN CLAUSEN, CLAUSEN,
INC., AR-TT LLC, and LILAC CITY,
LLC,

        Defendants.

Case No.: 2:24-CV-00413-SAB

COMPANY DEFENDANTS'
REPLY MEMORANDUM IN
SUPPORT OF MOTION TO
RECONSIDER AND VACATE
BASED ON FAILURES OF
SERVICE

## TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

REPLY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

   I.  THE PROCESS SERVER – CALEB HATCH, ESQ. – FAILS TO REBUT THE COMPANY DEFENDANTS' PROOF THAT THEY WERE NEVER PROPERLY SERVED WITH ANY OF PLAINTIFFS' MOVING PAPERS DURING THE PERIOD WHEN THE COMPANY DEFENDANTS WERE WITHOUT COUNSEL . . . . . . . . . . . . . . . . . . . . .  6

     A.  The Process Server Does Not Adduce Any Evidence That the Company Defendants Consented in Writing to Service by Email of Any Moving Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

     B.  The Process Server Does Not Adduce Any Evidence That the Company Defendants Were Served by U.S. Mail With Any Moving Papers That Were Filed Electronically With the Court. . . . . .  8

   II.  PLAINTIFFS' MEMO DOES NOT DENY THAT IF THE COMPANY DEFENDANTS WERE NOT PROPERLY SERVED WITH MOVING PAPERS, SUCH SERVICES WERE VOID, AND NO RESPONSES FROM THE COMPANY DEFENDANTS WERE NECESSARY . . . . . . . .10

   III.  THE MOTION FOR VACATUR IS TIMELY . . . . . . . . . . . . . . . . . . . . . . .10

   IV.  THE MOTION FOR VACATUR IS GROUNDED ON RULE 54(b) AND THE COURT'S INHERENT AUTHORITY TO REVISIT INTERLOCUTORY ORDERS TO CORRECT CLEAR ERRORS AND AVOID MANIFEST INJUSTICE . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 2 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# **TABLE OF AUTHORITIES**

Pages

## **Cases**

*Calderon v. IBEW Local 47,* 508 F.3d 883
(9th Cir. 2007) (*per curiam*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

*City of L.A. v. Santa Monica Baykeeper,*
254 F.3d 882 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11, 13

*In re Ksenzowski,* 56 B.R. 819 (Bankr. E.D.N.Y. 1985) . . . . . . . . . . . . . . . .    14

*Queen v. Van Well Nursery, Inc.,* No. 2:20-CV-00181-SAB,
2025 WL 790939 (E.D. Wash. Mar. 12, 1995) . . . . . . . . . . . . . . . . . .    13

*Stanley-Aldrich v. Home Depot USA, Inc.,*
No. 2:24-cv-02372-CDS-NJK,
2026 WL 700028 (D. Nev. Mar. 11, 2026) . . . . . . . . . . . . . . . . . . . . . .    10, 11

*Walden v. Pagsisihan,* No. 1:24-CV-03173-SAB,
Order (E.D. Wash. May 30, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . .    13

*Zelaya-Romero v. Bussanich,* No. 22 Civ. 10909,
2025 WL 2780855 (S.D.N.Y. Sept. 30, 2025) . . . . . . . . . . . . . . . . . . .    11

*215 African & Hispanic Amer. Realty of N.Y. LLC*
*v. Air Chef, Inc.*, Index No. 117923/09,
Mot. Seq. No. 3, 2012 N.Y. Slip Op. 32187(U),
2012 WL 3638865 (Sup. Ct. N.Y. Co. Aug. 16, 2012) . . . . . . . . . . . . .    7

## **Rules**

Fed. R. Civ. P. 5(b)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Fed. R. Civ. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Fed. R. Civ. P. 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 3 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Fed. R. Civ. P. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Local Civil Rule 5(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8, 9

Local Civil Rule 7(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 4 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## **PRELIMINARY STATEMENT**

By this Reply Memorandum and an accompanying Reply Declaration of Jonathan Clausen with annexed Exhibit A, the Company Defendants (Clausen, Inc.; AR-TT LLC; and Lilac City, LLC) reply to the opposition filed by the Plaintiffs on the Company Defendants' motion (ECF Nos. 107, 107-1, and 108) for an Order vacating *nunc pro tunc* the Court's interlocutory orders adverse to the Company Defendants – *i.e.*, ECF Nos. 83, 84, 71, and 73 – entered as a result of moving papers improperly served upon the Company Defendants during a period when they were without legal representation.

The opposition papers replied to are an opposing Declaration of Caleb Hatch, Esq., dated April 20, 2026 (ECF No. 120), an opposing Plaintiffs' Memorandum of the same date (ECF No. 119), and their proposed Order (ECF No. 121).

The Company Defendants' evidentiary showing in support of the instant motion stands unrebutted by Plaintiffs' opposition papers. Plaintiffs fail to produce any evidence that rebuts the Company Defendants' showing that they were not properly served with Plaintiffs' moving papers during the period the Company Defendants were not represented by counsel. With no effective evidentiary rebuttal from the Plaintiffs, no evidentiary hearing is needed for the Court to recognize the services as improper and void. At bottom, as shown *infra,* Plaintiffs do not present any legally- or factually-sustainable support for their opposition to the instant motion.

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 5 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## REPLY ARGUMENT

Process server Caleb Hatch, Esq. ("Hatch") fails to rebut the Company Defendants' proof that they were never properly served with any moving papers during the period when they were without legal representation. With no effective evidentiary response from the Plaintiffs, no hearing is needed for the Court to void the improper services. Moreover, Plaintiffs' Memorandum does not dispute that if the Company Defendants were never properly served with Plaintiffs' moving papers, not only were the services void, but the Company Defendants had no obligation to respond to void service.

*A fortiori,* the adverse outcomes that arose from the improperly served motions (*i.e.,* ECF Nos. 83, 84, 71, and 73) should be vacated, and the Court should grant such other relief to the Company Defendants as it deems necessary and proper.

### I. THE PROCESS SERVER – CALEB HATCH, ESQ. – FAILS TO REBUT THE COMPANY DEFENDANTS' PROOF THAT THEY WERE NEVER PROPERLY SERVED WITH ANY OF PLAINTIFFS' MOVING PAPERS DURING THE PERIOD WHEN THE COMPANY DEFENDANTS WERE WITHOUT COUNSEL

The Hatch Declaration (ECF No. 120) fails in any evidentiary way to rebut the unassailed proof presented with the instant motion that the Company Defendants were not properly served with Plaintiffs' moving papers, either in accordance with the Federal Civil Rules of Procedure or the Local Civil Rules, during the period they were without legal representation.

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 6 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

In these circumstances, with no effective evidentiary rebuttal from the Plaintiffs, no evidentiary hearing is necessary for the Court to recognize the services as improper and void. *215 African & Hispanic Amer. Realty of N.Y. LLC v. Air Chef, Inc.*, Index No. 117923/09, Mot. Seq. No. 3, 2012 N.Y. Slip Op. 32187(U), 2012 WL 3638865, *8 (Sup. Ct. N.Y. Co. Aug. 16, 2012) (copy appended as Exhibit A).

### A. The Process Server Does Not Adduce Any Evidence That the Company Defendants Consented in Writing to Service by Email of Any Moving Papers

Paragraph 4 of the Hatch Declaration claims that on October 6, 2025, Jonathan Clausen (CLAUSEN) (orally) directed Hatch to use emailed service, and that he (Hatch) has written notes of that, though he fails to exhibit them to the Court. (*See also* ECF No. 119 at 3-4, 7-8.) But it matters not one whit what was said in such a claimed oral conversation (which CLAUSEN does not admit), much less what Hatch claims to have written down.

What Rule 5(b)(2)(E) requires for service by email is "consent[ ] . . . *in writing"* by the party consenting. This is crystal clear nationwide and in this Circuit, per *Calderon v. IBEW Local 47,* 508 F.3d 883, 884 (9th Cir. 2007) (*per curiam*) – a well-accepted point of law and controlling case authority – totally ignored in Plaintiffs' opposition memorandum.

Next, paragraph 6 of the Hatch Declaration claims that on October 22, 2025, CLAUSEN by email asked a court official to use an email address, and that Hatch

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER AND VACATE BASED ON FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 7 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

was "included" on the email – although Hatch fails to exhibit the email from CLAUSEN.  Again, all of this amounts to not a hill of beans.

The CLAUSEN Reply Declaration accompanying this memorandum exhibits the October 22, 2025, email to which Hatch appears to be referring, and it is completely innocuous, stating merely "Hey Michelle, I am not sure I've received anything if you could please email it to this email address would be great", and signed by Jonathan Clausen.  Hatch was not the addressee of the email; he is listed as a "cc." (Clausen Reply Declaration at ¶ 4 & Exhibit A thereto.)  The "it" referred to by CLAUSEN was a video link to enable CLAUSEN to have access to a status conference scheduled for October 23, 2025.  (*Id.* at ¶ 5.)

This is a far cry from consent in writing on behalf of the Company Defendants for the Plaintiffs to serve all moving papers on the Company Defendants by email.  No wonder Plaintiffs did not exhibit the email in their opposition memorandum, with the cat now out of the bag for the Court to see.

