STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,*
*Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS, LLC and EIGHT EIGHTEEN, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>JONATHAN CLAUSEN, CLAUSEN, INC., AR-TT LLC, and LILAC CITY, LLC,<br><br>    Defendants. | Case No.: 2:24-CV-00413-SAB<br><br>COMPANY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER AND VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT |

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS
ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 1 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# TABLE OF CONTENTS

Pages

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

REPLY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

  I.  PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT
     REMAINS SCUTTLED BY THEIR LONGTIME FAILURE
     TO ANSWER THE COUNTERCLAIM ASSERTING
     PLAINTIFFS' BREACH OF THE BILATERAL CONTRACT. . . . . . .    5

  II.  PLAINTIFFS' CLAIMS FOR PATENT INFRINGEMENT
     ARE MERITLESS UNDER THE PATENT EXHAUSTION
     DOCTRINE BECAUSE PUFFED SALES FIGURES ON
     A WEBSITE DO NOT A PARTY ADMISSION MAKE . . . . . . . . . . . .    8

  III.  PLAINTIFFS' CLAIMS FOR TRADEMARK INFRINGEMENT
     AND UNFAIR COMPETITION ARE MERITLESS UNDER
     THE DEFENSES OF THE FIRST SALE DOCTRINE,
     A LICENSE GRANTED, AND NAKED LICENSING . . . . . . . . . . . . .    10

  IV.  ALL JUDICIAL EVENTS ADVERSE TO THE COMPANY
     DEFENDANTS HAVE BEEN INTERLOCUTORY AND
     THUS SUBJECT TO REVISITING PURSUANT TO THE
     COURT'S INHERENT AUTHORITY AND ITS POWER
     UNDER RULE 54(b) TO CORRECT CLEAR ERRORS
     AND AVOID MANIFEST INJUSTICE. . . . . . . . . . . . . . . . . . . . . . . .    13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS
ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 2 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## **TABLE OF AUTHORITIES**

Pages

**Cases**

*Belezos v. Bd. of Selectmen of Hingham,*
    No. 17-12570-MBB, 2019 WL
    6340990  (D. Mass. Nov. 27, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . .    10

*Frank Briscoe Co., Inc. v. Morrison-Knudsen Co.,*
    776 F.2d 1414 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Hanks v. Anderson,* No. 2:19-cv-00999,
    2023 WL 7387245 (D. Utah Nov. 7, 2023) . . . . . . . . . . . . . . . . . . .    8

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
    738 F.3d 1085 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*L.A. Public Ins. Adjusters, Inc. v. Nelson,*
    17 F.4th 521 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

*Ogden v. Cozumel, Inc.,* No. A-18-CV-00358-DAE-SH,
    2019 WL 5080370 (W.D. Tex. Oct. 9, 2019) . . . . . . . . . . . . . . . . . . .    8

*St. Clair v. Johnny's Oyster & Shrimp, Inc.,*
    76 F. Supp. 2d 773 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,*
    53 F.3d 1073 (9th Cir. 1995) (*per curiam*) . . . . . . . . . . . . . . . . . . . . .    11

*United States v. Burnett,* 262 F.2d 55 (9th Cir. 1959) . . . . . . . . . . . . . . . . . .    14

*Wady v. Provident Life & Accident Insurance Co.*
    *of America*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) . . . . . . . . . . . . . .    9

*Yuga Labs, Inc. v. Ripps,* 144 F.4th 1137 (9th Cir. 2025) . . . . . . . . . . . . . . . . 11, 12

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

**Statutes**

28 U.S.C. § 1654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

**Rules**

Fed. R. Civ. P. 6(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

Fed. R. Civ. P. 8(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Fed. R. Civ. P. 12(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

Fed. R. Civ. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Fed. R. Evid. 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## **PRELIMINARY STATEMENT**

The Company Defendants (Clausen, Inc., AR-TT LLC; and Lilac City, LLC) hereby reply to the opposing memo (ECF No. 118) and proposed order (ECF No. 121) submitted by the Plaintiffs in response to the Company Defendants' motion (ECF No. 104) and proposed order (ECF No. 104-1), joined by Defendant Jonathan Clausen (ECF No. 106).  The Company Defendants' motion seeks an Order vacating *nunc pro tunc* the Court's interlocutory orders, including ECF Nos. 83, 84, 68, 71, and 73, because the underlying Complaint (ECF No. 1) is meritless.

As will be shown *infra,* Plaintiffs' opposition to the instant motion does not set forth any legally- or factually-sustainable basis for denial of the instant motion.

## **REPLY ARGUMENT**

The Company Defendants have made a substantial showing that the Court should revisit and vacate *nunc pro tunc* numerous adverse rulings and outcomes entered against them during a period when they were without legal representation. When properly viewed, nothing in Plaintiffs' opposition to the instant motion casts doubt on the fatal flaws in their case or the conclusion that the underlying Complaint, from the day it was filed on December 10, 2024, is meritless.

**I. PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT REMAINS SCUTTLED BY THEIR LONGTIME FAILURE TO ANSWER THE COUNTERCLAIM ASSERTING PLAINTIFFS' BREACH OF THE BILATERAL CONTRACT**

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 5 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

A Counterclaim for Plaintiffs' breach of contract, denominated as such, was served and filed as part of Defendants' Answer on January 24, 2025. (ECF No. 33.) Accordingly, an answer by the Plaintiffs to the Counterclaim was required by February 14, 2025. Fed. R. Civ. P. 12(a)(1)(B) (21 days). Plaintiffs never filed an Answer to the Counterclaim until April 15, 2026 – a filing obviously inspired by the Defendants' moving papers and the Company Defendants' reliance in the instant motion on the Plaintiffs' long failure to answer the Counterclaim. Plaintiffs' long silence and failure to seek an extension should be treated as Plaintiffs' admission of the well-pleaded allegations of the Counterclaim and provide a complete defense to the Complaint's claim for breach of contract by the Defendants.

Plaintiffs' memo at pages 5-6 tells the Court that their admission is now moot because of their (grossly belated) filing of an Answer on April 15, 2026. Plaintiffs are wrong. Plaintiffs have not lifted a finger to even *attempt* to do what the Federal Rules of Civil Procedure require for their belated Answer to be anything but disregarded by the Court.

Federal Rule 6(b)(1)(B) express states:

When an act . . . must be done within a specified time, the court may, for good cause, extend the time:

\* \* \*

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 6 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Here Plaintiffs have not made such a motion, much less asked for such an extension and shown good cause and excusable neglect on their part.[1]

Nor could they make such a showing. The extension of time would necessarily have to be very long and the Plaintiffs – both of which are sophisticated in-state and out-of-state business LLCs – at all times have been represented by a major law firm. Moreover, the Company Defendants have already relied upon Plaintiffs' failure to challenge the Counterclaim and would be substantially prejudiced by such a very late answer. In addition, there is no good cause here. Plaintiffs slept on submitting an answer to the Counterclaim until shaken awake by the Defendants' moving papers and the Company Defendants' reliance in the instant motion on the Plaintiffs' long failure to answer the Counterclaim.

Accordingly, on the instant motion the Plaintiffs should be stuck with their own admission of the Counterclaim pursuant to Federal Rule of Civil Procedure 8(b)(6), which is *fatal* to their own first cause of action for breach of contract.

---

[1] If a plaintiff "fail[s] to demonstrate that its failure to initially file an answer [to a counterclaim] was the product of 'excusable neglect,' as is required to obtain an extension of time once a filing period has elapsed under the Federal Rules . . . ," such a motion is properly denied. *L.A. Public Ins. Adjusters, Inc. v. Nelson,* 17 F.4th 521, 522 (5th Cir. 2021).

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS
ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 7 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Plaintiffs' memo at page 6 relies on a couple of cases denying a motion to *strike* a late answer to a counterclaim, one late for only four days and another late for 14 months.  However, a disfavored motion to strike is not *sub judice*, and even if it were, such a motion should demolish Plaintiffs' April 15, 2026, Answer here.

Each motion to strike a late pleading is decided on its own specific facts. Cases abound striking late answers and even portions of late answers to pleadings. *E.g.*, *Hanks v. Anderson,* No. 2:19-cv-00999, 2023 WL 7387245, *1-3 (D. Utah Nov. 7, 2023) (copy appended as Exhibit A) (striking answer filed more than two years after an answer to crossclaim was due); *Ogden v. Cozumel, Inc.,* No. A-18-CV-00358-DAE-SH, 2019 WL 5080370, *2-4 (W.D. Tex. Oct. 9, 2019) (copy appended as Exhibit B) (striking affirmative defenses in answer filed four months late after deadline to respond to counterclaim in a trademark case).

Plaintiffs' opposition memo (ECF Doc. No. 118) does not deny that under applicable Washington state law their claim for breach of contract is scuttled without an answer to the Counterclaim for Plaintiffs' material breach of the same contract, a Settlement Agreement.

Accordingly, Plaintiffs on this motion remain hoisted on their own petard as to their first cause of action.

//

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 8 of 16

## II. PLAINTIFFS' CLAIMS FOR PATENT INFRINGEMENT ARE MERITLESS UNDER THE PATENT EXHAUSTION DOCTRINE BECAUSE PUFFED SALES FIGURES ON A WEBSITE DO NOT A PARTY ADMISSION MAKE

Nowhere does Plaintiffs' opposition memo ameliorate their failure to authenticate the website posting they rely on for supposed proof of the Company Defendants' sales. As stated in *Wady v. Provident Life & Accident Insurance Co. of America,* 216 F. Supp. 2d 1060, 1064-65 (C.D. Cal. 2002), the Plaintiffs "have no personal knowledge of who maintains the website, who authored the documents, or the accuracy of their contents."

Blithely gliding past the lack of authentication for the puffed figures on which they rely, Plaintiffs content themselves by floating the notion that the sales figures are non-hearsay pursuant to Federal Rule of Evidence 801 as an opposing party's statement. (ECF No. 118 at 9.) But as the Court cogently pointed out in *St. Clair v. Johnny's Oyster & Shrimp, Inc.,* 76 F. Supp. 2d 773, 775 (S.D. Tex. 1999):

> Anyone can put anything on the Internet. No web-site is monitored for accuracy and *nothing* contained therein is under oath or even subject to independent verification absent underlying documentation. . . . [A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules . . . .

What is involved is "voodoo" evidence in a multi-defendant case (three separate companies and an individual) used to erroneously pin the tail on the donkey *of a*

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 9 of 16

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

*mere local house painting company* – Defendant Lilac City, LLC – to some half a million dollars of liability for ornamental finger grip tool design patent infringement.

All of this occurred while the Company Defendants were unrepresented and therefore unable to represent themselves and make arguments to the Court – despite persistent, record-reflected efforts to obtain legal representation for them.

