STEPHEN L. SULZER (*pro hac vice*)
STEPHEN L. SULZER PLLC
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen,*
*Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

HAMMERLESS TOOLS, LLC and
EIGHT EIGHTEEN, LLC,

　　　　Plaintiffs,

　　v.

JONATHAN CLAUSEN, CLAUSEN,
INC., AR-TT LLC, and LILAC CITY,
LLC,

　　　　Defendants.

Case No.: 2:24-CV-00413-SAB

DEFENDANT JONATHAN
CLAUSEN'S OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE
DECLARATION OF STEPHEN L.
SULZER

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE SULZER
DECLARATION
Case No. 2:24-CV-00413-SAB
Page 1 of 16

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

OPPOSING ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    I. PLAINTIFFS' MOTION SHOULD BE DENIED
       BECAUSE IT FAILS TO STATE THE GROUNDS
       FOR THE MOTION WITH PARTICULARITY . . . . . . . . . . . . . . . . . . . .  6

      A. The Federal Rules of Civil Procedure Provide No
         Grounds For a Motion to Strike Portions of a
         Declaration, as a Declaration Is Not a Pleading
         Subject to Being Stricken Pursuant to Rule 12(f). . . . . . . . . . . . . . . .  8

      B. Plaintiffs' Motion Fails to Specify Which Portions or
         Statements in the Challenged Paragraphs Are Inadmissible . . . . . . . . .  8

    II.  THE MOTION TO STRIKE PORTIONS OF
       THE SULZER DECLARATION IS MERITLESS . . . . . . . . . . . . . . . . .  11

      A.  The Court's Discretionary Power Would Not Be
         Providently Exercised When the Declaration Is
         Neither Prejudicial Nor Scandalous . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      B.  The Sulzer Declaration Is Actually Helpful to the Court
         in Determining the Three Motions Which It Supports . . . . . . . . . . . . .  12

      C.  If Any Evidence Were Inadmissible in the Sulzer Declaration,
         the Correct Remedy Would Be to Disregard, Not Strike It  . . . . . . . . . .  13

      D. If the Supported Motions Are Decided First
         and Favorably Without Reliance on the
         Declaration, the Instant Motion Would Be Moot . . . . . . . . . . . . . . . . .  14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE SULZER
DECLARATION
Case No. 2:24-CV-00413-SAB
Page 2 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

## **TABLE OF AUTHORITIES**

<u>Pages</u>

**<u>Cases</u>**

*Aftergood v. C.I.A.,* 355 F. Supp. 2d 557 (D.D.C. 2005) . . . . . . . . . . . . . . . . .    11

*Aniel v. GMAC Mortg., LLC,* 2012 WL 5373388
     (N.D. Cal. Oct. 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Cabrera v. Stephens,* No. 16-CV-3234 (ADS) (SIL),
     2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017). . . . . . . . . . . . . . . . . .    14

*Celestin v. Martelly,* No. 18-CV-7340 (LDH)(PK),
     2025 WL 2778736 (E.D.N.Y. Sept. 30, 2025) . . . . . . . . . . . . . . . . . .    12

*Clare v. Clare,* No. 4:18-CV-05045-SAB,
     2021 WL 6206989 (E.D. Wash. Dec. 8, 2021). . . . . . . . . . . . . . . . . .    12

*Coolidge v. United States,* No. 10-CV-363S,
     2015 WL 5714237 (W.D.N.Y. Sept. 28, 2015) . . . . . . . . . . . . . . . . . .    12

*Ernst Seidelman Corp. v. Mollison,*
     10 F.R.D. 426 (S.D. Ohio 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*In re Fibrogen Sec. Litig,* No. 21-cv-02623-EMC,
     2023 WL 5600077 (N.D. Cal. Aug. 29, 2023) . . . . . . . . . . . . . . . . . .    9, 14

*Sterling & Wilson Solar Solutions, Inc. v.*
     *Fidelity & Deposit Co. of Md.,* No.
     1:22-CV-03076-SAB, 2023 WL
     1864872 (E.D. Wash. Feb. 9, 2023) . . . . . . . . . . . . . . . . . . . . . . . . .    14

*United States v. Sardie,* 191 F. Supp. 2d
     1117 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7, 8

*United States v. Southern California Edison Co.,*
     300 F. Supp. 2d 964 (E.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . .    8

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE SULZER
DECLARATION
Case No. 2:24-CV-00413-SAB
Page 3 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

**<u>Statutes</u>**

11 U.S.C. § 362(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

11 U.S.C. § 362(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

**<u>Rules</u>**

Fed. R. Civ. P. 7(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

Fed. R. Civ. P. 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 4 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

**PRELIMINARY STATEMENT**

Defendant Jonathan Clausen ("CLAUSEN") submits this memorandum in opposition to a motion (ECF Nos. 113, 113-1) filed by Plaintiffs Hammerless Tools, LLC and Eight Eighteen, LLC (collectively "Plaintiffs") to strike portions of a Declaration of Stephen L. Sulzer (ECF No. 102) filed in support of three motions: (1) CLAUSEN'S Motion to Vacate (ECF No. 101); (2) CLAUSEN'S Motion to Establish Liability for Damages (ECF No. 103); and (3) the Company Defendants' Motion to Reconsider and Vacate Based on Failures of Service (ECF No. 107).

As set forth more fully below, Plaintiffs' motion should be denied because: (1) it fails to state the grounds for the motion with particularity in violation of Federal Rule 7(b)(1)(B); and (2) the Sulzer Declaration is helpful to the Court in deciding the three motions it supports. For these reasons, Plaintiffs' Motion to Strike the Declaration of Stephen L. Sulzer should be denied in its entirety.

**OPPOSING ARGUMENT**

Plaintiffs' instant motion to strike the Sulzer Declaration is a grudge motion, born of grasping for straws when the Plaintiffs are facing, *inter alia,* the three meritorious motions listed above. Unfortunately it comes at a cost to the judiciary, putting the burden on the Court to adjudicate a useless motion. Fortunately, there are ways for the Court to deal with it in mitigation of the burden, discussed *infra.*

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 5 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Plaintiffs' motion to strike portions of the Sulzer Declaration is fatally flawed. It violates a cardinal rule of federal motion practice that a motion must state *"with particularity"* the grounds therefor, and in so doing impermissibly shifts the movants' burden to the Court to parse all clauses of all sentences in almost two thirds of the numerous whole paragraphs of the Sulzer Declaration sought by Plaintiffs to be stricken in their entirety.  Such is indisputably not allowed by the Federal Rules of Civil Procedure and finds no shelter in a proper exercise of the Court's inherent authority to exercise control over its docket.

The motion has no utility and would deprive the Court of a Declaration actually useful to the Court in deciding all three supported motions.  If the Court wishes to disregard any part of the Declaration, it is perfectly capable of doing so, without taking a chain saw to it.  And a busy Court could simply decide the three motions first, favorably, and without reliance on the Declaration, and proceed to deny Plaintiffs' motion to strike the supporting Declaration as moot.

## I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT FAILS TO STATE THE GROUNDS FOR THE MOTION WITH PARTICULARITY

Asking for relief in a motion is one thing; stating with specificity the grounds therefor is another.  The rub here is the latter – which the movants never trouble themselves to do, while asking for sky-high relief of total striking of the entirety of

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 6 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

the following whole paragraphs in the Sulzer Declaration:  Nos. 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 19, 20, 21, 26, 28, 29, and 30 – of a 32 paragraph Declaration.

Federal Rule 7(b)(1)(B) expressly requires that a motion requesting a court order "state with particularity the grounds for seeking the order[.]" Fed. R. Civ. P. 7(b)(1)(B).  The instant motion should be denied because it does not comply with that threshold requirement of the Federal Rules.  The motion vaguely asserts that the Sulzer Declaration is sloppy (ECF No. 113 at 2), and then ironically makes its own fatal display of Plaintiffs' sloppiness.

Plaintiffs' motion broadly attacks 20 paragraphs of the Sulzer Declaration in their entirety on various grounds, including lack of personal knowledge, speculative conclusions of fact and law, and statements of opinion or argument.  But Plaintiffs do not explain how or why even a single sentence in the challenged paragraphs is objectionable on any one or more of the asserted grounds.  (ECF No. 113 at 6-10.) Not even a single sentence or phrase is given as an example, improperly putting the burden on the Court to guess at which portions of the challenged 20 paragraphs might be inadmissible and the particular grounds for their supposed inadmissibility. For these reasons alone, Plaintiffs' motion fails to meet the threshold requirement of Federal Rule of Civil Procedure 7(b)(1)(B) and should be denied in its entirety.

If the movants attempt to cure the deficiencies in their moving papers on reply, such would be verboten.  *United States v. Sardie,* 191 F. Supp. 2d 1117, 1127 (C.D.

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE SULZER
DECLARATION
Case No. 2:24-CV-00413-SAB
Page 7 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

### A. The Federal Rules of Civil Procedure Provide No Grounds For a Motion to Strike Portions of a Declaration, as a Declaration Is Not a Pleading Subject to Being Stricken Pursuant to Rule 12(f)

Plaintiffs admit that the Federal Rules provide no grounds for a motion to strike portions of the Sulzer Declaration, as the Sulzer Declaration is not a pleading subject to being stricken pursuant to Rule 12(f). (ECF No. 113 at 5.) Instead, Plaintiffs rely on *United States v. Southern California Edison Co.,* 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004), for its observation that the Court may consider striking evidence offered in support of a motion if the evidence is shown to be inadmissible. (ECF No. 113 at 5-6.) But even *Socal Edison* points out that motions to strike are disfavored and should be granted ***"only where it can be shown that none of the evidence in support of an allegation is admissible."*** 300 F. Supp. 2d at 973 (emphasis added).

The burden is thus squarely on Plaintiffs to show that **none** of the evidence in the Sulzer Declaration is admissible. And that showing must be made with particularity under Federal Rule 7(b)(1)(B)). Plaintiffs fail to meet either of these standards.

### B. Plaintiffs' Motion Fails to Specify Which Portions or Statements in the Challenged Paragraphs Are Inadmissible

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 8 of 16

Plaintiffs never come to grips with the fact that the parties' submissions and the Court's rulings – the events which are set forth in the record of this case – are the facts on which CLAUSEN'S motion to vacate is based.  In the context of a motion to vacate which is based on those evidentiary facts, it is completely appropriate for CLAUSEN'S counsel to recite the case's procedural history to the Court.

In a misguided effort to establish inadmissibility, Plaintiffs' motion asserts repeatedly that Sulzer lacked personal knowledge of the facts recited in his Declaration. (ECF No. 113 at 6-10.)  However, when Sulzer made his Declaration, he had been engaged as Defendants' counsel and had gained personal knowledge of the contents of the record by having reviewed the record to come up to speed on the case.  Defendants counsel's recitation of what appears in the record is not offered for the truth of the matters asserted in the record, it is offered to present the Court with what motions, rulings, and other papers appear in the record.  In that context, Plaintiffs' assertion that CLAUSEN'S counsel does not have personal knowledge of the case record he reviewed is simply wrong.  *See, e.g., In re Fibrogen Sec. Litig.,* No. 21-cv-02623-EMC, 2023 WL 5600077, *2 (N.D. Cal. Aug. 29, 2023 ) (personal knowledge not strictly limited to activities in which the declarant personally participated; affiant may testify to acts which have been described in business records), citing *Aniel v. GMAC Mortg., LLC,* 2012 WL 5373388, *6 (N.D. Cal. Oct. 30, 2012) (same), appended as Exhibits A and B, respectively.

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 9 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Plaintiffs trot out innumerable cases in which the courts struck declarations on the grounds which Plaintiffs generally assert here (ECF No. 113 at 6-8), but notably, not a single one of Plaintiffs' cases applying their admissibility objections involved a situation even remotely like the unusual one at issue here, where the challenged declaration was proffered in support of a motion to vacate *void ab initio* rulings, and where the motion to vacate is based on the contents of the record described in the declaration.

Moreover, as pointed out *supra,* instead of Plaintiffs identifying the specific portions of the paragraphs in the Sulzer Declaration which they claim are inadmissible, Plaintiffs hide behind a legally-impermissible approach, broadly stating that the "Declaration consists of speculative conclusions of fact and law, lacks personal knowledge, statements of opinion . . . , and inadmissible statements that should be stricken." (ECF No. 113 at 6.) But Plaintiffs do not identify a single sentence in the 20 paragraphs they seek to have stricken which falls into any of their challenged categories. (ECF No. 113 at 6-10.)

The Court is invited to read the beginning pages of the Sulzer Declaration to quickly see that movants' generic labels simply cannot stick to an innocuous and detailed recounting of the procedural history of this case, which has been going on since 2024. In addition, review of the paragraphs challenged in their entirety reveals that contrary to Plaintiffs' all-encompassing, broadbrush assertions, those

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 10 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

paragraphs are replete with objective descriptions of this case's procedural history – *i.e.,* the pertinent evidentiary facts of the case. *See, e.g.,* ECF No. 102 at ¶¶ 3-10, 13-17, 19-21, 26, 28-30.

As was made clear in *Ernst Seidelman Corp. v. Mollison,* 10 F.R.D. 426, 428 (S.D. Ohio 1950), the Court "cannot and should not be expected to go through . . . [a declaration] 'with a fine-tooth comb' and pick out the 'certain portions' which . . . [movants] (from their viewpoint) feel should be stricken. That duty and responsibility rests upon the . . . [movants]." Plaintiffs putting the burden on the Court to guess at which portions of the challenged 20 paragraphs might be inadmissible and the particular grounds for each portion's supposed inadmissibility is far beyond the pale of what this Court should have to put up with.

## II. THE MOTION TO STRIKE PORTIONS OF THE SULZER DECLARATION IS MERITLESS

On balance, separating any dross from the floss for striking is certainly not worth it here.

### A. The Court's Discretionary Power Would Not Be Providently Exercised When the Declaration Is Neither Prejudicial Nor Scandalous

"Courts disfavor motions to strike. . . . [B]ecause courts view motions to strike with such disfavor, many courts will grant such motions only if the portions sought to be stricken are prejudicial or scandalous." *Aftergood v. C.I.A.,* 355 F. Supp. 2d 557, 565 (D.D.C. 2005). There is nothing prejudicial or scandalous about the Sulzer

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 11 of 16

STEPHEN L. SULZER PLLC
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

Declaration – an attorney's anodyne recounting of the lengthy procedural history of this case to support the Defendants' motions, each of which are grounded in procedural missteps in this action.

Only when a declaration "more resemble[s] an adversarial memorandum than a bona fide affidavit" or is "riddled with inadmissible material" should a motion to strike be entertained. *Coolidge v. United States,* No. 10-CV-363S, 2015 WL 5714237, *3 (W.D.N.Y. Sept. 28, 2015), copy appended as Exhibit C. When a declaration is not found to be "abusive," or "filed for improper purposes[,]" a motion to strike is properly denied. *See Celestin v. Martelly,* No. 18-CV-7340 (LDH)(PK), 2025 WL 2778736, *4 (E.D.N.Y. Sept. 30, 2025), copy appended as Exhibit D.

**B. The Sulzer Declaration Is Actually Helpful to the Court in Determining the Three Motions Which It Supports**

As shown below, the Sulzer Declaration actually helps the Court in determining the three motions which it supports. *See Clare v. Clare,* No. 4:18-CV-05045-SAB, 2021 WL 6206989, *3 (E.D. Wash. Dec. 8, 2021) (declaration "not so egregious as to be stricken but instead . . . helpful to adjudication of the [m]otion . . ."), copy appended as Exhibit E.

First, it summarizes the lengthy procedural history of this action and pinpoints salient events with reference to admissible documentary evidence (identified by ECF document numbers) as probative of violations by the Plaintiffs, their counsel, and the Court of 11 U.S.C. § 362(a)(1). That information is useful to the Court's decision

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 12 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

on supported motion (ECF No. 101) of Defendant Jonathan Clausen to vacate and dismiss *nunc pro tunc* all proceedings against him as violative of Section 362(a)(1). It is similarly useful to decision of supported motion (ECF No. 103) of Defendant CLAUSEN to establish the liability of Plaintiffs and their counsel pursuant to 11 U.S.C. § 362(k) for their violations of Section 362(a)(1).

Second, it pinpoints admissible documentary evidence (identified by ECF document numbers) as probative that Defendant CLAUSEN has been injured by Plaintiffs' and their counsels' violations of Section 362(a)(1).  This is extremely useful to decision on said supported motion to establish liability (ECF No. 103).

Third, it even is useful to decision on the supported motion (ECF No. 107) of the Company Defendants to vacate certain adverse rulings against them during the period they were without counsel and were served improperly with moving papers by the Plaintiffs.  This is so because it familiarizes the Court with the lengthy procedural record and references admissible documentary evidence (identified by ECF document numbers) which is probative of the adverse events against them.

### C. If Any Evidence Were Inadmissible in the Sulzer Declaration, the Better Remedy Would Be to Disregard, Not to Strike It

Throwing out the baby with the bathwater is not advisable.  If any evidence in the Sulzer Declaration were inadmissible, the better remedy would not be to strike, but to disregard the inadmissible portions.  This Court is quite capable of identifying

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 13 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

and disregarding any inadmissible portions of the Declaration with no jury present to be exposed to them. And doing so would be consonant with preserving CLAUSEN'S appeal rights, rather than striking any inadmissible portions from the record.

Better to disregard any inadmissible portions and to do so with precision, rather than using Plaintiffs' overbroad chain saw approach, which would strike admissible information from the record. *See Fibrogen Sec. Litig.,* 2023 WL 5600077, *2 (disregarding questioned portions of a declaration rather than striking it).

### D. If the Supported Motions Are Decided First and Favorably Without Reliance on the Declaration, the Instant Motion Would Be Moot

This option may well appeal to a busy Court. *E.g., Sterling & Wilson Solar Solutions, Inc. v. Fidelity & Deposit Co. of Md.,* No. 1:22-CV-03076-SAB, 2023 WL 1864872, *3 (E.D. Wash. Feb. 9, 2023), copy appended as Exhibit F. It has been adopted by other busy District Courts as well. *E.g., Cabrera v. Stephens,* No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, *9 (E.D.N.Y. Sept. 28, 2017), copy appended as Exhibit G.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to strike 20 paragraphs of ECF No. 102 (the Declaration of Stephen L. Sulzer in Support of Defendant Jonathan Clausen's Motion to Vacate) should be denied in its entirety.

Dated: April 29, 2026                    Respectfully submitted,

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 14 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

By:    /s/ *Stephen L. Sulzer*
Stephen L. Sulzer (*pro hac vice*)
**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA  20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com


/s/ *Douglas R. Dick*
Douglas R. Dick
ROBERT T. WRIGHT, WSBA #54075
DOUGLAS R. DICK, WSBA #46519
WHC ATTORNEYS, PLLC
12209 E. Mission Avenue, Suite 5
Spokane Valley, WA  99206
P: (509) 927-9700
F: (509) 777-1800
E: rwright@whc-attorneys.com
E: doug@whc-attorneys.com

*Attorneys for Defendants Jonathan Clausen, Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 15 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system, including the following:

Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
Lee & Hayes, P.C.
601 W. Riverside Ave., Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com
Email: johanna.tomlinson@leehayes.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Spokane Valley, Washington this 29th day of April 2026.

_____
**Julie Sutter,** Legal Assistant

DEFENDANT JONATHAN CLAUSEN'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SULZER DECLARATION
Case No. 2:24-CV-00413-SAB
Page 16 of 16

**STEPHEN L. SULZER PLLC**
11710 PLAZA AMERICA DRIVE, SUITE 2000
RESTON, VA 20190
TELEPHONE (703) 871-5000
FAX (202) 558-5101

# *EXHIBIT A*

In re Fibrogen Securities Litigation, Not Reported in Fed. Supp. (2023)

2023 WL 5600077
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
IN RE **FIBROGEN** SECURITIES
**LITIGATION**
Case No.



21
-
cv
-
02623
-
EMC

Signed August 29, 2023

ORDER DENYING DEFENDANT'S MOTION TO STRIKE PORTIONS OF KAPLAN DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

Docket No. 198

EDWARD M. CHEN, United States District Judge

**\*1** Defendant **FibroGen**, Inc. brings a motion to strike portions of the Declaration of David R. Kaplan in Support of Plaintiffs' Motion for Spoliation Sanctions, Docket No. 185-1 ("Kaplan Decl.") pursuant to Northern District of California Civil Local Rules 7-2 and 7-5(b). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

## I. LEGAL STANDARD

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion is to "avoid

the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial." *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). Motions to strike are generally disfavored. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (" 'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."). Statements that do not pertain to, and are not necessary to resolve, the issues in question are impertinent. *Id.* If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057. Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party. *Id.*

Defendant moves pursuant to Civil Local Rules 7-2 and 7-5(b). The latter provides, in part that "[a]n affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument." LR 7-5(b). Because Plaintiffs have moved for sanctions under Federal Rule of Civil Procedure 37, their motion must also comply with Civil Local Rule 37-4 ("LR 37-4"), which requires, in pertinent part, that such motion be accompanied by "competent declarations" that: (1) "[s]et forth the facts and circumstances that support the motion" and (2) "[d]escribe in detail the efforts made by the moving party to secure compliance without intervention by the Court." *See also Glass Egg Dig. Media v. Gameloft, Inc.*, 2019 WL 5720731, at \*4 (N.D. Cal. Nov. 5, 2019).

## II. DISCUSSION

Defendant mounts two challenges to the Kaplan Declaration. First, they argue that the declaration contains paragraphs that are not based on Kaplan's personal knowledge. Second, they argue that Kaplan makes

improper argument in his declaration, and in doing so mischaracterizes or incorrectly summarizes the evidence the declaration is meant to authenticate. Defendant argues that this improper argument is intended to circumvent the page limits set forth in the local rules.

**\*2** Defendant argues that the Kaplan Declaration violates LR 7-5 because Kaplan does not have "personal knowledge" of the underlying facts described in documents Defendants produced in discovery, such as internal communications within the company. The Kaplan Declaration cites to facts either within Kaplan's personal knowledge or contained within documents or deposition testimony produced by Defendants that Kaplan represents he has reviewed in preparing his declaration. *See, e.g., Aniel v. GMAC Mortg., LLC*, 2012 WL 5373388, at \*6 (N.D. Cal. Oct. 30, 2012) ("[p]ersonal knowledge ... is not strictly limited to activities in which the declarant has personally participated," and "an affiant may testify to acts that she did not personally observe but which have been described in business records").