**B.  The Process Server Does Not Adduce Any Evidence That the Company Defendants Were Served by U.S. Mail With Any Moving Papers That Were Filed Electronically With the Court**

Local Civil Rule 5(b) requires service by U.S. mail on parties such as the Company Defendants – which were not filing users of the Court's electronic filing system during the period they were without counsel – of any papers filed electronically with the Court:  "Parties who are not filing users must be served—in

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER AND VACATE BASED ON FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 8 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

accordance with the Federal Rules of Civil Procedure—with a paper copy of any pleading, notice, or other document filed electronically." L.Civ.R. 5(b).

None of Hatch's Certificates of Service annexed to the Plaintiffs' moving papers claimed mailed paper service. Yet paragraph 8 of the Hatch Declaration and Plaintiffs' memo (ECF No. 119 at 8) baldly claim that "as provided in the Court records all Defendants also received notice of all filings at their principal office mailing address." (*See also id.* at 9 claiming that the Company Defendants "received notice of every filing via email and mail . . .") But Hatch has no personal knowledge of what filings were actually sent to the Company Defendants by U.S. mail. He would have personal knowledge of that if he had ever mailed any moving papers to the Company Defendants, but his Declaration and opposition memo cutely dance around the issue. He does not say what motion papers he sent to the Company Defendants by U.S. mail, which a process server would be expected to say if it were true. He also fails to exhibit any proof of mailing of any moving paper to the Company Defendants – just like his Certificates of Service never claimed any moving papers were sent by U.S. mail to the Company Defendants.

At best, Hatch appears to be confused. What he may have in mind is the role of the Clerk of the Court, which has a responsibility to mail copies of entered ***Orders*** to parties which are not registrants for electronic filing. But it is common knowledge

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER AND VACATE BASED ON FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 9 of 16

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

that the Clerk of the Court does not serve as an agent for any party and does not mail out moving papers for any party.

The moving party is solely responsible for making service of its own moving papers. Local Civil Rule 7(b)(1) reinforces this responsibility on a movant: "The moving party shall file and ***serve*** a motion and any supporting materials." L.Civ.R. 7(b)(1) (emphasis added).

Like the balance of his Declaration, Hatch's paragraph 8 is just hot air, providing nothing material to rebut the Company Defendants' evidence that none of the Plaintiffs' moving papers were properly served on the Company Defendants while they were without legal representation.

## II. PLAINTIFFS' MEMO DOES NOT DENY THAT IF THE COMPANY DEFENDANTS WERE NOT PROPERLY SERVED WITH MOVING PAPERS, SUCH SERVICES WERE VOID, AND NO RESPONSES FROM THE COMPANY DEFENDANTS WERE NECESSARY

Having put all their eggs in the rickety basket of proper service – now demonstrated on reply to be a complete charade – Plaintiffs' memo hoists them on their own petard by failing to deny the legal consequences of improper service. With such a lacuna in Plaintiffs' briefing, the legal point contained in the Company Defendants' Memo is conceded: A party served by email without written consent "[i]s under no obligation to respond – even if [the party] . . . did receive and see the [papers] when they were emailed." *Stanley-Aldrich v. Home Depot USA, Inc.*, No.

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER AND VACATE BASED ON FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 10 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

2:24-cv-02372-CDS-NJK, 2026 WL 700028, *2-3 (D. Nev. Mar. 11, 2026).  This recent, in-Circuit decision is appended as Exhibit B to the Company Defendants' moving memo.

Similarly, where, as here, there is a local civil rule requiring non-electronic service, a failure of proof of strict compliance warrants denial of the improperly-served motion.  *Zelaya-Romero v. Bussanich*, No. 22 Civ. 10909 (DEH), 2025 WL 2780855, *8 (S.D.N.Y. Sept. 30, 2025) (copy appended as Exhibit B).

## III.  THE MOTION FOR VACATUR IS TIMELY

In an attempt to cast the instant motion as untimely, Plaintiffs try to wrap it in the straightjacket of Federal Rule of Civil Procedure 59.  (ECF No. 119 at 6, 9.)  But Plaintiffs' attempt fails.  As the Ninth Circuit made clear in *City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001), an "'interlocutory order is not subject to the limitations of Rule 59.'"

The judicial outcomes in ECF No. 71 (Clerk's entry of default) and ECF No. 73 (Order on Motion to Compel) are clearly interlocutory.

The only remotely debatable decisions are ECF No. 84 (labeled a Judgment) and ECF No. 83 (Order granting default judgment).  But any question as to whether ECF Nos. 83 and 84 were interlocutory fall away when it is realized that there was no requisite Rule 54(b) certification of no just reason for delay in entering a judgment against less than all parties and on all claims.  While perhaps the Court

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 11 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

might have contemplated such a certification with respect to a Judgment omitting CLAUSEN, there can be no possibility that the Court intended such a certification omitting Defendants' Counterclaim, as the Counterclaim was never mentioned and thus totally overlooked by the Court and the Plaintiffs.

Even if somehow the Court *sub silentio* intended to omit the Counterclaim, such an approach would never have stood up on appeal, as the Counterclaim (for breach of contract to buy back product) was intertwined with the Complaint's first cause of action (for breach of the same contract, a Settlement Agreement), and the busy Ninth Circuit hates piecemeal appeals.

Accordingly, all the judicial outcomes sought to be revisited by the instant motion are properly classified as interlocutory in nature – which renders Federal Rule 59 inapplicable to any of them.

## IV. THE MOTION FOR VACATUR IS GROUNDED ON RULE 54(b) AND THE COURT'S INHERENT AUTHORITY TO REVISIT INTERLOCUTORY ORDERS TO CORRECT CLEAR ERRORS AND AVOID MANIFEST INJUSTICE

Plaintiffs mistakenly claim that the Company Defendants do "not identify under what Federal Rule of Civil Procedure they are demanding reconsideration." (ECF No. 119 at 5.)  This is inaccurate.  The Company Defendants explicitly state in the instant motion:  "The COMPANY DEFENDANTS incorporate by reference their Motion to Reconsider and Vacate Because Plaintiffs' Claims Are Devoid of

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 12 of 16

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Merit, ECF No. 104.  The arguments made at pages 14-15 therein show why the Court is free to vacate its interlocutory rulings adverse to the COMPANY DEFENDANTS."  (ECF No. 107 at 14.)

It is indisputable that this Court has the power to do what is requested by the Company Defendants in the instant motion.  *See Santa Monica Baykeeper,* 254 F.3d at 885-89 (Neither Federal Rule 59 nor 60 are a barrier to reconsideration of interlocutory orders); *Queen v. Van Well Nursery, Inc.*, No. 2:20-CV-00181-SAB, 2025 WL 790939, *1-2 (E.D. Wash. Mar. 12, 2025) (Stanley A. Bastian, Ch, D.J.) (copy appended as Exhibit C).

Plaintiffs have now tacitly misled the Court at least four times – and have attempted the same subterfuge a fifth time – *i.e.,* Plaintiffs' Motion for Contempt and for Sanctions (ECF No. 85).  For the reasons stated here, that motion should be immediately denied by the Court.

If the Court had not been misled in the past, it would have denied Plaintiffs' motions for entry of default and for a default judgment.  *See Walden v. Pagsisihan*, No. 1:24-CV-03173-SAB, Order at 1-2 (E.D. Wash. May 30, 2025) (Stanley A. Bastian, Ch. D.J.) (copy appended as Exhibit D).  Now Plaintiffs' counsel has the unmitigated gall to attempt a redux, baselessly defending his Certificates of Service, which all misleadingly indicate that service by email had been accomplished upon the Company Defendants.   If he didn't know it before, he knows it now – Rule

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER AND VACATE BASED ON FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 13 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

5(b)(2)(E) requires that any consent by the Company Defendants to receive email service of moving papers had to be in writing, and the Company Defendants *never* consented in writing to Plaintiffs serving them with moving papers by email.

All of this has resulted in manifest injustice as well as extreme prejudice to the Company Defendants and should be rectified by the Court granting the instant motion and (1) vacating ECF Nos. 83, 84, 71, and 73; and (2) denying ECF No. 85.

It has also resulted in a significant waste of scarce judicial resources for the Court to have had to deal with multiple motions which were unsupported by proper service. Attorney Hatch's failure to recant his misleading Certificates of Service when given the opportunity to do so treads dangerously close to warranting sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and/or the Court's inherent power. *See, e.g., In re Ksenzowski*, 56 B.R. 819, 836-38 (Bankr. E.D.N.Y. 1985). That being said, the Company Defendants respectfully defer to the Court to determine what should be ordered for wasting the Court's scarce time and resources.

## **CONCLUSION**

For the reasons set forth above, the instant motion should be granted and an order entered (1) vacating *nunc pro tunc* the following adverse rulings made when the Company Defendants were without counsel: ECF Nos. 83, 84, 71, and 73; (2) denying ECF No. 85; and (3) granting the Company Defendants such other relief as the Court deems necessary and proper.