Plaintiffs' memo trots out cases espousing the familiar trope that ordinarily reconsideration is not allowed for an argument that the movant could and should have presented to the Court prior to an initial ruling.  (ECF No. 118 at 2.)  But even the general principle that new arguments are unacceptable on reconsideration is not inexorable, and courts in proper cases find exceptions to the general rule, where clear error was committed resulting in manifest injustice.  *E.g., Belezos v. Bd. of Selectmen of Hingham,* No. 17-12570-MBB, 2019 WL 6340990, *6-9 (D. Mass. Nov. 27, 2019) (copy appended as Exhibit C).

Indeed, the general principle would appear to be inapplicable to this case, where the unrepresented Company Defendants *could not* make the present arguments as they were at the time effectively handcuffed as unrepresented artificial entities.  Had they made any arguments for themselves those arguments would have been considered void *ab initio* by the Court, as artificial entities *must* appear by counsel in order to be heard.  *See* 28 U.S.C. § 1654.

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 10 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

### III.  PLAINTIFFS' CLAIMS FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION ARE MERITLESS UNDER THE DEFENSES OF THE FIRST SALE DOCTRINE, A LICENSE GRANTED, AND NAKED LICENSING

Next Plaintiffs' memo tries to sidestep the well-accepted principle that "[r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074 (9th Cir. 1995) (*per curiam*). Plaintiffs' bald claim that "Defendants have sold far more product than what was legitimately purchased" (ECF No. 118 at 10) is supported by nothing but inadmissible, puffed sales figures on a website insufficiently identified and put there by an unidentified person or persons, as indicated *supra*.

Plaintiffs in opposition had their chance to point to real rather than phantom sales if they had evidence of same, but they apparently don't.

Plaintiffs fare no better in trying to controvert the clear August 27, 2021, text-message documented evidence of a license granted. Their resort to the Company Defendants' alleged breach of the Settlement Agreement takes them nowhere, for, as established *supra,* Plaintiffs scuttled that by failing to answer the Counterclaim.

Plaintiffs' final magic trick in this section of their memo is the contradictory way they handle the evidence of their naked licensing, which, when properly seen, abandoned the marks on which they sue. After having denied on page 10 that there

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 11 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

was a license, they claim on page 11 that there was no naked licensing because they "maintain[ed] control over their mark." But as their own cited case of *Yuga Labs, Inc. v. Ripps,* 144 F.4th 1137, 1162 (9th Cir. 2025), explained, "[t]he naked-licensing rule applies only when a trademark license has been granted." So which is it, in their alternative universe, no license, or a license sufficiently policed for quality control?

Instead, the down-to-earth reality is clear and convincing evidence that there was a license to use the Plaintiffs' marks and, at the same time, that the Plaintiffs failed to exercise adequate quality control over use of those marks. That legally resulted in the marks' abandonment by the Plaintiffs, nixing their lawsuit for infringement and unfair competition.

Indeed, the only suggestion of control of their marks alluded to in Plaintiffs' memo is the bald statement at pages 10 to 11 that "Plaintiffs did in fact maintain control over their mark as identified in the agreement and the fact that Plaintiffs control when and how it is used." But what "agreement" is that? Presuming it is the Settlement Agreement does not get the Plaintiffs anywhere – what portion of the Settlement Agreement do they secretly have in mind, especially for a Settlement Agreement that is largely redacted in the public record? They never say.

And it bears notice that Plaintiffs never even use the word "quality" – despite the legal requirement that quality control over a mark in the hands of a licensee is of the essence to avoid a charge of naked licensing by a mark's owner. Their own cited

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS
ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 12 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

case of *Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1098 (9th Cir. 2013), explains that "[w]here a trademark owner licenses the use of its mark but does not provide for the continued quality control of the goods and services sold under the mark, the trademark may cease to function" and the owner is "estopped from asserting rights in the trademark."

### IV. ALL JUDICIAL EVENTS ADVERSE TO THE COMPANY DEFENDANTS HAVE BEEN INTERLOCUTORY AND THUS SUBJECT TO REVISITING PURSUANT TO THE COURT'S INHERENT AUTHORITY AND ITS POWER UNDER RULE 54(b) TO CORRECT CLEAR ERRORS AND AVOID MANIFEST INJUSTICE

Plaintiffs mistakenly assert on page 1 of their memo that the instant motion does not identify under which Federal Rule it seeks reconsideration. (ECF No. 118 at 1.) This is just silliness. The instant motion expressly states that reconsideration is sought pursuant to Federal Rule 54(b) and the Court's inherent power to correct clear errors and avoid manifest injustice. (ECF No. 104 at 15.)

Plaintiffs' final stand is their absolute nonsense in closing that "**There are no Interlocutory Orders to be Vacated.**" To this the Company Defendants provide the Latin reply, *falsus in uno, falsus in omnibus*. And Plaintiffs' argument is definitely false in more than one thing.

How could ECF No. 68 (Order granting renewed motion for preliminary injunction) not be interlocutory? Plaintiffs do not say. How could ECF No. 71 (Clerk's entry of default) not be interlocutory? Plaintiffs do not say. How could ECF

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 13 of 16

No. 73 (Order on motion to compel) not be interlocutory?  Plaintiffs do not say.  How could ECF No. 83 (Order granting motion for default judgment) not be interlocutory?  Plaintiffs do not say.

How could ECF No. 84 (Judgment) not be interlocutory when the Court made no certification under Rule 54(b) of no just cause for delay in adjudicating less than all claims by all parties and made no express determination of why that is so, why Defendant Jonathan Clausen was omitted, or why the Counterclaim for breach of contract (which is intertwined with the Complaint's claim for breach of the same contract) was omitted – and the Counterclaim never even was discussed or noted?  Plaintiffs do not say.

Well, the Ninth Circuit in *Frank Briscoe Co., Inc. v. Morrison-Knudsen Co.,* 776 F.2d 1414, 1415-16 (9th Cir. 1985), says – effectively – that all of these adverse judicial events are interlocutory.  Analogously stated in another Ninth Circuit case, "[i]n spite of the language of the [district] court in calling it such, this was not a final judgment." *United States v. Burnett,* 262 F.2d 55, 59 (9th Cir. 1959) (claim-splitting is not a tactic for finalizing a judgment).

## CONCLUSION

Because, when properly seen, the underlying Complaint is meritless, the Company Defendants' reconsideration motion should be granted, and an Order should be entered vacating *nunc pro tunc* the Court's interlocutory orders against

COMPANY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 14 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

them, including ECF Doc. Nos. 83, 84, 68, 71, and 73, and granting to them such other and further relief as is just and proper.

Dated:  April 27, 2026                    Respectfully submitted,

                              By:    /s/ *Stephen L. Sulzer*
                                     Stephen L. Sulzer
                                     (appearing *pro hac vice*)
                                     **STEPHEN L. SULZER PLLC**
                                     11710 Plaza America Drive, Suite 2000
                                     Reston, VA  20190
                                     P: (703) 871-5000
                                     F: (202) 558-5101
                                     E: ssulzer@sulzerpllc.com

                                     /s/ *Douglas R. Dick*
                                     Douglas R. Dick
                                     ROBERT T. WRIGHT, WSBA #54075
                                     DOUGLAS R. DICK, WSBA #46519
                                     WHC ATTORNEYS, PLLC
                                     12209 E. Mission Avenue, Suite 5
                                     Spokane Valley, WA  99206
                                     P: (509) 927-9700
                                     F: (509) 777-1800
                                     E: rwright@whc-attorneys.com
                                     E: doug@whc-attorneys.com

                                     *Attorneys for Defendants Jonathan Clausen,*
                                     *Clausen, Inc., AR-TT LLC, and Lilac City,*
                                     *LLC*

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS
ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 15 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system, including the following:

Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
Lee & Hayes, P.C.
601 W. Riverside Ave., Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com
Email: johanna.tomlinson@leehayes.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 27th day of April 2026.

_____
**Julie Sutter,** Legal Assistant

COMPANY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO VACATE BECAUSE PLAINTIFFS' CLAIMS
ARE DEVOID OF MERIT
Case No. 2:24-CV-00413-SAB
Page 16 of 16

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# *EXHIBIT A*

2023 WL 7387245
Only the Westlaw citation is currently available.
United States District Court, D. Utah, Central Division.

Nathan W. **HANKS** and Realsource Equity Services, LLC, Plaintiffs,
v.
Michael S. ANDERSON; AKA Partners, LC; Kent Anderson; Michael Howard; and Greenfill Woodland Creek Apts., LLC, Defendants.
Kent Anderson and Michael Howard, Counterclaimants, Crossclaimants, and Third-Party Plaintiffs,
v.
Nathan W. **Hanks** and RealSource Equity Services, LLC, Counterclaim Defendants,
Michael S. Anderson, Crossclaim Defendant, and
RealSource Brokerage Services, L.C.; RealSource Properties, LLC; RealSource Residential, LLC, and John Does 1-100, Third-Party Defendants.

Case No.



2:19-cv-00999

|
Signed November 7, 2023
|
Filed November 8, 2023

**Attorneys and Law Firms**

M. David Steffensen, R. Scott Young, Snow Christensen & Martineau, Salt Lake City, UT, Mark A. Larsen, Lisa C. Rico, Larsen & Rico PLLC, Salt Lake City, UT, for Plaintiff.

Evan S. Strassberg, Richard F. Ensor, Steven J. Joffee, Michael Best & Friedrich LLP, Cottonwood Heights, UT,

for Defendant Michael S. Anderson.

Matthew N. Evans, Whitney Hulet Krogue, Ray Quinney & Nebeker PC, Salt Lake City, UT, for Defendants Kent Anderson, Michael Howard, AKA Partners, LC.

Whitney Hulet Krogue, Ray Quinney & Nebeker PC, Salt Lake City, UT, for Defendant GreenFill Woodland Creek Apts, LLC.

Matthew N. Evans, Ray Quinney & Nebeker PC, Salt Lake City, UT, for Counterclaimant, Crossclaimant, and Third-Party Plaintiff Kent Anderson.

Matthew N. Evans, Whitney Hulet Krogue, Ray Quinney & Nebeker PC, Salt Lake City, UT, for Counterclaimant, Crossclaimant, and Third-Party Plaintiff Michael Howard.

M. David Steffensen, R. Scott Young, Snow Christensen & Martineau, Salt Lake City, UT, Mark A. Larsen, Lisa C. Rico, Larsen & Rico PLLC, Salt Lake City, UT, for Third-Party Defendants Real Source Brokerage Services, RealSource Properties.

Mark A. Larsen, Lisa C. Rico, Larsen & Rico PLLC, Salt Lake City, UT, R. Scott Young, Snow Christensen & Martineau, Salt Lake City, UT, for Counterclaim Defendant RealSource Equity Services.

Mark A. Larsen, Lisa C. Rico, Larsen & Rico PLLC, Salt Lake City, UT, R. Scott Young, Snow Christensen & Martineau, Salt Lake City, UT, for Crossclaim Defendant.