The Court agrees that some of Kaplan's language toes the line of argument. To the extent it does, the Court will disregard the argument and read the declaration for its factual content and authentication of the factual record. *See, e.g., Allbaugh*, 2014 WL 2112934, at \*7 (finding that even if declaration included legal conclusions, "the proper remedy is not to disregard [the attorney's] declaration wholesale," as "[t]he [c]ourt has sufficient experience ignoring the legal conclusions of counsel and not treating those conclusions as established facts"); *Clare v. Clare*, 2021 WL 6206989, at \*3 (E.D. Wash. Dec. 8, 2021) (declining to strike paragraphs from declaration that "appear somewhat argumentative" because "they are not so egregious to be stricken but instead are helpful" to adjudication of summary judgment motion).

### III. **CONCLUSION**

Accordingly, Defendant's motion to strike is **DENIED**.

This order disposes of Docket No. 198.

**IT IS SO ORDERED.**

### **All Citations**

Not Reported in Fed. Supp., 2023 WL 5600077

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT B*

Aniel v. GMAC Mortg., LLC, Not Reported in F.Supp.2d (2012)

2012 WL 5373388
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
Oakland Division.

Erlinda Abibas ANIEL, an individual;
Fermin Solis Aniel, an individual; Marc
Jason Aniel, an individual, Plaintiffs,
v.
GMAC MORTGAGE, LLC; Executive
Trustee Services, LLC., dba ETS Services,
LLC; and Does 1 through 50, Defendants.

No. C 12–04201 SBA.
|
Docket Nos. 7, 20.
|
Oct. 30, 2012.

**Attorneys and Law Firms**

Marc Jason Aniel, Law Offices of Marc Jason Aniel, San Mateo, CA, for Plaintiffs.

Thomas Nathaniel Abbott, Severson & Werson, P.C., San Francisco, CA, for Defendants.

**AMENDED ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

SAUNDRA BROWN ARMSTRONG, District Judge.

*1 On August 9, 2012, Plaintiffs Erlinda Aniel, Fermin Aniel, and Marc Aniel (collectively "Plaintiffs") filed the instant action against Defendants GMAC Mortgage, LLC ("GMAC") and Executive Trustee Services, LLC ("ETS") (collectively "Defendants"), alleging nine claims for relief in connection with a foreclosure proceeding on their residence located at 75 Tobin Clark Drive, Hillsborough, CA 94010 (the "Property"). Compl., Dkt. 1. The parties are presently before the Court on Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("TRO Application"), which seeks an order enjoining the Trustee's Sale of the Property. Dkt. 7.[1] Defendants oppose the TRO Application. Dkt. 17. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the TRO Application. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7–1(b).

**I. DISCUSSION**

**A. Legal Standard**

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). The same standard applies to a motion for a TRO and a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir.2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–1135 (9th Cir.2011). Nevertheless, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter, 555 U.S. at 22, and the moving party bears the burden of meeting all four Winter prongs. See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776–777 (9th Cir.2011).

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    1

Aniel v. GMAC Mortg., LLC, Not Reported in F.Supp.2d (2012)

**B. The TRO Application**

While the Court recognizes that loss of a home may constitute irreparable harm as a matter of law, *see Saba v. Caplan,* 2010 WL 2681987, at *5 (N.D.Cal.2010) (Armstrong, J.), the Court finds that Plaintiffs have neither demonstrated that they are likely to succeed on the merits nor raised "serious questions" going to the merits. In their TRO Application, Plaintiffs contend that injunctive relief is warranted because, among other things, they have shown a likelihood of success on the merits. Specifically, Plaintiffs contend that they are likely to prevail on the merits because: (1) "Defendants do not have a legal right to enforce the terms of the Deed of Trust" as Defendants are not the true creditors and therefore have "no legal, equitable, or pecuniary right in this debt obligation in the loan"; (2) "Plaintiffs were never personally contacted by telephone or in person by any of the Defendants prior to the 2012 Notice of Default" in violation of California Civil Code § 2923.5; (3) the Notice of Trustee's Sale is void because ETS was not properly substituted as the trustee; and (4) Defendants failed to respond to Plaintiffs debt validation request in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. Plaintiffs' arguments are discussed below.

**1. Wrong Entity Attempting to Foreclose on the Property**

*2 Plaintiffs contend that injunctive relief is appropriate because they are likely to prevail on the merits of their claim that Defendants do not have a legal right to enforce the terms of the Deed of Trust. Pls.' Mtn. at 10. In this regard, Plaintiffs' assert that there is no evidence showing that GMAC is in fact the lender with an enforceable interest in the Deed of Trust. Pls.' Reply at 4. Specifically, Plaintiffs argue that "the Defendants lacked authority to collect payments, let alone foreclose because they do not own an interest in their Note and Deed and failed to properly assign the Deed of Trust to DALT2007–AO5 Trust, who subsequently assigned the Deed to GMAC."[2] Pls.' Mtn. at 10. This is because "the Assignment [of the Deed of Trust] to DALT2007–AO5 took place after the closing date under the terms of the [Pooling and Servicing Agreement], which gives proper inference that the Assignment was likely fabricated." *Id.* According to Plaintiffs, "the Assignment of the Deed of Trust to [the DALT2007–AO5 Trust] never happened because the transfer took place after the cut off date. And

as such, the assignment from [the DALT2007–AO5 Trust] to GMAC also never happened because [the trust] had no legal interest in the Deed of Trust. Pls.' Reply at 4.

The Court finds that Plaintiffs have failed to direct the Court to specific evidence in the record or cite controlling authority which sustains their burden to clearly show that enjoining the foreclosure sale is appropriate. Plaintiffs' moving papers provide minimal analysis to assist the Court in evaluating their legal challenge. While Plaintiffs claim that the wrong entity is attempting to foreclose on the property because the Deed of Trust was not "properly assigned to the DALT2007–AO5 Trust because the entities involved in the attempted transfer failed to adhere to the requirements set forth in the Trust Agreement and thus the note and Deed are not part of the trust res," Pls.' Mtn. at 10, they have not provided the Court with a copy of this document. Without a copy of the "Trust Agreement," the Court cannot determine whether the requirements of the agreement have been violated as Plaintiffs contend. There is no evidence to support Plaintiffs' claim that the assignment of the Deed of Trust to the DALT2007–AO5 Trust was not done in compliance with the terms of the Trust Agreement.

Moreover, notably absent from Plaintiffs' moving papers is citation to authority demonstrating that injunctive relief is appropriate. In their moving papers, Plaintiffs only cite, without analysis or elaboration, *Vogan v. Wells Fargo et al.,* 2011 WL 5826016, at *7 (E.D.Cal.2011). Plaintiffs then make the conclusory assertion that injunctive relief is appropriate because they "have clearly made factual allegations in their Complaint and this Motion that are both plausible and sufficient to support that Defendants lack authority to enforce a security interest[ ] when they challenged Defendants' ability to enforce that interest through its Complaint." Pls.' Mtn. at 10. The Court rejects this argument.

*3 First, contrary to Plaintiffs' suggestion, the standard for injunctive relief is not met simply by factual allegations. "A preliminary injunction cannot issue absent a sufficient evidentiary showing." *See Boggs v. Wells Fargo Bank NA,* 2012 WL 566587, at *1 (N.D.Cal.2012) (Armstrong, J.) (citing *Am. Passage Media Corp. v. Cass Commc'n, Inc.,* 750 F.2d 1470, 1473 (9th Cir.1985). Second, *Vogan* is distinguishable from the present case, and therefore is of no assistance to Plaintiffs. In that case, the district court denied a motion to dismiss a claim brought under California's Business and Professions Code § 17200, et seq. ("UCL") on the ground that the Plaintiff pled facts sufficient to maintain a claim under the unlawful prong of the UCL. *Vogan,* 2011 WL 5826016, at *7. In reaching this conclusion, the district court stated

that Plaintiff "pleaded that Wells Fargo recorded a fabricated assignment of deed of trust assigning interest in Plaintiffs' loan to U.S. Bank.... Plaintiffs alleged that the recorded assignment was executed well after the closing date of the [mortgage backed security] to which it was allegedly sold, giving rise to a plausible inference that at least some part of the recorded assignment was fabricated. Plaintiffs allege that such conduct, if proven, constitutes a violation of Cal.Penal Code § 532f(a)(4)." *Id.* at *7. *Vogan* does not support Plaintiffs' contention that injunctive relief is appropriate in this case. Plaintiffs, for their part, failed to explain how *Vogan* supports their position.

In their reply brief, Plaintiffs cite several district court cases they contend support their request for injunctive relief. *See Sacchi v. Mortgage Electronic Registration Systems, Inc.,* 2011 WL 2533029 (C.D.Cal.2011); *Weingartner v. Chase Home Finance, LLC,* 702 F.Supp.2d 1276 (D.Nev.2010); *Ohlendorf v. Am. Home Mortgage Servicing,* 279 F.R.D. 575 (E.D.Cal.2010). According to Plaintiffs, each of these cases "acknowledges the possibility for a claim based on the *wrong* entity initiating the foreclosure process." Pls.' Reply at 3. These cases are not controlling and, in any event, a mere possibility of stating a claim is not sufficient to warrant injunctive relief. Moreover, none of the cases cited by Plaintiffs involved an application for a TRO. Instead, each of these cases involved a motion to dismiss. In short, even assuming for the sake of argument that Plaintiff has sufficiently pled a claim based on the wrong entity initiating the foreclosure process, they have not sustained their burden to clearly show that they are likely to succeed on this claim and that the extraordinary remedy of injunctive relief is appropriate. It is not enough to show that there is a mere "possibility" of success. *Winter,* 555 U.S. at 22. Rather, there must be a "clear showing" that the plaintiffs are entitled to preliminary relief. *Id.*

### 2. California Civil Code § 2923.5

*4 Plaintiffs contend that they are entitled to injunctive relief because they are likely to succeed on their claim for wrongful foreclosure predicated on a failure to comply with California Civil Code § 2923.5. Section 2923.5 provides that a "mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to section 2924 until 30 days after contact is made as required by paragraph two or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Cal. Civ.Code § 2923.5(a)(1). Paragraph 2 provides, in part, that "[a] mortgagee, beneficiary, or authorized

agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ.Code § 2923.5(a)(2).[3] Under subdivision (g), "[a] notice of default may be filed ... when a mortgagee, beneficiary, or authorized agent has *not* contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent." *Id.* § 2923.5(g) (emphasis added).

"Due diligence" in attempting to contact the borrower requires: (1) "sending a firstclass letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency;" (2) "attempting to contact the borrower by telephone at least three times at different hours and on different days" (an automated system may be used if it connects the borrower to a live representative when answered, and the telephone call requirements are satisfied if the lender determines that the borrower's phone number has been disconnected); (3) sending a certified letter, with return receipt requested, if the borrower does not respond within two weeks of the telephone calls; (4) providing a toll-free telephone number that will provide access to a live representative during business hours; and (5) posting a "prominent link on the homepage of its Internet Web site" to information about avoiding foreclosure. Cal. Civ.Code § 2923.5(g).

"The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure prior to a notice of default. It is enforced by the postponement of a foreclosure sale." *Mabry v. Superior Court,* 185 Cal.App.4th 208, 225, 110 Cal.Rptr.3d 201 (2010).

Plaintiffs contend that Defendants violated § 2923.5 because they never personally contacted them by telephone or in person prior to the 2012 Notice of Default, citing the declaration of Erlinda Aniel. Aniel Decl., Dkt. 7–2 In her declaration, Erlinda Aniel attests that at no time prior to issuing the April 21, 2012 Notice of Default did any Defendant or any of their agents contact her in person or by telephone to discuss options as required by § 2923.5. *Id.* ¶ 15, 110 Cal.Rptr.3d 201. In response, the Defendants contend that they complied with the "due diligence" requirements of § 2923.5(g). Defs.' Opp. at 3.

*5 According to Defendants, the last payment received by GMAC on the loan was on June 17, 2008. Calhoun Decl. ¶ 6. In January 2009, Plaintiffs requested that GMAC modify the loan. *Id.* ¶ 7, 110 Cal.Rptr.3d 201, Ex. D. However, because the income stated on the request was

insufficient for a modification, the loan was not modified. *See id.* Due to the continuing failure to make loan payments, GMAC attempted to call Erlinda Aniel on three occasions in August 2011 to inquire about her financial situation and explore options for avoiding foreclosure. *Id.* ¶ 9, 110 Cal.Rptr.3d 201. On each occasion there was no answer. *Id.*

On October 11, 2011, GMAC sent a letter by certified United States Mail to Erlinda Aniel stating that GMAC was contacting her as required by California law; noting that it had made a number of attempts to make arrangements with her without success. Calhoun Decl., Ex. F. The letter stated that Erlinda Aniel was being notified that she had 30 days from the date of the letter to contact GMAC to discuss options to avoid foreclosure, and that if she failed to contact GMAC within this period of time, GMAC is permitted by law to foreclose upon her property. *Id.* The letter goes on to state that "[i]f you wish to explore options that may prevent the foreclosure on your property ... it is imperative to contact us immediately. We have a number of options and programs for which you may be eligible. You, however, must ... contact[ ] us so that we can determine the best way to help you." *Id.* The letter contains GMAC's toll-free telephone number and the time to call, and informs Erlinda Aniel that she can obtain information about possible loss mitigation options by visiting GMAC's website at www.gmacmortgage.com. *Id.* The letter also informs Erlinda Aniel that, for additional assistance, she may contact HUD to locate a HUD-certified counseling office by calling HUD's toll-free number. *Id.*

Although GMAC did not receive a response to this letter, it received a letter from Erlinda Aniel claiming that she was no longer required to repay the loan because she filed a voluntary bankruptcy petition. Calhoun Decl. ¶ 11, Exh. G. On November 1, 2011, GMAC responded to a Validation of Debt request by Erlinda Aniel by written correspondence. *Id.,* Exh. H. The letter indicates that GMAC enclosed a copy of the loan documents and a payment history, and requests that Erlinda Aniel explain why she believes that she is no longer obligated to pay the loan. *Id.* Having received no response to the October 11, 2011 letter, GMAC attempted to call Erlinda Aniel six additional times on three different days in late January 2012 to assess her financial situation and explore options to avoid foreclosure. Each time, there was no answer. *Id.* ¶ 13, 110 Cal.Rptr.3d 201. After GMAC did not receive a response from Erlinda Aniel for two weeks, GMAC sent her another certified letter on February 14, 2012. *Id.* ¶ 13, 110 Cal.Rptr.3d 201, Exh. I. The substance of this letter is virtually identical to the October 2011 letter. *Id.*

*6 On March 16, 2012, apparently in response to further requests by Erlinda Aniel to release the Deed of Trust on the basis that the bankruptcy eliminated the security instrument, GMAC sent Erlinda Aniel written correspondence explaining that her bankruptcy discharge affects only her personal liability on the loan, but does not affect the security interest of the Deed of Trust or GMAC's right to enforce that interest by a foreclosure sale. Calhoun Decl. ¶ 15, Exh. J. On April 27, 2012, a Notice of Default was recorded, which states that the " 'beneficiary, or its authorized agent declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5." Compl. ¶¶ 51–52, Exh. H.

In response to the evidence submitted by Defendants, Plaintiffs argue that Defendants failed to satisfy the "due diligence" requirements of § 2923.5(g) because they have submitted the declaration of Erlinda Aniel attesting that she never received the telephone calls GMAC claims it made. Pls.' Reply at 7. Plaintiffs, however, do not claim that they did not receive the correspondence sent by GMAC, including the October 2011 and February 2012 letters.

Based on the evidence submitted by the parties, the Court finds that Plaintiffs have not sustained their burden to make a clear showing that they are likely to succeed on the merits of their claim that Defendants failed to comply with § 2923.5. To the extent Plaintiffs argue that injunctive relief is appropriate because Defendants have not shown compliance with § 2923.5, the Court rejects this argument. Plaintiffs, as the party seeking injunctive relief, have the burden to make a clear showing that they are entitled to such relief. They have failed to do so. Defendants submitted evidence demonstrating that they complied with the "due diligence" requirements of § 2923(g), while Plaintiffs submitted the declaration of Erlinda Aniel attesting that she never received a telephone call from GMAC. As such, a material factual dispute exists regarding whether Defendants complied with the requirement to contact the borrower by telephone at least three times at different hours and on different days. In the absence of a clear showing of entitlement, the Court cannot conclude that the extraordinary remedy of injunctive relief is appropriate.

The Court notes that Plaintiffs object to the declaration of Russell Calhoun, a senior litigation analyst with GMAC who prepared his declaration after reviewing business records that are maintained in the ordinary course of GMAC's business. Calhoun Decl. ¶¶ 1–2. Plaintiffs

Aniel v. GMAC Mortg., LLC, Not Reported in F.Supp.2d (2012)

object to this declaration, without citation to any authority, "based on a lack of foundation, hearsay, and lack of personal knowledge." Pls.' Reply at 2. More specifically, with respect to Plaintiffs' § 2923.5 claim, Plaintiffs argue that Calhoun's declaration "does not hold any weight" because he has no personal knowledge of the statements made therein, including his statements regarding the telephone calls that GMAC claims it made to Erlinda Aniel. Pls.' Reply at 7. The Court disagrees. First, because Plaintiffs' did not cite any authority and legal analysis in support of their objection, the objection is unsupported, and therefore lacks merit. *See Indep. Towers of Wash. v. Wash.,* 350 F.3d 925, 929 (9th Cir.2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Second, "[p]ersonal knowledge ... is not strictly limited to activities in which the declarant has personally participated." *See e.g., Washington Cent. R.R. Co., Inc. v. National Mediation Bd.,* 830 F.Supp. 1343, 1352–1353 (E.D.Wash.1993) (citing *Londrigan v. FBI,* 670 F.2d 1164, 1174–1175 (D.C.Cir.1981). Instead, "[p]ersonal knowledge can come from the review of the contents of business records, and an affiant may testify to acts that she did not personally observe but which have been described in business records." *Washington Cent. R.R. Co.,* 830 F.Supp. at 1352–1353; *Laurant Beverly Hills v. Ford Motor Co.,* 108 F.3d 338 *3 (9th Cir.1996); *New Hampshire Ins. Co. v. Blaze Const. Inc.,* 28 F.3d 107 *2 (9th Cir.1994).

### 3. California Civil Code § 2934a(b)

*7 Plaintiffs contend that injunctive relief is appropriate because the Defendants did not comply with California Civil Code § 2934a(b), and because ETS was not properly substituted as the trustee in accordance with the covenants under the Deed of Trust. Pls.' Mtn. at 12.

Section 2934a(b) provides:

> If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision.

While Plaintiffs argue in their moving papers that the

Trustee's Sale is void because Defendants violated § 2934a(b), they fail to cite specific evidence or case law in support of their position. Pls.' Mtn. at 12. Plaintiffs simply contend that the statute was violated because ETS never sent any notice of the "substitution of trustee" and did not attach any affidavit of mailing in its recording of the Substitution of Trustee. *Id.* In their reply brief, Plaintiffs clarify that Defendants did not comply with § 2934a(b) regarding the Substitution of Trustee recorded on April 27, 2012, arguing that "Defendants did not attach an affidavit to the substitution that notice had been given to those persons and in the manner required by 2934a(b)." Pls.' Reply at 7–8. According to Plaintiffs, the requirements of § 2934a(b) were triggered because the Substitution of Trustee was executed but not recorded prior to the recording of the Notice of Default. *Id.* at 7.

The Court finds that Plaintiffs have failed to demonstrate that Defendants violated § 2934a(b). Plaintiffs have failed to cite any authority in support of their position, nor does the plain language of the statute support their position. Indeed, as pointed out by Defendants, the undisputed evidence in the record demonstrates that the Substitution of Trustee designating ETS as the new trustee and the Notice of Default were both recorded on April 27, 2012. *See* Compl., Exhs. H, I. The Substitution of Trustee was recorded as document no. 2012–058860, while the Notice of Default was recorded as document no. 2012–058861, which suggests that the Substitution of Trustee was recorded prior to the Notice of Default on April 27, 2012. *Id.* (emphasis added). However, even if the Substitution of Trustee was not recorded prior to the Notice of Default, the language of the documents indicate that they were filed concurrently. Both documents state that they were filed on April 27, 2012 at 10:33 a.m. Accordingly, because the Substitution of Trustee was recorded "prior to or concurrently with" the recording of the Notice of Default, Plaintiffs have not demonstrated that Defendants violated § 2934a(b).

*8 To the extent Plaintiffs argue that injunctive relief is appropriate because the Substitution of Trustee violated the covenants of the Deed of Trust, the Court rejects this argument. Plaintiffs have failed to cite any authority in support of their position. As such, they have failed to sustain their burden to clearly show that the extraordinary remedy of injunctive relief is appropriate.

### 4. RESPA

Plaintiffs contend that injunctive relief is appropriate because the Defendants failed to comply with the

requirements of RESPA. Pls.' Mtn. at 12–13. Plaintiffs' third claim for relief alleges a violation of 12 U.S.C. § 2605, which only affords the following types of relief for individual plaintiffs: "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). Thus, this claim does not provide a basis for injunctive relief, including enjoining foreclosure of Plaintiffs' home. Numerous district courts have denied preliminary injunctions to RESPA plaintiffs on this basis. See e.g., Gray v. Central Mortg. Co., 2010 WL 1526451, at * 3 (N.D.Cal.2010) (Seeborg, J.); Chung v. NBGI, Inc., 2010 WL 84129, at *3 (N.D.Cal.2010) (Patel, J.).