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 14 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Dated:  April 27, 2026

Respectfully submitted,

By:    /s/ *Stephen L. Sulzer*

Stephen L. Sulzer (*pro hac vice*)
**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com


/s/ *Douglas R. Dick*

Douglas R. Dick
ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen, Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 15 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system, including the following:

Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
Lee & Hayes, P.C.
601 W. Riverside Ave., Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com
Email: johanna.tomlinson@leehayes.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 27th day of April 2026.

_____
**Julie Sutter,** Legal Assistant

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO RECONSIDER AND VACATE BASED ON
FAILURES OF SERVICE
Case No. 2:24-CV-00413-SAB
Page 16 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# *EXHIBIT A*

[* 1]

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    HON. MARTIN SHULMAN                    PART    1
                          *Justice*

215 African + Hispanic
American Realty of NY LLC         INDEX NO.    117923/09

                  - v -                MOTION DATE    _____

AirChef, Inc., et al.             MOTION SEQ. NO.    003

                                  MOTION CAL. NO.    _____

The following papers, numbered 1 to _____ were read on this motion to/for vacate judgment

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits A-F | 1,2,3 |
| Answering Affidavits — Exhibits A-D | 4 |
| Replying Affidavits - Exhibits G-I; A | 5,6 |

**Cross-Motion:**    ☐ Yes    ☒ No

Upon the foregoing papers, it is ordered that this motion is decided in accordance with the attached decision and order.

FILED

AUG 20 2012

NEW YORK
COUNTY CLERK'S OFFICE

Dated: August 16, 2012

_____
Martin Shulman, J.S.C.

**Check one:**    ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION

**Check if appropriate:**    ☐ DO NOT POST    ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SCANNED ON 8/20/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 1
-----------------------------------------------------------------------x
215 AFRICAN & HISPANIC AMERICAN REALTY
OF NEW YORK LLC,                                                            Index No. 117923/09

                                    Plaintiff,                    **Decision & Order**

                    -against-

AIR CHEF, INC. AND RAKESH AGGARWAL,

                                    Defendants.

-----------------------------------------------------------------------x

MARTIN SHULMAN, J. :

**FILED**

**AUG 20 2012**

NEW YORK
COUNTY CLERK'S OFFICE

Defendant-judgment debtor Rakesh Aggarwal ("Aggarwal" or "defendant") moves for an order: (1) pursuant to CPLR 5015(a)(4) and (a)(1), vacating the default judgment in the sum of $183,151.40 entered against him on November 23, 2010 (the "judgment") in favor of plaintiff 215 African & Hispanic American Realty of New York LLC ("plaintiff"); (2) upon such vacatur, dismissing the complaint in its entirety due to lack of personal jurisdiction based upon improper service of process; and (3) enjoining and restraining the plaintiff from proceeding on, executing or otherwise engaging in any activities to enforce the judgment.

**Background**

Plaintiff commenced the instant action in December 2009 to recover amounts due under a lease agreement and personal guaranty.  The affidavit of service indicates that the summons and complaint were served on Aggarwal by conspicuous place service pursuant to CPLR §308(4) at 76-27 85th Road, Woodhaven, New York (the "Woodhaven address").  Goldberg Aff. in Supp. of OSC, at Exh. D.  Plaintiff contends that Aggarwal provided plaintiff with this

address on his credit/lease application, listing it as his residence. Fant Aff. in Opp, at Exh. G.

The affidavit of service indicates that on an unspecified date, the process server spoke to Mr. Singh, a neighbor residing at 76-29 85th Road, who allegedly stated that Aggarwal lived at the Woodhaven address. *Id.* at Exh. F. After making three (3) attempts at personal service the process server affixed the summons and complaint to the door of the Woodhaven address and the mailing under CPLR §308(4) was also sent there. *Id.* Plaintiff's counsel contends that this mailing was not returned. Fant Aff. in Opp., at ¶9.

In support of this motion, Aggarwal alleges that he did not reside at the Woodhaven address at the time the summons and complaint were served and has not resided there since 1999. In response, plaintiff's counsel's opposition details the following subsequent mailings to and service attempts upon defendant, all allegedly at the Woodhaven address, during the pendency of this action and the ensuing supplemental proceedings:

- Upon Aggarwal's failure to answer or appear this action, plaintiff sought to schedule an inquest and served a note of issue and RJI upon Aggarwal by mail (*id.* at Exh. H);

- By letter dated September 1, 2010, plaintiff's counsel notified defendant by mail that an inquest had been scheduled for September 14, 2010 (*id.* at Exh. I);

- On January 26, 2011, plaintiff served a subpoena to take Aggarwal's deposition in connection with supplementary proceedings to enforce the judgment by substituted service and mailing pursuant to CPLR §308(2) upon "Ms. Aggarwal", a relative; (*id.* at Exh. L);

- Upon Aggarwal's failure to comply with the subpoena, plaintiff moved by order to show cause ("OSC") to punish him for contempt of court and

purportedly served the OSC on Aggarwal personally, in hand, on February 21, 2011 (*id.* at Exh. N); and

- Aggarwal defaulted on the OSC's return date and plaintiff served notice of entry of this court's conditional order by mail on May 20, 2011 (*id.* at Exh. O).

Plaintiff's counsel avers that none of the above mailings was ever returned as undeliverable nor was there any indication to plaintiff that Aggarwal no longer resided at the Woodhaven address. *Id.* at ¶¶ 10, 11, 13, 16.

In October 2011, plaintiff discovered that Aggarwal allegedly was transferring his assets without fair consideration to avoid creditors. Plaintiff then commenced a separate action entitled *215 African & Hispanic American Realty of New York LLC v. Rakesh K. Aggarwal and Sheeli Aggarwal*, N.Y. County Index No. 111808/2011 (the "2011 action"), to set aside a conveyance of property that Aggarwal allegedly made to his wife without fair consideration to frustrate creditors. Goldberg Aff. in Supp. of OSC, at Exh. C.[1] Defendant claims that he first learned about this lawsuit[2] when he received the complaint in the 2011 action.[3] Aggarwal Aff. of Merit, at ¶2.

---

[1] Aggarwal and co-defendant Sheeli Aggarwal, his wife, have appeared in the 2011 action by counsel and their motion to dismiss the complaint therein is presently *sub judice* before this court. This court stayed determination of the motion to dismiss upon learning of the untimely death of plaintiff's counsel, Mark E. Fant, Esq., pursuant to CPLR 321[c]. Plaintiff has since appeared by new counsel but has not interposed opposition to the motion to dismiss.

[2] At paragraph 2 of his reply affidavit, Aggarwal contradicts this statement, claiming that he first learned of this action when his bank received plaintiff's restraining notice.

[3] The complaint in the 2011 action lists Aggarwal and his wife's residence as their claimed present abode, to wit, 84-61 Abingdon Road, Kew Gardens,

-3-

## Analysis

Aggarwal moves pursuant to CPLR 5015(a)(4), which provides that a judgment or order may be vacated due to the court's "lack of jurisdiction to render the judgment or order". Defendant's motion also cites CPLR 5015(a)(1), which provides that a judgment or order may also be vacated where the defendant can establish an "excusable default" and a meritorious defense to the action. See *Eugene Di Lorenzo, Inc. v A.C. Dutton Lumber Co., Inc.*, 67 NY2d 138, 141-142 (1986).

This court must first resolve the jurisdictional question. *Cipriano v Hank*, 197 AD2d 295, 298 (1st Dept 1994). Where proper service is lacking, a default judgment is a nullity and must be unconditionally vacated. *Chase Manhattan Bank, N.A. v Carlson*, 113 AD2d 734, 735 (2d Dept 1985). The existence or lack of a meritorious defense is irrelevant to this inquiry. *Id.* See also, *Johnson v Deas*, 32 AD3d 253, 254 (1st Dept 2006).

As previously stated, defendant was served with the summons and complaint herein pursuant to CPLR §308(4), which requires affixing the summons to the door of the defendant's "actual place of business, dwelling place or usual place of abode" and mailing to the defendant "at his or her last known residence". Such service is authorized only where, after due diligence, service cannot be effectuated on a natural person under CPLR §308(1) and (2).

---

New York (the "Kew Gardens address"). See Goldberg Aff. in Supp. of OSC, at Exh. C, ¶¶ 2-3.

In *Feinstein v Bergner,* 48 NY2d 234 (1979), the Court of Appeals interpreted CPLR §308(4) to require affixing at the defendant's actual dwelling place. There, the affixing occurred at the defendant's last known residence and the court held that while the last known residence may be a proper place for the mailing step, it does not suffice for the affixing component. Otherwise, there would be no distinction between a dwelling place and a last known residence, which "would diminish the likelihood that actual notice would be received by potential defendants." *Id.* at 240.

In the case at bar Aggarwal claims that service was not made at his actual place of residence, stating that at the time of service he had not lived at the Woodhaven address for 10 years but instead resided at the Kew Gardens address. He further denies any recollection of the purported neighbor the process server claims to have spoken to. In support of his claims, Aggarwal proffers publicly available property records obtained from the New York City Department of Finance's Automated City Register Information System ("ACRIS"), indicating that as of the date of service the Woodhaven address was owned by Sohan Singh and Surinder Kaur (Goldberg Aff. in Supp. of OSC, at Exh. E).