**MEMORANDUM DECISION AND ORDER GRANTING MICHAEL S. ANDERSON'S MOTION TO STRIKE ANSWER TO HIS CROSSCLAIM AGAINST NATHAN HANKS**

Daphne A. Oberg, United States Magistrate Judge

**\*1** This case involves disputes among numerous parties regarding an agreement between an original plaintiff, Nathan **Hanks**, and an original defendant, Michael Anderson.[1] Parties on both sides of the case have filed crossclaims, counterclaims, and third-party claims, creating an ever-dancing web of claims surrounding the agreement. On October 7, 2020, M. Anderson[2] filed a crossclaim for indemnity against Mr. **Hanks**, alleging the agreement obligated Mr. **Hanks** to indemnify M. Anderson for any claims brought by two original defendants, Kent Anderson and Michael Howard, against

M. Anderson.[3] But the crossclaim sat in limbo for years: Mr. Hanks did not file an answer to the crossclaim until July 13, 2023[4]—nearly three years after the twenty-one day answer deadline—and M. Anderson never moved for default. In his late-filed answer, Mr. Hanks asserted several fact-intensive affirmative defenses to the crossclaim, including waiver, estoppel, laches, unclean hands, and failure to mitigate.[5]

M. Anderson moves to strike the answer to the crossclaim, arguing Mr. Hanks missed the deadline and permitting a late answer asserting substantive defenses would prejudice M. Anderson given that fact discovery is already closed.[6] Mr. Hanks opposes the motion to strike, arguing the Federal Rules of Civil Procedure do not allow courts to strike late pleadings; M. Anderson should have moved for default instead of moving to strike; and allowing the late answer would not prejudice M. Anderson.[7] Because Mr. Hanks has not shown his years-late answer was due to excusable neglect, the motion to strike is granted.

LEGAL STANDARDS

Under Rule 12(a)(1)(B) of the Federal Rules of Civil Procedure, a party must serve an answer to a crossclaim within twenty-one days of being served with the crossclaim.[8] Notwithstanding this, under Rule 6(b)(1) of the Federal Rules of Civil Procedure, a court may for good cause extend a deadline which has already passed "if the party failed to act because of excusable neglect."[9] When assessing excusable neglect, courts analyze "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."[10]

ANALYSIS

**\*2** Mr. Hanks' answer was late because it was not filed within the twenty-one-day deadline for responses to crossclaims.[11] As explained below, when pleadings violate the Federal Rules of Civil Procedure, courts have inherent authority to strike them. Although courts may extend deadlines for parties to file pleadings upon a showing of excusable neglect, Mr. Hanks has not shown excusable neglect. Accordingly, the court declines to extend the

answer deadline and strikes Mr. Hanks' late answer.

Under the federal rules, Mr. Hanks' deadline to answer M. Anderson's crossclaim was October 28, 2020, twenty-one days after the crossclaim was filed.[12] However, Mr. Hanks did not file an answer until July 13, 2023—nearly three years later.[13] In response to M. Anderson's motion to strike the late answer, Mr. Hanks asserts a number of arguments which are discussed in turn below.

Mr. Hanks first argues the Federal Rules of Civil Procedure do not allow a motion to strike a late answer.[14] But courts have inherent authority to strike filings that violate the rules.[15] It is not uncommon for courts to strike late answers.[16] It would be a peculiar system if courts were unable to enforce the deadlines provided by the Federal Rules of Civil Procedure.

Mr. Hanks next argues Rule 55 of the Federal Rules of Civil Procedure, not Rule 6(b), governs late answers—and M. Anderson should have moved for default instead of moving to strike the answer.[17] Whether or not M. Anderson could have moved for default under Rule 55 after Mr. Hanks failed to timely answer, this is a separate issue from Mr. Hanks' obligation under the rules. Mr. Hanks has not shown how the availability of default under Rule 55 authorizes Mr. Hanks to disregard Rule 12(a)(1)(B)'s requirement that he respond to the crossclaim within twenty-one days. Rule 55 merely *permits* a party to move for default; nothing in the rule suggests a party can file a pleading as late as she wants if the opposing party does not move for default. And as noted above, courts have inherent authority to strike late pleadings. Contrary to Mr. Hanks' suggestion, Rule 6(b) governs late answers, and provides that a court may extend a deadline which has already passed only if the party seeking extension shows her failure to act was due to "excusable neglect."[18]

Here, the factors relevant to an excusable neglect inquiry—prejudice to the nonmoving party, the length of the delay and its impact on the case, the reason for the delay, and whether the movant acted in good faith—do not support permitting a late answer. As M. Anderson points out, discovery is closed in this case.[19] Because Mr. Hanks filed his answer to the crossclaims so late, M. Anderson has been unable to conduct fact discovery on any of the numerous fact-intensive defenses it contains.[20] The lack of discovery on these defenses would prejudice M. Anderson, and reopening discovery at this stage would significantly delay the case, which has already had numerous discovery extensions.[21] Mr. Hanks has offered no reason or justification for the nearly three-year delay

and has made no argument regarding whether he acted in good faith.[22] Overall, these factors weigh against a finding of excusable neglect.

**\*3** Mr. Hanks argues M. Anderson will not be prejudiced by the late answer because a crossclaim for indemnity cannot "accrue" until M. Anderson is determined to be liable, which has not happened.[23] Mr. Hanks also asserts M. Anderson's indemnity crossclaim is actually an affirmative defense mislabeled as a crossclaim, and does not require a response.[24] But arguments as to the merits of M. Anderson's crossclaim are not properly before the court; such arguments may only be made in a timely filed dispositive motion. Moreover, if it is true the crossclaim does not require an answer, striking Mr. Hanks' answer will have no impact.

Finally, Mr. Hanks argues M. Anderson will not be prejudiced because the crossclaim merely raises a legal issue regarding the interpretation of the agreement, which must be addressed at some point anyway, since the entire case involves the interpretation of the agreement.[25] Regardless of whether this is true, Mr. Hanks' late answer raises fact-intensive defenses which are not merely legal issues and would require the reopening of discovery. Permitting this answer, nearly three years late, will prejudice M. Anderson and further delay proceedings in the case. Because Mr. Hanks has not made a showing of excusable neglect under Rule 6(b), Mr. Hanks' late answer is not permitted.

## CONCLUSION

Because Mr. Hanks filed his answer to Mr. Anderson's counterclaim years after the deadline to do so, and he has not made a showing of excusable neglect under Rule 6(b), M. Anderson's motion to strike[26] is GRANTED. Mr. Hanks' Answer to Michael Anderson's Crossclaim[27] is hereby STRICKEN.

## All Citations

Not Reported in Fed. Supp., 2023 WL 7387245

## Footnotes

1    (*See* Third. Am. Compl. 5, Doc. No. 214.)

2    This order refers to parties Michael Anderson and Kent Anderson by either their full names or their first initials and last names, for clarity.

3    (Michael S. Anderson's Reply to Kent Anderson and Michael Howard's Countercl. and Cross-cl.; Michael S. Anderson's Cross-cl.; Michael S. Anderson's Cross-cl. for Indemnity Against Nathan W. Hanks ("Cross-cl.") 10–11, Doc. No. 74.) The court clerk refiled the crossclaim as docket number 103 on February 25, 2021 to correctly identify the document. (*See* Cross-cl. for Indemnity Against Nathan W. Hanks, Doc. No. 103.)

4    (*See* Answer to Michael Anderson's Cross-cl. ("Answer"), Doc. No. 289.)

5    (*See id.* at 3–6.)

6    (Michael S. Anderson's Mot. to Strike Answer to His Crossclaim Against Nathan Hanks ("Mot. to Strike"), Doc. No. 292.)

7    (Mem. in Opp'n to Mot. to Strike Answer to Cross-cl. Against Nathan Hanks ("Opp'n"), Doc. No. 301.)

Hanks v. Anderson, Not Reported in Fed. Supp. (2023)

8       Fed. R. Civ. P. 12(a)(1)(B).

9       Fed. R. Civ. P. 6(b)(1)(B).

10      *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (quoting *Pioneer Inv. Servs. Co. v. Brunswisk Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

11      *See* Fed. R. Civ. P. 12(a)(1)(B).

12      *See id.*; (Cross-cl., Doc. No. 74.)

13      (*See* Answer, Doc. No. 289.)

14      (Opp'n 3–5, Doc. No. 301.)

15      *See, e.g.*, *Utah Republican Party v. Herbert*, No. 2:14-cv-00876, 2015 WL 6394534 at *3, 2015 U.S. Dist. LEXIS 144392 at *9 (D. Utah Oct. 22, 2015) (unpublished) ("A federal trial court has *inherent* authority to manage its docket. This inherent authority includes the ability to strike untimely motions and oppositions." (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962))).

16      *See, e.g.*, *Nexmed Holdings, Inc. v. Block Inv., Inc.*, No. 2:04-CV-288, 2006 WL 120261 at *2, 2006 U.S. Dist. LEXIS 4092 at *6 (D. Utah Jan. 17, 2006) (unpublished) (striking late answer where defendant failed to show excusable neglect under Rule 6(b)); *see also Amick v. Ohio Dep't of Rehab. & Corr.*, 2011 WL 4055246, at *2, 2011 U.S. Dist. LEXIS 102680, at *6 (S.D. Ohio Sept. 8, 2011) (unpublished) (gathering district court opinions to show untimely answers are "routinely stricken").

17      (Opp'n 5–6, Doc. No. 301.)

18      Fed. R. Civ. P. 6(b)(1)(B).

19      (*See* Ninth. Am. Scheduling Order, Doc. No. 244 (showing discovery closed on June 23, 2023).)

20      (*See* Mot. to Strike 4, Doc. No. 292.)

**Hanks v. Anderson, Not Reported in Fed. Supp. (2023)**

(*See* Order Granting in Part and Den. in Part Pls.' Mot. for Extension of Expert Witness Deadlines 2, Doc. No. 287) (noting the scheduling order had been amended nine times, and stating "[t]he court has previously indicated, due to the age of the case and the number of prior extensions, it is not inclined to grant further extensions").

Notably, Mr. Hanks never moved for leave to file a late answer under Rule 6(b). But even liberally construing his Memorandum in Opposition, (Doc. No. 301), as a Rule 6(b) motion, Mr. Hanks fails to make the requisite showing of excusable neglect.

(Opp'n 7, Doc. No. 301.)

(*Id.* at 8–11.)

(*Id.* at 11.)

(Doc. No. 292.)

(Doc. No. 289.)

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*EXHIBIT B*

2019 WL 5080370
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

Susan **OGDEN** and Robert L. and Mary D. **Ogden** Limited Partnership, Plaintiffs,
v.
COZUMEL, INC. d/b/a El Arroyo, Defendant.

Civil No.


A-18-CV-00358-DAE-SH

|
Signed 10/09/2019
|
Filed 10/10/2019

**Attorneys and Law Firms**

Jason W. Snell, John-Robert Skrabanek, The Snell Law Firm, PLLC, Jennifer Tatum Lee, Joshua G. Jones, Cabrach J. Connor, Connor Kudlac Lee PLLC, Austin, TX, for Plaintiffs.

Christine Kirchner, Jeffrey Carl Wigginton, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, for Defendant.