### 5. Summary

In sum, because Plaintiffs have not met their burden to establish a likelihood of success on the merits or raised "serious questions" going to the merits, and because they must show each of the requisite elements to obtain a TRO under the Winter standard, a TRO is not warranted. Winter, 555 U.S. at 20. Plaintiffs have not met their burden to show that they are entitled to the extraordinary remedy of a TRO under the standards articulated in Winter and Cottrell. Plaintiffs have not made "a clear showing" that they are entitled to relief. Id. at 22. Accordingly, Plaintiffs' TRO Application is DENIED.[4]

Finally, the Court finds that Plaintiffs lack of diligence in filing their TRO Application also militates against injunctive relief. Plaintiffs have known since at least on or around early May 2012 about the potential for foreclosure when they received the Notice of Default. Compl. ¶¶ 51, 55; Erlinda Aniel Decl. ¶ 16. Plaintiffs, however, waited over three months to file the instant action and their TRO Application. They have not explained this delay, and therefore have failed to demonstrate the absence of fault in creating the crisis that triggers the need for injunctive

relief. The Court finds that Plaintiffs' unexplained and lengthy delay in seeking injunctive relief implies a lack of urgency and irreparable harm and militates against granting the relief requested See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir.1993) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (internal quotation marks and citation omitted); Lydo Enters. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir.1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); see also William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 13:95 (The Rutter Group 2010) ("An important factor will be whether the applicant could have sought relief earlier by a motion for preliminary injunction, avoiding the necessity for a last-minute TRO. Delay in seeking relief may be evidence of laches ... or negate the alleged threat of 'immediate' irreparable injury.... The court has discretion to deny the application on either ground").

### II. CONCLUSION

*9 For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' TRO Application is DENIED.

2. This Order terminates Docket 7.

3. This Order supersedes Docket 20.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 5373388

### Footnotes

1    The Trustee's Sale was originally scheduled for August 27, 2012. Dkt. 7. On August 22, 2012, Plaintiffs notified the Court that the Trustee's Sale has been postponed to September 27, 2012. Dkt. 11. Defendants have informed the Court that the Trustee's Sale has been postponed to November 5, 2012.

2    Defendants do not dispute that Plaintiffs' Deed of Trust was assigned to the DALT2007–0A5 Trust.

Aniel v. GMAC Mortg., LLC, Not Reported in F.Supp.2d (2012)

3    The statute further requires that the notice of default include a "declaration that the mortgagee, beneficiary or authorized agent has contacted the borrower" pursuant to subdivision (a)(2). Cal. Civ.Code § 2923.5(b).

4    Because the Court finds that Plaintiffs have not met their burden to establish a likelihood of success on the merits, it need not consider whether Plaintiffs established the other elements to obtain a TRO under the *Winter* standard.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT C*

2015 WL 5714237
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wilma **COOLIDGE**, as Executor of the Estate of Howard Southard, deceased, Plaintiff,
v.
UNITED STATES of America, Defendant.

No.



10
–
CV
–
363S
.
|
Signed Sept. 28, 2015.
|
Filed Sept. 29, 2015.

### Attorneys and Law Firms

Anne B. Rimmler, Paul William Beltz, Timothy Michael Hudson, Paul William Beltz, P.C., Buffalo, NY, for Plaintiff.

Mary K. Roach, U.S. Attorney's Office, Buffalo, NY, for Defendant.

## DECISION AND ORDER

WILLIAM M. SKRETNY, District Judge.

## I. INTRODUCTION

*1 Plaintiff, as Executor of the Estate of Howard Southard, commenced this action against Defendant, United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671, *et seq.,* alleging, among other things, medical malpractice and wrongful death.

Currently before this Court is Plaintiff's Motion for Partial Summary Judgment on the issue of liability. (Docket No. 23). Defendant opposes Plaintiff's motion and moves to strike Plaintiff's supporting declaration. (Docket No. 25).

For the following reasons, this Court denies Plaintiff's Motion for Partial Summary Judgment and denies Defendant's Motion to Strike.

## II. BACKGROUND

The following facts are undisputed, unless otherwise noted.[1]

Howard Southard, Plaintiff's brother, underwent an endovascular abdominal aortic aneurysm repair ("EVAR") at the Veterans Administration Hospital ("VA") in Buffalo, New York, on April 1, 2009, having been referred to the VA by the Veterans Administration Hospital in Bath, New York. (Docket 23–3, ¶ 1; Docket No. 33–1 at 3738). An EVAR is "a closed procedure," meaning that a stent is placed without making an open surgical incision at the site of the aneurysm. (Docket No. 23–1, ¶ 12). In Southard's case, surgeons inserted a stent endovascularly into Southard's vascular system through his groin and passed it up to the portion of Southard's aorta containing the aneurysm for deployment "within a millimeter or two or three maximum of the ["lowest"] renal artery." (Docket No. 23–2 at 106–107; Docket No. 23–1 ¶ 12; Docket No. 23–2 at 144, 151–156).

Three physicians were present during Southard's surgery. (Docket 23–1, ¶ 8). Dr. Purandath Lall was the attending supervising surgeon. (Docket No. 28, ¶ 2). Dr. Hasan H. Dosluoglu was the Chief of Vascular Surgery and Southard's supplemental surgeon. (Docket No. 23–2 at 100; Docket No. 23–2 at 116). Dr. Mohammad Usman Nasir Khan was a fellowship student in vascular surgery, working under Dr. Lall's supervision. (Docket No. 33–2 at 63–64; Docket 23–2 at 146–148; Docket No. 28, ¶ 2). Drs. Lall and Dosluoglu were employees of the VA. (Docket 28, ¶ 3; Docket 23–2 at 100).

Coolidge v. U.S., Not Reported in F.Supp.3d (2015)

Drs. Lall and Khan performed the aneurysm repair surgery. (Docket 28, ¶ 2). According to Drs. Lall and Dosluoglu, Southard was an excellent candidate for the closed procedure due to the anatomy of his aorta in the area of his aneurysm. (Docket 23–3,¶ 5). Drs. Lall and Khan used a Cook Zenith Flex AAA endovascular stent graft ("Zenith Stent Graft") to perform the EVAR. (*Id.*) Drs. Lall and Dosluoglu were certified in the use of the Zenith Stent Graft at the time of Southard's EVAR procedure; Dr. Khan became certified in its use in June 2009, two months after Southard's surgery. (Docket No. 33–2 at 65; Docket No. 33–1 at 35–36; Docket No. 33–2 at 39–41). Dr. Khan deployed the Zenith Stent Graft under Dr. Lall's supervision. (*Id.*)

**\*2** The EVAR resulted in the Zenith Stent Graft covering both of Southard's renal arteries. (Docket 23–3, ¶ 6). A completion angiogram conducted after the Zenith Stent Graft was locked in place revealed that it had occluded blood flow to both renal arteries. (Docket 23–3 at 97; Docket 23–2 at 174–175). All three surgeons then performed a series of unsuccessful operations in an attempt to "reestablish blood flow to the kidneys." (Docket 23–2 at 175, 178–180).

Before the EVAR, both of Southard's kidneys functioned. (Docket 23–3, ¶ 2). After the EVAR, Southard required kidney dialysis and remained hospitalized at the VA until his death in July 2009, four months after the surgery. (Docket 26, ¶ 7; Docket 23–1, ¶ 28).

## III. DISCUSSION

### A. Pending Motions
Plaintiff alleges that Defendant, by its employees, agents and representatives, "carelessly and negligently rendered medical care and treatment to the plaintiff's decedent which was not in accordance with good and accepted medical and surgical practice" and "as a direct and proximate cause of the negligence of defendant, the plaintiff's decedent ... suffered severe, permanent and painful injuries, including conscious pain and suffering, ultimately resulting in his death." (Docket No. 1).

In support of her Motion for Partial Summary Judgment, Plaintiff contends that (1) the deposition testimony of

Southard's three treating physicians constitutes expert medical opinion; (2) Dr. Khan admitted that the occlusion of Southard's renal arteries during the EVAR by the Zenith Stent Graft constituted a deviation from good and accepted medical practice; (3) Dr. Lall conceded that the coverage of decedent's renal arteries more likely than not resulted from operator error; (4) the performance of a confirming angiogram would have prevented the occlusion from occurring; and (5) the theory of *res ipsa loquitur* applies to the claims. (Docket Nos. 23–4, 33, 33–3, 41).

Defendant argues in opposition that (1) Plaintiff failed to submit a report from her expert(s) in admissible form that establishes a deviation from the standard of care or that any such deviation was the cause of the injury; and (2) the Declaration of Anne B. Rimmler must be stricken, because it contains inadmissible hearsay and conclusory and unsupported statements. Defendant urges this Court to strike the declaration in full, but concedes that 11 of the 15 exhibits attached to the declaration are admissible. (Docket Nos. 27, 34, 37).

### B. Defendant's Motion to Strike

#### 1. Applicable Law
An **affidavit** or declaration used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). Declarations, however, "often do not rest entirely on personal knowledge, and it is expected that some advocacy will appear" as it is expected that the declaration will be used for the purpose of introducing documents or other evidence into the record. *Degelman Indus. Ltd. v. Pro–Tech Welding and Fabrication, Inc.,* No. 06–CV–6346T, 2011 WL 6752565, at \*4 (W.D.N.Y. Dec.23, 2011).

**\*3** "The principles governing admissibility of evidence do not change on a motion for summary judgment," and "only admissible evidence" may be considered by the district court. *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997); *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 264 (2d Cir.2009). "Because the purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact ... it is appropriate for districts courts to

decide questions regarding the admissibility of evidence on summary judgment." *Id.* (internal quotations and citations omitted). Courts may consider any material usable or admissible at trial when considering a summary judgment motion. *Lyons v. Lancer Ins. Co.,* 681 F.3d 50, 57 (2d Cir.2012); *see Raskin,* 125 F.3d at 65 (noting that a district court "has broad discretion in choosing whether to admit evidence" on a motion for summary judgment.) Indeed, the purpose of summary judgment is to allow courts to "pierc[e] the pleadings" and access admissible evidence to "determine whether there are genuine issues to be tried." *Lemelson v. Carolina Enters. Inc.,* 541 F.Supp. 645, 648 (S.D.N.Y.1982).

Rather than strike a declaration because it contains hearsay, argument, or statements unsupported by citations to the record, courts considering a motion for summary judgment are free to disregard the improper portions, independently review the record, and consider only that which is admissible. *See New York v. Solvent Chem. Co.,* 218 F.Supp.2d 319, 331 (W.D.N.Y.2002); *Gasser v. Infanti Intern Inc.,* No. 03 CV 6413(ILG), 2008 WL 2876531, at *7 (E.D.N.Y. July 23, 2008); *Russo v. Estee Lauder Corp.,* 856 F.Supp.2d. 437, 443 (E.D.N.Y.2012); *Rus, Inc. v. Bay Indus., Inc.,* 322 F.Supp.2d 302, 307 (S.D.N.Y.2003). Where declarations have been stricken, they have "more resembled an adversarial memorandum than a **bona fide affidavit**," an **affidavit** "riddled with inadmissible" material. *Hollander v. Am. Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir.1999); *see also Degelman Indus., Ltd. v. Pro–Tech Welding and Fabrication, Inc.,* No. 06–CV–6346, 2011 WL 6754053 (W.D.N.Y. May 31, 2011).

### 2. Analysis

Here, Plaintiff's declaration in support of her Motion for Partial Summary Judgment is not so riddled with inadmissible material that this Court cannot simply disregard any improper statements or unsupported portions. Plaintiff's declaration contains only 44 paragraphs, most of which Defendant does not dispute. Nor does Defendant take issue with 11 of the 15 exhibits attached to the declaration, three of which contain the deposition testimony of Southard's treating physicians (Dosluoglu, Lall, and Khan). Further, this Court has not relied on the four exhibits to which Defendant objects, because they are not necessary to resolve Plaintiff's motion. Defendant's Motion to Strike is therefore denied.

### C. Plaintiff's Motion for Partial Summary Judgment

#### 1. Standards of Law

**a. Summary Judgment**

**\*4** Although New York law governs Plaintiff's substantive claims, "federal law governs the burdens that the parties must meet at the summary judgment stage." *Zeak v. United States,* No. 11 Civ. 4253(KPF), 2014 WL 5324319, *8 (S.D.N.Y. Oct.20, 2014). "The respective burdens that the parties bear in a summary judgment motion are procedural rather than substantive and are thus subject to federal rather than state law." *Doona v. OneSource Holdings, Inc.,* 680 F.Supp.2d 394, 396 (E.D.N.Y.2010).

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the exacting burden of establishing the absence of any genuine issue of material fact. *FDIC v. Great Am. Ins. Co.* 607 F.3d 288, 292 (2d Cir.2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "The party moving for summary judgment must show the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn a moving party cannot obtain a summary judgment." *Maple Grove Corp. v. Colony Ins. Co.,* No. 10–CV–942S(F), 2012 WL 4049618, at *3 (W.D.N.Y. Aug.15, 2012) (citing *Celotex,* 477 U.S. at 322); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In deciding whether to grant summary judgment "the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party." *Virgil v. Darlak,* No. 10–CV–6479P, 2013 WL 4015368, *3 (W.D.N.Y. Aug.6, 2013) (citing *Anderson,* 477 U.S. at 248–49); *see also Coach Leatherware Co. v. Ann Taylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). "A fact is 'material' only if it has some effect on the outcome of the suit." *Id.* "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.; see also Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 97 (2d Cir.2000). As articulated by the Second Circuit:

[T]he trial court's task at the summary judgment stage

is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined to issue-finding; it does not extend to issue-resolution and only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." *Gallo v. Prudential Residential Serv. Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994).

After a "party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the non-moving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Maple Grove,* 2012 WL 4049618, at *4 (citing *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995)).

### b. FTCA

**\*5** The FTCA authorizes "claims against the United States, for money damages for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the FTCA, courts are bound to apply the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Makarova v. United States,* 201 F.3d 110, 114 (2d Cir.2000). This Court will therefore apply New York Law to Plaintiff's claims, because it is undisputed that Southard's injury and death occurred in New York.

### c. New York Wrongful Death and Medical Malpractice

Section 5–4.1 of the New York Estates Powers and Trusts Law "provides that a personal representative of a decedent may maintain a wrongful death action provided the defendant would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." *Lamarca v. United States,* 31 F.Supp.2d 110, 124 (internal quotations omitted). This means "that no action may be maintained by the representative unless the decedent, at the time of his death, could have maintained an action for the underlying tort." *Id.* (quoting *Dundon v. United States,* 559 F.Supp. 469, 475–76 (E.D.N.Y.1983)). When a wrongful death action is premised on a defendant's alleged medical malpractice, the body of law surrounding medical malpractice and its attendant conclusions applies to the claim of wrongful death. *See Matos v. B. Khan,* 991, N.Y.S.2d 83 (2014); *see also Roques v. H. Noble, M.D.,* 73 A.D.3d 204, 899 N.Y.S.2d 193 (2010).

To establish a claim of "medical malpractice under New York law, a plaintiff, must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Milano by Milano v. Freed,* 64 F.3d 91, 95 (2d Cir.1995) (citing *Arkin v. Gittleson,* 32 F.3d 658, 664 (2d Cir.1994) (citing New York cases)). A plaintiff must prove the claim by a preponderance of the credible evidence. *Ingersoll v. Liberty Bank of Buffalo,* 278 N.Y. 1,7,14, 14 N.E.2d 828 (1938).

To prove a breach occurred under the first prong, "the plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards." *Sitts v. United States,* 811 F.2d 736, 739 (2d Cir.1987). New York requires physicians to possess "the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he practices," "to exercise ordinary and reasonable care," *id.,* not "extraordinary knowledge and ability that belongs to a few doctors of exceptional ability." *Perez v. United States,* 85 F.Supp.2d 220, 221 (S.D.N.Y.1999). Even those physicians that comply with accepted standards of medical practice are "not required to achieve success in every case ." *Schrempf v. State,* 66 N.Y.2d 289, 295, 496 N.Y.S.2d 973, 487 N.E.2d 883 (1985). Indeed, the "mere fact that a medical procedure was unsuccessful, or had an unfortunate effect, will not support a claim that negligence had occurred." *Jimerson v. United States,* No. 99–CV–0954 (SR), 2003 WL 251950, at *1 (quoting *Perez,* 85 F.Supp.2d at 227); *see Nestorowich v. Ricotta,* 97 N.Y.2d 393, 398, 740 N.Y.S.2d 668, 767 N.E.2d 125 (2002) ("Not every instance of failed treatment ... may be attributed to a doctor's failure to exercise due care .")

**\*6** New York law also provides that "except as to matters within the ordinary experience and knowledge of laymen ... expert medical opinion evidence is required" to make out both of the elements of a medical-malpractice claim. *Milano,* 64 F.3d at 91 (quoting *Fiore v. Galang,* 64 N.Y.2d 999, 1001, 489 N.Y.S.2d 47, 478 N.E.2d 188 (1985)); *see Kerker v. Hurwitz,* 163 A.D.2d 859, 558 N.Y.S.2d 388, 390 (1990). "The requirement that the

Coolidge v. U.S., Not Reported in F.Supp.3d (2015)

plaintiff introduce expert medical testimony is imposed in part because without expert assistance a jury will often have no understanding of what constitutes reasonable behavior in a complex and technical profession such as medicine." *Sitts,* 811 F.2d at 740 (internal quotations omitted).

New York cases not requiring expert medical opinion include "clear and obvious" deviations from accepted standards of medical practice, such as "where a dentist has pulled the wrong tooth," "an unexplained injury has occurred to a part of the body remote from the site of the surgery," or "where there is injury to a part of the body not within the operative field." *Id.* (internal quotation marks and citations omitted). Where a medical-malpractice case is not "factually simple," expert testimony is indeed required. *Kambat v. St. Francis Hosp.,* 89 N.Y.2d 489, 496, 655 N.Y.S.2d 844, 678 N.E.2d 456 (1997); *see also States v. Lourdes Hosp.,* 100 N.Y.2d 208, 762 N.Y.S.2d 1, 792 N.E.2d 151 (2003). "The medical malpractice case in which no expert medical testimony is required is "rare." *Virgil,* 2013 WL 4015368, at *8 (citing *Sitts,* 811 F.2d at 740) (internal quotations omitted).

#### d. *Res Ipsa Loquitur*
Res ipsa loquitur, an evidentiary doctrine "of ancient origin, derives from the understanding that some events ordinarily do not occur in the absence of negligence." *Id.* at 211 (internal citations omitted). The doctrine allows for the inference of negligence and may be relied upon where direct evidence is lacking to prove the claim or when "the actual or specific cause of an accident is unknown." *James v. Wormuth,* 21 N.Y.3d 540, 546, 974 N.Y.S.2d 308, 997 N.E.2d 133 (2013) (quoting *Kambat,* 89 N.Y.2d at 494, 655 N.Y.S.2d 844, 678 N.E.2d 456).

To establish a prima facie case of negligence under *res ipsa loquitur,* a "plaintiff must establish three elements: (1) the event must be of a kind that ordinarily does not occur in the absence of negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Id.* (internal quotations omitted). In a medical-malpractice case that is not factually simple and requires expert testimony, expert opinion "may be properly used" to satisfy "the first of the three required elements." *States,* 100 N.Y.2d at 212, 213, 762 N.Y.S.2d 1, 792 N.E.2d 151. ("As advantageous as the *res ipsa loquitur* inference is for a plaintiff unable to adduce direct evidence of negligence, application of the doctrine does not relieve a plaintiff of the burden of proof.") Expert testimony is necessary to help "bridge the gap" between the common knowledge of a jury "which does not encompass the specialized knowledge and experience necessary to reach a conclusion that the occurrence would not normally take place in the absence of negligence," and the knowledge of a qualified expert, which does. *Id.* at 212, 762 N.Y.S.2d 1, 792 N.E.2d 151. "New York courts apply *res ipsa loquitur* sparingly [to medical-malpractice claims] because much of the medical treatment rendered to patients involves inherent risks which, even with adherence to the appropriate standard of care, cannot be eliminated." *Kennedy v. New York Presbyterian Hosp.,* No. 09 Civ. 6256(RMB), 2011 WL 2847839, at *3 (S.D.N.Y. July 6, 2011) (internal quotations omitted).

#### e. Treating Physicians as Expert Witnesses
*7 It is well settled that under Rule 26(a)(2)(B) of the FRCP, "a treating physician can provide expert testimony in a deposition or at trial without having submitted a written report." *Spencer v. Int'l Shoppes, Inc.,* No. CV 06–2637(AKT), 2011 WL 4383046, at *2 (E.D.N.Y. Sept.20, 2011); *see Franz v. New England Disposal Techs, Inc.,* No. 10–CV–201A (Sr), 2011 WL 5443856 (W.D.N.Y. Nov.9, 2011). A review of Second Circuit jurisprudence indeed illustrates that "a treating physician fits the definition of an expert who may give opinion testimony under Federal Rule of Evidence 702, but ... need not be explicitly designated as an expert witness under the Federal Rules of Civil Procedure [Rule 26]." *Barack v. Am. Honda Motor Co., Inc.,* 293 F.R.D. 106, 107 (D.Conn.2013); *Brusso v. Imbeault,* 699 F.Supp.2d 567, 578–579 (W.D.N.Y.2010) (A treating physician may offer expert opinion testimony without having submitted a written report under Rule 26 if the physician is not otherwise a "witness retained or specially employed to provide expert testimony.")

But "without properly declaring a treating physician as an expert witness, the physician's testimony is limited to certain parameters." *Motta v. First Unum Life Ins. Co.,* No. CV 09–3674(JS)(AKT), 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011). "[A] treating physician ... who has not complied with the reporting requirement of Rule 26(a)(2)(B) ... should not be permitted to render opinions outside the course of treatment and beyond a reasonable reading of the medical records." *Lamere v. N.Y. State Office for the Aging,* 223 F.R.D. 85, 89 (N.D.N.Y.2004). "A treating physician who was not designated as an expert witness and failed to prepare the necessary expert

report is prohibited from testifying 'concerning opinions not gleaned from his own diagnosis and treatment of the plaintiff.' " *Barack,* 293 F.R.D. at 109 (quoting *Franz,* 2011 WL 5443856, at \*3). Without a report, a treating physician can testify from "the physician's personal knowledge of the examination, diagnosis, and treatment of a patient," *Brundidge v. City of Buffalo,* 79 F.Supp.2d 219, 224 (W.D.N.Y.1999), "not from information acquired from outside sources ." *Mangla v. Univ. of Rochester,* 168 F.R.D. 137, 139 (W.D.N.Y.1996); *see also Rafferty v. Erhard,* No. 09CV1019, 2012 WL 2577473 (W.D.N.Y. July 3, 2012).