In his reply affidavit, Aggarwal further submits a series of utility bills (Aggarwal Reply Aff., at Exhs. H-I) and a copy of his driver's license (*id.* at Exh. G) depicting his residence at the relevant time as the Kew Gardens address. Defendant further responds to plaintiff's opposition by noting that the credit/lease application plaintiff relies upon is undated and, if he provided it at the time he entered into the initial lease with plaintiff, it was given no later than 1996 and it

was unreasonable for plaintiff to assume his residential address had not changed from 1996 to 2009.  Finally, with respect to the alleged personal delivery of the OSC to Aggarwal and the alleged substituted service of a subpoena on his wife at the Woodhaven address, Aggarwal's reply affidavit and that of his wife[4] deny such service, noting that neither one of them matches the physical descriptions of the individuals served[5] as stated in the process server's affidavits of service.[6]

"While a proper affidavit of a process server attesting to personal delivery upon a defendant constitutes prima facie evidence of proper service, a sworn nonconclusory denial of service by a defendant is sufficient to dispute the veracity or content of the affidavit, requiring a traverse hearing (citations omitted)." *NYCTL 1998-1 Trust v Rabinowitz*, 7 AD3d 459, 460 (1st Dept 2004).

---

[4] Defendant's wife, Sheeli Aggarwal, states at paragraph 3 of her affidavit:

I never accepted delivery of the subpoena on my husband's behalf.  I was not living or otherwise present at the Woodhaven address on January 26, 2011.  In fact, I have not returned to that address since my family and I sold the residence in 1999.  I do not know who currently resides at that address or resided there on January 26, 2011.

[5] Aggarwal avers at paragraph 13 of his reply affidavit that he was not the person served with the OSC on February 21, 2011.  At that time, he was approximately 58 years old, while the person served was 40 years old, and he weighed 30 pounds more than the person served.

[6] Mrs. Aggarwal submits a copy of her driver's license and states at paragraph 4 of her affidavit that on the date of the alleged service she was between 52 and 53 years old, while the process server's affidavit states that he served a woman around 35 years of age.  Lastly, Mrs. Aggarwal states that the only other female in her family who could be deemed a person of suitable age and discretion would be her daughter, Payal Aggarwal, who was 22 years old at the time of the alleged service, and whose height and weight were not consistent with the process server's description.  *Id.* at ¶5.

In *NYCTL 1998-1 Trust*, the process server stated in his affidavit that he served the defendant's son, however the defendant replied that he did not have a son. The defendant stated that he had a daughter in Washington DC, who has a different height and weight than the man in the process server's affidavit. The court granted the request to vacate the default judgment but set the matter down for a traverse hearing.

While case law provides authority for directing a traverse hearing, the undisputed facts in the case at bar compel dismissal. Here, no traverse hearing is needed in light of plaintiff's failure to refute Aggarwal's claim that the Woodhaven address was not his actual dwelling place or usual place of abode. Plaintiff's service of the summons and complaint at defendant's last known address is insufficient as a matter of law. See *Feinstein, supra; Timkin v Edwards*, 158 AD2d 973 (4th Dept 1990)(complaint dismissed where served at defendant's former address); *Rios v Zorrilla*, 8 AD3d 463 (2d Dept 2004)(complaint dismissed due to defective service of process where served at defendant's last known address). Accordingly, the judgment must be vacated and the complaint dismissed based upon plaintiff's failure to properly serve defendant within 120 days of filing this action, as required by CPLR §306-b.

Accordingly, it is

ORDERED that defendant Rakesh Aggarwal's motion to vacate the default judgment against him is granted, the complaint is dismissed and all restraining notices are vacated.

[* 9]

This constitutes this court's Decision and Order.  Courtesy copies of this Decision and Order have been provided to counsel for the parties.

Dated: New York, New York
       August 16, 2012

HON. MARTIN SHULMAN, J.S.C.

**FILED**

AUG 20 2012

NEW YORK
COUNTY CLERK'S OFFICE

# *EXHIBIT B*

2025 WL 2780855
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ludwig Criss ZELAYA-ROMERO,
Plaintiff,
v.
BUSSANICH, et al., Defendants.

22 Civ. 10909 (DEH)
|
Signed September 30, 2025

**Attorneys and Law Firms**

Ludwig Criss Zelaya-Romero, Cresson, PA, Pro Se.

Brandon Herbert Cowart, DOJ-United States Attorney's Office, New York, NY, for Defendants.

## OPINION AND ORDER

DALE E. HO, United States District Judge:

**\*1** Plaintiff Ludwig Criss Zelaya-Romero ("Plaintiff" or "Zelaya-Romero"), proceeding *pro se*, brings this action against (1) the United States[1] (the "Government"), (2) A.J. Bussanich and Robert Beaudouin[2] (the "MCC Defendants"), and (3) Brian Gerson[3] and Bruce Bialor (the "MDC Defendants" and together with the MCC Defendants, the "Individual Defendants") (together the "Defendants").[4] Construed liberally, Zelaya-Romero's Complaint and Amended Complaint can be interpreted to raise two sets of claims.[5] First, Zelaya-Romero brings claims under the Federal Tort Claims Act ("FTCA") alleging that the Government committed negligence and medical malpractice while he was detained at the Metropolitan Correctional Center in New York, New York (the "MCC") and at the Metropolitan Detention Center in Brooklyn, New York (the "MDC").[6] Second,

Zelaya-Romero brings claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* alleging the Individual Defendants violated his civil rights by failing to provide him with adequate medical care.[7]

Defendants now (1) move to dismiss Zelaya-Romero's MCC-related tort claims as being time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6),[8] and (2) move for summary judgment as to Zelaya-Romero's *Bivens* claims pursuant to Rule 56, arguing he failed to exhaust remedies through the Bureau of Prison's ("BOP") Administrative Remedy Program ("ARP"), as required under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA").[9] The Court considers the Defendants' motion to dismiss and motion for summary judgment (collectively, the "Motions") in turn. For the reasons discussed below, Defendants' motion to dismiss Zelaya-Romero's MCC-related tort claims is **GRANTED**, and Defendants' motion for summary judgment as to his *Bivens* claims, which the Court construes as a motion to dismiss for the reasons stated below, is **DENIED**.

## BACKGROUND

### I. Factual Background

**\*2** In 2015, Zelaya-Romero had a hernia surgically repaired in Honduras.[10] Several years later, in 2017, Zelaya-Romero was incarcerated at the MCC when he claims he informed medical staff that he "was having pain due to [his] inguinal hernia."[11] Zelaya-Romero alleges that, despite informing staff of this, he "received no appropriate treatment [o]n various occasions."[12]

Specifically, throughout 2017, Zelaya-Romero alleges that he sent several "sick call[s] to MCC medical staff" but "never receive[d] any type of medical attention."[13] On September 21, 2017, Zelaya-Romero was seen by Dr. Bussanich at the MCC who prescribed him several medications, which Zelaya-Romero alleges "caused [him] to bleed out [of] [his] rectum."[14] Several days later, on September 27, 2017, Zelaya-Romero was seen by a different MCC doctor, Dr. Beaudouin, who ordered a CT scan to "rule out kidney stones."[15] The resulting radiology report, dated December 19, 2017, revealed the presence of kidney stones.[16] On March 9, 2018, Zelaya-Romero was seen by Dr. Beaudouin again, who referred him to a surgeon to "evaluate for recurrence of hernia and need for

further treatment."[17] Zelaya-Romero alleges that "[t]hey did not give [him] the evaluation."[18] He also alleges that, during his time at the MCC, Drs. **Bussanich** and Beaudouin "[d]eliberate[ly] and [i]ntentionally di[d] not sen[d] [him] to the specialist 'surgeon' to receive the proper attention" and were "negligent and acted intentionally unconcerned."[19]

On May 14, 2018, Zelaya-Romero was transferred from the MCC in Manhattan to the MDC in Brooklyn.[20] Throughout his time at the MDC, Zelaya-Romero maintains that he "continue[d] informing" staff "ab[o]ut [his] medical condition" and made several requests for medical treatment but "did not receive" it, so he filed several "[a]dministrative [r]emedies."[21] During one appointment at the MDC on June 17, 2020, Zelaya-Romero claims that Nurse Practitioner ("NP") Gerson would not examine him and only examined a Jewish patient.[22] Later, in April 2021, Zelaya-Romero claims he reached out to MDC medical staff for the "medical assistance [he] need[ed] to receive the hernia surgery" but says that he received no such referral from NP Gerson or Dr. Bialor.[23] He alleges both NP Gerson and Dr. Bialor were deliberately indifferent, negligent, and violated his Constitutional rights.[24]

On December 3, 2021, Zelaya-Romero was transferred from the MDC to North Lake Correctional Facility ("NLCF") in Michigan, where he says he continued to "suffer[ ] a terrible abdominal pain."[25] While at NLCF, Zelaya-Romero says that "medical staff ... finally provided [him] the proper and correct medical care."[26] In April 2022, Zelaya-Romero received another CT scan and was diagnosed with several hernias, and, on May 13, 2022, underwent surgery to repair them.[27]