**ORDER**

SUSAN    HIGHTOWER,    UNITED    STATES MAGISTRATE JUDGE

**\*1** On September 16, 2019, the District Court filed an Amended Order of Referral referring to the undersigned all pending and future motions in this case, pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and Rule 1 of Appendix C to the Local Rules of the U.S. District Court for the Western District of Texas.[1]

Before the Court are Plaintiffs' Opposed Motion for Leave to File Plaintiffs' Motion for Partial Summary Judgment ("Motion for Leave to File") (Dkt. No. 69); Defendant's Motion to Strike Late Filed Pleading and Confirm Deemed Admissions ("Motion to Strike") (Dkt. No. 72); and the associated response and reply briefs (Dkt. Nos. 75, 77, 78, and 81).

**I. BACKGROUND**

This suit concerns ownership of the mark EL ARROYO, which has been used for more than 40 years in association with an Austin restaurant. On September 18, 2019, the District Court accepted and adopted a Report and Recommendation to, inter alia, grant Defendant's Motion for Partial Summary Judgment on the basis that Plaintiffs' claims for breach of contract and false or fraudulent federal registration are barred by the doctrine of laches (Dkt. Nos. 66 and 73). Plaintiffs now seek leave to file a motion for partial summary judgment as to Defendant's claim of fraud in the procurement of Plaintiffs' Texas state trademark registration on the basis that it too is barred by the doctrine of laches. Defendant opposes Plaintiffs' motion, pointing out that the deadline for dispositive motions expired more than four months ago, on May 31, 2019, and jury trial is set for November 2019, just a few weeks away.

As for the Motion to Strike, Plaintiffs' Motion to Dismiss Defendant's Counterclaims was denied on March 26, 2019 (Dkt. No. 41), making Plaintiffs' Answer to Defendant's Counterclaims ("Answer") due on April 9, 2019, pursuant to Fed. R. Civ. P. 12(a)(4)(A). Yet Plaintiffs did not file their Answer (Dkt. No. 19) until September 13, 2019, due to "counsel's inadvertent oversight." Dkt. No. 77 at 1. Defendant now moves to "strike the late-filed answer and confirm Defendant's allegations are deemed admitted" under Fed. R. Civ. P. 8(b)(6). Dkt. No. 72 at 2. Plaintiffs argue in response that Defendant was aware of Plaintiffs' allegations and defenses to its counterclaims; Defendant would not be prejudiced by permitting Plaintiffs' late-filed Answer; and

"Defendant's Position is contrary to the Fifth Circuit's preference for decisions on the merits." Dkt. No. 77 at 7.

## II. ANALYSIS

The Court addresses the two motions in turn.

### A. Motion for Leave to File

Fed. R. Civ. P. 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The good cause standard "requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.' " *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1552.1 (2d ed. 1990)). In making the good cause determination, courts consider four factors: (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019); *see also Vazquez v. State Farm Lloyds*, 2019 WL 2564573, at *2 (W.D. Tex. Mar. 13, 2019) (applying these factors to request to modify dispositive motion deadline).

**\*2** Where, as here, the time to act has expired, it may be extended by motion "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Factors used to determine "excusable neglect" include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006); *see also Rivero v. Sunbeam Prods.*, 2010 WWL 1752532, at *1 (W.D. Tex. April 29, 2010).

"Even if good cause and excusable neglect are shown, it nonetheless remains a question of the court's discretion whether to grant any motion to extend time under Rule 6(b)." *McCarty v. Thaler*, 376 F. App'x 442, 443 (5th Cir. 2010).

The district court has broad discretion in controlling its own docket. This includes the ambit of scheduling orders and the like. Thus, a court's refusal to allow the filing of a substantive motion on the eve of trial three months after the expiration of a deadline ... should normally be deemed well within the court's discretion. *Edwards v. Cass Cty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990).

Here, more than four months after the dispositive motion deadline, Plaintiffs have established neither good cause nor excusable neglect. Plaintiffs argued only the elements of excusable neglect in their opening brief. *See* Dkt. No. 69 at 3-4. Nonetheless, the Court addresses both standards.

### 1. Plaintiffs Have Not Shown Good Cause to Modify the Scheduling Order

First, Plaintiffs explain that their late filing is appropriate in light of the Court's decision to grant summary judgment dismissing certain of Plaintiffs' claims. Defendant argues in response that Plaintiffs "made an intentional decision not to file the motion months ago." Dkt. No. 75 at 5. The undersigned finds Defendant's argument persuasive. Plaintiffs state that they "did not file a motion for summary judgment to dismiss Defendant's fraud claims based on the good-faith belief that fraud claims were continuing torts and were, therefore, not subject to a laches defense." Dkt. No. 69 at 3. Plaintiffs thus made a strategic decision, an explanation that does not constitute good cause for failing to timely comply with the Court's scheduling order. "Good cause does not typically include a change of heart on a litigation strategy." *FCCI Ins. Co. v. DS Mech. Contractors, Inc.*, 2017 WL 11218982, at *5 (W.D. Tex. July 25, 2017) (quoting *Martinez v. Petrenko*, 792 F.3d 173, 180 (1st Cir. 2015)) (internal quotations omitted).

Second, as to the importance of the modification, the undersigned finds that it would not be appropriate to modify the scheduling order to permit an additional motion for partial summary judgment because the parties' claims will be adjudicated at the trial scheduled to begin in just a few weeks. As for the third factor, modifying the scheduling order to permit the dispositive motion Plaintiffs seek would prejudice Defendant, not only by inappropriately prolonging the case but also because Plaintiffs did not assert an affirmative defense of laches until they filed their untimely Answer, discussed further *infra*, on the same day as their Motion for Leave. Finally, permitting Plaintiffs to pursue this defense newly asserted

Ogden v. Cozumel, Inc., Not Reported in Fed. Supp. (2019)

after 17 months of litigation would cause prejudice to Defendant that could not be cured by a continuance at this late stage of the case. For the foregoing reasons, Plaintiffs' Motion for Leave does not satisfy the good cause standard.

**2. Plaintiffs Have Not Established Excusable Neglect**

**\*3** Turning to excusable neglect, first, the danger of prejudice to Defendant as non-movant is substantial, for the reasons discussed in the preceding paragraph. Second, the delay in permitting briefing of a motion for partial summary judgment and, presumably, discovery on newly asserted affirmative defenses would be substantial and would have a significant potential impact on judicial proceedings because trial is imminent. Third, the delay is caused by Plaintiffs' strategic decisions, which were within their reasonable control. The only factor weighing in Plaintiffs' favor is the fourth, as they appear to have pursued their motion in good faith.

Because Plaintiffs have established neither good cause nor excusable neglect, their Opposed Motion for Leave to File Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

**B. Motion to Strike**

The undersigned next addresses Defendant's Motion to Strike. There is no question that Plaintiffs' Answer to Defendant's Counterclaims was filed more than five months late; that Plaintiffs failed to move the Court for leave to file their untimely Answer; and that Plaintiffs have shown neither good cause nor excusable neglect, blaming only "counsel's inadvertent oversight" for a late pleading that was "lost in the shuffle." Dkt. No. 77 at 1, 3, 6.

Although the allegations in a counterclaim are deemed admitted under Fed. R. Civ. P. 8(b)(6) when the counterclaim defendant fails to answer, as Plaintiffs argue, "the purpose of this rule is 'to avoid unfair surprise by the party who failed to file a responsive pleading.' " *Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 F. App'x 192, 203 (5th Cir. 2018) (quoting *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 436 (5th Cir. 1987)), *cert. denied sub nom. Hill v. PBL Multi-Strategy Fund, L.P.*, 139 S. Ct. 1272 (2019). "The rules of procedure are tools to facilitate the

smooth and expeditious litigation of cases; they are not intended as weapons to be used by one party to undermine and destroy an opponent." *Bitterroot Holdings, LLC v. Bank of N.Y. Mellon*, 2015 WL 11661763, at \*4 (W.D. Tex. Nov. 16, 2015).

While there is broad discretion in striking a pleading, motions to strike are generally viewed with disfavor and infrequently granted. *See, e.g., Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982); *Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626-27 (E.D. Tex. 2010). The Court has a significant interest in resolving cases on their merits instead, particularly where, as here, "the record is clear that both parties have appeared and are actively litigating all aspects of their controversy." *Beasley v. Avery Dennison Corp.*, 2006 U.S. Dist. LEXIS 74040, at \*4, 2006 WL 2864462 (W.D. Tex. Oct. 4, 2006) (declining to enter default judgment "in the interest of equity and justice" where answer to counterclaim was filed late).

In its opening Motion to Strike, Defendant does not assert, much less establish, that it will suffer any prejudice as a result of Plaintiffs' late filing of their Answer. *See In re Katrina Canal Breaches Consol. Litig.*, 2011 WL 5570223, at \*6 (E.D. La. Nov. 16, 2011) (denying motion to strike an untimely answer to counterclaims where no prejudice was shown, stating: "This case and the respective positions of all parties has been clear from the outset. This case does not present an instance where there is no appearance by a party. Defendants filed a counterclaim and those issues will be tried along with the main demand."). It is not until its Reply brief that Defendant claims it will suffer prejudice, specifically through admission of Plaintiffs' Affirmative Defenses. *See* Dkt. No. 81, at 6-7.

**\*4** The undersigned agrees that the assertion of affirmative defenses long after the close of discovery and the dispositive motion deadline constitutes unfair surprise and therefore prejudice to Defendant. Plaintiffs argue that their motion to dismiss Defendant's trademark fraud counterclaims as barred by statute of limitations (Dkt. No. 23, filed September 21, 2018), in particular, gave Defendant notice that Plaintiffs would assert a laches defense. *See* Dkt. No. 77 at 5. But here, Plaintiffs' failure to timely file an Answer asserting such a defense after their Motion to Dismiss Defendant's Counterclaims was denied in pertinent part could have prompted Defendant to draw the opposite conclusion instead. *See, e.g., GLF Constr. Corp. v. Dallas Area Rapid Transit Auth.*, 2012 WL 12882075, at \*1 (N.D. Tex. March 7, 2012) (stating that "the purpose of an answer is to provide notice of defenses to each claim and to admit or deny each

allegation asserted"); *cf. Trotter*, 818 F.2d at 436 (finding on the facts of that case that a motion for summary judgment gave plaintiff "plain notice that the question of actual malice was a matter to be litigated").

Accordingly, the Court **GRANTS IN PART** Defendant's Motion to Strike as to the Affirmative Defenses in Plaintiffs' Answer. Otherwise, because motions to strike are disfavored and the prejudicial effect on Defendant does not outweigh the Court's significant interest in deciding this case on the merits, all other relief sought in Defendant's Motion to Strike is **DENIED** and the Court accepts Plaintiffs' untimely Answer to Defendant's Counterclaims.

Plaintiffs' Opposed Motion for Leave to File Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 69) is **DENIED**.

Defendant's Motion to Strike Late Filed Pleading and Confirm Deemed Admissions (Dkt. No. 72) is **GRANTED IN PART**. Plaintiffs' Affirmative Defenses are hereby stricken from Plaintiffs' Answer to Counterclaims. Defendant's Motion to Strike is otherwise **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5080370

### III. CONCLUSION

Footnotes

1      On October 7, 2019, this case was reassigned from Judge Lee Yeakel to Judge David A. Ezra for all proceedings. Dkt. No. 82.