Courts in this Circuit have regularly held that "treating physicians may testify as to opinions formed during their treatment ... without the obligation to submit an expert report." *Williams v. Regus Mgmt. Group,* No. 10 Civ. 8987, 2012 WL 1711378, at \*3 (S.D.N.Y. May 11, 2012) (quoting *Manganiello v. Agostini,* 07–CV–3644 (HB), 2008 WL 5159776, at \*12 (S.D.N.Y. Dec. 9, 2008)) (citing cases); *see Motta,* 2011 WL 4374544, at \*3 (Treating physicians, who have not submitted expert reports, "cannot be limited to solely factual testimony.") Their testimony may include opinions formed during treatment in several areas, including "causation, severity, disability, permanency and future impairments," *id.,* "diagnosis" and "prognosis," *Spencer,* 2011 WL 4383046, at \*4, as well as whether a breach of protocol occurred during their patient's course of treatment. *McFarland v. United States,* No. 12–CV–5162 (SJF)(SIL), 2014 WL 6389589, at \*6 (E.D.N.Y. Nov. 14, 2014) (in granting summary judgment in a medical-malpractice case requiring expert opinion, court relied on deposition testimony of treating physician concerning whether a "deviation from the standard of care [occurred] during plaintiff's treatment," where treating physician did not submit an expert report).

\*8 A treating physician may indeed render "expert opinion testimony ... without submitting a detailed report," as required from other experts, under Rule 26, but the testimony is limited to the scope of "information ... acquired in his role as a treating physician." *Smolowitz v. Sherwin–Williams Co.,* No. 02 Civ. 5940, 2008 WL 4862981, at \*4 (E.D.N.Y. Nov.10, 2008); *see Romanelli v. Long Island R.R. Co.,* 898 F.Supp.2d 626 (S.D.N.Y.2012); *see also Kaufman v. Columbia Mem'l Hosp.,* No. 1:11–CV–667 (MAD/CFH), 2014 WL 3888229 (N.D.N.Y. Aug.7, 2014). Where a "physician's testimony relies upon 'scientific, technical, or other specialized knowledge,' or facts and evidence outside the scope of treatment, the testimony is governed by Federal Rule of Evidence 702, requiring expert disclosure under Federal Rule of Civil Procedure 26." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,* Docket No. 21–mc–102, Nos. 09–cv–00680, 06–cv–5285, 06–cv–1521, 07–cv–11291, 06–cv–1520, 2014 WL 5757713, at \*4 (S.D.N.Y. Nov.5, 2014) (quoting *Lamere,* 2004 WL 1592669, at \*2).

**2. Analysis**

**a. A genuine issue of material fact exists as to whether occlusion of Southard's renal arteries occurred as a result of operator error during the EVAR procedure.**

This case involves a complicated medical procedure that called for the repair of Southard's abdominal aortic aneurysm by placing a stent graft within three millimeters of Southard's lowest renal artery. The medical procedure is not of the type that a lay trier of fact could reasonably be expected, without assistance, to know "what the accepted standards of practice were and that the defendant deviated from those standards." *See Sitts,* 811 F.2d at 739–740 (internal quotations omitted). Expert medical testimony is therefore necessary to support Plaintiff's medical-malpractice claim. *States,* 100 N.Y.2d at 210, 762 N.Y.S.2d 1, 792 N.E.2d 151 (2003) (quoting *Kambat,* 89 N.Y.2d at 496, 655 N.Y.S.2d 844, 678 N.E.2d 456) (noting that in only a "narrow category of simple medical malpractice cases" is expert testimony unnecessary).

To satisfy her burden, Plaintiff has submitted the deposition testimony of Southard's three treating physicians, including Dr. Khan, who actually deployed the Zenith Stent Graft during Southard's EVAR procedure. Plaintiff seeks to use the treating physicians' deposition testimony to establish that coverage of Southard's renal arteries during the EVAR constituted a deviation from EVAR standards, and to establish causation, without having declared the doctors as experts or having submitted written reports from them. While this Court finds that the treating physicians' testimony arises out of their treatment of Southard and is therefore admissible, it nonetheless raises genuine issues of material fact regarding causation and whether a breach of standards occurred during Southard's EVAR procedure, specifically whether operator error caused the coverage of Southard's renal arteries.

Defendant does not dispute that Southard's renal arteries were occluded or blocked by the Zenith Stent Graft during the EVAR procedure or that Dr. Khan agreed with

Coolidge v. U.S., Not Reported in F.Supp.3d (2015)

Plaintiff's attorney at his deposition that "coverage of both of the renal arteries ... constitute[d] a deviation from good and accepted medical practice" and was not "an appropriate thing to happen" during Southard's EVAR procedure. (Docket No. 33–2 at 44; Docket No. 23–2 at 131; Docket No. 27 at 2). This testimony, however, fails to prove that Defendant breached EVAR standards or the standards of care in the community during Southard's procedure. The issue is not whether the EVAR procedure resulted in an "unfortunate effect," but whether the "unfortunate effect" the coverage of Southard's renal arteries by the Zenith Stent Graft during Southard's EVAR surgery occurred as a *result* of a breach of standards of care in the community for that procedure or in this case, operator error, as Plaintiff purports. *Jimerson,* 2003 WL 251950, at *1.

*9 The record reveals that all three of Southard's treating physicians opined on the cause of the Zenith Stent Graft's occlusion of Southard's renal arteries during the EVAR operation. Although Dr. Lall testified that "operator error was perhaps [the] number one" reason why the Zenith Stent Graft ended up in the wrong spot on Southard's anatomy (Docket No. 23–2 at 181), all three physicians testified that it may have moved for other reasons. Dr. Lall testified that the "device itself" may have "jump[ed] forward" because of "torque energy" during deployment. (Docket No. 39–1 at 12). Dr. Dosluoglu testified that "friction" during "insertion" may also have "moved the [Zenith Stent] [G]raft up after correct deployment." (Docket No. 39–1 at 3, 5). Dr. Khan opined that "during the deployment the [Zenith Stent] [G]raft itself moved or got pushed by aortic pulsations." (Docket No. 33–2 at 48). Based on this testimony, a genuine issue of material fact therefore exists concerning whether the occlusion of Southard's renal arteries occured as a result of operator error during the EVAR procedure. Summary judgment is therefore precluded.

**b. A genuine issue of material fact exists concerning whether the failure to perform a confirming angiogram deviated from the standard of care in the community.**

Plaintiff argues that the "Defendant was negligent not only because Mr. Southard's renal arteries were both covered, but also because the stent was deployed without first checking its position through angiogram." (Docket No. 41 at 2). Plaintiff claims that a "confirming angiogram ... would have caught the mal-positioning of the Zenith stent" before its final deployment. (Docket No. 41 at 3). In his testimony, Dr. Khan described his plan for the procedure:

My plan was to do an angiogram in magnified views and in angles so that I can identify in the best possible way the origins of each renal artery, mark them on the screen, and then once I'm ready to go in with the device and it's in position, prior to deployment of the device or start of deployment of the device, check *another angiogram* to make sure the marks on the screen are exactly where I wanted them to be, and then that's followed by deployment of the device.

(Docket No. 23–2 at 125, (emphasis added)). Dr. Lall testified that "another angiogram" before or at the start of deployment of the Zenith Stent Graft was not conducted during Southard's EVAR procedure. (Docket No. 23–2 at 164.) Both Drs. Khan and Lall, however, testified that they did not deviate from protocol during Southard's EVAR procedure.

When asked how Southard's renal arteries were inadvertently covered, during his deposition, Dr. Khan replied: "[A]ll the steps that we take into account were taken into account and still this thing happened of his renal artery ... coverage." (Docket No. 33–2 at 45). When asked: "[T]o what did you attribute the inadvertent coverage of the renal arteries?" Dr. Khan replied: "Quite honestly, never figured it out, like what exactly happened, like why it happened, because ... we did everything the way it was supposed to do, and we did it, and still it happened. So I don't know what actually went wrong." (Docket No. 33–2 at 47).

*10 Dr. Lall was also questioned regarding whether Dr. Khan followed protocol during Southard's EVAR procedure:

Q. Was there any time during the procedure that you felt that you had to alter Dr. Kahn's procedure?

A. No.

Q. Okay. Any time where you felt during the procedure that you needed to correct something that he was going to do?

A. Not until after everything was done and we realized what the problem was.

Q. As far as you were concerned, he hadn't done anything wrong from your observation ... during the surgery until you realized that the renal arteries had been covered?

A. Correct.

(Docket No. 23–2 at 174).

Coolidge v. U.S., Not Reported in F.Supp.3d (2015)

Treating physicians who have not submitted written reports pursuant to Rule 26 can provide expert opinion testimony regarding their care and treatment of the plaintiff, including whether they followed their own surgical protocols. On this point, Southard's treating physicians present differing testimony regarding whether they deviated from their EVAR protocol. Dr. Khan testified that conducting a confirming angiogram was his plan; Dr. Lall testified that a confirming angiogram was not performed. But both Drs. Lall and Khan testified that they followed their protocols during Southard's EVAR.

Nonetheless, Plaintiff must do more than establish a breach of the EVAR protocols. She must establish a breach of the standards of care in the community. Whether accepted standards of care in the community require performance of a confirming angiogram during Southard's EVAR procedure is an issue that requires expert testimony. As discussed above, the undisclosed treating physicians cannot offer this expert testimony because their testimony is limited to their treatment of Southard and opinions arising out of and related to that treatment. In the absence of expert testimony concerning the standards of care in the community, and whether the treating physicians violated those standards, summary judgment in Plaintiff's favor cannot be granted.[2]

#### c. Plaintiff is not entitled to summary judgment under a *res ipsa loquitur* theory.

Plaintiff contends that *res ipsa loquitur* applies to her medical-malpractice claim. Plaintiff lacks direct evidence to support her claim, and the deposition testimony suggests that the cause of the Zenith Stent Graft's coverage of Southard's renal arteries during the EVAR is ultimately "unknown." *James,* 21 N.Y.3d at 546, 974 N.Y.S.2d 308, 997 N.E.2d 133.

As discussed above, however, material issues of fact exist regarding whether the events that led to Southard's injuries and death could occur in the absence of negligence. *See id.* Moreover, Plaintiff has failed, at this point, to present expert testimony concerning the standards of care in the community and whether the treating physicians breached those standards, which will be necessary for Plaintiff to prove that Southard's injuries could not have occurred in the absence of negligence. *Cf. Morejon v. Rais Const. Co.,* 7 N.Y.3d 203, 208, 212, 818 N.Y.S.2d 792, 851 N.E.2d 1143 (2006) ("[O]nly in the rarest of *res ipsa loquitur* cases may a plaintiff win summary judgment," namely a case where there are "no facts ... left for determination" and "the inference of defendant's negligence is inescapable.")

**\*11** Accordingly, Plaintiff has not demonstrated her entitlement to summary judgment on this theory.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion to Strike are denied.

### V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 23) is DENIED.

FURTHER, that Defendant's Motion to Strike (Docket No. 25) is DENIED.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 5714237

Footnotes

1    The facts below are drawn from the uncontested portions of Plaintiff's Rule 56 Statement of Uncontested Facts (Docket No. 23–3), Defendant's Response to Plaintiff's Statement of Uncontested Facts (Document 28), the Declaration of Anne B. Rimmler (Docket No. 23–1), the Declaration of Mary K. Roach (Docket No. 26), as well as deposition testimony contained in the following exhibits: Exhibits I, J, L (Docket No. 23–2); Exhibit F (Docket No. 33–1); Exhibits G, H (Docket No. 33–2).

Coolidge v. U.S., Not Reported in F.Supp.3d (2015)

2    This Court notes that the expert disclosure deadlines in the case-management order have been stayed pending resolution of this motion. Accordingly, Plaintiff still has the opportunity to retain and disclose relevant experts. *See* Docket No. 42.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

# *EXHIBIT D*

**2025 WL 2778736**
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Odilon S. **CELESTIN**, Widmir Romelien, Goldie Lamothe-Alexandre, Vincent Marazita, Jeannette Valeus, Guetty Felin, Gorettie St. Vil, Marie Lucie St. Vil, Herve Cohen, and On Behalf of All Others Similarly Situated, Plaintiffs,
v.
Michel Joseph **MARTELLY**, Jocelerme Privert, Jovenel Moise, The Western Union Company, d/b/a Western Union Holdings, Inc., Western Union Financial Services, Inc., and Through Other Subsidiaries and Affiliates, MoneyGram International, Inc. and MoneyGram Payment System, Inc. (Collectively MGI), Caribbean Air Mail, Inc., d/b/a CAM, Unibank, S.A, Unitransfer USA, Inc., Unigestion Holding, S.A., d/b/a Digicel Haiti, Natcom S.A., and The Government of Haiti, Defendants.



18-CV-7340 (LDH)(PK)
|
Signed September 30, 2025

**Attorneys and Law Firms**

Marcel Pierre Denis, Denis Law Group, PLLC, Brooklyn, NY, Rodney R. Austin, Rodney R. Austin PLLC, Fresh Meadows, NY, for Plaintiff Odilon S. Celestin.

Marcel Pierre Denis, Denis Law Group, PLLC, Brooklyn, NY, for Plaintiffs Widmir Romelien, Goldie Lamothe-Alexandre, Vincent Marazita.

Jeannette Valeus, Pro Se.

Guetty Felin, Pro Se.

Gorettie St. Vil, Pro Se.

Herve Cohen, Pro Se.

Marie Lucie St. Vil, Pro Se.

Bertrand Rolf Madsen, Madsen Law P.A., Tampa, FL, Elizabeth Wolstein, Samuel Lucien Butt, Schlam Stone & Dolan LLP, New York, NY, for Defendants Michel Joseph Martelly, Jocelerme Privert, The Government of Haiti.

Bertrand Rolf Madsen, Madsen Law P.A., Tampa, FL, for Defendant Jovenel Moise.

Stephen H. Nakamura, Andrew R. Peck, Merle, Brown & Nakamura, P.C., New York, NY, for Defendant Caribbean Air Mail, Inc.

Paul D. Turner, Pro Hac Vice, Oliver M. Birman, Pro Hac Vice, Perlman, Bajandas, Yevoli & Albright, P.L., Fort Lauderdale, FL, Benjamin L. Reiss, Pro Hac Vice, Perlman, Bajandas, Yevoli & Albright, Coral Gables, FL, Kieran M. Corcoran, Stinson LLP, New York, NY, for Defendants Unitransfer USA, Inc., Unibank, S.A.

Macx L. Jean-Louis, New York, NY, for Defendant Natcom S.A.

James H.R. Windels, Davis Polk & Wardwell LLP, Brooklyn, NY, James Irving McClammy, Marie Killmond, Davis Polk & Wardwell LLP, New York, NY, for Defendant Unigestion Holding, S.A.

Brian Laurence Bank, David Stephen Wilck, Michelle Ann Klein, Rivkin Radler LLP, Uniondale, NY, for Defendants MoneyGram International, Inc., MoneyGram Payment System, Inc., (collectively MGI).

**DECISION AND ORDER**

Peggy Kuo, United States Magistrate Judge:

*1 On September 30, 2024, the Court granted two motions for sanctions filed by Unitransfer USA, Inc. ("Unitransfer"), Unibank S.A. ("Unibank") (together with Unitransfer, the "Uni Defendants") against Plaintiffs Odilon S. Celestin, Widmir Romelien, Marie Lucie St Vil, and Gorettie St Vil (collectively, "Plaintiffs") ("Sanctions Decision," Dkt. 193) and directed the Uni Defendants to file supplemental briefing on the appropriate sanctions to be imposed. The Court also granted Plaintiffs leave to file supplemental briefing regarding any financial constraints on paying a monetary sanction. (*Id.* at 17.)

In their supplemental brief, the Uni Defendants request that the Court (1) award $1,358,180.97 in attorneys' fees and $1,153.60 in costs against Marcel Denis, Esq. and Rodney Austin, Esq. ("Plaintiffs' Counsel"), (2) impose punitive sanctions of $5,000 against each Plaintiff and $25,000 against each Plaintiffs' Counsel, to be paid to the Court, and (3) require Plaintiffs and Plaintiffs' Counsel to make a public admission that their claims against the Uni Defendants lacked merit. ("Supplemental Brief," Dkt. 195.)

Plaintiffs filed a "Supplemental Brief in Support of Their Objection to the Uni Defendants' Motion for Sanction" ("Pl. Opp.," Dkt. 196), supported by the Declarations of Plaintiffs Celestin and Marie Lucie St Vil. ("Celestin Declaration," Dkt. 196-1; "St Vil Declaration," Dkt. 196-2) (collectively, the "Declarations.") They did not provide any information regarding their ability to pay a monetary sanction. Rather, they "request that the Court reconsider its grant of sanction against the Plaintiffs." (Celestin Declaration ¶ 41; *see also* St Vil Declaration ¶ 1.) Accordingly, the Court construes their supplemental brief as a motion for reconsideration of the Sanctions Decision.

The Uni Defendants subsequently moved to strike the Declarations submitted by Plaintiffs, on the grounds that they contain inadmissible hearsay and exceed the scope of the Court's order. ("Motion to Strike," Dkt. 197; *see also* Memorandum of Law in Support of Motion to Strike at 2-5, Dkt. 198.)

For the reasons stated below, the Court denies Plaintiffs' motion for reconsideration, denies the Uni Defendants' Motion to Strike, and imposes a penalty of $5,000.00 on Plaintiffs' Counsel.

## PROCEDURAL BACKGROUND

Plaintiffs, along with former plaintiffs Jeannette Valeus, Guetty Felin, Herve Cohen, Goldie Lamothe-Alexandre, and Vincent Marazita,[1] commenced this action on December 24, 2018, by filing a Complaint against Unitransfer, various individuals and entities associated with the Government of the Republic of Haiti[2] (collectively, the "Government Defendants"), and various corporations[3] (collectively, the "Corporate Defendants"), alleging violations of various federal and state laws, including antitrust and fraud; they also brought a claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (Compl., Dkt. 1.)

*2 Plaintiffs amended the Complaint on January 23, 2019, adding Unibank as a defendant and a new cause of action for conversion. ("First Amended Complaint," Dkt. 15.)

On February 21, 2019, Unitransfer requested a pre-motion conference regarding an anticipated motion to dismiss the First Amended Complaint on *forum non conveniens* grounds (Dkt. 38), and also requested a briefing schedule regarding an anticipated motion for sanctions under Rule 11. (Dkt. 54.) On April 3, 2019, Unibank requested a pre-motion conference regarding an anticipated motion to dismiss for lack of personal jurisdiction. (Dkt. 58.)

The Corporate Defendants likewise filed motions for pre-motion conference regarding their anticipated motions to dismiss on the grounds of, *inter alia, forum non conveniens* and the act of state doctrine. (Dkts. 39, 48, 51.)

The Court directed the Uni Defendants and Government Defendants to file a single, consolidated motion to dismiss on the grounds of *forum non conveniens* and the act of state doctrine. (Apr. 12, 2019 Minute Entry and Order.)

After Plaintiffs filed the Second Amended Complaint ("SAC," Dkt. 62), the Uni Defendants, together with the Corporate Defendants, filed a joint motion to dismiss the Second Amended Complaint on the grounds of *forum non conveniens* and the act of state doctrine and reserved their right to dismiss Plaintiffs' claims under Rule 12(b)(6).[4] (Dkt. 64.)

On March 31, 2020, the Court dismissed the Second Amended Complaint in its entirety as to the Uni Defendants and the Corporate Defendants. ("First Dismissal Order," Dkt. 73.) Plaintiffs appealed the First Dismissal Order on April 28, 2020 (Dkt. 75), but withdrew the appeal on May 13, 2020. (Dkt. 78.)

The Government Defendants filed an omnibus motion to dismiss the Second Amended Complaint on July 7, 2020. (Dkt. 86.) On March 10, 2021, the Court vacated the First Dismissal Order and entered orders granting the motions to dismiss filed by the Uni Defendants, Corporate Defendants, and Government Defendants. ("Corrected Dismissal Order," Dkt. 94; Dkt. 95; *see also* Judgment, Dkt. 96.) Plaintiffs appealed both orders of dismissal.

On March 31, 2022, the Second Circuit reversed, vacated the Judgment, and remanded for further proceedings on the ground that the Court misapplied the act of state doctrine. (Dkt. 98.)

After Plaintiffs filed the Third Amended Complaint ("TAC," Dkt. 118), Unibank filed a motion to dismiss for lack of personal jurisdiction on December 12, 2022 (Unibank's Motion to Dismiss TAC, Dkt. 145), and Defendants filed an omnibus motion to dismiss for failure to state a claim and on *forum non conveniens* grounds on January 4, 2023. (Joint Motion to Dismiss TAC, Dkt. 148.)

On September 29, 2023, the Court granted the motions to dismiss as to the Uni Defendants and dismissed all claims against them. ("TAC Dismissal Order," Dkt. 159.)

The Uni Defendants then each filed motions for sanctions pursuant to Rule 11 (Dkts. 162, 167) (collectively, the "First Motions for Sanctions"), followed by a joint motion for sanctions ("Second Motion for Sanctions," Dkt. 175), and another joint motion for additional sanctions. ("Third Motion for Sanctions," Dkt. 186).

**\*3** In its Sanctions Decision, the Court granted the First and Third Motions for Sanctions (collectively, "Motions for Sanctions") and denied the Second Motion for Sanctions. (Dkt. 193.)

## DISCUSSION

### I. Plaintiffs' Motion for Reconsideration

A party seeking reconsideration must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). The "standard for granting a motion for reconsideration is

'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.' " *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 279 (2024). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' ...." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Similarly, a party may not raise new arguments on a motion for reconsideration. *Alvarado v. City of New York*, 482 F. Supp. 2d 341, 344 n.2 (S.D.N.Y. 2007).