### II. Procedural Background

In 2017, Zelaya-Romero commenced a separate action in this District against Defendants **Bussanich** and Beaudouin.[28] That case was assigned to Judge Analisa Torres, who by Opinion and Order dated March 27, 2020, granted the defendants' motion to dismiss pursuant to Rule 12(b)(1) and motion for summary judgment pursuant to Rule 56.[29] Judge Torres dismissed Zelaya-Romero's claims "without prejudice to [his] reasserting the claims in a new action after exhausting the distinct administrative procedures each claim requires."[30]

**\*3** Zelaya-Romero alleges that he then "completed all Administrative Remedies" before initiating the present matter on December 27, 2022.[31] In an Order dated

December 13, 2023, the Court added the United States as a Defendant for purposes of Zelaya-Romero's FTCA claim.[32] Zelaya-Romero proceeded to file an Amended Complaint on March 5, 2024.[33] On July 15, 2024, Defendants filed their Motions, which were fully briefed as of November 4, 2024.[34] Zelaya-Romero subsequently filed a motion for extension of time to "reply or otherwise file an answer to Defendants' Reply Memorandum Of Law," followed by copy of his proposed reply and a "supplement."[35] On August 6, 2025, Magistrate Judge Willis, to whom this matter is referred for general pre-trial supervision, denied Zelaya-Romero's request for an extension as moot.[36]

## LEGAL STANDARDS

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[37] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor."[38] However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.' "[39] "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.' "[40]

Even under the heightened pleading standards set by *Iqbal* and *Twombly,* a court is "obligated to construe a *pro se* complaint liberally."[41] Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest."[42] Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face."[43]

## DISCUSSION

Zelaya-Romero's Complaint and Amended Complaint, liberally construed, raise two sets of claims: (1) FTCA claims against the Government for negligence and medical malpractice at the MCC and the MDC; and (2) a *Bivens* claim against the Individual Defendants for violating his civil rights due to their alleged failure to

provide adequate medical care. The Court considers Defendants' arguments with respect to each set of claims in turn.

## I. FTCA Claims

Zelaya-Romero asserts claims for negligence and medical malpractice against MCC and MDC medical staff based on medical care provided at each respective facility.[44] However, the FTCA "provides that a party's exclusive remedy" in such cases "is a lawsuit against the United States, not the individual employees."[45] Therefore, the United States is the sole Defendant for purposes of Zelaya-Romero's tort claims.[46]

**\*4** Defendants argue that Zelaya-Romero's FTCA claims based on inadequate medical care provided at the MCC must be dismissed pursuant to Rule 12(b)(6) because they are time-barred.[47] For reasons explained below, the Court agrees.

### A. Legal Standards

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."[48] Indeed, "[b]efore bringing a claim against the United States for money damages for injury or loss of property caused by an employee or agent of the United States acting within the scope of his or her employment, the plaintiff must first present the claim to the appropriate federal agency, and the agency must either deny the claim or six months need to have elapsed since the plaintiff submitted the claim."[49] A "plaintiff has the burden to plead and prove compliance with the exhaustion requirement,"[50] which "applies equally to litigants with counsel and to those proceeding *pro se*."[51]

"For a federal prisoner ... to exhaust a claim involving prison conditions, he must file the requisite claim on Form SF-95 with the BOP's regional office within two years of the accrual of the claim, ... and, if his claim is denied, appeal to the BOP General Counsel's Office."[52] "The Form SF-95 'must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth.' "[53] "If the agency denies the claim within six months after it is filed, the claimant must then initiate an FTCA action in a district court (or seek reconsideration from the agency) within six months of the

notice of denial of the claim."[54] "If the claimant fails to timely comply with the FTCA's exhaustion requirement and timely commence an action in federal court, the claim is forever barred."[55]

"[U]nder certain circumstances," the FCTA's two-year statute of limitations is subject to equitable tolling.[56] Typically, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."[57] "In FTCA actions, courts apply 'the doctrine of equitable tolling in rare and exceptional circumstances, where there exist extraordinary circumstances that prevented a party from timely performing a required act and that party acted with reasonable diligence throughout the period he sought to toll.' "[58] Moreover, "[t]he Second Circuit has instructed that district courts may apply equitable tolling when the statute of limitations has expired but 'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.' "[59] "A claimant's 'ignorance of the initiation procedure or statute of limitations, however, has been found insufficient to warrant equitable tolling of the FTCA, even where ... the claimant is incarcerated, lacks legal training, and asserts that the denial letter was confusing.' "[60]

**\*5** Lastly, FTCA claims "accrue[ ] at the time of injury,"[61] but if the time of injury is difficult to discern, then accrual may be postponed until the claimant knows "the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it."[62]

### B. Application

Zelaya-Romero first filed an SF-95 administrative claim with the BOP on February 8, 2021, alleging he "suffered pain after every effort to have medical staff at [the] MCC (NY) and [the] MDC (Brooklyn) address [his] issues."[63] Accordingly, "to the extent his FTCA claim accrued before" February 8, 2019, "it would be untimely under the two-year FTCA statute of limitations, and this Court would lack jurisdiction to address it."[64]

Zelaya-Romero's MCC-related claims accrued prior to that date. It is clear from his allegations that Zelaya-Romero "was aware that he was not receiving the treatment that he believed was necessary as early as" 2017.[65] Indeed, Zelaya-Romero claims that, on four

occasions throughout 2017, he complained of "severe pain" from a hernia to MCC medical staff but "never receive[d] any type of medical attention."[66] He also complains that, during subsequent medical visits in 2017 and early 2018, Drs. Bussanich and Beaudouin failed to provide him with proper treatment for his hernia and the pain he alleges he suffered as a result.[67] These alleged failures to provide appropriate medical care form the basis of Zelaya-Romero's negligence and malpractice claims against the Government.[68] Moreover, Zelaya-Romero was transferred from the MCC to the MDC in 2018, meaning that any tort claim stemming from Zelaya-Romero's time at the MCC could not have accrued after May 14, 2018.[69] It is thus "beyond reasonable dispute" that Zelaya-Romero knew the "critical facts of injury and causation" before February 8, 2019.[70] And even though Zelaya-Romero is incarcerated, lacks legal training, and is not fluent in English, he must still comply with the FTCA's timing requirements, which he failed to do here.[71]

Of course, the FTCA's two-year statute of limitations may be subject to equitable tolling in limited circumstances. Here, however, the Court concludes that Zelaya-Romero has failed to "establish[ ] the kind of 'extraordinary circumstances' required in the Second Circuit to toll the statutory period to file an FTCA claim."[72] Zelaya-Romero appears to argue that his claims did not accrue until May 13, 2022, when his hernias were surgically repaired while he was incarcerated at NLCF.[73] With respect to Zelaya-Romero's MCC-related tort claims, this argument is unavailing.[74] For the reasons discussed, the Court has already concluded that Zelaya-Romero's MCC-related tort claims accrued in 2017 and that, as a result, they are untimely. Such a conclusion is bolstered by the fact that Zelaya-Romero commenced a prior tort action against the MCC Defendants in 2017 for "for medical negligence and malpra[c]tice and lack of attention."[75]

*6 Zelaya-Romero's second argument—that his FTCA claims cannot be dismissed because he meets the circumstances recognized in *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)—is similarly unavailing. *Ross* held that the *PLRA*'s "exhaustion requirement hinges on the availability of administrative remedies."[76] *Ross* does not, however, hold that this unavailability exception applies to *FTCA* claims,[77] and Zelaya-Romero cites no authority supporting such a proposition. *Ross*, therefore, is inapt and does not support the conclusion that equitable tolling should apply here.

Finally, Zelaya-Romero does not otherwise allege the existence of any "extraordinary circumstance" preventing him from administratively asserting his MCC-related

negligence and medical malpractice claims within two years their accrual, as required by the FTCA.[78]

Thus, Zelaya-Romero's FTCA claims based on lack of medical treatment at the MCC are time-barred, and Defendants' motion to dismiss to those claims is **GRANTED**. Notably, however, Defendants' briefs do not raise the same argument with respect to Zelaya-Romero's MDC-related FTCA claims.[79] Accordingly, Zelaya-Romero's FTCA claims based on medical care at MDC survive Defendants' motion to dismiss.

## II. *Bivens* Claims

The Court next turns to Zelaya-Romero's claims that the Individual Defendants violated his civil rights due to their alleged failure to provide him with adequate medical care. Defendants argue that the Court should grant summary judgment dismissing these claims because Zelaya-Romero failed to exhaust his administrative remedies through the BOP's ARP, as required by the PLRA.[80] For the reasons discussed herein, the Court disagrees.