**End of Document**      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*EXHIBIT C*

2019 WL 6340990
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Nicholas G. **BELEZOS**, on behalf of himself and all others similarly situated, Plaintiffs,
v.
BOARD OF SELECTMEN OF HINGHAM, MASSACHUSETTS, in their official capacity, on behalf of themselves and all others similarly situated, Defendants.

CIVIL ACTION NO.



17
-
12570
-
MBB
|
Filed 11/27/2019

**Attorneys and Law Firms**

Frederick P. Zotos, Pathogenics, Inc., Cohasset, MA, for Plaintiffs.

Joseph A. Padolsky, Louison, Costello, Condon & Pfaff, LLP, Boston, MA, for Defendants.

**MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION OF JULY 3, 2019 ORDER**

**(DOCKET ENTRY # 31)**

BOWLER, U.S.M.J.

**\*1** Defendants Board of Selectmen of the Town of Hingham ("defendants"), sued in their official capacity, seek reconsideration of a July 2019 decision (Docket Entry # 30, pp. 4-9) that, in turn, reconsidered a March 2019 decision (Docket Entry # 22, pp. 17, 26-29) on the third element of claim preclusion, i.e., the existence of a " 'prior final judgment on the merits.' " RFF Family P'ship, LP v. Ross, 814 F.3d 520, 531–32 (1st Cir. 2016) (internal citations omitted). They submit the July 2019 decision constitutes "a manifest error of law as well as a manifest injustice" which warrants reconsideration. (Docket Entry # 31, pp. 9-10). Plaintiff maintains that the July 2019 decision is correct, the decision in Springfield Pres. Tr., Inc. v. Springfield Library and Museums Ass'n, Inc., 852 N.E.2d 83 (Mass. 2006) ("Springfield Trust"), is controlling, and defendants are unsuccessfully attempting to raise a new argument that this court deemed waived in the July 2019 decision. (Docket Entry # 32). The relevant procedural background is as follows.

BACKGROUND

In April 2018, defendants moved to dismiss all of the claims in a first amended complaint based, inter alia, on claim preclusion. (Docket Entry ## 8, 13, 14). They asserted that a September 2016 decision and final judgment by the trial court in plaintiff's state court proceeding in Massachusetts Superior Court (Plymouth County) ("the trial court") in **Belezos** v. Board of Selectmen of the Town of Hingham, Civil Action No. 1483CV01018 ("**Belezos**") (Docket Entry # 8-7), barred adjudication of the federal and state law claims in this action. (Docket Entry # 8, pp. 16-17) (Docket Entry # 13) (Docket Entry # 14, p. 10). The trial court's decision and judgment in **Belezos** undeniably reached and rejected the substantive merits of the federal constitutional claims and the ultra vires state law claims in that proceeding. (Docket Entry # 8-7). These federal constitutional and state law claims are substantially the same as the corresponding claims brought in this action. (Docket Entry # 11, 15-1).

Plaintiff opposed the claim preclusion argument because the Massachusetts appeals court ("MAC") in **Belezos** affirmed the trial court's decision on a different ground without "ruling on the merits." (Docket Entry # 15, p. 22). Specifically, the MAC stated, "It is unnecessary to reach the merits of **Belezos's** claims because he waived his right to contest the civil motor vehicle infraction ... by failing to pursue the remedy expressly provided for by the Legislature" in Massachusetts General Laws chapter 90C ("chapter 90C"), section three.[1] Rather, plaintiff paid the

speeding ticket he received on Gardner Street which, by statute, " 'operate[s] as a final disposition of the matter.' "[2] (Docket Entry # 8-8, p. 4) (quoting Mass. Gen. Laws ch. 90C, § 3).

**\*2** The March 2019 decision allowed defendants' motion to dismiss the federal and the state law claims based on claim preclusion.[3] (Docket Entry # 22, pp. 15-29, 41). Regarding the third element, this court explained that the trial court decided "the statutory ultra vires and constitutional section 1983 claims on the merits (Docket Entry # 8-7, pp. 2-10) and entered a final judgment on the merits (Docket Entry # 8-7, p. 11)." (Docket Entry # 22, p. 26) (citing In re Sonus Networks, Inc., 499 F.3d 47, 60, n.6 (1st Cir. 2007)). Thereafter, this court addressed plaintiff's argument that the MAC disregarded the merits-based dismissal of the trial court and decided the matter on another ground, i.e., plaintiff's payment of the ticket waived his ability to further contest the matter. Quoting the March 2019 opinion, this court rejected plaintiff's argument because "[c]laim preclusion applies to a final judgment even if it is subject to an appeal" unless "the appeals court reverses" the lower court. (Docket Entry # 22, p. 29) (citing Restatement (Second) of Judgments § 13 cmt. f (1982)). In full, this court then stated that:

> The MAC did not reverse the trial court's judgment. Rather, it affirmed the judgment for a different reason. Moreover, unlike the higher court in Baylis,[4] which questioned the lower court's alternative ruling, see In re Baylis, 217 F.3d at 71, the MAC's decision in **Belezos** did not question the trial court's ruling.

> In sum, claim preclusion bars litigation or relitigation of all of plaintiff's individual claims.

(Docket Entry # 22, p. 29). In making this ruling, this court did not rely on defendants' argument that, "The fact that the Appeals Court affirmed the judgment on other grounds without the need to reach the merits of Judge Muse's decision does not alter the fact that the prior action produced a final judgment on the merits, the parties were the same, and the causes of action were the same." (Docket Entry # 8, p. 17) (Docket Entry # 14, p. 10). Rather, as noted above, this court relied on the Restatement (Second) of Judgments § 13 cmt. f (1982), the fact that the MAC did not reverse the trial court's judgment, and the fact that the trial court's decision and judgment did not involve two alternative grounds to dismiss the claims. (Docket Entry # 22, p. 29).

Two weeks after the March 2019 decision, plaintiff filed a motion to reconsider the claim preclusion ruling as it applied to the state law ultra vires claims.[5] In the July 2019 decision on the motion to reconsider, this court

reversed course on the claim preclusion ruling regarding the third element in light of overlooking the decision of the Massachusetts Supreme Judicial Court ("SJC") in Springfield Trust, which adjudicated claim preclusion in the context of an appeal. Like the MAC in **Belezos** (Docket Entry # 8-8, p. 4), the MAC in the prior case examined for its claim-preclusive effect in Springfield Trust affirmed the trial court based on a ground different from the trial court's substantive merits-based decision.

More specifically, the SJC in Springfield Trust addressed the claim-preclusive effect of the prior case wherein the trial court found an ordinance valid and a 1979 decision by the MAC[6] on direct appeal affirmed the judgment "on procedural grounds." Springfield Trust, 852 N.E.2d at 91. Notably, the procedural grounds consisted of a failure to join a necessary party and a failure to "notify the Attorney General of the suit, as required" under a state statute. Id. at 91, n.11.[7] On appeal in the prior case, the MAC "specifically stated that it did 'not reach the other questions raised.' " Id. at 91 (internal citation omitted). The SJC therefore refused to apply claim preclusion to the trial court's initial decision on the substantive merits because the MAC decided the matter on other grounds that had nothing "to do with the merits[,]" namely, the failure to join a necessary party and the failure to give notice to the Attorney General of the Commonwealth ("the Attorney General") regarding the lawsuit. Id. at 91 n.11. The relevant passage in the SJC's decision reads as follows:

> **\*3** While the lower court had addressed the merits of the trust's claim, the case was ultimately decided on other grounds having nothing to do with the merits (see note 11, *supra*). "It is settled ... that no [preclusive] effect can be attributed to a decree dismissing a bill or petition in equity, for want of jurisdiction or any other cause not involving the essential merits of the controversy." Curley v. Curley, 311 Mass. 61, 66, 40 N.E.2d 272 (1942). See Hartford Acc. & Indem. Co. v. Commissioner of Ins., 407 Mass. 23, 29–30, 551 N.E.2d 502 (1990) (rejecting res judicata argument where commissioner was without jurisdiction to hear claims). See also Jarosz v. Palmer, 436 Mass. 526, 533, 766 N.E.2d 482 (2002).

Id.; see In re Sonus Networks, Inc., 499 F.3d 47, 59 (1st Cir. 2007) ("Sonus Networks") (quoting above language in Springfield Trust quoting Curley v. Curley, 40 N.E.2d 272, 274 (Mass. 1942)).[8]

In the July 2019 decision, this court analogized the trial court's merits-based decision in **Belezos** and the MAC's decision "on [the] procedural ground based on a waiver" to the circumstances in Springfield Trust, which refused to apply claim preclusion because the MAC affirmed the

trial court " 'on procedural grounds' " even though the trial court addressed the merits of the claim. (Docket Entry # 30, pp. 5-7). This court therefore reconsidered the March 2019 decision and refused to apply claim preclusion because the MAC's decision in Belezos, like the MAC's decision reviewed in Springfield Trust, "decided the matter on a procedural ground based on a waiver without reaching the merits (Docket Entry # 8-8)." (Docket Entry # 30, pp. 5-6). Given plaintiff's vigorous argument relying on Springfield Trust (Docket Entry # 26, pp. 5-6), what this court neglected to perform was to analyze and compare the MAC's "procedural grounds" in Springfield Trust (failure to join a necessary party and notify the Attorney General of the suit) to the MAC's grounds in Belezos (statutory waiver by paying the assessment and failing to pursue a chapter 90C appeal). In seeking reconsideration, defendants identify the error in the analogy. (Docket Entry # 31, pp. 3-4, 6-9). They explicitly and accurately point out that, "The Trust could correct their procedural errors and re-file. Belezos cannot reverse the fact that he waived the right to contest the civil motor vehicle infraction." (Docket Entry # 31, p. 8).

The procedural history leading to the SJC's Springfield Trust decision not to afford the MAC's 1979 decision preclusive effect is instructive.[9] The MAC's 1979 decision affirmed the trial court's dismissal because the plaintiffs, including plaintiff Springfield Preservation Trust, Inc. ("the trust"), did not join the City of Springfield, a necessary party in any proceeding involving validity of a municipal ordinance,[10] and did not send notice to the Attorney General, which is a "condition[ ] precedent to the entry of" the declaratory relief sought by the plaintiffs. Springfield Pres. Tr., Inc. v. Roman Catholic Bishop of Springfield, 387 N.E.2d at 213 (citing Mass. Gen. Laws ch. 231A, § 8) (emphasis added). In 2001, the trust challenged the same ordinance culminating in the SJC's Springfield Trust decision. Springfield Trust, 852 N.E.2d at 90. This time, however, the trust cured the condition precedent to suit by notifying the Attorney General of the claims and it named the necessary party, i.e., the City of Springfield, as a defendant. Jarrett v. Springfield Library and Museums Ass'n, No. 01107, 2003 WL 21246549, at *7 n.8 (Mass. Super. Feb. 21, 2003) (emphasis added) (unpublished), vacated sub nom. Springfield Trust, 852 N.E.2d 83 (Mass. 2006). The trial court therefore rejected the argument by defendant Springfield Library and Museums Association, Inc. ("SLMA") that the MAC's 1979 decision barred the action:

> **\*4** The SLMA also argues that the Trust's claims are barred by two earlier cases addressing the application of G.L.c. 40C, Springfield Preservation Trust, Inc. v. Roman Catholic Bishop of Springfield, 7 Mass.App.Ct.