In their motion for reconsideration, Plaintiffs repeat two arguments that they raised in opposition to the Motions for Sanctions and which the Court already considered and rejected. (*See* Sanctions Decision at 8-14.) Specifically, they argue that the Motions for Sanctions should be denied because they performed a reasonable pre-suit investigation (Pl. Opp. at 2-4), and they had a reasonable basis for their claims. (*Id.* at 4.) As before, Plaintiffs contend that their pre-suit investigation did not reveal sufficient information because no one was willing to provide any information about the Uni Defendants. (*Compare* Declarations *with* Opposition to First Motions for Sanctions, Dkt. 171.) Plaintiffs point to no controlling decision or facts that the Court overlooked. The Court, thus, rejects these arguments for the same reasons as stated in the Sanctions Decision. *See In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 332 (E.D.N.Y. 2013) ("Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion.").

Additionally, Plaintiffs make two new arguments which they failed to raise previously, specifically, that the FDUTPA claim was not frivolous because Unibank is not federally regulated (Pl. Opp. at 6-7), and that there is no continuing duty to correct pleadings once a matter has been dismissed (*id.* at 4-6). Because these arguments were not presented to the Court for consideration in the Motions for Sanctions, they will not be considered on the motion for reconsideration.[5] (*See* Oppositions to Motions for Sanctions, Dkts. 171, 182, 191.) *See Alvarado*, 482 F. Supp. 2d at 344 n.2.

**\*4** Accordingly, Plaintiffs' motion for reconsideration is denied.

Celestin v. Martelly, Slip Copy (2025)

## II. Uni Defendants' Motion to Strike the Declarations

The Uni Defendants request that the Court exercise its inherent authority to strike the Declarations Plaintiffs submitted in support of their motion for reconsideration on the grounds that they contain conclusory allegations and inadmissible hearsay, and that they exceed the scope of the leave granted by the Court in the Sanctions Decision. (Mem. at 2-5.)

The Court may use its inherent authority to strike the Declarations if it determines that they were "abusive or otherwise improper under the circumstances." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-CV-2669 (LAP), 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) ("It is well-established that a court has the 'inherent authority' to manage the cases before it," including the "ability 'to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances.' ") (citation omitted). "[M]otions to strike, while not favored, may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant." *Shahzad v. Meyers*, No. 95-CV-6196 (DAB), 1997 WL 47817, at *13 (S.D.N.Y. Feb. 6, 1997).

While the Uni Defendants are correct that the Court only granted Plaintiffs leave to file supplemental briefing regarding their ability to pay monetary sanctions, Plaintiffs were not precluded from asking the Court to reconsider a ruling. The Declarations describe the efforts Plaintiffs made to conduct a pre-suit investigation of their claims against the Uni Defendants and are, thus, not wholly unrelated to the motion for reconsideration.

Therefore, while the Court denies the motion for reconsideration, it does not find Plaintiffs' filing of the Declarations to be abusive, or that they filed the Declarations for improper purposes. *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2025 WL 2298247, at *2 (S.D.N.Y. Aug. 8, 2025) (noting that documents other than pleadings may be stricken when "filed for improper purposes").

Accordingly, the Uni Defendants' Motion to Strike is denied.

## III. Appropriate Sanctions to Be Imposed

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

"The court has significant discretion in determining what sanctions, if any, should be imposed for a violation ...." Fed. R. Civ. P. 11 advisory committee note to 1993 amendment ("Rule 11 Advisory Committee Notes"); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 326 (2d Cir. 2004) (citing approvingly). "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Rule 11 Advisory Committee Notes. "However, under unusual circumstances ... deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." *Id.*; *see also Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 4-CV-3531 (LTS)(SLC), 2020 WL 3056450, at *10 (S.D.N.Y. June 9, 2020).

### A. Attorneys' Fees

*5 The Uni Defendants request that Plaintiffs' Counsel be ordered to pay $1,358,705.60 in attorneys' fees as sanctions pursuant to Rule 11. (Supplemental Brief at 10-18.)

Although Rule 11 permits an award of reasonable attorneys' fees, Fed. R. Civ. P. 11(c)(4), "Rule 11 is not a fee-shifting mechanism and does not create an entitlement to attorney's fees." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004); *see also Merex A.G. v. Fairchild Weston Sys., Inc.*, No. 85-CV-6596 (MJL), 1996 WL 227826, at *10 (S.D.N.Y. May 3, 1996) ("Rule 11 does not compel the shifting of fees as a sanction, nor is full compensation a rigid requirement in every case."); *In re Sun Prop. Consultants, Inc.*, No. 8-16-72267 (LAS), 2021 WL 3375831, at *17 (Bankr. E.D.N.Y. Aug. 2, 2021) ("By its own terms, Rule 11 does not require that attorney's fees be awarded—it only requires that the sanction be appropriate.").

Courts often decline to award attorneys' fees under Rule 11 absent a showing that the sanctioned person violated Rule 11(b)(1) by filing papers for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1);

see, e.g., *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 437 (S.D.N.Y. 1995) (finding that award of attorneys' fees was unnecessary where plaintiff's counsel did not initiate litigation for improper purpose but only filed papers that "lacked any basis in existing law," and ordering plaintiff's counsel to pay $250 to court); *McLoughlin v. Altman*, No. 92-CV-8106 (KMW), 1995 WL 640770, at *4 (S.D.N.Y. Oct. 31, 1995) (noting that Rule 11 sanctions should ordinarily be paid into court as penalty but finding "unusual circumstances" that warranted award of attorneys' fees because counsel, *inter alia*, conducted litigation in bad faith and for improper purpose of delaying related state court action). *But see (RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, No. 21-CV-11096 (LJL), 2022 WL 4234552, at *5 (S.D.N.Y. Sep. 14, 2022) (awarding attorneys' fees under Rule 11 despite finding that "the evidence does not rise to the level that convinces the Court that the Amended Complaint was brought in bad faith or was motivated by an improper purpose").

The Uni Defendants did not argue, and the Court did not find, that Plaintiffs' Counsel violated Rule 11(b)(1) by initiating this litigation or filing the TAC for an improper purpose. Rather, the Uni Defendants argued, and the Court found, that Plaintiffs' Counsel violated Rule 11(b)(2)-(3) by asserting claims without any factual or legal basis. (*See* Motions for Sanctions; Sanctions Decision.) Likewise, the Supplemental Brief focuses primarily on the frivolousness of Plaintiffs' claims, in support of the Uni Defendants' argument that attorneys' fees should be awarded. (*See* Supplemental Brief at 10-13.)

" 'Although a frivolous position will often signal an improper purpose,' frivolousness alone does not give rise to a finding of improper purpose, absent something more." *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS)(ST), 2024 WL 1956237, at *3 (E.D.N.Y. Mar. 21, 2024) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 391 (2d Cir. 1985)); *see also In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990) ("The existence of baseless allegations does not alone require a finding of improper purpose [for purposes of Rule 11], because inexperience or incompetence may have caused their inclusion in a pleading, rather than or in addition to willfulness or deliberate choice.").

*6 The Uni Defendants contend that Plaintiffs' Counsel's decision to contact the media and disparage the Uni Defendants in interviews "can be evidence of improper purpose when the claims lack factual and legal support." (Supplemental Brief at 14 n.12). While it is true that Plaintiffs' claim lacked factual and legal support, the Uni

Defendants do not present any proof that Plaintiffs' Counsel initiated contact with the media, or that their interaction with the media was motivated by illegitimate purposes.

The Uni Defendants also assert that they should be awarded attorneys' fees because they had to defend Plaintiffs' groundless claims for over five years. (Supplemental Brief at 13-14.) Although Plaintiffs amended the Complaint three times, the Uni Defendants do not point to any instance in which Plaintiffs' Counsel engaged in dilatory or abusive litigation tactics, nor do they account for Plaintiffs' successful appeal or their and other Defendants' numerous motions for extension of time that extended the duration of this litigation. (*See, e.g.*, Dkts. 14, 24, 30, 36, 45, 77, 79, 82, 132, 136.)

Based on the foregoing, the Court does not find "unusual circumstances" that warrant an award of attorneys' fees. *See* Rule 11 Advisory Committee Notes; *McLoughlin*, 1995 WL 640770, at *4. Accordingly, the Court declines to award the Uni Defendants attorneys' fees under Rule 11.

The Court notes that, even if an award of attorneys' fees were warranted, awarding the full amount sought by the Uni Defendants would vastly exceed what is necessary to deter Plaintiffs' Counsel from engaging in similar conduct. *See* Fed. R. Civ. P. 11(c)(4) (noting that Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct").

The Uni Defendants seek $1,358,705.60 in attorneys' fees for the 3,070.9 hours they expended between January 2, 2019, and August 27, 2024, *i.e.*, since the inception of this case through the Motions for Sanctions. ("Time Records," Composite Ex. A to Declaration of Oliver Birman, Esq. ("Birman Decl."), Dkt. 194-1.) Although the Time Records span more than 5.5 years, the parties conducted no discovery. *See Winfield v. City of New York*, No. 15-CV-5236 (LTS)(KHP), 2018 WL 1631336, at *4 (S.D.N.Y. Mar. 29, 2018) (noting that discovery is "probably the single greatest source of cost and delay in civil litigation"); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.4 (2d Cir. 2007) (noting that antitrust discovery is particularly onerous). Rather, the parties engaged almost exclusively in motion practice. Specifically, the Uni Defendants filed three motions to dismiss various iterations of the Complaint, two of which were prepared and filed jointly with the other Defendants. (Joint Motion to Dismiss SAC, Dkt. 64[6]; Unibank's Motion to Dismiss TAC, Dkt. 145; Joint Motion to Dismiss TAC, Dkt. 148.[7]) They also filed three motions for sanctions (Dkts. 162, 167, 186), but the motions for

sanctions filed at Docket Nos. 162 and 167, are virtually identical.[8] Regarding Plaintiffs' appeal of the Court orders dismissing the Second Amended Complaint, the Uni Defendants jointly prepared and filed a brief and a supplemental brief with the Corporate Defendants.[9] Considering that the three motions to dismiss, three motions for sanctions, and two appellate briefs that the Uni Defendants drafted—some of which are nearly identical or jointly prepared with the other Defendants—comprise almost all the work they performed, the Court finds that expending more than 3,000 hours in this matter was plainly excessive.

*7 Although the Uni Defendants do not specify the total number of hours attributable to each motion or brief, courts in the Second Circuit "generally find 100 hours to be within the reasonable range for attorneys to expend on work related to a motion for sanctions." *StoneX Grp., Inc. v. Shipman*, No. 23-CV-00613 (JGK)(VF), 2025 WL 1212165, at *6 (S.D.N.Y. Apr. 25, 2025) (collecting cases and finding that expending 595 hours on a motion for sanctions was excessive). Likewise, courts in the Second Circuit generally find that it is excessive to expend more than 100 hours on motions to dismiss or appellate briefs. *See, e.g., China AI Cap. Ltd. v. DLA Piper LLP (US)*, No. 21-CV-10911 (VM)(VF), 2025 WL 2466633, at *8 (S.D.N.Y. May 22, 2025) ("[T]he 142.5 hours expended on the motion to dismiss exceeds the number of hours typically deemed reasonable in this District for work on similar motions."); *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325 (S.D.N.Y. 2003) (finding 123.75 hours expended on a motion to dismiss to be "excessive on its face"); *Rudman v. CHC Grp. Ltd.*, No. 15-CV-3773 (LAK), 2018 WL 3594828, at *4-5 (S.D.N.Y. July 24, 2018) (reducing 210 hours spent on fully briefed motion to dismiss to 105 hours); *Brady v. Wal-Mart Stores, Inc.*, No. 03-CV-3843 (JO), 2010 WL 4392566, at *8 (E.D.N.Y. Oct. 29, 2010) (noting that spending 180 hours "for preparing a single appellate brief is excessive" although counsel "was plainly justified in devoting significant effort to the appellate brief" given the complexity).

Moreover, while the Uni Defendants had to defend Plaintiffs' claims for years, they also argued that the claims against them were groundless from the outset. (*See* Dkt. 38.) The "Court must be mindful of the fact that a concededly frivolous claim should not reasonably require an enormous expenditure of time and effort to refute." *Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*, No. 13-CV-5451 (KBF), 2014 WL 1329234, at *3 (S.D.N.Y. Apr. 1, 2014); *see also Melrose v. Shearson/Am. Exp., Inc.*, 898 F.2d 1209, 1216 (7th Cir. 1990) (noting that it was unreasonable for five attorneys to expend more than 600 hours to oppose summary judgment motion which they claimed was "predominantly frivolous").

The excessiveness of the total hours expended is compounded by the fact that most of the hours were billed at the partner rate,[10] the matter was overstaffed,[11] and the Time Records contain numerous vague and block-billing entries.

The foregoing issues with the Uni Defendants' Time Records demonstrate the excessiveness of the amount they seek in attorneys' fees, further supporting the Court's conclusion that an award of attorneys' fees is not warranted. *See* Fed. R. Civ. P. 11(c)(4).

### B. Penalty to Be Paid into Court

The Uni Defendants seek penalties of $25,000 against each Plaintiffs' Counsel and $5,000 against each Plaintiff, to be paid to the Court as a penalty. (Supplemental Brief at 10.)

Rule 11 applies to both attorneys and represented parties who sign pleadings or other documents, *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991), and they may both be sanctioned "for factual contentions that lack evidentiary support." *Nyitray v. Johnson*, No. 96-CV-6150 (MBM), 1998 WL 67651, at *14 (S.D.N.Y. Feb. 19, 1998) (citing Fed. R. Civ. P. 11(b)(3)), *aff'd sub nom. Nitray v. Johnson*, 166 F.3d 1201 (2d Cir. 1998).

*8 "Because the purpose of imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve the goal." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 465 (S.D.N.Y. 2023) (cleaned up).

The Rule 11 Advisory Committee Notes provide a non-exhaustive list of factors that courts may consider when determining the appropriate amount of sanctions to be imposed:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in

Celestin v. Martelly, Slip Copy (2025)

the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*Id.*

### 1. Penalty to Be Imposed on Plaintiffs' Counsel

The Uni Defendants do not provide any evidence that Plaintiffs' Counsel asserted groundless claims willfully, or that they engaged in similar conduct in other litigation. Moreover, as discussed above, there is no evidence that Plaintiffs' Counsel initiated this litigation for an improper purpose or to injure the Uni Defendants, or that Plaintiffs' Counsel needlessly delayed or increased the cost of litigation. Indeed, the Uni Defendants themselves point to Plaintiffs' Counsel's "limited federal court experience," "lack of significant experience in antitrust matters," and "lack of class action experience" to argue their incompetence. (*See* Uni Defendants' Reply at 2, Dkt. 172.)

Nevertheless, the Court finds that a monetary sanction is necessary to deter Plaintiffs' Counsel from asserting meritless claims in the future, particularly in an area of law outside their expertise, and wasting judicial resources. *See Adams v. New York State Dep't of Educ.*, 855 F. Supp. 2d 205 (S.D.N.Y. 2012) (imposing penalty of $10,000 and $5,000 on plaintiffs' counsel where they reasserted dismissed claims without setting forth new factual or legal bases); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229-30 (E.D.N.Y. 2002) (imposing penalty of $1,000 on plaintiff's counsel for refusing to withdraw claim exposed as frivolous); *Craig v. City of New York*, No. 1:20-CV-02152 (LDH)(PK), 2022 WL 2238451, at *16 (E.D.N.Y. June 22, 2022) (imposing penalty of $500 on counsel after taking into account her "relative inexperience, the minimal evidence that she has engaged in this type of behavior in other cases, and the expectation that this kind of conduct will not be repeated"), *aff'd*, 2025 WL 1604359 (2d Cir. June 6, 2025) (summary order).

Accordingly, the Court finds that a penalty of $5,000.00, to be imposed jointly and severally on Plaintiffs' Counsel and payable to the Clerk of Court, is sufficient to achieve Rule 11's deterrent objective. *Bunnell v. Haghighi*, 183 F. Supp. 3d 364, 371 (E.D.N.Y. 2016) (noting that "where multiple attorneys are responsible for a Rule 11 violation, the court has discretion to hold them jointly and severally liable").

### 2. Penalty to Be Imposed on Plaintiffs Individually

*9 The Uni Defendants' request for imposition of penalties on Plaintiffs is denied. The Declarations that Plaintiffs filed in support of the motion for reconsideration suggest that they conducted at least some pre-suit investigation of their claims against the Uni Defendants even if it was inadequate. *See House v. Gen. Elec. Co.*, No. 23-CV-71 (LDH)(LB), 2025 WL 1309602, at *4 (E.D.N.Y. Apr. 4, 2025) (noting that Rule 11 requires plaintiffs to conduct adequate investigation of their claims before filing complaint). Moreover, the Court finds that Plaintiffs' Counsel, as their attorneys, should have assessed Plaintiffs' claims against the Uni Defendants and prevented such claims from being asserted. As the Second Circuit explained in *Calloway*:

We further believe that when a party has participated in the filing of a paper signed by the attorney or has signed a paper himself but did not realize that such participation or signing was wrongful, then sanctions against the party are also not appropriate. In each of these cases, the attorney, because of professional standards, is held to know of the wrongfulness of the conduct and, because of professional responsibility, should act to prevent it. Where the attorney fails to advise an unwary client of the wrongfulness of such conduct, the burden of sanctions should fall entirely upon the attorney.

*Calloway v. Marvel Entm't Group*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120 (1989); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103 (2d Cir. 2015) (citing *Calloway* approvingly); *Jay Dees, Inc. v. Def. Tech. Sys., Inc.*, No. 05-CV-6954 (TSZ), 2012 WL 13059897, at *7 (S.D.N.Y. Feb. 29, 2012) (same).

Unlike cases in which represented parties were sanctioned for deliberately concealing facts or fabricating documents, *see Jay Dees*, 2012 WL 13059897, at *8, Plaintiffs asserted groundless claims—with the assistance of counsel—which they believed were meritorious. (*See, e.g.*, Celestin Declaration ¶¶ 14-20; St Vil Declaration ¶¶ 30-31.) The Court, therefore, does not find that sanctions are warranted against Plaintiffs pursuant to Rule 11.

*C. Costs*

The Uni Defendants seek $1,153.60 in costs pursuant to 28 U.S.C. § 1920 and Local Civil Rule 54.1, including costs associated with *pro hac vice* admissions, oral argument transcripts, and printing charges. (Supplemental Brief at 17-18.)

Pursuant to Rule 54(d), "prevailing parties" may recover costs, other than attorneys' fees, as enumerated in 28 U.S.C. § 1920. *Soley v. Wasserman*, 639 F. App'x 670, 679 (2d Cir. 2016). The Uni Defendants are not claiming costs as the "prevailing parties" in this action. Rather, they assert that they "should be entitled to reimbursement of their taxable costs incurred" for "the same reasons stated above," *i.e.*, as a sanction based on the frivolousness of Plaintiffs' claims against the Uni Defendants.

The Court finds the penalty of $5,000.00 on Plaintiffs' Counsel to be sufficient deterrence for the reasons stated above. Accordingly, the Uni Defendants' request that they be reimbursed $1,153.60 in costs is denied.

### D. Request for Public Admission that Plaintiffs' claims against the Uni Defendants lacked merit

The Uni Defendants also ask that Plaintiffs and Plaintiffs'

Counsel be sanctioned "in the form of a public admission that these claims lacked merit." (Supplemental Brief at 18.) The Court finds that a "public admission" by Plaintiffs or Plaintiffs' Counsel would serve no purpose, as the Court has already ruled that the claims in the TAC lack merit. (*See* Sanctions Decision.) Accordingly, the request is denied.

## CONCLUSION

*10 Based on the foregoing, the Court imposes a penalty of $5,000.00 on Marcel Denis, Esq. and Rodney Austin, Esq., jointly and severally, and payable to the Clerk of Court. The Court orders them to pay the penalty in full no later than November 1, 2025. The Court denies the Uni Defendants' Motion to Strike and Plaintiffs' motion for reconsideration.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2778736

Footnotes

1    Valeus, Felin, and Cohen withdrew their claims (Notice of Voluntary Dismissal, Dkt. 138), and Lamothe-Alexandre and Marazita are no longer named in the Third Amended Complaint (Dkt. 118).

2    Michel Joseph Martelly, Jocelerme Privert, Jovenel Moise, the Government of the Republic of Haiti, and Natcom S.A.

3    Caribbean Air Mail, Inc., The Western Union Company, and Unigestion Holding, S.A. d/b/a Digicel Haiti.

4    The Government Defendants had not been served at the time, and they did not join the motion to dismiss.

5    Even if these arguments are considered and accepted now, they would not affect the Court's conclusions in the Sanctions Decision.

6    This motion was jointly filed with the Corporate Defendants.

Celestin v. Martelly, Slip Copy (2025)

7    This motion was jointly filed by all Defendants as an omnibus motion to dismiss the Third Amended Complaint.

8    Unibank and Unitransfer each filed these motions separately.

9    *See* Brief for Defendants-Appellees, *Celestin v. Martelly*, No. 20-1412, 2021 WL 2917288 (2d. Cir. July 7, 2021); Supplemental Brief for Defendants-Appellees, *Celestin v. Martelly*, No. 20-1412, 2021 WL 4894932 (2d. Cir. Oct. 18, 2021).

10    By the Court's calculation, 2,284.3 hours—more than 74 percent of the hours billed—were billed by the five partners assigned to this matter. "Courts have reduced the fee percentage requested where, as here, the lodestar value reflects an over-allocation of work to more expensive partners." *In re Platinum and Palladium Commodities Litig.*, No. 10-CV-3617 (WHP), 2015 WL 4560206, at *4 (S.D.N.Y. July 7, 2015).

11    The Uni Defendants assigned 17 attorneys—five of whom are partners—to a case prosecuted by just two attorneys for Plaintiffs. (Birman Decl. at 5-8.) *See Robinson v. New York City Transit Auth.*, No. 19-CV-1404 (AT)(BCM), 2024 WL 4150818, at *14 (S.D.N.Y. Aug. 16, 2024) (assigning 17 attorneys to "complex" case that "involved novel claims" was excessive).

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

# *EXHIBIT E*

Clare v. Clare, Not Reported in Fed. Supp. (2021)

---

2021 WL 6206989
Only the Westlaw citation is currently available.
United States District Court, E.D. Washington.

# Andrea J. CLARE, Individually, Plaintiff,
v.
# Kevin P. CLARE, Individually, Defendant.

No.



4
:
18
-
CV
-
05045
-
SAB

|
Signed 12/08/2021

**Attorneys and Law Firms**

George E. Telquist, Telare Law PLLC, Richland, WA, for Plaintiff.