### A. Legal Standards

The PLRA provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[81] The PLRA's exhaustion requirement applies "equally to *Bivens* claims, ... and is mandatory regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.' "[82] In fact, it applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[83]

*7 "The administrative remedies available to the plaintiff are established by the BOP."[84] Relevant here, the BOP's ARP provides a procedure which allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."[85] Pursuant to the ARP "an inmate must: (1) attempt to resolve the issue informally; (2) submit a formal written Administrative Remedy Request to the institution; (3) appeal any unfavorable decision by the institution to the Regional Director of the BOP; and (4) appeal any unfavorable decision by the

Zelaya-Romero v. Bussanich, Slip Copy (2025)

Regional Director to the BOP's General Counsel."[86]

Failure to exhaust "is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints."[87] Accordingly, "[d]ismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evident on the face of the complaint."[88]

### B. Converting Defendants' Motion to Dismiss to a Motion for Summary Judgment

Defendants style their motion as a motion for summary judgment in the first instance.[89] In light of the procedural posture of this case, in which discovery has not yet commenced, it is appropriate instead to treat their motion as a 12(b)(6) motion to dismiss that, because it relies on materials outside of the complaint, Defendants seek to have converted to a motion for summary judgment. Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[90] Here, accompanying the Memorandum of Law in Support of their Motions, Defendants submit the declaration of John Hayes (a Legal Assistant in the MDC's Legal Department) and a Local Rule 56.1 Statement purportedly demonstrating that Zelaya-Romero failed to exhaust his administrative remedies.[91] These materials clearly constitute matters outside the pleadings. Accordingly, the Court must either "exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Rule 56 and afford all parties the opportunity to present supporting material."[92]

If the Court converts a party's motion to dismiss to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[93] "This is especially true when a plaintiff proceeds *pro se* and is provided no notice that the motion might be converted."[94]

**\*8** Defendants filed two notices on the docket in this matter for the purpose of providing Zelaya-Romero with notice that their motion may be treated as a motion for summary judgment, as required by Local Civil Rules 12.1 and 56.2.[95] While the Electronic Case Filing system indicates that both notices were "delivered by other [non-electronic] means" to Zelaya-Romero,[96] a review of the docket reveals that Defendants never filed affidavits of service with respect to Zelaya-Romero for either the

12.1 or 56.2 notice,[97] as required by this District's ECF Rules & Instructions.[98] It is, therefore, unclear whether Zelaya-Romero ever received copies of the notices and, accordingly, "understands the nature and consequences of Rule 56."[99]

"Additionally, although the Court may permit limited discovery exclusively on the issue of exhaustion, such a measure would not serve any desirable judicial end."[100] Rather, "bifurcating discovery, with additional motion practice, creates the potential for complication and delay: indeed, individuals might well be deposed first on exhaustion and again on the merits."[101] Moreover, it does not appear that "full fact discovery will be sufficiently laborious," such that it would "counter [Zelaya-Romero's] interest in a timely disposition of his suit."[102]

For these reasons, the Court declines to convert Defendants' motion into a motion summary judgment and considers only the allegations in Zelaya-Romero's Complaint and Amended Complaint.

### C. Exhaustion

Defendants assert that Zelaya-Romero's *Bivens* claims are barred by the PLRA because he failed to exhaust the administrative remedies available to him before bringing this suit.[103] But exhaustion is not an affirmative pleading requirement.[104] Moreover, Zelaya-Romero "has not pled that he did not exhaust."[105] Rather, his Complaint alleges that he brought the present action "after compl[e]ting the ... ARP" process."[106] Specifically, he states that he "went forward with the Administrative Remedy Process [on] 6/10/2020, with the BP-8 and they responded back to me" and that he "finish[ed] the Administrative Remedy Process with the BP-11 from [the] Central Office" on October 13, 2020."[107] His Amended Complaint adds that he "completed all Administrative Remedies (BP-8, BP-9, BP-10, and BP-11, and the Tort Claim Process) looking [for] help for [his] health condition."[108] He also submits, as attachments to his Complaint and Amended Complaint, copies of various ARP grievances regarding inadequate medical treatment during the relevant time period, as well as subsequent rejections and appeals pertaining to those grievances.[109]

**\*9** While the Complaint and Amended Complaint are "not completely clear as to whether [Zelaya-Romero] properly grieved his claim[s]" pursuant to the ARP procedure, "that is not a valid basis for dismissal under *Jones*, which does not require that the plaintiff demonstrate exhaustion

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    5

in the complaint."[110] "[E]specially in light of the liberal *pro se* pleading requirements," Zelaya-Romero's statements in his Complaint and Amended Complaint "cannot be construed to mean that he did not pursue the proper avenues for exhaustion."[111] Indeed, Zelaya-Romero "cannot be penalized for what he does not say in his pleading about his efforts to exhaust," particularly given there is "no indication" that his statements "represent the entirety of his efforts."[112]

Thus, while Zelaya-Romero's Complaint and Amended Complaint "may suggest a failure to exhaust, such failure is not directly evident from the face of the complaint."[113] Accordingly, Defendants' motion to dismiss Zelaya-Romero's *Bivens* claims for failure to exhaust his administrative remedies is **DENIED**.

### III. Leave to Amend

District Courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile.[114] As to Zelaya-Romero's FTCA claims based on medical care provided at the MCC, the Court determines that these claims cannot be cured with an amendment.[115] As such, the Court declines to grant Zelaya-Romero leave to amend his Amended Complaint with respect to these claims only. Zelaya-Romero's *Bivens* claims against the

Individual Defendants and the FTCA claims based on medical care provided at the MDC survive Defendants' Motions, so the Court need not address leave to amend with respect to those claims.

### CONCLUSION

In sum, Defendants' motion to dismiss is **GRANTED** as to Zelaya-Romero's FTCA claims based on lack of medical care at the MCC, but Zelaya-Romero's FTCA claims based on lack of medical care at the MDC survive. In addition, Defendants' motion to dismiss Zelaya-Romero's *Bivens* claims is **DENIED**.

The Clerk of Court is respectfully requested to terminate ECF No. 25. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Zelaya-Romero and note service on the docket.

SO ORDERED.

### All Citations

Slip Copy, 2025 WL 2780855

Footnotes

1    The United States was added as a party by Order dated December 13, 2023. *See* ECF No. 8.

2    The Court adopts this spelling based on the parties' pleadings. Defendant Robert Beaudouin's name in this case is docketed as "Robert Beaudouln." *See generally* Dkt.

3    The Court adopts this spelling based on the parties' pleadings. Defendant Brian Gerson's name in this case is docketed as "Gerson Brian." *Id.*

4    *See* Compl. at 5-11, ECF No. 1; Am. Compl. at 2-3, ECF No. 18.

5    Zelaya-Romero's Complaint, *see* Compl., and Amended Complaint, *see* Am. Compl., are frequently written in narrative format and, often, the separate paragraphs are not numbered. The Complaint and Amended Complaint also both contain numerous attachments. As a result, this Opinion cites to the applicable PDF page number throughout, unless otherwise stated. When applicable, this Opinion cites to the applicable page and paragraph number for clarity purposes.

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

6    28 U.S.C. §§ 1346(b), 2401(b), 2671-80.

7    403 U.S. 388 (1971).

8    All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

9    Defs.' Mem. in Supp. at 2, ECF No. 26.

10    Am. Compl. at 2, ¶ 1.

11    Compl. at 6.

12    *Id.*

13    Am. Compl. at 2, ¶ 3.

14    *Id.* at 2, ¶ 4.

15    *Id.* Ex. 3, at 21.

16    *Id.* at 23.

17    *Id.* at 18.

18    Compl. at 6.

19    Am. Compl. at 2, ¶ 6.

Zelaya-Romero v. Bussanich, Slip Copy (2025)

20    *Id.* at 2, ¶ 7.

21    *Id.* at 2, ¶ 7; *see id.* Exs. 4-5, at 25-34.

22    *See id.* at 2, ¶ 10.

23    *Id.* at 2-3, ¶ 11.

24    *Id.*

25    *See id.* at 3, ¶ 12.

26    *Id.*

27    *See id.*

28    *See Zelaya-Romero v. Bussanich* ("*Zelaya-Romero I*"), No. 17 Civ. 9651, Compl., ECF No. 2 (S.D.N.Y. Dec. 7, 2017) (Torres, J.).

29    *See id.*, Mar. 27, 2020 Order ("Torres Order") at 1, ECF No. 76.

30    *See id.*, Torres Order at 11-12.

31    Am. Compl. at 3, ¶ 15.

32    *See* Order of Service, ECF No. 8.

33    *See* Am. Compl.

34    *See, e.g.*, Pl.'s Reply to Defs.' Mot., ECF No. 39; Defs.' Reply Mem. in Supp., ECF No. 47.

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

35    *See* Pl.'s Mot. Extension Time at 1, ECF No. 49; Pl.'s Reply, ECF No. 50; Pl.'s Suppl., ECF No. 51.

36    *See* ECF No. 53.

37    *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

38    *Id.* at 106-07.

39    *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

40    *Rubenstetn v. Ishizuka*, No. 23 **Civ**. 4332, 2025 WL 1489375, at *2 (S.D.N.Y. May 23, 2025) (quoting *Twombly*, 550 U.S. at 558).

41    *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

42    *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

43    *Bodley v. Clark*, No. 11 **Civ**. 8955, 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("*[P]ro se* complaints must contain sufficient factual allegations to meet the plausibility standard ....").