895 (1979), and Springfield Preservation Trust, Inc. v. Springfield Historical Commission, 380 Mass. 159 (1980). Those cases held that the Superior Court lacked jurisdiction because the Trust failed to join the City as a defendant, failed to notify the Attorney General of its claims, and was not entitled to standing under the older statutory definition of "person aggrieved." Here, the Trust included the City as a defendant, and provided appropriate notice to the Attorney General of its constitutional claim (which has since been abandoned). Additionally, the definition of "person aggrieved" in G.L.c. 40C, § 5 was amended in 1983 to apply to "any charitable corporation in which one of its purposes is the preservation of historic structures or districts," a definition that includes the Trust. For these reasons, the Trust's claims are not barred by the two pre-1983 cases cited by the SLMA.

Jarrett v. Springfield Library and Museums Ass'n, 2003 WL 21246549, at *7 n.8 (emphasis added).

It is well established and set out in the Restatement (Second) of Judgments § 20 that judgments based on a failure to join a party or a failure to satisfy a precondition to suit are typically not decisions on the merits for purposes of claim preclusion. Restatement (Second) of Judgments § 20.[11] Whereas issue preclusion may prevent a party from simply refiling suit without joining the necessary party, see Sonus Networks, 499 F.3d at 59, 62 (citing Massachusetts case "giving preclusive effect to an earlier dismissal for failure to join an indispensable party, where the plaintiff had brought a second suit without joining the indispensable party"), or without satisfying the precondition, see id. at 60, ordinarily judgments grounded on nonjoinder of a party or failure to satisfy a precondition do not provide a basis for claim preclusion. Restatement (Second) of Judgments §§ 20(1)(a), 20(2). In Massachusetts, a prior final judgment dismissing an action for lack of jurisdiction or for failure to join a necessary party are reasons not to afford the prior final judgment claim-preclusive effect because, to use the requisite terminology, they are not decisions on the merits. See OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 31 N.E.3d 1143, 1157–58 (Mass. App. Ct. 2015) ("dismissal for lack of subject matter jurisdiction, even if labeled 'with prejudice,' will not bar a subsequent action by the plaintiff on the same claim") (citing Department of Rev. v. Ryan R., 383, 816 N.E.2d 1020, 1023 (Mass. App. Ct. 2004), citing Restatement (Second) of Judgments § 20 cmt. d (1982), and Mass. R. Civ. P. 41(b)(3)); Restatement (Second) of Judgments § 20(1)(a); see also Mestek, Inc. v. United Pac. Ins. Co., 667 N.E.2d 292, 294 (Mass. App. Ct. 1996) (relying on Mass. R. Civ. P. 41(b)(3), which excludes failure to join party as adjudication on the merits, to conclude that dismissal for

failure to state a claim operates as final judgment on merits for claim preclusion); accord Buffalo-Water 1, LLC v. Fid. Real Estate Co., LLC, 111 N.E.3d 266, 273 n.9 (Mass. 2018) (citing Mestek, 667 N.E.2d at 294). Failing to satisfy a precondition to suit, such as making a demand or, by analogy, notifying a party, "is a failure that may be remedied" and does not bar a subsequent suit once the failure is cured. Sonus Networks, 499 F.3d at 56, 61-62 (applying Massachusetts law); see generally Griffith v. Bd. of Appeals of Framingham, 537 N.E.2d 161, 163 (Mass. App. Ct. 1989) (citing, inter alia, Restatement (Second) of Judgments § 20(2)). In contrast, plaintiff cannot cure his failure to pursue the remedies in section three of chapter 90C because he waived those remedies by paying the assessment for the traffic infraction. (Docket Entry # 8-8, p. 4); Mass. Gen. Laws ch. 90C, § 3(A)(3) ("[p]ayment of the indicted assessment shall operate as a final disposition of the matter").

**\*5** Furthermore, as lucidly explained by the First Circuit in Sonus, "the requirement that the prior judgment be 'on the merits' was omitted from the *Restatement (Second)*, which has been quoted and relied on by Massachusetts courts, even as they have continued to reiterate 'on the merits' as a requirement for issue preclusion," Sonus Networks, 499 F.3d at 57, and by analogy, claim preclusion. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 503 (2001). Although the classic case " 'continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial,' " the trend is to expand claim preclusion to " 'judgments not passing directly on the substance of the claim ...' " Sonus Networks, 499 F.3d at 57-58 (quoting Restatement (Second) of Judgments § 19 cmt. a). The cited comment is particularly appropriate to the case at bar:

> The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, ....

Restatement (Second) of Judgments § 19 cmt. a.

Returning to the Springfield Trust decision, which Sonus recognizes applied claim as opposed to issue preclusion, see Sonus Networks, 499 F.3d at 59, the SJC rejected a defendant's claim-preclusion argument because the MAC decided the matter on the "procedural grounds" of failing to join a necessary party and failing to notify the Attorney

General. Springfield Trust, 852 N.E.2d at 91 n.11. In contrast, the MAC in **Belezos** decided the matter on a non-substantive basis (plaintiff's failure to pursue remedies provided in chapter 90C), which continues to render plaintiff unable to refile the claims against the very same parties, defendants. **Belezos** does not involve the nonjoinder of a party that plaintiff can subsequently sue. Likewise, it does not involve a precondition of notification that plaintiff can subsequently satisfy. Plaintiff's waiver of the remedies provided in chapter 90C, section three, is not a precondition he is able to cure. Rather, his decision not to avail himself of the remedies in chapter 90C, section three, is final and appropriate for claim preclusion even though the MAC did not pass upon the substantive merits of the ultra vires state law claims. See Restatement (Second) of Judgments § 19 cmt. a. The plain language of section three of chapter 90C admits no exceptions.[12]

Beyond the exact confines of the third element of claim preclusion, the policies that give rise to the doctrine support its application in this action. Claim preclusion as well as issue preclusion "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980); accord Alicea v. Commonwealth, 993 N.E.2d 725, 731 (Mass. 2013) (quoting Allen, 449 U.S. at 94). Claim preclusion also "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." Allen, 449 U.S. at 96; accord Alicea, 993 N.E.2d at 731; see also Semtek, 531 U.S. at 504 (discussing federalism principle); Willhauck v. Halpin, 953 F.2d 689, 704 (1st Cir. 1991). Indeed, under the long-standing full faith and credit statute, 28 U.S.C. § 1738, Congress commands "all federal courts to give preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so." Allen, 449 U.S. at 96.

**\*6** Here, as repeatedly and consistently reiterated by defendants, plaintiff's state court litigation regarding the speed limit sign on Gardner Street compelled them to defend against the hard-fought litigation that plaintiff pursued in the state trial court, the MAC, and the SJC. (Docket Entry ## 8-7, 8-8, 8-9, 15-1, 25-4). The merits of the litigation did not favor plaintiff in light of his counsel's repeatedly-unsuccessful attempts in state and federal court to obtain relief related to his own speeding ticket on Gardner Street. (Docket Entry ## 8-1 to 8-5, 25-3). Claim preclusion will relieve the further cost and vexation to defendants of extending this already extensively litigated matter and conserve additional judicial resources devoted to this case at the expense of

other cases. In addition, federalism and comity caution against a federal court interfering and essentially overlooking or overturning a state court decision (Docket Entry # 8-8) that applies a state statute to bar plaintiff from further challenges in this matter because he failed to avail himself of the opportunities initially provided in chapter 90C. Allowing the claims in this case, which comprise substantially the same claims against the same defendants that the MAC precluded in **Belezos** (Docket Entry ## 8-8, 11, 15-1), to go forward goes directly against the premise of the MAC's decision, which the MAC considered final. (Docket Entry # 8-8, p. 4) (quoting chapter 90C, section three, that payment of assessment " 'shall operate as a *final* disposition' ") (emphasis added).[13] Placed in this context, the policies underlying claim preclusion are well served and, indeed, strongly served by its application.

In light of this court's clear error of law to allow reconsideration in the July 2019 decision and reinstate the state law claims, the issue reduces to whether to allow reconsideration for the second time on the third element of claim preclusion. As noted above, defendants rely on a manifest error of law and a manifest injustice to obtain reconsideration.

As an interlocutory ruling prior to a final judgment, this court has the discretionary power to reconsider the July 2019 ruling. See Geffon v. Micrion Corp., 249 F.3d 29, 38 (1st Cir. 2001); Karter v. Pleasant View Gardens, Inc., 323 F. Supp. 3d 179, 181 (D. Mass. 2018) (court "has substantial discretion to grant or deny a motion for reconsideration"); see also Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005) ("law of the case" applied to previous orders "of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power") (parenthetical quoting First Circuit case, which quotes Messenger v. Anderson, 225 U.S. 436, 444 (1912)) (internal quotation marks omitted). Reconsideration, however, presents a standard difficult to meet. Latin Am. Music Co. v. Am. Soc'y of Composers, Authors and Publishers (ASCAP), 642 F.3d 87, 91 (1st Cir. 2011) ("hurdle is a high one"). It is appropriate when " 'the movant shows a manifest error of law' " as well as "if the court 'has patently misunderstood a party or has made an error not of reasoning but apprehension.' " Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81-82 (1st Cir. 2008) (internal citations and ellipses omitted); accord Villanueva v. United States, 662 F.3d 124, 128 (1st Cir. 2011) (same); see Mulero-Abreu v. P.R. Police Dep't, 675 F.3d 88, 94 (1st Cir. 2012) (" 'manifest error of law' " provides basis for reconsideration) (internal citations omitted). Manifest injustice also constitutes a basis for

reconsideration. Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002). The manifest injustice exception "requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong," id., " 'as well as a finding of prejudice.' " United States v. García-Ortiz, 792 F.3d 184, 190-91 (1st Cir. 2015) (quoting United States v. Wallace, 573 F.3d 82, 89 (1st Cir. 2009), in parenthetical), *cert. denied*, 138 S.Ct. 694 (Jan. 8, 2018). Reconsideration is not appropriate "to advance arguments that could and should have been presented to the district court prior to its original ruling." Villanueva, 662 F.3d at 128 (finding no abuse of discretion for court to deny reconsideration because "Villanueva simply reiterated" arguments that "could and should have been presented in his original request").