Jane Elizabeth Brown, William C. Schroeder, William J. Schroeder, KSB Litigation PS, Spokane, WA, for Defendant.

Kevin P. Clare, Pasco, WA, Pro Se.

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Stanley A. Bastian, Chief United States District Judge

*1 Before the Court is Plaintiff's Motion for Partial Summary Judgment on Liability, ECF No. 101, and Motion to Strike, ECF No. 114. The Motions were considered without oral argument. Plaintiff Andrea Clare ("Ms. Clare") is represented by George Telquist.

Defendant Kevin Clare ("Mr. Clare") is representing himself pro se.

Ms. Clare first requests that the Court strike Mr. Clare's declaration in opposition to her Motion for Partial Summary Judgment. The Court finds the declaration is relevant and helpful to adjudication of the pending Motion, and accordingly denies the Motion to Strike. Second, Ms. Clare moves for summary judgment on the issue of Mr. Clare's liability, contending that three concrete acts of Mr. Clare violated the Stored Communications Act (the "SCA"), 18 U.S.C. §§ 2701–2711 (2018). For two of these instances, disputes of material fact preclude summary judgment. With respect to the third, Ms. Clare has failed to demonstrate that the unauthorized access was from a "facility" that provided an "electronic communication service" while the text messages were in "electronic storage," as necessitated by the SCA. Therefore, Ms. Clare failed to meet her burden of showing all essential elements of a SCA claim, and the Motion for Partial Summary Judgment is denied.

**Background**

As the parties are familiar with the procedural history of this action, the Court dispenses with a summary here. The following facts derive from Ms. Clare's Second Amended Complaint, ECF No. 41, and the parties' opposing factual statements regarding the Motion for Partial Summary Judgment. ECF Nos. 101, 102. All facts are construed in the light most favorable to Mr. Clare. Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015) (noting that all reasonable inferences must be drawn in the light most favorable to the non-moving party on summary judgment).

Mr. Clare and Ms. Clare were married for over ten years. Ms. Clare left their joint residence on February 6, 2016 and shortly afterward filed for divorce. During their residency and relationship together, Mr. Clare accessed Ms. Clare's cellular phone without her permission, including her text messages and email. In the present lawsuit, she alleges that Mr. Clare unlawfully accessed her emails and/or text messages on at least three instances, violating the Stored Communications Act.

Ms. Clare is an attorney licensed in the State of Washington. Her law firm's computers and data systems are currently maintained with a private local server that is protected by a firewall. All email accounts and security controls are managed exclusively by Teknologize, an IT

Clare v. Clare, Not Reported in Fed. Supp. (2021)

security and management company. The firm uses Microsoft Exchange for email communications. Ms. Clare and her firm's emails may be accessed by outside devices that temporarily store emails in a cached environment on a device, but they are also regularly downloaded and stored for both security and back up protection onto the firm's private local server. The private local server and email service are paid for by the law firm.

*2 While Ms. Clare slept, Mr. Clare forwarded himself several email messages from Ms. Clare's work email through her iPhone. The emails were forwarded on Wednesday, December 23, 2015 and time stamped beginning at 1:20 a.m. *See* ECF No. 109-1. Mr. and Ms. Clare's respective factual accounts differ on this event. Ms. Clare claims that Mr. Clare could have only accessed her iPhone through use of her thumb as she slept, as Mr. Clare "did not know the passcode." ECF No. 23 at 2 ¶ 4. In contrast, Mr. Clare asserts that he opened Ms. Clare's iPhone "without use of a passcode or thumb print." ECF No. 109 at 2 ¶ 4. He claims that he never accessed "credential protected emails," *id.* at ¶ 5, and that Ms. Clare's work email "was not protected by a password on her iPhone nor was her iPhone protected by a passcode in December 2015," *id.* at ¶ 6.

Mr. Clare states that, in April 2016, Ms. Clare presented him a document on her phone, and when she walked away from him, he viewed a text message on her phone to investigate a suspected extra-marital relationship. ECF No. 109 at 3 ¶ 12; ECF No. 109-3. During this period, Mr. and Ms. Clare were allegedly "working on their relationship." *Id.* at 3 ¶ 11. They maintained a joint AT&T account for cellular services that was listed under Mr. Clare's name and paid for by community funds. *Id.* at 2 ¶ 7; *see also* ECF Nos. 109-2, 109-4. At some point between January and February 2016, Ms. Clare upgraded her then-phone, an iPhone 6SE, to a newer phone, an iPhone 6S Plus under the joint AT&T account. ECF No. 109 at 3 ¶ 9. In May of 2016, Ms. Clare filed for divorce. She also removed her phone from the joint account and registered an Apple iPhone 6S Plus with Verizon Wireless. Mr. Clare claims he never owned an Apple iPhone 6S Plus or held cellular service with Verizon Wireless. *Id.* at 3 ¶¶ 10; 4 ¶ 15.

Dan Morgan is an expert proffered by Ms. Clare. *See* ECF No. 56. He is an employee for Teknologize. Based on his "experience, research, and knowledge," Mr. Morgan concluded unauthorized access occurred in 2017 and 2018 using Ms. Clare's credentials "from an outside source." *Id.* at 2 ¶ 4.[1] "The unauthorized user would have retrieved credentials from an iPad device she previously used to access her Exchange account from home." *Id.* ¶ 3.

Mr. Morgan states that he confirmed that the device used to gain access was an Apple device from a Pasco Charter IP address. *Id.* at 2–3 ¶ 4. He also asserts that "[o]nce Andrea had changed her login information the allowed logins from the Pasco Charter IP address stopped and were met with invalid account rejections." *Id.*

To contrast, Joshua Michel is an expert offered by Mr. Clare. *See* ECF No. 112. He is a Senior Forensic Examiner at Roloff Digital Forensics, LLC, a private digital forensics firm, and has over eight years of experience in the world of digital forensics, with numerous professional certifications in the industry. *Id.* at 1–2, ¶¶ 1–2. Mr. Michel reviewed the audit log provided by Mr. Morgan and concluded that all entries from the 830 line-item audit log came from one specific device, an "Apple-iPhone8C2." *Id.* at 5 ¶ 11. He claims this is Apple's hardware revision "iPhone8,2" or an Apple iPhone 6S Plus. *Id.* Mr. Michel states that the entries also related to the service provider Verizon Wireless. *Id.* Further, in addition to access locations involving Kennewick and Pasco, Washington, he contends that there were other locations identified including Seattle, New York, New Jersey, Arizona, Nevada, Georgia, New Mexico, Spokane and Coeur D'Alene "to name a few." *Id.* at 6 ¶ 12. In addition, a forensic examination of the couple's shared iPad device "did not contain Ms. Clare's credentials, saved or otherwise recoverable." *Id.* at 7 ¶ 15. Overall, through these contradicting expert opinions, the parties dispute whether Mr. Clare accessed any of Ms. Clare's emails in 2017 and 2018.

**Legal Standard**

*3 Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). An issue of material fact is genuine if here is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The parties must support assertions by citing to

particular parts of the record or showing that the materials cited to not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c). A party can also show that the adverse party cannot produce admissible evidence to support a fact. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (finding that unauthenticated documents could not be considered in a motion for summary judgment), accord *Everett v. American General Life Ins. Co.*, 703 F. App'x 481, 482 (9th Cir. 2017).

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Cortez*, 776 F.3d at 1050.

**Discussion**

A. Motion to Strike

In her Motion to Strike, Ms. Clare argues that Mr. Clare is using these proceedings to harass and intimate her, and that portions of his declaration and statement of disputed facts in opposition to summary judgment should be stricken as "an insufficient defense, immaterial, impertinent or scandalous." ECF No. 114 at 2 (citing Fed. R. Civ. P. 12(f)). Ms. Clare asserts that "[m]ost of the comments in Kevin's narrative are for the sole purpose of attempting to disparage Andrea—an improper act in a pleading." *Id.* Specifically, she asks the Court to strike paragraphs 2–12, and 23 (with no specific objection stated), and paragraphs 13–17, 27, and Exhibits 1–4 as argumentative and not in compliance with Rule 56. *Id.* at 3; *see also* ECF Nos. 109 (Declaration of Kevin Clare), 111 (Statement of Disputed Material Facts). Mr. Clare did not file a response to the Motion to Strike.

Ms. Clare asks the Court to strike factual declarations such as "Kevin has never personally owned an Apple iPhone 6S Plus. Kevin has never had cellular service with Verizon Wireless." ECF No. 109 at 6 ¶ 23. This factual statement, as well as several other cited paragraphs, directly pertain to Mr. Clare's defenses and are not impertinent or scandalous. For example, this assertion naturally pertains to Mr. Clare's defense (and his expert's apparent estimation) that he never accessed Ms. Clare's work emails in 2017 and 2018. Furthermore, it is improper for the Court to strike the noted exhibits, as they are related to the facts underlying this lawsuit and the pending Motion for Partial Summary Judgment. The substance of the exhibits themselves, while possibly embarrassing, are nonetheless relevant to establishing the facts of the case. There is also no indication that they were submitted in bad faith or with intent to harass. Finally, while some paragraphs cited in the declaration appear somewhat argumentative, the Court declines to strike them from the record. The Court finds they are not so egregious to be stricken but instead are helpful to adjudication of the Motion for Partial Summary Judgment. For these reasons, the Motion to Strike is denied in full.

B. Motion for Partial Summary Judgment

*1. Whether there is a dispute of material fact.*

**\*4** As a threshold matter, the Court must determine whether a genuine dispute of material fact precludes summary judgment adjudication. Ms. Clare seeks summary judgment on three discrete instances of conduct that she alleges are violations of the SCA: (1) Mr. Clare's access of Ms. Clare's Microsoft Exchange email in the early hours in December 2015; (2) Mr. Clare's review of Ms. Clare's text messages on her unlocked iPhone in April 2016; and (3) Mr. Clare's access of Ms. Clare's Microsoft Exchange email on a shared iPad in 2017 and 2018.

Construing the facts in the light most favorable to Mr. Clare, the Court finds that there is a dispute of material fact as to (1) whether Ms. Clare's emails were held in electronic storage at the time they were accessed by Mr. Clare in December 2015; and (2) whether Mr. Clare accessed Ms. Clare's email at all during 2017 and 2018.

First, there is a dispute on record as to whether the emails, at the time of access in December 2015, were held in

backup storage. Plaintiff contends her Microsoft Exchange emails were held in "storage for purposes of backup protection," as that phrased is used under 18 U.S.C. § 2510(15), through a separate server managed by Teknologize. However, the facts must be construed in the light most favorable to Mr. Clare on summary judgment. *See Cortez*, 776 F.3d at 1050. Plaintiff previously testified that her law firm *"uses the Microsoft Exchange for storing e-mail. It does not store e-mail on a server in the office."* ECF No. 23 at 5 (emphasis added). The record does not provide undisputed evidence that Ms. Clare's emails were in storage for backup protection—either through a separate digital or physical server—at the time of the unauthorized access. Confronted with contradictory evidence, the Court appropriately declines to weigh the persuasiveness of the evidence on summary judgment. *See Anderson*, 477 U.S. at 249.

The second instance involves a battle of the parties' respective experts, and this evidence should be weighed by the finder of fact. Crucially, Mr. Clare proffered a forensic expert who indicates that he did not access Ms. Clare's Microsoft Exchange emails during 2017 and 2018. It is also worth noting that Ms. Clare's expert, Mr. Morgan, did not provide any conclusion that Mr. Clare specifically accessed Ms. Clare's email during this time. The Court cannot grant summary judgment when an element of a cause of action is factually disputed, *i.e.*, unauthorized access by the specific defendant.

For these reasons, material disputes of fact preclude summary judgment on Ms. Clare's claims regarding Mr. Clare's access of her Microsoft Exchange email in December 2015 and throughout 2017 and 2018. Accordingly, the only remaining issue to consider is whether Ms. Clare is entitled to summary judgment on the April 2016 occurrence of Mr. Clare viewing her text messages.

*2. Whether Ms. Clare is entitled to summary judgment on her claim that Mr. Clare viewed her iPhone's text messages without authorization in April 2016.*

Ms. Clare is not entitled to summary judgment on her SCA claim regarding the events in April 2016 because she has failed to demonstrate that her iPhone is (1) a "facility through which an electronic communication service is provided" or that (2) the text messages viewed were held in "electronic storage."

First, several courts have determined that a personal cellphone is not a "facility" under the SCA. 18 U.S.C. §§

2701(a)(1), (2). *Garcia v. City of Laredo, Texas*, 702 F.3d 788, 793 (5th Cir. 2012) (holding that plaintiff's cell phone was not a protected "facility" for purposes of the SCA); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1058–59 (N.D. Cal. 2012) (finding that an iPhone was not a "facility" under the SCA); *accord Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001) ("[The argument that] computers of users of electronic communication service, as opposed to providers of electronic communication service, are considered facilities through which such service is provided [is] destined to failure.") (emphasis added). The Court finds this precedent persuasive, as it aligns with the intent of the SCA. As explained by Orin Kerr in his widely cited law review article, the words of the SCA were carefully chosen: "[T]he statute envisions a provider (the ISP or other network service provider) and a user (the individual with an account with the provider), with the user's communications in the possession of the provider." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1215 n. 47 (2004) (citation omitted). "It follows that the relevant 'facilities' that the SCA is designed to protect are not computers [or phones] that enable the use of an electronic communication service, but instead are facilities that are operated by electronic communication service providers and used to store and maintain electronic storage." *Freedom Banc Mortg. Servs., Inc. v. O'Harra*, No. 2:11–CV–01073, 2012 WL 3862209, at *9 (S.D. Ohio Sept. 5, 2012) (emphasis added). And significantly, Ms. Clare does not assert in her Motion that something other than her iPhone was a "facility" for purpose of this SCA claim.

*5 On similar grounds, courts have found that personal cellphones, without more, do not provide an "electronic communication service" as necessitated by the SCA. 18 U.S.C. §§ 2701(a)(1), (2). As succinctly stated by the U.S. Court of Appeals for the Fifth Circuit in *Garcia*, "[a]n individual's personal cell phone does not provide an electronic communication service just because the device enables use of electronic communication services" and here, like in *Garcia*, "there is no evidence ... that the Defendant[ ] ever obtained any information from the cellular company or network." *Garcia*, 702 F.3d at 793. Thus, even if Ms. Clare's iPhone could be considered a "facility," it does not provide an "electronic communication service" under the statute.

Finally, the Court finds that even if the above elements were met, Ms. Clare has not demonstrated that the text messages were accessed "while [they were] in electronic storage." 18 U.S.C. § 2701(a). To illustrate, the district

court in *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511–12 (S.D.N.Y. 2001) held that the plaintiffs did not establish that the information accessed was in "electronic storage" under the SCA, because as the information was in "long-term residence on plaintiffs' hard drives," rather than "electronic storage." *Id.* at 511. In this case, similarly, Ms. Clare's text messages were in long-term residence on her iPhone's hard drive. *O'Harra*, 2012 WL 3862209, at *9 ("Information that an individual stores to his or her hard drive, such as images, personal information, and emails that he or she has downloaded, is not in electronic storage as defined by the statute."); *see also Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1205 (S.D. Cal. 2008). The record provides no indication, much more argument, that the text messages were held in "electronic storage." That being the case, Plaintiff is not entitled to summary judgment.

## Conclusion

The Court concludes that Mr. Clare's declaration is

relevant and helpful to adjudication of the pending Motion for Summary Judgment, and therefore denies the Motion to Strike. Further, summary judgment is inappropriate for two of Ms. Clare's claims, as there are disputes of material fact. With respect to the final claim, Ms. Clare failed to establish all essential elements of a SCA claim. Thus, the Motion for Partial Summary Judgment is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment on Liability, ECF No. 101, is **DENIED**.

2. Plaintiff's Motion to Strike, ECF No. 114, is **DENIED**.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 6206989

## Footnotes

1    The Court is concerned that Mr. Morgan did not lay the foundation of his purported expertise to provide these specific opinions, which sound in the field of digital forensics—and further, that Mr. Morgan did not lay the factual foundation underlying the opinions themselves. *See* Fed. R. Evid. 707(a), (b) (an expert must be qualified by knowledge, skill, experience, training, or education; and expert testimony must be based on sufficient facts or data). However, the Court errs on the side of caution and will consider the assertions as expert opinions for purposes of summary judgment adjudication.

**End of Document**                                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*EXHIBIT F*

Case 2:24-cv-00413-SAB    ECF No. 126    filed 04/29/26    PageID.2213    Page 55 of 70

Sterling and Wilson Solar Solutions, Inc. v. Fidelity and..., Not Reported in Fed....

2023 WL 1864872
Only the Westlaw citation is currently available.
United States District Court, E.D. Washington.

**STERLING AND WILSON SOLAR SOLUTIONS, INC.**, a Delaware Corporation, Plaintiff,
v.
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**, an Illinois insurance company, and **Zurich American Insurance Company**, an Illinois insurance company, Defendants.

No.



1:22-CV-03076-SAB
|
Signed February 9, 2023

**Attorneys and Law Firms**

Ana-Maria Popp, James Paul Wagner, Cairncross and Hempelmann PS, Seattle, WA, Justin T. Scott, Pro Hac Vice, Bradley Arant Boult Cummings, Houston, TX, for Plaintiff.

Paul Keane Friedrich, Williams Kastner, Seattle, WA, for Defendants.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Stanley A. Bastian, Chief United States District Judge

*\*1* Before the Court are Defendants Fidelity & Deposit Company of Maryland and Zurich American Insurance Company's Motion for Summary Judgment, ECF No. 18, and Plaintiff's Motion to Strike or Leave to File Sur-Reply, ECF No. 30. The Court held a hearing on the motion in Yakima, Washington on January 25, 2023. Defendants were represented by Paul Friedrich. Plaintiff was represented by Ana-Maria Popp and Justin T. Scott.

The Court took the motions under advisement. After considering the briefing, the caselaw, and the parties' arguments, the Court denies Defendants' Motion for Summary Judgment and finds Plaintiff's Motion to Strike as moot.

**I. Facts**

Around June 23, 2020, Plaintiff Sterling and Wilson Solar Power Solutions, Inc. entered into a construction contract with Lund Hill Solar, LLC for the development of a 152.5 MW AC at the Delivery Point solar photovoltaic power plant located in Klickitat County, Washington. Plaintiff entered into a subcontract with Conti, LLC ("Conti") for Conti to perform work on the photovoltaic power plant.

Defendant Zurich American Insurance Company ("Zurich") issued a performance bond ("the Performance Bond"), Bond No. 9368480, on behalf of Plaintiff subcontractor, Conti, and in favor of Plaintiff worth Thirty million Eight Hundred Seventy-Two Thousand Four Hundred Twenty-Nine and 50/100 Dollars ($30,872,429.50). The Performance Bond was a widely-used "AIA–A312" bond form, drafted by the American Institute of Architects. The Performance Bond lists Plaintiff as "Owner" and Conti as the "Contractor." This Performance Bond guaranteed Conti's performance under the Subcontract for just under $31 million. On or about November 2021, Conti began to falter in its performance under the Subcontract, and on February 18, 2022, Plaintiff terminated Conti's Subcontract for default.

On February 21, 2022, Plaintiff sent its written notice ("Plaintiff's Notice") to Defendant Zurich, advising that Conti defaulted on the Subcontract and stated that the Notice was being provided pursuant to Section 3 of the Performance Bond contract. Plaintiff's Notice expressly stated: "Should you believe a preliminary meeting would be helpful, in accordance with Section 3.1, please do not hesitate to contact me, thanks."

Plaintiff's Notice was delivered to Defendant Zurich on February 23, 2022 at 1299 Zurich Way, Schaumburg,

Illinois, the address listed on the Performance Bond. The Performance Bond stated that: "Notice of the Surety ... shall be mailed or delivered to the address shown on the page on which their signature appears." The Performance Bond did not provide an email address for receipt of notices. Defendant Zurich attempted to route Plaintiff's Notice to Defendant Zurich's Chicago office but it appears that Defendant Zurich lost Plaintiff's Notice. Defendant Zurich acknowledges that "it remains unclear what happened to the Notice Letter after it was placed with the internal courier on February 25, 2022."

Under Section 5 of the Performance Bond, Defendant Zurich had ten (10) days to respond to Plaintiff's Notice indicating whether it would either arrange for Conti to complete the work under the construction contract or obtain a bid from another contractor to complete the work. After losing Plaintiff's Notice, Defendant Zurich never provided any response. On March 11, 2022, more than ten (10) business days after Defendant Zurich's receipt of Plaintiff's Notice, Plaintiff signed a subcontract with OLG, Inc. to complete Conti's scope of work.

*2 Plaintiff filed this lawsuit on May 31, 2022, alleging breach of contract. Defendants now moves for summary judgment. Defendants argue that due to Plaintiff's failure to satisfy the Performance Bond's express conditions precedent, Plaintiff does not have a viable claim. Defendants go on to assert that Plaintiff's "failure to comply with the contractual conditions precedent prejudiced Zurich because it deprived Zurich of its ability to exercise any of its bargained-for performance options under Section 5."

Plaintiff responds that Defendants' legal analysis ignores applicable Washington law; overlooks questions of fact that exist as to Plaintiff's Notice, and purposefully omits their own loss of Plaintiff's Notice.

## II. Discussion

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Applicable Law

#### a. *Choice of Law – Washington*

In Washington, a "choice of law" provision in insurance contracts that calls for applying another state's law is unenforceable. Wash. Rev. Code § 48.18.200 states that "no insurance contract ... to be performed in this state, shall contain any condition ... requiring it to be construed according to the laws of any other state." RCW 48.18.200(1)(a). Previous courts have applied this statute to performance bonds. *Stellar J. Corp. v. Argonaut Ins. Co.*, No. 3:12-CV-05982 RBL, 2014 WL 1513292, at *3 (W.D. Wash. Apr. 16, 2014). Washington case law states that "the undertakings of compensated sureties are regarded as "in the nature" of insurance contracts, ... and subject to the rules of applicable to simple contract law." *Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wash. 2d 577, 586 (2007). Given Wash. Rev. Code § 48.18.200 and Washington case law, Washington law applies in this matter.