44    *See* Compl.; Am. Compl.

45    *See* Torres Order at 6 (citing 28 U.S.C. § 2679(b)(1)).

46    By Order dated December 13, 2023, this Court substituted the United States as a Defendant. *See* Order of Service at 3.

47    Defs.' Mem. in Supp. at 12-14.

48    *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

49    *Davila v. Lang*, 343 F. Supp. 3d 254, 272 (S.D.N.Y 2018) (citing 28 U.S.C. § 2675(a)).

50    *Accolla v. U.S. Gov't*, 636 F. Supp. 2d 304, 307 (S.D.N.Y. 2009).

51    *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).

52    *Kaid v. Tatum*, No. 20 Civ. 3643, 2024 WL 946949, at *15 (S.D.N.Y., 2024) (citing 28 U.S.C. §§ 2401(b), 2675(a)).

53    *Id.* (citing *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (per curiam)).

54    *Id.* (citing *Cuello v. United States*, No. 11 Civ. 2216, 2013 WL 1338839, at *7 (E.D.N.Y. Mar. 29, 2013)).

55    *Id.* (citing *Cuello*, 2013 WL 1338839, at *8).

56    *Id.*

57    *Id*. (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

58    *Id.* (citing *Czernicki v. U.S. DOJ*, 137 F. App'x 409, 410 (2d Cir. 2005) (summary order)).

59    *Id.* (citing *Czernicki*, 137 F. App'x at 410).

60    *Id.* (citing *Cuello*, 2013 WL 1338839, at *8 (collecting cases denying equitable tolling)).

61    *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).

62    *Barbaro v. United States*, No. 05 Civ. 6998, 2006 WL 2882975, at *2 (S.D.N.Y. Oct. 10, 2006) (citing *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir.1999)).

63    Am. Compl. at 73.

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

64 *Barbaro*, 2006 WL 2882975, at *2.

65 *Id.*

66 Am. Compl. at 2, ¶ 3.

67 *Id.* at 2, ¶¶ 4-6.

68 *See id.* at 3, ¶ 16.

69 *Id.* at 2, ¶ 7.

70 *Barbaro*, 2006 WL 2882975, at *2.

71 *See* Compl. at 8 (indicating that Zelaya-Romero does not speak English); *see, e.g.*, *Czernicki*, 137 F. App'x at 410 (affirming district court's decision dismissing FTCA claim even though the inmate argued the limitation period should be tolled because he was unable to speak English, unable to understand legal procedures, and had mental health deficiencies).

72 *Kaid*, 2024 WL 946949, at *17 (citing *Cuello*, 2013 WL 1338839, at *9).

73 *See* Pl.'s Reply to Defs.' Mot. at 4.

74 The Court takes no position, however, as to whether equitable tolling applies to any of Zelaya-Romero's MDC-related FTCA claims.

75 *See Zelaya-Romero I*, Am. Compl. at 7, ECF No. 6.

76 *Ross*, 578 U.S. at 642 ("Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

77 *See id.*

78      *Pace*, 544 U.S. at 418.

79      *See* Defs.' Mem. in Supp. at 12-14 (arguing that Zelaya-Romero's FTCA claims based on MCC medical treatment, but not MDC medical treatment, should be dismissed as time-barred). There is, however, a single sentence in Defendants' Reply brief suggesting that Zelaya-Romero's MDC-related claims are also time barred: "As explained in the Government's moving brief, ... Zelaya-Romero's claim brought under the FTCA – that the care he received from MCC and MDC medical staff constituted malpractice – is time-barred." Defs.' Reply Mem. at 6, ECF No. 47. The Court declines to consider this argument because it is raised for the first time on reply, *see id.*, and because "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed," *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir. 1998).

80      Defs.' Mem. in Supp. at 2.

81      42 U.S.C. § 1997e(a).

82      *Rodriguez v. Warden, Metro. Corr. Facility*, No. 13 Civ. 3643, 2015 WL 857817, at *7 (S.D.N.Y. Feb. 27, 2015) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

83      *Porter*, 534 U.S. at 532.

84      *Ritter v. Montoya*, 20 Civ. 114, 2021 WL 230205, at *2 (S.D.N.Y. Jan. 22, 2021).

85      28 C.F.R. § 542.10.

86      *Goodall v. Von Blanckensee*, No. 17 Civ. 3615, 2019 WL 8165002, at *4 (S.D.N.Y. July 19, 2019), *report and recommendation adopted*, 2020 WL 1082565 (S.D.N.Y. Mar. 5, 2020); *see* 28 C.F.R. §§ 542.10-19.

87      *Jones v. Bock*, 549 U.S. 199, 216 (2007).

88      *Pratt v. City of New York*, 929 F. Supp. 2d 314, 318 (S.D.N.Y. 2013) (citing *Jones*, 549 U.S. at 215); *see also Smalls v. Jummonte*, No. 08 Civ. 4367, 2010 WL 3291587, at *2 (S.D.N.Y. Aug. 13, 2010) ("Plaintiff was not required to plead or demonstrate his exhaustion of the DOC's established grievance procedure in his Complaint before this Court, and the fact that he did not plead exhaustion does not prove that he failed to exhaust."); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't,* No. 10 Civ. 6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011).

89      *See* Defs.' Mem. in Supp. at 2 (asking the Court to "grant summary judgment" as to Zelaya-Romero's "*Bivens* claims against the

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

Individual Defendants").

90    Fed. R. **Civ**. P. 12(d).

91    *See* ECF Nos. 30, 33.

92    *Pratt*, 929 F. Supp. 2d at 319 (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).

93    Fed. R. **Civ**. P. 12(d).

94    *Rodriguez*, 2015 WL 857817, at *10 (citing *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009)) ("[P]ro se parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment.").

95    Notice of Local Rule 12.1 Statement, ECF No. 27; Notice of Local Rule 56.2 Statement, ECF No. 28.

96    Zelaya-Romero has not consented to electronic service.

97    *Cf. Pantoja v. Enciso*, 18 **Civ**. 11842, 2019 WL 6704684, at *1 n.3 (S.D.N.Y. Dec. 10, 2019) ("The defendants' factual contentions were contained in a statement under Local Civil Rule 56.1.... Defendants served the notice required by Local Civil Rule 56.2 on plaintiffs.").

98    *See Electronic Case Filing Rules & Instructions*, U.S. Court for the Southern District of New York (July 24, 2023) § 9.2 ("Attorneys and *pro se* parties who are not Filing or Receiving Users must be served with a paper copy of any electronically filed pleading or other document. Service of such paper copy must be made according to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Local Rules. Such paper service must be documented by electronically filing proof of service.").

99    *Hernandez*, 582 F.3d at 308 (quoting *McPherson v. Coombe*, 174 F.3d 276 (2d Cir. 1999)).

100    *Rodriguez*, 2015 WL 857817, at *10 (citing *Stevens v. City of New York*, 12 **Civ**. 1918, 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012)) (explaining that courts must "[b]alanc[e] the need to secure the PLRA's mandates of efficiency and early resolution of prisoner rights suits against litigants' interest in a just disposition of their suits").

101    *Id.*

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

102    *Id.*

103    Defs.' Mem. in Supp. at 11.

104    *See Jones*, 549 U.S. at 216.

105    *Rodriguez*, 2015 WL 857817, at *9.

106    Compl. at 5-6.

107    *Id.* at 6.

108    Am. Compl. at 3, ¶ 15.

109    *See* Compl.; Am. Compl.

110    *Pratt*, 929 F. Supp. 2d at 318.

111    *Rodriguez*, 2015 WL 857817, at *9.

112    *Id.* at *3.

113    *Id.*

114    *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

115    *See Bergrin v. United States*, No. 19 Civ. 9681, 2022 WL 912280, at *14 (S.D.N.Y. Mar. 28, 2022) ("Courts have denied leave to amend as futile where the claims are barred by applicable statute of limitations.").

**Zelaya-Romero v. Bussanich, Slip Copy (2025)**

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT C*

2025 WL 790939
Only the Westlaw citation is currently available.
United States District Court, E.D. Washington.

HER MAJESTY the <mark>QUEEN</mark> IN RIGHT OF CANADA AS REPRESENTED BY the MINISTER OF AGRICULTURE AND AGRI-FOOD, a Canadian governmental authority, Plaintiff,
v.
<mark>VAN</mark> WELL NURSERY, INC., a Washington Corporation, Monson Fruit Company, Inc., a Washington Corporation, Gordon Goodwin, an individual, and Sally Goodwin, an individual, Defendants.

NO.


2:20-CV-00181-SAB

Signed March 12, 2025

**Attorneys and Law Firms**

Alyssa Marie Orellana, Pro Hac Vice, Jones Day, San Diego, CA, Cary D. Sullivan, Pro Hac Vice, Jones Day, Irvine, CA, Jennifer D. Bennett, Pro Hac Vice, Jones Day, San Francisco, CA, John R. O'Donnell, Pro Hac Vice, Jones Day, Los Angeles, CA, Michelle K. Fischer, Pro Hac Vice, Garrett Tyler Fox, Pro Hac Vice, Jones Day, Cleveland, OH, Daniel William Short, Paine Hamblen LLP, Spokane, WA, for Plaintiff.