**\*7** For reasons stated above and having considered the matter at greater length and in greater depth, this court has a definite and firm conviction that the July 2019 decision is obviously wrong as well as unreasonable on the third element of claim preclusion. The policies underlying claim preclusion strongly support its application and Springfield Trust is distinguishable as explained above. Whereas reconsidering the July 2019 decision in one sense does not encourage reliance on adjudications, in another sense it avoids an inconsistency in results. See generally Ellis, 313 F.3d at 647 (recognizing various concerns including inconsistency). As to the latter, if this court let the July 2019 decision stand it produces the inconsistent result of applying claim preclusion to the federal constitutional claims while not applying claim preclusion to the ultra vires state law claims, all of which the MAC viewed as barred due to plaintiff's failure to avail himself of the remedies provided in chapter 90C, section three. (Docket Entry # 8-8). In addition, the error, if allowed to stand, will prejudice defendants by requiring them, yet again, to defend the claims they previously and successfully defended in the state trial court and then again in the MAC. The trial court rewarded defendants with a dismissal that it considered final and the MAC rewarded defendants with an affirmation of the judgment because plaintiff did not pursue the remedies provided in chapter 90C. Refusing to reconsider the claim preclusion of the state law claims denies defendants the relief the state courts gave them and forces them to defend against the same claims notwithstanding the finality of each of these decisions. See generally Negrón-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) (examining prejudice in context of analogous law of the case doctrine). In affirming the district court's reconsideration of an initial grant of summary judgment to the defendants, the First Circuit in Negrón-Almeda explained that the "obviously wrong" ruling "prevented [plaintiffs] from obtaining the equitable relief they sought and to which the

district court determined they were otherwise entitled," which was reinstatement. Id.[14] Here too, letting the obviously incorrect claim preclusion decision stand will work a manifest injustice and prejudice defendants.

As a final matter, plaintiff is correct that ordinarily reconsideration is not allowed where, as here, the party advances an argument that it could and should have presented to the court prior to the initial ruling. See Villanueva, 662 F.3d at 128. Plaintiff therefore strenuously asserts that defendants cannot argue that the MAC's decision was a " 'merit-based finding of waiver.' " (Docket Entry # 32, § III). It is true that defendants did not raise the argument that the MAC's decision was itself a decision on the merits for purposes of claim preclusion in opposing plaintiff's motion for reconsideration. This court therefore determined that for purposes of opposing plaintiff's reconsideration motion (Docket Entry # 26), defendants waived the argument that the MAC's decision on waiver was itself a decision on the merits for purposes of claim preclusion. (Docket Entry # 30, p. 6 n.4).[15] This court's waiver determination applied solely to defendants' failure to raise the argument "[o]n reconsideration." (Docket Entry # 30, p. 6). The waiver was limited to the context of deciding plaintiff's motion for reconsideration. It was not a determination that the waiver extended to a future motion made by defendants to reconsider the ruling. See Iacobucci v. Boulter, 193 F.3d 14, 19-20 (1st Cir. 1999) (deferring to district judge's interpretation of her own order); accord Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 46 (1st Cir. 2006).

At this juncture, the matter reduces to whether to allow defendants to advance their argument that "Springfield Trust is not on all fours" because, inter alia, the MAC's 1979 decision affirmed the lower court on the basis "that the Trust failed to comply with procedural requirements of the applicable statute, a major distinction which will be discussed below[,]" and "[t]wo decades later the Trust challenged the validity of the same ordinance, this time impleading the necessary parties ...." (Docket Entry # 31, p. 6) (capitalization and bolding omitted). As noted above, this new argument further adds that, "The Trust could correct their procedural errors and re-file" whereas "Belezos cannot reverse the fact that he waived the right to contest the civil motor vehicle infraction." (Docket Entry # 31, p. 8). In the exercise of this court's discretion in adjudicating a reconsideration motion, defendants' failure to previously advance this argument will not foreclose reconsideration. As discussed, reconsideration is strongly warranted based on the third factor and the policies supporting the doctrine. Furthermore, barring defendants from raising the argument now imposes the continuing prejudice on them of defending against claims

the state courts rejected, not on a procedural technicality as in Springfield Trust, 852 N.E.2d at 91 n.11, but instead because plaintiff waived the remedies in chapter 90C, which he can no longer access because his payment is a "final disposition." Mass. Gen. Laws ch. 90C, § 3.

**\*8** Finally, plaintiff submits he is not challenging a vacatur of the traffic citation. (Docket Entry # 32, p. 15). According to plaintiff, he therefore "avoids any issue preclusion stemming from the MAC's decision on waiver." (Docket Entry # 32, p. 15). He also contends that the MAC passed over his assertions that defendants' erection and enforcement of unauthorized speed limit signs did not comply with procedures and state statutes governing their erection and enforcement. (Docket Entry # 32, p. 15). To the contrary, the MAC summarized the statutory allegations in plaintiff's state court complaint and stated that the civil action "at its core" is a challenge to the speeding citation.[16] (Docket Entry # 8-8, p. 3). Immediately thereafter, the MAC implicitly deemed these assertions or claims waived because plaintiff did not contest the traffic infraction "at the heart" or core of the civil action when he failed to pursue the remedies afforded in chapter 90C, section three. The relevant portion of the opinion reads as follows:

> Belezos's complaint alleges that the town improperly posted sixty speed limit signs, including the sign under which he was cited, when it failed to obey the procedures outlined in G. L. C. 90, § 18, and set forth in G. L. c. 85, § 2. In addition, Belezos argues the text of G. L. c. 90, § 17, does not "authorize municipalities to ... establish speed zones or post speed limit signs." At its core, Belezos's civil action challenges the basis of his speeding citation and, in addition, asserts constitutional and due process violations ....

(Docket Entry # 8-8, p. 3). Two sentences later in the discussion section, the MAC recites the finding that:

> It is unnecessary to reach the merits of Belezos's claims because he waived his right to contest the civil motor vehicle infraction that is at the heart of this dispute by failing to pursue the remedy expressly provided for by the Legislature. General Laws c. 90C, § 3, par. 2, as appearing in St. 1991, c. 138, § 161, states that "[p]ayment of the indicated assessment shall operate as a final disposition of the matter."

(Docket Entry # 8-8, p. 4). The MAC's decision therefore deemed the assertions or claims regarding the erection and enforcement of the unauthorized speed limit signs encompassed within the waiver. Furthermore, the MAC affirmed the judgment of the trial court, which dismissed the state statutory claims as well as the federal constitutional claims. If the MAC passed over the erection and illegal enforcement of the speed limit signage

assertions, as plaintiff suggests, the MAC would not have affirmed the judgment dismissing *all* of the claims. Simply put, the MAC did not pass over them.

In any event, the trial court considered the issues regarding the unauthorized speed limit signs and made necessary findings regarding them to support the final judgment. As previously explained, the trial court did not render alternative findings and the MAC did not affirm the judgment based on one of two alternative grounds. (Docket Entry # 22, p. 28). Plaintiff's issue preclusion argument therefore lacks merit.

Plaintiff's related argument that chapter 90C limits his appeal rights to a challenge to the clerk-magistrate's final judgment on the citation (Docket Entry # 32, p. 14) is similarly unavailing. First, the SJC denied plaintiff's ALOFAR, which made a similar, more elaborate argument. (Docket Entry # 8-9); **Belezos** v. Bd. of Selectmen of Hingham, 102 N.E.3d 424 (Mass. 2018) (Table). Second, the decision by the MAC in the appeal by plaintiff's counsel of his traffic ticket on Gardner Street found no impediment to addressing a related argument.[17] See Hingham Police Dep't v. Zotos, No. 11-P-1716, 2012 WL 1689189 (Mass. App. Ct. May 16, 2012) (unpublished).

**\*9** In sum, reconsideration is appropriate. Consistent with the claim-preclusion bar of the federal constitutional claims (Docket Entry # 22), claim preclusion bars the ultra vires state law claims in this action. As such, they are subject to dismissal.[18]

I. Supplemental Jurisdiction

On September 24, 2019, this court requested briefing from the parties to address this court's supplemental jurisdiction. Plaintiff urges this court to retain jurisdiction over the state law claims. With briefing from each side complete, it is appropriate to address this court's decision to retain supplemental jurisdiction over the state law claims.

BACKGROUND

In light of prior recitals of the procedural history and facts in this action, it is not necessary to reiterate them in detail. For present purposes, this court notes the following before proceeding to address supplemental jurisdiction.

The original and the first amended complaints raise federal constitutional claims under 42 U.S.C. § 1983 ("section 1983") and ultra vires claims under state law.[19] The first amended complaint appropriately relies on federal question and civil rights jurisdiction for the section 1983 claims. 28 U.S.C. §§ 1331, 1343; (Docket Entry # 1, ¶ 2) (Docket Entry # 11, ¶ 2). Although it also cites the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), as a basis for jurisdiction (Docket Entry # 11, ¶ 2), such reliance is misplaced because the DJA applies to "a case of actual controversy *within its jurisdiction.*" 28 U.S.C. § 2201 (emphasis added); see Cavallaro v. Mendelsohn, Tr. of the Pearl Mendelsohn Revocable Living Tr., Civil Action No. 19-10508-FDS, 2019 WL 2060114, at \*3 (D. Mass. May 9, 2019) (quoting DJA with added emphasis); see Watchtower Bible and Tract Soc'y of N.Y., Inc. v. Colombani, 712 F.3d 6, 11 (1st Cir. 2013) ("Declaratory Judgment Act, 28 U.S.C. § 2201, simply is not a grant of jurisdiction."). The DJA "does not itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995); accord In re the Fin. Oversight and Mgmt. Bd. for P.R., 919 F.3d 638, 645 (1st Cir. 2019) (quoting same language in Ernst & Young, 45 F.3d at 534); Boston Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 48 (1st Cir. 2016).

On April 13, 2018, defendants filed the motion to dismiss all of the claims in the amended complaint on the basis of claim preclusion, the merits, and the Rooker-Feldman doctrine.[20] (Docket Entry # 13). Plaintiff filed an opposition to the motion on April 27, 2018. (Docket Entry # 15). Less than a month later, he filed a motion for class certification. (Docket Entry # 16). In lieu of responding, defendants asked for an extension of time to oppose the class certification motion until after this court ruled on the motion to dismiss. (Docket Entry # 19). On June 5, 2018, this court granted the motion for an extension.

**\*10** On March 29, 2019, this court allowed the motion to dismiss the federal claims on claim preclusion and on the merits. (Docket Entry # 22). At the same time and in lieu of declining to exercise supplemental jurisdiction, this court allowed a dismissal of the state law claims solely on the basis of claim preclusion but held the dismissal of these claims in abeyance until a decision on the pending class certification motion filed almost a year earlier. (Docket Entry # 22, pp. 29, 40-41). The March 29, 2019 decision did not address defendants' merits-based argument to dismiss the state law claims. (Docket Entry # 22).

On April 12, 2019, defendants filed the opposition to class certification. (Docket Entry # 25). Three days later, plaintiff filed the motion to reconsider the dismissal of the federal claims and the state law claims. (Docket Entry # 26). The July 3, 2019 opinion addressed both the federal and the state law claims, allowed reconsideration of the claim-preclusion dismissal of the state law claims, and denied reconsideration of the merits-based dismissal of the federal claims. (Docket Entry # 30). Again less than one month later, defendants filed the motion to reconsider the denial of claim preclusion for the state law claims. (Docket Entry # 31). Plaintiff opposed the motion and asserted there was no bar to prevent him from litigating the state law claims. (Docket Entry # 32). The motion therefore called into question the existence of a remedy in state court in the event this court declined supplemental jurisdiction and dismissed the state law claims without prejudice.