### b. *Prejudice*

Under Washington law, a "violation of a notice requirement exonerates surety only to the extent of resulting prejudice even when notice is an express condition precedent to liability under the performance bond." *Colorado Structures, Inc.*, 161 Wash. 2d at 619 (2007); *See Lazelle v. Empire State Sur. Co.*, 58 Wash. 589, 592, 109 P.195, 196 (1910) (where "the surety cannot complain when it can show no loss or substantial damage by reason of the failure to receive notice, in the exact and technical language of the contract, or make it appear that its failure to receive notice has prevented it from taking proper steps for its protection.")

**\*3** Additionally, Washington and Federal Courts have indicated that, "when notice serves its purpose as well when given after the prescribed as it does before—that is, when it is equally effective in protecting the surety from loss—it is inequitable and a manifold abuse of the purposes of this provision of the bond to hold that the mere technical variance shall relieve the obligor entirely." *Heffernan v. U.S. Fid. & Guar. Co.*, 37 Wash. 477, 481 (1905); *see also Providence Health & Servs. v. Certain Underwriters at Lloyd's London*, 358 F. Supp. 3d 1195 (W.D. Wash. 2019) (granting partial summary judgment in favor of the insured, despite an insured's non-compliant notice, because the insurer failed to establish actual prejudice).

### C. Defendants' Motion for Summary Judgment

Summary judgment is not appropriate at this time. Construing the facts in the light most favorable to Plaintiff, genuine disputes of material fact and genuine issues for trial exist. Notably, both parties argue they did nothing wrong yet admit some of their own failures. Defendants have not shown that no reasonable jury would find in favor of Plaintiff, or that it is entitled to judgment as a matter of law. Accordingly, the Court denies Defendants' Motion for Summary Judgment.

### D. Plaintiff's Motion to Strike

Plaintiff requests that the Court strike Defendants' supplemental Declaration of David Bresel in support of its Motion for Summary Judgment. Because the Court did not rely on Defendants' supplemental Declaration of David Bresel to find genuine disputes of material fact, the Court dismisses Defendants' Motion to Strike as moot.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants Fidelity & Deposit Company of Maryland and Zurich American Insurance Company's Motion for Summary Judgment, ECF No. 18, is **DENIED.**

2. Plaintiff's Motion to Strike or Leave to File Sur-Reply, ECF No. 30, is **DENIED**, as **MOOT**.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2023 WL 1864872

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT G*

2017 WL 4326511
United States District Court, E.D. New York.

Ines **CABRERA** on behalf of herself,
individually, and on behalf of all others
similarly-situated, Plaintiffs,
v.
Christopher **STEPHENS**, doing business
as 7-Eleven; Attaullah Khan, Defendants.



16
-
CV
-
3234
(
ADS
) (
SIL
)
|

Signed 09/28/2017

**Attorneys and Law Firms**

Alexander T. Coleman, Michael R. Minkoff, Michael J. Borrelli, Borrelli & Associates PLLC, Great Neck, NY, for Plaintiffs.

Kyle T. Pulis, Paul Carruthers, Scott Michael Mishkin PC, Islandia, NY, for Defendants.

**ORDER**

STEVEN I. LOCKE, United States Magistrate Judge

*1 Plaintiff Ines **Cabrera** ("**Cabrera**") commenced this action against Defendants Christopher **Stephens** ("**Stephens**"), doing business as 7-Eleven and Attaullah Khan ("Khan") (collectively, "Defendants"), on behalf of herself and all other similarly situated individuals (collectively "Plaintiffs"), seeking to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, et seq. See Complaint ("Compl."), Docket Entry ("DE") [1].[1] Presently before the Court, on referral from the Honorable Arthur D. Spatt, is Plaintiffs' motion for an order conditionally certifying this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b), authorizing dissemination of a proposed notice and consent to sue form (the "Notice and Consent Form") to potential opt-in plaintiffs, and providing other related relief ("Motion for Conditional Certification"). See Plaintiffs' Motion for Conditional Certification ("Pl. Cert. Mot."), DE [22]. Defendants oppose conditional certification as well as certain aspects of the proposed Notice and Consent Form. See Defendants' Opposition to Conditional Certification ("Def. Cert. Opp."), DE [25].

While the Motion for Conditional Certification was pending, Plaintiffs filed a letter motion to strike ("Motion to Strike") the affidavits submitted with Defendants' opposition to the Motion for Conditional Certification and Defendants' opposition to a separate motion to compel. See Plaintiffs' Motion to Strike ("Pl. Strike Mot."), DE [31]. The Motion to Strike, which Defendants opposed, is also presently before the Court on referral from Judge Arthur D. Spatt. See Defendants' Opposition to Plaintiffs' Motion to Strike ("Def. Strike Opp."), DE [33-35]. The Court conducted an evidentiary hearing on the Motion to Strike with respect to whether any of the affidavits or declarations at issue were obtained in bad faith through coercion or misrepresentations. See DE [38-40]. For the reasons set forth herein, Plaintiffs' motion for conditional certification is granted in part and denied in part, and Plaintiffs' motion to strike is denied.

**I. Background**

**A. Summary of Relevant Facts**

Defendant **Stephens** owns and operates several 7-Eleven convenience stores on Long Island and employs a staff of non-managerial hourly employees, such as assistant managers, cashiers, and store clerks. Compl. ¶¶ 28-32; Declaration of Ines **Cabrera** ("**Cabrera** Decl."), DE [22-5], ¶¶ 1-3; Declaration of Ivan Sinchi ("Sinchi Decl."), DE [22-6], ¶¶ 1-3. One of Defendants' principal places of business is 653 Montauk Highway, Montauk, Suffolk County, New York ("Montauk Store"), and, with respect to this store, **Stephens** and Khan make all of the

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

managerial and employment decisions regarding the hourly employees. *See* Compl. ¶¶ 28-30; Cabrera Decl. ¶¶ 1-2; Sinchi Decl. ¶¶ 1-2. According to Cabrera, Defendants other 7-Eleven stores are located in East Patchogue and Smithtown. Declaration of Muhammad Anwar, ("Anwar Decl."), DE [22-11], ¶ 9.

**\*2** From approximately October 1, 2010 until October 24, 2013, Cabrera worked as an assistant manager at Defendants' Montauk Store. Compl. ¶ 31; Cabrera Decl. ¶ 1. Cabrera was required to clock in and out at the start and end of each shift; however, it is alleged that Defendants routinely altered Cabrera's timesheets in order to make it appear that Cabrera worked fewer hours. Compl. ¶¶ 2, 43-5; Cabrera Decl. ¶¶ 5-7. The purpose of these reductions was to maintain an ideal sales-to-salary ratio, presumably to ensure a certain level of profitability. *See* Anwar Decl. ¶¶ 8-9. As a result, Defendants are alleged to have failed to pay Cabrera for all of her hours worked in compliance with the federally mandated minimum wage. Pl. Cert Mot. at 4-5. Additionally, it is alleged that Defendants failed to pay Cabrera the mandated overtime premium for any hours that she worked over forty per week. Cabrera Decl. ¶¶ 4-6.

According to Plaintiffs, other employees were similarly underpaid. Cabrera Decl. ¶¶ 7-11; Anwar Decl. ¶ 10; Sinchi Decl. ¶¶ 3-10. Opt-in Plaintiff Ivan Sinchi ("Sinchi") claims to have worked for Defendants as an assistant manager and store clerk at the Montauk Store from April 2010 through October 2013 during which time he alleges that Defendants also altered his timesheets, refused to pay him for all hours worked, and denied him overtime at the statutory rate. Sinchi Decl. ¶¶ 1-7. Cabrera and Sinchi claim that approximately thirteen other named employees at the Defendants' Montauk Store were all similarly mistreated. Cabrera Decl. ¶ 10, Sinchi Decl. ¶ 9. Muhammad Anwar previously brought suit against Defendants under the FLSA and NYLL, raising similar allegations, which settled. *See* Anwar v. *Stephens et al.*, 2:15-cv-04493., ECF # 27 (Feb. 2, 2017).

Plaintiffs also contend that the wage violations carried out at the Montauk Store, occurred at Defendants' other locations. In support, Plaintiffs cite to Khan's confirmation that the same scheme to reduce pay to maintain a certain salary-to-sales ratio was applied to all of Defendants' employees regardless of their location. *See id.* ¶¶ 7-9 ("Khan instructed [Anwar] to reduce virtually every employees' hours to avoid paying them overtime for their hours worked over forty ... pay was limited based on a uniform policy that applied to all of Defendants' employees.").

**B. Present Motions**

1. Plaintiffs' Motion for Conditional Certification

Plaintiffs argue that they have satisfied the low evidentiary burden applicable to conditional certification of a collective action under the FLSA by submitting declarations identifying putative opt-in plaintiffs and substantiating a factual nexus between the wage violations that Plaintiffs allegedly suffered and those potentially suffered by other similarly situated employees. *See* Pl. Cert. Mot. at 11-13. The affidavits of Cabrera and Sinchi provide the names of specific individuals who are alleged to be similarly situated potential opt-in plaintiffs: Jorge Alvarez, Muhammed Anwar, Luz Guanga, Maria Guanga, Ximena Jarrin, Rodrigo Taturi, "Ali," "Dorine," "Erika," "Ibrahim," "Jarira," "Marva," and "Patricia" (collectively, "Opt-In Plaintiffs"). *See id.* Further, Plaintiffs seek notice to be sent to all current and former employees who worked for Defendants at all locations owned and operated by Stephens, not simply the Montauk Store at which Cabrera and Sinchi worked, and that the notice should be sent to all individuals who were employed during the last six years in light of the NYLL violations alleged in the Complaint. *See id.* at 14-16. They seek to distribute notice and reminder notices by electronic and traditional means, in Spanish and English, and by posting them at each of Defendants' stores. *See id.* at 17-21. Finally, Plaintiffs petition the Court to toll the FLSA statute of limitations from the date of the filing of the Complaint until the deadline that the Court grants certification. *See id.* at 22-23.

**\*3** Defendants oppose arguing that Plaintiffs cannot show an unlawful common policy because they have only submitted sworn statements of two employees that are primarily composed of boilerplate conclusory language. *See* Def. Cert. Opp. at 4-5. Additionally, any allegations contained in those statements concerning other employees are anecdotal, inadmissible hearsay. *See id.* Defendants further assert that Cabrera's own overtime claim is contradicted by the paystub that she provided, which shows that she was compensated at the applicable overtime rate in that instance. *See id.*

Were the Court to grant certification, Defendants argue that notice should be limited to the Montauk Store as Plaintiffs have failed to make any factual allegations related to any other named employee at another location, and as each of the 7-Eleven stores owned by Stephens are

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

operated independently of one another. *See id.* at 5. Further, Defendants request that the Court limit notice to a three-year period based upon the lack of viable federal claims extending beyond this time frame, *see id.* at 11, and they seek to prevent notice from being posted at any of Stephens' stores, as all current employees would be covered by notice served by mail. *See id.* at 12. Finally, Defendants dispute the form of and deadlines related to the notice and any tolling of the statute of limitations as Plaintiffs have failed to plead any extraordinary circumstances warranting such relief. *See id.* at 13-15.

### C. Plaintiffs' Motions to Strike

Plaintiffs subsequently filed a motion to strike the affidavits that were submitted with Defendants' opposition to the Motion for Conditional Certification and other affidavits submitted in opposition to a separate subsequent motion to compel (collectively, the "Affidavits"). *See* DE [25-1, 28].[2] Plaintiffs argue that the affidavits should be stricken due to the bad faith and the coercive manner in which they were obtained. *See* Pl. Strike Mot. 1. Secondarily, Plaintiffs move for the Affidavits to be precluded for a failure to disclose the identities of the individual witnesses in Defendants' initial disclosures and responses to interrogatories pursuant to Federal Rule of Civil Procedure 26 ("Rule 26"). *See id.* at 2-3.

Defendants oppose the motion to strike arguing that there was no prohibition on pre-certification communications with potential opt-ins and that Plaintiffs had failed to show that Defendants had committed any bad faith acts or coercion as would justify an order being imposed by the Court. *See* Def. Strike Opp. 1 at 1-2. Additionally, there was no violation of Rule 26 and no possibility of prejudice as Defendants learned of the affiant's identities through Plaintiffs' conditional certification motion, and, in any event, discovery is still open and ongoing, so there is no prejudice. *See id.* at 2-3.

After the Court ordered an evidentiary hearing on the issue of possible bad faith conduct in Defendants' dealings with potential opt-in plaintiffs, Defendants submitted a series of twenty nine declarations from employees that they obtained through their counsel wherein the declarants stated that they were aware of the pending litigation and the underlying allegations, that Defendants fairly compensated them for all hours that they worked, and that they had no interest in pursuing the matter by opting in to the collective action (collectively, the "Declarations"). *See* DE [35-1-29]. In response,

Plaintiffs also submitted an additional affidavit of a former employee in support of their motion. *See* DE [31].

*4 After the hearing was concluded, both sides submitted additional legal argument regarding the motion to strike. *See* Plaintiffs' Reply in Support ("Pl. Strike Mot. 2"), DE [42]; Defendants' Response ("Def. Strike Opp. 2"). In their reply, Plaintiffs broaden their motion to strike to include striking and/or precluding all of the Declarations on fundamentally the same bases as their initial motion, and Defendants again opposed. *See* Pl. Strike Mot. 2; Def. Strike Opp. 2.

### II. Legal Standard for Certification

The FLSA provides a private right of action to recover unpaid overtime compensation and/or minimum wages. *See* 29 U.S.C. §§ 206, 207, 216(b); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). An action pursuant to section 216(b) may be brought as a collective action, that is, by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.' " *Bifulco*, 262 F.R.D. at 212 (internal quotation and citations omitted). Courts in the Second Circuit use a two-step approach to determine whether an FLSA collective action should be certified. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). For the first step, also known as conditional certification, the court determines whether the proposed opt-in members are similarly situated to the named plaintiffs "with respect to whether a[n] FLSA violation has occurred." *Myers*, 624 F.3d at 555. If the plaintiffs meet this burden, the court conditionally certifies the class as a collective action, and potential members are notified and provided with the opportunity to opt-in.

"At the second step, after discovery, the court will determine whether the plaintiffs who opted-in are indeed similarly situated to the named plaintiff[s]; if they are not, the collective action may be decertified." *Bijoux v. Amerigroup New York, LLC*, 14-CV-3891, 2015 WL 5444944, at *2 (E.D.N.Y. Sept. 15, 2015); *see also Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 n. 1 (W.D.N.Y. 2008) (if discovery does not support the finding that plaintiffs are similarly situated, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims"). The current motion before the Court concerns

only the first step—whether the proposed class members are similarly situated such that conditional certification should be granted.

"Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are similarly situated is very low." *Romero v. H.B. Auto. Grp., Inc.*, 11 Civ. 386, 2012 WL 1514810, at *9 (S.D.N.Y. May 1, 2012) (internal quotation marks and citation omitted). "This low burden is consistent with the broad remedial purpose of the FLSA." *Pippins v. KPMG LLP*, 11 Civ. 0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3, 2012) (internal quotation and citation omitted). At this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

*5 To succeed, Plaintiffs "need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). The Court does not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (citing *Wraga v. Marble Lite, Inc.*, 05–CV–5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)). All prospective class members need not have the same duties to be similarly situated; rather, the question is whether "they were all similarly situated *with respect to being subject to the same policy* of being denied overtime compensation." *Cano v. Four M Food Corp.*, 08–CV–3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) (emphasis in original). The determination that the potential opt-in plaintiffs are similarly situated may be based on the pleadings as well as supporting affidavits or declarations submitted by Plaintiffs. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014); *Sexton v. Franklin First Fin., Ltd.*, 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. Jun. 16, 2009).

**III. Discussion on Motion to Certify**

**A. Conditional Certification**

The Court grants Plaintiffs' motion for conditional certification with respect to all of Defendants' 7-11 stores. Plaintiffs have substantiated through their pleadings and affidavits the requisite factual nexus between the named Plaintiffs' claims—Defendants failing to make minimum wage and overtime payments as required under FLSA and NYLL—and the potential claims of similarly situated employees.

Conditional certification is regularly granted based upon a complaint and one or two affidavits that collectively demonstrate the requisite nexus. *See, e.g., Juarez, v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y 2014) ("In assessing the adequacy of a plaintiff's showing, district courts look to pleadings, affidavits, and declarations, but often authorize notice based solely on the personal observations of one plaintiff's affidavit.") (internal citation and quotation marks omitted); *Doucoure*, 554 F. Supp. 2d at 374 (finding that plaintiff's "well-pleaded allegations," and nothing more, were sufficient to justify mailing notice to potential collective action members). Further, the Court notes that there is no minimal number of employees required to opt-in before conditional certification of an FLSA action as a collective is appropriate. *See, e.g., Enriquez v. Cherry Hill Market Corp.*, 10-CV-5616, 2012 WL 440691, at *2 (E.D.N.Y. Feb. 10, 2010) (citing *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)) (granting conditionally certification with only one opt-in plaintiff submitting an affidavit); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) ("The single named Plaintiff here has met his burden by successfully demonstrating that there are other workers who are similarly situated to him, and that is enough for this matter to move forward."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (finding conditional class certification with no affidavits from opt-ins); *Zhao v. Benihana, Inc.*, 2001 WL 845000, at *2-3 (S.D.N.Y. May 7, 2001) (finding one affidavit based on plaintiff's "best knowledge" enough to grant certification). Instead of waiting for a critical mass of opt-ins, "courts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." *Sobczak*, 540 F. Supp. 2d at 362 (citation and internal quotation marks omitted); *see also Cano*, 2009 WL 5710143, at *6 (finding that plaintiffs' affidavits containing "statements setting forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other coworkers who were allegedly subject to the same denial of overtime pay" demonstrated a "sufficient factual basis" that the

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

named plaintiffs and the potential plaintiffs were similarly situated); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on plaintiff's affidavit alleging failure to pay overtime based on personal conversations establishing that at least eighteen other employees were similarly situated).

*6 Cabrera declares that she and other non-managerial employees, several of which are identified by name, had similar duties, were subject to the same pay practices, and were also compensated at a rate below the minimum wage and in violation of the overtime requirements with respect to all the hours that they worked per week. *See* Cabrera Decl. ¶¶ 6-11. Additionally, the affidavit of opt-in Plaintiff Sinchi corroborates Cabrera's allegations of the same or similar unlawful practices taking place at the Montauk Store. *See* Sinchi Decl. ¶¶ 4-9. Further, the additional sworn declaration from Anwar, a former employee of Defendants, on its face confirms the allegation that the Defendants' wage violations extended beyond the Montauk Store to Defendants' other locations as part of a common scheme to regulate the pay practices of the stores to promote a certain cost-to-sales ratio. *See* Anwar Decl. ¶¶ 8-10. Conditional certification is thus appropriate not only with respect to the Montauk Store but also Defendants' other locations. *See Lamb v. Singh Hospitality Grp., Inc.*, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (adopting report and recommendation conditionally certifying class of workers at all of defendants' locations where there was an undisputed allegation of a common payment system and declarations alleged that the named plaintiffs "spoke to coworkers who had worked at ... other restaurants and that they complained of policies applied to employees at Defendants' other restaurants as well"); *Agudelo v. E & D LLC*, 2012 WL 5426420, at *1, 4 (S.D.N.Y. Nov. 5, 2012) (conditionally certifying the FLSA collective premised on common control and common pay policies); *Garcia v. Pancho Villa's of Huntington Village*, Inc., 678 F. Supp. 2d 89, 94-95 (E.D.N.Y. 2010) (conditionally certifying collective at all three restaurant locations based upon payroll for all three restaurants being processed at one location and testimony that there was common ownership of all implicated locations).

Defendants counter that Plaintiffs fail to provide sufficient evidence to establish a "common policy of failure to pay overtime." Def. Cert. Opp. at 9. However, as explained above, the particularized showing that Defendants seek is not required under the FLSA for first stage, conditional certification and notice. Instead, Cabrera through her declaration and the declarations of Sinchi and Anwar set forth the requisite nexus between Plaintiffs' allegations of improper compensation and the

Defendants' policy of limiting all of their 7-Eleven's employees' wages in an effort to keep salaries proportional to Defendants' overall weekly sales. *See* Pl. Cert. Mot. at 12; Anwar Decl. ¶¶ 7-10 ("Defendants would not pay their employees either minimum or overtime wages whenever a store's total payroll costs exceeded a certain percentage of that store's sales."). Defendants cite to several inapposite cases where the employee plaintiff failed to put forth any specific factual basis for the nexus beyond "anecdotal hearsay" or the conclusory allegation of the plaintiff that they "know that [other employees] were not paid for all hours." *See* Def. Cert. Opp. at 11. However, here Plaintiffs present more than mere anecdotal hearsay, as Anwar's declaration lays out the alleged methods and goals of a scheme to deprive employees of their earned wages including Khan's statement made directly to Anwar, which would be admissible as a party admission. *Compare* Anwar Decl. ¶¶ 7-9 *with* Fed. R. Evid. 801.

Accordingly, the Court concludes that conditional certification is appropriate as Plaintiffs have satisfied their minimal burden and established a factual nexus supporting the contention that individual Plaintiffs and the putative collective members are similarly situated. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (finding conditional class certification appropriate "where all putative class members are employees of the same restaurant enterprise").

**B. Scope of Conditional Class**

Anticipating the Court's determination in favor of Plaintiffs on the issue of conditional class certification, Defendants argue that the class should be limited to include only those employees at the Montauk Store where Cabrera, Anwar, and Sinchi worked. Def. Cert. Opp. at 14. The Court disagrees. In support of their position, Defendants rely on their competing factual evidence to defeat Plaintiffs' proffer of a factual nexus by asserting that Khan only supervised Montauk Store employees and could only have manipulated the pay of employees at that location. *See* Def. Cert. Opp. at 6-7. The Court notes that Defendants do not deny Plaintiffs' reasonable assertions that all of Defendants' 7-Eleven locations utilize the same timekeeping and payroll systems to pay the same types and classes of employees. *See* Def. Cert. Opp. Khan's testimony, in fact, arguably confirms these facets of Plaintiffs' proposed nexus discussing employees at the other locations and a common policy of sending payroll information to 7-Eleven's headquarters. *See* Khan Decl.