Katie L. Ross, Kent Neil Doll, Jr., KND Law, Spokane Valley, WA, Tim J. Billick, I, Practus LLP, Seattle, WA, for Defendant <mark>Van</mark> Well Nursery Inc.

Mark P. Walters, Carmen Grisaffi, Lowe Graham Jones PLLC, Seattle, WA, Mitchell D. West, Seattle, WA, Miles A. Yanick, Yanick Law & Dispute Resolution PLLC, Seattle, WA, for Defendant Monson Fruit Co., Inc.

Quentin Batjer, Davis Arneil Law Firm LLP, Wenatchee, WA, Tim J. Billick, I, Practus LLP, Seattle, WA, for Defendants Gordon Goodwin, Sally Goodwin.

## ORDER GRANTING MOTION FOR RECONSIDERATION

Stanley A. Bastian, Chief United States District Judge

**\*1** Before the Court is Plaintiff's Motion for Reconsideration of Order Granting Defendants' Motion for Summary Judgment Re: Patent Invalidity, ECF No. 431. Plaintiff is represented by Jennifer Bennett, Daniel Short, Michelle Fischer, Alyssa Orellana, Cary Sullivan, and John O'Donnell. Defendant <mark>Van</mark> Well Nursery is represented by Kent Doll and Katie Ross. The Goodwin Defendants are represented by Quentin Batjer. Defendant Monson Fruit is represented by Mark Walters, Mitchell West, and Miles Yanick. The motion was heard without oral argument.[1]

Plaintiff asks the Court to reconsider its Order granting summary judgment that the patent directed to the Staccato cherry is invalid. Plaintiff asserts the Order was based on false evidence. Rather, the actual evidence contradicts and disproves Defendants' invalidity arguments. Specifically, Defendants submitted a PDF copy of an Excel file—excluding the first ten rows of the native spreadsheet—that purportedly showed sales of Staccato before the '551 Patent's critical date, along with Stemilt grower Kyle Mathison's deposition testimony that the spreadsheet appeared to show Staccato sales. It asserts the excluded rows and Mr. Mathison's trial testimony conclusively establish that the sales were actually of Sonata, an entirely different cherry, and could not have been Staccato sales. Additionally, it maintains that Mr. Mathison's testimony—which was necessary to prove that the sales listed in the Excel file were not for Staccato—did not come prior to trial.

## Motion Standard

Fed. R. Civ. P. 54(b) provides, in part, that "any order or

other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Fed. R. Civ. P. 60(b) states the Court may relieve a party from an order for (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); and (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party, to name a few reasons. A motion under Rule 60(b) must be made within a reasonable time, and for the reasons set forth above, no more than a year after the entry of the order.

The Court is also authorized to reconsider its Orders under its inherent power so long as it has not been divested of jurisdiction. *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "A district court may properly reconsider its decision if it (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quotation omitted). "There may also be other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Whether to grant a motion for reconsideration is within the sound discretion of the court. *Navajo Nation v. Confederated Tribes and Bands of the Yakima Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

**Analysis**

**\*2** As an initial matter, the Court finds that Plaintiff's Motion is timely. The Court has not been divested of its

jurisdiction over this case. Moreover, Plaintiff diligently raised the issue after obtaining Mr. Mathison's trial testimony that showed Exhibit 38 could only refer to Sonata, not Staccato.

The Court also finds it committed clear error in granting summary judgment on the issue of patent invalidity. New evidence of the complete Exhibit 38 and Mr. Mathison's trial testimony create genuine issues of material facts regarding whether Stemilt sold Sonata, not Staccato, in 2000. Moreover, Defendants have not shown they would be prejudiced if the Court were to reconsider its prior order on the validity of the patent. It is undisputed that Defendants excluded the first ten rows of Exhibit 38 that stated the sales were actually of Sonata, an entirely different cherry, then falsely represented to the Court that Exhibit 38 was an accurate copy of the original spreadsheet. It would be manifestly unjust to excuse this behavior at this stage of the proceedings. Defendants' assertions that they relied on the Court's invalidity order when they waived their right to a jury contradicts earlier representations to the Court.

The Court exercises its inherent authority to reconsider its decision. Plaintiff has shown there are genuine issues of material fact regarding the validity of the patent. Plaintiffs are entitled to have the trier of fact consider all relevant evidence in determining whether its patent is valid.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Reconsideration of Order Granting Defendants' Motion for Summary Judgment Re: Patent Invalidity, ECF No. 431, is **GRANTED**.

2. The Court **VACATES** the Order Granting Defendants' Motion for Summary Judgment Re: Patent Invalidity, ECF No. 287.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2025 WL 790939

**Footnotes**

1    The Court has determined that oral argument is not necessary. *See* LCivR 7.1(i)(3)(B)(iii).

Her Majesty Queen in Right of Canada as Represented by..., Slip Copy (2025)

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT D*

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHRISTOPHER WALDEN; and TIFFANY WALDEN,

Plaintiffs,

v.

JOHN PAGSISIHAN, a/k/a BENNY PAGSISIHAN,

Defendant.

No.  1:24-CV-03173-SAB

**ORDER GRANTING PLAINTIFFS' MOTION FOR EXTENSION; DENYING MOTIONS FOR DEFAULT JUDGMENT; AND GRANTING ELECTRONIC CASE FILING AUTHORIZATION**

Before the Court are Plaintiffs' Motion for Extension of Service, ECF No. 5; Motion for Entry of Default, ECF No. 8; Motion for Default Judgment, ECF No. 9; and Motion to Obtain Electronic Case Filing Authorization, ECF No. 10. Plaintiffs are *pro se*. The motions were considered without oral argument.

First, Plaintiffs request the Court grant an extension of time to serve the Complaint on Defendant, pursuant to Fed. R. Civ. P. 4. Under Rule 4(m), a plaintiff must serve a complaint within 90 days of filing, which in this matter expired on January 30, 2025. Having reviewed the Motion for Extension of Service, ECF No. 5, the Court finds good cause to grant the extension. Plaintiffs effectuated service on Defendant on February 3 or 4, 2025. ECF No. 6.

Second, Plaintiffs request an entry of default against Defendant. Plaintiffs filed their Motion for Entry of Default, ECF No. 8, and Motion for Default

**ORDER GRANTING PLAINTIFFS' MOTION FOR EXTENSION; DENYING MOTIONS FOR ENTRY OF DEFAULT; AND . . . ~ 1**

Judgment, ECF No. 9, on February 28, 2025. To properly obtain entry of default, LCivR 55(a)[1] requires a party seeking default provide notice:

> **(1) Notice Required**. Written notice of the intention to move for entry of default must be provided to counsel or, if counsel is unknown, to the party against whom default is sought, regardless of whether counsel or the party have entered an appearance. Such notice shall be given at least 14 days prior to the filing of the motion for entry of default. If notice cannot be provided because the identity of counsel or the whereabouts of a party are unknown, the moving party shall inform the Clerk of Court in the declaration or affidavit.
>
> **(2) Declaration or Affidavit Required**. The moving party must show (a) that the party against whom default is sought was properly served with the summons and complaint in a manner authorized by Federal Rule of Civil Procedure 4; (b) that the party has failed to timely plead or otherwise defend; and (c) that proper notice of the intention to seek entry of default, as described above, has been accomplished.

Plaintiffs have not shown the Court they provided Defendant notice of their intent to seek default. As such, the Court denies Plaintiffs' Motion for Entry of Default and Motion for Default Judgment for failure to comply with LCivR 55(a).

Finally, the Court grants Plaintiffs' Motion for Electronic Case Filing, ECF No. 10.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiffs' Motion for Extension of Service, ECF No. 5, is **GRANTED**.

2.      Plaintiffs' Motion for Entry of Default, ECF No. 8, and Motion for Default Judgment, ECF No. 9, are **DENIED**.

3.      Plaintiffs' Motion to Obtain Electronic Case Filing Authorization, ECF No. 10, is **GRANTED**.

      a.  Plaintiffs shall adhere to the Local Civil Rules for file formatting

---

[1] *See* https://www.waed.uscourts.gov/local-civil-rules-eastern-district-washington

**ORDER GRANTING PLAINTIFFS' MOTION FOR EXTENSION; DENYING MOTIONS FOR ENTRY OF DEFAULT; AND . . .** ~ 2

and processes, found at **https://www.waed.uscourts.gov/local-civil-rules-eastern-district-washington**.

b.  Plaintiffs may contact the Clerk's Office at (509) 458-3400 if they wish to schedule e-filing training.

c.  Plaintiffs may file electronic documents in the above-captioned cause only.

d.  The Clerk's Office will terminate Plaintiffs' ECF Registration should an attorney subsequently file a Notice of Appearance on Plaintiffs' behalf.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to *pro se* Plaintiffs.

**DATED** this 30th day of May 2025.



_____
Stan Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFFS' MOTION FOR EXTENSION; DENYING MOTIONS FOR ENTRY OF DEFAULT; AND . . .** ~ 3