DISCUSSION

Supplemental jurisdiction under 28 U.S.C. § 1367 ("section 1367") provides a basis to exercise jurisdiction where, as here, the state law claims are "so related to" the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "State and federal claims are part of the same 'case or controversy' for the purposes of section 1367(a) if they ' "derive from a common nucleus of operative fact" or "are such that [they] would ordinarily be expected to [be] tr[ied] in one judicial proceeding." ' " Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 72 (1st Cir. 2013) (internal citations and ellipses omitted). The federal and state law claims derive from plaintiff's September 2011 speeding ticket on Gardner Street and defendants' failure to undergo the process to obtain a special regulation under Massachusetts General Laws chapter 90, section 18, to properly erect and enforce the speed limit sign on Gardner Street. Accordingly, the necessary common nucleus of operative fact exists between the federal substantive and procedural due process claims and the state law ultra vires claims.

The subsequent dismissal of the foundational federal claims on March 29, 2019 does not deprive this court of jurisdiction. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256–57 (1st Cir. 1996). Rather, it poses the question of whether to retain jurisdiction under section 1367(c). See id. at 256–57 (in "federal-question case, the termination of the foundational federal claim ... sets the stage for an exercise of the court's informed discretion"). In such instances, "the factors to" consider "in determining whether to exercise supplemental jurisdiction include 'judicial economy, convenience, fairness, and comity.' " Sexual Minorities Uganda v. Lively, 899 F.3d 24, 35 (1st Cir. 2018) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1998)). "Additionally, the court may consider other relevant factors, including the presence of novel or sensitive issues of state law." Id. at 35. As is often stated, it is "an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.' " Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (internal citations omitted).

**\*11** As noted, in March 2019, this court adjudicated the claim preclusion of the state law ultra vires claims at the same time it adjudicated the claim preclusion of the federal claims. (Docket Entry # 22). Judicial economy and convenience provided a basis to adjudicate both sets of claims because they involved the same legal issue, i.e., claim preclusion, and the same procedural facts, i.e., plaintiff's state-court proceedings. See Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (state and federal claims "rested on virtually the same factual basis" and "sought essentially the same relief" which supported retaining jurisdiction). In July 2019, this court addressed reconsideration of the federal and the state law claims. Because neither party raised nor objected to the continued exercise of supplemental jurisdiction, this court addressed the state law claims at the same time it addressed the federal law claims. First and foremost, the parties waived any challenge to this court's exercise of supplemental jurisdiction at that time. See Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 20 (1st Cir. 2018) (affirming discretionary exercise of supplemental jurisdiction because "parties never challenged the district court's continuing exercise of supplemental jurisdiction" and therefore "waived any such challenge").

Moreover, the July 2019 decision determined that claim preclusion did not bar relitigation of the state law ultra vires claims. The ability to file a separate suit in state court is germane to a determination of supplemental jurisdiction and thus warranted a determination of the claim-preclusive effect of the state law claims. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction"). Here, the applicable tolling rules of 28 U.S.C. § 1367(d) ("section 1367(d)") suspend any state statute of

limitations during the pendency of this putative class action and for 30 days after a dismissal.[21] See Artis v. D.C., 138 S. Ct. 594, 603 (2018) (section 1367(d), "phrased as a tolling provision[,]" suspends state "statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal"); Deppner v. Spectrum Health Care Res., Inc., 325 F. Supp. 3d 176, 191 (D.D.C. 2018). Hence, the statute of limitations is no more of a bar to plaintiff's state law claims than it was at the outset of this litigation. Defendants are just as likely to argue the statute of limitations, which they previously asserted in opposing class certification (Docket Entry # 25), as they would in a refiled state court proceeding raising the ultra vires claims.[22] More to the point, however, the July 2019 decision increased the likelihood of plaintiff's ability to refile the ultra vires claims in state court because they were no longer barred under principles of claim preclusion. Thereafter and upon review of defendants' motion for reconsideration, it became apparent that the state law claims were barred. The resurgence of the issue of a state forum and remedy as barred by claim preclusion thus provided justification to exercise supplemental jurisdiction over the state law claims and decide that issue by adjudicating defendants' reconsideration motion. See Rodriguez, 57 F.3d at 1177 (inability to file separate suit in state court, albeit due to running of statute of limitations, "is a salient factor" in deciding supplemental jurisdiction).

There is also no unfairness to plaintiff inasmuch as he chose the federal forum. See generally Tomaiolo v. Mallinoff, 281 F.3d 1, 11 (1st Cir. 2002) ("perceiv[ing]

no unfairness" in continued exercise of supplemental jurisdiction because "Tomaiolo chose to be in federal court, and once there received ample opportunity to litigate all of her claims, federal and state"). In any event, plaintiff waived any objection to this court's continued exercise of supplemental jurisdiction in deciding defendants' reconsideration motion because he presently requests that this court "continue to exercise supplemental jurisdiction over the state law claims in this case" (Docket Entry # 34). See Lawless v. Steward Health Care Sys., LLC, 894 F.3d at 20. Defendants, for their part, ask this court to "grant [their] pending motion for reconsideration" (Docket Entry # 33, p. 5), which necessarily entails exercising supplemental jurisdiction over the state law claims.

## CONCLUSION

**\*12** In accordance with the foregoing discussion, the motion for reconsideration (Docket Entry # 31) is **ALLOWED** and the state law claims in counts I, II, and III are **DISMISSED** as barred under the doctrine of claim preclusion.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6340990

Footnotes

1    The July 2019 opinion explains the procedure to challenge a traffic citation and the appeal process in chapter 90C at length. (Docket Entry # 30, pp. 18-21). It details the opportunity plaintiff had to raise various issues of law he presents in this action.

     In contrast to plaintiff, plaintiff's counsel fully availed himself of the procedures in chapter 90C in challenging a speeding ticket he received on Gardner Street in Hingham, Massachusetts. On appeal in the state-court proceeding, plaintiff's counsel raised a number of statutory and federal constitutional arguments and claims similar to those that plaintiff asserts in this proceeding. (Docket Entry # 25-1). The MAC expressly and impliedly addressed and rejected them. See Hingham Police Dep't v. Zotos, No. 11-P-1716, 2012 WL 1689189 (Mass. App. Ct. May 16, 2012) (unpublished).

2    In full, the relevant language in the MAC's decision reads as follows:

     It is unnecessary to reach the merits of **Belezos's** claims because he waived his right to contest the civil motor vehicle infraction that is at the heart of this dispute by failing to pursue the remedy expressly provided for by the Legislature. General Laws c. 90C, § 3, par. 2, as appearing in St. 1991, c. 138, § 161, states that "[p]ayment of the indicated assessment shall operate as a final disposition of the matter." For this reason, we need not review the legal reasoning of the judge who ordered the dismissal of the complaint. See Ng Bros. Constr. v. Cranney, 436 Mass. 638, 639 (2002) (appellate court may affirm judgment for reasons that differ from those given by motion judge).

(Docket Entry # 8-8, p. 4).

Additionally, the decision rejected the federal constitutional claims on the merits.

In re Baylis, 217 F.3d 66 (1st Cir. 2000).

The claim preclusion bar regarding the federal claims (Docket Entry # 22) therefore remains intact.

Springfield Pres. Tr., Inc. v. Roman Catholic Bishop of Springfield, 387 N.E.2d 211 (Mass. App. Ct. 1979).

Footnote 11 reads as follows:

> Specifically, the trust had failed to join the city of Springfield as a necessary party and to notify the Attorney General of the suit, as required by G.L. c. 231A, § 8. *Springfield Preservation Trust, Inc. v. Roman Catholic Bishop of Springfield*, 7 Mass.App.Ct. 895, 387 N.E.2d 211 (1979).

Springfield Trust, 852 N.E.2d at 91 n.11.

Plaintiff repeatedly quoted a portion or the entirety of the above language in opposing the motion to dismiss, seeking reconsideration, and opposing defendants' reconsideration motion. (Docket Entry # 15, p. 22) (Docket Entry # 26, pp. 5-6) (Docket Entry # 32, p. 5). As an aside, page references refer to the page number in the upper right-hand corner of the filing.

In seeking reconsideration, defendants outline the history.

There was no jurisdictional impediment to joining the City of Springfield inasmuch as the court had jurisdiction over the city.

These comprise exceptions to the general rule in section 19 that, "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." Restatement (Second) of Judgments § 19. Sections 18 to 26 of the Restatement (Second) of Judgments set out the rules applicable to claim preclusion whereas sections 27 and 28 set out the rules applicable to issue preclusion. Restatement (Second) of Judgments, ch. 1, Introduction, Scope.

As previously noted in footnote one, plaintiff's counsel fully availed himself of these remedies.

Moreover, the SJC denied plaintiff's application for leave to obtain further appellate review ("ALOFAR") raising a number of points for further review, including the purported error in the MAC's decision to preclude relief. (Docket Entry # 8-9); **Belezos** v. Bd. of Selectmen of Hingham, 102 N.E.3d 424 (Mass. 2018) (Table).

14    The court also cited Sulik v. Taney Cty., Mo., 393 F.3d 765, 766 (8th Cir. 2005), in a parenthetical as "holding that to let stand a dismissal that was based on an error about the statute of limitations would work a manifest injustice." Negrón-Almeda, 579 F.3d at 52.

15    More precisely, the operative determination states: "*On reconsideration*, defendants therefore waived the argument that the MAC's conclusion that plaintiff 'waived his right to contest' that the traffic citation was itself a decision on the merits for purposes of claim preclusion." (Docket Entry # 30, p. 6, n.4) (emphasis added).

16    In finding a waiver, the MAC also summarized the provisions and the inter-relationship of sections 17 and 18 of Massachusetts General Laws chapter 90, including special speed regulations adopted by towns subject to the oversight approval of the Massachusetts Department of Transportation. (Docket Entry # 8-8).

17    See footnote one.

18    It is therefore not necessary to address any remaining arguments in defendants' motion to dismiss (Docket Entry # 13).

19    The subject-matter jurisdiction asserted in each pleading is identical. (Docket Entry # 1, ¶ 2) (Docket Entry # 11, ¶ 2). For convenience, this court references only the first amended complaint.

20    See Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

21    The litigation in Zotos v. Town of Hingham, Civil Action No. 12-11126-JGD, 2013 WL 5328478 (D. Mass. Sept. 19, 2013), was not a class action proceeding. Hence, the court exercised supplemental jurisdiction in part because a dismissal would implicate statute of limitations issues. (Docket Entry # 8-3, p. 32).

22    The original complaint relied on Massachusetts General Laws chapter 260, section 32, to avoid a statute of limitations bar. (Docket Entry # 1, ¶ 45).

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.