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

¶¶ 10-18. The Court agrees with Plaintiffs that it is not dispositive that Cabrera herself does not identify by name putative class members at Defendants' other locations. *See Lamb v. Singh Hospitality Grp., Inc.*, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (finding class certification premised upon "some interrelation of operations and alleg[ation of] some common management"). Here, Plaintiffs identify common store ownership through Stephens and common pay practices dictated by a central corporate reporting requirement which together warrant expanding the class to the similarly situated employees at the other 7-Eleven locations. Additionally, as already stated, Plaintiffs have submitted evidence in the form of Anwar's declaration that Khan, a manager, was aware of Defendants' percentage-of-sales pay policy applying to all employees at all of Stephens' stores. *See* Anwar Decl. ¶¶ 6-8. Accordingly, the Court concludes that the class shall include all employees at all of Defendants' locations.

## C. Time Frame for Conditional Certification

*7 Next, Defendants argue that, should the Court grant Plaintiffs' motion for conditional certification, the applicable timeframe for the notice should extend back only three years from the date Plaintiffs filed Cabrera's Complaint, as opposed to the six years Plaintiffs seek. *See* Def. Cert. Opp. at 16. The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, 14-CV-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388; *Francis v. A & E Stores, Inc.*, 06-CV-1638, 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008)) (noting that at the preliminary stage, "plaintiff's allegations of willful conduct ... are sufficient to support defining the class based upon the three-year statute of limitations"), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008); *see Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n. 2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of limitations period); *see also Alvarez v. IBM Restaurants, Inc.*, 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) ("The Plaintiffs have alleged willfulness in their Complaint ... and the Defendants deny these allegations. Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage."). Accordingly, as the Complaint

contains allegations of willful conduct by Defendants, *See* Compl. ¶ 1, the Court finds it appropriate to apply the three-year statute of limitations under the FLSA at this stage of the proceedings.

Plaintiffs, nevertheless, urge the Court to apply the six-year statute of limitations set forth in the NYLL, *see* N.Y.L.L. §§ 663(1), (3), for the Notice and Consent Form premised upon the supplemental jurisdiction the Court presently exercises over Cabrera's state law claims. Although some courts of this Circuit have approved six-year notice periods citing judicial economy, the confusion this causes in notifying plaintiffs who potentially have two separate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred, weighs against granting such an extension of the notice coverage period for collective certification of an FLSA opt-in class to include the period allowed under NYLL. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563-64, (S.D.N.Y. 2013) (citing *Lujan v. Cabana Management, Inc.*, 10-CV-755, 2011 WL 317984, at *9 (E.D.N.Y. 2011)) ("Authorizing notice for a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal."). Accordingly, the Court orders that the timeframe for notification be based on the three-year period applicable to Plaintiffs' FLSA claims.

With respect to the calculation of the three-year limitations period, Plaintiffs move the Court to toll the statute of limitations through and including the deadline for prospective plaintiffs to opt in, from the filing of the Complaint through the Court's decision on the Motion for Certification. Defendants oppose any tolling, citing a lack of any extraordinary circumstances that would justify an equitable remedy. *See* Def. Cert. Opp. at 14. The Court grants in part and denies in part Plaintiffs' application. Unlike Rule 23 class actions, in an FLSA collective action, the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit. *See* 29 U.S.C. § 256(b). Therefore, a district court may toll the limitations period to avoid inequitable circumstances, "giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). The delay required to decide a conditional certification motion in an FLSA collective action has itself been accepted as an extraordinary circumstance warranting tolling. *See, e.g., Yahraes v.*

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

Rest. Assocs. Events Corp., 10 CV 935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (finding equitable tolling appropriate as of the dates of service and refiling of conditional certification motion); Jackson, 298 F.R.D. at 170-71 (equitable tolling as of date of filing of conditional certification motion which took seven months to decide); McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (applying equitable tolling as of date of filing of conditional certification motion which took four months to decide and declining to do so from the filing of the complaint as plaintiffs requested). Plaintiffs moved for conditional certification within months after filing the Complaint in accordance with the scheduling order that was jointly proposed by the parties and adopted by the Court. See DE [17-19]. Absent tolling of the limitations period, a substantial number of class members may now be time-barred through no fault of counsel or the class representative. "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delay in rulings." McGlone, 867 F. Supp. 2d at 445. Accordingly, the Court tolls the statute of limitations period for the time period from the filing of the motion through to the entry of this Court's order granting conditional certification—a total of 220 days.

### D. Proposed Notice

*8 Plaintiffs also move for an Order authorizing dissemination of the Proposed Notice and Consent to Join. See DE [22-7]; Pl. Cert. Mot. at 13. Neither the FLSA, nor other courts, have specifically outlined what form a court-authorized notice should take or what provisions the notice should contain. Moore, 276 F.R.D. at 58 (quoting Fasanelli, 516 F. Supp. 2d at 323). However, it is well-established that "[c]ourts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hernandez v. Immortal Rise, Inc., 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation omitted).

Defendants' only substantive objection to the form of the notice is demanding that their counsel's contact information be included along with that of Plaintiffs' counsel. See Def. Cert. Mot. at 14-15. A defense counsel's contact information is not required to render a form notice fair, however, and is likely to create confusion rendering distribution or collection of consent forms less effective. See Chhab v. Darden Restaurants, Inc., 11 CIV. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege."). Accordingly, Defendants' application is denied.

Defendants also request a meet and confer regarding the notice yet fail to articulate any other issues or objections to its form or contents. The Court has otherwise reviewed the Proposed Notice. Upon its review, the Court considers it sufficient and appropriate to provide accurate and timely notice of the pendency of this action once the employment time frame for potential opt-in plaintiffs is adjusted from six to three years with that statute of limitations period tolled for the pendency of this motion. Accordingly, Defendants application for a meet and confer is denied and, within sixty days of this order, Defendants are to provide Plaintiffs' counsel with all relevant contact information regarding potential opt-in plaintiffs.

### E. Posting of Notice

Next, Plaintiffs request that the Court order Defendants to post a notice of lawsuit, along with consent forms, in conspicuous locations in each of Defendants' 7-Eleven stores so as to better provide effective notice to prospective opt-in plaintiffs. Defendants object on the grounds that such a posting is redundant and unnecessary in light of the fact that Plaintiffs will have contact information for current employees and may contact them through mail and other means. " 'Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.' " Rosario v. Valentine Ave. Discount Store, Co., Inc., 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)). Defendants do not proffer an explanation as to how such a posting would be overly burdensome or present an undue hardship in this case in contrast to other cases where it has been consistently ordered. Accordingly, Plaintiffs' request is granted; Defendants will post the notice at each of their locations in an area where covered employees are likely to view it.

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

## F. Plaintiffs' Other Notice-Related Requests

Plaintiffs also seek leave to distribute notices and reminder notices in English and Spanish and to utilize electronic means in addition to first class mail, including text messaging and email. *See* Pl. Cert. Mot. at 2. Practical requests such as these reasonably further the purpose of notice of a collective action under the FLSA. *See Martin v. Sprint/united Mgmt. Co.,* 15-CV-5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (citing *Bhumithanarn v. 22 Noodle Mkt. Corp.,* 14 Civ. 2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015)) (allowing distribution via text message and email over defendant's objection where "the nature of the employer's business facilitated a high turnover rate among employees"); *Chhab,* 2013 WL 5308004, at *16. (S.D.N.Y. Sept. 20, 2013) (authorizing reminder notice over defendant's objection); *Valerio v. RNC Indus., LLC,* 314 F.R.D. 61, 76, (E.D.N.Y. 2016) ("Generally, courts permit notice to be "translated into the mother tongue of non-English speaking groups of potential plaintiffs." "); *Bittencourt v. Ferrara Bakery & Cafe Inc.,* 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (citing *Jackson,* 298 F.R.D. at 169-70) (identifying delivery by mail, e-mail and posting by employer in conspicuous place where putative plaintiffs are employed as methods of delivery common in wage and hour actions). Defendants have offered no opposition to these requests and multiple potential opt-in plaintiffs are no longer employed with Defendants. *See* Cabrera Decl. ¶ 1, Anwar Decl. ¶ 4, Sinchi Decl. ¶¶ 1-7. Accordingly, the Court grants Plaintiffs' applications, and Defendants are to produce last known phone numbers, email addresses, and mailing addresses as to all covered current and former employees.

## IV. Motions to Strike

## A. Mootness

*9 Plaintiffs' motions to strike the Affidavits and Declarations are denied in their entirety because they are moot. The Court did not rely on them in determining Plaintiffs' motion seeking conditional certification as an FLSA collective action, because they do not bear on whether Plaintiffs have made the "modest factual showing" required at this stage of the litigation. *See Amador v. Morgan Stanley,* 11-CV-4326, 2013 WL 494020, at *3, 8 (E.D.N.Y. Feb. 7, 2013). Indeed, at this first procedural step, as "a court should not weigh the merits of the underlying claims in determining whether

potential opt-in plaintiffs may be similarly situated," courts in this Circuit have found that competing declarations should not be considered. *See id.* ("[S]tatements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion. In any event, Plaintiffs have not had an opportunity to depose these declarants, and courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process.") (citation and internal quotation marks omitted); *Hernandez v. Merrill Lynch & Co.,* 11 Civ. 8472, 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012) ("[W]eighing the affidavits submitted by employees on both sides of the action—*i.e.,* affidavits from the named plaintiffs as well as affidavits from employees submitted on defendants' behalf—would require the Court to determine the facts, determine the credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structure[d] so as to avoid.") (citation and internal quotation marks and omitted). Accordingly, the Affidavits and Declarations have not been considered in deciding Plaintiffs' motion for conditional certification. *See Valerio v. RNC Industries, LLC,* 314 F.R.D. 61, 61 (E.D.N.Y. 2016) ("It is not appropriate at the conditional certification stage of FLSA collective action for the court to judge the merits of plaintiffs' claims because they are irrelevant to the collective action inquiry, so long as plaintiffs assert a plausible basis for their claim.") (citing 29 U.S.C.A. § 216(b)); *Cohen v. Gerson Lehrman Group, Inc.,* 686 F. Supp. 2d 317, 329 (E.D.N.Y. 2010) ("[I]t would be inappropriate to rely on defendants' affidavits at an early stage of litigation, prior to the affiants' availability for deposition.").

As the Court has not relied on the Affidavits in arriving at its determination that conditional certification is appropriate at this time, striking the Affidavits is unnecessary. *See Callari v. Blackman Plumbing Supply, Inc.,* 988 F. Supp. 2d 261, 293 (E.D.N.Y. 2013) (finding motion to strike moot when the court did not consider the declaration and found that it would not have impacted the court's determination regardless) (citing *Fraser v. Fiduciary Trust Co. Int'l,* 04 CIV. 6958, 2009 WL 2601389, at *1 n. 2 (S.D.N.Y. Aug. 25, 2009) *aff'd,* 396 Fed.Appx. 734 (2d Cir. 2010)) ("The Court need not strike or otherwise disregard the declarations submitted by Plaintiff and his counsel in order to reach this conclusion. Consequently, Defendants' motion to strike all or part of these declarations is moot."); *Loughman v. Unum Provident Corp.,* 536 F. Supp. 2d 371, 379 (S.D.N.Y. 2008) ("[W]e need not address plaintiffs'

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

motions to strike the Affidavits of [ ] and the Declaration [ ], which were offered to support [the] proposed interpretation of the Policies. The subject Affidavits and Declaration, which address the negotiation and pricing of the Policies, were not relied upon by the Court, which has based its determination solely on the plain language of the Policies."). Further, as a result of the Court finding the Motion to Strike the Affidavits moot, the motion to strike the Declarations is also moot, as Defendants submitted the Declarations in support of Defendants' initial opposition to Plaintiffs' motion to strike the Affidavits. *See* DE [35] at 1. Accordingly, Plaintiffs' motions to strike the Affidavits and Declarations are denied in their entirety as moot.

**B.    No    Evidence    of    Actual    Coercion, Misrepresentations, or Bad Faith**

Even were the Court to consider Plaintiffs' motions to strike on the merits, they would be denied as, even after an evidentiary hearing, Plaintiffs have failed to put forth any evidence of actual coercion, misrepresentation, or other bad faith acts by Defendants as would justify the Court's intervention. Although district courts do retain the inherent power to regulate and restrict communications to prevent manifest injustices and to preserve the integrity of their proceedings, the courts "may not exercise th[ose] power[s] without a specific record showing ... the particular abuses by which [the moving party] is threatened." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101, 101 S. Ct. 2193, 2200 (1981). "As a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit." *Longcrier v. HL-A Co.,* 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008) (noting that such powers "must be used sparingly because of the substantial First Amendment considerations triggered by any such restraints.") (citing *Gulf Oil Co.,* 452 U.S. at 102, 101 S. Ct. at 2201). Accordingly, any order restricting such communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.,* 452 U.S. at 101, 101 S. Ct. at 2200. "[T]he mere possibility of abuses does not justify the routine adoption of a communications ban...." *Id.* at 104, 101 S. Ct. at 2202; *see Christensen v. Kiewit–Murdock Inv. Corp.,* 815 F.2d 206, 213 (2d Cir. 1987), *cert denied* 484 U.S. 908, 108 S. Ct. 250 (1987) (no impropriety in defendants' negotiation of settlements with potential members of a class); *Brown v. Mustang Sally's Spirits & Grill, Inc.,* 12-CV-529S, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012) ("District courts thus must not interfere with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary.") (internal citation and quotation omitted).

**\*10** On this question of whether Defendants committed any acts of bad faith that may have misrepresented the present litigation or coerced potential witnesses and opt-in plaintiffs, the Court held a three-day evidentiary hearing. *See* DE [38-40]. All of the employee-witnesses called testified credibly that they were not coerced or misinformed by Defendants in any way. Concerning the Affidavits, the affiants met with Kahn in his office, understood that Plaintiffs were suing Defendants, were read the Affidavits, were aware of Plaintiffs' basic claims, and understood that by signing the affidavits they were also affirming that Defendants had not undercompensated them. *See, e.g.,* Hearing Transcript ("Tr.") 29:21-24, 34:3-38:25, 68:24-70:12, 72:4-73:20, 77:2-10, 78:6-10, 102:13-16, 118:1-7, 130:1-132:12, 151:25-159:23, 231:24-237:18, 250:1-259:17. Regarding the obtaining of the Declarations, the testimony elicited from the employees supported the conclusion that Defendants' counsel identified himself, met with the declarants in a back office at the Montauk Store in small groups without Khan or Stephens present, and explained the nature of the pending claims and the contents and implications of the Declarations. *See, e.g.,* Tr. 20:1-21:25, 58:1-62:25, 160:7-23, 162:10-167:23, 180:16-20, 181:3-188:25, 200:12-201:1. The employees were given an opportunity to review the Declarations before choosing whether to sign them and told not to sign the statements if they did not agree with the truthfulness of their contents. *See, e.g., id.* The Declarations themselves also fairly and accurately summarized Plaintiffs' present claims and the employees' rights regarding the present lawsuit. *See* Declarations. There was no testimony or evidence presented at the hearing of acts of coercion, misrepresentations, or retaliation on the part of Defendants.

In urging the Court to grant their motion to strike, nonetheless, Plaintiffs rely on what they themselves characterize as the *"potentially* coercive environment" that Defendants and their counsel meeting with putative class members necessarily entails. *See* Pl. Strike Mot. at 5-6 (emphasis added). However, Plaintiffs cite only to a "risk" that misinformation was given or coercion took place at these meetings rather than any particularized acts of bad faith by Defendants. *See id.* Concerning the Affidavits, Plaintiffs emphasize that Khan met with most of affiants while he was still their supervisor and that Khan did not affirmatively disclose that the Affidavits were being obtained for litigation purposes. *See id.* at 5.

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

*Id.* One affiant, Donovan Scott claims that he signed his affidavit without reading it, and another, John Guanga testified that Khan said to him that Khan believed Cabrera's allegations were false. *Id.* Plaintiffs also point to the fact that Khan accompanied the affiants to the notary and that prior to their signing Defendants did not provide documentation regarding employees past pay or explain their control over the payroll system. *Id.*

With the respect to the Declarations, Plaintiffs argue that they must also be stricken primarily due to the same employer-employee relationship that surrounds them. *Id.* at 6. Plaintiffs emphasize that the employees met individually with Defendants' counsel in a back room, that some of the meetings were brief, and that none of the declarants were given copies of the Complaint or other documentation related to their pay. *See id.* Plaintiffs also cite to the fact that Defendants' counsel did not explain the legal distinctions between an FLSA collective action and a Rule 23 class action. *See id.*

Even assuming all of the facts and evidence put forth by Plaintiffs to be true, it substantiates only a potentiality that cannot, as a matter of law, justify sanctions or Court regulation of Defendants' interactions with unrepresented putative class members. Although defendant employers must be honest and fair, they are not required to be wholly neutral in their dealings with potential class members in an FLSA collective action. *Compare Wright v. Adventures Rolling Cross Country, Inc.*, C-12-0982, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (finding Rule 32 order warranted when communications by Defendants included emphasis that joining class would subject opt-in plaintiffs to "searing scrutiny" and baseless derogatory statements regarding class counsel); *Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 297 (S.D.N.Y. 2008) (finding sanctions appropriate where defendants "provided class members with patently false and misleading information" including that, were they to remain in the class, their private medical and mental health histories would be publicized) *with Austen v. Catterton Partners*, 831 F. Supp. 2d 559, 565 (D. Conn. 2011) (holding "*ex parte* communications between defense counsel and putative class members—even *ex parte* settlement negotiations—are not abusive communications that warrant limitations absent indications in the record of the need for limitations."); *Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366 (S.D. Ga. 2008) (denying motion to strike where plaintiff was only able to show that communication was "unauthorized, and *possibly* coercive or misleading") (citing *Gulf Oil Co.*, 452 U.S. at 101, 101 S. Ct. at 2200) (emphasis added). Accordingly, Plaintiffs' motion to strike is also denied on the merits.

## C. Motion to Preclude.

**\*11** In the alternative, Plaintiffs argue that the Declarations and Affidavits should be precluded for violating the disclosure requirements of Rule 26. The Court again disagrees. Rule 26 provides that parties must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). When a party does not make such disclosures in a timely manner, Federal Rule of Civil Procedure 37 ("Rule 37") provides a remedy in the form of a preclusion "unless the failure [to disclose] was substantially justified or harmless." Fed. R. Civ. P. 37(c); *see Design Strategies, Inc. v. Davis*, 228 F.R.D. 210, 212 (S.D.N.Y. 2005). However, the Second Circuit has deemed preclusion an "extreme sanction[,]" advising that district court judges "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Sprayregen v. A. Gugliotta Dev., Inc.*, 166 F. Supp. 3d 291, 295, (E.D.N.Y. 2016) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988)); *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (noting that preclusion is a "drastic remedy" that should be considered only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure."). " 'Despite the mandatory nature of Rule 37, the Second Circuit has held that preclusion is still a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless.' " *Leong v. 127 Glen Head Inc.*, CV 13-5528, 2016 WL 845325, at *3 (E.D.N.Y. Mar. 2, 2016) (quoting *Pal v. New York Univ.*, 06-CV-5892, 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008)).

Defendants have reasonably proffered that the witnesses who signed the Affidavits and Declarations only became relevant upon reading Plaintiffs' Motion for Conditional Certification that named or effectively identified them as potential opt-ins. *See* Def. Strike Opp. 1. at 2; *compare* Pl. Cert. Mot. at 10 *with* Def. Cert. Op. Exs. A-C; Defendants' Opposition to Plaintiffs' Motion to Compel Exs. 1-8. Additionally, as these witnesses were first identified by Plaintiffs and as discovery is still open and ongoing, with no depositions of these witnesses noticed, the Court finds no prejudice as would warrant preclusion. *See Temple v. City of New York*, 06-CV-2162, 2010 WL

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292

3824116, at *9 (E.D.N.Y. Sept. 23, 2010) (denying defendant's motion to preclude despite technical Rule 26 violation, when relevance of unnoticed plaintiff's witness only became apparent through defendant's own testimony, undercutting any argument of prejudicial unfairness); *Blake v. City of New York*, 05 CV 6652, 2007 WL 1975570, at *5 (S.D.N.Y. July 6, 2007) (denying motion to strike and preclude where opposing party was put on notice of possible relevance of witness and had an opportunity to depose him prior to close of discovery despite arguable violation of Rule 26). Accordingly, there being no substantial prejudice to Plaintiffs even were the Court to find a violation, Defendants motion to preclude is denied.

## I. Conclusion

For the foregoing reasons, the Court grants in part and denies in part, Plaintiffs' Motion for Conditional Certification as follows:

(1) Conditionally Certifying this case as a collective action including any and all of Defendants' current and former non-managerial employees who were employed from 2/20/2014 through to the present at any of Defendants' locations;

(2) Order Defendants, within sixty days of the Court's Order, to produce a computer-readable data file containing the names, last known mailing addresses, last known home and mobile telephone numbers, last known email addresses, work locations, and dates of employment, of all potential collective action members who worked for Defendants at any point from 2/20/2014 to the present;

(3) The notice of this action, in the form submitted, will be in English and Spanish, and sent via regular mail as well as text message and e-mail;

(4) Defendants will post the Notice and Reminder Notice in English and Spanish in a place where employees are likely to view it all 7-Eleven store locations owned and/or operated by Defendants for the entire opt-in period;

*12 (5) Plaintiffs will send the proposed reminder notice in both English and Spanish to the potential collective members thirty days after sending the initial notice, via regular mail, text message and e-mail; and

(6) The FLSA statute of limitations is tolled from the date of filing of this motion, until the date of the issuance of this order.

Additionally, Plaintiffs' motions to strike and preclude the Affidavits and Declarations are denied in their entirety.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4326511, 2017 Wage & Hour Cas.2d (BNA) 344,292

## Footnotes

1    On November 7, 2016, Plaintiffs filed a consent to join the collective action signed by Ivan Sinchi. *See* DE [16]. On June 2, 2017, Erika de Leon also joined as an opt-in party. *See* DE [37].

2    The motion to compel was granted in part and denied in part at a motion hearing held before this Court on May 15, 2017. *See* DE [36].

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Cabrera v. Stephens, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 344,292